1  Jeffrey M. Cohon, Esq. (CSBN 131431)
   Kristina L. Keller, Esq. (CSBN 161946)
2  **COHON & POLLAK, LLP**
   1999 Avenue of the Stars; 11th Floor
3  Los Angeles, California 90067
   Telephone:    (310) 231-4470
4  Facsimile:    (310) 231-4610
   Email:        jcohon@cohonpollak.com
5
   David H. Weinstein, Esq. (CSBN 43167)
6  **WEINSTEIN KITCHENOFF & ASHER LLC**
   1845 Walnut Street, Suite 1100
7  Philadelphia, Pennsylvania 19103
   Telephone: (215) 545-7200
8  Telecopier: (215) 545-6535
   weinstein@wka-law.com
9
10
11                    **UNITED STATES DISTRICT CORUT**
12            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13
14
15  STEVE CHAMBERS, an individual; LYNN        **SACV11-1733 DOC (MLGx)**
    VAN DER VEER, an individual; DAVID         USDC Case No. _____
16  BROWN, an individual; BACH-TUYET
    BROWN, an individual; KEVIN                **CLASS ACTION COMPLAINT FOR:**
17  O'DONNELL, an individual; JOSEPH
    CICCHELLI, an individual; KURT             1. **BREACH OF IMPLIED WARRANTY**
18  HIMLER; an individual; SUSAN MILICIA,      2. **BREACH OF EXPRESS WARRANTY**
    an individual; GARY LeBLANC, an            3. **STRICT PRODUCTS LIABILITY**
19  individual; and JAMES CASHMAN, an          4. **STRICT PRODUCTS LIABILITY –**
    individual, all of whom sue in their individual   **FAILURE TO WARN**
20  capacities and for all others similarly situated,  5. **UNJUST ENRICHMENT/**
                                                  **RESTITUTION**
21                  Plaintiffs,                 6. **FRAUDULENT**
                                                  **CONCEALMENT/NONDISCLOSURE**
22         vs.                                  7. **NEGLIGENCE**
                                               8. **VIOLATIONS OF THE CALIFORNIA**
23                                                **CONSUMER LEGAL REMEDIES ACT,**
    WHIRLPOOL CORPORATION, a Delaware           **[Civ. Code § 1750 et seq.]**
24  Corporation; SEARS HOLDINGS CORP., a       9. **VIOLATIONS OF UNFAIR**
    Delaware Corporation; SEARS, ROEBUCK          **COMPETITION LAW [Business &**
25  & CO., INC., a New York Corporation.          **Professions Code § 17200, et seq.]**
                                               10. **DECLARATORY RELIEF**
26                  Defendants.
27
28

                                    1
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
           **COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

**CLASS ACTION COMPLAINT**

**INTRODUCTION AND SUMMARY**

1.      This class action is brought by aggrieved purchasers of brand-name household dishwashers containing a dangerous defect known to the manufacturer but concealed from the public – electronic control boards that spontaneously overheat and cause the dishwasher to emit smoke and fumes and erupt in flames.

2.      The control board, also called the circuit board, performs all of the major control functions of the dishwasher.  It is the part that enables the consumer to operate the dishwasher, select pre-set cycles and select cycle preferences.  The control board also monitors basic functions of the dishwasher including cycle selection and cycle completion.

3.      This devastating defect in the control board prevents the dishwashers from being used as intended during their useful lives, and creates a substantial and unreasonable risk of property damage, personal injury and death, as the fire, smoke and fumes, which contain harmful gases, vapors and particulate matter, can quickly permeate an entire house.

4.      Plaintiffs assert claims for breach of express and implied warranties; strict product liability; strict product liability for failure to warn; unjust enrichment/restitution; fraudulent concealment/nondisclosure; negligence; violations of the California Consumer Legal Remedies Act, Civ. Code § 1750, *et seq.*; violations of the California Business and Professions Code § 17200, *et seq.*; and declaratory relief pursuant to 28 U.S.C. § 2201 in connection with defective dishwashers designed, manufactured, marketed, advertised, warranted and/or sold by Defendants Whirlpool Corporation, Sears Holding Corporation and Sears, Roebuck & Company, Inc. (hereinafter collectively, "Defendants") under the brand names "KitchenAid" and "Kenmore."

5.      Defendants designed, manufactured, marketed, advertised, distributed, warranted, sold and/or offered repair services for the makes and models of dishwashers at issue herein

2

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

("Dishwashers") to Plaintiffs and Class Members.   In conjunction with each sale, Defendants marketed, advertised and warranted that each Dishwasher was of merchantable quality, fit for the ordinary purpose for which dishwashers are used, free from defects in materials and workmanship, and would not pose a fire hazard.

6.     Defendants knew or should have known that the Dishwashers were defective in design; not fit for their ordinary and intended use; would become useless or significantly diminish in value long before the end of their reasonably expected useful lives; did not perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants nor with the reasonable expectations of ordinary customers; that the advertisements and marketing materials for the Dishwashers were likely to deceive a reasonable consumer; and that Defendants were placing a hazardous product into the stream of commerce, thereby creating an unreasonable threat to the lives and property of consumers.

7.     At the time of their sale, the Dishwashers contained defective electronic control boards that made them unreasonably dangerous and unsuitable for their intended use.

8.     The defective electronic control boards spontaneously overheat, causing them and other components in the Dishwashers to melt, emit smoke and fumes, and combust.

9.     Defendants knew, or were reckless in not knowing, at or before the time they sold the first unit, that the Dishwashers contained defects as described hereinabove and that the Dishwashers would fail prematurely due to such defects.  Defendants had exclusive possession of this knowledge.

10.     Notwithstanding this knowledge, Defendants made uniform and material misrepresentations and uniformly concealed material information from Plaintiffs and the Class Members in Defendants' marketing, advertising, and sale of the Dishwashers, which Defendants knew to be defective, both at the time of their sale and thereafter on an ongoing basis.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

11.     At all times, Defendants misrepresented and/or concealed from Plaintiffs and the Class the defects in the Dishwashers, and failed to remove the Dishwashers from the marketplace or take adequate remedial action.  To the contrary, Defendants sold and serviced the Dishwashers even though they knew, or were reckless in not knowing, that the Dishwashers were defectively designed and would fail prematurely in a catastrophic manner, depriving Plaintiffs of the ability to use the Dishwashers for their intended purpose during the useful lives of the Dishwashers, and causing property damage and personal injury.

12.     The Dishwashers in fact have failed prematurely due to the defective control boards, whether within or outside of applicable warranty periods.

13.     As a consequence of Defendants' false and misleading statements and active and ongoing concealment of material facts, Plaintiffs bought the Dishwashers and have incurred damages.

14.     Reasonable consumers would not have purchased the Dishwashers had they known of the defects.

## PARTIES

### Plaintiffs

15.     Plaintiffs Steve Chambers ("Steve") and his wife Lynn Van der Veer ("Lynn") are citizens of Maryland, domiciled at 11121 Gambrill Park Road, Frederick, Maryland 21702.

16.     Steve and Lynn purchased an existing home in 2002 in Frederick, Maryland that came with a new KitchenAid Superba Dishwasher, model number KUDS01DJSS0, serial number FL0618828, then valued at approximately $1,000.  On March 22, 2009, they set their Dishwasher to the normal wash cycle.  Within minutes, flames erupted from the top of the Dishwasher, rendering it unusable.  Thereafter, the Dishwasher was examined at a laboratory which determined that there was a defect with the control board.

4

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

17.     Steve telephoned Whirlpool immediately after the fire to alert the company to the problem.  Whirlpool expressed no concern that its product was a fire hazard; refused to send a representative to investigate the fire; and refused to replace the ruined Dishwasher at its own expense.

18.     Concerned by Whirlpool's response, Steve later sent a facsimile message to the president of Whirlpool Corporation discussing numerous individuals whom he discovered had similar problems with their KitchenAid Dishwashers.  Steve never received a response from Whirlpool.

19.     Steve also called Sears and informed a representative in the safety department about the defective Whirlpool manufactured dishwashers.  Steve requested that Sears stop purchasing Whirlpool manufactured dishwashers until the fire hazard control board problems were resolved.  The Sears representative told Steve that he would look into the issue.  Steve did not receive any further communications from Sears.

20.     Despite Steve's phone call and fax to Whirlpool and phone call to Sears, upon information and belief, Whirlpool and Sears continue to deny that they are aware that the Dishwashers experience smoke and fire problems, or that their control boards are defective.

21.     Plaintiffs David Brown ("David") and his wife Bach-Tuyet Brown ("Tuyet") are citizens of California, domiciled at 9074 N. Brookview Avenue, Fresno, California 93720.

