FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

DEC - 7 2012

CENTRAL DISTRICT OF CALIFORNIA
BY ⟨law⟩                    DEPUTY

1    Jeffrey M. Cohon, Esq. (CSBN 131431)
2    Kristina S. Keller, Esq. (CSBN 161946)
     **COHON & POLLAK, LLP**
3    1999 Avenue of the Stars, 11th Floor
4    Los Angeles, California  90067
     Telephone: (310) 231-4470
5    Facsimile: (310) 231-4610
6    Email: jcohon@cohonpollak.com

7    Charles S. Fax, Esq. (*pro hac vice*)
8    Liesel Schopler, Esq. (*pro hac vice*)
     **RIFKIN, LIVINGSTON, LEVITAN &**
9    **SILVER LLC**
10   7979 Old Georgetown Road, Suite 400
     Bethesda, Maryland 20814
11   Telephone: (301) 951-0150
12   Telecopier: (301) 951-6535
     cfax@rlls.com; lschopler@rlls.com
13

14   David H. Weinstein, Esq. (CSBN 43167)
     Email: weinstein@wka-law.com
15   Robert Kitchenoff, Esq., (admitted *pro hac vice*)
16   Email: kitchenoff@wka-law.com
     **WEINSTEIN KITCHENOFF & ASHER LLC**
17   1845 Walnut Street, Suite 1100
18   Philadelphia, Pennsylvania  19103
     Telephone: (215) 545-7200
19   Telecopier: (215) 545-6535
20
     Steven A. Schwartz, Esq. (*pro hac vice*)
21   Timothy N. Matthews, Esq. (*pro hac vice*)
22   **CHIMICLES & TIKELLIS LLP**
     361 West Lancaster Avenue
23   Haverford, Pennsylvania 19041
24   Telephone: (610) 642-8500
     Telecopier: (610) 649-3633
25   sas@chimicles.com; tnm@chimicles.com
26
27
28

     **THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

STEVE CHAMBERS, an individual; LYNN VAN DER VEER, an individual; KEVIN O'DONNELL, an individual; JOSEPH CICCHELLI, an individual; KURT HIMLER; an individual; SUSAN MILICIA, an individual; GARY LeBLANC, an individual; GEORGE BLISS, an individual; SHIRL MEDERLET, an individual; LYNDEE WALKER, an individual; LINDA SAMPLE, an individual; SUSAN BATHON, an individual; MAUREEN MENEGHETTI, an individual; W. DAVID BEAL, an individual; ZILA KOSWENER, an individual; PAMELA WALCHLI, an individual, RAYMOND PAOLINI, JR., an individual; and JACKIE STEFFES, an individual, all of whom sue in their individual capacities and for all others similarly situated,

Plaintiffs,

vs.

WHIRLPOOL CORPORATION, a Delaware Corporation; SEARS HOLDINGS CORP., a Delaware Corporation; SEARS, ROEBUCK & CO., INC., a New York Corporation.

Defendants.

USDC Case No. SA CV11-1733 DOC (MLGx)

**THIRD AMENDED CLASS ACTION COMPLAINT FOR:**

1. **VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT (BREACH OF EXPRESS WARRANTY) [15 U.S.C. § 2301, *et seq.*]**
2. **VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT (BREACH OF IMPLIED WARRANTIES) [15 U.S.C. § 2301, *et seq.*]**
3. **BREACH OF IMPLIED WARRANTY**
4. **TORTIOUS BREACH OF IMPLIED WARRANTY**
5. **BREACH OF EXPRESS WARRANTY**
6. **STRICT PRODUCTS LIABILITY**
7. **STRICT PRODUCTS LIABILITY – FAILURE TO WARN**
8. **UNJUST ENRICHMENT/ RESTITUTION**
9. **FRAUDULENT CONCEALMENT/ NONDISCLOSURE**
10. **NEGLIGENCE**
11. **VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT [Ohio Rev. Code Ann. §§ 1345.01, *et seq.*]**
12. **VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT [Cal.**

2

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Civ. Code §§ 1750, *et seq.*]
13. VIOLATIONS OF THE
CALIFORNIA UNFAIR
COMPETITION LAW [Cal. Bus.
& Prof. Code §§ 17200, *et seq.*]
14. VIOLATIONS OF THE
GEORGIA FAIR BUSINESS
PRACTICES ACT [OCGA §§ 10-
1-309, *et seq.*]
15. VIOLATIONS OF THE
ILLINOIS CONSUMER FRAUD
AND DECEPTIVE PRACTICES
ACT [815 ILCS §§ 501/1, *et seq.*]
16. VIOLATIONS OF THE
MARYLAND CONSUMER
PROTECTION ACT [Md. Code
Ann., Com. Law §§ 13-301, *et seq.*]
17. VIOLATIONS OF THE
MASSACHUSETTS CONSUMER
PROTECTION ACT [Mass. Gen.
Laws Ch. 93A]
18. VIOLATIONS OF THE
MISSOURI MERCHANDISING
PRACTICES ACT [Mo. Rev. Stat.
§§ 407.010, *et seq.*]
19. VIOLATIONS OF THE NEW
JERSEY CONSUMER FRAUD
ACT [N.J. Stat. Ann. §§ 56:8-1, *et
seq.*]
20. VIOLATIONS OF THE NEW
YORK DECEPTIVE
PRACTICES ACT [N.Y. Gen. Bus.
Law §§ 349, *et seq.*]
21. VIOLATIONS OF THE UTAH
CONSUMER SALES
PRACTICES ACT [Utah Code
Ann. §§ 13-11-1, *et. seq.*]
22. VIOLATIONS OF THE
VIRGINIA CONSUMER
PROTECTION ACT [Va. Code
Ann. §§ 59.1-196, *et seq.*]

3

THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

23. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

## THIRD AMENDED CLASS ACTION COMPLAINT

## INTRODUCTION AND SUMMARY

1.      This class action is brought by aggrieved purchasers of brand-name household dishwashers - designed, manufactured, and/or sold by Defendant Whirlpool Corporation, and marketed, advertised, warranted and sold by Defendants Whirlpool Corporation, Sears Holding Corporation and Sears, Roebuck & Company, Inc. (hereinafter, collectively, "Defendants") under the brand names "Whirlpool," "KitchenAid" and "Kenmore" – that contain a dangerous defect which Defendants knowingly and actively concealed from Plaintiffs, the putative class and the public. The defect causes the dishwashers' electronic control boards to spontaneously overheat, emit smoke, fumes and sparks and erupt in flames.

