1  Jeffrey M. Cohon, Esq. (CSBN 131431)
2  Kristina S. Keller, Esq. (CSBN 161946)
   **COHON & POLLAK, LLP**
3  1999 Avenue of the Stars, 11th Floor
4  Los Angeles, California  90067
   Telephone: (310) 231-4470
5  Facsimile: (310) 231-4610
6  jcohon@cohonpollak.com

7  Charles S. Fax, Esq. (*pro hac vice*)
8  Liesel Schopler, Esq. (*pro hac vice*)
   **RIFKIN, LIVINGSTON, LEVITAN &**
9  **SILVER LLC**
10 7979 Old Georgetown Road, Suite 400
   Bethesda, Maryland 20814
11 Telephone: (301) 951-0150
12 Telecopier: (301) 951-6535
   cfax@rlls.com; lschopler@rlls.com
13
14 David H. Weinstein, Esq. (CSBN 43167)
   Robert S. Kitchenoff, Esq. (*pro hac vice*)
15 **WEINSTEIN KITCHENOFF &**
16 **ASHER LLC**
   1845 Walnut Street, Suite 1100
17 Philadelphia, Pennsylvania  19103
   Telephone: (215) 545-7200
18 Telecopier: (215) 545-6535
19 weinstein@wka-law.com;
20 kitchenoff@wka-law.com

21 Steven A. Schwartz, Esq. (*pro hac vice*)
22 Timothy N. Mathews, Esq. (*pro hac vice*)
   **CHIMICLES & TIKELLIS LLP**
23 361 West Lancaster Avenue
24 Haverford, Pennsylvania 19041
   Telephone: (610) 642-8500
25 Telecopier: (610) 649-3633
26 sas@chimicles.com; tnm@chimicles.com

27
28

Kristen Law Sagafi, Esq. (*pro hac vice*)
Nicole Reynolds, Esq. (*pro hac vice*)
**LEIFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Telecopier: (415) 956-1008k
klaw@lchb.com
nreynolds@lchb.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| **STEVE CHAMBERS, an individual,** *et al.*,<br><br>Plaintiffs,<br><br>**vs.**<br><br>**WHIRLPOOL CORPORATION, a Delaware Corporation,** *et al.*,<br><br>Defendants. | Case No. 8:11-cv-01733-FMO-MLG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Judge:  The Honorable Fernando M. Olguin<br><br>Date: March 25, 2013<br>Time: 8:30 a.m.<br>Courtroom: 9D |

Plaintiffs, on behalf of themselves and those similarly situated, submit herewith their Opposition to the Motion to Dismiss for Failure to State a Claim filed by Defendants Whirlpool Corporation, Sears, Roebuck & Co., and Sears Holding Corporation.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    THE THIRD AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   FED. R. CIV. P. 8(a) AND 12(b)(6) PLEADING REQUIREMENTS . . . . . . . 3

IV.    PLAINTIFFS STATE CLAIMS FOR STRICT PRODUCT LIABILITY,
       FAILURE TO WARN AND NEGLIGENCE . . . . . . . . . . . . . . . . . . . . . . . 3

       A.    The Economic Loss Doctrine Does Not Bar Plaintiffs' Tort Claims . . . . 4

       B.    Chambers And Himler State Claims For Failure To Warn . . . . . . . . . . . 9

       C.    O'Donnell Properly Pleads Damages Under Ga. Law . . . . . . . . . . . . . 11

       D.    The OPLA Does Not Abrogate Bathon's Tort Claims . . . . . . . . . . . . . 12

       E.    The N.Y. Plaintiffs Properly Plead Damages Under N.Y. Law . . . . . . 13

V.     PLAINTIFFS STATE CLAIMS FOR FRAUDULENT CONCEALMENT . . 14

       A.    Plaintiffs Meet The Pleading Requirements Of Fed. R. Civ. P. 9(b) . . . 14

       B.    Defendants Had A Duty To Disclose The Defect . . . . . . . . . . . . . . . . . 17

       C.    A Finding Of Liability Would Not Make Defendants
             Permanent Insurers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

       D.    The NJPLA Does Not Abrogate The Fraudulent
             Concealment Claims Of The N.J. Plaintiffs . . . . . . . . . . . . . . . . . . . . 29

       E.    O'Donnell, Meneghetti, Koswener, Paolini And Steffes Properly Plead
             Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

VI.    PLAINTIFFS STATE CLAIMS FOR BREACH
       OF EXPRESS WARRANTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

VII.   PLAINTIFFS STATE CLAIMS FOR BREACH
       OF IMPLIED WARRANTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

VIII.  PLAINTIFFS STATE CLAIMS FOR TORTIOUS BREACH
       OF IMPLIED WARRANTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

IX.    PLAINTIFFS STATE CLAIMS FOR VIOLATION
       OF THE MAGNUSON-MOSS WARRANTY ACT. . . . . . . . . . . . . . . . . . 38

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

X.      PLAINTIFFS STATE CLAIMS UNDER THEIR RESPECTIVE
        STATE CONSUMER PROTECTION STATUTES . . . . . . . . . . . . . . . . . . . 39

XI.     PLAINTIFFS STATE CLAIMS
        FOR UNJUST ENRICHMENT/RESTITUTION . . . . . . . . . . . . . . . . . . . . . 48

        A.      The Ca. And Ga. Plaintiffs State Claims
                For Unjust Enrichment/Restitution . . . . . . . . . . . . . . . . . . . . . . . . . 48

        B.      The Md., N.J., Mass., Va., Mo., Ill., N.Y. And Utah Plaintiffs
                State Claims For Unjust Enrichment/Restitution . . . . . . . . . . . . . . . 49

XII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

# TABLE OF AUTHORITIES

<u>CASES</u>

*200 North Gilmor, LLC v. Capital One, Nat'l Ass'n*, No. ELH-11-03164,
2012 U.S. Dist. LEXIS 36537 (D. Md. Mar. 19, 2012) . . . . . . . . . . . . . . . . . . .   19

*Ackley v. Wyeth Labs.*, 919 F.2d 397 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . .   25

*Adams v. Genie Indus., Inc.*, 861 N.Y.S.2d 42, 53 A.D.3d 415 (2008),
*aff'd*, 14 N.Y.3d 535, 929 N.E.2d 380 (N.Y. Court of Appeals 2010) . . . . . . . . .   27

*Amato v. Gen. Motors Corp.*, 11 Ohio App. 3d 124,
463 N.E.2d 625 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*American Glue & Resin v. Air Prods. & Chems. Inc.*,
835 F. Supp. 36 (D. Mass. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*AMPAT/Midwest, Inc. v. Illinois  Tool Works, Inc.*, 896 F.2d 1035
(7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*, No.
4:10CV623SNLJ, 2011 U.S. Dist. LEXIS 110505 (E.D. Mo. Sept. 28, 2011) . . . 24

*Artilla Cove Resort v. Hartley*, 72 S.W.3d 291 (Mo. App. 2002) . . . . . . . . . . . . . 24

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . 3

*Associated Diving & Marine Contrs. v. Granite Constr. Co.*, No. 2:01CV330,
2003 U.S. Dist. LEXIS 21560 (D. Utah July 10, 2003) . . . . . . . . . . . . . . . . . . .   9

*ATM Exch., Inc. v. Visa Int'l Serv. Ass'n*, No. 1:05-CV-00732,
2008 U.S. Dist. LEXIS 93461 (S.D. Ohio Aug. 14, 2008) . . . . . . . . . . . . . . . . . 25

*Auto Chem Labs. Inc. v. Turtle Wax, Inc.*, No. 3:07cv156
2008 U.S. Dist. LEXIS 83158 (S.D. Ohio Sept. 23, 2008) . . . . . . . . . . . . . . . . . .25

*Avery Dennison Corp. v. Soliant LLC*, No. 1:04cv1865,
2005 U.S. Dist. LEXIS 17672 (N.D. Ohio Aug. 23, 2005) . . . . . . . . . . . . . . . . 6-7

*Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS
2011 U.S. Dist. LEXIS 8527 (N.D. Cal. Jan. 28, 2011) . . . . . . . . . . . . . . . . . . . . .17

*Baker v. Rodriguez*, No. SACV 11-00138-JST (PJWx)
2011 U.S. Dist. LEXIS 113094 (C.D. Cal. Sept. 29, 2011) . . . . . . . . . . . . . . . . . . 3

*Bank of Montreal v. Signet Bank*, 193 F.3d 818 (4th Cir. 1999) . . . . . . . . . . . . . 23

B*ank of the Ozarks v. Arco Cmty. Outreach Coalition, Inc.*, No. CV 212-017,
2013 U.S. Dist. LEXIS 5740 (S.D. Ga. Jan. 15, 2013) . . . . . . . . . . . . . . . . . . . . 49

*Bobb Forest Prods. v. Morbark Indus.*, 151 Ohio App. 3d 63,
783 N.E.2d 560 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524
(C.D. Cal. Nov. 14, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC (JCx)
2009 U.S. Dist. LEXIS 121768 (C.D. Cal. Dec. 9, 2009) . . . . . . . . . . . . . . . . . . 40

*California Federal Bank v. Matreyek,* 8 Cal. App. 4th 125,
10 Cal. Rptr. 2d 58 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Cambridge Plating Co. v. NAPCO*, 876 F. Supp. 326 (D. Mass. 1995),
*aff'd*, 85 F.3d 752 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

*Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989) . . . . . . . . . .   35-36

*Carter v. E.I. DuPont de Nemours & Co., Inc.*, 217 Ga. App. 139,
456 S.E.2d 661 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351 (E.D. Cal. 2008) . . . . . . . . 34, 36

*Cerney v. Norfolk & W. Railway Co.*, 104 Ohio App. 3d 482,
662 N.E.2d 827 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   45

*Chambers v. Sears Roebuck & Co.*, 793 F. Supp. 2d 938
(S.D. Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Chem Gro of Houghton, Inc. v. Lewis County Rural Elec. Co-op Ass'n*,

vi

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

No. 2:11CV93 JCH, 2012 U.S. Dist. LEXIS 40697
(E.D. Mo. March 26, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Chem. Solvents, Inc. v. Advantage Eng'g, Inc.*, No. 1:10-CV-01902,
2011 U.S. Dist. LEXIS 41378 (N.D. Ohio Apr. 6, 2011) . . . . . . . . . . . . . . . . . . 13

*Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220
(C.D. Cal. June 30, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG (MLGx),
2009 U.S. Dist. LEXIS 125139 (C.D. Cal. June 12, 2009) . . . . . . . . . . . . . . . 39-40

*City of Boston v. Smith & Wesson Corp.*, No. 1999-2590,
2000 Mass. Super. LEXIS 352 (Mass. Super. Ct. 2000) . . . . . . . . . . . . . . . . . . 4-5

*City of Millville v. Rock*, 683 F. Supp. 2d 319 (D.N.J. 2010) . . . . . . . . . . . . . . . 21

*Clark v. Aaron's, Inc.,* NO. No. 1:11-CV-04283-RWS,
2012 U.S. Dist. LEXIS 139172 (N.D. Ga. Sept. 26, 2012) . . . . . . . . . . . . . . . . . 49

*Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP,* No. C-11-2573 EMC,
2011 U.S. Dist. LEXIS 140764 (N.D. Cal. Dec. 7, 2011) . . . . . . . . . . . . . . . . . . 49

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 134 Cal Rptr. 3d 588
(2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Colosimo v. Roman Catholic Bishop*, 2007 UT 25, 156 P.3d 806 (2007) . . . . . . . 34

*Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990 (N.D. Cal. 2010) . . . . . . 49

*Connick v. Suzuki Motor Co. Ltd.*, 174 Ill.2d 482, 675 N.E.2d 584 (1996) . . . . . . 45

*Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853 (JLL)
2008 U.S. Dist. LEXIS 75810 (D.N.J. Sept. 30, 2008) . . . . . . . . . . . . . . . . . . . 35

*Cotton v. Buckeye Gas Products Co.*, 840 F.2d 935 (D.D.C. 1988) . . . . . . . . . . . 23

*Council of Co-owners Atlantis Condo. v. Whiting-Turner
Contracting Co.*, 308 Md. 18, 517 A.2d 336 (1986) . . . . . . . . . . . . . . . . . . . . . 6

*Cover v. Cohen*, 61 N.Y.2d 261, 461 N.E.2d 864 (1984) . . . . . . . . . . . . . . . . 27, 31

*Daffin v. Ford Motor Co.*, No. C-1-00-458
2004 U.S. Dist. LEXIS 18977 (S.D. Ohio July 15, 2004) . . . . . . . . . . . . . . . . . . 38

*Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt
at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234 (2009) . . . . . . . . . . . . . . . . .8

*Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11 (Utah 1990) . . 34

*Davis v. Gap, Inc.*, No. 97 Civ. 8606 (RWS), 1999 U.S. Dist. LEXIS 5689
(S.D.N.Y. Apr. 9, 1999), *reconsideration den.*, 186 F.R.D. 322 (S.D.N.Y. 1999),
*aff'd in part, vacated in part, remanded (on other grounds)*, 246 F.3d 152
(2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*DCR, Inc. v. Peak Alarm Co.*, 663 P.2d 433 (Utah 1983) . . . . . . . . . . . . . . . . . . 8

*DeBenedetto v. Denny's, Inc.*, 421 N.J. Super. 312, 23 A.3d 496 (2010) . . . . . . . 30

*Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827 (S.D. Ohio 2003) . . . . . . . . . .44

*Dewan v. Ford Motor Co.*, 363 Ill. App. 3d 365, 842 N.E.2d 756 (2005) . . . . . . . 30

*Dewey v. Volkswagon AG*, 558 F. Supp.2d 505 (D.N.J. 2008), *rev'd on
other grounds*, 681 F.3d 170 (3d Cir. May 31, 2012) . . . . . . . . . . . . . . . . . . . . . . 34

*Doe v. Flair Corp.*, 129 Ohio App. 3d 739, 719 N.E.2d 34 (1998) . . . . . . . . . . . 25

*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011) . . . . 14, 19, 34, 43, 45

*Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908
(C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Energy Absorption Sys., Inc. v. Roadway Safety Service Inc.*, No. 93 C 2147,
1993 U.S. Dist. LEXIS 13731 (N.D. Ill., Sept. 16, 1993) . . . . . . . . . . . . . . . . . . 14

*Falk v. G.M. Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007),
*abrogated in part, Walsh v. Kindred Healthcare*, No. C 11-00050 JSW,
2012 U.S. Dist. LEXIS 41012 (N.D. Cal. Mar. 26, 2012) . . . . . . . . . . . . . . . 11, 40

*FDIC v. Lattimore Land Corp.*, 656 F.2d 139 (5th Cir. 1981) . . . . . . . . . . . . . . .21

*Feinour v. Ricker Co.*, 255 Ga. App. 651, 566 S.E.2d 396 (2002) . . . . . . . . . . . 34

*Feldman v. Mercedes-Benz United States, LLC*, No. 2:11-cv-00984 (WJM), 2012 U.S. Dist. LEXIS 178924 (D.N.J. Dec. 18, 2012) . . . . . . . . . . . . . . . . . . 11

*Fireman's Fund Ins. Co. v. Allied Programs Corp.*, No. 92 Civ. 7505 (CSH), 1993 U.S. Dist. LEXIS 16247 (S.D.N.Y. Nov. 15, 1993) . . . . . . . . . . . . . . . . . . 14

*First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F. Supp. 2d 156 (D. Mass. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 843 N.E.2d 327 (Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*First Place Bank v. Skyline Funding, Inc.*, No. 10 CV 2044, 2011 U.S. Dist. LEXIS 83430 (N.D. Ill. July 27, 2011) . . . . . . . . . . . . . . . . . . . 27

*Folsom v. Continental Illinois Nat'l Bank & Trust Co.*, 633 F. Supp. 178 (N.D. Ill. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Go for It, Inc. v. Aircraft Sales Corp.*, No. 02 C 6158, 2003 U.S. Dist. LEXIS 11043 (N.D. Ill. June 27, 2003) . . . . . . . . . . . . . . . . . . . 26

*Grammer v. Advocate Mines, LTD*, No. 2:09-92425, 2011 U.S. Dist. LEXIS 151700 (E.D. Pa. Dec. 1, 2011) . . . . . . . . . . . . . . . . . . . 18

*Greenery Rehab. Group, Inc. v. Antaramian*, 36 Mass. App. Ct. 73, 628 N.E.2d 1291 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

*Grill v. Philip Morris USA, Inc.*, 653 F. Supp. 2d 481 (S.D.N.Y. 2009) . . . . . . . 15

*Grynberg v. Questar Pipeline Co.*, 2003 UT 8, 70 P.3d 1 (2003) . . . . . . . . . . . . . 7

*Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST (ANx), 2012 U.S. Dist. LEXIS 117493 (C.D. Cal. Apr. 12, 2012) . . . . . . . . . . . . . . . . . 49

*Hale v. Enerco Group, Inc.*, No. 1:10 CV 00867-DAP, 2011 U.S. Dist. LEXIS 781 (N.D. Ohio Jan. 5, 2011) . . . . . . . . . . . . . . . . . . . . . . 12

ix

1

2   *Hargett v. Snap-On Inc.*, No. WMN-08-CV-3420,

3   2009 U.S. Dist. LEXIS 116661 (D. Md. Dec. 15, 2009) . . . . . . . . . . . . . . . . . . . . . 9

4   *Harvey v. Nissan N. Am., Inc.*, 2005 WL 1252341

5   (N.J. Super. Ct. Apr. 29, 2005) (UNPUBLISHED) . . . . . . . . . . . . . . . . . . . . . . . 22

6   *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025

7   (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

8   *Heider v. Leewards Creative Crafts*, 245 Ill. App. 3d 258,

9   613 N.E.2d 805 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

10  *Hermansen v. Tasulis*, 2002 UT 52, 48 P.3d 235 (2002) . . . . . . . . . . . . . . . . . . . 7-9

11  *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 103 Cal. Rptr. 3d 376 (2009) . . . . . 48

12  *Herrod v. Metal Powder Prods.*, No. 1:07-cv-00023 CW,

13  2012 U.S. Dist. LEXIS 79562 (D. Utah June 7, 2012) . . . . . . . . . . . . . . . . . . . . . 8

14  *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758 (Mo. 2007) . . . . . . 24

15

16  *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814 (D. Md. 2005) . . . 19

17  *Hoey v. Sony Electronics Inc.*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007) . . . . . . . . 29

18  *Hoffer v. Cooper Wiring Devices, Inc.*, No. 1:06CV763,

19  2007 U.S. Dist. LEXIS 42871 (N.D. Ohio June 13, 2007) . . . . . . . . . . . . 12-13, 44

20  *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 524 S.E.2d 790 (1999) . . . . . .12

21

22  *Howard v. IKO Mfg., Inc.*, 2011 Mass. App. Div. 191 (2011) . . . . . . . . . . . . . . .35

23  *Inglis v. Am. Motors Corp.*, 3 Ohio St. 2d 132, 209 N.E.2d 583 (1965) . . . . . . . . 38

24  *In re Bay Vista of Virginia, Inc.*, No. 2:09cv46,

25  2009 U.S. Dist. LEXIS 87154 (Bankr. E.D. Va. June 2, 2009) . . . . . . . . . . . . . . . 50

26  *In re Bendectin Litigation*, 857 F.2d 290 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . 37

27

28

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
687 F. Supp. 2d 897 (W.D. Mo. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*In re Ford Motor Co. E-350 Van Prods. Liability Litig.*, No. 03-4558 (HAA),
2008 U.S. Dist. LEXIS 73690 (D.N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*In re Ford Motor Co. Speed Control Deactivation Switch Prods.
Liab. Litig.*, 664 F. Supp. 2d 752 ( E.D. Mich. 2010) . . . . . . . . . . . . . . . . . . . . . 5

*In re Ford Motor Company Ignition Switch Products
Liability Litigation*, Nos. 96-3125 (JBS), 96-1814 (JBS), 96-3198 (JBS),
1997 U.S. Dist. LEXIS 24064 (D.N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*In re Phillips/Magnavox TV Litig.*, No.: 09-3072 (PGS),
2010 U.S. Dist. LEXIS 91343 (D.N.J. Sept. 1, 2010) . . . . . . . . . . . . . . . . . . . . . 21

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods.
Liab. Litig.*, No. 2:11-md-2233, 2012 U.S. Dist. LEXIS 100180
(S.D. Ohio July 19, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46-47

*In re Samsung DLP TV Class Action Litig.*, No. 07-2141 (GEB),
2009 U.S. Dist. LEXIS 100065 (D.N.J. Oct. 27, 2009) . . . . . . . . . . . . . . . . . . . . 36

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV
Television Litig.*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010) . . . . . . . . . . . . . . . . 37, 39

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
684 F. Supp. 2d 942 (N.D. Ohio 2009) . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 14-15

*Interwest Constr. v. Palmer*, 923 P.2d 1350 (Utah 1996) . . . . . . . . . . . . . . . . . . . 7

*Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900 (N.D. Ill. 2011) . . . . 35

*Johnson v. Henry Vogt Mach. Co.*, 544 F. Supp. 2d 1276 (D. Utah 2008) . . . . . . 34

*Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929
(C.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 31, 41

xi

*Koch Indus., Inc. v. Aktiengesellschaft*, 727 F. Supp. 2d 199 (S.D.N.Y. 2010) . . . 30

*Kowalsky v. Hewlett-Packard Co.*, No.: 10-CV-02176-LHK,
2011 U.S. Dist. LEXIS 89379 (N.D. Cal. Aug. 10, 2011) . . . . . . . . . . . . . . . . . . 39

*Lally v. Printing Machinery Sales & Serv. Co., Inc.*, 240 N.J. Super. 181,
572 A.2d 1187 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*LaPuma v. Collinwood Concrete*, 75 Ohio St. 3d 64, 661 N.E.2d 714 (1996) . . . . 7

*Lara v. Hyundai Motor Am.*, 331 Ill. App.3d 53, 770 N.E.2d 721 (2002) . . . . . . . 35

*Lawley v. Northam*, No.: ELH-10-1074,
2011 U.S. Dist. LEXIS 137971 (D. Md. Dec. 1, 2011) . . . . . . . . . . . . . . . . . . 19, 23

*Lectrodryer v. Seoul Bank,* 77 Cal. App. 4th 723, 77 Cal. Rptr. 2d 881 (2000) . . 48

*Lewis v. Ariens Co.*, 434 Mass. 643, 751 N.E.2d 862 (2001) . . . . . . . . . . . . . . . 22

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) . . . . . . . . . . . . 21

*Lilly v. Hewlett-Packard Co.*, No. 1:05-CV-465,
2006 U.S. Dist. LEXIS 22114 (S.D. Ohio Apr. 21, 2006) . . . . . . . . . . . . . . . . . . 44

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (Cal. Ct. App. 1997),
*abrogated in part, Walsh v. Kindred Healthcare*, No. C 11-00050 JSW,
2012 U.S. Dist. LEXIS 41012 (N.D. Cal. Mar. 26, 2012) . . . . . . . . . . . . . . . . . . 17

*Lindsay v. Toyota Motor Sales, U.S.A., Inc.*, 816 N.Y.S.2d 697
(N.Y. Sup. Ct. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Lipton v. Chattem, Inc.*, No. 11 C 2952,
2012 U.S. Dist. LEXIS 49828 (N.D. Ill. Apr. 10, 2012) . . . . . . . . . . . . . . . . . . 30

*Lubore v. RPM Assoc., Inc.*, 109 Md. App. 312, 674 A.2d 547 (1996) . . . . . . . . 19

*Lumbermen's Underwriting Alliance v. Blount Int'l, Inc.*, No. 3:05-CV-064-JTC,
2007 U.S. Dist. LEXIS 102300 (N.D. Ga. Feb. 5, 2007) . . . . . . . . . . . . . . . . . . 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*MacNeil Auto Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786 (N.D. Ill. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Maillet v. ATF-Davidson Co.*, 407 Mass 185, 552 N.E.2d 95 (1990) . . . . . . . 43-44

*Mancini v. Gorick*, 41 Ohio App. 3d 373, 536 N.E.2d 8 (1987) . . . . . . . . . . . 24-25

*Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 502 (D.N.J. 2009), *rev'd on other grounds*, 2010 U.S. Dist. LEXIS 20212 (D.N.J. 2010) . . . . . . 43, 50

*Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009) . . . . . . . . . . 15

*Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314 (D. Mass. 2005) . . . . . . . . 50

*McCalley v. Samsung Elecs. Am., Inc.*, No. 07-2141 (JAG), 2008 U.S. Dist. LEXIS 28076 (D.N.J. Mar. 31, 2008) . . . . . . . . . . . . . . . . . . . . . 42

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48-49

*MedChoice Fin., LLC v. ADS Alliance Data Sys.*, 857 F. Supp. 2d 665 (S.D. Ohio 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Mendez v. AstraZeneca Pharms. LP*, No. 1:12-CV-00535-LJO-DLB, 2012 U.S. Dist. LEXIS 73270 (E.D. Cal. May 25, 2012) . . . . . . . . . . . . . . . . . . 16

*Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002 (8th Cir. 2006) . . . . . . . . . . 24

*Merklin v. United States*, 788 F.2d 172 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . 21

*Miles v. Raymond Corp.*, 612 F. Supp. 2d 913 (N.D. Ohio 2009) . . . . . . . . . 13, 35

*Minn. Life Ins. Co. v. Philpot,* No. 11cv00812 BTM (POR), 2013 U.S. Dist. LEXIS 2931 (S.D. Cal. Jan. 7, 2013) . . . . . . . . . . . . . . . . . . . 48-49

*Mitchell v. Proctor & Gamble*, No. 2:09-CV-426, 2010 U.S. Dist. LEXIS 17956 (S.D. Ohio Mar. 1, 2010) . . . . . . . . . . . . . . . . . . . 13

*Moore v. Smith*, 2007 UT App 101, 158 P.3d 562 (2007) . . . . . . . . . . . . . . . . . 34

xiii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Monday v. Saxon Mortg. Servs.*, No. CIV. 2:10-989 WBS CKD,
2011 U.S. Dist. LEXIS 105214 (E.D. Cal. Sept. 16, 2011) . . . . . . . . . . . . . . . . . . 41

*Montich v. Miele USA, Inc.*, No. 11-02725,
2012 U.S. Dist. LEXIS 41398 (D.N.J. Mar. 27, 2012) . . . . . . . . . . . . . . . . . . 29-30

*Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 474 N.E.2d 286 (1984) . . . . . . . . 37

*Morris v. Winnebago Indus., Inc.*, 71 Va. Cir. 292 (Va. Cir. Ct. 2006) . . . . . . . . 36

*Neder v. United States*, 527 U.S. 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Nessle v. Whirlpool Corp.*, No. 1:07CV3009,
2008 U.S. Dist. LEXIS 56940 (N.D. Ohio July 25, 2008) . . . . . . . . . . . . . . . . . . . 44

*Nibbi Bros. Inc. v. Home Fed. Sav. & Loan Ass'n*,
205 Cal. App. 3d 1415, 253 Cal. Rptr. 289 (1988) . . . . . . . . . . . . . . . . . . . . . . . . 48

*O'Donnell v. Kraft Foods, Inc.*, No.: 09-4448,
2010 U.S. Dist. LEXIS 26023 (D.N.J. Mar. 18, 2010) . . . . . . . . . . . . . . . . . . . . . 30

*Onyx Envtl. Services, LLC v. Maison*, 407 F. Supp.2d 874 (N.D. Ohio 2005) . . . 28

*Orange County Choppers, Inc. v. Olaes Enters., Inc.*,
497 F. Supp. 2d 541 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Overton v. Bird Brain, Inc.*, No. SACV 11-1054 DOC (ANx),
2012 U.S Dist. LEXIS 36143 (C.D. Cal. Mar. 15, 2012) . . . . . . . . . . . . . . . . . . . 15

*Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992) . . . 9-10, 19, 42

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) . . . 37

*Paikai v. GMC*, No. CIV. S-07-892 FCD GGH,
2009 U.S. Dist. LEXIS 8538 (E.D. Cal. Feb. 4, 2009) . . . . . . . . . . . . . . . . . . . . . 45

*Pecover v. Electronics Arts Inc.,* 633 F. Supp. 2d 976 (N.D. Cal. 2009) . . . . . . . 37

*Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99,
890 A.2d 997 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42-43

*Potomac Constructors, LLC v. EFCO Corp.*, 530 F. Supp. 2d 731
(D. Md. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, No. 5:11-cv-01860-
ODW(FMOx), 2012 U.S. Dist. LEXIS 67070 (C.D. Cal. May 14, 2012) . . . . . . . 3

*Proctor v. Extreme Offshore Marine, Inc.*, No. WDQ-04-2736,
2006 U.S. Dist. LEXIS 97223 (D. Md. Jan. 24, 2006) . . . . . . . . . . . . . . . . . . . . 19

*Prudential Ins. Co. of America v. Clark Consulting, Inc.*
548 F. Supp. 2d 619 (N.D. Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Reardon v. Hale*, No. CA2006-09-105,
2007 Ohio App. LEXIS 3906 (Ohio Ct. App. Aug. 27, 2007) . . . . . . . . . . . . . . .25

*Reighard v. Yates*, 2012 UT 45, 285 P.3d 1168 (2012) . . . . . . . . . . . . . . . . . . . .9

*Rhee v. Highland Dev. Corp.*, 182 Md. App. 516, 958 A.2d 385 (2008) . . . . . . . 19

*Rogers v. Toni Home Permanent Co.*, 167 Ohio St. 244, 147 N.E.2d 612
(1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Romano v. Galaxy Toyota*, 399 N.J. Super 470, 945 A.2d 49 (2008) . . . . . . . . . 43

*Roshong v. Fitness Brands Inc.*, No. 3:10cv2656,
2012 U.S. Dist. LEXIS 74730 (N.D. Ohio May 30, 2012) . . . . . . . . . . . . . . . . . 35

*Russell ex rel. Russell v. Wright*, No. 3:11-cv-00075,
2013 U.S. Dist. LEXIS 1421 (W.D. Va. Jan. 4, 2013) . . . . . . . . . . . . . . . . . . . .23

*Ryba v. LaLancette*, 417 F. Supp. 2d 199 (D. Mass. 2006) . . . . . . . . . . . . . . . . 22

*Saltzman v. Pella Corp.*, No. 06 C 4481,
2007 U.S. Dist. LEXIS 19650 (N.D. Ill. Mar. 20, 2007) . . . . . . . . . . . . . . . . . . 45

*Schubert v. Neyer*, 165 N.E.2d 226 (Ohio Ct. App. 1959) . . . . . . . . . . . . . . . . . 25

*Searcy v. Chicago Transit Authority*, 146 Ill. App. 3d, 497 N.E.2d 410 (1986) . . 35

xv

*Shaterian v. Wells Fargo Bank, N.A.*, No. 11-00920 SC,
2011 U.S. Dist. LEXIS 128549 (N.D. Cal. Nov. 7, 2011) . . . . . . . . . . . . . . . . . . 50

*Silivanch v. Celebrity Cruises, Inc.*, 171 F. Supp. 2d 241 (S.D.N.Y. 2001) . . . 7, 14

*Singleton v. Manitowoc Co.*, 727 F. Supp. 217 (D. Md. 1989) . . . . . . . . . . . . . . 19

*Slaney v. Westwood Auto, Inc.*, 366 Mass 688, 322 N.E.2d 768 (1975) . . . . . . . 43

*Slisze v. Stanley-Bostitch*, 199 UT 20, 979 P.2d 317 (1999) . . . . . . . . . . . . . . . . 8

*Smalls v. Blueprint Development, Inc.*, 230 Ga. App. 556,
497 S.E.2d 54 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Smith v. Pacific Prop. & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004) . . . . . . . . . . 3

*Southwest Sunsites v. FTC*, 785 F.2d 1431 (9th Cir. 1986) . . . . . . . . . . . . . . . . . 47

*Sovel v. Richardson*, No. 17150,
1995 Ohio App. LEXIS 5076 (Ohio Ct. App. Nov. 15, 1999) . . . . . . . . . . . . . . .44

*Springfield Library & Museum Ass'n v. Knoedler Archivum, Inc.*,
341 F. Supp. 2d 32 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-35

*State Farm Mut. Auto. Ins. Co. v. Kia Motors Am., Inc.*, 160 Ohio App. 3d 727,
828 N.E.2d 701 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stein v. D'Amico*, No. 86 C 9099, 1989 U.S. Dist. LEXIS 9511
(N.D. Ill. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Suh v. Yang*, 987 F. Supp. 783 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 15

*Swedish Civil Aviation Admin. v. Project Mgmt. Enters. Inc.*,
190 F. Supp. 785 (D. Md. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .50

*Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493 (VB),
2011 U.S. Dist. LEXIS 153011 (S.D.N.Y. Dec. 16, 2011) . . . . . . . . . . . . . . . . . 49

xvi

*Tait v. BSH Home Appliances Corp.*,
No. SACV 10-00711 DOC (ANx), 2011 U.S. Dist. LEXIS 103584
(C.D. Cal. Aug. 31, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 26, 38-39, 41, 46

*Tait v. BSH Home Appliances Corp.*, No. SACV 10-00711 DOC (ANx),
2012 U.S. Dist. LEXIS 183649 (C.D. Cal. Dec. 20, 2012) . . . . . . . . . . . . . . . . . 18

*Terrill v. Electrolux Home Prods.*, 753 F. Supp. 2d 1272 (S.D. Ga. 2010) . . . . . . 37

*Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234,
872 A.2d 783 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42-43

*Thongnoppakun v. Am. Express Bank*, No. CV11-08063-ODW(MANx),
2012 U.S. Dist. LEXIS 25581 (C.D. Cal. Feb. 27, 2012) . . . . . . . . . . . . . . . . . . 48

*Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123
(N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 41

*Toone v. Wells Fargo Bank, N.A.*, No. 2:11-CV-170,
2011 U.S. Dist. LEXIS 109455 (D. Utah Sept. 27, 2011) . . . . . . . . . . . . . . . . . . 47

*Trans States Airlines v. Pratt & Whitney Can.*, 177 Ill. 2d 21,
682 N.E.2d 45 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*United Roasters, Inc. v. Colgate-Palmolive Co.,* 649 F.2d 985 (4th Cir. 1981) . . 50

*United States v. Gillion*, No. No. 11-4942,
2012 U.S. App. LEXIS 26568 (4th Cir. Dec. 28, 2012) . . . . . . . . . . . . . . . . . . . 23

*United States Gypsum Co. v. Mayor of Baltimore*, 336 Md. 145,
647 A.2d 405 (Md. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10, 19, 42

*Updegraff v. Beneficial Ohio, Inc. (In re Updegraff)*,
No. 10-31906, Adv. No. 11-3014, 2012 Bankr. LEXIS 1002
(Bankr. S.D. Ohio Mar. 9, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Varavvas v. Mullet Cabinets, Inc.*, 185 Ohio App. 3d 321,
923 N.E.2d 1221 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Villasenor v. Sears, Roebuck & Co.*, No. CV 09-9147 PSG (FMOx),

xvii

2011 U.S. Dist. LEXIS 4301 (C.D. Cal. Jan. 18, 2011) . . . . . . . . . . . . . . . . . . . . . 20

*Wade v. Jobe*, 818 P.2d 1006 (Utah 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Wade v. Midwest Brake Bond Co.,* No. 96 C 50118,
1998 U.S. Dist. LEXIS 15055 (N.D. Ill. Sept. 22, 1998) . . . . . . . . . . . . . . . . . . . 26

*Washington v. Baenziger*, 673 F. Supp. 1478 (N.D. Cal. 1987) . . . . . . . . . . . . . 14

*Waterloo Coal Co. v. Komatsu Mining Sys.*, No. C2-02-560,
2003 U.S. Dist. LEXIS 411 (S.D. Ohio Jan. 6, 2003) . . . . . . . . . . . . . . . . . . . . . 38

*Watkins v. Ford Motor Co.*, 190 F.3d 1213 (11th Cir. 1999) . . . . . . . . . . . . . . . . 20

*Wilder v. JPMorgan Chase Bank, N.A.,* No. SACV 09-0834 DOC (RNBx),
2009 U.S. Dist. LEXIS 124242 (C.D. Cal. Nov. 25, 2009) . . . . . . . . . . . . . . 48-49

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) . . . . . . . . . . . . . . . 41

*Wing v. Wharton*, No. 2:08-CV-00887-DB,
2009 U.S. Dist. LEXIS 41795 (D. Utah May 15, 2009) . . . . . . . . . . . . . . . . . . . 50

*Wolf v. Prudential-Bache Secs.*, 41 Mass. App. Ct. 474,
672 N.E.2d 10 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Woods v. Maytag Co.*, No. 10-CV-0559 (ADS)(WDW),
2010 U.S. Dist. LEXIS 116595 (E.D.N.Y. Nov. 2, 2010) . . . . . . . . . . . . . . . . 30-31

*Woods v. Maytag Co.*, 807 F. Supp. 2d 112
(E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 16, 27-28, 31

*World Wide Communs. v. Rozar*, No. 96 Civ. 1056 (MBM)(NRB),
1997 U.S. Dist. LEXIS 20596 (S.D.N.Y. Dec. 30, 1997) . . . . . . . . . . . . . . . . . . 28

*Worldwide Mach., Inc. v. Wall Mach., Inc.*, No. 2:06CV130,
2006 U.S. Dist. LEXIS 66432 (D. Utah Sept. 12, 2006) . . . . . . . . . . . . . . . . . . 7-8

*Yazd v. Woodside Homes Corp.*, 2006 UT 47, 143 P.3d 283 (2006) . . . . . . . . 8, 47

*Young v. Elmira Transit Mix, Inc.,* 383 N.Y.S. 2d 729,

52 A.D.2d 202 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

STATUTES

15 U.S.C. §§ 2301 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38-39, 41

810 ILCS 5/2-316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

815 ILCS 505 §§ 1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

ALM GL ch. 93A, §§ 1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43-44

ALM GL ch. 106, § 2-725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34-35

Cal. Bus. & Prof. Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

Cal. Bus. & Prof. Code § 17208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

Cal. Civil Code §§ 1750 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39-40

Cal. Civil Code §§ 1790 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40-41

Md. Commercial Law
Code Ann. §§ 13-101 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

N.J. Stat. §§ 2A:58C-1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29-30, 37

N.J. Stat. §§ 56:8-1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

N.Y. Gen. Bus. §§ 349 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

O.C.G.A. §§ 10-1-390 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

O.C.G.A. § 23-2-53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ORC Ann. § 1302.29(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

ORC Ann. §§ 1345.01 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

ORC Ann. § 1345.09 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

ORC Ann. §§ 2307.71-.81 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13, 35, 37

ORC Ann. § 2307.71 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ORC Ann. § 2307.72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ORC Ann. § 2307.79 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

R.S. Mo. § 400.2-316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Utah Code Ann. § 13-11-1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Utah Code Ann. § 13-11-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Utah Code Ann. § 78B-4-513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

RULES

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-17, 45

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

OTHER AUTHORITIES

Restatement (Second) of Torts § 388 . . . . . . . . . . . . . . . . . . . . . . . 8, 18-23, 26-27

Restatement (Second) of Torts § 551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-23

Restatement (Third) of Torts § 10 . . . . . . . . . . . . . . . . . . . . . . . . . 8-10, 15, 18, 25

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

# I.    __INTRODUCTION__

This class action is brought by eighteen consumers from eleven states against Whirlpool Corporation ("Whirlpool"), Sears Holding Corporation ("SHC") and Sears, Roebuck & Company, Inc. (together with SHC, "Sears") (collectively, "Defendants"). Whirlpool manufactures dishwashers under the brand names "Whirlpool," KitchenAid" and "Kenmore" ("DWs") that Defendants market and sell directly or through registered dealers.  The DWs were manufactured between 2001 and 2011 in Whirlpool's Findlay, Ohio, plant, and entered the national stream of commerce from that facility.

Plaintiffs allege that their DWs have a dangerous design defect ("Defect") that causes the electronic control boards ("ECB") to overheat and erupt in flames, emitting noxious smoke and fumes, disabling the DWs and posing a substantial health and safety risk during the DWs' useful life.  Defendants had pre-sale knowledge of the Defect but concealed it from the Plaintiffs.  Post-sale, Defendants refused to notify Plaintiffs and consumers of the Defect.  Even when confronted by Plaintiffs and other consumers whose DWs had overheated and combusted, Defendants continued to deny the existence of the Defect.  Moreover, ostensible repairs made by Defendants at the behest of consumers did not correct the Defect.

Plaintiffs estimate that the Defect has caused tens of thousands of DWs throughout the United States to combust, and will produce evidence that *all* of the DWs are at risk.  Moreover, and despite Defendants' protestations to the contrary, there is ample evidence – including the allegations of Plaintiffs Chambers, Himler, Koswener, Walchli and Paolini, as well as the allegations of numerous putative class members – that external fires have erupted, damaging kitchens and dramatically exacerbating the imminent threat to homeowners' health and safety.

