**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Telecopier: (415) 956-1008
klaw@lchb.com; nreynolds@lchb.com




Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| STEVE CHAMBERS, an individual; LYNN VAN DER VEER, an individual; KEVIN O'DONNELL, an individual; JOSEPH CICCHELLI, an individual; KURT HIMLER; an individual; SUSAN MILICIA, an individual; GARY LeBLANC, an individual; GEORGE BLISS, an individual; SHIRL MEDERLET, an individual; LYNDEE WALKER, an individual; LINDA SAMPLE, an individual; SUSAN BATHON, an individual; MAUREEN MENEGHETTI, an individual; W. DAVID BEAL, an individual; ZILA KOSWENER, an individual; PAMELA WALCHLI, an individual, RAYMOND PAOLINI, JR., an individual; and JACKIE STEFFES, an individual, all of whom sue in their individual capacities and for all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WHIRLPOOL CORPORATION, a Delaware Corporation; SEARS HOLDINGS CORP., a Delaware Corporation; SEARS, ROEBUCK & | Case No.  8:11-cv-01733-FMO-MLG <br><br> **FOURTH AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> 1. **VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT (BREACH OF EXPRESS WARRANTY) [15 U.S.C. §§ 2301, *et seq.*]** <br> 2. **VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT (BREACH OF IMPLIED WARRANTIES) [15 U.S.C. §§ 2301, *et seq.*]** <br> 3. **BREACH OF IMPLIED WARRANTY** <br> 4. **TORTIOUS BREACH OF IMPLIED WARRANTY** <br> 5. **BREACH OF EXPRESS WARRANTY** <br> 6. **VIOLATIONS OF THE SONG – BEVERLY ACT [Cal. Civ. Code §§ 1792 *et seq.*]** <br> 7. **STRICT PRODUCTS LIABILITY** <br> 8. **STRICT PRODUCTS LIABILITY – FAILURE TO WARN** <br> 9. **NEGLIGENT FAILURE TO** |

CO., INC., a New York Corporation.

Defendants.

**WARN**
10. **UNJUST ENRICHMENT/ RESTITUTION**
11. **FRAUDULENT CONCEALMENT/ NONDISCLOSURE**
12. **NEGLIGENCE**
13. **VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT [Ohio Rev. Code Ann. §§ 1345.01,** *et seq.***]**
14. **VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT [Cal. Civ. Code §§ 1750,** *et seq.***]**
15. **VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW [Cal. Bus. & Prof. Code §§ 17200,** *et seq.***]**
16. **VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT [OCGA §§ 10-1-309,** *et seq.***]**
17. **VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT [815 ILCS §§ 501/1,** *et seq.***]**
18. **VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT [Md. Code Ann., Com. Law §§ 13-301,** *et seq.***]**
19. **VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT [Mass. Gen. Laws Ch. 93A]**
20. **VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT [Mo. Rev. Stat. §§ 407.010,** *et seq.***]**
21. **VIOLATIONS OF THE NEW**

3

Jeffrey M. Cohon, Esq. (CSBN 131431)
Kristina S. Keller, Esq. (CSBN 161946)
**COHON & POLLAK, LLP**
1999 Avenue of the Stars, 11th Floor
Los Angeles, California  90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610
jcohon@cohonpollak.com

Charles S. Fax, Esq. (*pro hac vice*)
Liesel Schopler, Esq. (*pro hac vice*)
**RIFKIN, LIVINGSTON, LEVITAN &
SILVER LLC**
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-6535
cfax@rlls.com; lschopler@rlls.com

David H. Weinstein, Esq. (CSBN 43167)
Robert Kitchenoff, Esq., (admitted *pro hac vice*)
**WEINSTEIN KITCHENOFF & ASHER LLC**
1845 Walnut Street, Suite 1100
Philadelphia, Pennsylvania  19103
Telephone: (215) 545-7200
Telecopier: (215) 545-6535
weinstein@wka-law.com; kitchenoff@wka-law.com

Steven A. Schwartz, Esq. (*pro hac vice*)
Timothy N. Mathews, Esq. (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com; tnm@chimicles.com

Kristen Law Sagafi, Esq. (CSBN 222249)
Nicole Reynolds, Esq. (CSBN 246255)
**LEIFF CABRASER HEIMANN &**

1



JERSEY CONSUMER FRAUD ACT
[N.J. Stat. Ann. §§ 56:8-1, *et seq.*]
22. VIOLATIONS OF THE NEW
    YORK DECEPTIVE
    PRACTICES ACT [N.Y. Gen. Bus.
    Law §§ 349, *et seq.*]
23. VIOLATIONS OF THE UTAH
    CONSUMER SALES
    PRACTICES ACT [Utah Code
    Ann. §§ 13-11-1, *et. seq.*]
24. VIOLATIONS OF THE
    VIRGINIA CONSUMER
    PROTECTION ACT [Va. Code
    Ann. §§ 59.1-196, *et seq.*]
25. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

## FOURTH AMENDED CLASS ACTION COMPLAINT

## INTRODUCTION AND SUMMARY

1.     This class action is brought by aggrieved purchasers of brand-name household dishwashers - designed, manufactured, marketed, advertised, warranted and/or sold by Defendant Whirlpool Corporation, and marketed, advertised, warranted and/or sold by Defendants Sears Holding Corporation and Sears, Roebuck & Company, Inc. (hereinafter, collectively, "Defendants") under the brand names "Whirlpool," "KitchenAid" and "Kenmore" – that contain a dangerous defect ("Defect") that Defendants knowingly and actively concealed from Plaintiffs, the putative class and the public.  The Defect causes the dishwashers' electronic control boards to spontaneously overheat, emit smoke, fumes and sparks and erupt in flames.

2.     External flames caused by the Defect erupted from the Whirlpool-manufactured dishwashers owned by Plaintiffs Chambers, Himler, Koswener (whose dishwasher erupted in flames four inches high) and Walchli (whose dishwasher shot out flames six inches high).  Plaintiff Cicchelli's dishwasher emitted sparks and

smoke, as did Plaintiff Mederlet's dishwasher.   Plaintiff Paolini's dishwasher experienced visible electrical arcing.  The other Plaintiffs saw smoke pouring out of their dishwashers and/or smelled noxious fumes emanating from their dishwashers. All of the Plaintiffs' dishwashers were disabled by the combustion caused by the Defect.

3.   Putative class members reporting Whirlpool-manufactured dishwashers that erupted in external flames caused by the Defect, and that were disabled, include Nicole Anderson (flames 4 inches high); Christina Galeucia (flames 3 inches high); Ashley Ogi (flames 3-4 inches high) and Wayne Becker.  A flaming Whirlpool-manufactured dishwasher caused Anthony Wilms' house to burn down, and destroyed the inside of Carly Franz's house.

4.   **REDACTED.**[1]

5.   **REDACTED**

6.   The electronic control board, also called the circuit board, performs all of the major control functions of the dishwasher.  It enables the consumer to operate the dishwasher, select pre-set cycles and select cycle preferences.  The electronic control board also monitors basic functions of the dishwasher including cycle selection and cycle completion.

7.   The electrical circuit that controls the dishwasher heating element is by far the highest current electrical circuit in the dishwashers (aside from the door switch which carries the full amount of current for all circuits in the machine and is intended to shut off power when the door is opened).   The Defect occurs at or around the

---

[1]  Bold-faced paragraphs denote information discovered from Whirlpool confidential documents produced in discovery.  A redacted copy of this pleading has been filed in the public docket.

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

connection point where the heating element circuit meets the electronic control board, sometimes referred to as a "spade," "blade" or "flag" terminal.[2]

8.    Due to a defective design or manufacturing process or both, the connection point can heat to over 1000 degrees Fahrenheit, hot enough to set fire to surrounding plastics and/or wire insulation.  Thus, at the time of their sale, the dishwashers contained the devastating Defect that causes the electronic control board to overheat, smoke, ignite and combust.  The Defect prevents the dishwashers from being used as intended during their useful lives and creates a substantial and unreasonable risk of property damage, personal injury and death.  In addition to the unreasonable risk of fire posed by these defective dishwashers, smoke and fumes, containing harmful gases, vapors and particulate matter, can quickly permeate an entire house.

9.    Whirlpool has been aware of Defects with high current terminal connections in its dishwashers since at least 1996, when it voluntarily recalled around 500,000 dishwashers because the door switch wiring could overheat and set fire to nearby plastic and/or other components.  In a 1997 deposition of the Manager of Whirlpool Dishwasher Laboratory, in a case involving the death of a father and son killed in a fire caused by their Whirlpool dishwasher, he acknowledged that Whirlpool discovered in 1993 that overheating occurred in the area of the flag terminal and door switch and that the root cause of the wiring melting in the area of the door switches was the crimping connection of the spade terminal.  A poor electrical connection, whether caused by a loose crimp, corrosion or other causes, creates electrical resistance (the same principal on which a toaster heating element works), which in turn can generate an immense amount of heat.

10.  **REDACTED**

---

[2] These terminals are essentially small metal tabs connected to the wiring inside the control panel.  A female crimp connector on the wire coming from the wiring harness slides over the tab, connecting the heating element circuit to the board.

11.  **REDACTED**

12.  According to a December 11, 2000 Forbes article, "Where There's Smoke," in 1996 Sears technician Wayne Brown called the Consumer Product Safety Commission ("CPSC") saying he had discovered additional fires in dishwashers not covered by the recall.  According to the article, Brown told the CPSC that "the switch in these dishwashers cannot handle the amperage because the switch overheats and the terminals melt," and recommended that additional models should be recalled. Nothing was done, and Brown was taken off dishwasher repair.

13.  The same magazine article reported that in 1997, four years after Whirlpool said it redesigned its units to prevent overheating, flames destroyed the South Euclid, Ohio home of Mark and Deborah Mucci, causing $375,000 damages. The Muccis' lawsuit was settled before it reached trial, and a confidentiality agreement prevented the Muccis from discussing the case, but an investigator hired by St. Paul Guardian Insurance Co., the Muccis' insurer, concluded that the "fire was caused by an electrical malfunction of the wiring within the dishwasher panel" that occurred "as a result of a defect in manufacture and/or assembly of the wiring" in that panel.

14.  Thus, Whirlpool knew full-well that high amperage terminal connections in its dishwashers could cause fires if not designed and/or manufactured properly and it knew or should have known to pay the utmost attention to these connections.  All of the fires in Plaintiffs' dishwashers started at the exact same connection in the dishwasher – *i.e.*, the junction of the terminal on the circuit board and the female crimp connection.  Nevertheless, Whirlpool continued to use the same or a similar type of crimp connection in high amperage circuits, like the heating element circuit, and to this day fires continue to occur.

15.  In point of fact, Defendants have repeatedly denied to the public their knowledge of this dangerous Defect, or indeed, any awareness of the fires themselves.

