1   substantially certain to fail during their expected useful lives, within or outside

2   applicable warranty periods.

3   179.   As a result of the Defect, Plaintiffs and the putative class have

4   experienced or are substantially certain to experience failure of their Dishwashers,

5   did not get what they paid for, and have incurred actual damages.

6   **Whirlpool and Sears Were Aware of the Defect**

7   180.   On information and belief, Defendants had actual knowledge, before

8   they placed the Dishwashers in the stream of commerce, that they contained a Defect

9   that would cause the electrical system to fail spontaneously as the electronic control

10   board overheated, resulting in heat and/or smoke and/or fire damage to the

11   Dishwashers and surrounding area, and creating an unreasonable risk of extensive

12   property damage, severe personal injury and death.   Upon further information and

13   belief, Defendants knew this as a result of Whirlpool's standard design and testing of

14   the Dishwashers before their release on the market.   Alternatively, Defendants were

15   reckless or negligent in not knowing this, either because the requisite tests were not

16   conducted or they were not reviewed and properly considered before release of the

17   Dishwashers into the market.

18   181.   Moreover, upon information and belief, the Defendants knew or should

19   have known with testing that the heating element circuit, in particular where it meets

20   the control board, was not properly designed to carry its current load without causing

21   overheating leading to combustion.

22   182.   In fact, according to an online complaint, a Sears' representative

23   admitted that the Dishwashers needed to be recalled due to the control board

24   problem.[10]

25

26

---

[10] *See* http://www.consumeraffairs.com/homeowners/whirlpool_dishwashers.html (last visited Mar.

27   12, 2012).

28

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

183. Defendants did not implement a plan to address the Defect and instead manufactured, distributed and/or sold subsequent models of the Dishwasher containing the same Defect.

184. As alleged hereinabove, Whirlpool recalled 500,000 dishwashers in 1996 because the door switch wiring could overheat and set fire to nearby plastic and/or other components. However, despite that recall (which was limited to dishwashers manufactured during a limited time frame), **REDACTED.**

185. Defendant Whirlpool had actual knowledge of consumer complaints concerning the Dishwashers' defective and dangerous design as alleged herein by 2002, when Plaintiff Beal complained about his first fire. Plaintiffs have registered numerous complaints with Whirlpool and Sears concerning combusting Dishwashers since then, through 2012. *See* notifications described above and below.

**186.  REDACTED**

**187.  REDACTED**

188. The following posts on the consumer affairs Website, www.consumeraffairs.com, reflect injured consumers' communications with Whirlpool dating back to 2008, and with Sears dating back to 2009:

> A.  **Kevin of Newberg, Oregon, posted on July 27, 2010:** July 24th 2010 was going out of the house with the boys when my youngest said he smelled something burning. Going into the kitchen black smoke was spewing from the upper right side of the control panel vent. Turning the dishwasher off did not stop the burning smoke, only turning off the circuit breaker downstairs did. Thank God we caught this or we might have lost our house! Our dishwasher was purchased in 2004 - Superba model. I spoke with Michael at Kitchen Aide [*sic*] - he said there was a difference between smoke and fire !!?? Offered to send someone out for free to see how much it would cost to fix it OR offered us a voucher for 20% off any new Kitchen Aide [*sic*], Maytag, Jen Air [*sic*] or Whirlpool dishwasher. All I know is we are never purchasing any appliance that has to do with any of these companies - When you spend over 1000 for a dishwasher you expect it to last at least 10 years! I

asked Michael if there have been any recalls on Kitchen Aide [*sic*] and he said no. - I did ask him how many houses have to burn down before they do a recall? We also had the door cables fail and the door latch - replaced 8-24-09, the repair man came back to replace the door latch 9-2-09 which failed AGAIN, then came back 9-08-09 to replace a Bad Thermal Fuse, and told us the fuse usually goes out shortly after the latch is replaced. Hunk of junk for sure!! Beware!

B.   **Tara of Delta, British Columbia, posted on October 24, 2009:** We recently bought a new home that came equip [*sic*] with beautiful new stainless steel appliances all by Kitchenaid [*sic*]. We were very happy with the quality and performance of our appliances until yesterday when the faulty wiring in our dishwasher almost burnt our house down. I turned the dishwasher on before I left to take my children to school, when I arrived home ¾ of an hour later the house was filled with the smell of an electrical fire; it was coming from the dishwasher. The dishwasher was still running and would not shut off; I had to turn it off from the breaker. Needless to say I was very frightened. I would have normally been at work at this time but had chosen to work from home that day. Thank goodness! We alternatively run our dishwasher at night before we go to bed; I thank God that this was not the case as I can only imagine the potential tragedy that may have occurred. I am very angry that the quality of this product has put my family in jeopardy. This is a very expensive dishwasher, 1399.99 not including the tax. I would assume that paying more for an appliance would ensure that it would perform safely and last longer than five years. A call to Kitchen Aid [*sic*] customer service to report the problem yielded little satisfaction as I was basically told "too bad". We have been informed that the repairs will not be covered under a warranty that expired 3 months ago. We had it looked at independently of the place of purchase and have been told that, in fact we will likely need to by [*sic*] a new one, as the damage is so great to the electrical system that the cost to repair it would be excessive, and they could not be sure it would not happen again. Normally we would have looked at buying a Kitchenaid [*sic*] or Whirlpool appliance but after this experience the poor quality of the product, its inability to last more than a few years and its dubious safety will have me

seriously considering other brands. I hope that this is an isolated incident with this product and that it does not happen to another family who may not have the lucky ending that we did.

C.  **Chris of Naples Florida, posted on January 2, 2008:**  I currently have a Whirlpool dishwasher, model GU2500XYPQ1. It's one of their top of the line models and is less than two years old. It began to have smoke pour from it with the stench of melting plastic on Christmas day. Thank goodness it wasn't running at night while my family was asleep. I had to run out to the garage to the circuit breaker and trip it myself. Who knows what would have happened if I had not been there to prevent this electrical malfunction from spreading? The A&E technician arrived and took apart the door assembly and showed me the damage. The electrical board, the wire harness, and the wiring were black and disfigured. The plastic safety coating on the wiring had completely melted off in the area.  I immediately called Whirlpool to have the technician explain these scary results so that I would be able to get a voucher to replace this defective unit. To my surprise, Whirlpool would only give authorization to replace the damaged components despite not knowing the cause of the electrical meltdown. I have been shuffled from one person and department to the next and cannot get them to replace the product that nearly caused my house to catch fire. When I asked one of the representatives (Hamda, extension 6424) if she could assure me that replacing the damaged parts would prevent this situation from occurring again, she replied that we would have to wait and see if it did! I would think that Whirlpool would want to collect the unit to test it rather than have my family become guinea pigs. This unit already had a fire-related recall service performed on its heating element. While performing an internet research on my model to find out if anyone else experienced a similar electrical meltdown to mine, I discovered another yet-to-be-completed (or even the courtesy of Whirlpool notifying me) fire-related recall on this model in relation to its motor wiring. Jim Kuhn (extension 6485) assures me that Whirlpools [*sic*] failsafe standards make it impossible for my dishwasher's electrical meltdown to have resulted in any damage other than to the dishwasher itself. My family is more important to me to take another chance on taking Jim at his word. I would sooner place

trust in the honesty of a guy selling refurbished appliances out of the back of his truck at a flea-market before placing my trust in another Whirlpool product. I'll never run an appliance while asleep. I no longer have the trust. I'm out several hundred dollars since I will have to replace my Top-of-the-line (moneywise) Whirlpool dishwasher. It's less than two years old, nearly caught my house on fire, and could have hurt or even caused death to my family.

D.   **Pam of San Antonio, Texas, posted on October 16, 2008:** On October 14, 2008 at 1:15 AM my Kitchenaid [*sic*] Dishwasher almost burnt down my house and killed everyone and everything in it. Fortunately, I was still awake and standing at my sink when I heard a loud pop, and then black, smelly, toxic smoke began to pour out of the door of the dishwasher near the control panel. I tried to turn it off, and it would not shut off--it just kept smoking. I called the Fire Department and they responded quickly. You see, not only was my house, my life and my nephews [*sic*] life in danger, but I have endangered Parrots that can die from toxic fumes. The cost of my parrots range from 1,000 to 10,000 each. My nephew and I worked quickly to open all doors and move as many parrots as quickly as possible. The respiratory system of parrots are sensitive to fumes, smoke, chemicals, etc---they can die immediately or their sinus cavities can become damaged and have a bacterial infection set in weeks later. This is very hard to treat, and can be fatal.  When the fire department arrived, they could not stop the dishwasher--they turned off the breaker, disconnected the dishwasher and removed it outside while it was still smoking. The stench was horrible-I am so worried about my birds. The fireman said that if I was asleep, it would have burst out in flames & the damage would have been unthinkable. I have been airing out the house, and I can't get rid of that toxic smell. All my parrots are still alive, but I will not know for weeks whether or not their health has been compromised by this event. I have been in shock since this event-almost loosing [*sic*] everything, and I have no idea of the severity of the health of my parrots. I feel completely violated by Kitchenaid [*sic*]. This was their top of the line dishwasher that was stainless steel on the inside and had a special sanitizing rinse (I bought this for my birds).  I called Kitchenaid [*sic*] this past July concerned that my

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

Sanitized light was blinking instead of staying on. I paid for a service call. The factory service company told me that their [*sic.*] was nothing wrong. This is the area of the control panel that started burning. I contacted the Product Safety division of Kitchenaid [*sic*], and they sent out their service company to check out why it started burning. The entire control panel(the brain) and much more burnt.   According to the technicians notes: part failure- main board, touch pad, fuse, sub panel, harness/wire assembly, sub control panel, sub fuse kit, and pump and motor---- what is left that didn't have a product failure!!!  This is well documented by the factory service technician as well as the fire department. The technician told me that this was one in a million--that he has seen dryers catch fire, but never a dishwasher. After reading this web site, I see that I am not alone, and that the consumer is in danger.

