Dishwashers were free from design defect, even though Defendants knew at all relevant times, but failed to advise Plaintiffs Himler, Bliss and Walchli and the members of the California Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

377. Defendants intended that Plaintiffs Himler, Bliss and Walchli and the members of the California Class rely on Defendants' acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or purchasing competitors' dishwashers, or by paying to have their Dishwasher serviced or repaired directly by Defendants or indirectly through one of their agents or authorized repair companies.

378. Had Defendants disclosed all material information regarding the defect to Plaintiffs Himler, Bliss and Walchli and the members of the California Class, they would not have purchased the Dishwashers, or they would have paid less for them, or would not have paid to have their Dishwashers serviced.

379. Defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

380. Defendants' business acts and practices alleged herein are unlawful under the UCL because, among other things, the acts and practices violate laws including California Civil Code §§ 1572, 1709, 1710, 1792, 1770(a)(5), 1770(a)(7), 1770(a)(9), and other state and federal statutes and common law alleged in this Fourth Amended Complaint.

381. Defendants' business acts and practices alleged herein – namely, failing to disclose and concealing the existence of the defect in the Dishwashers – are unfair under the UCL because the nature of Defendants' misconduct offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

382. Defendants' business acts and practices alleged herein are fraudulent under the UCL because, as entities with exclusive knowledge of the defect in the

2   they posed a serious fire hazard, to Plaintiffs Himler, Bliss and Walchli and the

3   members of the California Class; yet, Defendants failed to and refused to disclose that

4   material information.

5       383.   As a result of the foregoing acts, omissions and unconscionable

6   commercial practices, Plaintiffs Himler, Bliss and Walchli and the members of the

7   California Class have suffered an ascertainable loss by purchasing defective

8   Dishwashers that are unable to perform their essential function of washing tableware,

9   silverware, pots and pans for their expected useful life and that present a risk to the

10  safety of Plaintiffs Himler, Bliss and Walchli and the members of the California Class,

11  including risk of personal injury and death. Plaintiffs Himler, Bliss and Walchli and

12  the members of the California Class have also incurred additional costs to repair

13  and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or

14  have suffered unreasonable diminution of value in their Dishwashers as a result of

15  Defendants' conduct.

16      384.   Defendants' unlawful, unfair and fraudulent business practices continue

17  through the date of this Fourth Amended Complaint, and absent a Court order,

18  Defendants will not comply with their obligations under the UCL.

19      385.   Under the UCL, Plaintiffs Himler, Bliss and Walchli, individually and on

20  behalf of the California Class, request that this Court enjoin Defendants from

21  engaging in business practices that constitute unfair competition. These Plaintiffs

22  further request that this Court enter such orders or judgments as may be necessary to

23  restore to any person in interest any money which may have been acquired by means

24  of such unfair practices, as provided for in California Business and Professions Code,

25  § 17203, and for such other relief as set forth below.

### Count XVI
**Violations Of The Georgia Fair Business Practices Act, OCGA §§ 10-1-309, *et seq.***
**(Plaintiff O'Donnell, Individually And On Behalf Of The Georgia Class, Against**

**Whirlpool, Individually And On Behalf Of Those Members Of The Georgia Class Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Against Sears)**

386.    The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

387.    The Georgia Fair Business Practices Act ("GFBPA"), OCGA §§ 10-1-309, *et seq.*, prohibits unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce.

388.    Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and servicing or repair of Dishwashers they knew to be defective, in violation of the GFBPA.

389.    Defendants, upon information and belief, had actual knowledge of the defect when they placed the Dishwashers in the stream of commerce, based on Whirlpool's testing of the Dishwashers before they were put on the market.

390.    In addition, Defendants were notified by consumers registering complaints and making warranty claims as early as 2007, if not earlier, regarding the defect manifested at the electronic control board, complained of herein.

391.    In addition, upon information and belief, Defendants had actual knowledge of the defect based on Whirlpool's testing of the Dishwashers done in response to complaints, replacement part sales data, aggregate data from Dishwasher dealers, and other internal sources.

392.    This defect is latent, and is not something that Plaintiff O'Donnell and the members of the Georgia Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

393.    In its marketing, sale and servicing or repair of the Dishwashers, Defendants undertook active and ongoing steps to conceal the defects, and have consciously withheld material facts from Plaintiff O'Donnell and the members of the

102

Georgia Class concerning the defect in the Dishwashers. Plaintiff O'Donnell is aware of nothing in Defendants' advertising, publicity or marketing materials that discloses the truth about the defect, despite Defendants' awareness, or reckless disregard, of the problem. Nothing on his Dishwasher or in his user manual and warranty disclosed the Defect.

394. Defendants' conduct was objectively deceptive and was likely to deceive reasonable consumers under the circumstances. The fact that a defect in the Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite and combust, thereby preventing the Dishwashers from being used as intended during their useful lives and creating a substantial and unreasonable risk of property damage, personal injury and death, was a material fact that a reasonable consumer would attach importance to at the time of purchase. This fact would influence a reasonable consumer's choice of action during the purchase of a dishwasher.

395. Defendants had a duty to disclose their knowledge of this material defect because, *inter alia*, they possessed superior and exclusive knowledge.

396. Defendants failed to disclose to Plaintiff O'Donnell and the members of the Georgia Class – even those who had their Dishwashers repaired or replaced under warranty upon information and belief – the material fact that the Dishwashers were defective and would fail prematurely, posing a serious risk to health and safety.

397. Additionally, Defendants advertised and marketed the Dishwashers with the intent not to sell them as advertised. Specifically, Defendants represented that the Dishwashers were free from design defects, even though Defendants knew at all relevant times, but failed to advise Plaintiff O'Donnell and the members of the Georgia Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

398. Defendants intended that Plaintiff O'Donnell and the members of the Georgia Class rely on Defendants' acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or purchasing

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

2 | completion, dishwashers, do they intend to have their Dishwasher serviced or repaired
3 | directly by Defendants or indirectly through one of their agents or authorized repair
4 | companies.

399. Had Defendants disclosed all material information regarding the defect to Plaintiff O'Donnell and the members of the Georgia Class, they would not have purchased the Dishwashers, or they would have paid less for them, or would not have paid to have their Dishwashers serviced.

400. Defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

401. As a result of the foregoing acts, omissions and unconscionable commercial practices, Plaintiff O'Donnell and the members of the Georgia Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiff O'Donnell and the members of the Georgia Class, including risk of personal injury and death. Plaintiff O'Donnell and the members of the Georgia Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Defendants' conduct.

402. To this day, Defendants continue to conceal the dangerously defective nature of the Dishwashers.

403. Plaintiff O'Donnell and the members of the Georgia Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

404. By letters dated October 31, 2011, Plaintiff O'Donnell's counsel put Defendants on notice that the subject Dishwashers were defective. *See* **Exhibits A and B hereto**. Those letters provided the notice to Defendants of the deceptive acts and practices alleged herein, as is required under Ga. Code Ann. § 10-1-399(b). As

104

more than thirty (30) days have expired since Defendants' receipt of those letters, and Defendants nonetheless have failed to cure, Plaintiff O'Donnell seeks actual and statutory damages, punitive damages, restitution and injunctive relief on behalf of himself and the Georgia Class.

405. Copies of the previous complaints were mailed to the State Administrator of Georgia in accordance with Ga. Stat. § 10-1-399(g), and a copy of this Fourth Amended Complaint will likewise be mailed to the State Administrator of Georgia.

**Count XVII**
**Violations Of The Illinois Consumer Fraud And**
**Deceptive Practices Act, 815 ILCS §§ 501/1, *et seq.***
**(Plaintiff Meneghetti, Individually And On Behalf Of The Illinois State Class,**
**Against Whirlpool, And Individually And On Behalf Of Those Members Of The**
**Illinois State Class Who Purchased Their Dishwashers From, Or Had Them**
**Serviced By, Sears, Against Sears)**

406. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

407. The Illinois Consumer Fraud and Deceptive Practices Act ("ICFDPA"), 815 ILCS §§ 501/1, *et seq.*, provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged

105

thereby.

*Id.* at § 505/2.

408. Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and servicing or repair of Dishwashers they knew to be defective, in violation of the ICFDPA.

409. Defendants, upon information and belief, had actual knowledge of the defect when they placed the Dishwashers in the stream of commerce, based on Whirlpool's testing of the Dishwashers before they were put on the market.

410. In addition, Defendants were notified by consumers registering complaints and making warranty claims as early as 2007, if not earlier, regarding the defect manifested at the electronic control board, complained of herein.

411. In addition, upon information and belief, Defendants had actual knowledge of the defect based on Whirlpool's testing of the Dishwashers done in response to complaints, replacement part sales data, aggregate data from Dishwasher dealers, and other internal sources.