22.     David and Tuyet purchased a KitchenAid Dishwasher, model number KUDP01,[1] from Pacific Sales in Torrance, California in September 2006, and installed it in a house that they owned and subsequently rented out, located at 8225 Calabar Avenue, Playa del Rey, California 90243.  On April 4, 2010, the tenants were awakened by the stench of smoke from an electrical fire in the Dishwasher (which was not on at that time).  Smoke and soot filled the entire house.  The fire burned a hole through kitchen cabinetry, and all of the kitchen counters and cabinets were damaged by the

---

[1] The Dishwasher's serial number was rendered illegible by the subsequent fire, and thus is unknown.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

1 smoke and heat.   Fire fighters who were quickly called to the scene caused further damage in

2 containing the conflagration.

3      23.      One of the tenants suffered breathing problems caused by smoke inhalation, went to a

4 hospital emergency room and was admitted to the hospital as an in-patient overnight.

5

6      24.      The tenants were forced to vacate the property for approximately three weeks, causing

7 David and Tuyet to lose approximately $3,000 in rental income.

8      25.      The entire kitchen had to be replaced as a result of the fire.   The total cost to clean and

9 repair the damage caused by the Dishwasher fire was approximately $70,000.

10      26.      Following the fire, David and Tuyet's Dishwasher was sent to a lab for analysis.   The

11 forensics report concluded that the Dishwasher was defective, and that the fire was caused by the

12 Dishwasher's electrical failure.

13

14      27.      Named Plaintiff Kevin O'Donnell ("Kevin") is a citizen of Georgia, domiciled at 443

15 Summit Avenue, Marietta, Georgia 30068.

16      28.      On September 25, 2004, Kevin bought a KitchenAid Dishwasher, model number

17 KUDSO1FLSS, serial number FR3312380, from H.H. Gregg in Kennesaw, Georgia.   The electronic

18 control board in the Dishwasher caught fire on May 23, 2008.   As the control board melted, dense

19 smoke and the distinctive odor of burning plastic billowed from the Dishwasher.   The house circuit

20 breaker to which the Dishwasher was connected did not automatically trip, and Kevin could not turn it

21 off at the electronic control board, so he ran to the circuit breaker box and switched that circuit off

22 manually.   He then called the fire department.   Subsequently, A&E Factory Service, LLC ("A&E"), a

23 joint venture of Whirlpool and Sears Holdings Corporation that services appliances nationwide,

24 replaced the electronic control board.

25

26

27

28

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

29.     The new electronic control board caught fire on July 24, 2010, emitting smoke and the smell of burnt plastic.  As with the first fire, Kevin had to switch the circuit breaker off manually. Likewise, Kevin had to call the fire department.

30.     Six weeks after the fire, Whirlpool replaced the heating element and, at Kevin's request, the electronic control for a second time.  While the machine is currently working, Kevin is afraid to run it and will not do so when he is asleep or when no one is in the house, as an uncontrolled fire could kill him or destroy the house.

31.     Named Plaintiff Joseph Cicchelli ("Joseph") is a citizen of New Jersey, domiciled at 836 Summit Avenue, Hackensack, New Jersey 07601.

32.     Joseph purchased a Kenmore Elite Dishwasher, model number 665.17584200, serial number FM 2401353, from Sears in Hackensack, New Jersey on or about July 4, 2002, and Sears installed it on or about July 8, 2002.  On Easter of 2009, he turned the Dishwasher on and, while it was running, he heard hissing and popping noises.  He went into the kitchen and saw smoke coming from the Dishwasher.  He opened the door to the Dishwasher so it would turn off, but the machine kept running, spraying water everywhere.  Joseph ran to the circuit breaker and manually switched it off.

33.     Joseph later disassembled the machine and discovered that the electronic control board was fried.  He purchased a new electronic control board and fuse kit.

34.     On information and belief, the store where Joseph purchased the replacement electronic control board keeps many in stock, as customers frequently purchase them to replace units in their Whirlpool-manufactured Dishwashers that had burned out.

35.     Joseph contacted Sears' customer service by e-mail and phone.  Sears did not appear to be concerned over his report of a product fire, and refused to compensate Joseph for his loss.

36.     Joseph has suffered financial damages caused by the Kenmore's catastrophic failure.

7

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

37. Named Plaintiff Kurt Himler ("Kurt") is a citizen of California, residing at 11075 Hiskey Lane, Tustin, California 92782.

38. Kurt purchased his KitchenAid Dishwasher, model number KUDSO1FLSS, serial number FR5219875, from a Sears in California around 2004. In the summer of 2010, the electronic control board overheated and the Dishwasher caught on fire, charring the wooden cabinets in the kitchen.

39. Although Whirlpool eventually replaced the defective Dishwasher at Kurt's request, they did so with a downgraded model. Whirlpool did not compensate Kurt for the damaged cabinets.

40. Kurt has suffered financial damages caused by his KitchenAid Dishwasher's catastrophic failure.

41. Named Plaintiff Susan Milicia ("Susan") is a citizen of New Jersey, domiciled at 840 Wessex Lane, Somerdale, New Jersey 08083.

42. Susan purchased a KitchenAid Dishwasher, model number KUDPO2CRBS2, serial number FT4107404 from DirectBuy Club of South Jersey in Maple Shade, New Jersey, and had it installed in March of 2007.

43. One day in February 2009, the Dishwasher made pinging noises, emitted a burnt plastic smell and shut down mid-cycle and would not drain. A technician replaced the board fuse and wiring. The Dishwasher did the same thing in January 2010. A technician then replaced the entire fuse kit.

44. In July 2010, as the Dishwasher was running, it again emitted an intense burnt plastic smell. A Whirlpool technician later determined that the wiring had melted.

45. Susan called Whirlpool and advised the representative with whom she spoke that she had discovered multiple complaints online regarding Whirlpool Dishwashers' propensity to burn up. The Whirlpool representative, however, denied any knowledge of prior complaints about this problem. Whirlpool offered two options to Susan: (1) a refund in the amount of $285, a prorated rate based on

8

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

1   the age of her dishwasher, or (2) the purchase of a new Whirlpool dishwasher for the price of $400.

2   Susan opted to purchase the new Whirlpool dishwasher.

3       46.     Susan has suffered financial damages caused by her Dishwasher's catastrophic failure.

4       47.     Named Plaintiff Gary LeBlanc ("Gary") is a citizen of Massachusetts, domiciled at 7

5   Serena Terrace, Peabody, Massachusetts 01960.

6

7       48.     Gary purchased his Kenmore Elite Dishwasher, model number 665.16279400, serial

8   number FR4201316, from a Sears located in Peabody, Massachusetts in November 2004.

9       49.     On May 29, 2010, at approximately 10 p.m., Gary's family was already in bed, and he

10  was on his way, when he smelled electrical wires burning (which he recognized because of his

11  experience with computers). He traced the smell to the Dishwasher. When he opened the door, smoke

12  billowed out. The machine did not shut off even though the door was open. The Dishwasher was on

13  its own house circuit breaker, which did not trip, so he had to run down to the basement and manually

14  turn off the circuit breaker.

15

16      50.     Gary disassembled the door and saw immediately that the electronic control board and

17  related wiring were burnt. Two of the wires had burned the knife terminals off the electronic control

18  board and melted a hole through the plastic housing in which the electronic control board rests. The

19  wiring harness also had many wires that were so overheated that they had started melting into the

20  rubber installation on the inside door backing.

21

22      51.     Gary called Sears and Whirlpool. Both companies told him that there was no problem

23  with his Dishwasher and refused to help him.

24      52.     Gary then contacted Sears Cares, Sears' executive customer service, and it dispatched a

25  technician to examine the dishwasher. The technician advised that he had never seen a dishwasher

26  "cooked that bad" before, and that it needed a new electronic control board and wiring harness. Sears

27  paid for one half of the repair cost.

28

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

53.     While Gary's Dishwasher was repaired, he will no longer operate it when he is sleeping or when no one is home for fear that it will burn the house down and/or kill him and his family. Gary has suffered financial damages caused by the Dishwasher's catastrophic failure.

54.     Named Plaintiff James Cashman ("James") is a citizen of California, domiciled at 4531 Sunnyslope Avenue, Sherman Oaks, California 91423.

55.     James' KitchenAid Dishwasher, model number KUDPO1LWH2, serial number FP2502015, was purchased by the previous home owners on July 8, 2003 from Pacific Sales in Woodland Hills, California.

56.     On the evening of May 10, 2010, James and his wife were watching television when they noticed an overpowering smoky, burnt plastic smell coming from the kitchen. Upon arriving in the kitchen, they saw smoke billowing from their Dishwasher. It was mid-cycle and the house circuit breaker to which it was hooked up had not tripped. James stopped the machine and looked inside, but saw nothing on the heating element that could cause the problem.

57.     The Whirlpool representative ("Brenda") whom James immediately called denied any knowledge as to what might have caused the smoking, and simply gave him a list of authorized repair companies.