2.      The electronic control board, also called the circuit board, performs all of the major control functions of the dishwasher. It enables the consumer to operate the dishwasher, select pre-set cycles and select cycle preferences. The control board also monitors basic functions of the dishwasher including cycle selection and cycle completion.

3.      At the time of their sale, the dishwashers contained the devastating defect that causes the electronic control board to overheat, smoke, ignite and combust. The defect prevents the dishwashers from being used as intended during their useful lives and creates a substantial and unreasonable risk of property damage, personal injury and death. In addition to the unreasonable risk of fire posed by these defective dishwashers, smoke and fumes, containing harmful gases, vapors and particulate matter, can quickly permeate an entire house.

4.     The electrical circuit that controls the dishwasher heating element is by far the highest current electrical circuit in the dishwashers, aside from the door switch which carries the full amount of current for all circuits in the machine and is intended to shut off power when the door is opened.  The defect at issue in this case occurs at or around the connection point where the heating element circuit meets the control board, sometimes referred to as a "spade," "blade," or "flag" terminal.[1]  Due to a defective design or manufacturing process or both, the connection point can heat to over 1000 degrees Fahrenheit, which is hot enough to set fire to surrounding plastics and/or wire insulation.

5.     Whirlpool has been aware of defects with high current terminal connections in its dishwashers since at least 1996, when it voluntarily recalled around 500,000 dishwashers because the door switch wiring could overheat and set fire to nearby plastic and/or other components.  In a 1997 deposition of the Manager of Whirlpool Dishwasher Laboratory, in a case involving the death of a father and son killed in a fire caused by their Whirlpool dishwasher, he acknowledged that Whirlpool discovered in 1993 that overheating occurred in the area of the flag terminal and door switch and that the root cause of the wiring melting in the area of the door switches was the crimping connection of the spade terminal.  A poor electrical connection, whether caused by a loose crimp, corrosion or other causes, creates electrical resistance (the same principal on which a toaster heating element works), which in turn can generate an immense amount of heat.

6.     According to a December 11, 2000 Forbes article, "Where There's Smoke," in 1996 Sears technician Wayne Brown called the Consumer Product Safety Commission ("CPSC") saying he had discovered additional fires in dishwashers not

---

[1]     These terminals are essentially small metal tabs connected to the wiring inside the control panel.  A female crimp connector on the wire coming from the wiring harness slides over the tab, connecting the heating element circuit to the board.

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

covered by the recall.  According to the article, Brown told the CPSC that "the switch in these dishwashers cannot handle the amperage because the switch overheats and the terminals melt," and recommended that additional models should be recalled. Nothing was done, and Brown was taken off dishwasher repair.

7.     Thus, Whirlpool knew full-well that high amperage terminal connections in its dishwashers could cause fires if not designed and/or manufactured properly and it knew or should have known to pay the utmost attention to these connections. Nevertheless, Whirlpool continued to use the same or a similar type of crimp connection in high amperage circuits, like the heating element circuit, and to this day fires continue to occur.  All of the fires in Plaintiffs' dishwasher started at the exact same connection in the dishwasher – *i.e.*, the junction of the terminal on the circuit board and the female crimp connection.  While Plaintiffs do not yet know the precise nature of the defect, this much is clear: since at least 1996 Whirlpool has known that the terminal connections used in the high current circuits were a source of fires and that consumers had died as a result.

8.     Defendants designed, manufactured, marketed, advertised, distributed, warranted, sold and/or offered repair services for the Whirlpool-, KitchenAid- and Kenmore-branded dishwashers at issue herein ("Dishwashers") to Plaintiffs and the class.  In conjunction with each sale, Defendants marketed, advertised and warranted that each Dishwasher was of merchantable quality, fit for the ordinary purpose for which dishwashers are used, free from defects in materials and workmanship and would not pose a fire hazard.  All of the Dishwashers at issue in this lawsuit, upon information and belief, were manufactured at Whirlpool's Findlay, Ohio, plant which, upon further information and belief, is the sole plant in North America at which Whirlpool manufactures the Dishwashers, and from which facility they entered the stream of commerce throughout the United States.  Absent discovery, Plaintiffs cannot state with specificity the years during which the defective Dishwashers were designed and manufactured.

6

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

9.    Plaintiffs' and class members' Dishwashers are in jeopardy of combustion so long as they remain in use. Consumers from around the country have posted hundreds of complaints concerning the defective Dishwashers on the website www.KitchenAidFire.com, maintained by Plaintiff Steve Chambers.   In addition, Defendants have received numerous complaints regarding the defective Dishwashers by telephone and electronic mail. For example, on March 12, 2012, Alicia McGill, a consumer living in Atlanta, Georgia, complained that her KitchenAid Dishwasher, model KUDI01ILWH5, started smoking that morning and would not shut off until she disconnected the power.  Her house was filled with the smell of burning plastic.  She called Whirlpool's "Customer Interaction Centre," where the customer representative on the line told Ms. McGill, as she paraphrased it, that she "should never leave the house or take a shower or go to sleep whenever any dishwasher is running."  The representative transferred Ms. McGill to the Supervisor of Whirlpool's "Customer Service Care Solution Team," who told her that she could schedule a service technician to service her Dishwasher but that she would be responsible for all charges. Ms. McGill later confirmed that the circuit board had combusted.  The Dishwasher is sitting in her home in an unusable condition.