This is a nationwide problem requiring a unified solution that will protect all affected consumers.  Thus, the Third Amended Complaint (ECF 70, hereinafter "TAC") properly alleges statutory and common law violations and a claim for declaratory relief against Defendants on behalf of all Plaintiffs and the putative nationwide class.  As

shown below, Defendants' Partial Motion to Dismiss (ECF 73, hereinafter "MTD") fails as a matter of law and should be denied.[1]

## II.    THE THIRD AMENDED COMPLAINT

Plaintiffs owned DWs containing a Defect that caused the ECBs to overheat, smoke, spew fumes, combust and erupt into flames, rendering the DWs inoperable, and creating a substantial and unreasonable risk of property damage, personal injury and death.[2]   Defendants knew or should have known of the Defect based on prior experience, pre-release testing, replacement part sales data, aggregate data from DW dealers, consumer complaints, DW warranty claims, and other sources.[3]   Defendants had a continuing duty to the public to disclose the true nature of the DWs.  In breach of that duty, however, Defendants advertised and warranted that the DWs were of high quality and defect-free.[4]   To this day, Defendants continue to conceal and deny the dangerously defective nature of the DWs.[5]

Plaintiffs were injured by Defendants' misconduct through, *inter alia*, diminution of value of their DWs and the costs of repair and replacement of the machines.[6]

---

[1] The MTD is directed to the Plaintiffs' alternative state law claims, and this memorandum responds in kind. Plaintiffs do not thereby concede, however, that each claim should be adjudicated under his or her state law.  To the contrary, if the Court is disposed to engage in choice-of-law analysis at this early stage (even though, as argued at fn. 71, *infra*, it would be premature to do so), Ohio law should apply. *See generally*, fn. 71, *infra*.

[2] TAC ¶¶ 1, 3-4, 9, 18, 25-26, 31-33, 37, 42-44, 49-50, 56, 60, 66, 69, 72, 75-76, 78, 81-82, 85-86, 89, 93, 99-100, 121-30, 132, 138, 227, 234, 269, 298, 317, 338, 358, 377, 395, 414, 432, 451, 469, 487.

[3] *Id.*, ¶¶ 5-7, 9-10, 18-21, 25, 27-28,  33-34, 38, 42, 44-45, 51-52, 60-61, 64-67, 69, 73, 76, 79, 82-83, 86, 94, 96, 101, 103-04, 125-28, 138, 141-47, 229, 231, 235-39, 244, 254-58, 265-68, 275-77, 283, 293-95, 312-14, 333-35, 353-55, 372-74, 390-92, 409-11, 427-29, 446-48, 464-66, 482-84.

[4] *Id.*, ¶¶ 8, 11, 79-80, 116-20, 149, 243, 279, 283, 297, 301, 316, 320, 337, 341, 357, 361, 376, 380, 394, 398, 413, 417, 431, 435, 450, 454, 468, 472, 486, 490.

[5] *Id.*, ¶¶ 19-22, 25, 27-28, 34, 42, 44-45, 51-52, 60-61, 66-67, 69, 73, 76, 79, 80, 82-83, 86, 94, 96, 103, 116-20, 147-49, 175-77, 236-37, 255, 268, 282, 288, 300, 306, 319, 328, 340, 346, 360, 366, 379, 385, 397, 403, 416, 422, 434, 440, 453, 459, 471, 477, 489, 495.

[6] *Id.*, ¶¶ 14, 19, 29, 35, 38-39, 46, 52-53, 57, 62, 67, 69, 73, 76, 79, 83, 87, 90-91, 95, 97, 102, 105, 130, 132-33, 139-40, 152, 230, 238, 261, 270, 287, 302, 305, 327, 345, 365, 384, 402, 421, 439, 458, 476, 494.

Further, upon information and belief, Defendants concealed from Plaintiffs and other consumers the fact that ostensible repairs made or recommended, and replacement DWs offered by Defendants or their agents, would not remedy the Defect.[7]  Had Plaintiffs known of the Defect they would not have bought their DWs; nor would they have paid for ineffective repairs or agreed to accept or purchase similarly defective replacement DWs.[8]

## III.   FED. R. CIV. P. 8(a) AND 12(b)(6) PLEADING REQUIREMENTS

In adjudicating a Rule 12(b)(6) motion, the Court should accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the pleader.  *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 U.S. Dist. LEXIS 67070 at *11-12 (C.D. Cal. May 14, 2012).  While "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" need not be taken at face value, *id*., the Court must assume that general allegations embrace the necessary, specific facts to support the claim.  *Smith v. Pacific Prop. & Dev. Corp*., 358 F.3d 1097, 1106 (9th Cir. 2004).  "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Baker v. Rodriguez*, 2011 U.S. Dist. LEXIS 113094, at *6 (C.D. Cal. Sept. 29, 2011).  Thus "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. Plaintiffs satisfy this standard, and thus the MTD should be denied.

## IV.   PLAINTIFFS STATE CLAIMS FOR STRICT PRODUCT LIABILITY, FAILURE TO WARN AND NEGLIGENCE

---

[7] *Id.*, ¶¶ 25-26, 28-29, 35, 39, 45-46, 53, 62, 65, 67, 73, 76, 78-79, 81, 87, 148, 236, 245-47, 252, 254.

[8] *Id.,* ¶¶15, 80, 151, 247, 258, 260, 285, 303, 322, 343, 363, 382, 400, 419, 437, 456, 474, 492.

Defendants assert that some (but not all) of Plaintiffs' strict product liability, failure to warn and negligence claims should be dismissed based on the economic loss doctrine ("ELD"); a purported failure to plead Defendants' foreknowledge; and purported failure to allege damages.  None of these arguments has merit.

## A.   The Economic Loss Doctrine Does Not Bar Plaintiffs' Tort Claims

Defendants argue that the claims of Plaintiffs Bliss and Walchli (Cal.), Chambers (Md.), LeBlanc (Mass.), Bathon (Ohio), Meneghetti (Ill.), Paolini and Koswener (N.Y.), and Steffes (Utah) for strict product liability, failure to warn and negligence should be dismissed under the ELD, which as a general rule prohibits recovery for these torts for a product defect that damages only the product.[9]  Defendants exert scant effort, however, to examine the law of the relevant states, ignoring the fact that each of these Plaintiff's tort claims falls within a well-recognized exception to the ELD.

**Mass.:** The ELD does not bar LeBlanc's alternative negligence claims under Massachusetts law.[10]  The ELD does not apply in Massachusetts where the plaintiff is not able to bargain or allocate risk.  *City of Boston v. Smith & Wesson Corp*., 2000 Mass. Super. LEXIS 352, *39 (Mass. Super. Ct. 2000) ("When the economic loss rule has been applied, the parties usually were in a position to bargain freely concerning the allocation of risk" (citation omitted)).  The *Smith & Wesson* court refused to apply the ELD to dismiss claims at the pleading stage where (1) the parties were not in a position to bargain freely concerning the allocation of risk, and (2) the conduct involved a public safety issue.  *Id*. at *39-40.

Here, both *Smith & Wesson* factors exist.  LeBlanc could not freely bargain with Defendants to allocate risk given the nature of the consumer transaction and the vast

---

[9] Defendants do not claim that the ELD bars the alternative strict product liability, failure to warn and negligence claims of Plaintiffs Himler (Cal.), Mederlet (Va.) and O'Donnell (Ga.).  As noted at ¶ 15 on page 2 of the MTD Notice, Plaintiffs have not brought strict product liability, failure to warn or negligence claims on behalf of Plaintiffs Walchli or Bliss under California law; thus Defendants' arguments as to those Plaintiffs are gratuitous.

[10] LeBlanc brings alternative claims under Massachusetts law for negligence; he does not bring claims for strict product liability under Massachusetts law.

disparity of information and bargaining power between the parties.   Defendants concealed the Defect from LeBlanc, depriving him of any reason to "bargain freely concerning the allocation of risk." *See* fns. 3, 4, 5, *supra*.  Likewise, given the number of DWs in the market and the seriousness of the threat posed to health and safety, the public safety prong of the *Smith & Wesson* test is satisfied.  *See* fn. 2, *supra*.  LeBlanc states alternative claims for negligence under Massachusetts law.

 **Ill.:**  Meneghetti's alternative claims for strict liability, failure to warn and negligence fall under an "accident" exception to Illinois' ELD, recognized for consumer products: "[W]here the plaintiff sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence," recovery will lie, notwithstanding the general rule that purely economic loss is not recoverable in tort. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 333-34 (Ill. 2006) (citation omitted).[11]  While the Illinois Supreme Court held in *Trans States Airlines v. Pratt & Whitney Can.*, 682 N.E.2d 45, 49 (Ill. 1997), that in a commercial context the accident exception does not permit recovery for damage solely to the defective product, the court reserved ruling on whether the accident exception would allow recovery in a consumer context where only the product was damaged, *id.* at 53-54.  Based on that reservation in *Trans States Airlines*, the court in *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 664 F. Supp. 2d 752, 772 ( E.D. Mich. 2010), refused to dismiss plaintiff consumers' claims under Illinois law for the value of the product.  Meneghetti states alternative claims for strict product liability, failure to warn and negligence under Illinois law.[12]

---

[11] There is no requirement under Illinois law that, for the sudden and calamitous event exception to apply, it must pose an unreasonable risk of injury.  *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 664 F. Supp. 2d 752, 772-73 ( E.D. Mich. 2010).  Nevertheless, that fact is present here.

[12] Allowing a claim for damage to the product in a consumer context squarely comports with the court's recognition in *Trans States Airlines* that "strict products liability arose out of a concern that consumers and remote parties are not on an equal footing with the manufacturer or seller to bargain
*Footnote Continued*

**Md.:** As Defendants concede, Maryland's ELD does not bar tort claims where the alleged defect creates an unreasonably dangerous condition. MTD, p. 6 n.5. *See also Potomac Constructors, LLC v. EFCO Corp.*, 530 F. Supp. 2d 731, 737 (D. Md. 2008) (ELD does not bar tort claim "where there is either a substantial likelihood of injury, or where resulting injuries are likely to be severe"); *Council of Co-owners Atlantis Condo. v. Whiting-Turner Contracting Co.*, 517 A.2d 336, 345 (Md. 1986) ("[w]here the risk is of death or personal injury the action will lie for recovery of the reasonable cost of correcting the dangerous condition" even "*in the absence of actual injury*" (emphasis added)).

The Maryland Plaintiffs allege that on March 22, 2009, within minutes of starting a normal cycle, their DW suddenly burst into flames estimated at 1100° F. TAC ¶ 18. A serious fire would have ensued had Plaintiff Van der Veer not been nearby. *Id.* The probability of damage was unreasonably high, as was the risk of injury or even fatality. (The record of reported DW fires suggests that it is a matter of when, and not whether, a significant injury-producing fire will result – and there is ample anecdotal evidence in the TAC that such has already occurred, *see id.* ¶¶ 128, 138, 145). Thus, the *Whiting-Turner* exception applies. The ELD does not bar the Maryland Plaintiffs' alternative claims under Maryland law for strict product liability, failure to warn and negligence.

**Ohio:** Ohio law permits consumers to bring tort claims against manufacturers solely for economic injuries. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 949-50 (N.D. Ohio 2009) (holding that consumers can bring negligence claims for solely economic injuries caused by defective appliances against manufacturers with whom they are not in direct privity, citing numerous Ohio cases so holding). *See also Avery Dennison Corp. v. Soliant LLC*, 2005 U.S. Dist. LEXIS 17672, at *6 (N.D. Ohio Aug. 23, 2005) (although the ELD prohibits

---

effectively for the allocation of risk." 682 N.E.2d at 53. Additionally, permitting tort claims for economic loss comports with the law of neighboring states like Ohio, *infra*, at pp. 6-7.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

commercial parties that have entered into a contract from asserting tort claims to recover purely economic losses, "Ohio courts continue to permit product liability claims by individual consumers for purely economic losses"); *LaPuma v. Collinwood Concrete*, 661 N.E.2d 714, 716 (Ohio 1996) (holding that the plaintiffs could assert a claim of breach of implied warranty for economic damages only).   Accordingly, Bathon, an individual consumer, properly states tort claims under Ohio law for economic damages against Whirlpool.  TAC ¶ 73.

**N.Y.:** New York's ELD does not bar negligence claims "where the product itself causes or threatens harm to persons, even if the plaintiff is a purchaser of the product and not one of the injured individuals."[13]  *Silivanch v. Celebrity Cruises, Inc.,* 171 F. Supp. 2d 241, 272 (S.D.N.Y. 2001) (citations omitted).  Here, both New York Plaintiffs experienced flaming DWs that combusted during ordinary and normal use.  TAC ¶¶ 85, 93.  Koswener saw flames about four inches high shooting out of her DW.  *Id.* ¶ 85.  Paolini described the scene as something out of a horror movie.  *Id.* ¶ 93.  The ELD does not bar their alternative negligence claims under New York law.

**Utah**: In determining whether to apply the ELD, Utah courts look to "the source of the duties alleged to have been breached."  *Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002); *see also* Utah Code § 78B-4-513 (codifying the ELD and the exceptions thereto).  Under Utah law, the ELD does not bar tort claims that are based on a duty independent of that found in the contract.  *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 13 (Utah 2003).  *See also Interwest Constr. v. Palmer*, 923 P.2d 1350, 1356 (Utah 1996) (phrase "free from defects" in a warranty did not "exempt [defendants] from strict tort or negligence liability").

A party to a contract, for example, has an independent duty to disclose known material information, such as defects that diminish the value of an item.  *See, e.g., Worldwide Mach., Inc. v. Wall Mach., Inc*., 2006 U.S. Dist. LEXIS 66432, at *12 (D.

---

[13] Koswener and Paolini bring alternative claims under New York for negligence; they do not bring claims for strict product liability under New York law.

7

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

Utah Sept. 12, 2006) (where a party "failed to disclose a material past or present fact" that party "also is a tortfeasor and may not utilize the law of contract to shield liability in tort" (quotation omitted)); *Hermansen*, 48 P.3d at 241 (real estate agent had a duty to "disclose facts materially affecting the value or the desirability of the property that were known to him."). In addition, Utah adopted the Restatement (Second) of Torts § 388 ("Restatement 388"),[14] which imposes a "duty to warn against a product's latent hazards that are known to the manufacturer but unknown to the consumer." *Slisze v. Stanley-Bostitch*, 979 P.2d 317, 321 (Utah 1999) (citations omitted). *See also DCR, Inc. v. Peak Alarm Co.*, 663 P.2d 433, 437 (Utah 1983) (seller had duty to warn about vulnerability of the alarm system).[15] These independent tort duties are particularly pronounced where the defendant possesses superior bargaining power or superior expertise regarding the subject of the contract. *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 245 (Utah 2009); *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 286, 288 (Utah 2006).

Steffes adequately alleges that Whirlpool knew or had reason to know of the

---

[14] The text of § 388 provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied,
>
> (b) has no reason to believe that those for whose use the and chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement § 388.

[15] This duty exists post-sale. *See Herrod v. Metal Powder Prods.*, 2012 U.S. Dist. LEXIS 79562, at *17-19 (D. Utah June 7, 2012) (a manufacturer or seller "has a duty to warn about a risk associated with a product it sold in the past if it later 'knows or reasonably should know that the product poses a substantial risk of harm to persons or property.'" *Id.* at *18-19 (citing Restatement § 10(b)(1) and cmt. c.)).

---

8

Defect and, therefore, had an independent duty to warn thereof.  *See* fn. 3, *supra*. Because this duty is separate from the parties' contractual obligations, Steffes's alternative tort claims under Utah law are not barred by the ELD.[16]

## B.   Chambers And Himler State Claims For Failure To Warn

Defendants argue that Chambers and Himler fail to allege adequately that Defendants had pre-sale knowledge of the defect, and thus their failure to warn claims should be dismissed.  MTD, pp. 7-9.  To the contrary, as discussed below, there are numerous allegations that Defendants knew or should have known of the defects in the DWs as early as 1996.[17]  *See* fn. 3, *supra* (citing knowledge allegations in the TAC); MTD, p. 7 (acknowledging that under California or Maryland law, a plaintiff need only allege that the defendant knew *or should have known* of a dangerous propensity of its product to support a failure to warn claim).  Further, pre-sale knowledge is not essential to support Chambers' and Himler's claims because there is a post-sale duty to warn of product defects.  *See* Restatement (Third) of Torts: Products Liability § 10 ("Restatement § 10");[18] *United States Gypsum Co. v. Mayor of Baltimore*, 647 A.2d

---

[16] Utah law does not support Defendants' extreme position that a separate tort-based duty may only arise through evidence or allegations of personal injury.  *See* MTD, p. 6 n.5.  This position is nonsensical because the ELD - and the "independent duty" exception to that doctrine - apply only to cases where personal injury is *not* alleged.  *Hermansen*, 48 P.3d at 239 ("the economic loss rule has its roots in limiting damages in products liability cases where there is no physical injury").  Moreover, both Utah cases cited by Defendants are distinguishable in that the contracts at issue there involved very specific obligations to disclose the complained-of problem; such specificity is absent from the warranties at issue here.  *See Reighard v. Yates*, 285 P.3d 1168, 1177-78 (Utah 2012) (contract required defendant to disclose any actual knowledge of the complained-of mold problem); *Associated Diving & Marine Contrs. v. Granite Constr. Co.*, 2003 U.S. Dist. LEXIS 21560, at *15 (D. Utah July 10, 2003) (contract required defendant to provide two barges instead of only one).

[17] The two Maryland cases on which Defendants rely are legally inapposite: One was decided on motion for summary judgment, *Hargett v. Snap-On Inc.*, 2009 U.S. Dist. LEXIS 116661, at *1 (D. Md. Dec. 15, 2009), and the other was decided on appeal after a full trial, *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 638 (Md. 1992).  Here, the only question is whether Plaintiffs have adequately *pled* knowledge in the TAC, which clearly Plaintiffs have done, as demonstrated above.

[18] Under section 10 of the Restatement a seller is liable for a post-sale failure to warn where:

> (1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and

*Footnote Continued*

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

405, 413-14 (Md. 1994); *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 645-46 (Md. 1992).

The TAC asserts that Whirlpool was put on actual notice of the overheating connections at least as early as 1996, when the company recalled around 500,000 dishwashers due to faulty and overheating connections.   TAC ¶¶ 5-9, 126-28. According to a December 11, 2000 Forbes article, "Where There's Smoke," in 1996 Sears technician Wayne Brown called the Consumer Product Safety Commission saying he had discovered additional fires in dishwashers not covered by the 1996 recall.[19]  *Id.* at ¶ 6.  Whirlpool knew full-well that high amperage terminal connections in its dishwashers could cause fires if not designed and/or manufactured properly, and it knew or should have known to pay the utmost attention to these connections.  *Id.* at ¶ 7. Nevertheless, Whirlpool continued to use the same or a similar type of crimp connection in high amperage circuits like the heating element circuit, and to this day fires continue to occur.  *Id.*  Moreover, Plaintiffs allege that Defendants knew or should have known of the Defect through product testing, replacement part sales data, aggregate data from DW dealers, consumer complaints, DW warranty claims, and other

---

(2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and

(3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and

(4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Restatement § 10.

[19] As a Sears technician reported the additional fires not covered by the 1996 recall, Plaintiffs have grounds to allege on information and belief that Sears knew or should have known of this problem as early as 1996.  *See, e.g., Woods v. Maytag, Co.*, 807 F. Supp. 2d 112, 126 (E.D.N.Y. 2011) (finding "strong circumstantial evidence" that Maytag knew of the alleged defect in part based on the allegation that a "Maytag authorized repairman represented that he himself had 'addressed numerous other similar consumer complaints'").

sources.[20]   *See* fn. 3, *supra*.   Thus, they adequately plead that Defendants had knowledge of the Defect.  *See, e.g., Falk v. G.M. Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007); *Tait v. BSH Home Appliances Corp.*, 2011 U.S. Dist. LEXIS 103584, at *7-8 (C.D. Cal. Aug. 31, 2011); *Feldman v. Mercedes-Benz United States, LLC*, 2012 U.S. Dist. LEXIS 178924, at *30-31 (D.N.J. Dec. 18, 2012).  Likewise, Plaintiffs allege that Whirlpool was put on actual notice of the Defect in 2002 by Beal.  *See* TAC ¶ 79. At the least, the Defect was "knowable" through these events.[21]   Furthermore, as Defendants concede that the TAC plausibly alleges that they could have obtained knowledge of the Defect in 2008, MTD, p. 18,[22]  Defendants should be held liable for failure to warn regardless of pre-sale knowledge as they had a post-sale duty to warn. Thus, Himler and Chambers adequately allege failure to warn claims.[23]

## C.   O'Donnell Properly Pleads Damages Under Ga. Law

Contrary to Defendants' allegations that Plaintiff O'Donnell's sole injury is emotional and that he fails to allege recoverable damages, MTD, pp. 9-10, O'Donnell sustained actual loss from diminution of value and loss of use while his DW was inoperable.  TAC ¶¶ 25-29.  The TAC further alleges that the repairs to O'Donnell's DW were ineffective (evidenced, *inter alia*, by the fact that a repairman who inspected Walker's DW warned that repairs are unlikely to be effective because "there appear to be multiple recorded cases of the problem reoccurring [and] Whirlpool . . . has not upgraded the replacement parts or issued a recall . . ." *id.* at ¶ 65).  *Id.* at ¶¶ 25-29.