7

A Whirlpool representative, in response to Plaintiff Milicia's complaint in 2010 about her combusting dishwasher, denied knowledge of any prior complaints. After his combusting dishwasher incident in 2010, Plaintiff LeBlanc contacted Sears and Whirlpool, only to be told by both companies that there was no problem with his dishwasher. In 2011, an authorized Whirlpool dealer advised Plaintiff Sample, in response to her complaint, that the dealer had no knowledge of any fire issues with Whirlpool dishwashers. A KitchenAid customer service representative told Plaintiff Steffes in March 2012 that they had received no complaints regarding her dishwasher model. And as recently as the late summer, early autumn of 2012, well after the filing of this lawsuit, when putative class member David Vale left a voice-mail message for a vice president of Sears complaining about his combusting dishwasher, he received a return phone call from an executive secretary at Sears Corporate denying any knowledge of dishwasher fires.

16.    Defendants designed, manufactured, marketed, advertised, distributed, warranted, sold and/or offered repair services for the Whirlpool-, KitchenAid- and Kenmore-branded dishwashers at issue herein ("Dishwashers") to Plaintiffs and the class. In conjunction with each sale, Defendants marketed, advertised and warranted that each Dishwasher was of merchantable quality, fit for the ordinary purpose for which dishwashers are used, free from defects in materials and workmanship and would not pose a fire hazard. Nothing in the user manuals, warranties, or on the Dishwashers themselves disclosed the Defect. All of the Dishwashers at issue in this lawsuit, upon information and belief, were manufactured at Whirlpool's Findlay, Ohio, plant which, upon further information and belief, is the sole plant in North America at which Whirlpool manufactures the Dishwashers, and from which facility they entered the stream of commerce throughout the United States. Absent further discovery, Plaintiffs cannot state with specificity the years during which the defective Dishwashers were designed and manufactured.

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

17.   Plaintiffs' and class members' Dishwashers are in jeopardy of combustion so long as they remain in use. Consumers from around the country have submitted approximately one thousand or more complaints concerning the defective Dishwashers to the website www.KitchenAidFire.com, maintained by Plaintiff Steve Chambers. In addition, Defendants have received numerous complaints regarding the defective Dishwashers by telephone and electronic mail, as detailed throughout this Complaint.

18.   Defendants knew, or should have known and were reckless or negligent in not knowing, at or before the time that they sold the first Dishwasher, that they were defective in design; not fit for their ordinary and intended use; would become useless or further diminished in value before the end of their reasonably expected useful lives; did not perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants nor in accordance with the reasonable expectations of ordinary customers; that the advertisements and marketing materials for the Dishwashers were likely to deceive a reasonable consumer; and that Defendants were placing a hazardous product into the stream of commerce without notice to the public of the hazard, thereby causing an unreasonable danger and creating an unreasonable threat to the lives and property of consumers. Defendants had exclusive possession of this knowledge. Further, Plaintiffs could not reasonably detect this latent, dangerous Defect.

19.   Despite their knowledge, Defendants at all times actively concealed material information from Plaintiffs and the class in Defendants' marketing, advertising and sale of the Dishwashers, which Defendants knew to be defective at the time of their sale and thereafter on an ongoing basis. Such concealment included, but was not limited to, Defendants' denials to Plaintiffs and other consumers, when they contacted Defendants to complain about their combusting Dishwashers, that there was any problem. Such concealment was furthered when Defendants failed to disclose

1    that recommended "repairs" or replacement Dishwashers would not solve the
2    problem.

3       20.     Defendants also failed to remove the Dishwashers from the marketplace
4    or take adequate remedial action. To the contrary, Defendants sold and serviced the
5    Dishwashers even though Defendants knew, or should have known and were reckless
6    or negligent in not knowing, that the Dishwashers were defectively designed and at
7    risk of failing prematurely in a catastrophic and dangerous manner, depriving
8    Plaintiffs of the ability to use the Dishwashers for their intended purpose during their
9    useful lives, and potentially causing property damage and personal injury.

10      21.     Upon information and belief, thousands of the Dishwashers in fact have
11    overheated and combusted, and those still in service are likely to do so as well (both
12    within and without the applicable warranty period) due to their dangerous defective
13    design as complained of herein.

14      22.     As a consequence of Defendants' active and ongoing concealment of
15    material facts, Plaintiffs and the class bought the Dishwashers and have incurred
16    damages.

17      23.     Plaintiffs and reasonable consumers would not have purchased these
18    Dishwashers, or paid for service calls, repairs or replacement Dishwashers, and would
19    have demanded that Defendants perform their contractual duties under the warranties
20    had they known of the Defect.

21      24.     Plaintiffs assert claims for violations of the Magnuson-Moss Warranty
22    Act, 15 U.S.C. §§ 2301, *et seq.*; breach of express and implied warranties; tortious
23    breach of implied warranty; violations of the Song-Beverly Act, Cal. Civ. Code §§
24    1792 *et seq.*; strict product liability; strict product liability for failure to warn;
25    negligent failure to warn; unjust enrichment/restitution; fraudulent
26    concealment/nondisclosure; negligence; violations of state consumer protection
27    statutes; and declaratory relief pursuant to 28 U.S.C. § 2201.

28

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PARTIES

## PLAINTIFFS

### A.   Plaintiffs Steve Chambers and Lynn Van der Veer

25.   Plaintiffs Steve Chambers ("Chambers") and his wife Lynn Van der Veer ("Van Der Veer") are citizens of Maryland, domiciled at 11121 Gambrill Park Road, Frederick, Maryland 21702.

26.   Chambers and Van Der Veer purchased an existing home in 2002 in Frederick, Maryland that came with a new KitchenAid Superba Dishwasher, model number KUDS01DJSS0, serial number FL0618828, then valued at approximately $1,000.  Nothing on their Dishwasher, or in the user manual or warranty, disclosed the Defect.  Had they been so informed, Chambers and Van der Veer would not have purchased the house with the Dishwasher or retained the Dishwasher.

27.   On March 22, 2009, they set their Dishwasher to the normal wash cycle. Within minutes, flames erupted from the top of the Dishwasher, rendering it unusable. The flames were an estimated 1100 degrees Fahrenheit, hot enough to cause a product label inside the machine to combust, and might have set fire to material outside the Dishwasher had Van der Veer not been nearby.  Thereafter, the Dishwasher was examined at a laboratory which determined that the circuit board was the source of the combustion.

28.   Chambers telephoned Whirlpool to alert the company to the problem. Whirlpool expressed no concern that its product was a fire hazard; refused to send a representative to investigate the fire; and refused to replace the ruined Dishwasher at its own expense.  Chambers and Van der Veer purchased a replacement dishwasher for $1,072.43 and a warranty therefor for $99.97.  They have suffered financial damages caused by their Dishwasher's failure, including, but not necessarily limited to, the costs above, the diminished value of the Dishwasher at the time they purchased their house, and the temporary loss of use of their Dishwasher after it combusted.

29.    Concerned by Whirlpool's nonresponsiveness to his alert, Chambers created a website, www.KitchenAidFire.com ("website"), to see if other consumers had experienced similar problems with their Whirlpool-manufactured Dishwashers. Chambers heard from numerous individuals who also had Dishwashers that were manufactured by Whirlpool and sold under the Whirlpool-, KitchenAid- and Kenmore-brand names, that had spontaneously started to smoke or erupt into flames due to combusting circuit boards. On the strength of that information, in or about the summer of 2009 Chambers sent a facsimile message to the president of Whirlpool providing the data that he had collected on the website. Chambers never received a response from Whirlpool.

30.    Chambers also called Sears and informed a representative in the company's safety department about the defective Whirlpool-manufactured Dishwashers. Chambers requested that Sears stop purchasing Whirlpool-manufactured Dishwashers until the fire hazard control board problems were resolved. The Sears representative told Chambers that he would look into the issue. However, Chambers received no further communications from Sears.

31.    Despite Chambers' phone call and fax to Whirlpool and phone call to Sears, upon information and belief Whirlpool and Sears thereafter continued to deny – and have not acknowledged to this day – that they are aware that the Dishwashers are defectively designed, causing the control boards to combust and creating a serious safety hazard.

## B.    Plaintiff Kevin O'Donnell

32.    Plaintiff Kevin O'Donnell ("O'Donnell") is a citizen of Georgia, domiciled at 443 Summit Avenue, Marietta, Georgia 30068.

33.    On September 25, 2004, O'Donnell bought a KitchenAid Dishwasher, model number KUDSO1FLSS, serial number FR3312380, from H.H. Gregg in Kennesaw, Georgia for $1,136.14, inclusive of installation, warranty and tax. Nothing

1   on his Dishwasher or, upon information and belief, in his user manual or warranty,

2   disclosed the Defect. Had he been so informed, O'Donnell would not have purchased

3   the Dishwasher.

4       34.   The electronic control board in the Dishwasher caught fire on May 23,

5   2008. As the control board melted, dense smoke and the distinctive odor of burning

6   plastic billowed from the top left corner of the Dishwasher.  O'Donnell opened the

7   Dishwasher door to see what was wrong and got hit with scalding hot water.

8   O'Donnell could not turn the machine off at the electronic control board, so he ran to

9   the circuit breaker box and switched that circuit off manually. He then called the fire

10  department.

11      35.   Subsequently, a technician replaced the electronic control board. It took

12  approximately five weeks and five technician trips for the Dishwasher to be repaired,

13  during which period O'Donnell had to take off of work five days while waiting on a

14  technician each time.  The Dishwasher was repaired at no cost to O'Donnell under

15  warranty.

16      36.   Then, the new electronic control board caught fire in July 2010. Plaintiff

17  and his family were leaving the house for the evening when they smelled smoke and

18  burnt plastic coming from the Dishwasher.  Having gone through this before, he

19  immediately went to his garage and turned off the circuit breaker.  Returning to the

20  kitchen, O'Donnell saw that smoke was again coming from the top left corner of his

21  Dishwasher.

22      37.   Following the second Dishwasher incident, O'Donnell called the

23  KitchenAid division of Whirlpool but it was a Saturday evening and the recording

24  stated that the business was closed under regular business hours.  On Monday,

25  O'Donnell first called H.H. Gregg and was told that it could not do anything for him

26  as his Dishwasher was out of warranty.   O'Donnell then called the KitchenAid

27  division of Whirlpool again.  The representative immediately offered him a $300

28

discount on a new KitchenAid Dishwasher.  O'Donnell asked KitchenAid to replace the Dishwasher without charge as this was his second Dishwasher fire and he did not feel comfortable with the Dishwasher.  The representative said that KitchenAid could not do that.  O'Donnell then asked for KitchenAid to repair the Dishwasher without charge.  The representative agreed to do so.

38.    Approximately five weeks after the fire, A&E Factory Service, LLC ("A&E"), which on information and belief is a joint venture of Whirlpool and Sears Holdings Corporation that services appliances nationwide, replaced the heating element and, for the second time, the electronic control board.  O'Donnell missed another five days of work as a result of the repairs.  While the machine is currently working, O'Donnell is afraid to run it and will not do so when he is asleep or when no one is in the house, as an uncontrolled fire could destroy the house or kill him.