E.   **Susan of Dearborn, Michigan, posted on March 10, 2009:**  I have had to have service on my KitchenAid Dishwasher three times, and it is only 4 years old! The last time resulted in the dishwasher catching on fire! And KitchenAid will not replace the appliance, only continue to repair it. My perusal of the Consumer Affairs website indicates this problem with many other KitchenAid dishwasher owners. This appears to be a safety issue, and KitchenAid/Whirlpool should be refunding each of us.

F.   **Michelle of Concord, California, posted on January 08, 2008:**  I always clean the dishes before going to bed. I put everything in my KitchenAide [*sic*] Dishwasher and turn it on. The dishwasher has had a few problems in the past, for which I called Sears, paid their ridiculous service fees, and got it fixed. Well, Sunday I filled it up and turned it on and went to bed as I've done a thousand times. My husband was still watching TV. Within 10 minutes he smelled something, looked over at the dishwasher, and there were flames coming out of the top of the door on the dishwasher. The control panel/wiring in the door was on FIRE! Thank God, he stayed up, or he and I and our two boys would have been sleeping while our house went up in flames! DO NOT EVER TURN YOUR DISHWASHER ON AND LEAVE OR GO TO BED. I would have NEVER thought of faulty wiring in the dishwasher! We called KitchenAide [*sic*], and the lady was rude. So my

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

husband said, "Fine, we'll call a lawyer, we'll call the news and whatever else we can do to expose this problem! The lady changed her tune and had someone out the next day. We are awaiting their response. What losers--to have this problem and not inform people. How many people died due to fires from dishwashers?

G.   **Shon of Fort Worth, Texas, posted on July 5, 2010:**  We have been in our house since 2006.. [sic] We have had problems with our Whirlpool Quite Partner III since it was new (2006) [sic] We have had repairs 3 different times for it stopping mid-cycle with a blown thermal fuse. The first repair found a burn spot on the circuit board and that was replaced and the dishwasher worked for 5-6 months.. [sic] The same thing occured..stopped mid-cycle with blown thermal fuse..repair man said he had to order a wiring kit that was the problem (per whirlpool [sic])..he replaced it 129..6 months later (now)it has done it again..when this began I found numerous people online with the same problem.. [sic] Whirlpools [sic] answer is we will give you 1/2 off of parts.. [sic] Are you kidding me? you [sic] want me to spend more money on a widely chronic problem that has cost me almost 300 already? Now im [sic] stuck with trying to find a qaulity [sic] non-whirlpool [sic] dishwaher [sic]... [sic] Whirlpool really needs to stand by their products better, ecspecially [sic] when 3 attempts to fix the same problem have not been successful.

H.   **Gaylene of Bloomington Minnesota, posted on December, 17, 2008:**   KichenAid [sic] dishwasher running saddening [sic] popped nosies [sic] and smelled like burning plastic. Dishwasher stopped, smoke and horible [sic] burning smell continued from the inside panel of door. Burning coninued [sic] and my husband turned off the power to the dishwasher. Centerpointe Energy service repair came out to look at it today and said it was a system failure, fuse safety system malfunctioned ENTIRE wiring system is fried and the dishwaher [sic] is unrepairable [sic] ---TOO unsafe. If we would not have been home a fire would of occurred. I have been informed that they KitchenAid [sic] only have to replace within the forst [sic] year.

I.   **Brian of Vancouver, Washington, posted on December 15, 2009:** We have a KitchenAid KUDR01TJ dishwasher. Last week a burning smell was noticed by my wife and I assumed it was something on the heating element. The next use the smell was still there, then the dishwasher made a horrible smell and we stopped the unit. It wouldn't power up after that. I opened it up and discovered the control board was charred and the wiring harness connector was melted... This could have caused a serious fire if we weren't home at the time. Called KitchenAid and they said it was out of warranty. I'm considering contacting the the CPSC to report this a hazard for recall.

J.   **Dennis of Santa Ana, CA, posted on March 19, 2009:** My dishwasher started smoking and probably would have caught fire if I were not there to unplug it. Since the dishwasher is not under warranty I opened the diswasher [*sic*] and the circuit board looks dark black on one side with a burn hole in a capacitor. It [*sic*] ovious [*sic*] this dishwasher board was on fire. Sears/Kenmore repair indicated they would not come out to even investigate the issue without a trip charge. Model 665.13722k600 serial FT4403486 [*sic*] Purchased Feb 2007. This is a serious fire hazard and because of searskenmore [*sic*] unwillingness to investigate the issue may cause others who are not fortunate at being home, to lose there [*sic*] home or life. Burnt circuit board with black smoke. Looks like a capacitor exploded almost starting a fire. The inside of the dishwasher where the electronic components are kept, showed sign of burn marks. Smokey electrical smell throughout the house.

## Defendants Whirlpool's and Sears' Material Omissions

189.   Defendants continuously failed to disclose the existence of this dangerous Defect to public consumers, despite, upon information and belief: Whirlpool's pre-testing of the dishwashers; further testing conducted in response to evidence of the Defect; customer complaints; replacement parts sales data; aggregate data from Dishwasher dealers, and other internal sources.

190.   Defendants never informed consumers of the existence of this Defect at the time of sale or thereafter, nor did Defendants disclose that warranty or the

58

1   recommended post-warranty repairs would not cure or rectify the Defect and would,
2   at best, only delay its impact and postpone failure in the Dishwashers.  Defendants
3   never issued a recall of the Dishwashers despite the serious fire hazard, and never
4   offered to replace the defective Dishwashers with Defect-free components or a
5   Defect-free replacement.

6       191.  Instead, in their marketing and advertising, Defendants uniformly and
7   falsely represented and continue to misrepresent that the Dishwashers are free from
8   defects and that they will perform their essential function for their expected useful
9   lives.

10      192.  Defendants knew that reasonable consumers were unaware of the latent
11  dangerous Defect and that they reasonably expected the Dishwashers to clean dishes
12  effectively without putting property and lives at risk.  Defendants also knew that
13  reasonable consumers expected Defendants to disclose any defects that would
14  prevent the Dishwashers from performing their expected function throughout their
15  useful lives or that would seriously threaten consumers' personal welfare, and that
16  such disclosure would affect consumers' decisions whether to purchase the
17  Dishwashers.

18      193.  As a result of Defendants' uniform misrepresentations and omissions in
19  their marketing and advertising, reasonable consumers believed that the Dishwashers
20  would operate without defects to clean dishware.  And, based on these material
21  misrepresentations and omissions, reasonable consumers purchased Whirlpool-,
22  KitchenAid- and Kenmore-branded Dishwashers.

23      194.  Defendants have wrongfully imposed on Plaintiffs and the other
24  members of the Class the burden, expense and difficulties involved in repairing and
25  replacing the Dishwashers.

26              **CLASS ACTION ALLEGATIONS**

27

28

59

195. Plaintiffs bring this action for themselves and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3). Plaintiffs assert separate State Classes for each of the following states: California; George; Illinois; Maryland; Massachusetts; Missouri; New Jersey; New York; Ohio; Utah and Virginia. In addition, Plaintiffs Meneghetti, O'Donnell, Milicia, Bathon, Himler, Mederlet, Walker and Paolini assert separate State Express Warranty Subclasses for their respective states - Illinois, Georgia, New Jersey, Ohio, California, Virginia and New York.

196. Each State Class, represented respectively by each Plaintiff who was a resident of such state when their Dishwasher incident occurred, consists of all persons who purchased or otherwise acquired a Whirlpool- KitchenAid- or Kenmore-branded Dishwasher in such state primarily for personal, family or household purposes, and not for resale.

197. Within the State Classes for California, Georgia, Illinois, New Jersey, New York, Ohio and Virginia there is an Express Warranty Subclass, represented respectively by Plaintiffs Himler, O'Donnell, Meneghetti, Milicia, Paolini, Bathon, Walker and Mederlet, consisting of all members of each such State Class who and are still within the Dishwasher's express warranty period, and/or alternatively, experienced a malfunction in the Dishwasher due to the defect alleged herein and notified the warrantor within the warranty period and the warrantor denied warranty coverage.

198. Excluded from the classes and subclasses described above are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Whirlpool, Sears and any entity in which Whirlpool or Sears has a controlling interest or which has a controlling interest in Whirlpool or Sears; (c) the officers, directors or employees of Whirlpool or Sears; (d) Whirlpool's or Sears' legal

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

1  representatives, assigns and successors; and (e) all persons who properly execute and

2  file a timely request for exclusion from the Class(es).

3      199.  The members of each Class and Subclass described above are so

4  numerous that joinder of all members is impracticable. *See* FED. R. CIV. P. 23(a)(1).