412. This defect is latent, and is not something that Plaintiff Meneghetti and the members of the Illinois Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

413. In their marketing, sale and servicing or repair of the Dishwashers, Defendants undertook active and ongoing steps to conceal the defects and have consciously withheld material facts from Plaintiff Meneghetti and the members of the Illinois Class concerning the defect in the Dishwashers. Plaintiff Meneghetti is aware of nothing in Defendants' advertising, publicity or marketing materials that discloses the truth about the defect, despite Defendants' awareness, or reckless disregard, of the problem. Nothing on her Dishwasher or in her user manual and warranty disclosed the Defect.

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

reasonable consumers under the circumstances. The fact that a defect in the Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite and combust, thereby preventing the Dishwashers from being used as intended during their useful lives and creating a substantial and unreasonable risk of property damage, personal injury and death, was a material fact that a reasonable consumer would attach importance to at the time of purchase. This fact would influence a reasonable consumer's choice of action during the purchase of a dishwasher.

415. Defendants had a duty to disclose their knowledge of this material defect because, *inter alia*, they possessed superior and exclusive knowledge.

416. Defendants failed to disclose to Plaintiff Meneghetti and the members of the Illinois Class – even those who had their Dishwashers repaired or replaced under warranty upon information and belief – the material fact that the Dishwashers were defective and would fail prematurely, posing a serious risk to health and safety.

417. Additionally, Defendants advertised and marketed the Dishwashers with the intent not to sell them as advertised. Specifically, Defendants represented that the Dishwashers were free from design defects, even though Defendants knew at all relevant times, but failed to advise Plaintiff Meneghetti and the members of the Illinois Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

418. Defendants intended that Plaintiff Meneghetti and the members of the Illinois Class rely on Defendants' acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or purchasing competitors' dishwashers, or by paying to have their Dishwasher serviced or repaired directly by Defendants or indirectly through one of their agents or authorized repair companies.

419. Had Defendants disclosed all material information regarding the defect to Plaintiff Meneghetti and the members of the Illinois Class, they would not have

107

paid to have their Dishwashers serviced.

420. Defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

421. As a result of the foregoing acts, omissions and unconscionable commercial practices, Plaintiff Meneghetti and the members of the Illinois Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiff Meneghetti and the members of the Illinois Class, including risk of personal injury and death. Plaintiff Meneghetti and the members of the Illinois Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Defendants' conduct.

422. To this day, Defendants continue to conceal the dangerously defective nature of the Dishwashers.

423. Plaintiff Meneghetti and the members of the Illinois Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

424. Copies of the prior complaints in this action were mailed to the State Attorney General of Illinois in accordance with 85 ILCS § 505/10a(d), and a copy of this Fourth Amended Complaint will likewise be mailed to the State Attorney General of Illinois.

## Count XVIII
### Violations Of The Maryland Consumer Protection
### Act, Md. Code Ann., Com. Law §§ 13-301, *et seq.*
### (Plaintiffs Chambers And Van Der Veer, Individually And On Behalf Of The
### Maryland Class, Against Whirlpool)

425. The allegations in Paragraphs 1 through 418 are incorporated by reference as though fully stated herein.

426. The Maryland Consumer Protection Act ("Maryland CPA"), Md. Code Ann., Com. Law §§ 13-301, *et seq.*, prohibits "unfair or deceptive trade practices." *Id.* at § 13-301. Deceptive trade practices include the "[f]ailure to state a material fact if the failure deceives or tends to deceive," and also the "knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same." *Id.* at § 13-301(3), (9).

427. Whirlpool has engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and servicing or repair of Dishwashers it knew to be defective, in violation of the Maryland CPA.

428. Whirlpool, upon information and belief, had actual knowledge of the defect when it placed the Dishwashers in the stream of commerce, based on Whirlpool's testing of the Dishwashers before they were put on the market.

429. In addition, Whirlpool was notified by consumers registering complaints and making warranty claims as early as 2007, if not earlier, regarding the defect manifested at the electronic control board, complained of herein.

430. In addition, upon information and belief, Whirlpool had actual knowledge of the defect based on Whirlpool's testing of the Dishwashers done in response to complaints, replacement part sales data, aggregate data from Dishwasher dealers, and other internal sources.

431. This defect is latent, and is not something that Plaintiffs Chambers and Van der Veer and the members of the Maryland Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

432. In its marketing, sale and servicing or repair of the Dishwashers, Whirlpool undertook active and ongoing steps to conceal the defects and have consciously withheld material facts from Plaintiffs Chambers and Van der Veer and

109

and the members of the Maryland Class to correct the defect in the Dishwashers.

Plaintiffs Chambers and Van der Veer are aware of nothing in Whirlpool's advertising, publicity or marketing materials that discloses the truth about the defect, despite Whirlpool's awareness, or reckless disregard, of the problem.

433. Whirlpool's conduct was objectively deceptive and was likely to deceive reasonable consumers under the circumstances. The fact that a defect in the Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite and combust, thereby preventing the Dishwashers from being used as intended during their useful lives and creating a substantial and unreasonable risk of property damage, personal injury and death, was a material fact that a reasonable consumer would attach importance to at the time of purchase. This fact would influence a reasonable consumer's choice of action during the purchase of a dishwasher.

434. Whirlpool had a duty to disclose its knowledge of this material defect because, *inter alia*, it possessed superior and exclusive knowledge.

435. Whirlpool failed to disclose to Plaintiffs Chambers and Van der Veer and the members of the Maryland Class – even those who had their Dishwashers repaired or replaced under warranty upon information and belief – the material fact that the Dishwashers were defective and would fail prematurely, posing a serious risk to health and safety.

436. Additionally, Whirlpool advertised and marketed the Dishwashers with the intent not to sell them as advertised. Specifically, Whirlpool represented that the Dishwashers were free from design defects, even though Whirlpool knew at all relevant times, but failed to advise Plaintiffs Chambers and Van der Veer and the members of the Maryland Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

437. Whirlpool intended that Plaintiffs Chambers and Van der Veer and the members of the Maryland Class rely on Whirlpool's acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them

110

or purchasing Competitors' dishwashers, or by paying to have their Dishwasher serviced or repaired directly by Whirlpool or indirectly through one of its agents or authorized repair companies.

438. Had Whirlpool disclosed all material information regarding the defect to Plaintiffs Chambers and Van der Veer and the members of the Maryland Class, they would not have purchased the Dishwashers, or they would have paid less for them, or would not have paid to have their Dishwashers serviced.

439. Whirlpool's conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

440. As a result of the foregoing acts, omissions and unconscionable commercial practices, Plaintiffs Chambers and Van der Veer and the members of the Maryland Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiffs Chambers and Van der Veer and the members of the Maryland Class, including risk of personal injury and death. Plaintiffs Chambers and Van der Veer and the members of the Maryland Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Whirlpool's conduct.

441. To this day, Whirlpool continues to conceal the dangerously defective nature of the Dishwashers.

442. Plaintiffs Chambers and Van der Veer and the members of the Maryland Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

## Count XIX
### Violations Of The Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A
### (Plaintiff LeBlanc, Individually And On Behalf Of The Massachusetts

111

Class Against Whirlpool, And Individually And On Behalf Of Those Members Of The Massachusetts Class Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Against Sears)

443. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

444. The Massachusetts Consumer Protection Act ("Massachusetts CPA"), Mass. Gen. Laws Ch. 93A, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* at § 2(a).

445. Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and servicing or repair of Dishwashers they knew to be defective, in violation of the Massachusetts CPA.

446. Defendants, upon information and belief, had actual knowledge of the defect when they placed the Dishwashers in the stream of commerce, based on Whirlpool's testing of the Dishwashers before they were put on the market.

447. In addition, Defendants were notified by consumers registering complaints and making warranty claims as early as 2007, if not earlier, regarding the defect manifested at the electronic control board, complained of herein.

448. In addition, upon information and belief, Defendants had actual knowledge of the defect based on Whirlpool's testing of the Dishwashers done in response to complaints, replacement part sales data, aggregate data from Dishwasher dealers, and other internal sources.

449. This defect is latent, and is not something that Plaintiff LeBlanc and the members of the Massachusetts Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

450. In its marketing, sale and servicing or repair of the Dishwashers, Defendants undertook active and ongoing steps to conceal the defects and have consciously withheld material facts from Plaintiff LeBlanc and the members of the

Massachusetts Class concerning the defect in the Dishwashers.  Plaintiff LeBlanc is aware of nothing in Defendants' advertising, publicity or marketing materials that discloses the truth about the defect, despite Defendants' awareness, or reckless disregard, of the problem.  Nothing on his Dishwasher or in his user manual and warranty disclosed the Defect.

451.   Defendants' conduct was objectively deceptive and was likely to deceive reasonable consumers under the circumstances.  The fact that a defect in the Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite and combust, thereby preventing the Dishwashers from being used as intended during their useful lives and creating a substantial and unreasonable risk of property damage, personal injury and death, was a material fact that a reasonable consumer would attach importance to at the time of purchase.  This fact would influence a reasonable consumer's choice of action during the purchase of a dishwasher.

452.   Defendants had a duty to disclose their knowledge of this material defect because, *inter alia*, they possessed superior and exclusive knowledge.