58.     A technician was dispatched the following day, and upon removing the door cover, discovered that the panel was burnt and that the plastic connector had melted into the electronic control board. The repairman said that James would need a new electronic control board and connector, which would cost approximately $300.

59.     In searching the Internet, James discovered that this is a recurring problem with Whirlpool Dishwashers before the end of their reasonably expected useful lives. James called Whirlpool again and spoke with Brenda, who claimed that she had never heard of such problem before. James responded that he had a hard time believing that, as a simple online search had

10

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

immediately disclosed over twenty similar complaints. The Whirlpool representative offered to send another technician to evaluate the problem. James agreed, and that technician reached the same conclusion as the first one, namely, that the Dishwasher needed a new electronic control board and connector. The technician said that he would report this to Whirlpool, which would then contact James.

60.    The following day, Brenda from Whirlpool called James and said that Whirlpool recommended that he replace rather than repair his Dishwasher. Refusing to repair or replace the Dishwasher at no cost to James, Brenda offered James 30% off of an equivalent model dishwasher, or 15% off of any other Whirlpool model. James asked if he could be assured that a new Whirlpool dishwasher would not exhibit the same defect or pose a substantial risk of fire. Brenda's only response was that "my family uses Whirlpool dishwashers; they're safe." Adjudging that to be inadequate assurance, James declined the offer and purchased a new Bosch dishwasher, which has had no problems.

### Defendants

61.    Defendant Whirlpool Corporation ("Whirlpool") is a Delaware corporation with its principal place of business in Benton Harbor, Michigan. Whirlpool is the world's leading manufacturer and marketer of household appliances, including dishwashers, with annual sales of approximately $19 billion, 70,000 employees, and 69 manufacturing and technology research centers around the world. Whirlpool manufactures products in 12 countries under a variety of brand names – including Whirlpool, KitchenAid, Kenmore, Maytag, Jenn-Air, Amana, Brastemp, Consul, and Bauknecht – that are marketed and sold around the world, including in this jurisdiction.

62.    At all times relevant hereto, Whirlpool was in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and selling kitchen essentials and

11

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

1    appliances, and did design, manufacture, distribute, advertise, market, promote and sell the

2    KitchenAid and Kenmore-branded Dishwashers at issue herein.

3        63.    Defendant Sears Holdings Corporation is a Delaware corporation with its principal

4    place of business in Hoffman Estates, Illinois.  Formed in 2004 in connection with the merger of K-

5    Mart and Sears, Roebuck & Co., Sears Holdings Corporation is the nation's fourth largest broadline

6    retailer with approximately 3,900 full-line and specialty retail stores in the United States and Canada.

7    Sears Holdings Corporation is the leading home appliance retailer, which includes dishwashers, as

8    well as a leader in tools, lawn and garden, consumer electronics and automotive repair and

9    maintenance.

10

11       64.    Defendant Sears, Roebuck & Company, Inc., a wholly owned subsidiary of Sears

12   Holdings Corporation, is a New York corporation with its principal place of business in Hoffman

13   Estates, Illinois.  Sears, Roebuck & Company, Inc. distributes and sells residential and commercial

14   appliances, including dishwashers.  It is among the largest companies in the United States' market for

15   major household appliances.

16

17       65.    Sears owns the Kenmore brand name.  Kenmore-brand appliances include dishwashers.

18       66.    At all times relevant hereto, Sears was in the business of designing, manufacturing,

19   distributing, advertising, marketing, promoting, and selling kitchen essentials and appliances, and did

20   design, manufacture, distribute, advertise, market, promote and sell some, if not all, of the

21   Dishwashers at issue herein.

22

23       67.    At all times relevant hereto, Whirlpool and Sears worked in concert with one another

24   and/or as each other's agents in connection with the design, marketing, promotion and sale of the

25   Dishwashers at issue herein.

26       68.    Defendants Whirlpool and Sears engage in a continuous course of business in

27   California, including sales of the Dishwashers at issue herein, through retail stores located in

28

---

12

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

California; use distributors of its products, including the Dishwashers at issue herein, who are located in California; distribute products, including the Dishwashers at issue herein, in the State of California; sell and advertise products, including the Dishwashers at issue herein, on the Internet and through other media in California; have knowledge that their products, including the Dishwashers at issue herein, will be distributed in California; have substantial and continuing contacts with California; expect that their products, including the Dishwashers at issue herein, will be purchased in California, and have committed tortious acts in California.

## JURISDICTION AND VENUE

69.    The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(d).  There are members of the Class who are citizens of states other than the states of citizenship of Defendants, and the amount in controversy exceeds five million ($5,000,000) dollars exclusive of interest and costs.

70.    Venue lies in this District pursuant to 28 U.S.C. § 1391 (a) and (c).

## FACTS

71.    Defendants are engaged in the business of designing, manufacturing, warranting, marketing, advertising and/or selling KitchenAid and Kenmore-brand dishwashers and other appliances.

72.    Defendants consistently make representations regarding the quality, reliability and longevity of "KitchenAid" and "Kenmore" brand dishwashers – specifically, that they were highly-rated, top-of-the-line appliances.  For example:

13

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

A.     The KitchenAid website asserts that "All large KitchenAid® appliances come with outstanding warranties that back up the premium quality of our appliances."[2]

B.     Sears states on its website that the KitchenAid and Kenmore dishwashers are of superior quality, reliability and longevity:

- "KitchenAid dishwashers are made to last and get you out of the kitchen faster. At Sears.com, we have a wide selection of Energy Star® rated KitchenAid dishwashers at competitive prices, with the best installation and protection plans around. Trust KitchenAid appliances for reliability and performance, and count on Sears to deliver great installation and protection plans."[3]

- "With KitchenAid® dishwashers, you'll get exceptionally clean dishes with 25% better results versus the competition."[4]

- "Whirlpool is a brand name you can trust for quality and reliability, and Sears is the home of appliance value."[5]

- "Kenmore appliances have brought oreto [sic.] American homes for generations. The quality and reliability of Kenmore have helped our households run smoothly day after

[2] *See, e.g.,* http://www.kitchenaid.com/product/KUDE70FXSS.uts ("Features & Specs" link) (last visited on July 24, 2011).

[3]                                                 *See,*                                           *e.g.,* http://www.sears.com/shc/s/c_10153_12605_Appliances_Dishwashers?sbv=KitchenAid&sbf=Brand (last visited July 24, 2011).

[4]                                                 *See,*                                           *e.g.,* http://www.sears.com/shc/s/p_10153_12605_02212543000P?prdNo=7&blockNo=7&blockType=L7 (last visited July 24, 2011).

[5]                                                 *See,*                                           *e.g.,* http://www.sears.com/shc/s/c_10153_12605_Appliances_Dishwashers?sbf=Brand&sbv=Whirlpool (last visited July 24, 2011).

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

day and year after year. The new generation of Kenmore appliances continues this tradition with that same quality and with more innovative features focused on convenience. That is why Kenmore is the best known name in appliances, and why more people buy Kenmore than any other brand. With <u>cooking appliances</u>, <u>refrigerators</u>, <u>washers and dryers</u>, <u>vacuums</u> and more, Kenmore appliances are the tools of the trade for working households. And with new product lines like Kenmore Elite and Kenmore Pro, there are more ways to bake, grill, heat, chill, wash, dry and clean than ever before."[6]

- "Kenmore Elite appliances offer distinctive design and upscale features as well as the great quality Kenmore is known for. . . . For personal service and award-winning Kenmore Elite appliances, the place to shop is Sears."[7]

73.    Through various forms of media including, but not limited to, television, print ads, brochures, the Internet, on-site brochures and promotional documents, catalogs, and product labeling, Whirlpool and Sears market, advertise and warrant that each KitchenAid- and Kenmore-branded Dishwasher is fit for the ordinary purpose for which such goods are used and is free from defects in materials and workmanship, or at a minimum is not a serious fire hazard.  In addition to the above examples, the Kenmore Elite Ultra Wash® Dishwasher Use and Care Guide ("Use and Care Guide") for Models 665.16582, 665.16583, 665.16584, 665.16589, 665.17582, 665.17583, 665.17584 and 665.17689 declares that "Your Kenmore® appliance is designed, manufactured and tested to provide years of dependable operation."

---

[6] *See, e.g.,* http://www.sears.com/shc/s/v_10153_12605_Appliances?sbf=Brand&sbv=Kenmore&ws-showcase=kenmore&keywordRedirect=kenmore (last visited July 24, 2011).

[7] *See, e.g.,* http://www.sears.com/shc/s/v_10153_12605_Appliances?sbf=Brand&sbv=Kenmore+Elite (last visited July 24, 2011).

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

74.     Defendants Whirlpool and Sears expressly and impliedly warrant, *via* user manuals, advertisements, pamphlets, brochures, circulars, samples and models that their dishwashers are fit for the ordinary purpose for which such goods are used.