10.    Defendants knew, or should have known and were reckless or negligent in not knowing, at or before the time that they sold the first Dishwasher, that they were defective in design; not fit for their ordinary and intended use; would become useless or significantly diminish in value before the end of their reasonably expected useful lives; did not perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants nor in accordance with the reasonable expectations of ordinary customers; that the advertisements and marketing materials for the Dishwashers were likely to deceive a reasonable consumer; and that Defendants were placing a hazardous product into the stream of commerce, thereby causing an unreasonable danger and creating an unreasonable threat to the lives and property of consumers. Defendants had exclusive possession of this knowledge.

THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

11.    Despite this knowledge, Defendants at all times actively concealed material information from Plaintiffs and the class in Defendants' marketing, advertising and sale of the Dishwashers, which Defendants knew to be defective at the time of their sale and thereafter on an ongoing basis.

12.    Defendants also failed to remove the Dishwashers from the marketplace or take adequate remedial action.  To the contrary, Defendants sold and serviced the Dishwashers even though Defendants knew, or should have known and were reckless or negligent in not knowing, that the Dishwashers were defectively designed and at risk of failing prematurely in a catastrophic and dangerous manner, depriving Plaintiffs of the ability to use the Dishwashers for their intended purpose during their useful lives, and potentially causing property damage and personal injury.

13.    Upon information and belief, thousands of the Dishwashers in fact have overheated and combusted, and those still in service are likely to  do so as well due to their dangerous defective design as complained of herein.

14.    As a consequence of Defendants' active and ongoing concealment of material facts, Plaintiffs and the class bought the Dishwashers and have incurred damages.

15.    Plaintiffs and reasonable consumers would not have purchased these Dishwashers had they known of the defect.

16.    Plaintiffs assert claims for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.; breach of express and implied warranties; tortious breach of implied warranty; strict product liability; strict product liability for failure to warn; unjust enrichment/restitution; fraudulent concealment/nondisclosure; negligence; violations of state consumer protection statutes; and declaratory relief pursuant to 28 U.S.C. § 2201.

## PARTIES

## PLAINTIFFS

**A.    Plaintiffs Steve Chambers and Lynn Van der Veer**

8

17.    Plaintiffs Steve Chambers ("Chambers") and his wife Lynn Van der Veer ("Van Der Veer") are citizens of Maryland, domiciled at 11121 Gambrill Park Road, Frederick, Maryland 21702.

18.    Chambers and Van Der Veer purchased an existing home in 2002 in Frederick, Maryland that came with a new KitchenAid Superba Dishwasher, model number KUDS01DJSS0, serial number FL0618828, then valued at approximately $1,000.  On March 22, 2009, they set their Dishwasher to the normal wash cycle. Within minutes, flames erupted from the top of the Dishwasher, rendering it unusable. The flames were an estimated 1100 degrees Fahrenheit, hot enough to cause a product label inside the machine to combust, and might have set fire to material outside the Dishwasher had Van der Veer not been nearby.  Thereafter, the Dishwasher was examined at a laboratory which determined that the circuit board was the source of the combustion.

19.    Chambers telephoned Whirlpool immediately after the fire to alert the company to the problem.  Whirlpool expressed no concern that its product was a fire hazard; refused to send a representative to investigate the fire; and refused to replace the ruined Dishwasher at its own expense.  Chambers and Van der Veer purchased a replacement dishwasher for $1, 072.43 and a warranty therefor for $99.97.  They have suffered financial damages caused by their Dishwasher's failure.

20.    Concerned by Whirlpool's response to his alert, Chambers created a website, www.KitchenAidFire.com ("website"), to see if other consumers had experienced similar problems with their Whirlpool-manufactured Dishwashers. Chambers heard from numerous individuals who also had Dishwashers that were manufactured by Whirlpool and sold under the Whirlpool-, KitchenAid- and Kenmore-brand names, that had spontaneously started to smoke or erupt into flames due to combusting circuit boards.  On the strength of that information, in or about the summer of 2009 Chambers sent a facsimile message to the president of Whirlpool

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

providing the data that he had collected on the website. Chambers never received a response from Whirlpool.

21.     Chambers also called Sears and informed a representative in the company's safety department about the defective Whirlpool-manufactured Dishwashers. Chambers requested that Sears stop purchasing Whirlpool-manufactured Dishwashers until the fire hazard control board problems were resolved. The Sears representative told Chambers that he would look into the issue. However, Chambers received no further communications from Sears.

22.     Despite Chambers' phone call and fax to Whirlpool and phone call to Sears, upon information and belief Whirlpool and Sears thereafter continued to deny – and have not acknowledged to this day – that they are aware that the Dishwashers are defectively designed, causing the control boards to combust and creating a serious safety hazard.

### B.     Plaintiff Kevin O'Donnell

23.     Plaintiff Kevin O'Donnell ("O'Donnell") is a citizen of Georgia, domiciled at 443 Summit Avenue, Marietta, Georgia 30068.

24.     On September 25, 2004, O'Donnell bought a KitchenAid Dishwasher, model number KUDSO1FLSS, serial number FR3312380, from H.H. Gregg in Kennesaw, Georgia for $1,136.14, inclusive of installation, warranty and tax.