---

[20] As further evidence that Defendants knew of the Defect, the TAC cites an online complaint alleging that a Sears representative admitted that Whirlpool needed to recall the DWs.  TAC ¶ 143.

[21] The service technician who inspected Walker's DW noted that he could not guarantee that a repair would remedy the problem "as there appear to be multiple recorded cases of the problem reoccurring" and, to his knowledge, Whirlpool "has not upgraded the replacement parts or issued a recall."  TAC ¶ 65.  If he knew of the Defect, Defendants clearly should have known of it.

[22] And for that reason, Defendants had a "pre-sale" duty to warn when Himler contacted them regarding his DW failure in the summer of 2010 and Whirlpool provided him with a similarly defective replacement DW.  *Id.* at ¶¶ 37-39.

[23] Defendants' argument that Plaintiffs may not plead knowledge allegations "on information and belief" is without merit.  *See* fn. 35, *infra*.

---

11

1   O'Donnell states alternative tort claims under Georgia law.[24]

2       **D.**     **The OPLA Does Not Abrogate Bathon's Tort Claims**

3          Defendants' erroneously assert that the Ohio Product Liability Act ("OPLA"),

4   ORC Ann. §§ 2307.71-.81 (2012), abrogates Bathon's common law tort claims.  MTD,

5   pp. 10-11.  By its express terms, OPLA defines "product liability" claims to mean "a

6   claim or cause of action that . . . seeks to recover compensatory damages from a

7   manufacturer or supplier for death, physical injury to person, emotional distress, or

8   physical damage to property other than the product in question . . . ."  ORC Ann. §

9   2307.71.  ORC Ann. § 2307.72 states that "[a]ny recovery of compensatory damages

10  for economic loss[25] . . . other than a product liability claim, is not subject to sections

11  2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this

12  state or other applicable sections of the Revised Code".

13         Thus, as Whirlpool knows full well, common law negligent design and failure to

14  warn claims that do not seek damages for death, injury, or physical damage to property

15  other than the product, but, rather, seek only economic loss, are not abrogated by

16  OPLA.  *Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d at

17  949-50 ("[H]ad the plaintiff sought anything beyond economic damages, the Products

18  Liability Act would have precluded the common-law claims and limited the plaintiff to

19  a different scheme of statutory remedies . . .");  *see also Hale v. Enerco Group, Inc.*,

20  2011 U.S. Dist. LEXIS 781, *21-22 (N.D. Ohio Jan. 5, 2011); *Hoffer v. Cooper Wiring

21  Devices, Inc.*, 2007 U.S. Dist. LEXIS 42871, 5-7 (N.D. Ohio June 13, 2007) ("to the

22  extent Plaintiff seeks damages for economic loss, his claims do not fall under the

---

[24] Defendants do not argue that O'Donnell's tort claims are barred by the ELD, *see* MTD, Section II(A) at pp. 6-7, *passim*, nor could they, as both the accident and misrepresentation exceptions to the ELD apply.  *See, e.g.*, *Lumbermen's Underwriting Alliance v. Blount Int'l, Inc.*, 2007 U.S. Dist. LEXIS 102300, at *6-7 (N.D. Ga. Feb. 5, 2007) (applying accident exception); *Holloman v. D.R. Horton*, 524 S.E.2d 790, 796-97 (Ga. Ct. App. 1999) (applying misrepresentation exception).

[25] Economic loss is defined as "direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product in question, and nonphysical damage to property other than that product."  ORC Ann. § 2307.71.

purview of the OPLA"); *State Farm Mut. Auto. Ins. Co. v. Kia Motors Am., Inc.*, 828 N.E.2d 701, 707 (Ohio Ct. App. 2005) ("[I]n order to fall within the purview of the [OPLA], and to be considered a 'product liability claim' . . . the complaint must allege damages other than economic ones."). As Bathon did not incur, nor does she seek, damages for death, physical or emotional injury, or physical damage to property other than her DW, her common law claims for economic loss are not abrogated by OPLA.[26]

## E.   N.Y. Plaintiffs Properly Plead Damages Under N.Y. Law

Defendants' contention that Koswener and Paolini allege no damages because their DWs "performed as expected" is nonsensical. MTD, pp. 11-12. Koswener's DW erupted in smoke and flames. TAC ¶ 85. Paolini's DW also caught on fire, and was so badly burned that any attempted repair would have been prohibitively expensive. *Id.* at ¶ 93. Defendants cannot seriously contend that these products met Plaintiffs' expectations.[27] *Id.* at ¶ 136.

Defendants argue that there are no damages alleged because Whirlpool paid Paolini $100 for his DW and Koswener does not allege payment for the repair or replacement of her DW. MTD, p. 12. These arguments are likewise meritless. First,

---

[26] The cases cited by Defendants' are inapposite because the plaintiffs in those cases, in addition to economic loss, incurred damages for death, personal injury or physical damage to property other than the product in question. *See Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 917-18 (N.D. Ohio 2009) (wrongful death action); *Mitchell v. Proctor & Gamble*, 2010 U.S. Dist. LEXIS 17956, at *10-11 (S.D. Ohio Mar. 1, 2010) (plaintiff suffered personal injury as a result of food-borne illnesses); *Chem. Solvents, Inc. v. Advantage Eng'g, Inc.*, 2011 U.S. Dist. LEXIS 41378, at *5 (N.D. Ohio Apr. 6, 2011) (physical damage to property other than the product in a question (a chiller) because the chiller melted the tar off the roof above the chiller's water tank). While Defendants quote the warning in *Mitchell* that a plaintiff "can not separate out his claims from the purview of the OPLA simply by claiming only economic losses," MTD, p. 12, Bathon is not separating out her claims. Unlike the plaintiffs in the cases cited by Defendants, she did not suffer any damages for death, injury or physical damage to property other than her DW. TAC ¶¶ 72-73.

[27] Defendants' argument that New York Plaintiffs lack damages as their DWs did not malfunction until after their expected useful life is groundless. MTD, p. 11. Plaintiffs do not concede that 9 years is the expected useful life of a dishwasher. *See* TAC ¶ 135 (citing a report finding that the expected useful life is 13 years). And, assuming *arguendo* that the DWs did not malfunction during their expected useful lives, that does not relieve Defendants of tort liability for knowingly placing defective DWs on the market and failing to warn Plaintiffs of the Defect both pre-sale and post-sale. *See* pp. 27-28, *infra* (disclosing pre- and post-sale duty to warn of product defects under New York law).

---

Koswener alleges that the repairs to her DW were ineffective.  TAC ¶ 87.  In addition, both Plaintiffs adequately allege that they suffered damages from diminution of value and loss of use while their DWs were inoperable.  *See, e.g., Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 127 (E.D.N.Y. 2011) ("Plaintiff has sufficiently alleged that he suffered economic damages from the purchase of the Oven").[28]  The New York Plaintiffs' tort claims should stand.

## V.   PLAINTIFFS STATE CLAIMS FOR FRAUDULENT CONCEALMENT

### A.   Plaintiffs Meet The Pleading Requirements of Fed. R. Civ. P. 9(b)

Rule 9(b) requires that "circumstances constituting fraud" be "state[d] with particularity."  Fed. R. Civ. P. 9(b).  Defendants seek dismissal of all Plaintiffs' claims for fraudulent concealment (Count IX), and the consumer protection claims of all Plaintiffs except Mederlet, Walker and Bathon (Counts XI-XVII and XIX-XXI), for failure to meet that standard – because Plaintiffs allegedly do not "plead the who, what, where, and how of the misconduct charged."  MTD, pp. 12-14.  The argument fails: Defendants ignore the more liberal standard applicable to fraudulent *omission* cases, such as this one, where time and place cannot be affirmatively pled.[29]  Tellingly, the sufficiency of Plaintiffs' fraud-by-omission claim was recognized in multidistrict

---

[28] Further, the allegations in the TAC detailing Defendants' intentional or grossly negligent distribution of defective DWs subjects Defendants to punitive damages, in addition to compensatory damages, under New York law.  *See Silivanch*, 171 F. Supp. 2d at 262-63 (stating that "[p]unitive damages may be awarded where a defendant's conduct is intentional, wanton and reckless, or constitutes gross negligence," and affirming the $7 million punitive damages award for defective whirlpool spa filters that put the health of people in danger).  Thus, in addition to compensatory damages, Plaintiffs adequately allege a claim for punitive damages, as Defendants' knowingly, or with gross negligence, sold a defective product that posed a significant fire hazard.

[29] *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987); *Tait v. BSH Home Appliances Corp.*, 2011 U.S. Dist. LEXIS 103584, at *6 (C.D. Cal. Aug. 31, 2011); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545 (D. Md. 2011).  "An allegation of fraudulent concealment satisfies the particularity requirement if it alleges the facts a defendant, who was under the duty to disclose, failed to reveal."  *Fireman's Fund Ins. Co. v. Allied Programs Corp.*, 1993 U.S. Dist. LEXIS 16247, at *26 (S.D.N.Y. Nov. 15, 1993) (citation omitted).  The "content" of an omission is adequately pled by alleging why or how it was material.  *See Energy Absorption Sys., Inc. v. Roadway Safety Service Inc.*, 1993 U.S. Dist. LEXIS 13731, *4-5 (N.D. Ill. Sept. 16, 1993).

litigation against Whirlpool concerning defective front-loading washing machines. *See Whirlpool Corp. Front Loading Washer Products Liab. Litig.*, 684 F. Supp. 2d at 96.[30]

Plaintiffs delineate that: Defendants knew that the Defect causes combustion, smoke, fumes and fire, posing a health and safety hazard to consumers, and results in the DWs' premature failure;[31] Defendants had a duty to disclose information about the Defect,[32] but concealed that material information from Plaintiffs;[33] and had Plaintiffs

---

[30]     [T]he Plaintiffs' fraud-by-omissions claims notify Whirlpool of the time (never), place (nowhere), and content (nothing) of the alleged misrepresentations, the Plaintiffs' alleged reliance (materiality), the fraudulent scheme (Whirlpool's knowledge of the supposed defects and problems), its fraudulent intent (failure to disclose them), and the resulting injury (overpayment). Rule 9(b) does not require more.

*Whirlpool Corp. Front Loading Washer Products Liab. Litig.*, 684 F. Supp. 2d at 96 (citation omitted). The court noted, "Requiring a plaintiff to identify . . . the precise time, place and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission." *Id.* Applying that standard, Plaintiffs clearly plead fraud with sufficient specificity. Contrary to Defendants' assertion, Plaintiffs are not required to identify a specific advertisement where information about the Defect was omitted. *See, e.g., Overton v. Bird Brain, Inc.*, 2012 U.S Dist. LEXIS 36143, at *14-15 (C.D. Cal. Mar. 15, 2012) (refusing to adopt the strict pleading requirements of *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009), on which Defendants rely, and noting other courts' findings that *Marolda* goes beyond the Ninth Circuit's application of Rule 9(b)). Further, the TAC alleges fraudulent concealment *after* the DWs' purchase, and so misleading advertisements are not the sole basis for the suit, as in *Marolda*. *See, e.g.,* Restatement § 10. Plaintiffs also aver that they know of nothing in Defendants' advertising or marketing materials disclosing the Defect, *see* fns. 4, 5; TAC ¶ 80, and that they would not have purchased the DWs, or would have paid less, and would not have paid for ineffective repairs or accepted or purchased similarly defective replacement DWs, had they known of the Defect, *see* fn. 8, *supra*. That is clearly sufficient. *See, e.g., Grill v. Philip Morris USA, Inc.*, 653 F. Supp. 2d 481, 495-96 (S.D.N.Y. 2009).

[31]*See* fn. 3, *supra*; pp. 9-11, *supra* (discussing sufficiency of knowledge pleadings).

[32]*See* Section V(b) at pp. 17-28, *infra*.

[33]TAC, ¶¶ 19-21, 42, 44-45, 51-52, 60-61, 66-67, 69, 73, 76, 79-80, 82-83, 86, 94, 96, 103, 116-20, 147-49, 175-77, 255, 257-58. Defendants' argument that Plaintiffs fail to meet Rule 9(b)'s pleading standards because Plaintiffs "improperly lump[ed] 'Defendants' together for all purposes," MTD, p. 14, is unavailing. In *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007), on which Defendants rely, the Ninth Circuit held that a plaintiff's complaint lacked particularity when it was found to be "shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attribute[d] specific misconduct only to [two defendants]." The other defendants were only alleged to have been "active participants in the conspiracy without any stated factual basis." *Id.* The TAC is distinguishable from *Swartz*, as it is saturated with specific references to both Whirlpool and Sears. Plaintiffs do not merely state as a catch-all that any of the Defendants was an "active participant." Rather, each Defendant's role and activity is stated with sufficient particularity, regardless of the presence of other defendants involved in the same scheme, and engaged in similar acts.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

known of the Defect they would not have purchased DWs nor would they have paid for ineffective repairs or agreed to accept or purchase similarly defective DWs.[34]

Defendants argue that Plaintiffs fail to allege sufficiently Defendants' knowledge of the Defect under Rule 9(b). MTD, pp. 12-18. However, "[w]hile the fraud alleged must be stated with particularity, Rule 9(b) specifies that '[m]alice, intent, *knowledge*, and other conditions of a person's mind may be alleged generally.'" *Woods*, 807 F. Supp. 2d at 119 (quoting Fed. R. Civ. P. 9(b)) (emphasis added). "Indeed, 'it is not unusual in cases involving concealment that a plaintiff will be unable to state the facts constituting fraud in detail since such facts are necessarily peculiarly within the knowledge of the defrauding party.'" *Id.* at 125 (citation omitted). "[W]here information indicating fraud is solely within the possession of the defendant the pleading party [need only] 'provide a statement of facts upon which the belief is founded.'" *Id.* (citations omitted). Plaintiffs here adequately aver facts upon which their belief of Defendants' knowledge is founded - namely, Whirlpool's prior experience with terminal connection defects in its dishwashers, pre-release testing, replacement part sales data, aggregate data from DW dealers, consumer complaints, DW warranty claims, and other internal sources.[35] Fn. 3, *supra*; pp. 9-11, *supra* (discussing sufficiency of knowledge pleadings in the TAC).

---

[34] *See* fn. 8, *supra*.

[35] Defendants further argue that Plaintiffs may not base allegations of fraud "upon information and belief," MTD, pp. 13-14, and that their allegations that Defendants knew or should have known of the defect based on presale testing are "plainly insufficient, even under Rule 8(a)'s more lenient standard, to plead Whirlpool's pre-sale knowledge of the alleged defect," *id.* at p. 13. Defendants are wrong. *See Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 961 n.85 (C.D. Cal. 2012). Under California law, a "plaintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true." *Mendez v. AstraZeneca Pharms. LP*, 2012 U.S. Dist. LEXIS 73270, 7-8 (E.D. Cal. May 25, 2012). Here, Plaintiffs identify the sources of Defendants' knowledge: Whirlpool's prior experience with terminal connection defects in its dishwashers, pre-release testing, replacement part sales data, aggregate data from DW dealers, consumer complaints, DW warranty claims, and other internal sources. *See* fn. 3, *supra*. Thus, they adequately plead that Defendants had pre-sale knowledge of the Defect. *See* pp. 9-11, *supra* (discussing sufficiency of knowledge pleadings).

**B.** **Defendants Had A Duty To Disclose The Defect**

Defendants argue that the TAC does not allege facts demonstrating a duty to disclose the Defect.  MTD pp. 12, 15-18.  To the contrary, the TAC clearly shows that Defendants had a duty to disclose their knowledge of the Defect.[36]

**Cal.:**  In California, a duty to disclose arises when the defendant: (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts; (3) actively conceals a material fact from the plaintiff; *or* (4) makes partial representations but also suppresses some material fact.  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997).  The TAC satisfies criteria 2-4.  The California Plaintiffs adequately plead that Defendants had superior or exclusive knowledge of a material fact by alleging that they knew of the Defect based on Whirlpool's prior experience, pre-release testing, replacement part sales data, aggregate data from DW dealers, consumer complaints (including Plaintiff Beal's complaint in 2002), DW warranty claims, and other sources.    Fn. 3, *supra*; pp. 9-11, *supra* (sufficiency of knowledge pleadings).  Further, California adopted the Restatement § 388, imposing a

---

[36] Defendants again argue that Plaintiffs fail to allege that Defendants had knowledge of the defect pursuant to Rule 9(b).  MTD, pp. 15-18.  This argument fails.  *See* Section V(A) at pp. 14-16, *supra*.  Further, Defendants' reliance on *Baba v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 8527, at *9-10 (N.D. Cal. Jan. 28, 2011), is misplaced.  There, the allegations of defendant's knowledge of the defect rested "solely on pre-purchase Internet complaints," *id.* at *9, of which only three were posted prior to one plaintiff's purchases on the defendant's website, *id.*  The court held that "[a]wareness of a few customer complaints [ ] does not establish knowledge of an alleged defect."  *Id.* at *9-10 (citation omitted).   Here, Plaintiffs allege Defendants' knowledge of the Defect based not only on the experiences of the named Plaintiffs and others whose experiences are detailed in the TAC, but also on: (1) numerous customers complaints about the DW Defect received since *at least* 2002, with dates and information on several of those complaints described in the TAC; (2) Whirlpool's prior experience with terminal connection defects in its dishwashers; (3) pre-release testing; (4) replacement part sales data; (5) aggregate data from DW dealers; (6) DW warranty claims; and (7) other internal sources that Defendants had exclusive access.  *See* fn. 3, *supra*.  These robust and detailed allegations are not comparable to the meager pleadings in *Baba*.  Plaintiffs sufficiently allege Defendants' pre-sale knowledge.  *See* pp. 9-11, *supra* (discussing sufficiency of knowledge pleadings).

Defendants' assertion that they cannot be liable for fraudulent concealment as to Plaintiffs who purchased their DWs after 2008 (at which time Defendants concede that the TAC plausibly alleges Defendants' knowledge of the Defect) – because the information could have been discovered by those Plaintiffs through publicly-available sources, MTD, p. 18 – is likewise unavailing.  *See* fn. 51, *infra*.

duty to warn of a product's dangers on direct and indirect suppliers.  *See Grammer v. Advocate Mines, LTD*, 2011 U.S. Dist. LEXIS 151700, at *10 (E.D. Pa. Dec. 1, 2011) ("California has adopted Section 388 of the Restatement Second of Torts" (citations omitted)).  Where a supplier had no knowledge of a defect at the time of sale, it nevertheless has a post-sale duty to warn of any danger arising from a product that it discovers after the product's sale or distribution.  *See, e.g.,* Restatement § 10.

California Plaintiffs adequately plead active concealment by alleging that Defendants concealed and denied the Defect.  *See* fns. 4, 5, *supra*.  Further, when Plaintiff Himler complained about his defective DW in the summer of 2010, and Whirlpool provided him with a similarly defective replacement DW, Defendants still failed to disclose the Defect.  TAC ¶ 37-39.  *See Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1135-36 (N.D. Cal. 2010) (active concealment for purposes of a fraudulent concealment claim sufficiently alleged under California law where plaintiffs contacted defendant for service of defective machines and were told there was no defect and/or denied free service or replacement parts); *Tait v. BSH Home Appliances Corp.*, 2012 U.S. Dist. LEXIS 183649, at *38 (C.D. Cal. Dec. 20, 2012) ("Defendants' repeated denial of the existence of a defect to complaining customers and authorities" is common proof of active concealment of a material fact).

Defendants made partial representations as to the DWs' quality in advertisements, user manuals, warranty terms and in communications with California Plaintiffs.  *See supra* fn. 4; TAC ¶ 38.  Defendants represented that the DWs were fit for intended use, were of superior quality, reliability and longevity, and came with "outstanding warranties," TAC ¶ 116, while suppressing the material fact of the Defect that would cause them to fail prematurely and pose a serious safety risk, *see supra* fn. 5. Moreover, even if there was no duty to disclose the Defect at the time of sale, there was certainly such a duty when Himler contacted Defendants regarding his DW failure in the summer of 2010, and there was a pre-sale duty when Whirlpool provided Himler with a similarly defective replacement DW.  *Id.* at ¶¶ 37-39.