39.    O'Donnell has suffered damages caused by the failure of his defective Dishwasher and the prospect that it will fail again for the same reason due to the fact that the replacement parts, on information and belief, contain the Defect.  Such damages include, but are not necessarily limited to, overpayment for his defective Dishwasher and temporary loss of use of the Dishwasher after it combusted.

### C.    Plaintiff Joseph Cicchelli

40.    Plaintiff Joseph Cicchelli ("Cicchelli") is a citizen of New Jersey, domiciled at 836 Summit Avenue, Hackensack, New Jersey 07601.

41.    Cicchelli purchased a Kenmore Elite Dishwasher, model number 665.17584200, serial number FM 2401353, from Sears in Hackensack, New Jersey for $919.00, inclusive of an extended warranty that he purchased from Sears and taxes, on or about July 4, 2002, and he installed it on or about July 8, 2002.  Nothing on his Dishwasher or in his user manual or warranty disclosed the Defect.  Had he been so informed, Cicchelli would not have purchased the Dishwasher.

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

42.     On April 4, 2010, which was Easter Sunday, Cicchelli turned the Dishwasher on and while it was running, he heard hissing and popping noises. He went into the kitchen and saw sparks and smoke coming from a vent hole under the time display window and door handle opening of the Dishwasher. Inhaling the smoke, he ran to the Dishwasher and opened the door so that it would turn off, but the machine kept running, hissing and spraying water everywhere. Cicchelli then ran to the circuit breaker and manually switched it off. Fortunately, he was able to recover from his smoke inhalation after fully ventilating the premises.

43.     Cicchelli later disassembled the machine and discovered that the electronic control board was burned and that the control panel cover sustained smoke damage. He "Googled" his experience and found a website that listed similar issues with the same unit as his as well as units with other brand names manufactured by Whirlpool. The pictures on the website looked identical to his damaged control board. The same area of the control board was burned on almost every picture on the website.

44.     Cicchelli purchased a new electronic control board and fuse kit for $169.03.

45.     On information and belief, the store where Cicchelli purchased the replacement electronic control board keeps many in stock, as customers frequently purchase them to replace control boards in their Whirlpool-manufactured Dishwashers that have burned out.

46.     Cicchelli contacted Sears' customer service by e-mail and phone. Sears did not appear to be concerned over his report of a product fire, and refused to compensate Cicchelli for his loss.

47.     Cicchelli has suffered financial damages caused by the Kenmore Dishwasher's catastrophic failure and the prospect that it will fail again for the same reason due to the fact that the replacement parts, on information and belief, contain the same defect. Such damages include, but are not necessarily limited to, repair costs,

1   overpayment for his defective Dishwasher and temporary loss of use of the

2   Dishwasher after it combusted.

3                                     **D.     Plaintiff Kurt Himler**

4       48.    Plaintiff Kurt Himler ("Himler") is a citizen of California, residing at

5   11075 Hiskey Lane, Tustin, California 92782.

6       49.    Himler purchased his KitchenAid Dishwasher, model number

7   KUDSO1FLSS, serial number FR5219875, along with a Sears Protection Plan from a

8   Sears store in California around 2004.   Nothing on his Dishwasher or, upon

9   information and belief, in his user manual or warranty, disclosed the Defect. Had he

10   been so informed, Himler would not have purchased the Dishwasher.

11       50.    In the summer of 2010, the electronic control board overheated and the

12   Dishwasher caught on fire, charring the wooden cabinet in the kitchen adjacent to the

13   Dishwasher. Prior to the fire incident, the Dishwasher had overheating problems and

14   the Dishwasher door was always hot.

15       51.    Although Whirlpool eventually replaced the defective Dishwasher at

16   Himler's request, it did so with a downgraded model – KitchenAid Model No.

17   KUDC03FVSS4, Serial No. is F02304640. Whirlpool did not compensate Himler for

18   the damaged cabinet, his overpayment for his defective Dishwasher, or his temporary

19   loss of use of a dishwasher after his first Dishwasher combusted.   While his

20   replacement Dishwasher has not experienced problems due to the Defect due to date,

21   upon information and belief, it suffers from the same Defect.

22       52.    Himler accepted the replacement Dishwasher under the belief that it did

23   not have the same problem as his original Dishwasher.   Nothing on Himler's

24   replacement Dishwasher or, upon information and belief, in the accompanying user

25   manual or warranty disclosed the Defect. Had he been so informed, Himler would not

26   have accepted the replacement Dishwasher offer.

27

28

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

53. Himler has suffered financial damages, including but not necessarily limited to those enumerated above, caused by his KitchenAid Dishwasher's catastrophic failure and the prospect that his replacement Dishwasher will fail for the same reason due to the fact that it, on information and belief, contains the Defect.

### E. Plaintiff Susan Milicia

54. Plaintiff Susan Milicia ("Milicia") is a citizen of New Jersey, domiciled at 840 Wessex Lane, Somerdale, New Jersey 08083.

55. Milicia purchased a KitchenAid Dishwasher, model number KUDPO2CRBS2, serial number FT4107404, for approximately $760.00 with tax and shipping from DirectBuy Club of South Jersey in Maple Shade, New Jersey on October 7, 2006, and had it installed in March of 2007. Nothing on her Dishwasher or in her user manual or warranty disclosed the Defect. Had she been so informed, Milicia would not have purchased the Dishwasher.

56. Milicia's Dishwasher was serviced on August 3, 2007, by A&E Factory Service for problems with the drain pump and a control fuse. On December 11, 2007, the Dishwasher was serviced again and the service invoice lists the problem as, "Heater, Thermo & Control Board." On June 4, 2008, Milicia's Dishwasher was serviced for a control fuse problem again.

57. In February 2009, the Dishwasher made pinging noises, emitted a burnt plastic smell, shut down mid-cycle and would not drain. A technician replaced the board, fuse and wiring. The Dishwasher did the same thing in January 2010. A technician then replaced the entire fuse kit.

58. In July 2010, as the Dishwasher was running, it again emitted an intense burnt plastic smell. Milicia called the Safety Department at Whirlpool and it authorized a service call for diagnostic purposes only. The A&E technician who came to diagnose the Dishwasher problem determined that the wiring had melted and noted on the service invoice, "part failure: needs cntrl wire harns all is burn up." Under the

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

"Parts Required" section, the technician listed, "1 Fuse, 1 Sub Cntrl-E1, 1 Harns-Wire."

59.    Thereafter, Milicia called Whirlpool and advised the representative with whom she spoke that she had discovered multiple complaints online regarding Whirlpool Dishwashers' propensity to burn up.    The Whirlpool representative, however, denied any knowledge of prior complaints about this problem.    Whirlpool offered two options to Milicia: (1) a refund in the amount of $285, a prorated rate based on the age of her Dishwasher, or (2) the purchase of a new Whirlpool Dishwasher for the price of $400.    Susan opted to purchase the new Whirlpool Dishwasher.

60.    Milicia purchased her replacement KitchenAid Dishwasher, Model no. KUDS40CVSS, Serial No. F03305158, directly through Whirlpool Corporation for $400.00 on August 30, 2010.    The replacement Dishwasher was installed on August 17, 2010.    While her replacement Dishwasher has not experienced problems due to the Defect due to date, upon information and belief, it suffers from the same Defect.

61.    Milicia accepted the discounted replacement Dishwasher under the belief that it did not have the same problem as her original Dishwasher.    Nothing on her replacement Dishwasher or, on information and belief, in its user manual and warranty disclosed the Defect.    Had she been so informed, Milicia would not have purchased the replacement Dishwasher.

62.    Milicia has suffered financial damages caused by her Dishwasher's catastrophic failure and the prospect that the replacement Dishwasher will fail for the same reason due to the fact that it, on information and belief, contains the Defect. Damages include, but are not necessarily limited to, overpayment for her Dishwashers and temporary loss of use of a dishwasher after her first Dishwasher combusted.

### F.    Plaintiff Gary LeBlanc

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

63.    Plaintiff Gary LeBlanc ("LeBlanc") is a citizen of Massachusetts, domiciled at 7 Serena Terrace, Peabody, Massachusetts 01960.

64.    LeBlanc purchased his Kenmore Elite Dishwasher, model number 665.16279400, serial number FR4201316, for $947.48 from a Sears store located in Peabody, Massachusetts on November 4, 2004. Nothing on his Dishwasher or in his user manual or warranty disclosed the Defect. Had he been so informed, LeBlanc would not have purchased the Dishwasher.

65.    On May 29, 2010, at approximately 10 p.m., LeBlanc's family was already in bed and he was on his way there, when he smelled electrical wires burning (which he recognized because of his experience with computers). He traced the smell to the Dishwasher. When he opened the door, smoke billowed out. The machine did not shut off even though the door was open. The Dishwasher was on its own house circuit breaker, which did not trip, so he had to run down to the basement and manually turn off the circuit breaker.

66.    LeBlanc disassembled the door and saw immediately that the electronic control board and related wiring were burnt. Two of the wires had burned the blade terminals off the electronic control board and melted a hole through the plastic housing in which the electronic control board rests. The wiring harness also had many wires that were so overheated that they had started melting into the rubber installation on the inside door backing.

67.    LeBlanc called Sears and Whirlpool. Both companies told him that there was no problem with his Dishwasher and refused to help him.

68.    LeBlanc then contacted "Sears Cares," Sears' executive customer service, which would not acknowledge that Sears had seen this issue before or knew of any defect or recall on LeBlanc's Dishwasher model, but did dispatch a technician to examine the Dishwasher. A technician came on June 11, 2010, and advised that he had never seen a dishwasher "cooked that bad" before, and that it needed a new

FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL
Case No. 8:11-cv-01733-FMO-MLG

electronic control board and wiring harness.  The inspection cost $129.00.  Using a 10% off coupon, LeBlanc spent $218.18 on the replacement parts and a new silverware tray to add to his Dishwasher.  A technician then repaired the Dishwasher on June 25, 2010 for an additional $69.00.  Sears provided LeBlanc with $224 credit to his AMEX charge card to share the repair cost.

69.     While LeBlanc's Dishwasher was repaired, he will no longer operate it when he is sleeping or when no one is home for fear that it will burn the house down and/or kill him and his family.  LeBlanc has suffered financial damages caused by the Dishwasher's catastrophic failure and the prospect that the Dishwasher will fail again for the same reason due to the fact that the replacement parts, on information and belief, contain the Defect.

70.     LeBlanc has suffered financial damages including, but not limited to, repair costs detailed above, overpayment for his Dishwasher and temporary loss of use of his Dishwasher after it combusted.

### G.     Plaintiff George Bliss

71.     Plaintiff George Bliss ("Bliss") is a citizen of California, domiciled at 514 De Witt Park Road, Yreka, California 96097.

72.     He and his wife purchased their Whirlpool-brand Dishwasher, model number GU1500XTLQ3, serial number FR3625065, from a Sears outlet in Yreka, California, on January 1, 2005 for approximately $478 and $33.46 in sales tax. Nothing on his Dishwasher or in his user manual or warranty disclosed the Defect. Had he been so informed, Bliss would not have purchased the Dishwasher.