5  While the exact number of State Class members and Subclass members is presently

6  unknown to Plaintiffs, it is believed that the State Classes and the Subclasses are

7  composed of thousands of people geographically dispersed throughout their

8  respective states.  The members of each Class and Subclass are readily identifiable

9  from the Class definition thereof and a significant number of Class and Subclass

10 members can be identified from information and records in the possession of

11 Whirlpool and Sears.

12     200.  There are questions of law and fact common to the State Classes. *See*

13 FED. R. CIV. P. 23(a)(2).  These common questions include, but are not limited to:

14        A.    Whether Defendants' Dishwashers are materially defective due

15              to a design flaw incorporated in the manufacture of the

16              machines;

17        B.    Whether Defendants knew or should have known that the

18              Dishwashers were and are materially defective;

19        C.    Whether Defendants' Dishwashers are not of merchantable

20              quality;

21        D.    Whether Defendants' Dishwashers are likely to fail before the

22              end of their reasonable expected life;

23        E.    Whether the existence of the design defect incorporated into the

24              manufacture of Defendants' Dishwashers is a material fact

25              reasonable purchasers would have considered in deciding

26              whether to purchase a dishwasher;

27

28

F.   Whether the design defect in Defendants' Dishwashers resulted from Whirlpool's and/or Sears' negligence;

G.   Whether Whirlpool and/or Sears knew or should have known of the defect prior to distributing the subject Dishwashers to Plaintiffs and the State Classes;

H.   Whether Whirlpool and/or Sears omitted, concealed from and/or failed to disclose in their communications and disclosures to Plaintiffs and the State Classes material information regarding the defect inherent in the Dishwashers;

I.   Whether Whirlpool and/or Sears intended that Plaintiffs and the State Classes rely on Whirlpool's and/or Sears' acts of concealment and omissions when purchasing the subject Dishwashers;

J.   Whether the design defect incorporated into the manufacture of the Dishwashers caused spontaneous overheating, smoking and fire, which caused damage to the Dishwashers and caused or could cause damage to other property, including floors, walls and other accompanying areas;

K.   Whether Whirlpool and/or Sears breached an implied warranty of merchantability relating to the Dishwashers;

L.   Whether Whirlpool and/or Sears misrepresented the characteristics, qualities and capabilities of the Dishwashers;

M.   Whether Whirlpool and/or Sears were unjustly enriched by receiving monies in exchange for the defective Dishwashers;

N.   Whether Whirlpool and/or Sears should be ordered to disgorge all or part of the ill-gotten profits they received from the sale of the subject defective Dishwashers;

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

O.  Whether Whirlpool and/or Sears acted willfully and wantonly in disregard of the consequences to consumers;

P.  Whether Plaintiffs and the members of the Class are entitled to damages, including compensatory or statutory damages, and the amount of such damages;

Q.  Whether Plaintiffs and the members of the State Classes are entitled to replacement of their defective Dishwashers with non-defective dishwashers or with non-defective parts that will render their Dishwashers operable and safe;

R.  Whether Whirlpool and/or Sears engaged in unfair, unconscionable or deceptive trade practices by selling and/or marketing the Dishwashers at issue;

S.  Whether Plaintiffs and the members of the State Classes are entitled to statutory and/or equitable relief, as applicable, including an injunction enjoining Defendants from engaging in the wrongful and unlawful conduct alleged herein and requiring that Defendants engage in a corrective notice and/or recall campaign.

T.  Whether Plaintiffs and the members of the State Classes are entitled to an award of punitive or exemplary damages; and

U.  Whether Plaintiffs and the members of the State Classes are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

201.  In addition to the above, the questions common to the State Express Warranty Subclasses include, but are not limited to, whether Whirlpool breached express warranties relating to the Dishwashers by failing to repair and correct the defect in the Dishwasher.

202. Plaintiffs' claims are typical of the claims of the members of the State Classes , and the claims of Plaintiffs Himler, O'Donnell, Milicia, Bathon, Walker, Paolini, Mederlet and Meneghetti are typical of the claims of the members of the State Express Warranty Subclasses, as all members of the State Classes are similarly affected by Defendants' actionable conduct. Plaintiffs and all members of the State Classes own(ed) Whirlpool-, KitchenAid- or Kenmore-branded Dishwashers manufactured by Whirlpool with a defect that makes them inherently dangerous and causes them to fail within their expected useful lives, both within and outside of applicable warranty periods. All of the claims of Plaintiffs and the State Classes arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and/or selling the defective Dishwashers, Defendants' conduct in concealing the defect in the Dishwashers, and Plaintiffs' and the State Class members' purchase of the Dishwashers. *See* FED. R. CIV. P. 23(a)(3).

203. Plaintiffs will fairly and adequately represent and protect the interests of the members of each class and subclass. *See* FED. R. CIV. P. 23(a)(4). Plaintiffs are knowledgeable about their claims. There are no conflicts of interest between or among the Plaintiffs, either *inter se* or with respect to the interests of the class members. Plaintiffs, like the class members, have been injured as a result of the acts and omissions of Defendants. Additionally, Plaintiffs have retained counsel experienced and competent in class actions and complex consumer litigation and who are well-suited to represent the interests of the each class and subclass.

204. Class certification is appropriate under FED. R. CIV. P. 23(b)(2) because Defendants have acted in disregard of the interests of the members of the classes and subclasses despite notice and knowledge of this dangerous defect, and can be expected to continue to do so, and continue to commit the violations alleged -- and the members of the classes and subclasses and the general public will continue to be misled and put at risk of personal and physical harm by the potential of their

1  Dishwashers catching on fire – in the absence of injunctive and corresponding

2  declaratory relief.

3      205.  Class certification is also appropriate under FED. R. CIV. P. 23(b)(3).

4  The questions of law or fact common to the members of the  State Classes and State

5  Express Warranty Subclasses, described above, predominate over any questions

6  affecting only individual members as is evidenced by the fact that if Plaintiffs and

7  the class members were to bring individual actions, they would each be required to

8  prove the same latent defect and wrongdoing by Defendants in order to establish

9  liability.  Additionally, a class action is the superior method of adjudication for this

10  litigation because absent class certification, the Court may be faced with litigating

11  potentially hundreds, and possibly thousands, of separate lawsuits arising out of the

12  same set of facts.  By proceeding in a class action, the resolution of common issues

13  alleged in one action will result in more efficient use of judicial resources and bring

14  about a single outcome that is uniform and binding on all class members.

15      206.  In addition, a class action will allow the class and subclass members,

16  who might otherwise be prevented from pursuing their claims due to the expense of

17  litigation, to vindicate their rights.  Absent a class action, Defendants' wrongs would

18  likely go without redress, and they could continue with impunity to place the

19  dangerously defective Dishwashers in the market.

20      207.  Due to the individual amount at issue as to each class and subclass

21  member, as well as the cost and difficulty in litigating each case separately, the class

22  and subclass members have insufficient interest in individually controlling the

23  prosecution of separate actions.  See FED. R. CIV. P. 23(b)(3)(A).

24      208.  The classes and subclasses have not previously litigated the claims

25  asserted in this complaint.  See FED. R. CIV. P. 23(b)(3)(B).

26      209.  This Court is an appropriate forum for the litigation of the class and

27  subclass claims.

28

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

210. Plaintiffs do not anticipate any insurmountable difficulty in the management of this litigation. *See* FED. R. CIV. P. 23(b)(3)(D).

211. Defendants have acted or refused to act on grounds generally applicable to the classes and subclasses and, as a result, final injunctive relief or corresponding declaratory relief with regard to the members of the classes as a whole is appropriate. *See* FED. R. CIV. P. 23(b)(2).

## TOLLING OF AND ESTOPPEL AS TO STATUTES OF LIMITATIONS

212. <u>Discovery Rule:</u>  The claims alleged herein accrued upon discovery of the latently defective nature of the Dishwashers.  Because the defect alleged herein is latent and because Defendants took steps to misrepresent actively and conceal the true character, nature and quality of the Dishwashers, among other reasons, Plaintiffs and the other members of the State Classes did not discover and could not have discovered the problems and defect alleged herein through reasonable and diligent investigation until after they experienced problems with their electronic control boards.

213. <u>Fraudulent Concealment Tolling:</u>  Any applicable statutes of limitations have been tolled by Defendants' knowing and active misrepresentation, concealment and denial of the facts as alleged herein, which concealment is ongoing.  Defendants have denied any knowledge of the overheating and/or smoking and/or fire-related problems with their Dishwashers, and have kept Plaintiffs and the members of the State Classes ignorant of vital information essential to pursue these claims, without any fault or lack of diligence on their part.  Plaintiffs could not reasonably have discovered the latent defects in the Dishwashers.  As a result of Defendants' active concealment of the defect and/or failure to inform Plaintiffs of the defect, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

214. <u>Estoppel:</u>  Alternatively, the facts alleged above give rise to an estoppel.  Defendants have continually denied their knowledge of the Dishwasher defect

alleged herein, and have actively concealed the defective nature of their Dishwashers.  Defendants were and are under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of the Dishwashers, particularly that they posed a serious fire hazard.  At all relevant times, and continuing to this day, Defendants knowingly, affirmatively and actively misrepresented and concealed the true character, quality, and nature of the Dishwashers.  Given Defendants' failure to disclose this non-public information about the defective nature of their Dishwashers – information over which they had exclusive control – and because Plaintiffs could not reasonably have known that the Dishwashers were thereby defective, Plaintiffs reasonably relied upon Defendants' knowing, affirmative, and/or active and ongoing concealment.  Based on the foregoing, Defendants are estopped to assert any statutes of limitations in defense against this action.

215.  Additionally, Defendants are estopped to raise any defense of laches due to their own manifestly unclean hands as alleged hereinabove.

## COUNTS

### Count I
**Violations Of The Magnuson-Moss Warranty Act,
15 U.S.C. §§ 2301, *et seq.*, For Breach Of Express Warranty
(Plaintiffs Milicia, O'Donnell, Bathon, Walker, Meneghetti and Paolini,
Individually And On Behalf Of Those Members Of Their Respective State
Express Warranty Subclasses With Whirlpool Warranties, Against Whirlpool,
And Plaintiffs Himler And Mederlet, Individually And On Behalf Of Those
Members Of Their Respective State Express Warranty Subclasses With Sears
Warranties, Against Sears)**

216.  The allegations in Paragraphs 1-215 above and Paragraphs 248-274 below are incorporated by reference as though fully stated herein.

217.  Plaintiffs Himler, O'Donnell, Milicia, Bathon, Walker, Mederlet Meneghetti and Paolini, and members of the State Express Warranty Subclasses, are "consumers" as defined in the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301(3).

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL
Case No. 8:11-cv-01733-FMO-MLG**

218.  Defendants Whirlpool and Sears are "suppliers" and "warrantors" as defined in the MMWA, 15 U.S.C. §§ 2301(4) and (5).