453.   Defendants failed to disclose to Plaintiff LeBlanc and the members of the Massachusetts Class – even those who had their Dishwashers repaired or replaced under warranty upon information and belief – the  material fact that the Dishwashers were defective and would fail prematurely, posing a serious risk to health and safety.

454.   Additionally, Defendants advertised and marketed the Dishwashers with the intent not to sell them as advertised.  Specifically, Defendants represented that the Dishwashers were free from design defects, even though Defendants knew at all relevant times, but failed to advise Plaintiff LeBlanc and the members of the Massachusetts Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

455.   Defendants intended that Plaintiff LeBlanc and the members of the Massachusetts Class rely on Defendants' acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

purchasing the Plaintiffs' dishwashers or by paying to have their Dishwasher serviced or repaired directly by Defendants or indirectly through one of their agents or authorized repair companies.

456.  Had Defendants disclosed all material information regarding the defect to Plaintiff LeBlanc and the members of the Massachusetts Class, they would not have purchased the Dishwashers, or they would have paid less for them, or would not have paid to have their Dishwashers serviced.

457.  Defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

458.  As a result of the foregoing acts, omissions and unconscionable commercial practices, Plaintiff LeBlanc and the members of the Massachusetts Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiff LeBlanc and the members of the Massachusetts Class, including risk of personal injury and death.  Plaintiff LeBlanc and the members of the Massachusetts Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Defendants' conduct.

459.  To this day, Defendants continue to conceal the dangerously defective nature of the Dishwashers.

460.  Plaintiff LeBlanc and the members of the Massachusetts Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

461.  By letters dated October 31, 2011, Plaintiff LeBlanc's counsel put Defendants on notice that the subject Dishwashers were defective. *See* **Exhibits A and B hereto**.  Those letters provided the notice to Defendants of the deceptive acts and practices alleged herein, as is required under Mass. Gen. Laws Ann. 93A, § 9(3).

All more than thirty (30) days have expired since Defendants' receipt of those letters, and Defendants nonetheless have failed to cure, Plaintiff LeBlanc seeks actual and statutory damages, punitive damages, restitution and injunctive relief on behalf of himself and the Massachusetts Class.

**Count XX**

**Violations Of The Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.***

**(Plaintiff Sample, Individually And On Behalf Of The Missouri Class, Against Whirlpool)**

462. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

463. The Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq.*, prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." *Id.* at § 407.020(1).

464. Whirlpool has engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and servicing or repair of Dishwashers it knew to be defective, in violation of the MMPA.

465. Whirlpool, upon information and belief, had actual knowledge of the defect when it placed the Dishwashers in the stream of commerce, based on Whirlpool's testing of the Dishwashers before they were put on the market.

466. In addition, Whirlpool was notified by consumers registering complaints and making warranty claims as early as 2007, if not earlier, regarding the defect manifested at the electronic control board, complained of herein.

467. In addition, upon information and belief, Whirlpool had actual knowledge of the defect based on Whirlpool's testing of the Dishwashers done in

115

2 | dealers, and other internal sources.

3     468.  This defect is latent, and is not something that Plaintiff Sample and the
4 | members of the Missouri Class, in the exercise of reasonable diligence, could have
5 | discovered independently prior to purchase.

6     469.  In its marketing, sale and servicing or repair of the Dishwashers,
7 | Whirlpool undertook active and ongoing steps to conceal the defects and have
8 | consciously withheld material facts from Plaintiff Sample and the members of the
9 | Missouri Class concerning the defect in the Dishwashers. Plaintiff Sample is aware of
10 | nothing in Whirlpool's advertising, publicity or marketing materials that discloses the
11 | truth about the defect, despite Whirlpool's awareness, or reckless disregard, of the
12 | problem.

13     470.  Whirlpool's conduct was objectively deceptive and was likely to deceive
14 | reasonable consumers under the circumstances. The fact that a defect in the
15 | Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite
16 | and combust, thereby preventing the Dishwashers from being used as intended during
17 | their useful lives and creating a substantial and unreasonable risk of property damage,
18 | personal injury and death, was a material fact that a reasonable consumer would attach
19 | importance to at the time of purchase. This fact would influence a reasonable
20 | consumer's choice of action during the purchase of a dishwasher.

21     471.  Whirlpool had a duty to disclose their knowledge of this material defect
22 | because, *inter alia*, it possessed superior and exclusive knowledge.

23     472.  Whirlpool failed to disclose to Plaintiff Sample and the members of the
24 | Missouri Class – even those who had their Dishwashers repaired or replaced under
25 | warranty upon information and belief – the material fact that the Dishwashers were
defective and would fail prematurely, posing a serious risk to health and safety.

26     473.  Additionally, Whirlpool advertised and marketed the Dishwashers with
27 | the intent not to sell them as advertised. Specifically, Whirlpool represented that the
28

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

Dishwashers were free from design defects even though Whirlpool knew at all relevant times, but failed to advise Plaintiff Sample and the members of the Missouri Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

474. Whirlpool intended that Plaintiff Sample and the members of the Missouri Class rely on Whirlpool's acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or purchasing competitors' dishwashers, or by paying to have their Dishwasher serviced or repaired directly by Whirlpool or indirectly through one of their agents or authorized repair companies.

475. Had Whirlpool disclosed all material information regarding the defect to Plaintiff Sample and the members of the Missouri Class, they would not have purchased the Dishwashers, or they would have paid less for them, or would not have paid to have their Dishwashers serviced.

476. Whirlpool's conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

477. As a result of the foregoing acts, omissions and unconscionable commercial practices, Plaintiff Sample and the members of the Missouri Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiff Sample and the members of the Missouri Class, including risk of personal injury and death. Plaintiff Sample and the members of the Missouri Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Whirlpool's conduct.

478. To this day, Whirlpool continues to conceal the dangerously defective nature of the Dishwashers.

479. Plaintiffs, Sam Dacumos and the members of the Missouri Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

**Count XXI**

**Violations Of The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.***

**(Plaintiffs Cicchelli, Milicia And Beal, Individually And On Behalf Of Those Members Of The New Jersey Class Who Did Not Incur Property Damages Their Dishwashers, Against Whirlpool, And Plaintiffs Cicchelli And Beal, Individually And On Behalf Of Those Members Of The New Jersey Class Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears And Did Not Incur Property Damages Beyond Their Dishwashers, Against Sears)**

480. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

481. The New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.*, prohibits any "[f]raud, etc., in connection with sale or advertisement of merchandise or real estate." *Id.* at § 56:8-2. The NJCFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

*Id.*

482. Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval,

1 | marketing, promotion, distribution, sale and servicing or repair of Dishwashers they
2 | knew to be defective, in violation of the NJCFA.

3 | 483. Defendants, upon information and belief, had actual knowledge of the
4 | defect when they placed the Dishwashers in the stream of commerce, based on
5 | Whirlpool's testing of the Dishwashers before they were put on the market.

6 | 484. In addition, Defendants were notified by consumers registering
7 | complaints and making warranty claims as early as 2007, if not earlier, regarding the
8 | defect manifested at the electronic control board, complained of herein.

9 | 485. In addition, upon information and belief, Defendants had actual
10 | knowledge of the defect based on Whirlpool's testing of the Dishwashers done in
11 | response to complaints, replacement part sales data, aggregate data from Dishwasher
12 | dealers, and other internal sources.

13 | 486. This defect is latent, and is not something that Plaintiffs Cicchelli,
14 | Milicia and Beal and the members of the New Jersey Class, in the exercise of
15 | reasonable diligence, could have discovered independently prior to purchase.

16 | 487. In their marketing, sale and servicing or repair of the Dishwashers,
17 | Defendants undertook active and ongoing steps to conceal the defects and have
18 | consciously withheld material facts from Plaintiffs Cicchelli, Milicia and Beal and the
19 | members of the New Jersey Class concerning the defect in the Dishwashers. Plaintiffs
20 | Cicchelli, Milicia and Beal are aware of nothing in Defendants' advertising, publicity
21 | or marketing materials that discloses the truth about the defect, despite Defendants'
22 | awareness, or reckless disregard, of the problem. Nothing on their Dishwashers or in
23 | their user manuals and warranties disclosed the Defect.

24 | 488. Defendants' conduct was objectively deceptive and was likely to deceive
25 | reasonable consumers under the circumstances. The fact that a defect in the
26 | Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite
27 | and combust, thereby preventing the Dishwashers from being used as intended during
28 | their useful lives and creating a substantial and unreasonable risk of property damage,

119

importance to at the time of purchase. This fact would influence a reasonable consumer's choice of action during the purchase of a dishwasher.

489. Defendants had a duty to disclose their knowledge of this material defect because, *inter alia*, they possessed superior and exclusive knowledge.

490. Defendants failed to disclose to Plaintiffs Cicchelli, Milicia and Beal and the members of the New Jersey Class – even those who had their Dishwashers repaired or replaced under warranty upon information and belief – the material fact that the Dishwashers were defective and would fail prematurely, posing a serious risk to health and safety.