75.     Defendant Whirlpool expressly warrants that in the second through fifth years from the date of purchase it will provide, free of charge, any replacement parts for the following components if defective in materials or workmanship: the upper or lower nylon racks, the wash and drain motor, the electronic controls, and the heating element.

## The Defects

76.     Contrary to and in derogation of Defendants' representations and warranties, the Dishwashers contain defective electronic control boards that spontaneously overheat, causing the electronic control boards and other Dishwasher components to melt, smoke and burst into flames, clearly creating an unreasonable risk of potentially catastrophic destruction, including extensive property damage, personal injury and death.

77.     The defects, which manifest themselves during the expected useful life of the Dishwashers within and outside of the warranty periods, are substantially likely to prevent the Dishwashers from being used as intended during their expected useful life, and pose significant risks to individuals' lives and property.

78.     The defects necessitated and will continue to necessitate replacement of and costly repairs to the Dishwashers.

79.     Whirlpool and Sears failed to adequately design and test the Dishwashers to ensure that they were free from defects at the time of sale.

80.     At all times, Plaintiffs have used their Dishwashers in a foreseeable manner and in the manner in which they were intended to be used.

16

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

81.     The defects in the Dishwashers, which existed at the time they were sold to Plaintiffs, render them unfit for the ordinary purpose for which dishwashers are used.  As a result of the defects, Plaintiffs have suffered property damage and physical injury such as smoke inhalation.  The defects were the direct, proximate and foreseeable cause of damages incurred by Plaintiffs.

82.     Had the Dishwashers been free from design defects, Plaintiffs and the Class would not have suffered the damages complained of herein.

83.     In purchasing a Dishwasher, a reasonable consumer would expect it to operate in accordance with, and be useable for, its intended purpose for the duration of its life expectancy, and not pose a serious safety risk.

84.     A reasonable consumer expects that dishwashers like the Dishwashers at issue here will function properly for at least 9 years.  The National Association of Home Builders ("NAHB") found in a 2007 study that it conducted along with Bank of America Home Equity that the life expectancy of dishwashers is 9 years, while Demesne, a website dedicated to collecting information from experts and specialists about topics that concern homeowners, states that the average life expectancy of dishwashers is 10 years, and the Association of Home Appliance Manufacturers ("AHAM"), of which Defendant Whirlpool Corporation is a member, cites a National Family Opinion, Inc. 1996 survey stating that the average useful life of a built in under counter dishwasher is 13 years.

85.     The Dishwashers of Plaintiffs and the Class should have been usable for their intended purpose during their expected useful lives without being a significant fire hazard.

86.     The law requires that Defendants disclose the existence of any defects that would prevent the Dishwashers from being used as intended that were known to Defendants at the time of the sale.

87.     Because of the defective electronic control boards, Plaintiffs' Dishwashers failed during their expected useful lives, within or outside applicable warranty periods.

17

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

88.     As a result of the defects alleged herein, Plaintiffs have experienced failure of their Dishwashers, did not get what they paid for, and have incurred actual damages.

### Whirlpool and Sears had Actual or Constructive Knowledge of the Defects

89.     Before they sold the Dishwashers, Defendants Whirlpool and Sears knew, or were reckless in not knowing, that the Dishwashers contained defects that would cause the electrical system to spontaneously fail as the electronic control boards overheated, resulting in heat and/or smoke and/or fire damage to the Dishwashers and surrounding area, and creating the unreasonable risk of severe personal injury and extensive property damage.

90.     Defendants did not implement a plan to address the defects and instead manufactured, distributed and/or sold subsequent models containing the same defects.

91.     As early as 2008, purchasers of Defendants' Dishwashers have complained to Defendants that the electronic control boards were failing and that the Dishwashers were spontaneously smoking and combusting. *See, e.g.,* the notifications described above at Paragraphs 17, 18, 19, 28, 30, 39, 44, 48, 49, 55, 56, 61, 63, and 64.

### Defendants Whirlpool's and Sears' Omissions and Misrepresentations

92.     Despite the numerous complaints that Whirlpool and Sears received as early as 2008 from its customers about the Dishwashers, Defendants continually failed to disclose the existence of the design defect to public consumers.

93.     Despite years of complaints, Defendants never informed any purchaser of the existence of the design defect at the time of sale or thereafter, nor did Defendants disclose that warranty or the recommended post-warranty repairs would not cure or rectify the defects and would, at best, only briefly delay the impact of the defects and thereby postpone failure in the Dishwashers.  Defendants never issued a recall of the Dishwashers despite the serious fire hazard, and never offered to replace the defective Dishwashers with redesigned defect-free components or complete replacement.

18

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

94.     Instead, in their marketing and advertising, Defendants uniformly and falsely represented and continue to misrepresent that the Dishwashers are free from defects and that they will perform their essential function for their expected useful lives.

95.     Defendants knew that reasonable consumers were unaware of the latent defects and that they reasonably expected the Dishwashers to clean dishware effectively without putting users' property and lives at risk.  Defendants also knew that reasonable consumers expected Defendants to disclose any defects that would prevent the Dishwashers from performing their function before the end of their useful lives or that would seriously threaten their personal welfare, and that such decision would impact customers' decisions as to whether to purchase the Dishwashers.

96.     As a result of Defendants' uniform misrepresentations and omissions in their marketing and advertising, reasonable consumers believed that the Dishwashers would operate without defects to clean dishware.  And, based on these material misrepresentations and omissions, reasonable consumers purchased KitchenAid and Kenmore-branded Dishwashers.

97.     Defendants have wrongfully placed on Plaintiffs and the other members of the Class the burden, expense and difficulties involved in repairing and replacing the Dishwashers.

## CLASS ACTION ALLEGATIONS

98.     The allegations of paragraphs 1-97 are incorporated in this paragraph as though fully set forth herein.

99.     Plaintiffs bring this action both individually and as a class action pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and 23(b)(3) against Defendants, on their own behalf and on behalf of the National Class and National and California Subclasses (collectively termed "Class") defined below.

100.     The National Class consists of (a) all consumers in the United States that (a) purchased or otherwise acquired a KitchenAid or Kenmore-branded Dishwasher (b) primarily for personal, family, or household purposes, and not for resale, and (c) its electronic control board overheated,

19

smoked and/or caught on fire, and/or the Dishwasher experienced a malfunction requiring replacement of the electronic control board.

101.    In addition, Plaintiffs David Brown, Tuyet Brown and Susan Milica bring this action on behalf of a National Subclass, defined as: All consumers that (a) purchased a new Whirlpool-branded Dishwasher (b) primarily for personal, family or household purposes, and not for resale, and (c) its electronic control board overheated, smoked and/or caught on fire, and/or the Dishwasher experienced a malfunction requiring replacement of the electronic control board (d) within five years of purchase.

102.    Further, Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman bring this action on behalf of a California Subclass, defined as:  All consumers who (a) purchased a new KitchenAid or Kenmore-branded Dishwasher (b) primarily for personal, family, or household purposes, and not resale, and (c) its electronic control board overheated, smoked and/or caught on fire, and/or the Dishwasher experienced a malfunction requiring replacement of the electronic control board.

103.    Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Whirlpool, Sears and any entity in which Whirlpool or Sears has a controlling interest or which has a controlling interest in Whirlpool or Sears; (c) the officers, directors or employees of Whirlpool or Sears; (d) Whirlpool's or Sears' legal representatives, assigns and successors; and (e) all persons who properly execute and file a timely request for exclusion from the Class(es) and/or Subclass(es).

104.    The Class is so numerous that joinder of all members is impracticable.  *See* FED. R. CIV. P. 23(a)(1).  While the exact number of Class members is unknown to Plaintiffs, it is believed that the Class is comprised of thousands of people geographical dispersed throughout the United States, and in the case of the California Subclass, throughout California.  A large part of National Class and

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

the National and California Subclasses is readily identifiable, however, from information and records in the possession of Whirlpool and/or Sears.