25.     The electronic control board in the Dishwasher caught fire on May 23, 2008. As the control board melted, dense smoke and the distinctive odor of burning plastic billowed from the Dishwasher. O'Donnell opened the Dishwasher door to see what was wrong and got hit with scalding hot water. O'Donnell could not turn the machine off at the electronic control board, so he ran to the circuit breaker box and switched that circuit off manually. He then called the fire department. Subsequently, A&E Factory Service, LLC ("A&E"), which on information and belief is a joint

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  venture of Whirlpool and Sears Holdings Corporation that services appliances
2  nationwide, replaced the electronic control board. It took approximately five weeks
3  for the Dishwasher to be repaired.

4      26.    Then, the new electronic control board also caught fire on July 24, 2010,
5  emitting smoke and the smell of burnt plastic. As with the first fire, O'Donnell had to
6  switch the circuit breaker off manually.

7      27.    Following the second Dishwasher incident, O'Donnell called the
8  KitchenAid division of Whirlpool. The representative immediately offered him a
9  $300 discount on a new KitchenAid Dishwasher. O'Donnell asked KitchenAid to
10 replace the Dishwasher without charge as this was his second Dishwasher fire and he
11 did not feel comfortable with the Dishwasher. The representative said that
12 KitchenAid could not do that. O'Donnell then asked for KitchenAid to repair the
13 Dishwasher without charge. The representative agreed to do so.

14     28.    Approximately six weeks after the fire, Whirlpool replaced the heating
15 element and, for the second time, the electronic control board. While the machine is
16 currently working, O'Donnell is afraid to run it and will not do so when he is asleep or
17 when no one is in the house, as an uncontrolled fire could destroy the house or kill
18 him.

19     29.    O'Donnell has suffered damages caused by the failure of his defective
20 Dishwasher and the prospect that it will fail again for the same reason due to the fact
21 that the replacement parts, on information and belief, contain the same defect.

22                     **C.**   **Plaintiff Joseph Cicchelli**

23     30.    Plaintiff Joseph Cicchelli ("Cicchelli") is a citizen of New Jersey,
24 domiciled at 836 Summit Avenue, Hackensack, New Jersey 07601.

25     31.    Cicchelli purchased a Kenmore Elite Dishwasher, model number
26 665.17584200, serial number FM 2401353, from Sears in Hackensack, New Jersey for
27 $919.00, inclusive of an extended warranty and taxes, on or about July 4, 2002, and he
28 installed it on or about July 8, 2002. On Easter of 2010, he turned the Dishwasher on

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

and while it was running, he heard hissing and popping noises. He went into the kitchen and saw sparks and smoke coming from the Dishwasher. Inhaling the smoke, he ran to the Dishwasher and opened the door so that it would turn off, but the machine kept running, spraying water everywhere. Cicchelli then ran to the circuit breaker and manually switched it off. Fortunately, he was able to recover from his smoke inhalation after fully ventilating the premises.

32. Cicchelli later disassembled the machine and discovered that the electronic control board was burned. He purchased a new electronic control board and fuse kit for $169.03.

33. On information and belief, the store where Cicchelli purchased the replacement electronic control board keeps many in stock, as customers frequently purchase them to replace control boards in their Whirlpool-manufactured Dishwashers that have burned out.

34. Cicchelli contacted Sears' customer service by e-mail and phone. Sears did not appear to be concerned over his report of a product fire, and refused to compensate Cicchelli for his loss.

35. Cicchelli has suffered financial damages caused by the Kenmore Dishwasher's catastrophic failure and the prospect that it will fail again for the same reason due to the fact that the replacement parts, on information and belief, contain the same defect.

### D.   Plaintiff Kurt Himler

36. Plaintiff Kurt Himler ("Himler") is a citizen of California, residing at 11075 Hiskey Lane, Tustin, California 92782.

37. Himler purchased his KitchenAid Dishwasher, model number KUDSO1FLSS, serial number FR5219875, from a Sears store in California around 2004. In the summer of 2010, the electronic control board overheated and the Dishwasher caught on fire, charring the wooden cabinets in the kitchen above the Dishwasher.

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

38.   Although Whirlpool eventually replaced the defective Dishwasher at Himler's request, it did so with a downgraded model.  Whirlpool did not compensate Himler for the damaged cabinets.

39.   Himler has suffered financial damages caused by his KitchenAid Dishwasher's catastrophic failure and the prospect that the Dishwasher will fail again for the same reason due to the fact that the replacement Dishwasher, on information and belief, contains the same defect.

### E.   Plaintiff Susan Milicia

40.   Plaintiff Susan Milicia ("Milicia") is a citizen of New Jersey, domiciled at 840 Wessex Lane, Somerdale, New Jersey 08083.

41.   Milicia purchased a KitchenAid Dishwasher, model number KUDPO2CRBS2, serial number FT4107404, for approximately $760.00 with tax and shipping from DirectBuy Club of South Jersey in Maple Shade, New Jersey on October 7, 2006, and had it installed in March of 2007.

42.   Milicia's Dishwasher was serviced on August 3, 2007, by A&E Factory Service for problems with the drain pump and a control fuse.  On December 11, 2007, the Dishwasher was serviced again and the service invoice lists the problem as, "Heater, Thermo & Control Board."  On June 4, 2008, Milicia's Dishwasher was serviced for a control fuse problem again.

43.   In February 2009, the Dishwasher made pinging noises, emitted a burnt plastic smell, shut down mid-cycle and would not drain.  A technician replaced the board, fuse and wiring.  The Dishwasher did the same thing in January 2010.  A technician then replaced the entire fuse kit.