**Md.:**  In Maryland, a plaintiff need not allege a duty to disclose in a fraudulent concealment/non-disclosure claim where the defendant intended to deceive the plaintiff by omission.  *Rhee v. Highland Dev. Corp*., 958 A.2d 385, 390 (Md. Ct. Spec. App. 2008).  As Maryland Plaintiffs allege intent to defraud,[37] they need not allege a duty to disclose.[38]  In fact, however, the TAC alleges a duty to disclose because the Defect posed a safety hazard.  *See* fn. 2, *supra*; *Doll,* 814 F. Supp. 2d at 546-47.  Maryland has adopted Restatement § 388, requiring direct and indirect suppliers to warn of product dangers.  *See Proctor v. Extreme Offshore Marine, Inc.*, 2006 U.S. Dist. LEXIS 97223, at *11 (D. Md. Jan. 25, 2006); *Singleton v. Manitowoc Co.*, 727 F. Supp. 217, 223 (D. Md. 1989).  This duty exists even if the danger is discovered post-sale. *See United States Gypsum*, 647 A.2d at 413-14; *Zenobia*, 601 A.2d at 645-46.[39]

Further, Whirlpool had a duty to disclose based on the misleading statements about the DWs' quality in marketing, advertising, warranties and direct communications with Plaintiff Chambers.[40]  *See* pp. 17-18, *supra* (discussing under Cal. law); TAC ¶¶ 19-20, *200 North Gilmor, LLC v. Capital One, Nat'l Ass'n*, 2012 U.S. Dist. LEXIS 36537, at *34-35 (D. Md. Mar. 19, 2012); *Lubore*, 674 A.2d at 556.

Finally, "Maryland law recognizes 'a cause of action for fraud predicated upon a promise made with a present intention not to perform it.'"  *200 North Gilmor*, *supra* at *36.  Maryland Plaintiffs allege that Whirlpool knew of the Defect at the time of sale, at

---

[37] *See* TAC ¶¶ 150, 258-61.

[38] While Maryland Plaintiffs did not directly purchase their new DW (they acquired it with the purchase of their home), they may still bring an action for fraud based Whirlpool's material omissions. *See Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820-21 (D. Md. 2005).

[39] Silence is actionable where there is a legal obligation to speak.  *Lubore v. RPM Assoc., Inc.*, 674 A.2d 547, 556 (Md. Ct. Spec. App. 1996).

[40] A duty to disclose under Maryland law extends to subsequent purchasers where "it is foreseeable that subsequent purchasers would take the property without notice of the fraudulently concealed condition."  *Lawley v. Northam*, 2011 U.S. Dist. LEXIS 137971, at *42-43 (D. Md. Dec. 1, 2011).  *See also Owens-Illinois*, 601 A.2d at 646 (not limiting a manufacturer's duty to disclose to *purchasers* by stating that "the post-sale duty to warn requires reasonable efforts to inform *users* of the hazard once the manufacturer is or should be aware of the need for a warning" (emphasis added)).

which point the duty to repair arose – but Whirlpool made no such repairs.  Fn. 3, *supra*; TAC ¶¶ 19, 132, 144, 148.  Thus, Maryland Plaintiffs properly allege a cause of fraudulent concealment premised on Whirlpool's promise to repair or replace defective components in the DWs with the present intention not to perform.

**Ga.:**   Under Georgia law, a duty to disclose "may arise from the confidential relations of the parties or from the particular circumstances of the case."  O.C.G.A. § 23-2-53.  As to the latter, a party has "a duty to disclose material facts that are more readily known by one side of the transaction."  *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 907-08 (W.D. Mo. 2009) (citing *Smalls v. Blueprint Development, Inc.*, 497 S.E.2d 54, 56 (Ga. App. 1998)).  Further, as Georgia has adopted Restatement § 388, a supplier has a duty to warn foreseeable users of its product's latent dangers.  *See Carter v. E.I. DuPont de Nemours & Co., Inc.*, 456 S.E.2d 661, 662 (Ga. Ct. App. 1995).  The duty to disclose "is a continuing one and may arise months, years, or even decades after the date of the first sale of the product."  *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1218 (11th Cir. 1999) (citation omitted).

Plaintiff O'Donnell pleads a duty to disclose by asserting that the Defect was more readily known – indeed, *was* known – to Defendants, but that Whirlpool concealed the defect when he purchased his DW and thereafter, even when he contacted Whirlpool about the problem.  Likewise, neither Whirlpool nor Sears disclosed such material information when their joint venture or subsidiary, A&E Factory Service, LLC ("A&E"),[41] inadequately repaired his DW.  *See* fns. 3, 4, 5, *supra;* TAC ¶¶ 24-29.

---

[41] *See, e.g.*, http://www.twice.com/article/248266 (last visited May 24, 2012) (stating that A&E is a joint venture of Whirlpool and Sears); *Chambers v. Sears Roebuck & Co*., 793 F. Supp. 2d 938, 941 n.2 (S.D. Tex. 2010) (discussing an affidavit filed on behalf of Sears written by an employee stating that he was the District Service Manager for Sears *and* A&E, on the basis of which the court "assumed Sears and A&E are related entities" and deemed the Motion for Summary Judgment to be on behalf of both, even though Sears was the only movant); *Villasenor v. Sears, Roebuck & Co*., 2011 U.S. Dist. LEXIS 4301, at *1 (C.D. Cal. Jan. 18, 2011) (stating that A&E is a subsidiary of Sears)).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

Further, fraud in Georgia may be proven by showing a present intent to dishonor a promise to undertake a future act. *FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 145 n.10 (5th Cir. 1981). As argued above under Maryland law, it is clear that Whirlpool did not intend to fulfill its warranty. *See* pp. 19-20, *supra*; fn. 7, *supra*; TAC ¶ 24-29.

**N.J.:** New Jersey follows the Restatement Second of Torts § 551 ("Restatement § 551"), which "requires a party to disclose 'facts basic to the transaction if he knows that the other is about to enter into it under a mistake . . . and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.'" *City of Millville v. Rock*, 683 F. Supp. 2d 319, 331-32 (D.N.J. 2010) (citing Restatement § 551(2)(e)).

In the absence of a fiduciary or special relationship, a duty to disclose may arise under New Jersey law if one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993); a product contains material defects and a consumer could not be expected to reasonably learn of the defect, *In re Ford Motor Company Ignition Switch Products Liability Litigation*, 1997 U.S. Dist. LEXIS 24064, at *72 (D.N.J. 1997); or there is a safety concern, *In re Phillips/Magnavox TV Litig.*, 2010 U.S. Dist. LEXIS 91343, at *19 (D.N.J. Sept. 1, 2010). New Jersey also follows Restatement § 388. *See Merklin v. United States*, 788 F.2d 172, 177-78 (3d Cir. 1986). The duty to warn exists even if the danger or danger is discovered post-sale. *See Lally v. Printing Machinery Sales & Serv. Co., Inc.*, 572 A.2d 1187, 1189 (N.J. Super. 1990).

As to Restatement § 551, New Jersey Plaintiffs allege that Defendants, with superior knowledge and access to information basic to the transaction, knowingly marketed and sold the DWs with no intent to provide defect-free machines as warranted.[42] This is conduct "'so shocking . . . as to amount to a form of swindling.'" *See* Restatement § 551, comment (l). Accordingly, a duty to disclose arose under these

---

[42] *See* fns. 3, 4, 5, *supra*.

circumstances.  Additionally, as discussed in the preceding sections, Defendants also had a duty to disclose based on their partial disclosures, the fact that the defect is material and latent, and the fact that the defect is a safety hazard.  *See* pp. 18-21, *supra*. Even if Defendants were not aware of the Defect at the time of sale, they nevertheless had a post-sale duty to warn when they became aware of its dangers.[43]

**Mass.:**  In Massachusetts, the duty to disclose is likewise governed by the Restatement § 551.   *Wolf v. Prudential-Bache Secs.*, 672 N.E.2d 10, 12 (Mass. App. Ct. 1996).  A duty to disclose may also exist where needed to prevent one's words from being misleading, *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F. Supp. 2d 156, 162 (D. Mass. 2010),  or where one party has knowledge of material facts to which the other party does not have access, *id.*  Massachusetts also follows Restatement § 388.  *See Ryba v. LaLancette*, 417 F. Supp. 2d 199, 206 n.12 (D. Mass. 2006).  The duty to warn of product defects exists even when discovered post-sale.  *See Lewis v. Ariens Co.*, 751 N.E.2d 862, 864 (Mass. 2001) (adopting Restatement § 10).

For the reasons discussed above, Defendants had a duty to disclose the defect under § 551.  *See* pp. 21-22, *supra*.  Defendants also had a duty to disclose based on Plaintiff LeBlanc's allegations of Whirlpool's and Sears's partial disclosures, TAC ¶¶ 51-52, and their superior knowledge of the Defect based on Whirlpool's prior experience with terminal connection defects in its dishwashers, pre-release testing, replacement part sales data, aggregate data from DW dealers, consumer complaints (including Plaintiff Beal's complaint in 2002), DW warranty claims, and other internal sources.   Fn. 3, *supra*; pp. 9-11, *supra* (sufficiency of knowledge pleadings).  As stated

---

[43] Defendants argue that there is no duty to disclose a mere possibility of economic loss under New Jersey law, MTD, p. 16 n.14, citing to one unpublished opinion.  *Harvey v. Nissan N. Am., Inc.*, 2005 WL 1252341 (N.J. Super. Ct. Apr. 29, 2005) (UNPUBLISHED).  Unlike *Harvey*, which concerned undisclosed information about the risk of theft of car headlights, the undisclosed information here concerns more than the possibility of mere economic loss – it concerns a substantial and unreasonable risk of property damage, personal injury and death.  *See* fn. 2, supra.  *Harvey* is inapplicable.

repeatedly as to other Plaintiffs, even if Defendants were unaware of the Defect at the time of sale, they had a post-sale duty to warn of the Defect.

**Va.:**  Restatement § 551 governs the duty of disclosure in Virginia.  *Folsom v. Continental Illinois Nat'l Bank & Trust Co.*, 633 F. Supp. 178, 186 (N.D. Ill. 1986). The duty also arises "(1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist; or (2) if one party takes actions which divert the other party from making prudent investigations (*e.g.*, by making a partial disclosure)."[44]  *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999).   Additionally, Virginia has adopted Restatement § 388.  *Cotton v. Buckeye Gas Products Co.*, 840 F.2d 935, 937 (D.D.C. 1988).  The duty to warn exists post-sale.  *Russell ex rel. Russell v. Wright*, 2013 U.S. Dist. LEXIS 1421, at *54-55 (W.D. Va. Jan. 4, 2013).

The Virginia Plaintiffs adequately allege that Defendants had a duty to disclose for the reasons discussed above regarding Restatement § 551, *see* pp. 21-22, *supra*; Defendants' superior knowledge of facts basic to the transaction,[45] *see* fn. 3, *supra*; and Defendants' partial disclosures about the quality of the DWs in their marketing,

---

[44]Contrary to Defendants' argument that information must be material in order for the duty to disclose to arise under Virginia law, MTD, p. 16 n.16, materiality is not required under this second test.  In any event, the undisclosed information concerning the Defect is certainly material, as "'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'"  *United States v. Gillion*, 2012 U.S. App. LEXIS 26568, at *24 (4th Cir. Dec. 28, 2012) (quoting *Neder v. United States*, 527 U.S. 1, 22 n.5 (1999)); *see also* fn. 8, *supra*.

[45] Defendants clearly knew Virginia Plaintiffs were acting on the assumption that their DWs were defect-free at the time of purchase since they decided to buy them and did not demand that any warranty repairs be made at the time of purchase.  Additionally, Defendants were undoubtedly on notice of the Defect in 2010, when Plaintiff Mederlet purchased her DW, TAC ¶ 59; MTD, p. 18 (acknowledging that the TAC plausibly alleges that Defendants obtained knowledge of the Defect in 2008), and when she later contacted Defendants about her DW incident, TAC ¶¶ 60-61.

While Plaintiff Walker did not directly purchase her DW (she acquired it with the purchase of her house), she was a foreseeable user of a DW, and Defendants therefore had a duty to disclose the inherent safety defect to subsequent purchasers such as she.  *See, e.g.*, *Lawley*, 2011 U.S. Dist. LEXIS 137971, at *42-43.  And, as there is a continuing post-sale duty to warn, Whirlpool certainly was required to disclose the Defect when Walker contacted Whirlpool in 2011 about her DW incident and when it sold her a similarly defective replacement DW.  TAC ¶¶ 66-67; fn. 7, *supra*.

---

23

advertising, warranties and communications with Virginia Plaintiffs about their DWs.[46]
*See supra* at fn. 4; TAC ¶¶ 60-61, 66-67.

**Mo.:** In Missouri, "a legal duty to speak arises when there is a confidential or
fiduciary relationship, when there is privity of contract, or when one party has superior
knowledge or information regarding a material fact not readily available to the other
party." *Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*, 2011 U.S. Dist.
LEXIS 110505, at *29 (E.D. Mo. Sept. 28, 2011) (citing cases). "Silence can be an act
of fraud where matters are not what they appear to be and the true state of affairs is not
discoverable by ordinary diligence." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220
S.W.3d 758, 765 (Mo. 2007) (citation omitted). Thus, a buyer may rely on a "seller to
disclose where the undisclosed material information would not be discoverable through
ordinary diligence." *Id.* (citation omitted). Further, Missouri adopts Restatement §
388. *See Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1004-05 (8th Cir. 2006).

Accordingly, Plaintiff Sample adequately alleges that Whirlpool had a duty to
disclose the Defect because Whirlpool was in privity of contract with her; provided her
with a written warranty; and she purchased her DW from an authorized Whirlpool
dealer. TAC ¶ 69. Also, for the reasons discussed above, Whirlpool had superior
knowledge about the material defect, thereby giving rise to its duty to disclose. *See* fn.
3, *supra*; pp. 9-11 , *supra* (sufficiency of knowledge pleadings); *Artilla Cove Resort v.
Hartley*, 72 S.W.3d 291, 298-99 (Mo. App. 2002).[47]

**Ohio:** A duty to disclose arises under Ohio law where there is a special
relationship, which may exist "where one party interposes confidence in the other

[46] Plaintiff Walker only contacted Whirlpool while Plaintiff Mederlet contacted both Whirlpool and
Sears about the Defect. TAC ¶¶ 61, 63.

[47] Whirlpool clearly had knowledge of the Defect when Plaintiff Sample purchased her DW in 2010.
*See* TAC ¶ 69; MTD, p. 18 (acknowledging that the TAC plausibly alleges that Defendants obtained
knowledge of the Defect in 2008). Defendants' assertion that they cannot be liable for fraudulent
concealment as to Sample and other Plaintiffs who purchased their DWs after 2008 - because
information about the Defect could have been discovered by those Plaintiffs through publicly-
available sources, MTD, p. 18 - is unavailing. *See* fn. 51, *infra*.

because of that person's position, and the other party knows of this confidence." *Mancini v. Gorick*, 536 N.E.2d 8, 9-10 (Ohio Ct. App. 1987). "Nondisclosure rises to the level of fraud when the seller intentionally fails to disclose a material fact with the intent of misleading the buyer and the buyer justifiably relies on the failure to disclose." *Reardon v. Hale*, 2007 Ohio App. LEXIS 3906, at *7 (Ohio Ct. App. Aug. 27, 2007).[48] A duty to disclose can also arise absent a special relationship where a party has superior knowledge or the means to acquire such superior knowledge, *id.*, or makes partial disclosures, *see Auto Chem Labs. Inc. v. Turtle Wax, Inc.*, 2008 U.S. Dist. LEXIS 83158, at *47-48 (S.D. Ohio Sept. 23, 2008); *Doe v. Flair Corp.*, 719 N.E.2d 34, 39 (Ohio Ct. App. 1998); *ATM Exch., Inc. v. Visa Int'l Serv. Ass'n*, 2008 U.S. Dist. LEXIS 93461, at *30 (S.D. Ohio Aug. 14, 2008). Additionally, Ohio has adopted Restatement § 388. *Ackley v. Wyeth Labs.*, 919 F.2d 397, 404 (6th Cir. 1990). This duty to warn of product defects even where the defect is discovered post-sale. *See* Restatement § 10.

There was a special relationship here between Plaintiff DW purchasers and Defendants - who actively participated in design, manufacturer and/or testing of the DWs or were privileged to such information – giving rise to a duty to disclose the Defect.[49] TAC ¶¶ 8, 107, 111-12. Further, the duty arose because Defendants concealed material information about the Defect with the intent to deceive Plaintiffs into purchasing the DWs for more than their fair value, fns. 5, 37*, supra*; had superior knowledge of the Defect, fn. 3, *supra*; and their marketing, advertising, warranties and communications about the DWs misled by non-revelation or partial revelation of facts,

---

[48] The court in *Reardon* also stated that "[s]ellers have a common law 'duty to disclose material facts that are latent.'" 2007 Ohio App. LEXIS 3906, at *7 (citations omitted). *See also Schubert v. Neyer*, 165 N.E.2d 226, 229 (Ohio Ct. App. 1959).

[49] Whirlpool had a special relationship with all Plaintiffs and National Class members; Sears had a special relationship with those Plaintiffs and National Class members who either purchased their DWs from, or had their DWs directly or indirectly serviced by, Sears. As to Plaintiffs who acquired their DWs with the purchase of their homes, they have a special relationship with Whirlpool because they stand in the shoes of the original DW purchasers. *See* fns. 38, 40, 45, *supra*.

1    fns. 4, 5, *supra*.  Further, even if Defendants were not aware of the Defect at the time of

2    sale, they had a post-sale duty to warn Plaintiffs of the danger.

3        **Ill.:**    A known product defect is a material fact that must be disclosed.

4    *AMPAT/Midwest, Inc. v. Illinois  Tool Works, Inc.*, 896 F.2d 1035, 1040-41 (7th Cir.

5    1990) (applying Illinois law).  Also, a party has a duty to disclose when it intentionally

6    conceals a material fact, *see Heider v. Leewards Creative Crafts*, 613 N.E.2d 805, 814

7    (Ill. App. Ct. 1993); when it makes partial disclosures, *id.,* at 811; and where the non-

8    disclosing party has superior knowledge, *see Go for It, Inc. v. Aircraft Sales Corp.*,

9    2003 U.S. Dist. LEXIS 11043, at *6-7 (N.D. Ill. June 25, 2003).  Further, Illinois has

10   adopted Restatement § 388.  *See Wade v. Midwest Brake Bond Co.*, 1998 U.S. Dist.

11   LEXIS 15055, at *17 n.8 (N.D. Ill. Sept. 22, 1998).

12       Meneghetti alleges that Defendants[50] had a duty to disclose by asserting that they:

13   (1) knew that her DW contained the Defect and that the recommended repairs would

14   not remedy it, fns. 3, 7, *supra*; (2) intentionally concealed the Defect, *see* fn. 5*, supra*;

15   (3) made partial misleading disclosures, TAC ¶ 76; fn. 4, *supra*; and (4) had superior

16   knowledge of the Defect.[51]  *See* fn. 3, *supra.*

17

18   [50]Defendants argue that Meneghetti fails to state a claim against Sears because she does not allege that
     she purchased her DW from, or had it serviced by, Sears.  However, the TAC asserts that A&E
19   serviced her DW, TAC ¶ 76, and therefore, she properly alleges claims against Sears based on that
     inadequate service and failure to disclose material information about the Defect.

20   [51] Defendants argue that Meneghetti could have discovered the omitted information on her own,
     because the TAC alleges that information about the Defect was "readily accessible" when she
21   purchased her DW in April 2008.  MTD, p. 17 n.19 (citations omitted).  This argument (which
     Defendants make as to Plaintiffs Mederlet, Walker, Sample and Bathon as well, *see* MTD, p. 18) has
22   been rejected by this very Court.  *See Tait*, 2011 U.S. Dist. LEXIS 103584, at *7-8:

23
              [T]he fact that information about consumer complaints may have been
24            available on the internet does not negate a claim for fraudulent omission.
              As the Northern District of California has explained, although some
25            "prospective purchasers with access to the internet could have read the
              many complaints about [the product] . . . [Defendant] is alleged to have
26            known a lot more, . . . . Many customers would not have performed an
              internet search before beginning a [product] search.  Nor were they
27            required to do so."  *Falk*, 496 F. Supp. 2d at 1096.  Plaintiffs have
              adequately plead a duty to disclose.
28

                                                                          *Footnote Continued*
                                             26

**N.Y.:**  New York recognizes a duty to disclose "'first, where the party has made a partial or ambiguous statement . . . second, when the parties stand in a fiduciary or confidential relationship with each other . . . and third, 'where one party possesses superior knowledge, not readily available to the other, and know that the other is acting on the basis of mistaken knowledge.'"  *Woods*, 807 F. Supp. 2d at 124 (alterations in original) (citation omitted).  Further, New York has adopted Restatement § 388.  *Young v. Elmira Transit Mix, Inc.*, 52 A.D.2d 202, 204-05 (N.Y. App. Div. 1976).  This duty exists even where the danger is discovered post-sale.  *See Cover v. Cohen*, 461 N.E.2d 864, 871-72 (N.Y. 1984); *Adams v. Genie Indus., Inc.*, 53 A.D.3d 415, 416 (N.Y. App. Div. 2008) ("A manufacturer of a product affecting human safety has a continuing duty, after such product has been sold and dangerous defects in design have come to the manufacturer's attention, . . .either to remedy these, or if complete remedy is not feasible, at least to give users adequate warnings and instructions concerning methods for minimizing the danger.").