73.     On November 25, 2011, while they were running their Dishwasher, they noticed a distinctive burning electrical odor in their kitchen.  At that time they could not determine the source.  The next time they used the Dishwasher – on November 27, 2011 – they again noticed the odor, which was getting progressively worse.  Bliss then realized that it was coming from the Dishwasher, and specifically, from the location of

the control panel.   He turned the machine off and flipped the breaker to the Dishwasher.  Bliss then opened the control panel, saw the scorched circuit board and observed black coloration and burnt wires throughout.

74.    Bliss then determined from on-line research that Whirlpool-manufactured Dishwashers were combusting in this manner.  He contacted the Sears store where he had purchased the Dishwasher and was told that it was out of warranty, there was nothing that Sears could do, and that any service call would be at his expense.

75.    Bliss called the service department at Whirlpool in approximately November of 2011 to see if anything could be done regarding the circuit board problem.  He spoke to several people before being transferred to a supervisor who offered him a one-year special warranty extension for $259.  If Bliss purchased the warranty extension, the Dishwasher could then be repaired under the extended warranty.  Bliss decided not to purchase the warranty extension because information on-line warned that a replacement control board would not solve the problem, and the extended warranty was costly.

76.    Bliss had the Dishwasher disconnected and replaced it with a new dishwasher made by a competing manufacturer, costing him approximately $700.00. In addition, Bliss had to drive approximately 100 miles round-trip to buy his new dishwasher, and had to spend approximately $30 on installation hardware.  Bliss has suffered financial damages caused by the Dishwasher's control panel overheating and failure, including but not limited to overpayment for his defective Dishwasher, temporary loss of use of a dishwasher after it combusted, and replacement cost for the Dishwasher.

### H.    Plaintiff Shirl Mederlet

77.    At the time her claim arose, Plaintiff Shirl Mederlet ("Mederlet") was a citizen of Virginia, domiciled at 72 Fox Fire, Cloverdale, Virginia 24077.  Subsequent to the filing of this lawsuit, Mederlet moved to North Carolina and sold her house in

Virginia.   When she sold the house, upon realizing that she had overlooked the Dishwasher Defect when completing disclosure forms incident to the listing of her property, she asked her realtor to disclose the Defect to the purchasers.

78.   Mederlet purchased a Kenmore Elite Ultrawash Dishwasher, Model No. 665.13742K600 from Sears on January 13, 2010.  She paid $579.74 after promotional discounts were applied.  That Dishwasher was installed on January 21, 2010, during which time Mederlet incurred an additional $20.00 charge.  Due to problems with that Dishwasher unrelated to the Defect, Sears replaced it with an upgraded model – a Kenmore Elite Ultrawash Dishwasher, Model No. 665.13922K010, Serial No. F03504603.  Plaintiff paid several hundred dollars for the upgrade.  The second Dishwasher was installed on October 11, 2010.  Nothing on either Dishwasher or, on information and belief, in either Dishwasher's user manual or warranty disclosed the Defect.   Had she been so informed, Mederlet would not have purchased the Dishwasher.

79.   In late December 2011 or early January 2012, as she was running the Dishwasher, Mederlet started to smell smoke.  She then saw sparks and smoke coming out of the machine.  The circuit breaker kicked off.  The Dishwasher's circuit board, control panel and other components had burned, and the Dishwasher was unusable.

80.   Mederlet called Whirlpool to complain; the Whirlpool representative told her to call Sears.  She called then Sears and was told that her machine was out of warranty.  In fact, the Dishwasher was within Sears' two-year warranty period. Mederlet was advised that she could pay $225 for a new service contract to get the machine fixed by Sears.  Mederlet rejected that offer, stating that she did not feel that she should have to pay anything to fix a fourteen-month-old Dishwasher that came with a two-year warranty on "electronic control and power supply board."  The Sears representative said she should try to contact Whirlpool about the problem.

81.   Ultimately, Mederlet had the Dishwasher repaired at her own expense. Based on the advice she received via an interactive technical website, Mederlet first

1  ordered a new control panel from Timerking on January 30, 2012. That replacement
2  panel did not work however, and so she ordered a second control panel from
3  AppliancePartsPros for $100.63, inclusive of shipping. That repair failed to fix the
4  Dishwasher. Using the same interactive technical website, Mederlet was advised to
5  replace her circuit board. When the old circuit board was removed, Mederlet saw that
6  it was "fried." Following that repair, her Dishwasher worked; however, it would
7  occasionally trip the breaker when starting a new load.

8      82.    On February 5, 2012, Mederlet e-mailed Whirlpool about her Dishwasher
9  incident. In her e-mail she complained that Sears would not do anything about the
10 problem. She further stated this is a common problem according to postings on the
11 Internet. Doris B., e-Solutions Specialist at Whirlpool Customer eXperience Center,
12 responded by e-mail on February 6, 2012, stating, "Whirlpool builds some, but not all,
13 Kenmore products. Any information we might have would be company confidential
14 as Kenmore prefers to retain all literature and handle all customer service and repair
15 service. Please call Kenmore at 800-469-4663 for all customer service or repair
16 inquiries."

17     83.    Mederlet has suffered financial damages - including but not limited to
18 costs of repair, overpaying for her Dishwashers and temporary loss of use of her
19 second Dishwasher after it combusted - caused by her Dishwasher's overheating and
20 consequent failure.

## I.    Plaintiff LynDee Walker

21     84.    Plaintiff LynDee Walker ("Walker") is a citizen of Virginia, domiciled
22 with her husband Justin at 14912 Walnut Bend Road, Midlothian, Virginia 23112.

23     85.    Her KitchenAid Dishwasher, Model No. kudk01tkwh0, Serial No.
24 fl2502835, was in her home when she purchased it on April 30, 2010. According to
25 handwritten notes in the Dishwasher owner manual that Walker received with the
26 house, the Dishwasher was purchased in 2002 and was installed on May 2, 2002.
27 Nothing on her Dishwasher or in its user manual or warranty disclosed the Defect.
28

23

1  Had she been so informed, Walker would not have purchased the house with the
2  Dishwasher or would not have retained the Dishwasher.

3      86.    On October 10 or 11, 2011, as her Dishwasher was running, Walker
4  smelled burning plastic and went into the kitchen to see smoke pouring out of the
5  front of the Dishwasher.  She assumed that something had fallen on the heating
6  element at the bottom of the Dishwasher but she saw nothing awry when she opened
7  the Dishwasher door.  Closing the door, Walker noticed that the front panel was very
8  hot.  Her husband went to the circuit breaker box in the garage and saw that the
9  breaker to the Dishwasher had flipped.  Walker looked online and saw information
10  about the problem with control boards in Whirlpool-manufactured Dishwashers.  She
11  and her husband left the circuit breaker to the Dishwasher turned off and called AHS
12  to have it repaired, as the Dishwasher was covered under Walker's AHS home
13  warranty.

14      87.    A technician sent by AHS came on October 13, 2011, and told Walker
15  that the control board was blackened.  He diagnosed the problem as "control panel
16  shorted out and burned."  The technician advised AHS on the service invoice that he
17  could "replace control board and thermal cutout, there is no guarantee that the same
18  problem will not reoccur as there appear to be multiple recorded cases of the problem
19  reoccurring.  Whirlpool may or may not be aware of the issue but has not upgraded
20  the replacement parts or issued a recall to my knowledge."  Walker paid the technician
21  the $60 AHS contract service fee for that initial visit.

22      88.    Not wanting to chance another Dishwasher fire, Walker told AHS that
23  she wanted a new dishwasher. Refusing to replace the Dishwasher, AHS offered to
24  pay her the amount that it would have cost the Walkers to repair the unit - $117.60.
25  Walker accepted that offer.

26      89.    Walker then contacted Whirlpool to make the company aware of the
27  situation.  The representative said that Whirlpool would not take the word of the initial

28

technician and that Whirlpool would need to send its own technician to inspect her Dishwasher. Whirlpool did so and its technician reached the same conclusion, calling Whirlpool from Walker's house to report that the control board was the problem.

90.   While Whirlpool refused to repair the Dishwasher at no cost as it was out of warranty, Whirlpool apologized to the Walkers and offered them a 15% rebate on a new dishwasher, provided that it was a Whirlpool-manufactured machine. Walker accepted the 15% offer because she and her husband did not want to chance another fire with a replaced control board in the old Dishwasher.

91.   Using the 15% off rebate, Walker purchased a replacement Whirlpool Dishwasher, Model No. GU2300XTVS, Serial No. F12403778, from Whirlpool's VIPLink program on October 14, 2011, for $392.70. While her replacement Dishwasher has not experienced problems due to the Defect due to date, upon information and belief, it suffers from the same Defect.

92.   Walker purchased the discounted replacement Dishwasher under the belief that the new Dishwasher did not have the same problem as her original Dishwasher. Nothing on her replacement Dishwasher or, on information and belief, in her user manual and warranty disclosed the Defect. Had she been so informed, Walker would not have purchased the replacement Dishwasher.

93.   Walker has suffered financial damages caused by her Dishwasher's catastrophic failure and the prospect that her replacement Dishwasher will fail for the same reason. Damages include, but are not necessarily limited to, overpayment for her Dishwashers, repair and replacement costs and temporary loss of use of a dishwasher after her first Dishwasher combusted.

### J.   Plaintiff Linda Sample

94.   Plaintiff Linda Sample ("Sample") maintains residences in Florida and Missouri. Her Missouri home, where her claim arose, is at 699 Hawk Run Drive, O'Fallon, Missouri 63368.

95.     She purchased her Whirlpool Dishwasher, Model No. DU945PWSQ, Serial No. FY4807851, for her Missouri home from a Maytag Store (an authorized Whirlpool dealer) in Missouri, on May 19, 2010, at a cost of approximately $450. Nothing on her Dishwasher or, on information and belief, in her user manual or warranty disclosed the Defect. Had she been so informed, Sample would not have purchased the Dishwasher.

96.     On October 11, 2011, while running her Dishwasher through its wash cycle, Sample's daughter, Sarah, smelled burning coming from the machine and immediately shut it off. Sample spoke to the manager of the store where she purchased the machine, Ed Rosen ("Mr. Rosen"), and was told that her Dishwasher was no longer under warranty coverage. Sample bought replacement parts for $218.16, including a new circuit board to replace the one that had burned. In addition, she had to pay $75 as a service charge.

97.     When the Dishwasher was used again following the repairs, Sample discovered that the soap dispenser would not open and that the delay start and dry feature would not work. Looking online, she discovered in early 2012 that it is common for control boards to catch on fire in Whirlpool-manufactured Dishwashers. Sample contacted Mr. Rosen at the Maytag Store again and asked if he was aware of this problem. He claimed that he had no knowledge of any fire issues with Whirlpool Dishwashers.

98.     Sample decided to purchase a new Bosch dishwasher for $1201.95, including installation, taxes and warranty, to avoid any further costs or risks associated with the dangerous Whirlpool machine.

99.     Sample has suffered financial damages as a result of her Dishwasher's control panel overheating and failure, including but not limited to overpayment for her defective Dishwasher, temporary loss of use of a dishwasher after her Dishwasher combusted, service charges and the cost to replace her Dishwasher.