219.  The Dishwashers are "consumer products" as defined in the MMWA, 15 U.S.C. § 2301(1).

220.  The express warranties pertaining to the Dishwashers are "written warranties" as defined in the MMWA, 15 U.S.C. § 2301(6).

221.  Defendants' failure to tender the Dishwashers free of defects, and Defendants' other actions described above, breached written and implied warranties covering the Dishwashers, in violation of the MMWA which allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under . . . a written warranty. . . [to] bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1).

222.  As a direct and proximate result of the acts and omissions of Whirlpool and Sears as set forth above, Plaintiffs Himler, O'Donnell, Milicia, Bathon, Walker, Mederlet Meneghetti and Paolini and the State Express Warranty Subclasses have been damaged.

223.  Plaintiffs' counsel put Defendants on notice that they were in violation of the MMWA and that Plaintiffs were acting on behalf of a class of aggrieved persons. Attached hereto as **Exhibits A and B** are true and correct copies of demand letters pursuant to the MMWA issued to Defendants on October 31, 2011, by Plaintiffs' counsel on behalf of Plaintiffs Chambers, Van Der Veer, O'Donnell, Cicchelli, Himler, Milicia, and LeBlanc, and all others similarly situated (**Exhibit A**) and on behalf of Plaintiffs Cicchelli, Himler and LeBlanc, and all others similarly situated (**Exhibit B**).  As Defendants have failed to cure, and as more than thirty (30) days have elapsed since their receipt of these letters, pursuant to the MMWA, 15 U.S.C. § 2301(d)(2), Plaintiffs Himler, O'Donnell, Milicia, Bathon, Walker, Mederlet, Meneghetti and Paolini, and the State Express Warranty Subclasses are

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

entitled to recover as part of the judgment, costs and expenses of the suit, including attorneys' fees based on actual time expended.

## Count II

**Violations Of The Magnuson-Moss Warranty Act,
15 U.S.C. §§ 2301, *et seq.*, For Breach Of Implied Warranties
(All Plaintiffs, Individually And On Behalf Of Their Respective State Classes,
Excepting Those Members Of The Ohio And New Jersey Classes Who Incurred
Property Damages Beyond Their Dishwashers, Against Whirlpool, And
Plaintiffs Cicchelli, Himler, LeBlanc, Bliss, Mederlet, Beal And Koswener,
Individually And On Behalf Of Those Members Of Their Respective State
Classes Who Purchased Their Dishwashers From Sears, Excepting Those
Members Of The New Jersey Class Who Incurred Property Damages Beyond
Their Dishwashers , Against Sears)**

224.   The allegations in Paragraphs 1-215 above, and Paragraphs 232-247 and 266-274 below, are incorporated by reference as though fully stated herein.

225.   Plaintiffs and the State Classes are "consumers" as defined in the MMWA, 15 U.S.C. § 2301(3).

226.   Defendants Whirlpool and Sears are "suppliers" and "warrantors" as defined in the MMWA, 15 U.S.C. §§ 2301(4) and (5).

227.   The Dishwashers are "consumer products" as defined in the MMWA, 15 U.S.C. § 2301(1).

228.   The implied warranties pertaining to the Dishwashers are "implied warranties" as defined in the MMWA, 15 U.S.C. § 2301(7).

229.   Defendants' failure to tender the Dishwashers free of defects, and Defendants' other actions described above, breached implied warranties covering the Dishwashers in violation of the MMWA, which allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under . . . a[n] . . .implied warranty. . . [to] bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1).

230. As a direct and proximate result of the acts and omissions of Whirlpool and Sears as set forth above, Plaintiffs and the State Classes have been damaged.

231. Plaintiffs' counsel put Defendants on notice that they were in violation of the MMWA and that Plaintiffs were acting on behalf of a class of aggrieved persons. Attached hereto as **Exhibits A and B** are true and correct copies of demand letters pursuant to the MMWA issued to Defendants on October 31, 2011, by Plaintiffs' counsel on behalf of Plaintiffs Chambers, Van Der Veer, O'Donnell, Cicchelli, Himler, Milicia, and LeBlanc and all others similarly situated (**Exhibit A**) and on behalf of Plaintiffs Cicchelli, Himler and LeBlanc, and all others similarly situated (**Exhibit B**). As Defendants have failed to cure, and as more than thirty (30) days has expired since their receipt of these letters, pursuant to the MMWA, 15 U.S.C. § 2301(d)(2), Plaintiffs and the State Classes are entitled to recover as part of the judgment costs and expenses of the suit, including attorneys' fees based on actual time expended.

## Count III

**Breach Of Implied Warranty Of Merchantability**
**(All Plaintiffs, Individually And On Behalf Of Their Respective State Classes, Excepting Those Members Of The Ohio And New Jersey Classes Who Incurred Property Damages Beyond Their Dishwashers, Against Whirlpool, And Plaintiffs Cicchelli, Himler, LeBlanc, Bliss, Mederlet, Beal And Koswener, Individually And On Behalf Of Those Members Of Their Respective State Classes Who Purchased Their Dishwashers From Sears, Excepting Those Members Of The New Jersey Class Who Incurred Property Damages Beyond Their Dishwashers, Against Sears)**

232. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

233. The Dishwashers Defendants manufactured or sold that were acquired by Plaintiffs and the State Classes were defectively designed and manufactured and contained latent defects at the time of manufacture and sale.

70

requires that a manufacturer's or seller's product be reasonably fit for the purposes for which such products are used, and that the product be acceptable in trade for the product description. This implied warranty of merchantability is part of the basis of the bargain between Defendants, on the one hand, and Plaintiffs and the State Classes, on the other.

235. The Dishwashers Defendants manufactured or sold that were acquired by Plaintiffs and the State Classes were not reasonably fit for the purpose of cleaning dishes, and were not merchantable, in breach of the implied warranty of merchantability.

236. Within a reasonable amount of time after the defect manifested itself to Plaintiffs and the State Classes, Defendants received notice of their breach of the implied warranty of merchantability. Additionally, by virtue of their knowledge of both the Defect and the experience of Dishwasher purchasers who complained of the Defect, Defendants received notice of the breach of implied warranty.

237. Any implied warranty limitation is unenforceable because it is unconscionable - a substantial disparity in the parties' relative bargaining power existed such that Plaintiffs and Class members were unable to derive a substantial benefit from their Dishwasher warranties. A disparity existed because Defendants were aware that the Dishwashers were inherently defective; Plaintiffs and Class members had no notice or ability to detect the problem; and Defendants knew that Plaintiffs and Class members would bear the cost of correcting the Defect. This disparity was amplified by Defendants' knowledge and concealment of the fact that the Defect could cause catastrophic failures and, thus, is likely to substantially limit the Dishwashers' intended use.

238. Furthermore, any warranty limitation is unenforceable because it is inconspicuous — any relevant warranty disclaimers use text that is the same size and color as the text of the limited warranty.

239. The element of privity, if found to be applicable, exists because, *inter alia*: (i) Defendants had direct written communications with Plaintiffs and the State Classes regarding the Dishwashers in the form of standardized warranty forms, registration cards and other similar documents; (ii) Defendants had direct communications with Plaintiffs and the State Classes with regard to the Dishwashers through television, newspaper, Internet, and magazine advertisements; (iii) the dealers who sold the Dishwashers to and communicated with Plaintiffs and the State Classes are Defendants' agents; (iv) Defendants entered into contracts with Plaintiffs and the State Classes through theirwarranties; and/or (v) Plaintiffs and the State Classes are third-party beneficiaries of warranties that ran from Defendants to their dealer-agents.

240. As a result of Whirlpool's and Sears' breach of their implied warranties of merchantability, Plaintiffs and the State Classes suffered damages that were directly and proximately caused by the unreasonably dangerous Dishwashers.

### Count IV

### Tortious Breach Of Implied Warranty
**(Plaintiff Bathon, Individually And On Behalf Of The Ohio State Class Pursuant To State Law, Against Whirlpool)**

241. The allegations of Paragraphs 1-215 are incorporated by reference as though fully stated herein.

242. Defendants impliedly warranted that their Dishwashers were of good and merchantable quality and fit and safe for their ordinary intended use.

243. The Dishwashers Defendants manufactured or sold that were acquired by Plaintiff Bathon and the Ohio State Class were defectively designed and manufactured and contained latent defects at the time of manufacture and sale.

72

manufacturer and seller of a product to protect a person using that product in the ordinary way in which it was intended to be used.

245. Notwithstanding the aforementioned duty, at the time of sale of the product by Defendants, the Dishwashers were defective and not merchantable.

246. The design defect renders Defendants' Dishwashers unfit for their intended purpose and not of merchantable quality, and breached Defendants' duty to Plaintiff Bathon and the Ohio State Class.

247. As a result of Defendants' tortious breach of implied warranty, Plaintiff Bathon and the Ohio State Class have suffered damages that were directly and proximately caused by the unreasonably dangerous and defective Dishwashers.

## Count V
### Breach Of Express Warranty
**(Plaintiffs Milicia, O'Donnell, Bathon, Walker, Meneghetti and Paolini, Individually And On Behalf Of Those Members Of Their Respective State Express Warranty Subclasses With Whirlpool Warranties, Against Whirlpool, And Plaintiffs Himler And Mederlet, Individually And On Behalf Of Those Members Of Their Respective State Express Warranty Subclasses With Sears Warranties, Against Sears)**

248. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

249. Defendants Whirlpool and Sears designed, manufactured, produced, tested, inspected, marketed, and/or sold the subject Dishwashers.

250. Whirlpool expressly warranted, as to Plaintiff Meneghetti's Dishwasher, Plaintiffs Milicia's first Dishwasher, Plaintiff Bathon's first and second Dishwashers, and Plaintiff Paolini's second Dishwasher, that in the second through fifth years from the date of purchase it would provide, free of charge, factory-specified parts for the electronic control components if defective in materials or workmanship. The warranties further stated that in the first year from the date of

1   purchase, Whirlpool would pay for factory-specified parts and repair labor to correct
2   defects in materials or workmanship.