491. Additionally, Defendants advertised and marketed the Dishwashers with the intent not to sell them as advertised. Specifically, Defendants represented that the Dishwashers were free from design defects, even though Defendants knew at all relevant times, but failed to advise Plaintiffs Cicchelli, Milicia and Beal and the members of the New Jersey Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

492. Defendants intended that Plaintiffs Cicchelli, Milicia and Beal and the members of the New Jersey Class rely on Defendants' acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or purchasing competitors' dishwashers, or by paying to have their Dishwasher serviced or repaired directly by Defendants or indirectly through one of their agents or authorized repair companies.

493. Had Defendants disclosed all material information regarding the defect to Plaintiffs Cicchelli, Milicia and Beal and the members of the New Jersey Class, they would not have purchased the Dishwashers, or they would have paid less for them, or would not have paid to have their Dishwashers serviced.

494. Defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

120

commercial practices, Plaintiffs Cicchelli, Milicia and Beal and the members of the New Jersey Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiffs Cicchelli, Milicia and Beal and the members of the New Jersey Class, including risk of personal injury and death. Plaintiffs Cicchelli, Milicia and Beal and the members of the New Jersey Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Defendants' conduct.

496. To this day, Defendants continue to conceal the dangerously defective nature of the Dishwashers.

497. Plaintiffs Cicchelli, Milicia and Beal and the members of the New Jersey Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

498. Copies of the previous complaints were mailed to the State Attorney General of New Jersey in accordance with N.J.S.A. § 56:8-20, and a copy of this Fourth Amended Complaint will likewise be mailed to the State Attorney General of New Jersey.

## Count XXII
### Violations Of The New York Deceptive
### Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*
**(Plaintiffs Koswener And Paolini, Individually And On Behalf Of The New York Class, Against Whirlpool, And Plaintiff Koswener, Individually And On Behalf Of Those Members Of The New York Class Who Purchased Their Dishwashers From, Or Had Their Dishwashers Serviced By, Sears, Against Sears)**

499. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

121

500. The New York Deceptive Practices Act ("NYDPA"), N.Y. Gen. Bus. Law §§ 349, *et seq.*, provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." *Id.* at § 349(a).

501. Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and servicing or repair of Dishwashers they knew to be defective, in violation of the NYDPA.

502. Defendants, upon information and belief, had actual knowledge of the defect when they placed the Dishwashers in the stream of commerce, based on Whirlpool's testing of the Dishwashers before they were put on the market.

503. In addition, Defendants were notified by consumers registering complaints and making warranty claims as early as 2007, if not earlier, regarding the defect manifested at the electronic control board, complained of herein.

504. In addition, upon information and belief, Defendants had actual knowledge of the defect based on Whirlpool's testing of the Dishwashers done in response to complaints, replacement part sales data, aggregate data from Dishwasher dealers, and other internal sources.

505. This defect is latent, and is not something that Plaintiffs Koswener and Paolini and the members of the New York Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

506. In its marketing, sale and servicing or repair of the Dishwashers, Defendants undertook active and ongoing steps to conceal the defects and have consciously withheld material facts from Plaintiffs Koswener and Paolini and the members of the New York Class concerning the defect in the Dishwashers. Plaintiffs Koswener and Paolini are aware of nothing in Defendants' advertising, publicity or marketing materials that discloses the truth about the defect, despite Defendants'

122

awareness of problems or reckless disregard of the problems. Nothing on their Dishwashers or in their user manuals and warranties disclosed the Defect.

507.    Defendants' conduct was objectively deceptive and was likely to deceive reasonable consumers under the circumstances.  The fact that a defect in the Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite and combust, thereby preventing the Dishwashers from being used as intended during their useful lives and creating a substantial and unreasonable risk of property damage, personal injury and death, was a material fact that a reasonable consumer would attach importance to at the time of purchase.  This fact would influence a reasonable consumer's choice of action during the purchase of a dishwasher.

508.    Defendants had a duty to disclose their knowledge of this material defect because, *inter alia*, they possessed superior and exclusive knowledge.

509.    Defendants failed to disclose to Plaintiffs Koswener and Paolini and the members of the New York Class – even those who had their Dishwashers repaired or replaced under warranty upon information and belief – the  material fact that the Dishwashers were defective and would fail prematurely, posing a serious risk to health and safety.

510.    Additionally, Defendants advertised and marketed the Dishwashers with the intent not to sell them as advertised.  Specifically, Defendants represented that the Dishwashers were free from design defects, even though Defendants knew at all relevant times, but failed to advise Plaintiffs Koswener and Paolini and the members of the New York Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

511.    Defendants intended that Plaintiffs Koswener and Paolini and the members of the New York Class rely on Defendants' acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or purchasing competitors' dishwashers, or by paying to have their Dishwasher

serviced or repaired directly by Defendants or indirectly through one of their agents or authorized repair companies.

512. Had Defendants disclosed all material information regarding the defect to Plaintiffs Koswener and Paolini and the members of the New York Class, they would not have purchased the Dishwashers, or they would have paid less for them, or would not have paid to have their Dishwashers serviced.

513. Defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

514. As a result of the foregoing acts, omissions and unconscionable commercial practices, Plaintiffs Koswener and Paolini and the members of the New York Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiffs Koswener and Paolini and the members of the New York Class, including risk of personal injury and death. Plaintiffs Koswener and Paolini and the members of the New York Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Defendants' conduct.

515. To this day, Defendants continue to conceal the dangerously defective nature of the Dishwashers.

516. Plaintiffs Koswener and Paolini and the members of the New York Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

## COUNT XXIII
### Violations Of The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, *et seq.*
### (Plaintiff Steffes, Individually And On Behalf Of The Utah Class, Against Whirlpool)

124

517. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

518. The Utah Consumer Sales Practices Act ("UCSPA"), Utah Code Ann. §§ 13-11-1, *et seq.*, provides that "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;  (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;" or "(j)(ii) fails to honor a warranty or a particular warranty term." *Id.* at § 13-11-4.

519. Defendants engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and servicing or repair of Dishwashers they knew to be defective, in violation of the UCSPA: because they indicated that the Dishwashers had performance characteristics and benefits they did not; because they indicated that the Dishwashers were of a particular standard and quality that they were not; and because they failed to honor the warranty that applied to the Dishwashers.

520. As alleged above, Defendants had actual knowledge of the Defect prior to, at the time of, and after manufacture and sale of the Dishwashers.

521. This defect is latent, and is not something that Plaintiff Steffes and the members of the Utah Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

522. In their marketing, sale and servicing or repair of the Dishwashers, Defendants undertook active and ongoing steps to conceal the defects and have consciously withheld material facts from Plaintiff Steffes and the members of the Utah Class concerning the defect in the Dishwashers. Plaintiff Steffes is aware of nothing in Defendants' advertising, publicity or marketing materials that discloses the truth

125

about the Defect. Despite Defendants' awareness or reckless disregard of the problem. Nothing on her Dishwasher or in her user manual and warranty disclosed the Defect.

523.  Defendants' conduct was objectively deceptive and was likely to deceive reasonable consumers under the circumstances.

524.  The fact that a defect in the Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite and combust, thereby preventing the Dishwashers from being used as intended during their useful lives and creating a substantial and unreasonable risk of property damage, personal injury and death, is material, in that it would influence a reasonable consumer's purchasing decision.

525.  Defendants had a duty to disclose their knowledge of this material defect because, *inter alia*, they possessed superior and exclusive knowledge.

526.  Defendants failed to disclose to Plaintiff Steffes and the members of the Utah Class – even those who had their Dishwashers repaired or replaced under warranty upon information and belief – the material fact that the Dishwashers were defective and would fail prematurely, posing a serious risk to health and safety.

527.  Additionally, Defendants advertised and marketed the Dishwashers with the intent not to sell them as advertised.  Specifically, Defendants represented that the Dishwashers were free from design defects, even though Defendants knew at all relevant times, but failed to advise Plaintiff Steffes and the members of the Utah Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

528.  Defendants intended that Plaintiff Steffes and the members of the Utah Class rely on Defendants' acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or purchasing competitors' dishwashers, or by paying to have their Dishwasher serviced or repaired directly by Defendants or indirectly through one of their agents or authorized repair companies.

529. Had Defendants disclosed all material information regarding the defect to Plaintiff Steffes and the members of the Utah Class, they would not have purchased the Dishwashers, or they would have paid less for them, or would not have paid to have their Dishwashers serviced.

530. Defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

531. As a result of the foregoing acts, omissions and unconscionable commercial practices, Plaintiff Steffes and the members of the Utah Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiff Steffes and the members of the Utah Class, including risk of personal injury and death. Plaintiff Steffes and the members of the Utah Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Defendants' conduct.