105.    There are questions of law and fact common to the Class that predominate over any question affecting only individual members of the Class. *See* FED. R. CIV. P. 23(a)(2).  These common questions include, but are not limited to:

A.    Whether Defendants' Dishwashers are materially defective due to design flaws incorporated in the manufacture of the machines – and what are the defects;

B.    Whether Defendants' knew or should have known that the Dishwashers were and are materially defective;

C.    Whether Defendants' Dishwashers are not of merchantable quality;

D.    Whether Defendants' Dishwashers are likely to fail before the end of their reasonable expected life;

E.    Whether the existence of the design defects incorporated into the manufacture of Defendants' Dishwashers is a material fact reasonable purchasers would have considered in deciding whether to purchase a dishwasher;

F.    Whether the design defects in Defendants' Dishwashers resulted from Whirlpool's and/or Sears' negligence;

G.    Whether Whirlpool and/or Sears knew or should have known of the defects prior to distributing the subject Dishwashers to Plaintiffs and the Class;

H.    Whether Whirlpool and/or Sears omitted, concealed from and/or failed to disclose in its communications and disclosures to Plaintiffs and the Class material information regarding the design defects inherent in the Dishwashers;

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

1            I.       Whether Whirlpool and/or Sears intended that Plaintiffs and the Class rely on

2  Whirlpool's and/or Sears' acts of concealment and omissions when purchasing the subject

3  Dishwashers;

4            J.      Whether the design defects incorporated into the manufacture of the

5

6  Dishwashers caused spontaneous overheating, smoking and fire, which caused damage to the

7  Dishwashers as well as other property, including floors, walls and other accompanying areas;

8            K.     Whether Whirlpool breached express warranties relating to the Dishwashers by

9  failing to repair and correct defects in the Dishwashers;

10           L.      Whether Whirlpool and/or Sears breached implied warranties of merchantability

11  and/or fitness for a particular purpose relating to the Dishwashers;

12           M.    Whether Whirlpool and/or Sears misrepresented the characteristics, qualities

13  and capabilities of the Dishwashers;

14

15           N.      Whether Whirlpool and/or Sears were unjustly enriched by receiving monies in

16  exchange for the defective Dishwashers;

17           O.      Whether Whirlpool and/or Sears should be ordered to disgorge all or part of the

18  ill-gotten profits they received from the sale of the subject defective Dishwashers;

19           P.      Whether Plaintiffs and the members of the Class are entitled to damages,

20  including compensatory, exemplary, and statutory damages, and the amount of such damages;

21

22           Q.      Whether Plaintiffs and the members of the Class are entitled to replacement of

23  their defective Dishwashers with non-defective dishwashers;

24           R.      Whether Whirlpool and/or Sears engaged in unfair, unconscionable, or

25  deceptive trade practices by selling and/or marketing the Dishwashers at issue; and

26

27

28

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

S.      Whether Plaintiffs and the Class are entitled to statutory and/or equitable relief, as applicable, including an injunction enjoining Defendants from engaging in the wrongful and unlawful conduct alleged herein and requiring that Defendants engage in a corrective notice campaign.

T.      Whether Plaintiffs and the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and costs of suit.

106.   Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' actionable conduct. Plaintiffs and all members of the Class own(ed) KitchenAid or Kenmore-branded Dishwashers with defects that make them inherently dangerous and that cause the Dishwashers to fail within their expected useful lives, both within and outside of applicable warranty periods. All of the claims of Plaintiffs and the Class arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and/or selling the defective Dishwashers, Defendants' conduct in concealing the defects in the Dishwashers, and Plaintiffs' and the Class members' purchase of the Dishwashers. *See* FED. R. CIV. P. 23(a)(3).

107.   Plaintiffs will fairly and adequately represent and protect the interests of the Class. *See* FED. R. CIV. P. 23(a)(4). Plaintiffs are knowledgeable about their claims. There are no conflicts of interest between Plaintiffs, either *inter se* or with respect to the interests of the Class members. Plaintiffs, like the Class members, have been injured as a result of the acts and omissions of Defendants. Additionally, Plaintiffs have retained counsel experienced and competent in class actions and complex consumer litigation who are well-suited to represent the interests of the National Class, National Subclass and California Subclass.

108.   Class certification is appropriate under FED. R. CIV. P. 23(b)(2) because Defendants will continue to commit the violations alleged, and the members of the Classes and the general public will continue to be misled and be put at risk of personal and physical harm by the potential of their Dishwashers catching on fire. Defendants have acted and refused to act on grounds that apply

23

COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

1    generally to the Class so that final injunctive relief and corresponding declaratory relief is appropriate

2    respecting the Class as a whole.

3        109.    Class certification is also appropriate under FED. R. CIV. P. 23(b)(3). The questions of

4    law or fact common to the members of the Class, described above, predominate over any questions

5    affecting only individual members as is evidenced by the fact that if Plaintiffs and Class members

6    were to bring individual actions, they would each be required to prove the same wrongdoing by

7

8    Defendants in order to establish liability. Additionally, a class action is the superior method of

9    adjudication for this litigation because absent class certification, the Court may be faced with litigating

10   potentially hundreds of separate lawsuits arising out of the same set of facts. By proceeding in a class

11   action, the resolution of common issues alleged in one action will result in more efficient use of

12   judicial resources and bring about a single outcome that is binding on all Class members.

13

14       110.    In addition, a class action will allow class members, who might otherwise be prevented

15   from pursuing their claims due to the expense of litigation, to vindicate their rights. Absent a class

16   action Defendants' wrongs would likely go without redress, and they could continue with impunity to

17   place the defective Dishwashers in the market.

18       111.    Due to the individual amount at issue as to each Class member, as well as the cost and

19   difficulty in litigating each case separately, the Class members have insufficient interest in

20   individually controlling the prosecution of separate actions. *See* FED. R. CIV. P. 23(b)(3)(A).

21

22       112.    The Class has not previously litigated the claims asserted in this complaint. *See* FED. R.

23   CIV. P. 23(b)(3)(B).

24       113.    This Court is an appropriate forum for the litigation of the Class claims.

25       114.    Plaintiffs do not anticipate any difficulty in the management of this litigation. *See* FED.

26   R. CIV. P. 23(b)(3)(D).

27

28

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

115.   Defendants have acted or refused to act on grounds generally applicable to the Class and, as a result, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate. *See* FED. R. CIV. P. 23(b)(2).

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS

116.   <u>Discovery Rule:</u>  The claims alleged herein accrued upon discovery of the latently defective nature of the Dishwashers.  Because the defect alleged herein is latent and because Defendants took steps to actively misrepresent and conceal the true character, nature, and quality of the Dishwashers, among other reasons, Plaintiffs and other members of the Class did not discover and could not have discovered the problems and defects alleged herein through reasonable and diligent investigation until after they experienced problems with their electronic control boards.

117.   <u>Fraudulent Concealment Tolling:</u>  Any applicable statutes of limitations have been tolled by Defendants' knowing and active misrepresentation, concealment and denial of the facts as alleged herein, which concealment is ongoing.  Defendants have denied any knowledge of the overheating and/or smoking and/or fire-related problems with its Dishwashers, and have kept Plaintiffs and the members of the Class ignorant of vital information essential to pursue these claims, without any fault or lack of diligence on their parts.  Plaintiffs could not reasonably have discovered the true, latently defective nature of the Dishwashers.  As a result of Defendants' active concealment of the defects and/or failure to inform Plaintiffs of the defects, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

118.   <u>Estoppel:</u>  Alternatively, the facts alleged above give rise to an estoppel.  Defendants have continually denied their knowledge of dishwasher defects alleged herein, and have actively concealed the defective nature of its dishwashers. Defendants were and are under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of the Dishwashers, particularly that they

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

posed a serious fire hazard.  At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Dishwashers.  Given Defendants' failure to disclose this non-public information about the defective nature of its Dishwashers – information over which it had exclusive control – and because Plaintiffs could not reasonably have known that the Dishwashers were thereby defective, Plaintiffs reasonably relied upon Defendants' knowing, affirmative, and/or active and ongoing concealment.  Based on the foregoing, Defendants are estopped from prevailing on any statues of limitations in defense of this action.

119.    Additionally, Defendants are estopped to raise any defense of laches due to their own manifestly unclean hands as alleged hereinabove.

## COUNTS

### Count I
**Breach Of Implied Warranties**
**(All Plaintiffs, Individually And On Behalf**
**Of The National Class, Against All Defendants)**

120.    The allegations in Paragraphs 1-119 are incorporated by reference as though fully stated herein.

121.    The Dishwashers owned by Plaintiffs and members of the Nationwide Class were defectively designed and manufactured, and left Defendants' facilities and control with a latent defect caused by such defective design incorporated into the manufacture of the units.

122.    At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used, and that the product be acceptable in trade for the product description.  This implied warranty of merchantability is part of the basis of the bargain between Defendants, on the one hand, and Plaintiffs and the members of the Nationwide Class, on the other.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

123.    Notwithstanding the aforementioned duty, at the time of delivery, the Dishwashers sold to Plaintiffs and member of the Class were not merchantable.

124.    Whirlpool and Sears breached the implied warranty of merchantability in that the Dishwashers are defective and not fit for the ordinary purposes for which the Dishwashers were intended.

125.    Furthermore, Defendants Whirlpool and Sears breached the implied warranties of fitness for a particular purpose in that the Dishwashers are defective and not fit for their intended purpose.  Whirlpool is aware of the particular purpose for which the Dishwashers were intended, and Plaintiffs and the members of the Nationwide Class relied upon Defendant Whirlpool's skill and judgment in deciding to purchase the Dishwashers.