44.   In July 2010, as the Dishwasher was running, it again emitted an intense burnt plastic smell.  Milicia called the Safety Department at Whirlpool and it authorized a service call for diagnostic purposes only.  The A&E technician who came to diagnose the Dishwasher problem determined that the wiring had melted and noted on the service invoice, "part failure:  needs cntrl wire harns all is burn up."  Under the

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

"Parts Required" section, the technician listed, "1 Fuse, 1 Sub Cntrl-E1, 1 Harns-Wire."

45.    Thereafter, Milicia called Whirlpool and advised the representative with whom she spoke that she had discovered multiple complaints online regarding Whirlpool Dishwashers' propensity to burn up.   The Whirlpool representative, however, denied any knowledge of prior complaints about this problem.   Whirlpool offered two options to Milicia: (1) a refund in the amount of $285, a prorated rate based on the age of her Dishwasher, or (2) the purchase of a new Whirlpool Dishwasher for the price of $400.   Susan opted to purchase the new Whirlpool Dishwasher.

46.    Milicia has suffered financial damages caused by her Dishwasher's catastrophic failure and the prospect that the Dishwasher will fail again for the same reason due to the fact that the replacement Dishwasher, on information and belief, contains the same defect.

### F.    Plaintiff Gary LeBlanc

47.    Plaintiff Gary LeBlanc ("LeBlanc") is a citizen of Massachusetts, domiciled at 7 Serena Terrace, Peabody, Massachusetts 01960.

48.    LeBlanc purchased his Kenmore Elite Dishwasher, model number 665.16279400, serial number FR4201316, for $947.48 from a Sears store located in Peabody, Massachusetts on November 4, 2004.

49.    On May 29, 2010, at approximately 10 p.m., LeBlanc's family was already in bed and he was on his way there, when he smelled electrical wires burning (which he recognized because of his experience with computers). He traced the smell to the Dishwasher. When he opened the door, smoke billowed out. The machine did not shut off even though the door was open. The Dishwasher was on its own house circuit breaker, which did not trip, so he had to run down to the basement and manually turn off the circuit breaker.

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

50.     LeBlanc disassembled the door and saw immediately that the electronic control board and related wiring were burnt.  Two of the wires had burned the blade terminals off the electronic control board and melted a hole through the plastic housing in which the electronic control board rests.  The wiring harness also had many wires that were so overheated that they had started melting into the rubber installation on the inside door backing.

51.     LeBlanc called Sears and Whirlpool.  Both companies told him that there was no problem with his Dishwasher and refused to help him.

52.     LeBlanc then contacted "Sears Cares," Sears' executive customer service, and it dispatched a technician to examine the Dishwasher on June 11, 2010.  The technician advised that he had never seen a dishwasher "cooked that bad" before, and that it needed a new electronic control board and wiring harness.  The inspection cost $129.00.  Using a 10% off coupon, LeBlanc spent $218.18 on the replacement parts and a new silverware tray to add to his Dishwasher.  A technician then repaired the Dishwasher on June 25, 2010 for an additional $69.00.  Sears provided LeBlanc with $224 credit to his AMEX charge card to share the repair cost.

53.     While LeBlanc's Dishwasher was repaired, he will no longer operate it when he is sleeping or when no one is home for fear that it will burn the house down and/or kill him and his family.  LeBlanc has suffered financial damages caused by the Dishwasher's catastrophic failure and the prospect that the Dishwasher will fail again for the same reason due to the fact that the replacement parts, on information and belief, contain the same defect.

### G.     Plaintiff George Bliss

54.     Plaintiff George Bliss ("Bliss") is a citizen of California, domiciled at 514 De Witt Park Road, Yreka, California 96097.

55.     He and his wife purchased their Whirlpool-brand Dishwasher, model number GU1500XTLQ3, serial number FR3625065, from a Sears outlet in Yreka, California, on January 1, 2005 for approximately $478 and $33.46 in sales tax.

15

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

56.   On November 25, 2011, while they were running their Dishwasher, they noticed a distinctive burning electrical odor in their kitchen.  At that time they could not determine the source.  The next time they used the Dishwasher – on November 27, 2011 – they again noticed the odor, which was getting progressively worse.  Bliss then realized that it was coming from the Dishwasher, and specifically, from the location of the control panel.   He turned the machine off and flipped the breaker to the Dishwasher.  Bliss then opened the control panel, saw the scorched circuit board and observed black coloration and burnt wires throughout.

57.   Bliss then determined from on-line research that Whirlpool-manufactured Dishwashers were combusting in this manner.  He had the Dishwasher disconnected and replaced it with a new dishwasher made by a competing manufacturer, costing him approximately $700.00.   Bliss has suffered financial damages caused by the Dishwasher's control panel overheating and failure.

### H.   **Plaintiff Shirl Mederlet**

58.   At the time her claim arose, Plaintiff Shirl Mederlet ("Mederlet") was a citizen of Virginia, domiciled at 72 Fox Fire, Cloverdale, Virginia 24077.  Subsequent to the filing of this lawsuit, Mederlet moved her domicile to North Carolina.  As of the filing of this Third Amended Complaint, she retains her house in Virginia, where her Dishwasher remains.

59.   Mederlet purchased her Kenmore Elite Ultrawash Dishwasher, Model No. 665.13922K010, Serial No. F03504603, on January 13, 2010, from Sears Roebuck in Valley View Mall in Roanoke, Virginia.  She paid $764.73.

60.   In late December 2011 or early January 2012, as she was running the Dishwasher, Mederlet started to smell smoke.  She then saw sparks and smoke coming out of the machine.  The circuit breaker kicked off.  The Dishwasher's circuit board, control panel and other components had burned, and the Dishwasher was unusable. Mederlet called Whirlpool to complain; the Whirlpool representative told her to call Sears.  She called then Sears and was told that her machine was out of warranty.  In

fact, the Dishwasher was within Sears' two-year warranty. Mederlet was advised that she could pay $225 for a new service contract to get the machine fixed by Sears. Mederlet rejected that offer stating that she did not feel that she should have to pay anything to fix a fourteen-month-old Dishwasher that came with a two-year warranty on "electronic control and power supply board." The Sears representative said she should try to contact Whirlpool about the problem.