New York Plaintiffs adequately plead that Defendants had a duty to disclose. Plaintiffs allege that Defendants: (1) made partial misleading disclosures, TAC ¶¶ 86, 94, 96; fn. 4, *supra* ; (2) had superior knowledge of the Defect, *see* fn. 3, *supra.*; (3) knew that the DWs contained the Defect, yet failed to warn Plaintiffs about the Defect and its dangers both prior to and post-sale, fns. 3, 5, *supra*, and (4) knew that the New York Plaintiffs purchased or accepted their DWs under the mistaken belief that they were defect-free.  Koswener specifically pleads that she had her DW repaired by Sears

---

(Footnote omitted).  Furthermore, the TAC alleges that Defendants knew of the Defect from their own pre-release testing, consumer complaints made directly or indirectly to Defendants *that were not listed publically on the Internet*, and warranty claims.  TAC ¶ 257.  Plaintiffs had access to none of that material.  Accordingly, Meneghetti and all other Plaintiffs adequately allege that they could not have discovered the truth through *reasonable* inspection or inquiry.  *See, e.g., First Place Bank v. Skyline Funding, Inc.*, 2011 U.S. Dist. LEXIS 83430, at *23-24 (N.D. Ill. July 27, 2011).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

under the mistaken belief that the repairs would cure the underlying problem, TAC, ¶¶ 10, 84, 86, 92, 134, 150-51, 258; fn. 8, *supra*; and (3)[52]

**Utah:**  Defendants had a duty to disclose under Utah law.  *See* pp. 7-9, *supra*.

## C.   A Finding Of Liability Would Not Make Defendants Permanent Insurers

Defendants argue that warrantors have no duty to disclose a defect manifesting after expiration of a warranty.[53]  MTD, pp. 18-19.  This argument fails for at least three reasons.  First, Defendants concede that the TAC alleges that almost 50% of Plaintiffs' DWs were *within* the applicable warranty periods when the Defect manifested.[54]  Second, Plaintiffs allege that the Defect existed when the DWs were manufactured and

---

[52] While intent to defraud must be alleged under New York law, "the requisite intent of the alleged speaker of the fraud need not be alleged with great specificity."  *Woods*, 807 F. Supp. 2d  at 119-20 (citation omitted).  "[F]raudulent intent may be inferred either through proof of a motive and clear opportunity to commit fraud or through facts indicating 'conscious behavior' that evinces fraudulent intent."  *World Wide Communs. v. Rozar*, 1997 U.S. Dist. LEXIS 20596, at *21 (S.D.N.Y. Dec. 30, 1997) (citation omitted).  Contrary to Defendants' contention, MTD, p. 17 n.20, Plaintiffs adequately allege that Defendants had fraudulent intent based on motive (induce consumers into purchasing DWs at an inflated value and into paying for inadequate service or repairs to the DWs, fn. 37, *supra*) and clear opportunity (advertising and marketing information as well as in communications with consumers who contacted Defendants about their DW incidents, fns. 4, 5, *supra*).  Additionally, the TAC alleges "facts indicating 'conscious behavior' that evinces fraudulent intent," including: Defendants actual omission of any information about the Defect in all of their communications, including advertising, marketing, promotional and warranty materials, and Defendants repeated denial of the existence of the Defect to complaining customers.  *See supra* fns. 4, 5.

[53] Defendants further argue in a footnote that the ELD bars Plaintiffs' fraudulent concealment claims.  MTD, p. 19 n.24.  However, Defendants overlook that the ELD generally does not apply in cases such as this, where fraudulent inducement is alleged.  *See, e.g., MedChoice Fin., LLC v. ADS Alliance Data Sys.*, 857 F. Supp. 2d 665, 671-72 (S.D. Ohio 2012) (finding that the ELD does not apply to "actions [that] are more analogous to fraudulent inducement than fraudulent breach of contract," *id.* at 672).  *See also Onyx Envtl. Services v. Maison*, 407 F. Supp.2d 874, 879 (N.D. Ohio 2005) (finding that because fraud and contract duties are distinct from one another, the ELD does not bar plaintiff's fraud claim); *Updegraff v. Beneficial Ohio, Inc. (In re Updegraff)*, 2012 Bankr. LEXIS 1002, at *25 (Bankr. S.D. Ohio Mar. 9, 2012) ("economic loss doctrine is not applicable to intentional torts like fraud or fraud in the inducement of a contract" (citations omitted)).  *See also* Section IV(A) at pp. 4-9, *supra* (demonstrating that the ELD does not bars Plaintiffs' tort claims).

[54] MTD, p. 19 (stating that Plaintiffs allege that 7 of the 17 DWs experienced ECB failures within the applicable warranty periods).

sold;[55] Defendants knew of the Defect and that it would cause the DWs to fail in a dangerous manner within their expected useful life;[56] Defendants concealed the Defect from Plaintiffs;[57] and the DWs functioned improperly from the outset because the spaded terminals' inability, due to defective design, to carry their load without overheating, progressively degrading the DWs until they combusted.[58]  In that circumstance, a limitation of warranty does not bar a fraudulent concealment claim. *See Collins v. eMachines, Inc.*, 134 Cal Rptr. 3d 588, 594-95 (Cal. Ct. App. 2011).

Third, where a defect threatens safety, the duty to disclose trumps the warranty's expiration.  *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1234 (C.D. Cal. June 30, 2011).  Defendants cite *Hoey v. Sony Electronics Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007), for the proposition that a warrantor has no duty to disclose a defect that manifests post-warranty, but ignore the caveat – plaintiffs need only "allege *more* than the existence of a warranty and a defect occurring outside the warranty period to survive [the] motion to dismiss."  *Id.* (emphasis added).  Here, "more" is alleged – the Defect was a known safety risk.[59]  *See* fns. 2, 3, *supra*.

### D.    The NJPLA Does Not Abrogate The Fraudulent Concealment Claims Of The N.J. Plaintiffs

Defendants aver that the New Jersey Plaintiffs' claims for fraudulent concealment/non-disclosure are subsumed in New Jersey's Product Liability Act ("NJPLA"), N. J. Stat. § 2A:58C-1, *et seq*.  MTD, p. 20.  Where the damage alleged is to the product itself, however, a claim falls outside the NJPLA.  *Montich v. Miele USA, Inc.*, 2012 U.S. Dist. LEXIS 41398, at *46 (D.N.J. Mar. 27, 2012).  The New Jersey

---

[55] *See* fn. 2, *supra*.

[56] *See* fn. 3, *supra*; pp. 9-11, *supra* (discussing sufficiency of knowledge pleadings).

[57] *See* fn. 5*, supra.*

[58] TAC ¶¶ 4, 122-24, 132, 142.

[59] Even if Defendants were unaware of the Defect at the time of sale, they nevertheless had a post-sale duty to warn Plaintiffs of the Defect.  *See, e.g.,* Restatement § 10.

29

Plaintiffs allege damage to their DWs only, TAC ¶¶ 31, 35, 42-46, 78-83.  As "the

alleged harm [is] the malfunction of the washing machine itself," *Montich*, 2012 U.S.

Dist. LEXIS 41398, at *46-47, the fraudulent concealment claim is outside the

NJPLA.[60]

### E.    O'Donnell, Meneghetti, Koswener, Paolini And Steffes Properly Plead Damages

Defendants' contend that O'Donnell, Meneghetti, Koswener, Paolini and Steffes

cannot assert fraudulent concealment claims under Georgia, Illinois, New York or Utah

law, respectively, because they fail to allege recoverable damages, MTD pp. 20-21.

The argument is weightless.  Plaintiffs allege actual loss from diminution of value and

loss of use while their DWs were inoperable.[61]   *See* p. 11, *supra* (discussing

O'Donnell's damages); pp. 13-14 (discussing Koswener's and Paolini's damages); TAC

¶¶ 75-76, 99-105; *Lipton v. Chattem, Inc.*, 2012 U.S. Dist. LEXIS 49828, at *11-13

(N.D. Ill. Apr. 10, 2012)[62].

Defendants' further argument that New York and Utah Plaintiffs' claims for

fraudulent concealment fail under those states' laws because the ELD bars such claims

where a contract governs the dispute, MTD, p. 21, is likewise meritless.  Under New

York law, the existence of a contract/warranty does not bar a fraudulent concealment

claim where there is an independent duty to disclose.  *Koch Indus., Inc. v.

Aktiengesellschaft*, 727 F. Supp. 2d 199, 214 (S.D.N.Y. 2010); *Woods v. Maytag Co.*,

---

[60]Defendants' cited cases are inapposite; they involve damage caused *by* a product rather than damage
*to* the product.  *See DeBenedetto v. Denny's, Inc.*, 23 A.3d 496, 497-98 (N.J. Sup. Ct. Law Div. 2010)
(alleged damages caused by eating high-sodium meals; damage not to product (meal) itself);
*O'Donnell v. Kraft Foods, Inc.*, 2010 U.S. Dist. LEXIS 26023 (D.N.J. Mar. 18, 2010) (alleged
damages caused by eating carcinogenic hot dogs; damage not to product (hot dog) itself).

[61] O'Donnell, Meneghetti and Koswener further allege that they sustained damages because their DWs
were inadequately repaired and remain defective.[61]  *See* fn. 7, *supra*; TAC ¶¶ 29, 76, 87.

[62] Under *Lipton*, it is clear that the fact that Whirlpool repaired Meneghetti's DW does not moot her
claim.  2012 U.S. Dist. LEXIS 49828, at *11-13.  *See also Dewan v. Ford Motor Co.*, 842 N.E.2d 756,
760-61 (Ill. App. Ct. 2005) (finding that the repair of plaintiff's vehicle did not moot his cause of
action because he still suffered damages as a result of diminution of value).

2010 U.S. Dist. LEXIS 116595, at *29-30 (E.D.N.Y. Nov. 2, 2010).   Here, an independent duty to disclose is adequately alleged by the New York Plaintiffs.  *See, e.g., Woods*, 807 F. Supp. 2d at 125; *Cover*, 461 N.E.2d at 871-72.  The same is true for Steffes under Utah law.  *See* pp. 7-9, *supra*.

## VI.  PLAINTIFFS STATE CLAIMS FOR BREACH OF EXPRESS WARRANTY

Defendants seek dismissal of all breach of express warranty claims except Mederlet's.  MTD, pp. 21-23.  They argue that Plaintiffs misstate their respective warranty's terms and do not allege that Defendants failed to perform their obligations thereunder.  *Id.*  The TAC refutes these arguments.

Foremost, the TAC alleges the terms of Defendants' express warranties.  TAC ¶¶ 117-120.  Although Defendants aver that Plaintiffs misstate the terms, MTD, pp. 21-22, the alleged misstatements are not identified.[63]   Moreover, "[t]he court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party."  *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 936 (C.D. Cal. 2012).  Defendants further argue that Plaintiffs fail to allege that Sears and/or Whirlpool did not perform their

---

[63] Further, incorporated herein are the arguments raised in the Plaintiffs' Opposition to Defendants' Request for Judicial Notice (ECF 59).  Defendants have not established by competent evidence that the warranties they have attached to their Request for Judicial Notice in Support of Defendants' Partial Motion to Dismiss Third Amended Complaint (ECF 74) ("Request for Judicial Notice") are the warranties that govern the claims of Himler, O'Donnell, Sample or Steffes (Exhibits 1, 3, 5, and 9, respectively, thereto).  In fact, Defendants do not even specify whether the attached "warranty information for dishwashers that share Himler's KitchenAid-brand model number," Request for Judicial Notice, p. 1, ¶ 1, concerns his first, or his second, DW.  Without establishing that those express warranties control, any divergence between Plaintiffs' allegations and Defendants' alleged warranties must be resolved in Plaintiffs' favor.  And while the attached warranties for Mederlet, Walker and Meneghetti (Exhibits 6, 7 and 8, respectively, to ECF 74) govern their warranty claims, those claims survive for the reasons discussed herein.  The same is true for the warranties provided for Milicia and Bathon (Exhibits 2 and 4, respectively, to ECF 74) which govern their warranty claims as to their original DWs.  (Those warranties do not govern Milicia's and Bathon's warranty claims for the replacement DWs that they purchased in 2010 and 2012, respectively.  TAC ¶¶ 44-45, 72-73.).

---

1   obligations under the warranties.   Again, these allegations are clearly refuted by the

2   specific averments of the TAC.[64]

3        **Himler:** Defendants argue that Himler fails to allege that his DW malfunctioned

4   within the warranty period or that he sought repair from Whirlpool.  MTD, p. 22.  In

5   fact, the TAC asserts that: Himler was within his express warranty for the replacement

6   DW that he received in 2010; Defendants knew that his replacement DW had the Defect

7   and yet did give him any free replacement parts for the defective electronic control

8   components in that DW; and he sought repair under the warranty by demand letter and

9   by bringing a breach of express warranty claim.  *Id.* at ¶¶ 38-39, 186, 214, 219-21.

10       **O'Donnell:**  Defendants argue that O'Donnell does not allege that his warranty

11  covered the ECB, and thus the only inference to be drawn is that Whirlpool honored the

12  warranty.  MTD, p. 22.  Defendants are wrong.  The TAC alleges that Whirlpool

13  breached the warranty by failing to repair O'Donnell's DW effectively (evidenced, *inter*

14  *alia*, by the fact that a repairman who inspected Walker's DW warned that repairs are

15  unlikely to be effective because "there appear to be multiple recorded cases of the

16  problem reoccurring [and] Whirlpool . . . has not upgraded the replacement parts or

17  issued a recall . . ."  TAC ¶ 65).  *Id.* at ¶¶ 11-12, 25-29, 148, 217-18.

18       **Milicia:**  Defendants assert that Milicia does not contend that Whirlpool "refused

19  to repair or replace [her] Dishwasher[ ] at no cost . . ."  MTD, p. 23.  In fact, Milicia

20  alleges that in July 2010, when her DW failed yet again due to the Defect, she was

21  offered a prorated refund or the right to purchase a new DW for $400.  TAC ¶ 45.

22  Whirlpool breached its express warranty as it did not offer to provide, free of charge, an

23  ECB or a new machine as required under the express warranty.  *Id.* at ¶ 213.  Milicia

24  also contends that Whirlpool breached its express warranty by inadequately repairing

25  her DW – similarly defective replacement parts were used.  *Id.* at ¶¶11-12, 42-44, 46,

26  65, 148, 217-18.  Milicia further asserts that Whirlpool breached her replacement DW's

27

28  [64] *See* TAC ¶¶ 25-28, 37-39, 44-45, 65-66, 72-73, 75-76, 148, 155, 158. 217-221.

express warranty because it knew that her replacement DW contained the Defect and yet did not provide, free of charge, any replacement parts for the defective electronic control components in that DW, even after a demand letter was sent and this breach of express warranty claim was made. *Id.* at ¶¶ 46, 186, 213, 215-18, 221.

**Bathon:** Defendants claim that Bathon fails to allege that Whirlpool refused to replace or repair her DW at no cost or otherwise failed to comply with the warranty. MTD, p. 23. In fact, in addition to the allegations above applicable to all Express Warranty Plaintiffs, Bathon alleges that her DW smoked and smelled of burning metal. TAC ¶ 72. Following the repairman's report that the "wiring harness had melted to and damaged the control board," Bathon contacted the KitchenAid division of Whirlpool. *Id.* She was offered and accepted a new machine for $150. *Id.* at ¶ 73. Whirlpool did not replace the defective electronic control components at no cost as required under her warranty. *Id.* at ¶ 213. Bathon also contends that Whirlpool breached her replacement DW's express warranty because it knew that her replacement DW contained the Defect and yet did not provide, free of charge, any replacement parts for the defective electronic control components in that DW, even after a demand letter was sent and this breach of express warranty claim was made. *Id.* at ¶¶ 72-73, 186, 213, 215-18, 221.

**Meneghetti:** Defendants argue that Meneghetti fails to allege that Whirlpool refused to replace or repair her DW at no cost or otherwise failed to comply with the warranty. MTD, p. 23. In fact, she alleges that Whirlpool breached the warranty by failing to effectively repair her DW. TAC at ¶¶ 11-12, 65, 75-76, 148, 217-18.

**Walker:** Defendants contend that Walker fails to plead that her DW was under warranty at the time it malfunctioned, and that she did not allege that Whirlpool was provided an opportunity to repair or replace the defective DW. MTD, p. 23. In fact, Walker alleges that her replacement DW was within the express warranty period; that Defendants knew that her replacement DW contained the Defect but failed to provide, free of charge, any replacement parts for the defective ECB; and that she sought repair

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

pursuant to the warranty by a demand letter and by bringing a breach of express warranty claim. *Id.* at ¶¶ 11-12, 65-67, 186, 213, 217-18, 221.

## VII.  PLAINTIFFS STATE CLAIMS FOR BREACH OF IMPLIED WARRANTY

**Statute of Limitations:**  Defendants argue that the California, Maryland, Georgia, New Jersey, Massachusetts, New York, and Utah Plaintiffs' implied warranty claims are barred by the statute of limitations ("SOL").[65]  MTD, pp. 23-27.  Plaintiffs affirmatively plead that their claims are timely under the discovery rule, the fraudulent concealment tolling doctrine and estoppel.  TAC ¶¶ 175-177.  *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 354-55 (E.D. Cal. 2008); *Doll*, 814 F. Supp.2d at 536; *Feinour v. Ricker Co.*, 566 S.E.2d 396, 397-98 (Ga. Ct. App. 2002); *Dewey v. Volkswagon AG*, 558 F. Supp.2d 505, 522-25 (D.N.J. 2008), *rev'd on other grounds,* 681 F.3d 170 (3d Cir. 2012); *Springfield Library & Museum Ass'n v. Knoedler Archivum, Inc.*, 341 F. Supp. 2d 32, 39-40 (D. Mass. 2004); *Lindsay v. Toyota Motor Sales, U.S.A., Inc.*, 816 N.Y.S.2d 697, 697 (N.Y. Sup. Ct. 2006); *Johnson v. Henry Vogt Mach. Co.*, 544 F. Supp. 2d 1276, 1283 (D. Utah 2008); *Colosimo v. Roman Catholic Bishop*, 156 P.3d 806, 816 (Utah 2007)[66].  Further, as LeBlanc could not have reasonably discovered the latent defect until his DW combusted on May 29, 2010, TAC ¶49, the discovery rule applies to his alternative claim under Massachusetts law. *American Glue & Resin v. Air Prods. & Chem., Inc.*, 835 F. Supp. 36, 42 (D. Mass. 1993); ALM GL ch. 106 § 2-725(4) (section does not alter the law on the tolling of the

---

[65] "When a motion to dismiss is based on the running of a statute of limitations, dismissal is granted 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute is tolled.'"  *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 355 (E.D. Cal. 2008) (citation omitted).

[66] The application of the discovery rule in cases of fraudulent concealment or other exceptional circumstances under Utah law applies to breach of contract claims. *Moore v. Smith*, 158 P.3d 562, 571 (Utah Ct. App. 2007).  The one case Defendants cite is inapplicable because it involved zero allegations of active and knowing concealment, or any other basis for equitable tolling.  *See Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11 (Utah 1990).

---

SOL).[67]   Finally, Defendants are estopped to assert an SOL defense because they induced Plaintiffs not to bring suit by concealing their knowledge of the Defect.  *See* fn. 5, *supra*; TAC ¶ 177; *Springfield Library*, 341 F. Supp. 2d at 39-40; *Searcy v. Chicago Transit Authority*, 497 N.E.2d 410, 412-13 (Ill. App. Ct. 1986).

**Warranty Limitations:**  Defendants further argue that the implied warranty claims of Mederlet, Sample, Meneghetti[68] and Bathon[69] are time-barred under their warranty terms.  MTD, pp. 27-28.  However, Plaintiffs allege that the Defect existed at the time of sale, and that Defendants' duties under their implied warranties arose then. TAC ¶¶ 3, 175-178, 196; fn. 2, *supra*.   Factual issues about the parameters and operation of an express warranty (which Defendants argue limits the scope of their implied warranty) cannot be resolved on a motion to dismiss.   *See In re Ford Motor Co. E-350 Van Prods. Liability Litig.*, 2008 U.S. Dist. LEXIS 73690, at *14-15 (D.N.J. Sept. 3, 2008) (UNPUBLISHED).   Further, Plaintiffs seek a declaration that the warranty terms are unconscionable and thereby void, TAC ¶ 500; it is premature to make that determination at the pleading stage.  *Cooper v. Samsung Elecs. Am., Inc.*, 2008 U.S. Dist. LEXIS 75810, at *10 (D.N.J. Sept. 30, 2008); *Carlson v. General*

---

[67] Defendants try to rely on *Howard v. IKO Mfg., Inc.*, 2011 Mass. App. Div. 191 (2011), for the proposition that the discovery rule does not apply to implied warranty claims, but *Howard* does not overrule *American Glue*, nor the terms of ALM GL ch. 106 § 2-725(4).