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

### K.   Plaintiff Susan Bathon

100.   Plaintiff Susan Bathon ("Bathon") is a citizen of Ohio, domiciled at 2277 Pointe Place, Cincinnati, Ohio 45244.

101.   Bathon's KitchenAid Dishwasher, Model No. KUDK03FTSS3, Serial No. FW2305430, was in her home when she purchased it on June 25, 2010. The Dishwasher had been purchased by the previous owners in December 2008 as part of an appliance package through Zaring Homes, the builder of the house. According to representatives from the KitchenAid division of Whirlpool, the Dishwasher was valued at between $800 and $900. Nothing on Bathon's Dishwasher or in her user manual and warranty disclosed the Defect. Had she been so informed, Bathon would not have purchased the house with the Dishwasher or retained the Dishwasher.

102.   On January 28, 2012, Bathon's Dishwasher was running, and was about half-way through the cycle when she noticed the smell of metal burning. She saw smoke near the Dishwasher. Neither the fuse nor the switch was tripped, although the Dishwasher had stopped mid-cycle on its own and appeared to have no power. A licensed repairman from A-1 Appliance Service, Inc. inspected the unit and advised her that the wiring harness had melted to and damaged the control board. The repair would have required a new control board and wiring harness. The technician wrote on the service invoice, "Found wiring harness melted to Board and Board was damaged. Re-order new board and harness but customer does not feel safe." Bathon paid $85.15 for this service call.

103.   Bathon contacted KitchenAid and was offered only a new comparable Dishwasher in exchange for her damaged Dishwasher plus a $150 "administrative fee," which she accepted. KitchenAid removed the damaged Dishwasher and retained it.

104.   The replacement KitchenAid Dishwasher, Model No. KUDL15FXSS, Serial No. F20201490, was shipped directly from KitchenAid to A-1Appliance

Service; 6212 Vine Street, Cincinnati Ohio 45216 (513-641-4800). It was received and installed in February of 2012. Upon information and belief, the replacement Dishwasher suffers from the same Defect.

105. Bathon accepted the replacement Dishwasher offer believing that it did not suffer from the same Defect as her original Dishwasher. Nothing on her replacement Dishwasher or in its user manual and warranty disclosed the Defect. Had she been so informed, Bathon would not have purchased the replacement Dishwasher.

106. Bathon suffered financial damages as a result of her Dishwasher's failure, including but not limited to the damages described above and the prospect that her Dishwasher will fail again for the same reason due to the fact that the replacement Dishwasher, on information and belief, contains the Defect. Such damages include but are not necessarily limited to overpayment for her defective Dishwashers, temporary loss of use of a dishwasher after her Dishwasher combusted and a service charge as described above.

### L.   **Plaintiff Maureen Meneghetti**

107. Plaintiff Maureen Meneghetti ("Meneghetti") is a citizen of Illinois, domiciled at 16618 Charnswood Court, Tinley Park, Illinois 60477. Meneghetti purchased her KitchenAid Dishwasher, Model No. KUDK03ITBS2, Serial No. FW1107923, from Plass Appliance in Tinley Park, Illinois for $712.11 inclusive of taxes and delivery on April 1, 2008. Nothing on her Dishwasher or in the accompanying user manual and warranty disclosed the Defect. Had she been so informed, Meneghetti would not have purchased the Dishwasher.

108. In November 2011, while the Dishwasher was running, Meneghetti saw smoke and noticed a "burnt electrical smell." Meneghetti tried to turn off the Dishwasher, but the buttons on the control panel, which were all flashing, did not respond. She then shut off power to the Dishwasher by flipping the circuit breaker to the kitchen. Meneghetti's fourteen-year-old son, who was opening the refrigerator

(which is on the same circuit as the Dishwasher), received a shock.  While he did not require medical treatment, he was scared.  Meneghetti then ran an extension cord from another room to the refrigerator.

109.  The next morning, Meneghetti removed the water manually from the bottom of the Dishwasher.  She then unplugged it, enabling her to turn the circuit breaker back on.

110.  That same day, Meneghetti called KitchenAid about the incident as the machine was still under warranty.  She was told by the KitchenAid representative that she would have to pay the cost of a service call, which totaled $129.  A serviceman from A&E came to her house on November 16, 2011 and examined the machine, removed the burned control board and took it with him, replacing the burned circuit board with a new one.  Meneghetti paid for the service call as required.

111.  Meneghetti has suffered financial damages as a result of her Dishwasher's failure and the prospect that it will fail again for the same reason due to the fact that the replacement parts, on information and belief, contain the Defect.  Such damages include, but are not necessarily limited to, service costs, overpayment for her defective Dishwasher and temporary loss of use of the Dishwasher after it combusted.

## M.   Plaintiff W. David Beal

112.  Plaintiff W. David Beal ("Beal") is a citizen of New Jersey, domiciled at 144 Forest Road, Moorestown, New Jersey 08057.  Beal purchased a Whirlpool Dishwasher, Model DU980QPDQ, on or about February 9, 1996, as part of a kitchen renovation.  Nothing on his Dishwasher or, on information and belief, in the accompanying user manual and warranty disclosed the Defect.  Had he been so informed, Beal would not have purchased the Dishwasher.

113.  Beal frequently ran the Dishwasher on Sunday morning while he was at church.  One Sunday morning, in or around June or July 2002, upon returning from

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

church he noticed smoke and a burning smell in the kitchen. He noticed burn marks on the front of the Dishwasher near the vent and that the Dishwasher would not turn on.

114. Beal contacted Whirlpool's customer service call center about the fire. Beal spoke with a woman, but he does not recall her name. The woman admitted that Whirlpool was aware of some defective Dishwasher models that had a propensity to catch fire but, on being told the serial number of Beal's Dishwasher, she told him that his model was not one that had any known defect. The woman subsequently called Beal back. Beal was led to believe that, although Whirlpool was aware of certain models that contained a defect, his Dishwasher was not a defective model and that Whirlpool had already resolved any defects in other models. The woman offered Beal a credit towards a new Whirlpool Dishwasher, which he accepted based on the woman's assurances that any defects in current models had been fixed by Whirlpool. The woman also suggested several local dealers of Whirlpool Dishwasher where Beal could purchase a replacement.

115. Beal purchased his second Whirlpool Dishwasher, Model no. GU1200XTKQO, in or around July 2002, from Sears using the partial credit from Whirlpool. Beal's credit card statements show that he paid $639.97, which he believes was exclusive of installation and delivery charges. Each Dishwasher on display at Sears included a tag or placard described its features and specifications. The tag or placard did not state that the Dishwasher contained any defect or that it presented any fire risk. Nothing on his replacement Dishwasher or in the accompanying user manual and warranty disclosed the Defect. Had he been so informed, Beal would not have purchased the replacement Dishwasher.

116. On April 22, 2011, while his second Whirlpool Dishwasher was running, he noticed smoke coming from the vent and immediately opened the door of the

1  machine to stop its operation. There was a strong and persistent odor of burned plastic

2  or insulation. The fire rendered the machine unusable.

3  117. Beal contacted Whirlpool immediately after the fire. Whirlpool asserted

4  that the machine was out of warranty and would not be covered, but agreed to pay for

5  a repairman solely to inspect the machine. On or around April 25, 2011, a repairman

6  from Quaker City Service Company inspected the Dishwasher and confirmed that the

7  touchpad and control panel had caught fire. He estimated the repair to be around

8  $300. Beal refused to pay the $300 for repairs.

9  118. Beal spoke with Whirlpool again after the inspection. Whirlpool again

10  asserted that the Dishwasher was out of warranty and that Whirlpool would do

11  nothing further. The representative admitted, however, that even an out-of-warranty

12  dishwasher should not burst into flames. Beal offered to send the parts that had

13  caught fire to Whirlpool, but Whirlpool refused his offer. He paid $521.70 for a new

14  Frigidaire dishwasher, $155.15 for installation and $120 for insurance.

15  119. Beal has suffered economic injury caused by his defective Dishwasher.

16  Such damages include, but are not necessarily limited to, overpayment for his

17  defective Dishwashers, temporary loss of use of a dishwasher after his Dishwashers

18  combusted and replacement costs.

19  **N.     Plaintiff Zila Koswener**

20  120. Plaintiff Zila Koswener ("Koswener") is a citizen of New York,

21  domiciled at 11 Jodi Beth Drive, Mahopac, New York 10541. Koswener and her

22  husband Kenneth bought a Kenmore dishwasher on March 29, 2001 for $768.59 from

23  the Sears located in the Jefferson Valley Mall in Yorktown Heights, NY. That

24  dishwasher, which was installed on or about July 31, 2001, had mechanical problems,

25  however, and in approximately 2002 or 2003, Sears replaced it with a new Kenmore

26  Dishwasher, Model No. 165.82200, Serial No. FW3104456. Nothing on the

27  replacement Dishwasher or in the accompanying user manual and warranty disclosed

28

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

1  the Defect.   Had she been so informed, Koswener would not have accepted the
2  replacement Dishwasher.

3      121.   Koswener purchased a Master Protection Agreement for her Dishwasher
4  on August 5, 2002.

5      122.   At the end of May 2012, Koswener noticed a strange odor in the house.
6  Unable to determine the source, she attributed it to a deteriorating fluorescent lamp.
7  Unaware that the Dishwasher was the actual source of the odor, Koswener started the
8  Dishwasher on June 3, 2012.   Approximately 40 minutes later she saw smoke coming
9  from the machine.   She then saw flames, approximately four inches in length, shooting
10  out of the upper right side of the Dishwasher where the electronic control board was
11  located.   Koswener immediately opened the door to stop the Dishwasher, at which
12  point it switched off and the flaming ceased.   The Dishwasher continued smoking,
13  however, and Koswener had to open the windows to clear it out.

14      123.   At the time of her Dishwasher fire, water had filled the Dishwasher up to
15  the bottom basket, which resulted in a putrid odor permeating the entire kitchen.
16  Without any means of draining the Dishwasher, Koswener and her husband removed
17  all items and then, on their hands and knees, removed the standing water with a baster
18  bulb and cup.

19      124.   Koswener contacted Sears as her Dishwasher was under a Sears service
20  contract.   When she first telephoned Sears about the incident, the representative told
21  her that if physical fire was involved, Sears should give her a new dishwasher.
22  However, when the repairman came to service the Dishwasher on June 17, 2012, he
23  told Koswener's husband that if a dishwasher did not exhibit the same problem four
24  times, even if physical fire were involved, Sears would not replace the dishwasher.
25  The repairman, making service calls on June 20 and 27, 2012, replaced the wiring
26  harness, control board, digital display and plastic front to the Dishwasher.

27

28

125.   Koswener has suffered financial damages as a result of her Dishwasher's failure and the prospect that it will fail again for the same reason due to the fact that the replacement parts, on information and belief, contain the Defect.  Such damages include, but are not necessarily limited to, overpayment for her defective Dishwasher and temporary loss of use of the Dishwasher after it combusted.