3       251. On information and belief, Whirlpool expressly warranted, as to
4   Plaintiff O'Donnell's Dishwasher, Plaintiff Walker's second Dishwasher and
5   Plaintiff Milicia's second Dishwasher, that in the second through fifth years from the
6   date of purchase, Whirlpool would provide, free of charge, factory-specified parts
7   for the electronic control components if defective in materials or workmanship. On
8   further information and belief, their warranties also stated that in the first year from
9   either the date of purchase or the date of installation, Whirlpool would pay for
10  factory-specified parts and repair labor to correct defects in materials or
11  workmanship.

12      252. On information and belief, Sears expressly warranted to Plaintiff
13  Mederlet and to Plaintiff Himler as to his second Dishwasher, that Sear would
14  replace any part of the Dishwasher that fails due to defective materials or
15  workmanship for two years from the date of purchase. On further information and
16  belief, the warranties also stated that Whirlpool would cover labor costs associated
17  with replacement of these parts during the first year from the date of purchase.

18      253. These representations were material. Plaintiffs Himler, Milicia,
19  O'Donnell, Bathon, Walker, Mederlet, Meneghetti and Paolini and the State Express
20  Warranty Subclasses relied upon these representations and/or warranties and
21  expected that they would be supplied defect-free replacement parts in the event that
22  Defendants knew of defective electronic control components in their Dishwashers.

23      254. These express warranties were part of the basis of the bargain between
24  Defendants, on the one hand, and Plaintiffs Himler, Milicia, O'Donnell, Bathon,
25  Walker, Mederlet, Meneghetti and Paolini and the State Express Warranty Subclass,
26  on the other.

27
28

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

255. Within the two and five year express warranty periods for electronic
control components, Plaintiffs Milicia, Bathon, Meneghetti and O'Donnell
experienced problems manifested at their electronic control boards, and notified
Whirlpool of same. Whirlpool, upon information and belief, failed to provide these
Plaintiffs with a defect-free replacement electronic control board and related
components free of charge.

256. Plaintiffs Milicia, Bathon, Walker and Paolini are still within their
warranty periods for their second Dishwashers. Whirlpool, upon information and
belief, knew at all relevant times that the Dishwashers contained defective electronic
components, and yet failed to provide these Plaintiffs with defect-free replacement
electronic control boards and related components free of charge.

257. Members of Plaintiffs Milicia's, Bathon's, Meneghetti's O'Donnell's,
Walker's and Paolini's respective State Express warranty Subclasses with
Whirlpool-warranted Dishwashers likewise either: (1) experienced problems
manifested at their electronic control boards, notified Whirlpool of same and
Whirlpool, upon information and belief, failed to provide these Plaintiffs and the
referenced subclass members with a defect-free replacement electronic control board
and related components free of charge; or (2) are still within their warranty periods
and Whirlpool, upon information and belief, at all relevant times knew that their
Dishwashers contained defective electronic components and yet failed to provide
these Subclass members with a defect-free replacement electronic control board and
related components free of charge.

258. Whirlpool breached its express warranty to these Plaintiffs and the
Subclass members because the Dishwashers did not or will not perform as
represented by Whirlpool, and because Whirlpool has failed to provide defect-free
replacement parts for the defective electronic control board and related components
free of charge as promised.

259. Within the two year express warranty range for electronic module and power supply board, Plaintiff Mederlet experienced problems with their electronic control boards, and notified Sears of same. Sears failed to provide Plaintiff Mederlet with a defect-free electronic control board and related components free of charge.

260. Plaintiff Himler is still within his warranty period for his second Dishwasher. Sears, upon information and belief, at all relevant times knew that his Dishwasher contained defective electronic components and yet failed to provide him with a defect-free replacement electronic control board and related components free of charge.

261. Members of Plaintiffs Mederlet's and Himler's respective State Express Warranty Subclasses with Sears-warranted Dishwashers likewise either: (1) experienced problems manifested at their electronic control boards, notified Sears of same and Sears, upon information and belief, failed to provide these Plaintiffs and the referenced subclass members with defect-free replacement electronic control boards and related components free of charge; or (2) are still within their warranty periods and Sears, upon information and belief, at all relevant times knew that their Dishwashers contain defective electronic components and yet failed to provide these Subclass members with defect-free replacement electronic control boards and related components free of charge.

262. Sears breached its express warranty to Plaintiffs Himler and Mederlet and the Subclass members in that the Dishwashers did not or will not perform as represented by Sears, and/or Sears has failed to provide defect-free replacement parts for the defective electronic control boards and related components free of charge.

263. Defendants were put on notice of their breach of express warranty by Plaintiffs Himler, Milicia, O'Donnell, Bathon, Walker, Mederlet and Meneghetti and referenced subclass members who have made warranty claims, demanded service

FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL
Case No. 8:11-cv-01733-FMO-MLG

and repair for the defective electronic control boards and complained to Whirlpool's or Sears' customer service, as applicable, regarding the defective nature of the electronic control boards and Defendants' failure to repair them.

264. The element of privity, if found to be applicable, exists vis-à-vis Defendants and Plaintiffs Himler, Milicia, O'Donnell, Bathon, Walker, Mederlet, Meneghetti and Paolini and the State Express Warranty Subclasses because, *inter alia*: (i) Defendants had direct written communications with Plaintiffs Himler, Milicia, O'Donnell, Bathon, Walker, Mederlet, Meneghetti and Paolini and the State Express Warranty Subclasses with regard to the subject Dishwashers in the form of standardized warranty forms, registration cards and similar documents; (ii) Defendants had direct communications with Plaintiffs Himler, Milicia, O'Donnell, Mederlet, Meneghetti and Paolini and the State Express Warranty Subclasses with regard to the subject Dishwashers through television, newspaper, Internet, and magazine advertisements; (iii) the dealers who sold the subject Dishwashers to and communicated with Plaintiffs Himler, Milicia, O'Donnell, Mederlet, Meneghetti and Paolini and the State Express Warranty Subclasses are agents, in law or in fact, of Defendants; (iv) Defendants entered into contracts with Plaintiffs Himler, Milicia, O'Donnell, Bathon, Walker, Mederlet, Meneghetti and Paolini and the State Express Warranty Subclasses in connection with the assurance of warranties; and/or (v) Plaintiffs Chambers, Van der Veer, Himler, Milicia, O'Donnell, Bathon, Walker, Mederlet, Meneghetti and Paolini and the State Express Warranty Subclasses are third-party beneficiaries of warranties that ran from Defendants to their agents, the dealers.

265. As a result of Defendants' breaches of their express warranties, Plaintiffs Himler, Milicia, Bathon, Walker, O'Donnell, Mederlet, Meneghetti and Paolini and the State Express Warranty Subclasses have suffered damages that were directly and proximately caused by the defective Dishwashers.

## **Count VI**

77

**Violations Of The Song-Beverly Act, Cal. Civ. Code §§ 1792 et seq.**
(Plaintiffs Himler, Bliss And Walchli, Individually And On Behalf Of The
California Class, Against Whirlpool, And Plaintiffs Himler And Bliss, Individually
And On Behalf Of Those Members Of The California Class Who Purchased Their
Dishwashers From Sears, Against Sears)

266. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

267. Under the Song-Beverly Consumer Warranty Act, Defendants impliedly warranted to California Plaintiffs and the California Class that the Dishwashers were "merchantable" and fit for the purpose for which they were being purchased. Cal. Civ. Code §§ 1791.1, 1792 and 1792.1.

268. Defendants provided express warranties and also impliedly warranted to California Plaintiffs and Class members that the Dishwashers were of merchantable quality, would pass without objection in the trade or industry, and were fit for the ordinary purposes for which the Dishwashers are used.

269. As described above, Defendants have breached both express and implied warranties because the Dishwashers sold to California Plaintiffs and Class members were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such goods are used, in that the Dishwashers were sold with a latent defect – that was undiscoverable by California Plaintiffs and the California Class at the time of sale – which causes the electrical system to fail spontaneously as the electronic control board overheats, resulting in heat and/or smoke and/or fire damage to the Dishwashers and surrounding area, and creating an unreasonable risk of extensive property damage, severe personal injury and death. As such, the Dishwashers were rendered unmerchantable by the existence of the Defect itself and not when it was subsequently discovered by California Plaintiffs and the members of the California Class.

270. In addition, under the Song-Beverly Consumer Warranty Act, Defendants are required to make available replacement parts to effect repairs during the warranty period, and repair defects within 30 days. Cal. Civ. Code §1793.2(a)(3) and (b).

271. Defendants violated the Song Beverly Consumer Warranty Act by failing to provide the effective repair or replacement of the defective Dishwashers within 30 days.

272. Any warranty limitation is unenforceable because it is unconscionable - a substantial disparity in the parties' relative bargaining power existed such that Plaintiffs and Class members were unable to derive a substantial benefit from their Dishwasher warranties. A disparity existed because Defendants were aware that the Dishwashers were inherently defective; Plaintiffs and Class members had no notice or ability to detect the problem; and Defendants knew that Plaintiffs and Class members would bear the cost of correcting the Defect. This disparity was amplified by Defendants' knowledge and concealment of the fact that the Defect could cause catastrophic failures and, thus, is likely to substantially limit the Dishwashers' intended use.

273. Furthermore, any warranty limitation is unenforceable because it is inconspicuous – any relevant warranty disclaimers use text that is the same size and color as the text of the limited warranty.

274. As a direct and proximate cause of Defendants' breach of the Song-Beverly Act, California Plaintiffs and Class sustained damages and other losses in an amount to be determined at trial. Defendants' conduct has caused California Plaintiffs and Class members as described above to incur compensatory damages, consequential damages, statutory damages, diminution in value, costs, attorney's fees, and interest.