532. Plaintiff Steffes and the members of the Utah Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

## COUNT XXIV
### Violations Of The Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq.*
**(Plaintiffs Mederlet And Walker, Individually And On Behalf Of The Virginia Class, Against Whirlpool, And Plaintiff Mederlet, Individually And On Behalf Of Those Members Of The Virginia Class Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Against Sears)**

533. The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

127

534. The Virginia Consumer Protection Act ("Virginia CPA"), Va. Code Ann. §§ 59.1-196, *et seq.*, prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." *Id.* at § 59.1-200(A). Prohibited acts and practices include: "Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;" "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model;" "[a]dvertising or offering for sale goods that are . . . defective, blemished, deteriorated, or reconditioned . . . , without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are . . . defective, blemished, deteriorated, reconditioned;" "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;" and "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." *Id.* at § 59.1-200(A)(5), (6), (7), (8) and (14).

535. Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the design, manufacture, approval, marketing, promotion, distribution, sale and servicing or repair of Dishwashers they knew to be defective, in violation of the Virginia CPA.

536. Defendants, upon information and belief, had actual knowledge of the defect when they placed the Dishwashers in the stream of commerce, based on Whirlpool's testing of the Dishwashers before they were put on the market.

537. In addition, Defendants were notified by consumers registering complaints and making warranty claims as early as 2007, if not earlier, regarding the defect manifested at the electronic control board, complained of herein.

538. In addition, upon information and belief, Defendants had actual knowledge of the defect based on Whirlpool's testing of the Dishwashers done in response to complaints, replacement part sales data, aggregate data from Dishwasher dealers, and other internal sources.

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

2  Walker and the members of the Virginia Class, in the exercise of reasonable diligence,

3  could have discovered independently prior to purchase.

4      540.  In their marketing, sale and servicing or repair of the Dishwashers,

5  Defendants undertook active and ongoing steps to conceal the defects and have

6  consciously withheld material facts from Plaintiffs Mederlet and Walker and the

7  members of the Virginia Class concerning the defect in the Dishwashers.  Plaintiffs

8  Mederlet and Walker are aware of nothing in Defendants' advertising, publicity or

9  marketing materials that discloses the truth about the defect, despite Defendants'

10  awareness, or reckless disregard, of the problem.  Nothing on their Dishwashers or in

11  their user manuals and warranties disclosed the Defect.

12      541.  Defendants' conduct was objectively deceptive and was likely to deceive

13  reasonable consumers under the circumstances.  The fact that a defect in the

14  Dishwashers would cause the Dishwashers' control boards to overheat, smoke, ignite

15  and combust, thereby preventing the Dishwashers from being used as intended during

16  their useful lives and creating a substantial and unreasonable risk of property damage,

17  personal injury and death, was a material fact that a reasonable consumer would attach

18  importance to at the time of purchase.  This fact would influence a reasonable

19  consumer's choice of action during the purchase of a dishwasher.

20      542.  Defendants had a duty to disclose their knowledge of this material defect

21  because, *inter alia*, they possessed superior and exclusive knowledge.

22      543.  Defendants failed to disclose to Plaintiffs Mederlet and Walker and the

23  members of the Virginia Class – even those who had their Dishwashers repaired or

24  replaced under warranty upon information and belief – the  material fact that the

25  Dishwashers were defective and would fail prematurely, posing a serious risk to

26  health and safety.

27      544.  Additionally, Defendants advertised and marketed the Dishwashers with

28  the intent not to sell them as advertised.  Specifically, Defendants represented that the

Dishwashers were in fact free from design defects, although Defendants knew at all relevant times, but failed to advise Plaintiffs Mederlet and Walker and the members of the Virginia Class, that the Dishwashers were in fact defectively designed and that such defect was incorporated in the units' manufacture.

545. Defendants intended that Plaintiffs Mederlet and Walker and the members of the Virginia Class rely on Defendants' acts of concealment and omissions by purchasing the Dishwashers at full price rather than paying less for them or purchasing competitors' dishwashers, or by paying to have their Dishwasher serviced or repaired directly by Defendants or indirectly through one of their agents or authorized repair companies.

546. Had Defendants disclosed all material information regarding the defect to Plaintiffs Mederlet and Walker and the members of the Virginia Class, they would not have purchased the Dishwashers, or they would have paid less for them, or would not have paid to have their Dishwashers serviced.

547. Defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

548. As a result of the foregoing acts, omissions and unconscionable commercial practices, Plaintiffs Mederlet and Walker and the members of the Virginia Class have suffered an ascertainable loss by purchasing defective Dishwashers that are unable to perform their essential function of washing tableware, silverware, pots and pans for their expected useful life and that present a risk to the safety of Plaintiffs Mederlet and Walker and the members of the Virginia Class, including risk of personal injury and death. Plaintiffs Mederlet and Walker and the members of the Virginia Class have also incurred additional costs to repair and/or replace their Dishwashers, have been denied use of their Dishwashers, and/or have suffered unreasonable diminution of value in their Dishwashers as a result of Defendants' conduct.

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

549.  To this day, Defendants continue to conceal the dangerously defective nature of the Dishwashers.

550.  Plaintiffs Mederlet and Walker and the members of the Virginia Class are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

## Count XXV
### Declaratory Relief Pursuant To 28 U.S.C. § 2201
(All Plaintiffs, Individually and On Behalf Of Their Respective State Classes, Against Whirlpool, And Plaintiffs Himler, Bliss, Cicchelli, LeBlanc, Mederlet, O'Donnell, Meneghetti, Beal And Koswener, Individually And On Behalf Of Those Members Of Their Respective State Classes Who Purchased Their Dishwashers From, Or Had Them Serviced By, Sears, Against Sears)

551.  The allegations in Paragraphs 1-215 are incorporated by reference as though fully stated herein.

552.  There is an actual controversy between Plaintiffs and the State Classes, on the one hand, and Defendants, on the other hand, concerning the nature of the defect in the Dishwashers and the entitlement of Plaintiffs and the State Classes to relief therefor.  Plaintiffs and the State Classes allege that the Dishwashers contain a dangerous latent defect, known to the Defendants prior to and at the time of sale, that would cause the Dishwasher to malfunction and fail, and that posed a hazard to health and safety, as well as property.  Plaintiffs and the State Classes aver that this dangerous latent condition imposed an affirmative duty on the Defendants to repair or recall the Dishwashers, and to fix the unsafe condition in which they were sold and operated, at no expense to the Plaintiffs and the State Classes.  Plaintiffs and the State Classes further assert that the Defendants are estopped to invoke defenses based on limitations in the warranties.  Defendants, on the other hand, upon information and belief, allege that there is no latent defect in the Dishwashers and that in all events their warranties bar Plaintiffs' claims.

553.   Plaintiffs and the State Classes seek a declaratory judgment pursuant to 28 U.S.C. § 2201 as follows:

A.   To the extent Defendants allege that any limitations, restrictions or disclaimers of express warranty preclude full recovery of damages, the warranties fail in their essential purpose because the remaining remedies provided therein are inadequate and deprive Plaintiffs and the State Classes of the benefit of the bargain of their purchases, because Defendants at the time of sale and thereafter concealed and suppressed that the Dishwashers were defective, and because the provisions are otherwise unconscionable in light of the latent defect that rendered the Dishwashers defective at the time of sale;

B.   To the extent Defendants allege that any limitations, restrictions or disclaimers of implied warranty preclude full recovery of damages, the same are unlawful and unenforceable;

C.   To the extent Defendants allege that any limitations, restrictions or disclaimers of implied warranty preclude full recovery of damages, the same are barred by Defendants' failure to disclose the dangerous latent defect in the Dishwashers, complained of herein, at the time of sale;

D.   Any releases obtained by Defendants from any of the Plaintiffs and the State Classes that did not accompany full compensation to them were fraudulently induced, are unconscionable, were obtained by suppression and concealment, were obtained under duress by persons needing to repair their Dishwashers, and therefore are null and void; and

E.   Plaintiffs are entitled to permanent injunctive relief against the Defendants enjoining them from continuing to commit the acts

complained of herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the State Classes, pray that the Court:

1.     Certify this action as a class action, with appropriate Subclasses as described hereinabove, pursuant to Fed.R.Civ.P. 23, designate Plaintiffs as the Class and Subclass representatives, and designate counsel for Plaintiffs as Class and Subclass Counsel;

2.     Permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein, and order Defendants to engage in a corrective notice and recall campaign;

3.     Grant a permanent injunction mandating that Defendants pay, in part or in whole, for the replacement of the Dishwashers with properly designed Dishwashers that do not pose a hazard to health and safety, or alternatively, with properly designed replacement parts, including, *inter alia*, properly designed spaded terminal connections between the wiring from the heater and the console control area including the circuit board, that do not pose a hazard to health and safety;

4.     Compel Defendants to establish a program to reimburse its warranty claims previously denied or paid in part, and to reimburse Defendants' customers who have had to pay to repair and/or replace their defective Dishwashers and/or electronic control boards and related components;

5.     Grant restitution to Plaintiffs and the Classes and Subclasses and require Defendants to disgorge their ill-gotten gains;

6.     Award damages other than for personal injury, including compensatory and statutory damages, to Plaintiffs, the Classes and the Subclasses for the wrongful acts complained of herein, in an amount to be determined at trial;

7.     Award punitive or exemplary damages to Plaintiffs, the Classes and the Subclasses in an amount of which will be proven at trial.