126.    As documented in business records and elsewhere, Defendants were notified of these breaches of implied warranties within a reasonable amount of time after the latent defect manifested itself to Plaintiffs and the members of the Nationwide Class.   Additionally, by virtue of their knowledge of the defects and its knowledge of the experience of purchasers of the subject Dishwashers who complained of the defects in the Dishwashers, Defendants Whirlpool and Sears received notice of the breach of implied warranties.

127.    The element of privity, if found to be applicable, exists vis-à-vis Defendants and Plaintiffs because, *inter alia*: (i) Defendants had direct written communications with members of the Class with regard to the subject Dishwashers in the form of standardized warranty forms, registration cards and other similar documents; (ii) Defendants had direct communications with members of the Class with regard to the subject Dishwashers through television, newspaper, Internet, and magazine advertisements; (iii) the dealers that sold the subject Dishwashers to and communicated with members of the Class are agents, in law or in fact, of Defendants; (iv) Defendants entered into contracts with

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

members of the Class in connection with the assurance of warranties; and (v) Plaintiffs are third-party beneficiaries of warranties that ran from Defendants to its agents, the dealers.

128.    As a result of Whirlpool's and Sears' breach of its implied warranties, Plaintiffs and the members of the Nationwide Class have suffered damages that were directly and proximately caused by the unreasonably dangerous dishwashers.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

<u>Count II</u>
**Breach Of Express Warranties**
**(Plaintiffs David Brown, Tuyet Brown**
**And Susan Milicia, Individually And On Behalf Of All Members**
**Of The National Subclass, Against Defendant Whirlpool)**

129.     The allegations in Paragraphs 1-119 are incorporated by reference as though fully stated herein.

130.     Defendant Whirlpool designed, manufactured, produced, tested, inspected, marketed, and/or sold the subject Dishwashers.

131.     Whirlpool expressly warranted that in the second through fifth years from the date of installation it would provide, free of charge, any replacement parts for electronic control components in the Dishwashers.

132.     The aforesaid representations were material.  Plaintiffs David Brown, Tuyet Brown and Susan Milicia and the members of the National Subclass relied upon the representation and/or warranty that they would be supplied a dishwasher free of defects.

133.     The express warranties were part of the bargain between the Whirlpool, on the one hand, and these Plaintiffs and the members of the National Subclass, on the other.

134.     Within the two to five year express warranty window for electronic control components, Plaintiffs David Brown, Tuyet Brown and Susan Milicia and the members of the National Subclass experienced problems with their electronic control boards.

135.     Whirlpool was notified regarding the Dishwasher problems experienced by each of the above Plaintiffs and the members of the National Subclass, but failed to provide these Plaintiffs with a defect-free electronic control board and related components free of charge.

136.     Defendant Whirlpool breached its express warranties to these Plaintiffs and the members of the National Subclass in that the Dishwashers did not perform as represented by Whirlpool, and Whirlpool failed to provide replacement parts for the defective electronic control board

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

and related components free of charge when they failed or malfunctioned within the second to fifth years from that date of installation.

137.    Defendant Whirlpool was put on notice of its breach of express warranties by Plaintiffs and National Subclass members who have made warranty claims, demanded service and repair for the defective electronic control boards and complained to Whirlpool's customer service regarding the defective nature of the electronic control boards and Defendant's failure to repair them.

138.    The element of privity, if found to be applicable, exists vis-à-vis Defendants and Plaintiffs because, *inter alia*: (i) Defendants had direct written communications with members of the Class with regard to the subject Dishwashers in the form of standardized warranty forms, registration cards and other similar documents; (ii) Defendants had direct communications with members of the Class with regard to the subject Dishwashers through television, newspaper, Internet, and magazine advertisements; (iii) the dealers that sold the subject Dishwashers to and communicated with members of the Class are agents, in law or in fact, of Defendants; (iv) Defendants entered into contracts with members of the Class in connection with the assurance of warranties; and (v) Plaintiffs are third-party beneficiaries of warranties that ran from Defendants to its agents, the dealers.

139.    As a result of Whirlpool's breach of its express warranties, Plaintiffs David Brown, Tuyet Brown and Susan Milicia and the members of the National Subclass have suffered damages that were directly and proximately caused by the unreasonably dangerous Dishwashers.

COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

**Count III**
**Strict Product Liability**
**(All Plaintiffs, Individually And On Behalf**
**Of The National Class, Against All Defendants)**

140.    The allegations in Paragraphs 1-119 are incorporated by reference as though fully stated herein.

141.    Defendants are engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling kitchen essentials and appliances, and did design, manufacture, distribute, advertise, market, promote and/or sell the Dishwashers at issue herein.

142.    The subject Dishwashers were expected to and did reach Plaintiffs without substantial change in the condition in which they were manufactured, sold and distributed.

143.    The Dishwashers were in a defective and unreasonably dangerous condition when they left Defendants' possession or control in that under normal conditions, usage, and applications, the dishwashers could not withstand use for which they were intended, including but not limited to that electrical failure would spontaneously occur, resulting in overheating and/or smoke and/or fire, causing damage to the Dishwasher and/or the surrounding area, as well as threatening the consumers' personal safety.

144.    Plaintiffs used the subject Dishwashers in a manner reasonably intended by Defendants.

145.    The Dishwashers were defective for the following reasons: (1) they were not safe for ordinary and intended uses; (2) Defendants failed to provide Plaintiffs, either directly or indirectly, with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the Dishwashers; (3) the Dishwashers contained defects and were not reasonably safe as they were designed; (4) the design, methods of manufacture, and testing of the Dishwashers did not conform to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared and the Dishwashers were manufactured.

31

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

146.   As a direct and proximate result of the defective condition of the Dishwashers, Plaintiffs have suffered property damages and other incidental and consequential damages.

**Count IV**
**Strict Product Liability for Failure to Warn**
**(All Plaintiffs, Individually And On Behalf**
**Of The National Class, Against All Defendants)**

147.   The allegations in Paragraphs 1-119 are incorporated by reference as though fully stated herein.

148.   The subject Dishwashers were designed, manufactured and sold by Defendants in the regular course of business and were expected to and did reach Plaintiffs without substantial change in the condition in which they were manufactured, sold and distributed.

149.   The subject Dishwashers were in a defective and unreasonably dangerous condition when they left Defendants' possession or control in that under normal conditions, usage, and applications, the Dishwashers could not withstand use for which they were intended, including but not limited to that electrical failure would spontaneously occur, resulting in overheating and/or smoke and/or fire, causing damage to the Dishwasher and/or the surrounding area, as well as posing a safety risking to consumers.

150.   Defendants had no reason to believe that consumers of their Dishwashers would be aware of the foreseeable harm associated with the use of the Dishwashers.

151.   Prior to and after distributing the subject Dishwashers to Plaintiffs, Defendants failed to warn Plaintiffs about the design defects in the subject dishwashers, incorporated in the units' manufacture, and the dangers that those defects would pose.

152.   Prior to and after distributing the subject Dishwashers to Plaintiffs, Defendants had a legal duty to warn Plaintiffs about the defects in the Dishwashers and the dangers that those defects posed.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

153.   As a direct and proximate result of Defendants' failure to warn of the defective and unreasonably dangerous design and condition of the Dishwashers, Plaintiffs have suffered property damages and other incidental and consequential damages.

**Count V**
**Unjust Enrichment/Restitution**
**(All Plaintiffs, Individually And On Behalf**
**Of The Nationwide Class, Against All Defendants)**

154.   The allegations in Paragraphs 1-119 are incorporated by reference as though fully stated herein.   This claim is plead in the alternative to the warranty and contractual based claims, pursuant to FED. R. CIV. P. 8(d)(2).

155.   Count V of this Class Action Complaint is pled in the alternative to Counts I and II.

156.   Defendants designed, manufactured, marketed, advertised, distributed, warranted and/or sold the Dishwashers with the design defect alleged herein.

157.   Defendants marketed, advertised and/or promoted the subject Dishwashers as merchantable, free of defects, fit for ordinary purpose for which they were to be used, and safe for said purpose as set forth more fully above.

158.   Defendants have had knowledge of the existence of the design defect since as early as 2008.

159.   Despite Defendants' knowledge of the design defect, Defendants have failed to disclose the existence of the defect – a clearly material fact – to Plaintiffs and Class members, at the times each of them purchased their Dishwashers.

160.   Defendants were directly or indirectly enriched by Plaintiffs and members of the Class, who, without knowledge of the design defect, made payments for their Dishwashers.

161.   Plaintiffs did not receive Dishwashers that were free from defects, fit for the ordinary purpose for which they were to be used, and safe for said purpose.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

162.    It would be inequitable for Defendants to retain this money, in light of their knowledge of product defects, because Plaintiffs did not, in fact, receive products that were free of defect, fit for the ordinary purpose for which they were to be used, and safe for said purpose.