61.     On February 5, 2012, Mederlet e-mailed Whirlpool about her Dishwasher incident. In her e-mail she complained that Sears would not do anything about the problem. She further stated this is a common problem according to postings on the Internet. Doris B., e-Solutions Specialist at Whirlpool Customer eXperience Center, responded by e-mail on February 6, 2012, stating, "Whirlpool builds some, but not all, Kenmore products. Any information we might have would be company confidential as Kenmore prefers to retain all literature and handle all customer service and repair service. Please call Kenmore at 800-469-4663 for all customer service or repair inquiries."

62.     Ultimately, Mederlet had the Dishwasher repaired at her own expense. The repairs included a new circuit board and control panel. The first replacement panel stopped working however, and so she had to order a second control panel. That cost $100.63. Even after these repairs, Mederlet's Dishwasher continues to trip the breaker when starting a new load. Mederlet has suffered financial damages caused by her Dishwasher's overheating and consequent failure and the prospect that the Dishwasher will fail again for the same reason due to the fact that the replacement parts, on information and belief, contain the same defect.

### I.     **Plaintiff LynDee Walker**

63.     Plaintiff LynDee Walker ("Walker") is a citizen of Virginia, domiciled with her husband Justin at 14912 Walnut Bend Road, Midlothian, Virginia 23112.

64.     Her KitchenAid Dishwasher, Model No. kudk01tkwh0, Serial No. fl2502835, was in her home when she purchased it on April 30, 2010. On October 10,

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

2011, as her Dishwasher was running, Walker smelled burning plastic and went into the kitchen to see smoke pouring out of the front of the Dishwasher. She assumed that something had fallen on the heating element at the bottom of the Dishwasher but she saw nothing awry when she opened the Dishwasher door. Closing the door, Walker noticed that the front panel was very hot. Her husband went to the circuit breaker box in the garage and saw that the breaker to the Dishwasher had flipped. Walker looked online and saw information about the problem with control boards in Whirlpool-manufactured Dishwashers. She and her husband left the circuit breaker to the Dishwasher turned off and called AHS to have it repaired, as the Dishwasher was covered under Walker's AHS home warranty.

65. A technician sent by AHS came on October 13, 2011, and told Walker that the control board was blackened. He diagnosed the problem as "control panel shorted out and burned." The technician advised AHS on the service invoice that he could "replace control board and thermal cutout, there is no guarantee that the same problem will not reoccur as there appear to be multiple recorded cases of the problem reoccurring. Whirlpool may or may not be aware of the issue but has not upgraded the replacement parts or issued a recall to my knowledge." Not wanting to chance another Dishwasher fire, Walker told AHS that she wanted a new dishwasher. Refusing to replace the Dishwasher, AHS offered to pay her the amount that it would have cost the Walkers to repair the unit. Walker accepted that offer.

66. Walker then contacted Whirlpool to make the company aware of the situation. The representative said that Whirlpool would not take the word of the initial technician and that Whirlpool would need to send its own technician to inspect her Dishwasher. Whirlpool did so and its technician reached the same conclusion, calling Whirlpool from Walker's house to report that the control board was the problem.

67. Whirlpool apologized to the Walkers and offered them a 15% rebate on a new dishwasher, provided that it was a Whirlpool-manufactured machine. Thus, Walker suffered economic damages as a result of her Dishwasher's failure, including

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   but not limited to a payment of $392.70 toward the cost of a new Whirlpool unit, plus
2   $60 for the service call on the burned unit, and the prospect that her Dishwasher will
3   fail again for the same reason due to the fact that the replacement Dishwasher, on
4   information and belief, contains the same defect.

5   ### J.      **Plaintiff Linda Sample**

6   68.    Plaintiff Linda Sample ("Sample") maintains residences in Florida and
7   Missouri.  Her Missouri home, where her claim arose, is at 699 Hawk Run Drive,
8   O'Fallon, Missouri 63368.

9   69.    She purchased her Whirlpool Dishwasher, Model No. DU945PWSQ,
10  Serial No. FY4807851, for her Missouri home from a Maytag Store (an authorized
11  Whirlpool dealer) in Missouri, on May 19, 2010, at a cost approximately $450.  On
12  October 11, 2011, while running her Dishwasher through its wash cycle, Sample's
13  daughter, Sarah, smelled burning coming from the machine and immediately shut it
14  off.  Sample spoke to the manager of the store where she purchased the machine; he
15  claimed that he had no knowledge of any fire issues with Whirlpool Dishwashers.
16  Sample was required to purchase replacement parts for $218.16, including a new
17  circuit board to replace the one that had burned.  In addition, she had to pay $75 as a
18  service charge.  When the Dishwasher was used again following the repairs, Sample
19  discovered that the soap dispenser would not open and that the delay start and dry
20  feature would not work.  Sample decided to purchase a new Bosch dishwasher for
21  $1201.95, including installation, taxes and warranty, to avoid any further costs or risks
22  associated with the dangerous Whirlpool machine.  Sample has suffered financial
23  damages as a result of her Dishwasher's failure, including but not limited to the cost
24  of the new circuit board and related components,  the cost of the service call to
25  remove and replace the circuit board and related components, and the cost to replace
26  her Dishwasher.

27  ### K.      **Plaintiff Susan Bathon**

28

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    70.    Plaintiff Susan Bathon ("Bathon") is a citizen of Ohio, domiciled at 2277
2    Pointe Place, Cincinnati, Ohio 45244.