[68] Defendants also argue that Meneghetti's implied warranty claim should be dismissed because her DW was repaired.  Defendants misinterpret *Lara v. Hyundai Motor Am.*, 770 N.E.2d 721 (Ill. App. Ct. 2002), to require an unsuccessful attempt to fix a product before an implied warranty claim may proceed.  Whether Defendants attempted to repair Meneghetti's DW does not affect her ability to bring an implied warranty claim.  Rather, "[t]o allege a breach of implied warranty of merchantability under Illinois law, a plaintiff must plead: '(1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of merchantable quality.'"  *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 912 (N.D. Ill. 2011).  Meneghetti alleges each of these elements.  TAC ¶¶ 195-202.  Even assuming that Defendants' assertion is correct, however, that does not warrant dismissal, because she avers that the repair to her DW was unsuccessful.  TAC ¶¶ 11-12, 65, 75-76, 148, 217-18.

[69] Defendants also argue that Bathon's implied warranty claim should be dismissed because the claim is abrogated by OPLA. MTD p. 29. Defendants are incorrect. Ohio law allows both "tort-based" implied warranty claims to proceed under OPLA, as well as "contract-based" implied warranty claims to proceed under Ohio's UCC, where there is a separate statutory basis for both action. *See Miles*, 612 F. Supp. 2d at 924-27; *Roshong v. Fitness Brands Inc.*, 2012 U.S. Dist. LEXIS 74730, *9-10 (N.D. Ohio May 30, 2012).  *See also* pp. 12-13 (discussing inapplicability of OPLA to Bathon's claims).

*Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989).

Moreover, courts have rejected manufacturers' attempts to limit consumer product warranty periods where the product is knowingly sold with a defect that will manifest shortly after the warranty expires, and where consumers have no meaningful opportunity to negotiate terms. *See, e.g., In re Samsung DLP TV Class Action Litig.*, 2009 U.S. Dist. LEXIS 100065, at \*13-16 (D.N.J. Oct. 27, 2009). That is this case. *See* fns. 3, 4, 5, *supra*.

Finally, Defendants base their warranty time-bar argument on exhibits attached to the Request for Judicial Notice. As discussed at fn. 63, *supra*, Defendants have not established that the proffered warranties apply to Sample's DW or to Bathon's current DW, and so those exhibits cannot serve as grounds for dismissal as to those Plaintiffs. Even if the proffered warranties do apply, however, the disclaimer is not conspicuous in any of the attached exhibits, as required by Virginia, Missouri, Ohio and Illinois law. *Morris v. Winnebago Indus., Inc.*, 71 Va. Cir. 292, 293 (Va. Cir. Ct. 2006); R.S. Mo. § 400.2-316; Ohio Rev. Code § 1302.29(B); 810 ILCS 5/2-316(2). The warranty disclaimers in each exhibit uses text that is the same size and color as the text of the limited warranty, which characteristics have been found to be insufficiently conspicuous to disclaim a warranty. *See, e.g., Morris,* 71 Va. Cir. at 293. Thus, the implied warranty claims cannot be dismissed on this basis.

**Privity:** Defendants argue that Plaintiffs' implied warranty claims should be dismissed for lack of privity under California, Georgia, Ohio and Illinois law. MTD, pp. 28-29. However, California, Ohio and Illinois recognize a third-party beneficiary exception to the privity requirement. *Cartwright*, 249 F.R.D. at 356; *Bobb Forest Prods. v. Morbark Indus.*, 783 N.E.2d 560, 576 (Ohio Ct. App. 2002); *Stein v. D'Amico*, 1989 U.S. Dist. LEXIS 9511, at \*2-3 (N.D. Ill Aug. 8, 1989). Plaintiffs allege that the contracts between Defendants and distributors were made for the benefit of the intended DW consumers, TAC ¶ 201, so this exception applies. O'Donnell's claim also stands, because an exception to the privity requirement exists under Georgia

law where the manufacturer, as here, provides consumers an express warranty.  TAC ¶ 118-119; *Terrill v. Electrolux Home Prods.*, 753 F. Supp. 2d 1272, 1288 (S.D. Ga. 2010).[70]

## VIII.  PLAINTIFFS STATE CLAIMS FOR TORTIOUS BREACH OF IMPLIED WARRANTY

Defendants assert that Bathon's claim for tortious breach of implied warranty[71] is preempted by OPLA and the ELD, and that such claim cannot be asserted where a written warranty applies.  MTD, p. 30.  Both arguments are wrong.  Neither OPLA nor

---

[70] Defendants also assert that the NJPLA and OPLA abrogate the New Jersey and Ohio Plaintiffs' implied warranty claims.  As discussed at pp. 12-13, 29-30, *supra*, these arguments fail.

[71] Defendants also argue that the tortious breach of implied warranty claims of the Nationwide Class should be dismissed because Plaintiffs do not adequately plead claims for application of Ohio law to non-Ohio residents. MTD, pp. 30-31.  This argument is premature at best.  Under the current schedule, choice-of-law issues are due to be briefed in connection with class certification (*see* ECF 65), which is typically when choice of law issues are decided.  *Pecover v. Electronics Arts Inc.*, 633 F. Supp. 2d 976, 985 (N.D. Cal. 2009); *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV Litig.*, 758 F. Supp. 2d 1077, 1096 (S.D. Cal. Nov. 30, 2010).  Moreover, Defendants have made no effort to demonstrate that their choice of law – the state statutes – is correct.  If the Court decides to consider choice-of-law analysis, it should conclude that Ohio law applies to Plaintiffs' claims.  In making that determination, the Court applies the choice-of-law rules of California.  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996).  Under that test a court must: (1) first determine whether the relevant law is the same or different across the affected jurisdictions; (2) if there is a difference in the law, proceed to analyze each jurisdiction's interest in the application of its own law to the particular circumstances to determine whether a true conflict exists; and (3) if a true conflict exists, weigh the strengths of the interests to determine which state's interest would be more impaired by not having its law applied.  *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 539 (C.D. Cal. Nov. 14, 2011) (citation omitted).  Assuming *arguendo* that true conflicts exist, Ohio's interest would be most impaired by not having it laws applied.  The unlawful conduct that forms the basis of Plaintiffs' claims emanates from Ohio, and Ohio is where the DWs were tested, manufactured, and entered the stream of commerce. TAC ¶¶8, 106, 205.  Ohio has a materially greater interest than any other State in regulating unlawful conduct by Defendants and in enforcing the rights and remedies granted to United States consumers under Ohio laws invoked by the SAC – and these rights and remedies further strong fundamental public policies and interests of the State of Ohio.  *See In re Bendectin Litigation*, 857 F.2d 290, 304-05 (6th Cir. 1988); *see also Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 342-43, 474 N.E.2d 286 (1984) (*per curiam*) (while rejecting the application of Ohio law because "the mere fact that twenty-five years ago appellee manufactured a commercial meat grinder in Ohio and subsequently sold it to a Tennessee corporation with a protective guard in place which, in turn, was removed and a Kentucky resident was injured thereby, does not justify an application of Ohio law," *id.* at 343, the court observed that "[i]t is without question that *our state has an important policy objective in deterring the manufacture and sale of defective products*."  *Id.* (emphasis added)).

---

37

the ELD bars Plaintiff Bathon's claim.  *See* pp. 6-7, 11-13, *supra*.  Although Defendants argue that a tortious breach of implied warranty claim cannot be asserted where a written warranty applies, the case on which they rely does not so hold.  MTD, p. 30 (citing *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1028-29 (6th Cir. 2003)).  *HDM* stands for no more than that the ELD bars tort claims involving commercial parties.  "The district court found, based on the cautionary dicta in *Chemtrol*, that parties lacking privity might be subject to the economic loss rule under some circumstances and that commercial parties lacking privity, as opposed to non-commercial parties, would be foreclosed from recovering economic losses.  We agree."  *HDM*, 332 F.3d at 1029.  Defendants' other cited cases are equally inapplicable.  *Waterloo Coal Co. v. Komatsu Mining Sys.*, 2003 U.S. Dist. LEXIS 411 (S.D. Ohio Jan. 6, 2003), *Inglis v. Am. Motors Corp.*, 209 N.E.2d 583 (Ohio 1965), and *Rogers v. Toni Home Permanent Co.*, 147 N.E.2d 612 (Ohio 1958), stand for the proposition that implied warranty claims that are identical to the terms of an express warranty cannot proceed.  Here, Bathon pleads both an express warranty claim based upon the warranty's specific terms, as well as a claim for a breach of the implied warranty of merchantability. TAC ¶¶ 195-202, 210-223.  The warranties sweep in different conduct, and further pleading in the alternative is permissible.  *Daffin v. Ford Motor Co.*, 2004 U.S. Dist. LEXIS 18977 (S.D. Ohio July 15, 2004), is inapplicable because it discussed the plaintiff's implied warranty claims in the context of determining she was not a typical class representative for class certification purposes.

## IX.   PLAINTIFFS STATE CLAIMS FOR VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

Defendants seek dismissal of Plaintiffs' claims for breach of express and implied warranties under the MMWA, 15 U.S.C. §§ 2301 *et seq*., alleging that no underlying warranty claims survive the motion to dismiss, and therefore the MMWA claims, which depend on underlying claims, fail.  MTD, p. 31.  They are wrong.  First, all of the underlying warranty claims survive.  *See* pp. 31-39, *supra*; *Tait*, 2011 U.S. Dist. LEXIS

38

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

103584, at *15.  Second, Defendants have not moved to dismiss Mederlet's breach of express warranty claim.  Thus the MMWA claims survive even assuming a deficiency in some other Plaintiffs' warranty claims.

## X.   PLAINTIFFS STATE CLAIMS UNDER THEIR RESPECTIVE STATE CONSUMER PROTECTION STATUTES

Defendants cite *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1096 (S.D. Cal. 2010), for the proposition that "merely listing another state's consumer fraud statutes" is insufficient to state a claim.  MTD at p. 32.[72]  To the contrary, the counts for violations of state consumer protection statutes for each respective Plaintiff's state each contain approximately 17 paragraphs of substantive allegations and also incorporate the allegations in ¶¶ 1-178 of the TAC, which together satisfy the required elements for the state consumer protection statutes at issue.

**Cal. (Consumers Legal Remedies Act ("CLRA") claim):**  Defendants argue that California Plaintiffs failed to plead a claim under the CLRA, Cal. Civ. Code §§ 1750, *et. seq.*, because they do not adequately allege that Defendants had pre-sale knowledge of the Defect.  MTD, pp. 32-33.[73]  This argument is unavailing.  As discussed, the TAC adequately alleges that Defendants' knew or should have known of the Defect before the California Plaintiffs purchased their DWs.[74]  *See supra* pp. 9-11;

---

[72] Defendants seek to dismiss all consumer protection act claims except as to the Missouri and Virginia Plaintiffs (Counts XI-XVII and XIX-XXI).

[73] Defendants also make this argument as to California Plaintiffs' UCL claims.  However, pre-sale knowledge is not a requisite element for a UCL claim.  *See, e.g., Kowalsky v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 89379, at *23 (N.D. Cal. Aug. 10, 2011) (stating that the court was not holding that knowledge is a requirement under the unfairness prong of the UCL).  Even if pre-sale knowledge is a necessary element, as discussed as to the CLRA claim, California Plaintiffs sufficiently plead it.

[74] At a minimum, as Defendants concede that the TAC adequately alleges that Defendants knew of the Defect by 2008, MTD, p. 18, Himler adequately alleges that Defendants violated the CLRA in 2010 when he contacted them about his DW incident, and Whirlpool gave him a replacement DW without disclosing that it was likewise defective.  TAC ¶¶ 37-38.

*Cirulli v. Hyundai Motor Co.*, 2009 U.S. Dist. LEXIS 125139, at *9 (C.D. Cal. June 12, 2009).  California Plaintiffs state claims under the CLRA.[75]

**Cal. (Unfair Competition Law ("UCL") claim):**   The UCL makes illegal business transactions that are unlawful (under any state or federal law), unfair or fraudulent.  Cal. Bus. & Prof. Code § 17200.  Defendants argue that Plaintiffs fail to state a claim under any of these theories and that the UCL claims are time-barred.[76]  MTD at pp. 34-36.  In fact, Plaintiffs sufficiently plead UCL claims under each theory.  As to unlawfulness, the TAC alleges that Defendants violated the CLRA, Song-Beverly

---

[75]  Defendants state in a footnote that they "do not concede that Plaintiffs have adequately pled the omission of any 'material' fact."  MTD, p. 33 n.35.  Information about the Defect is clearly material as a reasonable consumer would either have not purchased, or would have paid less for, a DW had the Defect been disclosed.  *See*, fn. 8, *supra*; *Falk*, 496 F. Supp. 2d at 1095; *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010).

[76]  The claim is not barred by the four year SOL, Cal. Bus. & Code § 17208, for at least three reasons.  First, as Plaintiffs assert at TAC ¶¶ 176-77, Defendants' fraudulent concealment tolls the statute, and Defendants are otherwise equitably estopped to raise limitations.  Defendants do not dispute either assertions  MTD, *passim*.  Second, Plaintiffs' claim is based not only on Defendants' failure to disclose material information about the safety defect at the time of purchase, but also on their later failures to disclose, *e.g.*, when Plaintiffs contacted Defendants directly about their DW problems.  *See, e.g., Suh v. Yang*, 987 F. Supp. 783, 795 (N.D. Cal. 1997) (UCL claim not time-barred since the alleged wrongs were continuous acts and some of the acts occurred within the limitations period).  Third, even if their claims are outside the four year window, California Plaintiffs adequately allege that limitations was extended under the discovery rule, equitable tolling and equitable estoppel.  TAC ¶¶ 175-77.  Moreover, the cases on which Defendants rely to support their argument that the discovery rule does not apply to UCL claims, MTD, p. 32, appear to have been superseded by *Burdick v. Union Sec. Ins. Co.*, 2009 U.S. Dist. LEXIS 121768, at *35-36 n.16 (C.D. Cal. Dec. 9, 2009):

> The Court is well aware of earlier holdings that the discovery rule does not apply to UCL claims. *See, e.g., Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (UCL limitations period began to run "on the date the cause of action accrued, not on the date of discovery" for claim related to trademark infringement).  In 2007, however, the California Supreme Court and the Ninth Circuit indicated that whether the discovery rule applies to the UCL is an open question.  See *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 635 n.7, 54 Cal. Rptr. 3d 735, 151 P.3d 1151 (2007); *Betz v. Trainer Wortham & Co.*, 236 Fed. Appx. 253, 256 (9th Cir. May 11, 2007) ("It is an open question under California law whether the discovery rule applies to unfair business practices claims.")  The California Court of Appeal then issued *Broberg*, which makes clear that the discovery rule does apply at least to circumstances similar to those here.

---

40

Act (Cal. Civil Code §§ 1790 *et seq.*), MMWA and "other state and federal statutes and common law alleged in this Third Amended Complaint."  TAC ¶ 324.  *See Monday v. Saxon Mortg. Servs.*, 2011 U.S. Dist. LEXIS 105214, at *15-16 (E.D. Cal. Sept. 16, 2011); *Keegan*, 838 F. Supp. 2d at 944 n.50; *Tietsworth*, 720 F. Supp. 2d at 1136-37. Defendants do not move to dismiss Himler's strict product liability and negligence claims, so he certainly has stated a UCL claim based on that illegal activity.

The TAC adequately states a UCL claim for unfair competition because Defendants' concealment of a known safety defect that threatens consumers' health and home, fns. 2, 5, *supra*, is not outweighed by any countervailing benefits to consumers and competition.  *See Keegan*, 838 F. Supp. 2d at 944.[77]

Finally, as Defendants' conduct entails deception to the public, fns. 3-5, 7, 8, *supra*, and because California Plaintiffs adequately allege a claim for fraudulent concealment and violation of the CLRA, *see* pp. 14-29, 39-40, *supra*, they properly allege a UCL claim for fraudulent business practices.  *See Keegan*, 838 F. Supp. 2d at 944; *Tietsworth*, 720 F. Supp. 2d at 1137; *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).[78]

**Md.:**  Defendants, citing *Tait*, 2011 U.S. Dist. LEXIS 103584, at *9, argue that Maryland Plaintiffs failed to plead a claim under the Maryland Consumer Protection Act, Md. Commercial Law Code Ann. §§ 13-101 *et seq.*) because they do not allege that they "viewed a particular advertisement or marketing material prior to the

---

[77] Defendants' argument that California Plaintiffs could have avoided their injuries by purchasing service contracts, MTD, p. 35, is frivolous.  Not only do Defendants fail to cite case law supporting their argument, but it is apparent from those Plaintiffs that had service contracts (or who were still within their express warranty period) that purchasing service contracts would not have prevented California Plaintiffs' injuries.

[78] Defendants again allege that the UCL claim for fraudulent practices must fail because the TAC fails to allege sufficiently pre-sale knowledge.  MTD, p. 36.  While the TAC in fact does so, pre-sale knowledge need not be alleged here:  assuming *arguendo* that Defendants only acquired knowledge of the Defect after the sale, they nevertheless had a duty to disclose the Defect upon acquiring that knowledge post-sale.  *See, e.g.,* Restatement § 10.

purchase."  MTD at pp. 36.  However, there is no such requirement.[79]  *See* fn. 30, *supra*.
This claim should stand.

**Ga.:**  Defendants argue that O'Donnell fails to state a claim under the Georgia
Fair Business Practices Act, O.C.G.A. §§ 10-1-390 *et seq*., because he does not allege
damages.  MTD p. 37.  This argument fails.  *See* pp. 11-12, *supra*.

**N.J.:**  Defendants argue that Milicia fails to state a claim under the New Jersey
Consumer Fraud Act ("NJCFA"), N.J. Stat. §§ 56:8-1 *et seq*., because she did not suffer
an ascertainable loss, MTD p. 37; as to Cicchelli and Beal, the Defect did not surface
until after the warranty expired, *id.* at p. 38; and as to all New Jersey Plaintiffs, the
NJPLA abrogates their NJCFA claim, *id.*[80]

These arguments are baseless.  Milicia properly pleads that she suffered
ascertainable loss by alleging that Whirlpool made inadequate repairs to her DW and
that when she contacted Whirlpool after her DW continued to fail, Whirlpool did not
honor its warranty, offering only a prorated refund based on her DW's age or a new
machine at a discounted price.  TAC ¶¶ 42-46; fn. 7, *supra*.  Thus, Whirlpool did not
perform all repairs pursuant to the warranty, and Milicia "'receive[d] less than what was
promised.'"  *McCalley v. Samsung Elecs. Am., Inc.*, 2008 U.S. Dist. LEXIS 28076, *25
(D.N.J. Mar. 31, 2008) (citation omitted).[81]  Milicia also pleads ascertainable loss due to

---

[79] This is especially true here, where post-sale duty to warn is an issue.  *See United States Gypsum*,
647 A.2d at 413-14; *Zenobia*, 601 A.2d at 645-46.

[80] Defendants also argue that Beal fails to state a claim against Sears because he fails to allege that he
purchased his DW from, or had it serviced by, Sears.  MTD, p. 45.  Contrary to that assertion, Beal in
fact alleges that he purchased his second DW from Sears.  TAC ¶ 80.

[81] The cases on which Defendants rely, *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997 (N.J. Super.
Ct. App. Div. 2006), and *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005), are
inapposite.  In *Thiedemann*, the court found no ascertainable loss because the defendant adequately
replaced the defective component with plaintiffs suffering *no out-of-pocket loss*.  872 A.2d at 793.
Here, Milicia alleges inadequate repairs and also that her replacement DW was likewise defective and
so the defective component, in essence, was never adequately replaced.  TAC ¶¶ 42-46; fn. 7, *supra*.
Further, she had to pay $400 for her new DW.  *Id.* at ¶ 45.  Defendants cite language in *Perkins* that is
based on *Thiedemann*, which emphasizes that warranty repairs performed "*at no cost.. . .* militate
against an arguable claim of ascertainable loss."  MTD, at 37 (citing 890 A.2d at 1002) (emphasis
*Footnote Continued*

periods of loss of use of a functioning dishwasher and diminution in value as she alleges that both her original and replace DWs contain the Defect.  *See* TAC ¶¶ 42-46; *Romano v. Galaxy Toyota*, 945 A.2d 49, 55 (N.J. Super. Ct. App. Div. 2008).

Defendants' assertion of a post-warranty defense against Plaintiffs' NJCFA claims is likewise unavailing, as the defense is not available "where there are allegations of intentional concealment of a defect or where a defendant has an obligation to disclose the defect." *Doll*, 814 F. Supp. 2d at 546 (distinguishing *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997 (N.J. Super. Ct. App. Div. 2006)); *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 502 (D.N.J. 2009), *rev'd on other grounds*, 2010 U.S. Dist. LEXIS 20212 (D.N.J. 2010).  Finally, the NJPLA does not abrogate the NJCFA where the damage alleged is only to the product itself.  *See supra*, pp. 29-30.