## O.   Plaintiff Pamela Walchli

126.   Plaintiff Pamela Walchli ("Walchli") is a citizen of California, domiciled at 1862 Laurinda Drive, San Jose, California 95124.  She purchased her KitchenAid Dishwasher, Model No. KUDI01IL, Serial No. FP3806677, from University Electric Home Appliance Center in Santa Clara, California on September 6, 2003 for approximately $762.59 inclusive of tax and delivery and installation fees.  The Dishwasher was installed on October 22, 2003.  Nothing on her Dishwasher or in the accompanying user manual and warranty disclosed the Defect.  Had she been so informed, Walchli would not have purchased the Dishwasher.

127.   On March 6, April 9 and April 24, 2004, A&E Factory Service serviced Walchli's Dishwasher because she detected a burning odor.   On April 9, the technician determined that he needed to order parts to complete the repair.  All repairs involved the heater element of the Dishwasher.

128.   On June 3, 2012, Walchli turned her Dishwasher on and then went to sit in her family room.  After approximately 20 to 30 minutes, Walchli smelled electrical burning and heard popping noises.  She ran into the kitchen and saw smoke and flames, approximately six inches in length and covering an area approximately six inches wide, coming out of the upper right corner of her Dishwasher near the start button.  When she opened the Dishwasher door, it stopped running, but the smoke and flames continued.   Walchli managed to blow out the flames but the Dishwasher continued smoking for approximately ten more minutes.

129.   Following the Dishwasher fire, Walchli performed an internet search and discovered that such incidents were common with Whirlpool Dishwashers.

130.   Walchli contacted University Electric and asked for the most reliable dishwasher that it sold.   Based on its recommendation, she purchased a Miele dishwasher for $1,472.51 to replace her defective and dangerous KitchenAid Dishwasher. Her new dishwasher was installed on June 14, 2012.

131.   Walchli has suffered financial damages as a result of her Dishwasher's failure, including but not limited to, overpayment for her defective Dishwasher, temporary loss of use of a dishwasher after her Dishwasher combusted and replacement costs.

### P.   Plaintiff Raymond Paolini, Jr.

132.   Plaintiff Raymond Paolini, Jr. ("Paolini") is a citizen of New York, domiciled at 38 Livingston Parkway, Amherst, New York 14226. On December 23, 2002, Paolini purchased a Whirlpool Dishwasher, Model No. GU1500XTLS0, Serial No. FM3906428, for approximately $800 from Orville's Home Appliance Service in Amherst, New York. Nothing on his Dishwasher or in the accompanying user manual and warranty disclosed the Defect. Had he been so informed, Paolini would not have purchased the Dishwasher.

133.   In approximately 2004 or 2005, the Dishwasher heating element failed and had to be replaced.

134.   In approximately May 2012, while Mrs. Paolini was running the Dishwasher, she saw, early in the wash cycle, that thick, black olive colored smoke was billowing out of the vent area.   She went to the Dishwasher to turn it off, and flames and lightning bolt-like sparks erupted from the control panel area.   She then saw electrical arcing, approximately six to eight inches in length, going from the control board area to a nickel knob on a cabinet adjacent to the Dishwasher.   Mrs. Paolini yelled for husband, who ran into the kitchen.   With smoke and electrical arcs

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

1 shooting out of the Dishwasher toward the adjacent wooden kitchen cabinets, Paolini

2 described the scene as "something out of Frankenstein."   A whining motor sound

3 persisted even though she had pressed the "cancel" button and opened the Dishwasher

4 door.  Paolini then cut the power to the Dishwasher, at which point the sound ceased.

5 While the Dishwasher stopped running and the arcing ended, the machine continued

6 smoking, however, and the smoke detectors kept going off.

7   135.   Paolini called Whirlpool on or about June 10, 2012.  He was put on hold

8 for 20 minutes before hanging up. He tried reaching Whirlpool several times over the

9 next few days and finally spoke with someone named Kim about his Dishwasher

10 incident. Kim said the Paolini's Dishwasher was out of warranty so there was nothing

11 that Whirlpool would do.  Paolini responded that this was a safety issue as his

12 Dishwasher had burst into flames and could have burnt his home down had he not

13 acted immediately.   The representative then said that Whirlpool would send a

14 technician to examine the Dishwasher.  Whirlpool sent a technician from Orville's

15 Home Appliances and, upon inspecting Paolini's Dishwasher, shook his head and

16 said, "There's another one. We have been seeing a lot of this." The technician noted

17 that the "control has failed & damaged wiring harness. No repair advised due to cost.

18   136.   Whirlpool later called Paolini and offered him $100 in exchange for his

19 old Dishwasher.  Paolini accepted the offer and surrendered his old Dishwasher to

20 Whirlpool.

21   137.  Paolini purchased a replacement Dishwasher, a KitchenAid 24" SS

22 Superba, Model No. KUDS30IXSS, Serial No. F13208207, for approximately $850.

23 Upon information and belief, the replacement Dishwasher suffers from the same

24 Defect.

25   138.  Paolini purchased the replacement Dishwasher under the belief that the

26 new Dishwasher did not have the same problem as her original Dishwasher.  Nothing

27 on his replacement Dishwasher or in its user manual and warranty disclosed the

28

1   Defect. Had he been so informed, Paolini would not have purchased the replacement
2   Dishwasher.

3       139.   Paolini has suffered financial damages as a result of his Dishwasher's
4   failure, including but not limited to overpayment for his defective Dishwashers,
5   temporary loss of use of a dishwasher after his Dishwasher combusted and
6   replacement costs.

7                   **Q.    Plaintiff Jackie Steffes**

8       140.   Plaintiff Jackie Steffes ("Steffes") is a resident of Utah, domiciled at 468
9   W. 1250 S., Orem, Utah 84058. On March 14, 2005, Steffes purchased KitchenAid
10  Dishwasher, Model No. KUDP01DLBL6, Serial No. FR4801813, for $869.11 from
11  R.C. Willey in Orem, Utah.  Nothing on her Dishwasher or, upon information and
12  belief, in the accompanying user manual and warranty disclosed the Defect.  Had she
13  been so informed, Steffes would not have purchased the Dishwasher.

14      141.   On Saturday, February 25, 2012, Steffes and her husband smelled an acrid
15  burning smell throughout their home.  Upon investigation, they noticed that the smell
16  was strongest at the Dishwasher control panel.  Steffes immediately shut off the
17  Dishwasher at the electrical control panel.

18      142.   In order to avoid paying weekend repair rates, Steffes called an authorized
19  repair service provider - Appliance Service by Paul located in Murray, Utah - during the
20  work week.  The technician concluded that a new wiring assembly and control panels
21  were needed due to the melting of the wiring and the burn found on the control panel.
22  The labor for replacing both would have been $462.35. His diagnostic fee was $93.97.
23  The technician recommended that Steffes buy a new dishwasher and recommended that
24  Steffes keep the electricity shut off at the control panel to avoid a fire that could occur
25  even though the Dishwasher was turned off.

26      143. Steffes     first     researched     the     problem     and     discovered
27  www.kitchenaidfires.com, where she found several others had reported similar

28

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

1   experiences. She also checked Consumer Reports and talked to dishwasher salesmen,
2   one of whom informed her that fully automated control panels were having more
3   problems than semi-automated ones. Semi-automated control panel dishwashers can be
4   more expensive than fully automated ones.

5   144. On March 2, 2012, Steffes called KitchenAid customer service and
6   reported the incident. KitchenAid customer service stated that it had not received any
7   complaints regarding Steffes' Dishwasher model.

8   145. Steffes also called the Consumer Product Safety Commission to report the
9   problem.

10   146. Steffes and her husband replaced the KitchenAid Dishwasher with a Bosch
11   model with a semi-automated control panel, which they purchased at R.C. Willey in
12   Orem, Utah for $960.56 on March 3, 2012.

13   147. Steffes has suffered financial damages as a result of her Dishwasher's
14   failure, including but not limited to $93.97 in technician diagnostic costs and $1070.56
15   in replacement costs.

16                              **DEFENDANTS**

17   148. Defendant Whirlpool Corporation ("Whirlpool") describes itself as the
18   world's leading manufacturer and marketer of household appliances, including
19   dishwashers, with annual sales of approximately $19 billion, 70,000 employees, and
20   69 manufacturing and technology research centers around the world. Whirlpool is a
21   Delaware corporation with its principal place of business in Benton Harbor, Michigan.
22   On information and belief, Whirlpool's sole North American Dishwasher
23   manufacturing plant is in Findlay, Ohio, where all of the Dishwashers were
24   manufactured, and from which facility they entered the stream of commerce
25   throughout the United States.

26   149. At all times relevant hereto, Whirlpool was in the business of designing,
27   manufacturing, distributing, advertising, marketing, promoting and selling kitchen

28

essentials and appliances, and did design, manufacture, distribute, advertise, market, promote and sell (through authorized dealers) the Whirlpool-, KitchenAid- and Kenmore-branded Dishwashers at issue herein.

150.  Defendant Sears Holdings Corporation is a Delaware corporation with its principal place of business in Hoffman Estates, Illinois.  Formed in 2004 in connection with the merger of K-Mart and Sears, Roebuck & Co., Sears Holdings Corporation describes itself as the nation's fourth largest broadline retailer with approximately 3,900 full-line and specialty retail stores in the United States and Canada.  Sears Holdings Corporation further characterizes itself as the leading home appliance retailer, which includes dishwashers, as well as a leader in tools, lawn and garden, consumer electronics and automotive repair and maintenance.

151.  Defendant Sears, Roebuck & Company, Inc., a wholly owned subsidiary of Sears Holdings Corporation (together, "Sears"), is a New York corporation with its principal place of business in Hoffman Estates, Illinois.  Sears, Roebuck & Company, Inc. distributes and sells residential and commercial appliances, including dishwashers. It is among the largest companies in the United States' market for major household appliances.

152.  Sears owns the Kenmore brand name.  Kenmore-brand appliances include dishwashers.

153.  At all times relevant hereto, Sears was in the business of distributing, advertising, marketing, promoting, and selling some, if not all, of the Dishwashers.

154.  At all times relevant hereto, Whirlpool and Sears worked in concert with one another and/or as each other's agents in connection with the design, marketing, promotion, sale, servicing and repair of the Dishwashers.

155.  Defendants Whirlpool and Sears engage in a continuous course of business in California, including sales of the Dishwashers through retail stores located in California; use distributors of their products, including the Dishwashers, who are

located in California; distribute products, including the Dishwashers, in the State of California; sell and advertise products, including the Dishwashers, on the Internet and through other media in California; service their products, including the Dishwashers, in California; have knowledge that their products, including the Dishwashers, will be distributed in California; have substantial and continuing contacts with California; expect that their products, including the Dishwashers, will be purchased in California, and have committed tortious acts in California.

## JURISDICTION AND VENUE

156.   The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1332(d).   There are members of the Class who are citizens of states other than the states of citizenship of Defendants, and the amount in controversy exceeds five million dollars ($5,000,000) exclusive of interest and costs.