## Count VII
### Strict Product Liability

79

**(Plaintiffs Chambers, Van Deemter, O'Donnell, Himler, Meneghetti, Bathon And Steffes, Individually And On Behalf Of Their Respective State Classes, Excepting Those Members Of The Ohio Class Who Incurred Property Damages Beyond Their Dishwashers And Those Members Of The California Class Who Incurred Property Damages Only To Their Dishwashers, Against Whirlpool, And Plaintiff Himler, Individually And On Behalf Of Those Members Of The California State Class Who Purchased Their Dishwashers From Sears, Excepting Those Members Of The California Class Who Incurred Property Damages Only To Their Dishwashers, Against Sears)**

275.     The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

276.     Defendants are engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling kitchen essentials and appliances, and did design, manufacture, distribute, advertise, market, promote and/or sell the Dishwashers at issue herein.

277.     The subject Dishwashers were expected to and did reach the above-named Plaintiffs and their respective State Classes without substantial change in the condition in which they were manufactured, sold and distributed.

278.     The Dishwashers were in a defective and unreasonably dangerous condition when they left Defendants' possession or control in that under normal conditions, usage and applications, the Dishwashers could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, resulting in overheating and/or smoke and/or fire, causing damage to the Dishwashers and/or the surrounding area, as well as threatening the consumers' personal safety.

279.     The above-named Plaintiffs and their respective State Classes used the subject Dishwashers in a manner reasonably intended by Defendants.

280.     The Dishwashers were defective for the following reasons: (1) they were not safe for ordinary and intended use; (2) Defendants failed to provide the above-named Plaintiffs and their respective State Classes either directly or

indirectly, made adequate and sufficient warnings regarding the known or foreseeable risks and dangers inherent in the Dishwashers; (3) the Dishwashers contained a material design defect and were not reasonably safe due to such defect; (4) the design, methods of manufacture and testing of the Dishwashers did not conform to generally recognized and prevailing standards or the state of the art in existence at the time the design was made and the Dishwashers were manufactured; and (5) at the time the Dishwashers left Defendants' control, the foreseeable risks associated with the Dishwashers' design exceeded the benefits associated with that design.

281. As a direct and proximate result of the defective condition of the Dishwashers, the above-named Plaintiffs and their respective State Classes have suffered property damage and other incidental and consequential damages.

282. As alleged throughout this amended complaint, Defendants acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers. Defendants knew or should have known that the defective circuit boards integrated into their Dishwashers had a high likelihood of combusting. After making thousands of sales of their Dishwashers to unsuspecting consumers, all with defective circuit boards, Defendants continued to be informed that the circuit boards were defective and continued to pose a fire danger to their consumers. Defendants were repeatedly informed of the fire danger of their Dishwashers, yet they failed to take any corrective action to insure the safety of their consumers, and instead continued to sell their Dishwashers with the defective circuit boards. Based upon the allegations of Defendants' misconduct throughout this amended complaint, coupled with the allegations of Defendants' display of a conscious disregard for the safety of the consuming public, the above-named Plaintiffs and their respective State Classes are entitled to an award of punitive and exemplary damages against Defendants, and each of them, the amount of which will be proven at trial.

### Count VIII
### Strict Product Liability For Failure To Warn

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

**(Plaintiffs Chambers, Van Denver, O'Donnell, Himler, Meneghetti, Bathon, Paolini, Koswener And Steffes, Individually And On Behalf Of Their Respective State Classes, Excepting Those Members Of The Ohio Class Who Incurred Property Damages Beyond Their Dishwashers And Those Members Of The California Class Who Incurred Property Damages Only To Their Dishwashers, Against Whirlpool, And Plaintiffs Himler, O'Donnell, Meneghetti And Koswener, Individually And On Behalf Of Those Members Of Their Respective State Classes Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Excepting Those Members Of The California Class Who Incurred Property Damages Only To Their Dishwashers, Against Sears)**

283.   The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

284.   The Dishwashers were designed, manufactured and sold by Whirlpool, and sold or resold to consumers and others by Sears, in the regular course of business and were expected to and did reach the above-named Plaintiffs and their respective State Classes without substantial change in the condition in which they were manufactured, sold and distributed.

285.   The Dishwashers were in a defective and unreasonably dangerous condition when they left Defendants' possession or control in that under normal conditions, usage and applications, the Dishwashers could not withstand use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, resulting in overheating and/or smoke and/or fire, causing damage to the Dishwashers and/or the surrounding area, as well as posing a safety risk and hazard to consumers.

286.   Defendants had no reason to believe that consumers of their Dishwashers would be aware of the foreseeable harm associated with use of the Dishwashers.

287.   Prior to and after distributing the subject Dishwashers to the above-named Plaintiffs and their respective State Classes, Defendants and their agents who sold or serviced the Dishwashers failed to warn the above-named Plaintiffs and their

82

respective State Classes about the defect in the Dishwashers and the dangers that such defect would pose.

288. Prior to and after distributing the Dishwashers to the above-named Plaintiffs and their respective State Classes, Defendants had a legal duty to warn them about the defect in the Dishwashers and the dangers that such defect would pose.

289. As a direct and proximate result of Defendants' failure to warn of the defective and unreasonably dangerous condition and design of the Dishwashers, the above-named Plaintiffs and their respective State Classes have suffered property damage and other incidental and consequential damages.

290. As alleged throughout this amended complaint, Defendants acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers. Defendants knew or should have known that the defective circuit boards integrated into their Dishwashers had a high likelihood of combusting. After making thousands of sales of their Dishwashers to unsuspecting consumers, all with defective circuit boards, Defendants continued to be informed that the circuit boards were defective and continued to pose a fire danger to their consumers. Defendants were repeatedly informed of the fire danger of their Dishwashers, yet they failed to take any corrective action or to issue any warnings to insure the safety of their consumers, and instead continued to sell their Dishwashers with the defective circuit boards. Based upon the allegations of Defendants' misconduct throughout this amended complaint, coupled with the allegations of Defendants' display of a conscious disregard for the safety of the consuming public, the above-named Plaintiffs and their respective State Classes are entitled to an award of punitive and exemplary damages against Defendants, and each of them, the amount of which will be proven at trial.

## Count IX
## Negligent Failure To Warn

83

Plaintiffs Chambers, Van Deer Veer, O'Donnell, Himler, LeBlanc, Meneghetti, Bathon, Paolini, Koswener And Steffes, Individually And On Behalf Of Their Respective State Classes, Excepting Those Members Of The Ohio Class Who Incurred Property Damages Beyond Their Dishwashers And Those Members Of The California Class Who Incurred Property Damages Only To Their Dishwashers, Against Whirlpool, And Plaintiffs Himler, LeBlanc, Mederlet, O'Donnell, Meneghetti And Koswener, Individually And On Behalf Of Those Members Of Their Respective State Classes Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Excepting Those Members Of The California Who Incurred Property Damages Only To Their Dishwashers, Against Sears)

291. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

292. Defendants knew — or by the exercise of reasonable care should have known — that the Dishwashers were defective.

293. Defendants knew that the above-named Plaintiffs and their respective State Class members — who used their Dishwashers for their intended use — were members of a foreseeable class of persons who were and are at risk of suffering serious inconvenience, expense and harm solely because of the Defect.

294. Defendants owe a continuing duty to warn about the problem and to repair and/or recall the defective Dishwashers.

295. Defendants had a pre-sale duty to warn potential purchasers that the Dishwashers carried with them greater risks of failure and safety hazards than an ordinary consumer would expect when using the Dishwashers in their intended or reasonably-foreseeable manner.

296. As a direct and proximate result of Defendants' wanton recklessness, carelessness, and negligence, the above-named Plaintiffs and their respective State Class members were caused to suffer damages and losses — and they will have to spend money to repair and/or replace the defective Dishwashers.

### Count X
**Unjust Enrichment/Restitution**

84

**(Plaintiffs Chambers, Van Der Veer, O'Donnell, Himler, Walker, Sample, Bathon, Meneghetti, LeBlanc, Mederlet, Bliss, Walchli, Paolini, Koswener And Steffes, Individually And On Behalf Of Their Respective State Classes, Excepting Those Members of the Ohio Class Who Were Not Denied Effective Warranty Repair Coverage By Whirlpool, Against Whirlpool, And Plaintiffs Cicchelli, Himler, Mederlet, LeBlanc, Bliss, O'Donnell, Meneghetti, Beal And Koswener, Individually And On Behalf Of Those Members Of Their Respective State Classes Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Excepting Those Members Of The New Jersey Class Who Incurred Property Damages Beyond Their Dishwashers, Against Sears)**

297. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

298. Pursuant to Fed. R. Civ. P. 8(d)(2), Count X of this Fourth Amended Class Action Complaint is pled in the alternative to Counts I-III and V-VI, to the extent that the contracts between the Plaintiffs and class members identified in the caption of this Count, on the one hand, and the Defendants, on the other, do not govern the subject matter of the dispute.

299. Defendants designed, manufactured, marketed, advertised, distributed, warranted, sold and/or serviced, directly or through authorized dealers or servicing and repair agents, the Dishwashers with the design defect alleged herein.

300. Defendants and their agents who sold or serviced the Dishwashers marketed, advertised and/or promoted the subject Dishwashers as merchantable, free of defects, fit for ordinary purpose for which they were to be used, and safe for said purpose as set forth more fully above.

301. Defendants have had actual knowledge of the existence of the design defect since, upon information and belief, Whirlpool's pre-testing before putting the Dishwashers on the market, and from consumer complaints as early as 2007, and, upon information and belief, Whirlpool's testing done in response to those complaints, replacement part sales data, aggregate data from Dishwasher dealers, and other internal sources.