8.      Award Plaintiffs, the Classes and the Subclasses their expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law;

9.      Award Plaintiffs pre-judgment and post-judgment interest at highest rate allowed by law; and

10.     Grant all general, special, and equitable relief to which Plaintiffs, the Classes and the Subclasses are entitled by law; and

11.     Grant such other and further relief as may be determined by the Court to be just, equitable and proper.

Dated: May 6, 2013

COHON & POLLAK, LLP

RIFKIN, LIVINGSTON, LEVITAN & SILVER, LLC

WEINSTEIN KITCHENOFF & ASHER LLC

CHIMICLES & TIKELLIS LLP

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:     /s/ Charles S. Fax
        Charles S. Fax
        Rifkin, Livingston, Levitan & Silver, LLC
        Attorneys for Plaintiffs

134

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs hereby demand a trial by jury pursuant to Rule 38(b) of the Federal

3  Rules of Civil Procedure on all issues so triable.

4  Dated: May 6, 2013

5

6                  COHON & POLLAK, LLP

7                  RIFKIN, LIVINGSTON, LEVITAN & SILVER, LLC

8                  WEINSTEIN KITCHENOFF & ASHER LLC

9                   CHIMICLES & TIKELLIS LLP

10                  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

11

12              By: _____/s/ Charles S. Fax_____

13                  Charles S. Fax
                Rifkin, Livingston, Levitan & Silver, LLC

14                  Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

135

# CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2013, I caused the attached Plaintiffs' Fourth Amended Class Action Complaint to be served by electronic mail and first-class mail, postage prepaid, on the following:

Michael T. Williams ( *pro hac vice*)
williams@wtotrial.com
Andrew M. Unthank *(pro hac vice)*
unthank@wtotrial.com
Galen D. Bellamy (SBN 231792)
bellamy@wtotrial.com
Catherine R. Ruhland (*pro hac vice*)
ruhland@wtotrial.com
**Wheeler Trigg O'Donnell LLP**
370 17th Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244-l800
Facsimile: (303) 244-1879

Dean J. Zipser (SBN 094680)
E-mail: dzipser@manatt.com
Adina L. Witzling (SBN 211719)
E-mail: awitzling@manatt.com
Adrianne E. Marshack (SBN 253682)
E-mail: amarshack@man.att.com
**Manatt, Phelps & Phillips; LLP**
695 Town Center Drive, 14th floor
Costa Mesa, California 92626-7223
Telephone: (714) 371-2500
Facsimile: (714) 371-2550

Attorneys for Defendants


          Charles S. Fax

Charles S. Fax

**FOURTH AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**Case No. 8:11-cv-01733-FMO-MLG**

# RIFKIN, LIVINGSTON, LEVITAN & SILVER, LLC
## ATTORNEYS AT LAW

ALAN M. RIFKIN
SCOTT A. LIVINGSTON (MD, DC)
LAURENCE LEVITAN
EDGAR P. SILVER†
MICHAEL V. JOHANSEN
JOEL D. ROZNER (MD, DC)
RICHARD K. REED
NORMAN D. RIVERA
M. CELESTE BRUCE (MD, DC)
JAMIE B. EISENBERG (MD, DC, NY)
CHARLES S. FAX (MD, DC, NY)
CAROLYN JACOBS
PATRICK H. RODDY
ELLEN B. FLYNN (MD, DC, CT)
ERIC L. BRYANT
MICHAEL D. BERMAN (MD, DC)
JOYCE E. SMITHEY (MD, DC, NH)
A. THOMAS PEDRONI, JR.
MELVIN A. STEINBERG†
MICHAEL S. NAGY (MD, VA)
L. TERI SPRADLIN-DAHN†
LIESEL J. SCHOPLER (MD, DC)
CHRISTOPHER L. HATCHER
MICHAEL A. MILLER
LINDSAY S. KATZ (NY, NJ)
JULIA E. BRAATEN
LANCE W. BILLINGSLEY†
ELIZABETH K. MILLER†
†   OF COUNSEL
(NON-LAWYER/CONSULTANT)
JOSH M. WHITE

7979 OLD GEORGETOWN ROAD • SUITE 400
BETHESDA, MARYLAND 20814
(301) 951-0150 • FAX (301) 951-0172
WWW.RLLS.COM

225 DUKE OF GLOUCESTER STREET
ANNAPOLIS, MARYLAND 21401
(410) 269-5066 • FAX (410) 269-1235

14601 MAIN STREET
UPPER MARLBORO, MARYLAND 20772
(301) 345-7700 • FAX (301) 345-1294

600 WASHINGTON AVENUE • SUITE 305
TOWSON, MARYLAND 21204
(410) 583-8433 • FAX (410) 583-9439

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

October 31, 2011

Whirlpool Corporation
2000 N. M-63
Benton Harbor, Michigan 49022-2692

Whirlpool Corporation Resident Agent
CSC-Lawyers Incorporating Service
2730 Gateway Oaks Drive, Suite 100
Sacramento, California 95833

Re:     *Notice of Violations of the Magnuson-Moss Warranty Act*
        *and California Consumer Legal Remedies Act, and Opportunity to Cure*

Dear Sir or Madam:

I write on behalf of clients Steve Chambers, Lynn Van Der Veer, David Brown, Bach-Tuyet Brown, Kevin O'Donnell, Joseph Cicchelli, Kurt Himler, Susan Milicia, Gary LeBlanc and James Cashman ("the Named Parties"), and all others similarly situated. They are purchasers of dishwashers manufactured by Whirlpool and sold under the "KitchenAid" and "Kenmore" brand names.

Whirlpool Corporation
October 31, 2011
Page 2

        This letter constitutes notification to Whirlpool Corporation ("Whirlpool"), pursuant to
15 U.S.C. § 2310(e) and California Civil Code § 1782, that Whirlpool has violated the
Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and the California Consumer Legal
Remedies Act, Cal. Civ. Code § 1750, *et seq.*, with regard to the subject dishwashers. The
details are set forth below.

        A.      Incidents And Damages

        In 2002, Steve Chambers and his wife Lynn Van Der Veer, who live in Frederick,
Maryland, purchased a home with a new KitchenAid Superba dishwasher, model number
KUDS01DJSS0, serial number FL0618828. On March 22, 2009, they set their dishwasher to the
normal wash cycle. Flames quickly erupted from the top of the dishwasher and rendered it
unusable.     Steve telephoned Whirlpool to alert the company to the problem.     Whirlpool,
however, refused to send anyone to investigate the fire or replace the machine at company
expense. The dishwasher was examined at a laboratory which determined that the control board
was defective.    Steve then sent a facsimile message to Whirlpool's president, identifying
numerous individuals who had similar problems with their dishwashers. Steve never received a
response. He also called Sears and informed an employee in the safety department that the
Whirlpool-manufactured dishwashers were defective. The Sears employee told Steve that he
would investigate, but Steve heard nothing further. Upon information and belief, Whirlpool and
Sears continue to deny any awareness that Whirlpool-manufactured dishwashers combust due to
defectively designed control boards.

        David Brown and his wife Bach-Tuyet, who reside in Fresno, California, bought a
KitchenAid dishwasher, model number KUDP01[1], from Pacific Sales in Torrance, California, in
September 2006, for a residence they owned and rented out in Playa del Rey, California. On
April 4, 2010, the tenants were awakened by smoke from an electrical fire in the dishwasher,
which was in the "off" position. Smoke and soot filled the house. The fire burned a hole
through the kitchen cabinetry, and counters and cabinets were damaged by the smoke and heat.
Fire fighters caused further damage in containing the conflagration. One of the tenants suffered
breathing problems caused by smoke inhalation and had to be admitted to the hospital that night.
The tenants were forced to vacate the property for three weeks, causing David and Tuyet to lose
approximately $3,000 in rental income. The entire kitchen had to be replaced. The total cost to
clean and repair the damage was approximately $70,000. The dishwasher was subsequently
examined in a laboratory, which found that the fire was caused by electrical failure in the
dishwasher.

        Kevin O'Donnell, a resident of Marietta, Georgia, bought a KitchenAid dishwasher,
model number KUDS01FLSS, serial number FR3312380, from H.H. Gregg in Kennesaw,
Georgia, on September 25, 2004. Three and a half years later, on May 23, 2008, the control
board in the dishwasher combusted. The control board was replaced, but the new control board
caught fire on July 24, 2010. As with the first fire, Kevin called the fire department. Six weeks

---

[1] The dishwasher's serial number was rendered illegible by the subsequent fire, and thus is unknown.

later, Whirlpool replaced the heating element and the control board for a second time. While the machine is currently working, Kevin is afraid to run it and will not do so when he is asleep or when no one is in the house, for obvious reasons.