**Count VI**
**Fraudulent Concealment/Nondisclosure**
**(All Plaintiffs, Individually And On Behalf**
**Of The Nationwide Class, Against All Defendants)**

163.    The allegations in Paragraphs 1-119 are incorporated by reference as though fully stated herein.

164.    At all relevant times, Defendants knew that the Dishwashers were defective in their design and manufacture, and would fail in advance of their anticipated useful life under ordinary use and conditions.

165.    Defendants also knew that the defect posed a serious risk of damage to property of Plaintiffs and the Class, but concealed that information from them.

166.    The concealed information regarding the defect is material in that a reasonable consumer would find that information important when deciding whether to buy the Dishwashers.

167.    Defendants were and are under a duty to Plaintiffs and Class members to disclose these facts because:

A.    Defendants are in a superior position to know the truth about the quality and nature of the Dishwashers; and

B.    Defendants actively concealed from Plaintiffs and Class members the fact that the Dishwashers were and are defective and likely to fail in advance of their reasonably expected useful life, and pose a serious fire hazard.

168.    Defendants fraudulently and intentionally concealed from and/or failed to disclose to Plaintiffs and the Class members the facts described above with the intent to defraud Plaintiffs and Class members and for the purpose of inducing Plaintiffs and Class members to act thereon by

34

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

purchasing the Dishwashers. Defendants knew that Plaintiffs and Class members would not purchase the Dishwashers if Defendants had disclosed the defective nature of the Dishwashers' design and manufacture.

169.   Plaintiffs and the Class members were unaware that the electronic control boards are defective in their design and manufacture, prone to failure, and a serious and potentially fatal fire hazard.

170.   Had Defendants disclosed the true defective nature of the Dishwashers, Plaintiffs and the Class members would not have purchased their Dishwashers.

171.   As a direct and proximate cause of Defendants' misconduct, Plaintiffs and the Class members have suffered actual damages in that they have or will have to continue to pay for repairs and service visits, or for replacement dishwashers. Plaintiffs and the Class members have also suffered unreasonable diminution in value of the Dishwashers as a result of Defendants' misconduct.

172.   Defendants' misconduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

### Count VII
### Negligence
### (All Plaintiffs, Individually And On Behalf
### Of The Nationwide Class, Against All Defendants)

173.   The allegations in Paragraphs 1-119 are incorporated by reference as though fully stated herein.

174.   Defendants owed a duty to Plaintiffs to design, manufacture, produce, test, inspect, market, distribute and sell the Dishwashers with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs from foreseeable and unreasonable risk of harm.

175.   Defendants breached that duty by defectively designing and manufacturing the subject Dishwashers.

COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

176.   Defendants knew or should have known that the Dishwashers it designed, manufactured, produced, tested, inspected, marketed, distributed and sold, in ordinary and foreseeable use, would fail to perform as intended.

177.   Defendants knew or should have known that the Dishwashers created an unreasonable risk of catastrophic property damage, personal injury and death.

178.   Due to their superior knowledge of the defects in the Dishwashers, Defendants had a duty to disclose to the public the defective nature of the Dishwashers.  Defendants further had a duty not to put defective products on the market.

179.   Defendants failed to exercise reasonable care with respect to the design, development, manufacture, production, testing, inspection, marketing and sale of the Dishwashers by, among other things, failing to design and manufacture the Dishwashers in a manner to ensure that under normal intended usage, electrical failure would not occur; failing to warn or to warn adequately and sufficiently, either directly or indirectly, the foreseeable users of the defective nature of the Dishwashers; and failing to represent accurately to Plaintiffs, whether directly or indirectly, that the Dishwashers posed an unreasonable safety risk.

180.   As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered property damages and other incidental and consequential damages.

**Count VIII**
**Violations Of The California Consumer Legal Remedies Act, Civ. Code § 1750, *et seq.***
**(Plaintiffs David Brown, Tuyet Brown, Kurt Himler And James Cashman, Individually And On Behalf Of All Members Of The California Subclass, Against All Defendants)**

181.   The allegations in Paragraphs 1-119 are incorporated by reference as though fully stated herein.

182.   The California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* prohibits "unfair or deceptive acts or practices."

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

183.   Defendants developed, manufactured, marketed and sold the subject Dishwashers.  The Dishwashers are defective because the electronic control boards spontaneously overheat and/or emit smoke and fumes and/or erupt into flames or otherwise fail within the reasonably expected useful life of the Dishwashers, causing the Dishwashers to fail.

184.   Defendants had knowledge of the defect as early as 2008 as a result of numerous consumer complaints and warranty claims relating to the electronic control board problems.

185.   This defect is material, as the Dishwashers cease to perform prematurely, pose a serious fire hazard, and Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and the members of the California Subclass would not have purchased the Dishwashers had they known of the defect.

186.   The National Association of Home Builders and Bank of America Home Equity found that the life expectancy of dishwashers is 9 years; Demnesne provides that the average life expectancy of dishwashers is 10 years; and the Association of Home Appliance Manufacturers cites a National Family Opinion, Inc. 1996 Survey stating that the average useful life of a built in under the counter dishwasher is 13 years.

187.   Consumers reasonably expect that their expensive dishwashers will function well beyond the one to few years period included by Defendants in their warranties.

188.   Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and the members of the California Subclass were not aware that the Dishwashers were defective at the time of sale and were substantially likely to fail within the reasonably expected lifespan of the product, and were a serious fire hazard.

189.   Defendants had a duty to disclose its knowledge of this material defect because, *inter alia*, Defendants possessed superior and exclusive knowledge about complaints as early as 2008;

COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

Defendants concealed the defect, never recalling the Dishwashers, and never notifying the purchasers, even ones who had their Dishwasher replaced or repaired under warranty.

190.    Defendants failed to disclose to Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and the members of the California Subclass the material fact that the Dishwashers were defective and would fail prematurely, posing a serious safety risk.  Defendants' failure to disclose this defect constituted a violation of Cal. Civ. Code §§ 1770(a)(5) and 1770(a)(7).

191.    Additionally, Defendants violated Cal. Civ. Code § 1770(a)(9) when they advertised and marketed the Dishwashers with the intent not to sell them as advertised.  Specifically, Defendants represented that the Dishwashers were free of design defects, even though Defendants knew at all relevant times, but failed to disclose to Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and the members of the California Subclass, that the Dishwashers were in fact defectively designed, and that such defect was incorporated in the units' manufacture.

192.    Defendants engaged in deceptive business practices, in violation of the CLRA, that were designed to induce Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and the members of the California Subclass to purchase the Dishwashers.

193.    By engaging the foregoing unfair and deceptive conduct, Defendants actively concealed and failed to disclose material facts about the Dishwashers equipped with the defective electronic control boards.

194.    The omissions set forth above regarding the Dishwashers are material facts that a reasonable person would have considered important in deciding whether or not to purchase a dishwasher.

195.    Defendants' acts were intended to be deceptive and/or fraudulent, namely, to market, distribute and sell the Dishwashers equipped with the defective electronic control boards.

COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

196.     Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and the members of the California Subclass suffered injury in fact as a direct result of Defendants' misleading marketing campaign and concealment of material facts in violation of the CLRA in that they have paid, or will pay, to repair or replace the Dishwashers that were equipped with electronic control boards that were defective when purchased and that have or will fail before the anticipated useful life of the product.  Had Defendants disclosed the true quality, nature and drawbacks of the Dishwashers, Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and the members of the California Subclass would not have purchased the Dishwashers.  Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and the members of the California Subclass have also been denied the use of their Dishwashers, expended money on replacements, repairs and extended warranties, and suffered unreasonable diminution in value of their Dishwashers as a result of Defendants' conduct.

197.     To this day, Defendants continue to violate the CLRA by concealing the defective nature of the Dishwashers, in continuing to sell the Dishwashers and by selling (and profiting unjustly from) costly replacements and repairs of the Dishwashers and/or electronic control boards.

198.     For their violation of the CLRA, Plaintiffs seek injunctive relief on behalf of themselves and the California Subclass.

**Count IX**
**Violations of California Business & Professions Code § 17200, *et seq.***
**(Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman, Individually And On Behalf Of All Members Of The California Subclass, Against All Defendants)**

199.     The allegations in Paragraphs 1-119 are incorporated by reference as though fully stated herein.

200.     California Business and Professions Code § 17200, *et seq.* (the "California UCL") prohibits "unfair competition" including business practices.  Defendants' conduct, as described above, is unlawful or fraudulent in violation of the statute.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

201. Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1572, 1709, 1710, 1770(a)(2), 1770(a)(5), 1770(a)(7) and/or 1770(a)(9). Defendants' acts and practices are also unlawful because they violate the Song-Beverly Warranty Act and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312.

202. Defendants violated the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq.*, when they failed to disclose the fact that the Dishwashers were defective as described herein when they had a duty to disclose the defects at issue and instead falsely represented, through advertising, promotional materials, warranties and other express representations, that the Dishwashers were fit for ordinary purposes and did not pose a serious safety risk, in violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").