3    71.    Bathon's KitchenAid Dishwasher, Model No. KUDK03FTSS3, Serial
4    No. FW2305430, was in her home when she purchased it on June 25, 2010.  The
5    Dishwasher had been purchased by the previous owners in December of 2008 as part
6    of an appliance package through Zaring Homes, the builder of the house.  According
7    to representatives from the KitchenAid division of Whirlpool, the Dishwasher was
8    valued at between $800 and $900.

9    72.    On January 28, 2012, Bathon's Dishwasher was running, and was about
10   half-way through the cycle when she noticed the smell of metal burning.  She saw
11   smoke near the Dishwasher.  Neither the fuse nor the switch was tripped, although the
12   Dishwasher had stopped mid-cycle on its own and appeared to have no power.  A
13   licensed repairman inspected the unit and advised her that the wiring harness had
14   melted to and damaged the control board.  The repair would have required a new
15   control board and wiring harness.  The technician wrote on the service invoice,
16   "Found wiring harness melted to Board and Board was damaged.  Re-order new board
17   and harness but customer does not feel safe."

18   73.    Bathon contacted KitchenAid and was offered the option of purchasing a
19   new comparable Dishwasher for $150, which she took.  Bathon incurred an additional
20   cost of $85.15 for the initial service call.  KitchenAid removed the damaged
21   Dishwasher and retained it.  Bathon suffered financial damages as a result of her
22   Dishwasher's failure, including but not limited to the damages described above and
23   the prospect that her Dishwasher will fail again for the same reason due to the fact that
24   the replacement Dishwasher, on information and belief, contains the same defect.

### L.    **Plaintiff Maureen Meneghetti**

26   74.    Plaintiff Maureen Meneghetti ("Meneghetti") is a citizen of Illinois,
27   domiciled at 16618 Charnswood Court, Tinley Park, Illinois 60477.  Meneghetti
28   purchased her KitchenAid Dishwasher, Model No. KUDK03ITBS2, Serial No.

THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1   FW1107923, from Plass Appliance in Tinley Park, Illinois for $712.11 inclusive of

2   taxes and delivery on April 1, 2008.

3       75.    In November 2011, while the Dishwasher was running, Meneghetti saw

4   smoke and noticed an "electrical smell." Meneghetti tried to turn off the Dishwasher,

5   but the buttons on the control panel, which were all flashing, did not respond. She

6   then shut off power to the Dishwasher by flipping the circuit breaker to the kitchen.

7   Meneghetti had to remove the water manually from the bottom of the Dishwasher.

8       76.    The control panel was burned up. Meneghetti called KitchenAid as the

9   machine was still under warranty. She was told by the KitchenAid representative that

10  she would have to pay the cost of a service call, which ultimately totaled $129. A

11  serviceman from A&E came to her house and examined the machine, removed the

12  burned control board and took it with him, replacing the burned circuit board with a

13  new one. Meneghetti paid for the service call as required. She has suffered financial

14  damages as a result of her Dishwasher's failure and the prospect that it will fail again

15  for the same reason due to the fact that the replacement parts, on information and

16  belief, contain the same defect.

17                      **M.    Plaintiff W. David Beal**

18      77.    Plaintiff W. David Beal ("Beal") is a citizen of New Jersey, domiciled at

19  144 Forest Road, Moorestown, New Jersey 08057. Beal purchased a Whirlpool

20  Dishwasher, Model DU980QPDQ, on or about February 9, 1996, as part of a kitchen

21  renovation.

22      78.    Beal frequently ran the Dishwasher on Sunday morning while he was at

23  church. One Sunday morning, in or around June or July 2002, upon returning from

24  church he noticed smoke and a burning smell in the kitchen. He noticed burn marks

25  on the front of the Dishwasher near the vent and that the Dishwasher would not turn

26  on.

27      79.    Beal contacted Whirlpool's customer service call center about the fire.

28  Beal spoke with a woman, but he does not recall her name. The woman admitted that

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Whirlpool was aware of some defective Dishwasher models that had a propensity to catch fire but, on being told the serial number of Beal's Dishwasher, she told him that his model was not one that had any known defect. The woman subsequently called Beal back. Beal was led to believe that, although Whirlpool was aware of certain models that contained a defect, his Dishwasher was not a defective model and that Whirlpool had already resolved any defects in other models. The woman offered Beal a credit towards a new Whirlpool Dishwasher, which he accepted based on the woman's assurances that any defects in current models had been fixed by Whirlpool. The woman also suggested several local dealers of Whirlpool Dishwasher where Beal could purchase a replacement.

80.    Beal purchased his second Whirlpool Dishwasher, Model no. GU1200XTKQO, in or around July 2002, from Sears using the partial credit from Whirlpool. Beal's credit card statements show that he paid $639.97, which he believes was exclusive of installation and delivery charges. Each Dishwasher on display at Sears included a tag or placard described its features and specifications. The tag or placard did not state that the Dishwasher contained any defect or that it presented any fire risk. Had he been so informed, Beal would not have purchased the Dishwasher.

81.    On April 22, 2011, while his second Whirlpool Dishwasher was running, he noticed smoke coming from the vent and immediately opened the door of the machine to stop its operation. There was a strong and persistent odor of burned plastic or insulation. The fire rendered the machine unusable.

82.    Beal contacted Whirlpool immediately after the fire. Whirlpool asserted that the machine was out of warranty and would not be covered, but agreed to pay for a repairman solely to inspect the machine. On or around April 25, 2011, a repairman from Quaker City Service Company inspected the Dishwasher and confirmed that the touchpad and control panel had caught fire. He estimated the repair to be around $300. Beal refused to pay the $300 for repairs.