**Mass.:**   Defendants argue that LeBlanc fails to state a claim under the Massachusetts Consumer Protection Act ("Ch. 93A"), ALM GL ch. 93A, §§ 1 *et seq.*, because "he does not allege conduct that is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness nor is it immoral, unethical, oppressive, or unscrupulous.'"   MTD, p. 38 (citation omitted).   To the contrary, the failure to disclose product defects is actionable under Ch. 93A.  *See Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 778 (Mass. 1975).  This is especially true where safety is a factor.  *See, e.g., Maillet v. ATF-Davidson Co.*, 552 N.E.2d  95, 99-100 (Mass. 1990).  Further, one violates Ch. 93A "by failing to disclose to a buyer a fact that might have influenced the buyer to refrain from the purchase."  *Greenery Rehab. Group, Inc. v. Antaramian*, 628 N.E.2d 1291, 1294 (Mass. App. Ct. 1994).  Finally, the failure to fulfill warranty obligations is actionable under Ch. 93A.  *Maillet*, 552 N.E.2d at 100; *Slaney*, 322 N.E.2d at 778.  LeBlanc adequately alleges a violation of Ch. 93A under each of these grounds.  TAC ¶¶ 48-53, 388-405; fns. 2, 3, 4, 5, 8,

---

added).  Again, this principle is inapplicable where *the plaintiff suffered out-of-pocket loss*.  In fact, the *Perkins* court recognized that diminution in value constitutes ascertainable loss.  890 A.2d at 1003-04.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

*supra*; pp. 22-23, *supra* (duty to disclose); *Cambridge Plating Co. v. NAPCO*, 876 F. Supp. 326, 337-38 (D. Mass. 1995), *aff'd*, 85 F.3d 752 (1st Cir. 1996).[82]

**Oh.:**    While recognizing that a plaintiff need only "show a material misrepresentation, deceptive act or omission that impacted his decision to purchase the item at issue" to assert a claim under the Ohio Consumer Sales Practices Act ("OCSPA"), ORC Ann. §§ 1345.01 *et seq.*, MTD, p. 39 (citations omitted), Defendants nonetheless argue that Bathon fails to "identify any offending conduct" by Defendants, *id.*  In fact, Bathon sufficiently alleges a material omission – *i.e.*, the Defect – that affected her decision to purchase the DW.  *See* fns. 2, 3, 4, 5, 8, *supra*; TAC ¶¶ 275-85, 287-88.  *See also* pp. 14-16, *supra* (sufficiency of pleadings under Rule 9(b)); pp. 24-26, *supra* (duty to disclose under Ohio law).

Defendants also aver that Bathon's claim fails due to lack of notice, limitations and abrogation.  MTD, pp. 39-40.  None of these arguments has merit.  Whirlpool was on notice based on reported decisions with substantially similar facts that sufficed to put Whirlpool on notice of its OCSPA violations pursuant to ORC § 1345.09.[83]  *Nessle v. Whirlpool Corp.*, 2008 U.S. Dist. LEXIS 56940, at *8-9 (N.D. Ohio July 25, 2008); *Sovel v. Richardson*, 1995 Ohio App. LEXIS 5076, at *7-9 (Ohio Ct. App. Nov. 15, 1999); *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 837-38 (S.D. Ohio 2003); *Amato v. Gen. Motors Corp.*, 463 N.E.2d 625, 632-33 (Ohio Ct. App. 1982).

The two year SOL does not bar Bathon's OCSPA claim; although she purchased

---

[82]  Contrary to Defendants' argument that LeBlanc must allege that Defendants' conduct was intentional, MTD pp. 38-39, "'it is not a defense to a c. 93A claim that the defendant's conduct was negligent rather than intentional' . . . 'Neither intent to engage in an unlawful act nor knowledge of its unlawfulness is required in order to establish liability.'"  *Maillet*, 522 N.E.2d at 100 (citations omitted).  In any event, LeBlanc alleges that Defendants conduct was intentional.  TAC ¶¶ 394, 398.

[83]  In order for a plaintiff to maintain a class action under the OSCPA, "there must be a substantial similarity between a defendant's alleged violation of the [OCSPA] and an act or practice previously declared deceptive by . . . a court decision that was publicly available when the alleged violation occurred."  *Hoffer v. Cooper Wiring Devices, Inc.*, 2007 U.S. Dist. LEXIS 42871, at *8 (citation omitted).  The notice requirement under Ohio Rev. Code § 1345.09 is not a pleading requirement.  *See Lilly v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 22114, at *17-18 (S.D. Ohio Apr. 21, 2006).

her DW in December 2008, she alleges that it stopped working in 2012 due to the Defect.  TAC ¶ 72.  *See, e.g., Varavvas v. Mullet Cabinets, Inc.*, 923 N.E.2d 1221, 1225 (Ohio Ct. App. 2009) (SOL begins to run on the date of the violation, which may or may not coincide with the date of the underlying transaction).  The TAC also alleges that Bathon complained about the problem to Whirlpool in 2012, and subsequently incurred out-of-pocket expenses when Whirlpool failed to perform as required under her warranty.  TAC ¶ 73.  *See Paikai v. GMC*, 2009 U.S. Dist. LEXIS 8538, at *26-29 (E.D. Cal. Feb. 4, 2009).  And, regardless of when the OCSPA claim accrued, the TAC alleges that due to Whirlpool's wrongful conduct, fraudulent concealment tolling and estoppel apply.  TAC ¶¶ 176-77.  *See Cerney v. Norfolk & W. Railway Co.*, 662 N.E. 2d 827, 830 (Ohio Ct. App. 1995).[84]

**Ill.:**  Defendants assert that Meneghetti's Illinois Consumer Fraud Act claim should be dismissed because it is insufficient under the pleading requirements of Rule 9(b).  MTD, pp. 40-41.  This argument is unfounded.  *See* pp. 14-16, *supra* (discussing sufficiency of pleadings under Rule 9(b)); *Saltzman v. Pella Corp*, 2007 U.S. Dist. LEXIS 19650, at *2, 7-8 (N.D. Ill. Mar. 20, 2007).[85]  Plaintiff Meneghetti adequately pleads that she was deceived by Defendants' fraudulent omissions, by asserting that she would not have purchased or would have paid less for her DW if Defendants had disclosed the Defect.  *See* fns. 6, 8, *supra*.  And, because she avers that Defendants knew of the Defect and concealed it from her in order to defraud her, fns. 3, 4, 5, 37, *supra*, TAC ¶¶ 353-63, 366, she states a claim.  *See Doll*, 814 F. Supp. 2d at 536-39; *Connick v. Suzuki Motor Co. Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996).

---

[84] Bathon's OCSPA claim does not fall within OPLA because she only seeks damages for economic loss.  *See* pp. 12-13, *supra*.  Defendants also raise an argument based on the territorial limitation under ORC § 1345.04.  MTD, p. 40 n.38.  However, that limitation is inapplicable here where an Ohio plaintiff purchased a defective DW in Ohio and suffered injuries from it in Ohio.  TAC ¶¶ 70-73.

[85] Defendants' reliance on *MacNeil Auto Prods., Ltd. V. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 793 (N.D. Ill. 2010), is misplaced – that case concerned fraudulent misrepresentations, not omissions.  "The who, what, when, where, and how of the fraud" do not apply.  *See* pp. 14-15, *supra*.

**N.Y.:** Defendants allege that New York Plaintiffs fail to state claims under the New York Deceptive Practices Act ("NYDPA"), N.Y. Gen. Bus. §§ 349, *et seq.*, because they do not allege pre-sale knowledge of the Defect; they fail to identify a specific advertisement or representation on which caused their injuries; and they have no damages. MTD, pp. 41-42. Each of these arguments is unavailing.[86]

As the NYDPA claims are based on misrepresentation *by omission*, there is no requirement to identify any specific sign, advertisement or other representation on which New York Plaintiffs' relied and that resulted in their injuries.[87] *See supra* n.30; *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 100180, at *155 (S.D. Ohio July 19, 2012) ("although plaintiffs must allege that the deceptive conduct 'caused' their injury, they need not demonstrate that they justifiably relied on the alleged omission [to state a claim under the NYDPA]" (citation omitted)). Plaintiffs adequately identify the material omission (the hazardous Defect that threatened their health and home) that caused their injuries. *See* fns. 2, 3, 4, 5, 6, 7, 8, *supra*; TAC ¶¶ 446-456, 458-59; *Tait*, 2011 U.S. Dist. LEXIS 103584, at *17 (plaintiffs adequately pled a NYDPA claim where they alleged the concealed information about washing machine defect was material to their purchasing decisions); *In re Porsche*, 2012 U.S. Dist. LEXIS 100180, at *161 (NYDPA claim adequately pled where "New York Plaintiffs allege that the coolant tube defect was material and that

---

[86] *See* pp. 9-11, *supra* (sufficiency of pre-sale knowledge pleadings). Although, pre-sale knowledge is not required to state a NYGBL claim because (1) there is a post-sale duty to warn of the Defect under New York law; and (2) Sears had a duty to disclose the Defect when Koswener had her DW repaired pursuant to her service contract with Sears and she was under the mistaken belief that the repairs would cure the underlying problem. *See supra* pp. 27-28 (duty to disclose under New York law).

*See also* pp. 13-14, *supra* (damages adequately alleged by New York Plaintiffs). However, a plaintiff is not required to prove actual damages to support a NYGBL claim. *Davis v. Gap, Inc.*, 1999 U.S. Dist. LEXIS 5689, at *25 (S.D.N.Y. Apr. 9, 1999), *reconsideration den.*, 186 F.R.D. 322 (S.D.N.Y. 1999), *aff'd in part, vacated in part, remanded (on other grounds)*, 246 F.3d 152 (2d Cir. N.Y. 2001).

[87] In any event, the TAC avers that Plaintiffs saw no information about the Defect in any advertising, marketing or other representation or communication made by Defendants prior to or after the purchase or servicing of their DWs. *See* fns. 4, 5, *supra*.

1  knowledge of the defect would have altered their individual buying decisions").

2  **Utah:**  Defendants misconstrue the allegations in the Complaint and Utah law in

3  arguing that Steffes fails to state a claim under the Utah Consumer Sales Practices Act

4  ("UCSPA").   MTD, pp. 42-43.   Defendants argue that Steffes fails to allege any

5  affirmative misrepresentation.  *Id.* at 43.   But the UCSPA does not require an

6  affirmative misrepresentation; the statute broadly prohibits any "deceptive act or

7  practice."  Utah Code Ann. § 13-11-4.  And the UCSPA is to "be construed liberally" in

8  accordance with the Federal Trade Commission Act ("FTCA").  *Wade v. Jobe*, 818

9  P.2d 1006, 1014 (Utah 1991) (citing Utah Code Ann. § 13-11-2).  The FTCA defines

10  deceptive acts to include material omissions that are likely to deceive reasonable

11  consumers. *Southwest Sunsites v. FTC*, 785 F.2d 1431, 1435 (9th Cir. 1986).  It follows

12  that UCSPA liability may be premised on a "material omission," which the Utah

13  Supreme Court has defined in fraudulent nondisclosure cases as "important"

14  information that "could be expected to influence the judgment of a person buying

15  property or assenting to a particular purchase price."  *Yazd*, 143 P.3d at 289.  Plaintiff

16  Steffes more than adequately alleges that the hazardous defect—which threatened her

17  health and home—was important to her, and that she would not have purchased or

18  would have paid less for her DW had the defect been disclosed.  TAC ¶ 474.[88]

19  Defendants also argue that Steffes fails to allege any "knowing or intentional[]"

20  deceptive act in 2005 when she purchased her DW.  MTD, p. 43.  The UCSPA,

21  however, prohibits a deceptive act "whether it occurs before, during, or after the

22  transaction."  Utah Code Ann. § 13-11-4.  Steffes clearly alleges that Defendants knew

23  of the defect both before and after she purchased her DW, and knowingly and

24  intentionally declined to disclose the defect.  TAC ¶¶ 464-466, 471-473, fns. 3, 4, 5,

[88] *Toone v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 109455 (D. Utah Sept. 27, 2011), is
inapposite; the plaintiffs there did not allege any facts showing deceptive conduct, but instead
premised liability on various non-misrepresentation theories as to why their mortgage note was invalid
for not being properly endorsed - and therefore never properly transferred ownership - such that
Defendants could not initiate foreclosure proceedings against them, *id.* at *9, 12.

*supra.*  Accordingly, Steffes states a UCSPA claim.

## XI.   PLAINTIFFS STATE CLAIMS
FOR UNJUST ENRICHMENT/RESTITUTION

### A.   The Cal. And Ga. Plaintiffs State
Claims For Unjust Enrichment/Restitution

Defendants argue that the California and Georgia Plaintiffs' alternative unjust enrichment/restitution claims should be dismissed because unjust enrichment is not a cause of action in their respective states.  MTD, pp. 43-44.  This argument fails.

**California:**   Unjust enrichment has been recognized as a cause of action in California.  *See, e.g., Cal. Fed. Bank v. Matreyek*, 10 Cal. Rptr. 2d 58, 61-64 (Cal. Ct. App. 1992); *Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 253 Cal. Rptr. 289, 293-94 (Cal. Ct. App. 1988*); Hernandez v. Lopez*, 103 Cal. Rptr. 3d 376, 380-81 (Cal. Ct. App. 2009); *Lectrodryer v. Seoul Bank*, 91 Cal. Rptr. 2d 881, 883 (Cal. Ct. App. 2000).  In *Wilder v. JPMorgan Chase Bank, N.A.*, 2009 U.S. Dist. LEXIS 124242, at *13-14 (C.D. Cal. Nov. 25, 2009), this Court observed that while "[s]ome courts have held as an absolute that no such cause of action [of unjust enrichment] exists in California . . . other various courts, including the Ninth Circuit, have held just the opposite."  (Citing cases).  The Court concluded "that the weight of authority indicates that California law recognizes a cause of action for unjust enrichment/restitution."  *Id.* at *14.

However, whether California recognizes a claim for unjust enrichment is immaterial because the count is for unjust enrichment/*restitution*.  TAC, pp. 2, 74.  California law recognizes a cause of action for restitution.  *Thongnoppakun v. Am. Express Bank*, 2012 U.S. Dist. LEXIS 25581, at *5 (C.D. Cal. Feb. 27, 2012) (plaintiff may pursue claim for restitution); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 964 (N.D. Cal. 2012) ("even though California law may not recognize unjust enrichment as an independent claim, such a claim may be understood as one for restitution, which is recognized under California law"); *Minn. Life Ins. Co. v. Philpot*, 2013 U.S. Dist. LEXIS 2931, at *13 (S.D. Cal. Jan. 7, 2013) (same); *In re*

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010) (plaintiffs alleged a claim for restitution); *Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990, 1001 (N.D. Cal. 2010) (refusing to dismiss the quasi-contract claim where the plaintiff was "entitled to seek restitution of its money").[89]

**Georgia:**   Contrary to Defendants' argument, Plaintiffs state a claim for unjust enrichment under Georgia law – and the case Defendants cite in their MTD acknowledges as much.   MTD, p. 43 (quoting *Tidikis v. Network for Med. Commc'n & Research LLC*, 131 Cal Rptr. 2d 347, 357 (Cal. Ct. App. 2003), for the proposition that "*a claim for unjust enrichment* is . . . an alternative theory of recovery if a contract claim fails" (emphasis added)).   *See also Szymczak v. Nissan N. Am., Inc.*, 2011 U.S. Dist. LEXIS 153011, at *57-58 (S.D.N.Y. Dec. 16, 2011).   As O'Donnell disputes the validity of any governing contracts, TAC ¶ 500, and alleges that Defendants' violations arose outside of the duties of the parties under any contract, *see supra* pp. 20-21 (duty to disclose), he may properly plead the recognized, alternative theory of unjust enrichment/restitution at this time.   *See Bank of the Ozarks v. Arco Cmty. Outreach Coalition, Inc.*, 2013 U.S. Dist. LEXIS 5740, at *15-17 (S.D. Ga. Jan. 15, 2013); *Clark v. Aaron's, Inc.*, 2012 U.S. Dist. LEXIS 139172, at *16-19 (N.D. Ga. Sept. 26, 2012).

**B.     The Md., N.J., Mass., Va., Mo., Ill., N.Y. And Utah
          Plaintiffs State Claims For Unjust Enrichment/Restitution**

Defendants concede that Maryland, New Jersey, Massachusetts, Virginia, Missouri, Illinois, New York, and Utah recognize unjust enrichment, but argue that the claims should be dismissed because each of these Plaintiffs had a warranty, which precludes any equitable claim.  MTD, p. 44.  Plaintiffs, however, dispute the validity of the warranties, TAC ¶ 500, and thus may plead equitable claims in the alternative.  *See,*

---

[89] California Plaintiffs plead unjust enrichment in the alternative to their contract claims.  TAC ¶ 241. This is permissible.  *See Philpot*, 2013 U.S. Dist. LEXIS 2931, at *14; *Wilder*, 2009 U.S. Dist. LEXIS 124242, at *15; *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, 2011 U.S. Dist. LEXIS 140764, at *27 (N.D. Cal. Dec. 7, 2011); *McNeary-Calloway*, 863 F. Supp. 2d at 964; *Gustafson v. BAC Home Loans Servicing, LP*, 2012 U.S. Dist. LEXIS 117493, at *18 (C.D. Cal. Apr. 12, 2012).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**
CASE NO. 8:11-cv-01733-FMO-MLG

*e.g., Swedish Civil Aviation Admin. v. Project Mgmt. Enters. Inc.*, 190 F. Supp. 785, 792 (D. Md. 2002) ("although [plaintiff] may not recover under both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative"). *See also Maniscalo*, 627 F. Supp. 2d at 505; *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005); *In Re Bay Vista of Virginia, Inc.*, 2009 U.S. Dist. LEXIS 87154, at *20-22 (Bankr. E.D. Va. June 2, 2009); *United Roasters, Inc. v. Colgate-Palmolive Co.*, 649.F.2d 985, 990 (4th Cir. 1981); *Chem Gro of Houghton, Inc. v. Lewis County Rural Elec. Co-op. Ass'n*, 2012 U.S. Dist. LEXIS 40697, at *7-10 (E.D. Mo. Mar. 26, 2012); *Prudential Ins. Co. of America v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623-624 (N.D. Ill 2008); *Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 560 (S.D.N.Y. 2007); *Wing v. Wharton*, 2009 U.S. Dist. LEXIS 41795, at *10-11 (D. Utah May 15, 2009).

## XII.   CONCLUSION[90]

For the reasons discussed hereinabove, Defendants' MTD should be denied.[91]

Respectfully submitted,

COHON & POLLAK, LLP

RIFKIN, LIVINGSTON, LEVITAN & SILVER, LLC

WEINSTEIN KITCHENOFF & ASHER LLC

CHIMICLES & TIKELLIS LLP

LEIFF CABRASER HEIMANN & BERNSTEIN, LLP

By:   _____/s/ Jeffrey M. Cohon_____

Jeffrey M. Cohon of Cohon & Pollak, LLP

January 31, 2013   Attorneys for Plaintiffs

---

[90] As Plaintiffs' claims are viable, the declaratory judgment count should stand. *Shaterian v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 128549, at *34-35 (N.D. Cal. Nov. 7, 2011).

[91] Defendants erroneously argue that O'Donnell, Beal, Milicia and Meneghetti fail to state claims against Sears because none of them bought their DWs from Sears or had their DWs serviced by Sears. *See supra* p. 21 (A&E inadequately serviced O'Donnell's DW); fn. 46, *supra* (A&E inadequately serviced Meneghetti's DW); fn. 77, *supra* (Beal purchased second DW from Sears); TAC ¶¶ 42-44 (A&E serviced Milicia's DW).

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on January 31, 2013, I electronically filed the foregoing Opposition of Plaintiffs to the Partial Motion to Dismiss Plaintiffs' Third Amended Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> E. Wheeler (SBN 47248)
> Email: wheeler@wtotrial.com
> Michael T. Williams *(pro hac vice)*
> williams@wtotrial.com
> Catherine R. Ruhland *(pro hac vice)*
> ruhland@wtotrial.com
> Wheeler Trigg O'Donnell LLP
> 370 17th Street, Suite 4500
> Denver, CO 80202
> Telephone: (303) 244-l 800
> Facsimile: (303) 244-1879
>
> Dean J. Zipser (SBN 094680)
> E-mail: dzipser@manatt.com
> Adina L. Witzling (SBN 211719)
> E-mail: awitzling@manatt.com
> Adrianne E. Marshack (SBN 253682)
> E-mail: amarshack@man.att.com
> Manatt, Phelps & Phillips; LLP
> 695 Town Center Drive, 14th floor
> Costa Mesa, California 92626-7223
> Telephone: (714) 371-2500
> Facsimile: (714) 371-2550
>
> Attorneys for Defendants
>
>   /s/*Charles S. Fax*
>   Charles S. Fax