157.   Venue lies in this District pursuant to 28 U.S.C. § 1391 (a) and (c).

## FACTS

### Defendants' Representations and Warranties

158.   Defendants consistently make representations regarding the quality, reliability and longevity of "Whirlpool-," "KitchenAid-" and "Kenmore-" brand Dishwashers – specifically, that they are highly-rated, top-of-the-line appliances.   For example:

A.   The KitchenAid website asserts that "All large KitchenAid® appliances come with outstanding warranties that back up the premium quality of our appliances."[3]

B.   Sears states on its website that the Whirlpool, KitchenAid and Kenmore Dishwashers are of superior quality, reliability and longevity:

---

[3] *See, e.g.,* http://www.kitchenaid.com/product/KUDE70FXSS.uts ("Features & Specs" link) (last visited on July 24, 2011).

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

1      •    "KitchenAid dishwashers are made to last and get you out of the kitchen
2 faster. At Sears.com, we have a wide selection of Energy Star® rated KitchenAid
  dishwashers at competitive prices, with the best installation and protection plans
3 around. Trust KitchenAid appliances for reliability and performance, and count on
4 Sears to deliver great installation and protection plans."[4]

5      •    "With KitchenAid® dishwashers, you'll get exceptionally clean dishes
6 with 25% better results versus the competition."[5]

7      •    "Whirlpool is a brand name you can trust for quality and reliability, and
8 Sears is the home of appliance value."[6]

9      •    "Kenmore appliances have brought oreto [sic.] American homes for
10 generations. The quality and reliability of Kenmore have helped our households run
  smoothly day after day and year after year. The new generation of Kenmore
11 appliances continues this tradition with that same quality and with more innovative
12 features focused on convenience. That is why Kenmore is the best known name in
  appliances, and why more people buy Kenmore than any other brand. With cooking
13 appliances, refrigerators, washers and dryers, vacuums and more, Kenmore appliances
14 are the tools of the trade for working households. And with new product lines like
  Kenmore Elite and Kenmore Pro, there are more ways to bake, grill, heat, chill, wash,
15 dry and clean than ever before."[7]
16
17      •    "Kenmore Elite appliances offer distinctive design and upscale features
  as well as the great quality Kenmore is known for. . . . For personal service and
18 award-winning Kenmore Elite appliances, the place to shop is Sears. "[8]
19

20 [4]*See, e.g.,* http://www.sears.com/shc/s/c_10153_12605_Appliances_Dishwashers?sbv=KitchenAid&sbf
21 =Brand (last visited July 24, 2011).

[5]*See, e.g.,* http://www.sears.com/shc/s/p_10153_12605_02212543000P?prdNo=7&blockNo=7&blcokT
22 ype=L7 (last visited July 24, 2011).

23 [6]*See, e.g.,* http://www.sears.com/shc/s/c_10153_12605_Appliances_Dishwashers?sbf=Brand&sbv=Whi
    rlpool (last visited July 24, 2011).

24 [7]*See, e.g.,* http://www.sears.com/shc/s/v_10153_12605_Appliances?sbf=Brand&sbv=Kenmore&ws-
25 showcase=kenmore&keywordRedirect=kenmore (last visited July 24, 2011).

26 [8] *See, e.g.,* http://www.sears.com/shc/s/v_10153_12605_Appliances?sbf=Brand&sbv=Kenmore+Elite
  (last visited July 24, 2011).
27
28

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

159.   Through various forms of media, Whirlpool and Sears market, advertise and warrant that each Whirlpool-, KitchenAid- and Kenmore-branded Dishwasher is fit for the ordinary purpose for which such goods are used and is free from defects in materials and workmanship, or at a minimum is not a serious fire hazard.  In addition to the above examples, the Kenmore Elite Ultra Wash® Dishwasher Use and Care Guide ("Use and Care Guide") for Models 665.16582, 665.16583, 665.16584, 665.16589, 665.17582, 665.17583, 665.17584, 665.17689 declares that "Your Kenmore® appliance is designed, manufactured and tested to provide years of dependable operation."

160.   Defendants Whirlpool and Sears expressly and impliedly warrant, *via* user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models that their Dishwashers are fit for the ordinary purpose for which such goods are used.

161.   For example, in some cases Defendant Whirlpool expressly warrants that in the second through fifth years from the date of purchase it will provide, free of charge, any replacement parts for the following components if defective in materials or workmanship: The upper or lower nylon racks, the wash and drain motor, the electronic controls and the heating element.

162.   In some cases, Defendant Sears expressly warrants in its user manuals that it will repair or replace, free of charge, the electronic module and power supply board if defective in material or workmanship for two years from the date of purchase.

### The Defect

163.   Contrary to and in derogation of Defendants' representations and warranties, the Dishwashers contain a design Defect that causes their electronic control boards to overheat, and together with other Dishwasher components, melt, smoke, combust and burst into flames, creating an unreasonable risk of potentially catastrophic destruction, including extensive property damage, personal injury and loss of life.

FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL
Case No. 8:11-cv-01733-FMO-MLG

164.  Upon information and belief, the Defect arises at or near the spade (or blade) terminal connection between the wiring from the heating element at the bottom the machine and the console control area including the circuit board.  The heating element circuit is by far the highest current circuit in a dishwasher.  Accordingly, it is critical to ensure that all wiring and connections in that circuit can handle the high electrical demand placed on them.  It is imperative that the connection not degrade over time causing high electrical resistance.

165.  The defective design of the Dishwashers, however, upon information and belief, causes degradation of the connection over time, either because it is too loose, or corrodes, or for some other reason, which in turn causes high electrical resistance.  That, in turn, causes the terminal connection to get extremely hot (over 1000 degrees), causing the plastic circuit board, wire insulation, and/or other nearby parts of the circuit board assembly to melt and/or combust.  Moreover, due to the defective design of the Dishwashers, there is a high likelihood, once fire has been set to the plastic, wire insulation and/or other components, that the heat, flames and/or sparks can exit the Dishwashers and create a serious risk of setting fire to nearby objects such as woodwork, kitchen counters, cabinetry, dishtowels, items of clothing and any other flammable material above or in the vicinity of the Dishwashers.

166.  Upon information and belief, the control panels of the Dishwashers owned by the Plaintiffs all experienced combustion that originated at or near the heating element terminal connection on the control board.

167. As alleged hereinabove, Whirlpool knows from past experience that crimp-style terminal connections can overheat and set fire to nearby plastic and/or insulation if not properly designed and/or manufactured.  The heating element circuit is the highest current circuit in the Dishwashers and, therefore, is prone to catch fire if electrical connections are too loose or degrade over time.  Nevertheless, Whirlpool has

FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL
Case No. 8:11-cv-01733-FMO-MLG

continued to use the same or similar type of crimp connection to connect the heating element wiring to the circuit board.

168. The Defect manifests itself during the expected useful life of the Dishwashers within and outside of the warranty periods, is substantially likely to prevent the Dishwashers from being used as intended during their expected useful life, and poses significant risks to individuals' lives and property.

169. This design Defect necessitated and will continue to necessitate replacement of and costly repairs to the Dishwashers.

170. At all times, Plaintiffs have used their Dishwashers in a foreseeable manner and in the manner in which they were intended to be used.

171. The Defect, which existed at the time they were sold to Plaintiffs, rendered them unfit for the ordinary purpose for which dishwashers are used. As a result of the Defect, Plaintiffs have suffered property damage for which damages are being sought, as well as physical injury (such as smoke inhalation) for which damages are not being sought. The Defect was the direct, proximate, and foreseeable cause of damages incurred by Plaintiffs.

172. Had the Dishwashers been free from the Defect, Plaintiffs and the class would not have suffered the property damage complained of, and for which compensation is sought herein.

173. In purchasing a Dishwasher, a reasonable consumer would expect it to operate in accordance with, and be useable for, its intended purpose for the duration of its life expectancy, and not pose a serious safety risk.

174. A reasonable consumer expects that dishwashers like the Dishwashers at issue here will function properly for at least nine to thirteen years. The National Association of Home Builders ("NAHB") found in a 2007 study that it conducted along with Bank of America Home Equity that the life expectancy of dishwashers is nine (9) years. Demesne, a website dedicated to collecting information from experts

and specialists about topics that concern homeowners, states that the average life expectancy of dishwashers is ten (10) years.  The Association of Home Appliance Manufacturers ("AHAM"), of which Whirlpool is a member, cites a National Family Opinion, Inc. 1996 survey stating that the average useful life of a built-in under-the-counter dishwasher is thirteen (13) years.  Whirlpool has admitted that the life expectancy is nine (9) years for at least some of its Dishwasher models.

175.  Even after 9-13 years, however, a Dishwasher should never set fire to itself.  While consumers might expect to repair or replace components of their Dishwashers after a decade or so, no consumer would expect their Dishwasher to be a threat to their safety or the safety of their family or property merely because it was a several years old.

176.  The Dishwashers of Plaintiffs and the Class should have been usable for their intended purpose during their expected useful lives without being a significant fire hazard.

177.  The Defect poses an unreasonable safety hazard.  Specifically, when the electronic control boards spontaneously overheat, they and other components in the Dishwasher melt, emit smoke and fumes and combust.  In addition to the experiences of the Plaintiffs herein, set forth above, the following incidents illustrate this dangerous, and potentially lethal, safety hazard:

> A.  Nicole Anderson of Ossipee, New Hampshire, purchased a dishwasher from Sears in Newington, New Hampshire in approximately 2003. That dishwasher continually shut off mid-cycle for no apparent reason and so Sears replaced it in approximately June 2004, with Ms. Anderson paying the difference for an upgraded model – a Kenmore Dishwasher, Model no. 665.17369301, Serial no. FR2411247. On the evening of February 6, 2012, Ms. Anderson turned on her Dishwasher. Approximately thirty minutes into the wash cycle, she heard a strange popping noise come from her Dishwasher, as if something was stuck. Ms. Anderson opened the Dishwasher door to investigate. Everything appeared normal so she shut the

door and the Dishwasher restarted.  She then saw smoke coming out of the control panel area.  Ms. Anderson hit the cancel button but a flame, approximately four inches in length, shot out at her. She hit the cancel button a second time and a flame bolted out of the control panel again.  Unlike the first time, the flaming did not cease.  Ms. Anderson opened the Dishwasher door in an attempt to shut the Dishwasher off but it continued to run, spraying water everywhere.  The flaming and smoking also continued.  Ms. Anderson then cut power to the Dishwasher by unplugging it, at which point the Dishwasher finally stopped running and the flaming ceased.  The Dishwasher continued smoking, however, for approximately five minutes thereafter.

The next morning Ms. Anderson called Sears.  The representative said that Sears would send a technician to look at her Dishwasher but that Ms. Anderson would be responsible for all costs.  Ms. Anderson then called Whirlpool and Whirlpool agreed to send a technician to inspect her Dishwasher.   Ms. Anderson later received a telephone call from "Sears Repair" to set up an appointment time to inspect her Dishwasher.  On February 15, 2012, an A&E technician came to Ms. Anderson's house.  The technician said that the control board was "cooked so badly." Under the "technician Comments" section of service invoice, the technician wrote, "control panel and control brd fire, ordered panel and control."  On February 28, 2012, an A&E technician repaired Ms. Anderson's Dishwasher.