85

302. Despite Defendants' knowledge of the design defect, Defendants have failed to disclose the existence of this material defect to the Plaintiffs and class members identified in the caption of this Count, at the time each of them purchased their Dishwashers and when Plaintiffs O'Donnell, Meneghetti and Koswener and similarly situated class members, upon information and belief, had their Dishwashers negligently and inadequately serviced by Defendants' servicing and repair companies, including but not limited to A&E Factory Service, LLC, by installation of replacement parts that were similarly defective.

303. Despite Defendants' knowledge of the Defect, the Plaintiffs and class members identified in the caption to this Count did not receive Dishwashers – even after the Dishwashers were serviced or repaired with similarly defective replacement parts that were free from defective components and fit for ordinary use.

304. The Plaintiffs and the class members identified in the caption to this Count would not have purchased, or would have paid substantially less for, their Dishwashers, and Plaintiff Meneghetti and similarly situated class members would not have paid to have their Dishwashers serviced or repaired, had the Plaintiffs and class members been informed that the Dishwashers were defective and that the defect would cause the Dishwashers to fail prematurely and pose a hazard to health and safety, even after they were serviced or repaired.

305. Defendants were directly or indirectly enriched by the Plaintiffs and class members identified in the caption of this Count, who, without knowledge of the design defect, made payment for their Dishwashers and/or servicing of their Dishwashers.

306. Moreover, despite Defendants' knowledge of the Defect during Plaintiffs' and State Class members' express warranty periods, Defendants refused to replace such components as promised in the Dishwasher warranties and thereby

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

retained themselves the benefit owed to the referenced Plaintiffs and their respective State Classes.

307. It would be inequitable for Defendants to retain this money unjustly gained.

## Count XI

### Fraudulent Concealment/Nondisclosure
**(All Plaintiffs, Individually And On Behalf Of Their Respective State Classes, Excepting Members Of The New Jersey State Class Who Incurred Property Damages Beyond Their Dishwashers, Against Whirlpool, And Plaintiffs Himler, Bliss, Cicchelli, LeBlanc, Mederlet, O'Donnell, Meneghetti, Beal And Koswener, Individually And On Behalf Of Those Members Of Their Respective State Classes Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Excepting Members Of The New Jersey State Class Who Incurred Property Damages Beyond Their Dishwasher, Against Sears)**

308. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

309. At all relevant times, Defendants knew that the Dishwashers were defective; that they would fail in advance of their anticipated useful life under ordinary use and conditions; and that the recommended repairs would not cure or rectify the Defect and would, at best, only delay or postpone a failure in the Dishwashers caused by the Defect, because the replacement parts themselves, upon information and belief, contained the same Defect.

310. Defendants also knew that the Defect posed a serious risk of damage to property, but concealed that information from Plaintiffs and the class members.

311. The concealed information regarding the defect is material in that a reasonable consumer would find that information important when deciding whether to buy the Dishwashers or have them repaired.

312. Defendants were and are under a duty to the above-named Plaintiffs and their respective State Classes to disclose these facts because:

87

quality and nature of the Dishwashers and possess superior knowledge of the defect, on information and belief, based on pre-release testing, numerous consumer complaints and warranty claims relating to the Dishwashers, testing done in response to those complaints, replacement part sales data, aggregate data from Dishwasher dealers, and other internal sources; and

B.      Defendants actively concealed from the above-named Plaintiffs and their respective State Classes, both at the time of purchase and at all relevant times thereafter, including when such consumers would contact Defendants about their Dishwasher combustion and failures, the fact that the Dishwashers were and are defective and likely to fail in advance of their reasonably expected useful life, and pose a serious fire hazard, and that the recommended repairs would not cure the defect.

313.   Defendants fraudulently and intentionally concealed from and/or failed to disclose to the above-named Plaintiffs and their respective State Classes the facts described above with the intent to defraud them and to induce them to act thereon by purchasing the Dishwashers at a premium price and paying for service or repairs to the Dishwashers. Defendants also intentionally failed to disclose the Defect in order to mislead owners during the express warranty period and to avoid performance of their contractual duties under the warranty.

314.   The above-named Plaintiffs and their respective State Classes were unaware that the electronic control boards are defective in their design and manufacture, prone to failure, and a serious and potentially fatal fire hazard. Plaintiffs and their respective State Classes were also unaware that the repairs recommended by Defendants would not cure the Defect.

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

315. Had Defendants disclosed the Defects, the above-named Plaintiffs and their respective State Classes would not have purchased their Dishwashers or paid to have them serviced or repaired.

316. As a direct and proximate cause of Defendants' misconduct, the above-named Plaintiffs and their respective State Classes have suffered actual damages in that they overpaid for their Dishwashers and have or will have to continue to pay for repairs and service visits or for replacement dishwashers. Plaintiffs and their respective State Classes have also suffered from loss of use of functioning dishwashers as a result of Defendants' misconduct.

317. Defendants' misconduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others, and on that basis, the above-named Plaintiffs and their respective State Classes are entitled to an award of punitive and exemplary damages against Defendants, and each of them, the amount of which will be proven at trial.

## Count XII
### Negligence
**(Plaintiffs Chambers, Van Der Veer, O'Donnell, Himler, LeBlanc, Bathon, Meneghetti, Paolini, Koswener And Steffes, Individually And On Behalf Of Their Respective State Classes, Excepting Those Members Of The Ohio Class Who Incurred Property Damages Beyond Their Dishwashers, And Those Members Of The California Class Who Incurred Property Damages Only To Their Dishwashers, Against Whirlpool, And Plaintiffs Himler, LeBlanc, Mederlet, Meneghetti, O'Donnell And Koswener, Individually And On Behalf Of Those Members Of Their Respective State Classes Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Against Sears, Excepting Those Members Of The New York Class Who Did Not Have Their Dishwashers Repaired For The Alleged Defect Pursuant To A Service Contract With Sears And Those Mmebers Of The California Class Who Incurred Property Damages Only To Their Dishwashers, Against Sears)**

318. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

89

Defendant Whirlpool owed a duty to the above-named Plaintiffs and their respective State Classes to design, manufacture and produce, and all Defendants owed these Plaintiffs and their respective State Class members a duty to test, inspect, market, distribute, sell and service, the Dishwashers with reasonable care and in a workmanlike fashion, and had a duty to protect them from foreseeable and unreasonable risk of harm.

320. Defendants knew or should have known that the Dishwashers they designed, manufactured, produced, tested, inspected, marketed, distributed, sold and/or serviced, in ordinary and foreseeable use, would fail to perform as intended.

321. Defendants knew or should have known that the Dishwashers created an unreasonable risk of catastrophic property damage, personal injury and death.

322. Further, Defendants knew or should have known that the repairs performed on the Dishwashers would not cure the Defect.

323. Defendants failed to exercise reasonable care concerning the design, development, manufacture, production, testing, inspection, marketing, sale and/or servicing of the Dishwashers by, among other things, as to Defendant Whirlpool, failing to design and manufacture the Dishwashers in a manner to ensure that under normal intended usage, electrical failure would not occur; and as to all Defendants, failing to represent accurately to the above-named Plaintiffs and their respective State Classes, whether directly or indirectly, that the Dishwashers posed an unreasonable safety risk and that the recommended repairs would not cure the Defect.

324. The Dishwashers present a clear, serious and unreasonable risk of personal injury and/or death.

325. As a direct and proximate result of Defendants' negligence, the above-named Plaintiffs and their respective State Classes have suffered property damages and other incidental and consequential damages, including, but not limited to, overpayment for their Dishwashers, repair costs and loss of use of their Dishwashers.

90

**Violations Of The Ohio Consumer Sales Practices Act, Ohio Re. Code Ann. §§ 1345.01, *et seq*.**

**(Plaintiff Bathon, Individually And On Behalf Of Those Members Of The Ohio Class Who Did Not Incur Property Damages Beyond Their Dishwashers, Against Whirlpool)**

326.  The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

327.  The Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. §§ 1345.01, *et seq*. applies to the sale of consumer goods "to any individual for purposes that are primarily personal, family, or household [uses]." *Id*. at § 1345.01(A). Accordingly, the conduct at issue in this case clearly falls within the scope of the OCSPA.

328.  The OCSPA prohibits unfair, deceptive and unconscionable practices in consumer sales transactions. Ohio Rev. Code Ann. § 1345.02(A). The OCSPA further provides that "a consumer" has a private cause of action for violations of the statute, and expressly allows for class actions. *Id*. at § 1345.09.

329.  Whirlpool has engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and/or servicing or repair of Dishwashers it knew to be defective, in violation of the OCSPA.

330.  Whirlpool, upon information and belief, had actual knowledge of the Defect when the company placed the Dishwashers in the stream of commerce, based on Whirlpool's testing of the Dishwashers before they were put on the market.

331.  In addition, Whirlpool was notified by consumers registering complaints and making warranty claims as early as 2007, if not earlier, regarding the defect manifested at the electronic control board, complained of herein.

332.  In addition, upon information and belief, Whirlpool had actual knowledge of the defect based on Whirlpool's testing of the Dishwashers done in

91

dealers, and other internal sources.

333. This defect is latent, and is not something that Plaintiff Bathon and the Ohio Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

334. In its marketing, sale and servicing or repair of the Dishwashers, Whirlpool undertook active and ongoing steps to conceal the Defect and have consciously withheld material facts from Plaintiff Bathon and the Ohio Class concerning the Defect. Plaintiff Bathon is aware of nothing in Whirlpool's advertising, publicity or marketing materials that discloses the truth about the Defect, despite Whirlpool's awareness, or reckless disregard, of the problem. Nothing on their Dishwashers or in their user manuals or warranties disclosed the Defect.