Joseph Cicchelli, who lives in Hackensack, New Jersey, bought a Kenmore Elite dishwasher, model number 665.17584200, serial number FM 2401353, from Sears in Hackensack, New Jersey, on or about July 4, 2002, and Sears installed it on or about July 8, 2002. On Easter Sunday in 2009, the dishwasher, while running, started making hissing and popping noises – and smoke began ballooning from the unit. Joseph opened the dishwasher door to disengage the machine, but it kept running. Joseph then ran to the circuit breaker and switched it off. He later disassembled the dishwasher and saw that the electronic control board was fried. He purchased a new electronic control board and fuse kit. On information and belief, the store where Joseph purchased the replacement electronic control board keeps many in stock, as customers frequently purchase them to replace burned-out units from their Whirlpool-manufactured dishwashers. Joseph contacted Sears's customer service by e-mail and phone. Sears expressed no concern over his report, and refused to compensate Joseph for the loss.

Kurt Himler, who lives in Tustin, California, purchased his KitchenAid dishwasher, model number KUDSO1FLSS, serial number FR5219875, from a Sears in California in 2004. In the summer of 2010, the dishwasher combusted, damaging the wooden cabinets in the kitchen. Whirlpool eventually replaced the destroyed dishwasher with a downgraded model, and refused to reimburse Kurt for the damaged cabinets.

In March 2007, Susan Milicia, a resident of Somerdale, New Jersey, bought a KitchenAid dishwasher, model number KUDPO2CRBS2, serial number FT4107404, from DirectBuy Club in Maple Shade, New Jersey. In February 2009, the dishwasher made pinging noises, emitted a burnt plastic smell, shut down mid-cycle and would not drain. A technician replaced the board fuse and wiring. The dishwasher did the same thing, however, in January 2010. A technician then replaced the entire fuse kit. In July 2010, as the dishwasher was running, it again emitted an intense burnt plastic smell. A Whirlpool technician later determined that the wiring had melted. Susan called Whirlpool and advised the representative with whom she spoke that she had seen multiple complaints online about Whirlpool dishwashers' propensity to burn up. The Whirlpool representative denied any knowledge of prior complaints. Whirlpool offered only two options to Susan: 1) a refund in the amount of $285, a prorated rate based on the age of her dishwasher, or 2) the purchase of a new Whirlpool dishwasher for $400.00. Susan opted to purchase the new Whirlpool dishwasher.

In November, 2004, Gary LeBlanc, who lives in Peabody, Massachusetts, bought his Kenmore Elite dishwasher, model number 665.16279400, serial number FR4201316, from a local Sears. On May 29, 2010, at approximately 10 p.m., after his family had gone to bed, Gary smelled electrical wires burning, which he traced to the dishwasher. When he opened the dishwasher door, smoke billowed out, but the machine did not shut off. The dishwasher was on its own house circuit breaker, which did not automatically trip, so Gary ran down to the basement and switched off the circuit breaker manually. He disassembled the dishwasher door and saw that the electronic control board and related wiring were burnt. Two of the wires had

burned the knife terminals off the electronic control board and melted a hole through the plastic
housing in which the electronic control board had rested. The wiring harness also had many
wires that had so overheated that they had melted into the rubber installation on the inside door
backing. Gary called Sears and Whirlpool. They told him that there was no problem with his
dishwasher and refused to help. Gary then contacted Sears Cares, Sears's executive customer
service, and it dispatched a technician to examine the dishwasher. The technician advised that he
had never seen a dishwasher "cooked that bad" before, and that it needed a new electronic
control board and wiring harness. Gary was required to pay for one half of the repair cost.

James Cashman, who lives in Sherman Oaks, California, had a KitchenAid Dishwasher,
model number KUDPO1LWH2, serial number FP2502015, which was purchased by the
previous home owners from Pacific Sales in Woodland Hills, California. On the evening of May
10, 2010, James and his wife were watching television when an overpowering smoky, burnt
plastic smell emitted from the kitchen. They saw smoke billowing from the dishwasher. It was
mid-cycle, and the house circuit breaker to which it was connected had not tripped. The
Whirlpool representative with whom James then spoke denied knowledge of what may have
caused the combustion, and merely gave him a list of authorized repair companies. A technician
was dispatched the following day, and upon removing the door cover, saw that the panel was
burnt and that the plastic connector had melted into the electronic control board. The repairman
advised that James would need a new electronic control board and connector, which would cost
approximately $300. In searching the Internet, James discovered that this is a recurring problem
with Whirlpool dishwashers before the end of their reasonably expected useful life. Whirlpool
sent a second technician to evaluate the problem. He reached the same conclusion as the first
technician, and said that he would report this to Whirlpool, which would then contact James.
The following day, Whirlpool called James and recommended that he replace the dishwasher,
which Whirlpool would arrange for 30% off an equivalent model dishwasher, or 15% off of any
other Whirlpool model. James asked if he could be assured that a new Whirlpool dishwasher
would not pose the same hazard. Receiving inadequate assurances, James declined the offer and
purchased a new Bosch dishwasher, which functions properly.

A.    Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

Whirlpool holds itself out as a competent maker of dishwashers, and is well aware of the
particular purpose for which they are intended. The Named Parties, and all others similarly
situated, relied on Whirlpool's reputed skill, judgment, reputation and experience in deciding to
purchase their dishwashers. The subject dishwashers owned by the Named Parties and all others
similarly situated were defectively designed, however, and were removed from Whirlpool's
manufacturing facilities and control with one or more latent defects built into the design and
specifications of the models referenced above. Such defective design and unfitness for the
ordinary purpose for which the dishwashers were intended, and their consequent failure as
described and for the reasons set forth above, render Whirlpool in breach of its implied
warranties of merchantability and fitness for a particular purpose.

Further, Whirlpool expressly warranted that in the second through fifth years from the
date of a dishwasher's installation, the company would provide necessary replacement parts for

electronic control components free of charge. Within that timeframe, the electronic control boards of the Whirlpool-made dishwashers of David and Tuyet Brown, Leo Haeger and Susan Milicia, and others similarly situated, combusted due to faulty design and specifications. Despite notification of these catastrophic, danger failures, Whirlpool, in breach of its express warranty, failed and refused to provide replacement parts free of charge.

Whirlpool's actions and omissions are violative of, and give rise to claims under, the Magnuson-Moss Warranty Act ("MMWA"). MMWA, *inter alia*, authorizes "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under . . . a written warranty, implied warranty . . . [to] bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1).

      B.     Violations of the California Consumer Legal
               Remedies Act, Cal. Civ. Code § 1750, *et seq.*

Whirlpool designed, developed, manufactured, marketed and sold the subject dishwashers. They are defective because their electronic control boards spontaneously overheat and combust, emitting dangerous and destructive flames, smoke and fumes. The subject dishwashers fail within their reasonably expected useful life. Whirlpool has had actual notice of the defective design and specifications for these dishwashers since at least 2008, due to numerous consumer complaints and warranty claims relating to the electronic control board defects. Whirlpool has had a continuing duty to disclose its knowledge of these material defects; Whirlpool has refused to acknowledge, and has actively concealed its knowledge of, such defects. Whirlpool has never recalled the subject dishwashers, nor has Whirlpool notified the purchasers of the subject dishwashers of their dangerous and destructive defects. Whirlpool's actions and omissions are violative of Cal. Civ. Code §§ 1770(a)(5) and 1770(a)(7).

In addition, Whirlpool has violated Cal. Civ. Code § 1770(a)(9) by advertising and marketing the subject dishwashers with the intent not to sell them as advertised. Whirlpool represented that the dishwashers were free of design defects when in fact – known to Whirlpool but concealed from the Named Parties and all others similarly situated – the dishwashers were dangerously defective for the reasons, and in the manner, described hereinabove.

      C.    Remedy

The Named Parties, on behalf of themselves and all others similarly situated, demand that Whirlpool: (1) immediately stop the manufacture and sale of all Whirlpool dishwashers in the United States with electronic control boards that have not been redesigned to eliminate the substantial risks of overheating, spontaneous combustion and failure within the reasonably expected useful life of the dishwashers; (2) pay the cost of replacement of the subject dishwashers with equivalent models, plus incidental and consequential damages incurred; and (3) institute a notice, recall and corrective advertising campaign to eliminate, to the extent possible, the risk in the marketplace that Whirlpool dishwashers will combust in the future and cause personal and property damage.

Whirlpool Corporation
October 31, 2011
Page 6

     If Whirlpool declines to provide these remedies within thirty (30) days after receipt of this notice, the Named Parties, and all other persons similarly situated, will file a class action under the MMWA and CLRA seeking statutory, actual and punitive damages; restitution; injunctive relief; expenses and costs of suit, including reasonable attorneys' fees; pre-judgment and post-judgment interest at the appropriate legal rate; and all general, special, and equitable relief to which they are entitled by law or as may be determined to be just, equitable, and proper by the Court.

     Thank you for your attention to this emergent matter.