203. Defendants violated the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq.*, when they failed to disclose the fact that the Dishwashers were defective as described herein when they had a duty to disclose the defects at issue and instead falsely represented, through a pervasive campaign of advertising, marketing and/or other express representations, as well as in their warranties and other written materials, that the Dishwashers were of a certain quality or standard when they were not, in violation of the CLRA.

204. Defendants developed, manufactured, marketed and/or sold the subject Dishwashers. The Dishwashers are defective because the electronic control boards spontaneously overheat and/or emit smoke and fumes and/or erupt into flames within the reasonably expected useful life of the Dishwashers, causing the Dishwashers to fail.

205. Defendants had knowledge of the defect as early as 2008 as a result of numerous consumer complaints and warranty claims relating to the electronic control board problems.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

206.   Defendants failed to disclose to Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and members of the California Subclass the material fact that the Dishwashers were defective and would fail prematurely and pose a serious fire hazard.

207.   These Plaintiffs and Subclass members did not have knowledge of the defect at the time of purchase of their Dishwashers.

208.   Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and members of the California Subclass reasonably expected their Dishwashers to last well beyond the one to few years period included by Defendants in their warranties.  The National Association of Home Builders and Bank of America Home Equity found that the life expectancy of dishwashers is 9 years; Demnesne provides that the average life expectancy of dishwashers is 10 years; and the Association of Home Appliance Manufacturers cites a National Family Opinion, Inc. 1996 Survey stating that the average useful life of a built in under the counter dishwasher is 13 years.

209.   Defendants' business acts and practices alleged herein are unlawful within the meaning of the California UCL.  Specifically, the business acts and practices are unlawful because, among other things, they violate the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792, *et seq.*

210.   Defendants' business acts and practices alleged herein are fraudulent within the meaning of the California UCL.  Specifically, as entities with exclusive knowledge of regarding the defect in the Dishwashers, Defendants had a duty to disclose the defect, particularly the fact that they posed a serious fire hazard, to Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and members of the California Subclass.  These Plaintiffs and Subclass members reasonably expected that Defendants would disclose the existence of any defect in the Dishwashers to them, information which is and was material to these Plaintiffs and other members of the Subclass.  Moreover, Defendants, at all relevant times, knew or should have known that these Plaintiffs and members of the

41

Subclass did not know or could not have reasonably discovered the defect prior to experiencing problems with the electronic control boards overheating and/or emitting smoke and fumes and/or erupting into flames.

211.   By failing and refusing to disclose the existence of a defect in the Dishwashers, Defendants have engaged in actionable, fraudulent conduct within the meaning of the California UCL. Had Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and members of the California Subclass known about the defect in the Dishwashers, they would not have purchased the Dishwashers.

212.   Defendants' business acts and practices alleged herein are unfair within the meaning of the California UCL.  Specifically, by failing to disclose and concealing the existence of the defect in the Dishwashers, Defendants have engaged in unfair conduct within the meaning of the California UCL.

213.   The nature of Defendants' misconduct has been consistently recognized as unfair conduct within the meaning of the California UCL as it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

214.   Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and members of the California Subclass have suffered actual injuries because, *inter alia*, they have been required to make out-of-pocket payments for repairs arising out of the defect in the Dishwashers.  Furthermore, Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman and members of the California Subclass have suffered actual injuries because they paid more to purchase the Dishwashers than they would have if all material information, including information regarding the defect in the Dishwashers, had been disclosed to them.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

215.    Defendants' unlawful, unfair, and fraudulent business acts and practices continue through the date of this Complaint's filing and, absent a Court order, Defendants will not comply with its obligations under the California UCL.

216.    Under the California UCL, Plaintiffs David Brown, Tuyet Brown, Kurt Himler and James Cashman, individually and on behalf of the members of the California Subclass, request that this Court enjoin Defendants from engaging business practices that constitute unfair competition. These Plaintiffs further request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair practices, as provided for in Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345, and for such other relief as set forth below.

**Count X**
**Declaratory Relief Pursuant To 28 U.S.C. § 2201**
**(All Plaintiffs, Individually And On Behalf Of**
**The Nationwide Class, Against All Defendants)**

217.    The allegations in Paragraphs 1-119 are incorporated by reference as though fully stated herein.   This claim is plead in the alternative to the warranty and contractual based claims, pursuant to FED. R. CIV. P. 8(d)(2).

218.    There is an actual controversy between Defendants and the Class concerning the validity of the time limitation in the warranty on Defendants' Dishwashers.

219.    Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

220.    Defendants wrongfully denied warranty claims as untimely despite the root cause of the electronic control board problems being the latent defects described herein.

221.    Accordingly, Plaintiffs and members of the Class seek a declaration that Defendants' warranties regarding the time limitations on manufacturing defects in material or workmanship are void, invalid and not enforceable.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray that the Court:

1.      Certify this action as a class action, with appropriate Subclasses, pursuant to Fed.R.Civ.P. 23, designate Plaintiffs as the Class representatives, and counsel for Plaintiffs as Class Counsel;

2.      Permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein, and order Defendants to engage in a corrective notice campaign;

3.      Grant a permanent injunction mandating that Defendants pay, in part or in whole, for the repair and/or replacement of the Dishwashers and/or defective electronic control boards;

4.      Compel Defendants to establish a program to reimburse its warranty claims previously denied or paid in part, reimburse Defendants' customers who have had to pay to repair and/or replace the defective Dishwashers and/or electronic control boards and related components (except as to Count VIII, as to which injunctive relief only is sought);

5.      Grant restitution to Plaintiffs and the members of the Class and require Defendants to disgorge their ill-gotten gains (except as to Count VIII, as to which injunctive relief only is sought);

6.      Award damages other than for personal injuries, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Class in an amount to be determined at trial, for the acts complained of herein (except as to Count VIII, as to which injunctive relief only is sought);

7.      Award Plaintiffs and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

8.      Award Plaintiffs pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

9.      Grant all other and further relief to which Plaintiffs and the Class are entitled by law or in equity as may be determined by the Court to be just, equitable and proper.

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray that the Court:

1.     Certify this action as a class action, with appropriate Subclasses, pursuant to Fed.R.Civ.P. 23, designate Plaintiffs as the Class representatives, and counsel for Plaintiffs as Class Counsel;

2.     Permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein, and order Defendants to engage in a corrective notice campaign;

3.     Grant a permanent injunction mandating that Defendants pay, in part or in whole, for the repair and/or replacement of the Dishwashers and/or defective electronic control boards;

4.     Compel Defendants to establish a program to reimburse its warranty claims previously denied or paid in part, reimburse Defendants' customers who have had to pay to repair and/or replace the defective Dishwashers and/or electronic control boards and related components (except as to Count VIII, as to which injunctive relief only is sought);

5.     Grant restitution to Plaintiffs and the members of the Class and require Defendants to disgorge their ill-gotten gains (except as to Count VIII, as to which injunctive relief only is sought);

6.     Award damages other than for personal injuries, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Class in an amount to be determined at trial, for the acts complained of herein (except as to Count VIII, as to which injunctive relief only is sought);

7.     Award Plaintiffs and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

8.     Award Plaintiffs pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

/ / /

/ / /

44

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

1         9.      Grant all other and further relief to which Plaintiffs and the Class are entitled by law or

2    in equity as may be determined by the Court to be just, equitable and proper.

3

4    Dated: November 1, 2011               COHON & POLLAK, LLP

5

6                                    By: _____

7                                         Jeffrey M. Cohon, of Cohon & Pollak, LLP
                                           Attorneys for Plaintiffs

8                          **DEMAND FOR JURY TRIAL**

9         Plaintiffs hereby demand a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil

10   Procedure on all issues so triable.

11

12   Dated: November 1, 2011               COHON & POLLAK, LLP

13                                     By: _____

14                                         Jeffrey M. Cohon, of Cohon & Pollak, LLP
                                           Attorneys for Plaintiffs

15

16   Of Counsel:

17   Charles S. Fax, Esq.
     Liesel J. Schopler, Attorney at Law

18   Rifkin, Livingston, Levitan & Silver, LLC
     7979 Old Georgetown Road, Suite 400

19   Bethesda, Maryland 20814
     Telephone: (301) 951-0150

20   Telecopier: (301) 951-0172
     cfax@rlls.com; lschopler@rlls.com

21

22   Robert S. Kitchenoff, Esq.
     Weinstein Kitchenoff & Asher LLC

23   1845 Walnut Street, Suite 1100
     Philadelphia, Pennsylvania 19103

24   Telephone: (215) 545-7200
     Telecopier: (215) 545-6535

25   kitchenoff@wka-law.com

26

27

28

                                         45

**COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV11- 1733 DOC (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [X] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.