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

83.   Beal spoke with Whirlpool again after the inspection.  Whirlpool again asserted that the Dishwasher was out of warranty and that Whirlpool would do nothing further.  The representative admitted, however, that even an out-of-warranty dishwasher should not burst into flames.  Beal offered to send the parts that had caught fire to Whirlpool, but Whirlpool refused his offer.  He paid $521.70 for a new Frigidaire dishwasher, $155.15 for installation and $120 for insurance.  Beal has suffered economic injury caused by his defective Dishwasher.

### N.   **Plaintiff Zila Koswener**

84.   Plaintiff Zila Koswener ("Koswener") is a citizen of New York, domiciled at 11 Jodi Beth Drive, Mahopac, New York 10541.  Koswener and her husband Kenneth bought a Kenmore dishwasher in approximately 2000 from the Sears in the Jefferson Valley Mall in Jefferson Valley, NY.  That dishwasher had mechanical problems, however, and in approximately 2002 or 2003, Sears replaced it with a new Kenmore Dishwasher, Model No. 16582200, Serial No. FW3104456.

85.   At the end of May of 1012, Koswener noticed a strange odor in the house.  Unable to determine the source, she attributed it to a deteriorating fluorescent lamp.  Unaware that the Dishwasher was the actual source of the odor, Koswener started the Dishwasher on June 3, 2012.  Approximately 40 minutes later she saw smoke coming from the machine.  She then saw flames, approximately four inches in length, shooting out of the upper right side of the Dishwasher where the ECB was located.  Koswener immediately opened the door to stop the Dishwasher, at which point it switched off and the flaming ceased.  The Dishwasher continued smoking, however, and Koswener had to open the windows to clear it out.

86.   Koswener had a Sears service contract for the Dishwasher.  When she first telephoned Sears about the incident, the representative told her that if physical fire was involved, Sears should give her a new dishwasher.  However, when the repairman came to service the Dishwasher, he told Koswener that if a dishwasher did not exhibit the same problem four times, even if physical fire were involved, Sears

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1 would not replace the dishwasher. The repairman did replace the wiring harness,
2 control board, digital display and plastic front to the Kosweners' Dishwasher.

3     87.    Koswener has suffered financial damages as a result of her Dishwasher's
4 failure and the prospect that it will fail again for the same reason due to the fact that
5 the replacement parts, on information and belief, contain the same defect.

6                **O.**    **Plaintiff Pamela Walchli**

7     88.    Plaintiff Pamela Walchli ("Walchli") is a citizen of California, domiciled
8 at 1862 Laurinda Drive, San Jose, California 95124. She purchased her KitchenAid
9 Dishwasher, Model No. KUDI01IL, Serial No. FP3806677, from University Electric
10 Home Appliance Center in Santa Clara, California on September 6, 2003.

11     89.    On June 3, 2012, Walchli turned her Dishwasher on and then went to sit
12 in her family room. After approximately 20 to 30 minutes, Walchli smelled electrical
13 burning and heard popping noises. She ran into the kitchen and saw smoke and
14 flames, approximately six inches in length and covering an area approximately six
15 inches wide, coming out of the upper right corner of her Dishwasher near the start
16 button. When she opened the Dishwasher door, it stopped running, but the smoke and
17 flames continued. Walchli managed to blow out the flames but the Dishwasher
18 continued smoking for approximately ten more minutes.

19     90.    Walchli contacted University Electric and asked for the most reliable
20 dishwasher that it sold. Based on its recommendation, she purchased a Miele
21 dishwasher for $1,472.51 to replace her defective and dangerous KitchenAid
22 Dishwasher.

23     91.    Walchli has suffered financial damages as a result of her Dishwasher's
24 failure, including but not limited to the cost to replace her Dishwasher.

25                **P.**    **Plaintiff Raymond Paolini, Jr.**

26     92.    Plaintiff Raymond Paolini, Jr. ("Paolini") is a citizen of New York,
27 domiciled at 38 Livingston Parkway, Amherst, New York 14226. On December 23,
28 2002, Paolini purchased a Whirlpool Dishwasher, Model No. GU1500XTLS0, Serial

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

No. FM3906428, for approximately $800 from Orville's Home Appliances in Amherst, New York.

93.    In approximately May 2012, while Mrs. Paolini was running the Dishwasher, she saw, early in the wash cycle, that thick, gray smoke was billowing out of the vent area. She then saw electrical arcing, approximately six to eight inches in length, going from the control board area to a nickel knob on a cabinet adjacent to the Dishwasher. Mrs. Paolini yelled for husband, who ran into the kitchen. With smoke and electrical arcs shooting out of the Dishwasher toward the adjacent wooden kitchen cabinets, Paolini described the scene as "something out of Frankenstein." Paolini immediately cut power to the Dishwasher – it stopped running and the arcing ceased, ending the threat of fire to the cabinets. The machine continued smoking, however, and the smoke detectors kept going off.

94.    Paolini called Whirlpool. The representative said the Paolini's Dishwasher was out of warranty so there was nothing Whirlpool would do. Paolini responded that this was a safety issue. The representative then said that Whirlpool would send a technician to examine the Dishwasher. Whirlpool sent a technician from Orville's Home Appliances and, upon inspecting Paolini's Dishwasher, shook his head and said, "There's another one. We have been seeing a lot of this." The technician further stated that Paolini's Dishwasher was prohibitively expensive to repair.

95.    Paolini purchased a new dishwasher for approximately $850.

96.    Whirlpool later called Paolini and offered him $100 in exchange for his old Dishwasher. Paolini accepted the offer and surrendered his old Dishwasher to Whirlpool.

97.    Paolini has suffered financial damages as a result of his Dishwasher's failure, including but not limited to the cost to replace his Dishwasher.

### Q.    **Plaintiff Jackie Steffes**

**THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**