B. David Vale, of Milwaukie, Oregon, purchased his Kenmore Dishwasher, Model No. 665.16473300, Serial No. FP2802961, in 2005, from Sears in Portland, Oregon for approximately $800. Mr. Vale generally ran his Dishwasher right before going to sleep or heading out of the house.  Fortunately, on Saturday, August 25, 2012, Mr. Vale started his Dishwasher after dinner and then went downstairs while two of his friends remained upstairs. After approximately 30 to 40 minutes, Mr. Vale heard his friends screaming and bolted upstairs, where he saw a white haze in the air and smoke billowing out of the top of the Dishwasher.  There was a pungent smell of burning electrical wire.   Mr. Vale's friends had opened the Dishwasher to stop the cycle but it continued to run and the buttons were non-responsive so they

shut the machine door and one friend ran downstairs to flip the circuit breaker. Mr. Vale then grabbed the Dishwasher handle with his left hand and slightly opened the door. He tried to push a button on the control panel with his right hand but had to yank his hand away upon touching the burning hot panel. While the Dishwasher door was ajar, Mr. Vale noticed that it was melted at the top right corner above the control board and that smoke was streaming from a few places on the door with an amber glow to it. Mr. Vale did not want to risk throwing water on the Dishwasher in the event that it was an electrical fire, so he closed the Dishwasher door and opened the patio door and windows to help air out the smoke buildup. The fire and smoke ceased soon after the power to the Dishwasher was shut off but, as of August 29, 2012, the strong smell of smoke and burning electrical wire continues to permeate the main floor of Mr. Vale's house. Following the fire, Mr. Vale suffered from smoke irritation in his lungs.

The Monday after the incident, Mr. Vale called the appliance department at the Sears in Clackamas, Oregon to report the incident. The representative with whom he spoke said that this was a regular problem with Whirlpool-manufactured Dishwashers and that Sears was aware of it. The representative told Mr. Vale to call Sears Corporate. Mr. Vale did so but the agent with whom he spoke said that since Mr. Vale's Dishwasher was out of warranty, the only thing Sears could do was service it at Mr. Vale's expense. Mr. Vale argued that this was a factory design defect that had caused a fire. The agent told Mr. Vale that he would have to call Whirlpool since it manufactured the Dishwasher. Mr. Vale called Whirlpool that same day. Only about 15 seconds into his story, the Whirlpool agent told Mr. Vale that he needed to call Sears. Mr. Vale said that Sears told him to call Whirlpool and explained that this was a design failure issue. The agent stated that the Dishwasher was a Kenmore and not a "Whirlpool" so Whirlpool had nothing to do with his problem. Mr. Vale went back and forth with the agent trying to explain Whirlpool's involvement but the agent became increasingly irritated. Remaining calm, Mr. Vale told the agent that his problem was not with her but the defective Dishwashers made by Whirlpool. He told her to Google the issue and that

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

there were several news stories on the problem of which he was now a victim. Mr. Vale declared that he wanted Whirlpool to either fix his Dishwasher or give him credit for a new one. The agent again insisted that this was not Whirlpool's responsibility and that Mr. Vale needed to call Sears. Mr. Vale then said he may report his "Whirlpool-built fire trap" to a regulatory agency or a local news station. The agent became angry and told Mr. Vale that he could be sued for slandering Whirlpool if he took any such action. Mr. Vale reminded the agent again that this was a Whirlpool-manufactured machine but she was clearly not listening to what he had to say so he simply told her to report the incident, thanked her and terminated the phone call.

Mr. Vale later called and left a message for the vice president of Sears. In response, he received a phone call from the executive secretary at Sears Corporate. She denied knowing of any dishwasher fires but offered Mr. Vale a 30% discount on a new dishwasher purchased from Sears, which he accepted.

Mr. Vale also contacted KGW News consumer reported Ed Teachout about his Dishwasher incident, and Mr. Teachout did a news story on Mr. Vale's Dishwasher fire and the history of fires with the various Whirlpool-manufactured models. Shortly thereafter, Whirlpool called Mr. Vale and offered to refund the full purchase price. Mr. Vale accepted the offer and Whirlpool sent a technician to inspect the Dishwasher. The technician confirmed that the problem was the control board and wiring harness. The technician stated that the problem originated in the control board which was melted with a hole burned through the bottom. He further stated that he had seen similar control board failures on other Whirlpool-manufactured Dishwashers. Two weeks thereafter, a delivery service sent by Whirlpool took Mr. Vale's Dishwasher in exchange for $799.

C.    Christina Galeucia, of Hopkinton, Massachusetts, purchased her KitchenAid Dishwasher, Model No. KUDSO1DLSS5, Serial No. FR2301132, in approximately 2006 from Percy's Appliance in Worcester, Massachusetts. On February 12, 2012, Ms. Galeucia started her Dishwasher and was about to leave the house when she turned around and saw multiple flames, approximately three

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

inches in length, coming out of the right top corner of her Dishwasher. She then heard crackling sounds. The flames continued until she turned off the power switch to the Dishwasher, located on the wall in the kitchen. Ms. Galeucia contacted Whirlpool, which eventually sent a technician from A&E to inspect her Dishwasher. The technician said the control board "was fried" and that he report that to Whirlpool. Whirlpool later called Ms. Galeucia and said she could pick a Dishwasher from a list and that they would install and replace her Dishwasher for free so long as she agreed to surrender her old Dishwasher to Whirlpool. Ms. Galeucia accepted the offer.

D.    Ashley and Trevor Ogi, of Glenmont, Ohio, purchased a Whirlpool Dishwasher, Model No. DU1050XTPT3, Serial No. FS1303991, in approximately spring of 2005 from Lowe's. On March 10, 2012, Mrs. Ogi was working in the kitchen when she heard a strange sound. When she turned to look, she saw smoke coming out of the top of her Dishwasher. Mrs. Ogi opened the Dishwasher to see if something fell to the bottom and was on the heating element, but did not see anything wrong. She then shut the door and the cycle restarted. However, the sound then got worse and it started to smoke again so Mrs. Ogi opened the door a second time but this time flames, approximately three to four inches in length, shot out from the right side where the control panel was located. Ms. Ogi was unable to turn off the Dishwasher so she turned off the fuse in the basement in order to cut the power to it. Mrs. Ogi contacted Whirlpool and it sent a technician to inspect the Dishwasher. The technician verified that the control board needed to be replaced. Whirlpool offered $200 (or a $200 replacement Dishwasher) if the Ogi's gave Whirlpool their defective Dishwasher. The Ogi's accepted the offer bought a different brand dishwasher.

E.    Wayne Becker, of Salem, Missouri, purchased his Kenmore Dishwasher, Model No. 665.16509200, Serial No. FP0611853, in approximately 2006, from Sears. Generally, Mr. Becker and his wife would start their Dishwasher on Sunday and then leave for church. Fortunately, on Sunday, April 29, 2012, they did not attend church because approximately five minutes after Mrs. Becker started the Dishwasher, the Dishwasher made a "pop"

FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL
Case No. 8:11-cv-01733-FMO-MLG

sound and when Mrs. Becker checked on it, she saw smoke billowing out of the vent at the top of the Dishwasher door. She opened the Dishwasher door to stop the cycle but the Dishwasher continued to run and none of the buttons on the Dishwasher would cancel the cycle. Mr. Becker then ran down to the basement to turn off the circuit breaker to the Dishwasher. While he was running to the breaker, Mrs. Becker yelled that flames were now shooting out of the vent. The flaming fortunately ceased when Mr. Becker flipped the circuit breaker. Not wanting to risk any future harm from their flaming Dishwasher, Mr. and Mrs. Becker purchased a new Frigidaire dishwasher. Mr. Becker also filed a report with the CPSC, Report No. 20120429-5EA74-2147468028. Sears Holding Corps posted a comment to his CPSC report stating that it "takes product safety issues very seriously" and that it "investigates each CPCS database incident report." While Sears never contacted Mr. and Mrs. Becker, in approximately May of 2012, a representative from Whirlpool called and left a voicemail regarding their Dishwasher incident. Mr. Becker returned the phone call, leaving a voicemail in response. To date, Whirlpool has never returned Mr. Becker's call.

F.    Anthony and Doreen Wilms of Unadilla, New York, purchased a KitchenAid Dishwasher[9] from Lowe's in Binghamton, NY in approximately August/September 2005. On the night of January 30, 2006, Mrs. Wilms and their three children had gone to bed. Mr. Wilms fell asleep while watching television in the living room. The Dishwasher was not running. Indeed, it had not been used in several days. At approximately 11 pm the smoke detector went off. Mrs. Wilms came downstairs and saw that the kitchen was on fire. She quickly woke Mr. Wilms, and the two ran upstairs to wake up their children and get them out of the house. By the time they woke the children and started back to the stairs, the fire had spread throughout the lower level of the house, and heavy smoke and flames were moving up the stairwell. The family quickly exited from a bedroom window on the upper level onto the porch roof. Once on the roof, the Wilms

---

[9] The model number and serial number are unknown because they were rendered illegible after the Wilms's Dishwasher fire.

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

yelled to awaken neighbors to assist them down. As neighbors came running to assist, the Wilmses realized that one of their children was missing. Mr. Wilms reentered the house and found his five-and-half-year-old-son hiding behind his bed. As Mr. Wilms and his son moved toward the bedroom window to get out, the fire entered the bedroom and progressed toward the window. Mr. Wilms briefly tried to find the family dog "Kitty," to no avail. Mr. Wilms and his son then exited the window onto the porch roof to join the rest of the family. He then handed his wife and children down to the neighbors. Once his family was safely on the ground, Mr. Wilms jumped down approximately 12 to 13 feet, breaking his back as he landed. He also suffered from smoke inhalation. Amazingly, the Wilms's wedding pictures survived the fire, but they lost everything else, including their dog Kitty. Mr. Wilms called Whirlpool and the representative simply stated that there were no recalls on his Dishwasher series. Mr. Wilms retorted that there should be a recall because three different fire investigators all determined that the Dishwasher was the source of his fire, even though it was not running at the time.

G.   Carly Franz's Kenmore Dishwasher, Model No. 665.1677192, Serial No. FF0526269, came with the preexisting house in Villa Park, Illinois that she purchased in August of 2011. On November 12, 2011, Ms. Franz ran the Dishwasher for the fourth time since she moved into the house. After approximately 30 minutes, she left the house. When she returned 12 hours later, the entire inside of the house was destroyed with the exception of the basement, which had sustained odor and smoke damage. The smoke detector was going off when she arrived home, but it was half-melted. The Dishwasher was totally melted with only the frame and racks remaining. The cabinets surrounding the Dishwasher were severely charred and the paint and plaster on the ceiling above the Dishwasher area was falling down. The entire house had massive smoke and heat damage. The estimated loss was in excess of $130,000.

178.   Due to the defective design leading to combustion of their electronic control boards, Plaintiffs' and the putative classes' Dishwashers failed or are

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**