335. Whirlpool's conduct was objectively deceptive and was likely to deceive reasonable consumers under the circumstances. The fact that a defect in the Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite and combust, thereby preventing the Dishwashers from being used as intended during their useful lives and creating a substantial and unreasonable risk of property damage, personal injury and death, was a material fact that a reasonable consumer would attach importance to at the time of purchase. This fact would influence a reasonable consumer's choice of action during the purchase of a dishwasher.

336. Whirlpool had a duty to disclose their knowledge of this material Defect because, *inter alia*, Whirlpool possessed superior and exclusive knowledge.

337. Whirlpool failed to disclose to Plaintiff Bathon and the Ohio Class – even those who had their Dishwashers repaired or replaced under warranty upon information and belief – the material fact that the Dishwashers were defective and would fail prematurely, posing a serious risk to health and safety.

338. Additionally, Whirlpool advertised and marketed the Dishwashers with the intent not to sell them as advertised. Specifically, Whirlpool represented that the

92

Dishwashers were in fact defective, even though Whirlpool knew at all relevant times, but failed to advise Plaintiff Bathon and the members of the Ohio Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

339. Whirlpool intended that Plaintiff Bathon and the Ohio Class rely on Whirlpool's acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or purchasing competitors' dishwashers, or by paying to have their Dishwashers serviced or repaired directly by Whirlpool or indirectly through one of its agents or authorized repair companies.

340. Had Whirlpool disclosed all material information regarding the defect to Plaintiff Bathon and the Ohio Class, they would not have purchased the Dishwashers, or they would have paid less for them, or they would not have paid to have them serviced.

341. Whirlpool's conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

342. As a result of the foregoing acts, omissions and unconscionable commercial practices, Plaintiff Bathon and the Ohio Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiff Bathon and the Ohio Class, including risk of personal injury and death. Plaintiff Bathon and the Ohio Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Whirlpool's conduct.

343. To this day, Whirlpool continues to conceal the dangerously defective nature of the Dishwashers.

344. Whirlpool was on notice based on reported decisions with substantially similar facts that sufficed to put Whirlpool on notice of its OCSPA violations pursuant

93

(N.D. Ohio July 25, 2008); *Sovel v. Richardson*, 1995 Ohio App. LEXIS 5076, at *7-9 (Ohio Ct. App. Nov. 15, 1999); *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 837-38 (S.D. Ohio 2003); *Amato v. Gen. Motors Corp.*, 463 N.E.2d 625, 632-33 (Ohio Ct. App. 1982).

345. Plaintiff Bathon and the Ohio Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

## Count XIV
### Violations Of The California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*
### (Plaintiffs Himler, Bliss, And Walchli, Individually And On Behalf Of The California Class, Against Whirlpool, And Plaintiffs Himler and Bliss, Individually And On Behalf Of Those Members Of The California Class Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Against Sears)

346. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

347. The California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." *Id.* at § 1770(a). The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient economical procedures to secure such protection." *Id.* at § 1760.

348. Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and/or servicing or repair of Dishwashers they knew to be defective, in violation of the CLRA.

94

1  defect when they placed the Dishwashers in the stream of commerce, based on

3  Whirlpool's testing of the Dishwashers before they were put on the market.

4      350.  In addition, Defendants were notified by consumers registering

5  complaints and making warranty claims as early as 2007, if not earlier, regarding the

6  defect manifested at the electronic control board, complained of herein.

7      351.  In addition, upon information and belief, Defendants had actual

8  knowledge of the defect based on Whirlpool's testing of the Dishwashers done in

9  response to complaints, replacement part sales data, aggregate data from Dishwasher

10 dealers, and other internal sources.

11     352.  This defect is latent, and is not something that Plaintiffs Himler, Bliss

12 and Walchli and the members of the California Class, in the exercise of reasonable

13 diligence, could have discovered independently prior to purchase.

14     353.  In its marketing, sale and servicing or repair of the Dishwashers,

15 Defendants undertook active and ongoing steps to conceal the defects and have

16 consciously withheld material facts from Plaintiffs Himler, Bliss and Walchli and the

17 members of the California Class concerning the defect in the Dishwashers. Plaintiffs

18 Himler, Bliss and Walchli are aware of nothing in Defendants' advertising, publicity

19 or marketing materials that discloses the truth about the defect, despite Defendants'

20 awareness, or reckless disregard, of the problem. Nothing on the Dishwashers

21 themselves or in their user manuals and warranties disclosed the Defect.

22     354.  Defendants' conduct was objectively deceptive and was likely to deceive

23 reasonable consumers under the circumstances. The fact that a defect in the

24 Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite

25 and combust, thereby preventing the Dishwashers from being used as intended during

26 their useful lives and creating a substantial and unreasonable risk of property damage,

personal injury and death, was a material fact that a reasonable consumer would attach

95

consumer's choice of action during the purchase of a dishwasher.

355.  Defendants had a duty to disclose their knowledge of this material defect because, *inter alia*, they possessed superior and exclusive knowledge.

356.  Defendants failed to disclose to Plaintiffs Himler, Bliss and Walchli and the members of the California Class – even those who had their Dishwashers repaired or replaced under warranty upon information and belief – the  material fact that the Dishwashers were defective and would fail prematurely, posing a serious risk to health and safety. Defendants' failure to disclose this defect constituted a violation of California Civil Code §§ 1770 (a)(5) and (a)(7).

357.  Additionally, Defendants violated California Civil Code § 1770(a)(9) when they advertised and marketed the Dishwashers with the intent not to sell them as advertised.  Specifically, Defendants represented that the Dishwashers were free from design defects, even though Defendants knew at all relevant times, but failed to advise Plaintiffs Himler, Bliss and Walchli and the members of the California Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

358.  Defendants intended that Plaintiffs Himler, Bliss and Walchli and the members of the California Class rely on Defendants' acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or purchasing competitors' dishwashers, or by paying to have their Dishwasher serviced or repaired directly by Defendants or indirectly through one of their agents or authorized repair companies.

359.  Had Defendants disclosed all material information regarding the defect to Plaintiffs Himler, Bliss and Walchli and the members of the California Class, they would not have purchased the Dishwashers, or they would have paid less for them, or would not have paid to have their Dishwashers serviced.

96

Defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

361. As a result of the foregoing acts, omissions and unconscionable commercial practices, Plaintiffs Himler, Bliss and Walchli and the members of the California Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiffs Himler, Bliss and Walchli and the members of the California Class, including risk of personal injury and death. Plaintiffs Himler, Bliss and Walchli and the members of the California Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Defendants' conduct.

362. To this day, Defendants continue to conceal the dangerously defective nature of the Dishwashers.

363. Plaintiffs Himler, Bliss and Walchli and the members of the California Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

364. By letters dated October 31, 2011, Plaintiffs Himler, Bliss and Walchli's counsel put Defendants on notice that the subject Dishwashers were defective and that Defendants were violating the CLRA. *See* **Exhibits A and B hereto**. Those letters provided the notice to Defendants of the deceptive acts and practices alleged herein, as is required under Cal. Civ. Code § 1782(a). As more than thirty (30) days have expired since Defendants' receipt of those letters, and Defendants nonetheless have failed to cure, Plaintiffs Himler, Bliss and Walchli seek actual and statutory damages, punitive damages, restitution and injunctive relief on behalf of themselves and the California Class.

## Count XV

**VIOLATIONS OF THE California Unfair Competition Law,**
**California Business & Professions Code, §§ 17200, *et seq.***
**(Plaintiffs Himler, Bliss, And Walchli, Individually And On Behalf Of The**
**California Class, Against Whirlpool, And Plaintiffs Himler and Bliss,**
**Individually And On Behalf Of Those Members Of The California Class Who**
**Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Against**
**Sears)**

365. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

366. The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, *et seq.*, prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.* at § 17200. Defendants' conduct, as described herein, is unlawful, unfair and fraudulent in violation of the statute.

367. Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and servicing or repair of Dishwashers they knew to be defective, in violation of the UCL.

368. Defendants, upon information and belief, had actual knowledge of the defect when they placed the Dishwashers in the stream of commerce, based on Whirlpool's testing of the Dishwashers before they were put on the market.

369. In addition, Defendants were notified by consumers registering complaints and making warranty claims as early as 2007, if not earlier, regarding the defect manifested at the electronic control board, complained of herein.

370. In addition, upon information and belief, Defendants had actual knowledge of the defect based on Whirlpool's testing of the Dishwashers done in response to complaints, replacement part sales data, aggregate data from Dishwasher dealers, and other internal sources.

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

and Walchli and the members of the California Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

372. In its marketing, sale and servicing or repair of the Dishwashers, Defendants undertook active and ongoing steps to conceal the defects and have consciously withheld material facts from Plaintiffs Himler, Bliss and Walchli and the members of the California Class concerning the defect in the Dishwashers. Plaintiffs Himler, Bliss and Walchli are aware of nothing in Defendants' advertising, publicity or marketing materials that discloses the truth about the defect, despite Defendants' awareness, or reckless disregard, of the problem. Nothing on the Dishwashers themselves or in their user manuals and warranties disclosed the Defect.

373. Defendants' conduct was objectively deceptive and was likely to deceive reasonable consumers under the circumstances. The fact that a defect in the Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite and combust, thereby preventing the Dishwashers from being used as intended during their useful lives and creating a substantial and unreasonable risk of property damage, personal injury and death, was a material fact that a reasonable consumer would attach importance to at the time of purchase. This fact would influence a reasonable consumer's choice of action during the purchase of a dishwasher.

374. Defendants had a duty to disclose their knowledge of this material defect because, *inter alia*, they possessed superior and exclusive knowledge.

375. Defendants failed to disclose to Plaintiffs Himler, Bliss and Walchli and the members of the California Class – even those who had their Dishwashers repaired or replaced under warranty upon information and belief – the material fact that the Dishwashers were defective and would fail prematurely, posing a serious risk to health and safety.

376. Additionally, Defendants advertised and marketed the Dishwashers with the intent not to sell them as advertised. Specifically, Defendants represented that the