Very truly yours,

*Charles S. Fax*

Charles S. Fax

# RIFKIN, LIVINGSTON, LEVITAN & SILVER, LLC

## ATTORNEYS AT LAW

ALAN M. RIFKIN
SCOTT A. LIVINGSTON (MD, DC)
LAURENCE LEVITAN
EDGAR P. SILVER†
MICHAEL V. JOHANSEN
JOEL D. ROZNER (MD, DC)
RICHARD K. REED
NORMAN D. RIVERA
M. CELESTE BRUCE (MD, DC)
JAMIE B. EISENBERG (MD, DC, NY)
CHARLES S. FAX (MD, DC, NY)
CAROLYN JACOBS
PATRICK H. RODDY
ELLEN B. FLYNN (MD, DC, CT)
ERIC L. BRYANT
MICHAEL D. BERMAN (MD, DC)
JOYCE E. SMITHEY (MD, DC, NH)
A. THOMAS PEDRONI, JR.
MELVIN A. STEINBERG†
MICHAEL S. NAGY (MD, VA)
L. TERI SPRADLIN-DAHN†
LIESEL J. SCHOPLER (MD, DC)
CHRISTOPHER L. HATCHER
MICHAEL A. MILLER
LINDSAY S. KATZ (NY, NJ)
JULIA E. BRAATEN
LANCE W. BILLINGSLEY†
ELIZABETH K. MILLER†
†    OF COUNSEL
(NON-LAWYER CONSULTANT)
JOSH M. WHITE

7979 OLD GEORGETOWN ROAD • SUITE 400
BETHESDA, MARYLAND 20814
(301) 951-0150 • FAX (301) 951-0172
WWW.RLLS.COM

225 DUKE OF GLOUCESTER STREET
ANNAPOLIS, MARYLAND 21401
(410) 269-5066 • FAX (410) 269-1235

14601 MAIN STREET
UPPER MARLBORO, MARYLAND 20772
(301) 345-7700 • FAX (301) 345-1294

600 WASHINGTON AVENUE • SUITE 305
TOWSON, MARYLAND 21204
(410) 583-9433 • FAX (410) 583-9439

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

October 31, 2011

Sears Holding Corp.
3333 Beverly Road
Hoffman Estates, Illinois 60179

Sears, Roebuck & Co., Inc.
3333 Beverly Road
Hoffman Estates, Illinois 60179

Sears Holding Corp.
Sears, Roebuck & Co., Inc.
Resident Agent
CT Corporation System
818 West 7th Street
Los Angeles, California 90017

Re:    *Notice of Violations of the Magnuson-Moss Warranty Act*
       *and California Consumer Legal Remedies Act and Opportunity to Cure*

Dear Sir or Madam:

I write on behalf of clients Joseph Cicchelli, Kurt Himler and Gary LeBlanc ("the Named Parties") and all others similarly situated. They are purchasers of dishwashers manufactured by Whirlpool and marketed under the "KitchenAid" and "Kenmore" brand names.

This letter constitutes notification to Sears Holding Corp. and Sears, Roebuck & Co., Inc. (together, "Sears"), pursuant to 15 U.S.C. § 2310(e) and California Civil Code § 1782, that Sears has violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, and the

Sears
October 31, 2011
Page 2

California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, with regard
to the subject dishwashers. The details are set forth below.

A.     Incidents and Damages

Joseph Cicchelli, who lives in Hackensack, New Jersey, bought a Kenmore Elite
dishwasher, model number 665.17584200, serial number FM 2401353, from Sears in
Hackensack, New Jersey, on or about July 4, 2002, and Sears installed it on or about July 8,
2002. On Easter Sunday in 2009, the dishwasher, while running, started making hissing and
popping noises – and smoke began ballooning from the unit. Joseph opened the dishwasher door
to disengage the machine, but it kept running. Joseph then ran to the circuit breaker and
switched it off. He later disassembled the dishwasher and saw that the electronic control board
was fried. He purchased a new electronic control board and fuse kit. On information and belief,
the store where Joseph purchased the replacement electronic control board keeps many in stock,
as customers frequently purchase them to replace burned-out units from their Whirlpool-
manufactured dishwashers. Joseph contacted Sears's customer service by e-mail and phone.
Sears expressed no concern over his report, and refused to compensate Joseph for the loss.

Kurt Himler, who lives in Tustin, California, purchased his KitchenAid dishwasher,
model number KUDSO1FLSS, serial number FR5219875, from a Sears in California in 2004. In
the summer of 2010, the dishwasher combusted, damaging the wooden cabinets in the kitchen.
Whirlpool eventually replaced the destroyed dishwasher with a downgraded model, and refused
to reimburse Kurt for the damaged cabinets.

In November, 2004, Gary LeBlanc, who lives in Peabody, Massachusetts, bought his
Kenmore Elite dishwasher, model number 665.16279400, serial number FR4201316, from a
local Sears. On May 29, 2010, at approximately 10 p.m., after his family had gone to bed, Gary
smelled electrical wires burning, which he traced to the dishwasher. When he opened the
dishwasher door, smoke billowed out, but the machine did not shut off. The dishwasher was on
its own house circuit breaker, which did not automatically trip, so Gary ran down to the
basement and switched off the circuit breaker manually. He disassembled the dishwasher door
and saw that the electronic control board and related wiring were burnt. Two of the wires had
burned the knife terminals off the electronic control board and melted a hole through the plastic
housing in which the electronic control board had rested. The wiring harness also had many
wires that had so overheated that they had melted into the rubber installation on the inside door
backing. Gary called Sears and Whirlpool. They told him that there was no problem with his
dishwasher and refused to help. Gary then contacted Sears Cares, Sears's executive customer
service, and it dispatched a technician to examine the dishwasher. The technician advised that he
had never seen a dishwasher "cooked that bad" before, and that it needed a new electronic
control board and wiring harness. Gary was required to pay for one half of the repair cost.

A.     Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

Sears holds itself out as a competent marketer and retailer of dishwashers, and is well
aware of the particular purpose for which they are intended. The Named Parties, and all others

Sears
October 31, 2011
Page 3

similarly situated, relied on Sears's reputation, judgment and experience in deciding to purchase
their dishwashers from Sears. The subject dishwashers owned by the Named Parties and all
others similarly situated were defectively designed, however, and were sold by Sears and
removed from its control with one or more latent defects built into the design and specifications
of the models reference above. Such defective design and unfitness for the ordinary purpose for
which the dishwashers were intended, and their consequent failure as described and for the
reasons set forth above, render Sears in breach of its implied warranties of merchantability and
fitness for a particular purpose.

Sears's actions are violative of, and give rise to claims under, the Magnuson-Moss
Warranty Act ("MMWA"). MMWA, *inter alia*, authorizes "a consumer who is damaged by the
failure of a supplier, warrantor, or service contractor to comply with any obligation under . . .
implied warranty . . . [to] bring suit for damages and other legal and equitable relief." 15 U.S.C.
§ 2310(d)(1).

B. Violations of the California Consumer Legal
Remedies Act, Cal. Civ. Code § 1750, *et seq.*

Sears marketed and sold the subject dishwashers. They are defective because their
electronic control boards spontaneously overheat and combust, emitting dangerous and
destructive flames, smoke and fumes. The subject dishwashers fail within their reasonably
expected useful life. Sears has had actual notice of the defective design and specifications for
these dishwashers since at least 2008, due to numerous consumer complaints and warranty
claims relating to the electronic control board defects. Sears has refused to acknowledge, and
has actively concealed its knowledge of, such defects. Sears has never recalled the subject
dishwashers, nor has Sears notified the purchasers of the subject dishwashers of their dangerous
and destructive defects. Sears's actions and omissions are violative of Cal. Civ. Code §§
1770(a)(5) and 1770(a)(7).

In addition, Sears has violated Cal. Civ. Code § 1770(a)(9) by advertising and marketing
the subject dishwashers with the intent not to sell them as advertised. Sears represented that the
dishwashers were free of design defects when in fact – known to Sears but concealed from the
Named Parties and all others similarly situated – the dishwashers were dangerously defective for
the reasons, and in the manner, described hereinabove.

C. Remedy

The Named Parties, on behalf of themselves and all others similarly situated, demand that
Sears: (1) immediately stop the marketing and sale of all KitchenAid and Kenmore dishwashers
in the United States with electronic control boards that have not been redesigned to eliminate the
substantial risks of overheating, spontaneous combustion and failure within the reasonably
expected useful life of the dishwashers; (2) pay the cost of replacement of the subject
dishwashers with equivalent models, plus incidental and consequential damages incurred; and (3)
institute a notice, recall and corrective advertising campaign to eliminate, to the extent possible,

Sears
October 31, 2011
Page 4

the risk in the marketplace that KitchenAid and Kenmore dishwashers will combust in the future and cause personal and property damage.

If Sears declines to provide these remedies within thirty (30) days after receipt of this notice, the Named Parties, and all other persons similarly situated, will file a class action under the MMWA and CLRA seeking statutory, actual and punitive damages; restitution; injunctive relief; expenses and costs of suit, including reasonable attorneys' fees; pre-judgment and post-judgment interest at the appropriate legal rate; and all general, special, and equitable relief to which they are entitled by law or as may be determined to be just, equitable, and proper by the Court.

Thank you for your attention to this emergent matter.

Very truly yours,

Charles S. Fax