Jeffrey M. Cohon, Esq. (CSBN 131431)
Kristina S. Keller, Esq. (CSBN 161946)
**COHON & POLLAK, LLP**
1999 Avenue of the Stars, 11th Floor
Los Angeles, California  90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610
jcohon@cohonpollak.com

Charles S. Fax, Esq. (*pro hac vice*)
Liesel Schopler, Esq. (*pro hac vice*)
**RIFKIN, WEINER, LIVINGSTON,
LEVITAN & SILVER LLC**
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-6535
cfax@rlls.com; lschopler@rlls.com

David H. Weinstein, Esq. (CSBN 43167)
Robert S. Kitchenoff, Esq. (*pro hac vice*)
**WEINSTEIN KITCHENOFF &
ASHER LLC**
1845 Walnut Street, Suite 1100
Philadelphia, Pennsylvania  19103
Telephone: (215) 545-7200
Telecopier: (215) 545-6535
weinstein@wka-law.com;
kitchenoff@wka-law.com

Steven A. Schwartz, Esq. (*pro hac vice*)
Timothy N. Mathews, Esq. (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com; tnm@chimicles.com

Kristen Law Sagafi, Esq. (CSBN 222249)
Nicole Reynolds, Esq. (CSBN 246255)
**LEIFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Telecopier: (415) 956-1008k
klaw@lchb.com; nreynolds@lchb.com

Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

|  |  |
|---|---|
| **STEVE CHAMBERS, an individual,** *et al.*, | Case No. 8:11-cv-01733-FMO-MLG |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT** |
| **vs.** | |
| **WHIRLPOOL CORPORATION, a Delaware Corporation,** *et al.*, | |
| Defendants. | Judge:  The Honorable Fernando M. Olguin |
| | Date: September 13, 2013 |
| | Time: 8:30 a.m. |
| | Courtroom: 22 |

Plaintiffs, on behalf of themselves and those similarly situated, submit herewith their Opposition to Defendants' Partial Motion to Dismiss the Fourth Amended Complaint.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   v

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.   PERTINENT ALLEGATIONS IN THE COMPLAINT . . . . . . . . . . . . . . . .   2

III.   RULE 12(b)(6) PLEADING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . .   4

IV.   PLAINTIFFS STATE CLAIMS FOR STRICT PRODUCT LIABILITY,
       FAILURE TO WARN AND NEGLIGENCE . . . . . . . . . . . . . . . . . . . . . . .   5

       A.   The Economic Loss Doctrine Is Not A Bar . . . . . . . . . . . . . . . . . . . . .   5

       B.   Chambers, Himler, O'Donnell, LeBlanc, Mederlet, Bathon,
            Meneghetti, Koswener, Paolini and Steffes State Failure
            To Warn Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

       C.   The OPLA Does Not Abrogate Bathon's Tort Claims . . . . . . . . . . . . .   12

V.   PLAINTIFFS STATE CLAIMS FOR FRAUDULENT CONCEALMENT . .   13

       A.   Plaintiffs Meet The Pleading Requirements of Fed. R. Civ. P. 9(b) . . .   13

       B.   Defendants Had A Duty To Disclose The Defect . . . . . . . . . . . . . . . .   18

       C.   A Finding Of Liability Would Not Make Defendants
            Permanent Insurers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

       D.   The NJPLA Does Not Abrogate The Fraudulent
            Concealment Claims Of The N.J. Plaintiffs . . . . . . . . . . . . . . . . . . . .   28

       E.   Mederlet, Walker, Koswener, Paolini And Steffes Properly Plead
            Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

VI.   HIMLER, O'DONNELL, MILICIA, WALKER, BATHON,
        MENEGHETTI AND PAOLINI STATE CLAIMS FOR
        BREACH OF EXPRESS WARRANTY . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

VII.   PLAINTIFFS STATE BREACH OF IMPLIED WARRANTY CLAIMS . . .   32

iii

VIII.   CALIFORNIA PLAINTIFFS STATE SONG-BEVERLY ACT CLAIMS . . .   35

IX.   BATHON STATES A CLAIM FOR TORTIOUS
BREACH OF IMPLIED WARRANTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

X.   PLAINTIFFS STATE MAGNUSON-MOSS WARRANTY ACT
CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

XI.   PLAINTIFFS STATE CONSUMER PROTECTION ACTS CLAIMS . . . . .   36

XII.   PLAINTIFFS STATE CLAIMS FOR UNJUST
ENRICHMENT/RESTITUTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   47

XIII.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   50

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
Case No. 8:11-cv-01733-FMO-MLG**

# TABLE OF AUTHORITIES

<u>CASES</u>[1]

*200 North Gilmor, LLC v. Capital One, Nat'l Ass'n*,
2012 U.S. Dist. LEXIS 36537 (D. Md. Mar. 19, 2012) . . . . . . . . . . . . . . . . . . . . .   21

*Access N. Sec. Corp. v. Linear Corp.*, 1998 U.S. Dist. LEXIS 13943
(S.D.N.Y. Aug. 28, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

*Ackley v. Wyeth Labs.*, 919 F.2d 397 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . .   26

*Adams v. Genie Indus., Inc.*, 861 N.Y.S.2d 42 (2008) . . . . . . . . . . . . . . . . . . . . . .   10

*AIG Aviation Ins. v. Avco Corp.*, 709 F. Supp. 2d 1124 (D.N.M. 2010) . . . . . . . . .   7

*Amato v. General Motors Corp.*, 11 Ohio App. 3d 124 (1982) . . . . . . . . . . . . . . . .   43

*American Glue & Resin v. Air Prods. & Chem., Inc.,* 835 F. Supp. 36
(D. Mass. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

*Amicas, Inc. v. GMG Health Sys.*, 2009 U.S. Dist. LEXIS 29626
(D. Mass. Apr. 7, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*AMPAT/Midwest, Inc. v. Illinois  Tool Works, Inc.*, 896 F.2d 1035
(7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

*Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*,
2011 U.S. Dist. LEXIS 110505 (E.D. Mo. Sept. 28, 2011) . . . . . . . . . . . . . . . . . .   25

*Artilla Cove Resort v. Hartley*, 72 S.W.3d  291 (Mo. 2002) . . . . . . . . . . . . . . . . . .   25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4-5

*Asian Vegetable Research & Dev. Ctr. v. Institute of Int'l Educ.*,
944 F. Supp. 1169 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

---

[1] Full history of cases is shown in the Table of Authorities, but not shown in the memorandum.

v

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION**
**TO DISMISS FOURTH AMENDED COMPLAINT**
**Case No. 8:11-cv-01733-FMO-MLG**

*A.T. Massey Coal Co., Inc. v. Rudimex GmbH*, 2006 U.S. Dist. LEXIS 1882
(E.D. Va. Jan. 9, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

*Austin v. Soo Line R.R. Co.*, 1996 U.S. Dist. LEXIS 13929
(N.D. Ill. Sept. 19, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9-10

*Auto Chem Labs. Inc. v. Turtle Wax, Inc.*, 2008 U.S. Dist. LEXIS 83158
(S.D. Ohio Sept. 23, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

*Baker v. Rodriguez,* 2011 U.S. Dist. LEXIS 113094 (C.D. Cal. Sept. 29, 2011) . . . .   4

*Bales v. Isaac*, 2004 Ohio 4677 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   44

*Bank of Montreal v. Signet Bank*, 193 F.3d 818 (4th Cir. 1999) . . . . . . . . . ..   24-25

*Belote v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 178971
(E.D. Va. Dec. 18, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

*Berenblat v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 46052
(N.D. Cal. Apr. 9, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15-17

*Bobb Forest Prods. v. Morbark Indus.*, 151 Ohio App. 3d 63 (2002) . . . . . . . . . . .   35

*Brown v. Lyons*, 43 Ohio Misc. 14 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   43

*Brown v. Quest Diagnostics, LLC*, 2008 U.S. Dist. LEXIS 101678
(D. Mass. Dec. 16, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

*Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989) . . . . . . . . . . . . . .   34

*Carter v. E.I. DuPont de Nemours & Co., Inc.*, 217 Ga. App. 139 (1995) . . . . . . . .   22

*Cartwright v. Viking Indus., Inc.,* 249 F.R.D. 351 (E.D. Cal. 2008) . . . . . . . . . . . .   33

*Cerney v. Norfolk & W. Railway Co.*, 104 Ohio App. 3d 482 (1995) . . . . . . . . . . . .   44

*Chambers v. Sears Roebuck & Co.*, 793 F. Supp. 2d 938 (S.D. Tex. 2010) . . . . . . .   22

*Chem Gro of Houghton, Inc. v. Lewis County Rural Elec. Co-op. Ass'n*,
2012 U.S. Dist. LEXIS 40697 (E.D. Mo. Mar. 26, 2012) . . . . . . . . . . . . . . . . . . .   50

*Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220
(C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 28, 35

*Cibbarelli v. Bombardier, Inc.*, 2004 U.S. Dist. LEXIS 26009
(E.D.N.Y. Sept. 3, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Cirulli v. Hyundai Motor Co.*, 2009 U.S. Dist. LEXIS 125139
(C.D. Cal. June 12, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

*City of Boston v. Smith & Wesson Corp.*, 2000 Mass.
Super. LEXIS 352 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6-7

*City of Millville v. Rock*, 683 F. Supp. 2d 319 (D.N.J. 2010) . . . . . . . . . . . . . . . . . .   23

*Clark v. International Harvester Co.*, 99 Idaho 326 (1978) . . . . . . . . . . . . . . . . . .   32

*Clark v. Prudential Ins. Co. of Am.*, 736 F. Supp. 2d 902 (D.N.J. 2010) . . . . . . . . .   37

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) . . . . . . . . . . . . .   38

*Coba v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 8366
(D. N.J. Jan. 22, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34, 41

*Collins v. eMachines, Inc.*, 134 Cal Rptr. 3d 588 (2011) . . . . . . . . . . . . . . . . . . . .   28

*Collum v. Fred Tuch Buick*, 6 Ill. App. 3d 317 (1972) . . . . . . . . . . . . . . . . . . . . . .   32

*Commonwealth v. Johnson Insulation*, 425 Mass 650 (Mass. 1997) . . . . . . . . . . . .   33

*Compagnie de Reassurance d'lle de Fr. v. New England Reinsurance Corp.*,
944 F. Supp. 986 (D. Mass. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

*Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996) . . . . . . . . . . . . . . . . . . . .   44-45

*Coss v. Playtex Products*, 2009 U.S. Dist. LEXIS 66905
(N.D. Ill. July 10, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14-15

*Cotton v. Buckeye Gas Products Co.*, 840 F.2d 935 (D.D.C. 1988) . . . . . . . . . . . . .   25

vii

*Cover v. Cohen*, 61 N.Y.2d 261 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Council of Co-owners Atlantis Condo. v. Whiting-Turner Contracting Co.*,
308 Md. 18 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

*Cracchiolo v. O'Hara Corp.*, 2013 U.S. Dist. LEXIS 72558
(D. Mass. May 22, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9-10

*Cummings v. HPG Int'l, Inc.*, 244 F.3d 16 (1st Cir. 2001) . . . . . . . . . . . . . . . . . .   42

*Daffin v. Ford Motor Co.*, 2004 U.S. Dist. LEXIS 18977
(S.D. Ohio July 15, 2004), *aff'd*, 458 F.3d 549 (6th Cir. 2006) . . . . . . . . . . . . . . . .   36

*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) . . . . . . . .   17, 30, 38

*Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt
at Pilgrims Landing, LC*, 2009 UT 65 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*DeBenedetto v. Denny's, Inc.*, 421 N.J. Super. 312 (2010) . . . . . . . . . . . . . . . . . . .   29

*De Bouse v. Bayer AG*, 235 Ill. 2d 544 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   44

*DeBry v. Valley Mortgage Co.*, 192 Utah Adv. Rep. 35 (1992) . . . . . . . . . . . . . .   9-10

*Delia v. Erickson*, 1989 U.S. Dist. LEXIS 16558
(D.N.J. May 23, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

*DeLoach v. Gen. Motors*, 187 Ga. App. 159 (1988) . . . . . . . . . . . . . . . . . . . . . . . .   39

*Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505 (D.N.J. 2008), *rev'd on other
grounds*, 681 F.3d 170 (3rd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39

*DG Equip. Co. v. Caterpillar, Inc.,* 2008 U.S. Dist. LEXIS 86905
(S.D. Ohio Oct. 27, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011) . . . .   13, 21, 33, 40, 44-45

*Durove v. Fabian Transp. Inc.*, 2004 U.S. Dist. LEXIS 25258
(S.D.N.Y. Dec. 14, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

viii

*Ehrlich v. BMW of N. Am., LLC,* 801 F.Supp.2d 908 (C.D. Ca. 2010) . . . . . . . . .  16, 35

*Elias v. Ungar's Food Prods.,* 252 F.R.D. 233 (D.N.J. 2007) . . . . . . . . . . . . . . . .  39

*Energy Absorption Sys., Inc. v. Roadway Safety Service Inc.,*
1993 U.S. Dist. LEXIS 13731 (N.D. Ill. Sept. 16, 1993) . . . . . . . . . . . . . . . . . . . .  13

*Epicor Software Corp. v. Alternative Tech. Solutions, Inc.,*
2013 U.S. Dist. LEXIS 79125 (C.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . .  48

*Everett v. Norfolk S. Ry.,* 292 Ga. 106 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Factory Mut. Ins. Co. v. DLR Contr., Inc.,* 2005 U.S. Dist. LEXIS 25876
(E.D. Va. Oct. 20, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

*Falk v. G.M. Corp.,* 496 F. Supp. 2d 1088 (N.D. Cal. 2007*), abrogated in part,*
*Walsh v. Kindred Healthcare*, 2012 U.S. Dist. LEXIS 41012
(N.D. Cal. Mar. 26, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10-11, 16-17

*FDIC v. Lattimore Land Corp.,* 656 F.2d 139 (5th Cir. 1981) . . . . . . . . . . . . . . . .  22

*Featherall v. Firestone Tire & Rubber Co.,* 219 Va. 949 (1979) . . . . . . . . . . . . . .  11

*Fed. Ins. Co. v. Westside Supply Co.,* 264 Ga. App. 240 (2003) . . . . . . . . . . . . . .  48

*Feldman v. Mercedes-Benz United States, LLC,*
2012 U.S. Dist. LEXIS 178924 (D.N.J. Dec. 18, 2012) . . . . . . . . . . . . . . .  11, 16-17

*Fireman's Fund Ins. Co. v. Allied Programs Corp.,*
1993 U.S. Dist. LEXIS 16247 (S.D.N.Y. Nov. 15, 1993) . . . . . . . . . . . . . . . . . . .  13

*First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.,*
717 F. Supp. 2d 156 (D. Mass. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*First Marblehead Corp. v. House,* 473 F.3d 1 (1st Cir. 2006) . . . . . . . . . . . . . . . . .  6

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.,*
218 Ill. 2d 326 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
Case No. 8:11-cv-01733-FMO-MLG**

*First Place Bank v. Skyline Funding, Inc.*, 2011 U.S. Dist. LEXIS 83430 (N.D. Ill. July 27, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fisher v Multiquip, Inc.*, 949 N.Y.S.2d 214 (2012) . . . . . . . . . . . . . . . . . . . . 8

*Fishman v. GE*, 2013 U.S. Dist. LEXIS 61389 (D.N.J. Apr. 30, 2013) . . . . . . . . 28-29

*Folsom v. Continental Illinois Nat'l Bank & Trust Co.*, 633 F. Supp. 178 (N.D. Ill. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ford Motor Co. v. Gunn*, 123 Ga. App. 550 (1971) . . . . . . . . . . . . . . . . . . . . 32

*Gantt v. Bennett*, 231 Ga. App. 238 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 2005 U.S. Dist. LEXIS 45312 (N.D. Ohio Feb. 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-31

*Go for It, Inc. v. Aircraft Sales Corp.*, 2003 U.S. Dist. LEXIS 11043 (N.D. Ill. June 25, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-27

*Grafton Partners, LLC v. Barry & Foley Motor Transp., Inc.*, 2007 Mass. Super. LEXIS 253 (Apr. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . 6

*Grammer v. Advocate Mines, LTD*, 2011 U.S. Dist. LEXIS 151700 (E.D. Pa. Dec. 1, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gray v. Toyota Motor Sales, U.S.A.*, 2012 U.S. Dist. LEXIS 15992 (C.D. Cal. Jan. 23, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Greenery Rehab. Group, Inc. v. Antaramian*, 36 Mass. App. Ct. 73 (1994) . . . . . . . . 42

*Grill v. Philip Morris USA, Inc.*, 653 F. Supp. 2d 481 (S.D.N.Y. 2009) . . . . . . . . . 14

*Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 33387 (C.D. Cal. Feb. 19, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

*Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 82746 (C.D. Cal. June 12, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17-18, 37-38

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
Case No. 8:11-cv-01733-FMO-MLG**

*Grynberg v. Questar Pipeline Co.*, 2003 UT 8 (2003) . . . . . . . . . . . . . . . . . . . . . . . 9

*Hale v. Enerco Group, Inc.*, 2011 U.S. Dist. LEXIS 781
(N.D. Ohio Jan. 5, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hardesty v. Am. Seating Co.*, 194 F. Supp. 2d 447 (D. Md. 2002) . . . . . . . . . . . . 9-10

*Harvey v. Nissan N. Am., Inc.*, 2005 WL 1252341
(N.J. Super. Ct. Apr. 29, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Harrell v. Colonial Holdings, Inc.*, 2013 U.S. Dist. LEXIS 18913
(E.D. Va. Feb. 12, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Harris v. Universal Ford, Inc.*, 2001 U.S. Dist. LEXIS 8913
(E.D. Va. Feb. 5, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Harvey v. Nissan N. Am., Inc.*, 2005 WL 1252341
(N.J. Super. Ct. Apr. 29, 2005) (UNPUBLISHED) . . . . . . . . . . . . . . . . . . . . . . . 24

*Hayes v. Hambrunch*, 841 F. Supp. 706 (D. Md. 1994) . . . . . . . . . . . . . . . . . . . . 39

*HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025
(6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Healy v. Chesapeake Appalachia*, LLC, 2011 U.S. Dist. LEXIS 759
(W.D. Va. Jan. 5, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Heider v. Leewards Creative Crafts*, 245 Ill. App. 3d 258 (1993) . . . . . . . . . . . . . . 26

*Henderson v. Volvo Cars of N. Am. LLC*, 2010 U.S. Dist. LEXIS 73624
(D.N.J. July 21, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Henson v. Allison Transmission*, 2008 U.S. Dist. LEXIS 6112
(S.D. Fla. Jan. 28, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Herrod v. Metal Powder Prods.*, 886 F. Supp. 2d 1271,
2012 U.S. Dist. LEXIS 79562 (D. Utah 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758 (Mo. 2007) . . . . . . . . 25

*Hertzfeld v. Hayward Pool Prods., Inc.*, 2007 Ohio 7097 (2007) . . . . . . . . . . . . . .   13

*Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814
(D. Md. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Hirsch v. Bank of America*, 107 Cal. App. 4th 708 (2003) . . . . . . . . . . . . . . . .   47

*Ho v. Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 35748
(N.D. Cal. Mar. 14, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18, 38

*Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099 (N.D. Ca. 2007) . . . . . . . . . . . . .   28

*Holloman v. D.R. Horton*, 241 Ga. App. 141 (1999)  . . . . . . . . . . . . . . . . . . .    6

*Homa v. Am. Express Co.*, 558 F.3d 225 (3d Cir. 2009) *accord*
*Maniscalo v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 502 (D.N.J. 2009) . . . . . . . .   39

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 19215
(S.D. Cal. Feb. 13, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

*Hunt v. ESI Eng'g, Inc.*, 158 Utah Adv. Rep. 26 (1991) . . . . . . . . . . . . . . . . .    9

*Iannacchino v. Ford Motor Co.*, 451 Mass. 623 (2008) . . . . . . . . . . . . . . . . . .   41

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
687 F. Supp. 2d 897 (W.D. Mo. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
2008 U.S. Dist. LEXIS 73690 (D.N.J. Sept. 3, 2008) . . . . . . . . . . . . . . . . . .   30, 33

*In re Ford Motor Company Ignition Switch Products Liability Litigation*,
1997 U.S. Dist. LEXIS 24064 (D.N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . .   23

*In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*,
664 F. Supp. 2d 752 (E.D. Mich. 2010) . . . . . . . . . . . . . . . . . . . . . . . .   7-8

*In re GMC*, 383 F. Supp. 2d 1340 (W.D. Okla. 2005) . . . . . . . . . . . . . . . . . . .   42

*In re Phillips/Magnavox TV Litig.*, 2010 U.S. Dist. LEXIS 91343
(D.N.J. Sept. 1, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   40-41

xii

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig*.,
880 F. Supp. 2d 801 (S.D. Ohio 2012) . . . . . . . . . . . . . . . . . . . . . . . . . .   34, 44-45-46

*In re Samsung DLP TV Class Action Litig*, 2009 U.S. Dist. LEXIS 100065
(D.N.J. Oct. 27, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

*In re Toyota Motor Corp.*, 2010 U.S. Dist. LEXIS 142663
(C.D. Cal. Dec. 9, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
*Sales Practices, and Prods. Liab. Litig*., 754 F. Supp. 2d 1145
(C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
684 f. Supp. 2d 942 (N.D. Ohio Jan. 5, 2011) . . . . . . . . . . . . . . . . . . . . .   12-13

*Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th[th] 19 (Cal. App. 2007) . . . . . . .   33

*Jeter v. Brown & Williamson Tobacco Corp*., 294 F. Supp. 2d 681
(W.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Jhaveri v. ADT Sec. Servs., Inc.*, 2012 U.S. Dist. LEXIS 38100
(C.D. Cal. Mar. 6, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Johnson v. Henry Vogt Mach. Co*., 544 F. Supp. 2d 1276 (D. Utah 2008) . . . . . . . .   33

*Johnson v. Microsoft Corp*., 106 Ohio St. 3d 278 (2005) . . . . . . . . . . . . . . . . .   48-49

*Johnson v. Monsanto Co*., 2002 Ohio 4613 (2002) . . . . . . . . . . . . . . . . . . . . . .   36

*Jordan v. Atlanta Replex Corp.*, 228 Ga. App. 670 (1997) . . . . . . . . . . . . . . . .   9-10

*Judge v. Blackfin Yacht Corp*., 357 N.J. Super. 418 (2003) . . . . . . . . . . . . . . . . .   39

*Kas v. Mercedes-Benz USA, LLC,* 2011 U.S. Dist LEXIS 127581
(C.D. Cal. Oct. 31, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

*Keegan v. Am. Honda Motor Co*., 838 F. Supp. 2d 929
(C.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17, 35-38

xiii

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504 (C.D. Cal. 2012) . . . . . . . . . . . .   30

*Kehrer Bros. Constr., Inc. v. Custom Body Co.*, 2008 U.S. Dist. LEXIS 3934 (S.D. Ill. Jan. 18, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

*Kellerman v. McDonough*, 278 Va. 478 (2009) . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Klairmont v. Gainsboro Rest., Inc.*, 465 Mass. 165 (2013) . . . . . . . . . . . . . . .   42

*Kline v. Mortgage Elec. Registration Sys.*, 2011 U.S. Dist. LEXIS 60733 (S.D. Ohio Mar. 29, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   49

*Knight v. Am. Suzuki Motor Corp.*, 272 Ga. App. 319 (2005) . . . . . . . . . . . . . . .   32

*Koch Indus., Inc. v. Aktiengesellschaft*, 727 F. Supp. 2d 199 (S.D.N.Y. 2010) . . . . .   29

*Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, (N.D. Cal. 2010), *vacated in part by* 771 F. Supp. 2d 1156 (N.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . .   16

*Lally v. Printing Machinery Sales & Serv. Co., Inc.*, 240 N.J. Super. 181 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Lawley v. Northam*, 2011 U.S. Dist. LEXIS 137971 (D. Md. Dec. 1, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Lectrodryer v. Seoul Bank*, 77 Cal. App. 4th 723 (2000) . . . . . . . . . . . . . . . . .   47

*Levine v. Sears Roebuck & Co., Inc.*, 200 F.Supp.2d 180 (E.D.N.Y. 2002) . . . . . . .   8

*Lewis v. Ariens Co.*, 434 Mass. 643 (2001) . . . . . . . . . . . . . . . . . . . . . . . . .   10, 24

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) . . . . . . . . . . . . . .   23

*Lilly v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 22114 (S.D. Ohio Apr. 21, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   43

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) . . . . . . . . . . . . . . . . . . . . . .   19

*Lloyd v. Gen. Motors Corp.*, 397 Md. 108 (2007) . . . . . . . . . . . . . . . . . . . . . .   5-6

xiv

*Lockwood v. Berardi*, 522 N.Y.S.2d 279 (1987) . . . . . . . . . . . . . . . . . . . . . . . . .   9-10

*Lonzrick v. Republic Steel Corp.,* 6 Ohio St. 2d 227 (1966) . . . . . . . . . . . . . . . . . .   36

*Lubore*, 109 Md. App. 312 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Lumbermen's Underwriting Alliance v. Blount Int'l, Inc.,*
2007 U.S. Dist. LEXIS 102300 (N.D. Ga. Feb. 5, 2007) . . . . . . . . . . . . . . . . . . . .   6

*Maillet v. ATF-Davidson Co*., 407 Mass. 185 (1990) . . . . . . . . . . . . . . . . . . . . . . .   42

*McDonald v. Mazda Motors of Am., Inc*., 269 Ga. App. 62 (2004) . . . . . . . . . . .   31-32

*Mancini v. Gorick*, 41 Ohio App. 3d 373 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . .   25-26

*Maniscalco v. Brother Int'l Corp. (USA),* 627 F. Supp. 2d 494
(D.N.J. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   40, 50

*Marolda v. Symantec Corp*., 672 F. Supp. 2d 992 (N.D. Cal. 2009) . . . . . . . . . .   13-14

*Marshall v. I-Flow, LLC*, 2012 U.S. Dist. LEXIS 110978
(N.D.N.Y Aug. 7, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

*Mason v. Nature's Innovation, Inc*., 2013 U.S. Dist. LEXIS 68072
(S.D. Cal. May 13, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

*Matco Mach. & Tool Co. v. Cincinnati Milacron Co*., 727 F.2d 777
(8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32

*Maxwell v. Howmedica Osteonics Corp.*, 713 F. Supp. 2d 84 (N.D.N.Y. 2010) . . . .   8

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004) . . . . . . . . . . . . . . . . . . . . . . .   47

*McCalley v. Samsung Elecs. Am., Inc*.,
2008 U.S. Dist. LEXIS 28076 (D.N.J. Mar. 31, 2008) . . . . . . . . . . . . . . . . . . . .   40

*McCrae v. Wal-Mart Stores*, Inc., 2005 Ohio 4472 (2005) . . . . . . . . . . . . . . . . . .   9-10

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
Case No. 8:11-cv-01733-FMO-MLG**

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.,*
2012 U.S. Dist. LEXIS 165613 (D. Mass. Nov. 20, 2012) . . . . . . . . . . . . . . . . . . . 41

*McDonald v. Mazda Motors of Am., Inc.,* 269 Ga. App. 62 (2004) . . . . . . . . . . . 31-32

*Melchoir v. New Line Productions, Inc.,* 106 Cal. App. 4th 779
(Cal. Ct. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Mendez v. AstraZeneca Pharms. LP*, 2012 U.S. Dist. LEXIS 73270
(E.D. Cal. May 25, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002 (8th Cir. 2006) . . . . . . . . . . . . 25

*Merklin v. United States*, 788 F.2d 172 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . 23

*Meserole v. Sony Corp.*, 2009 U.S. Dist. LEXIS 42772
(S.D.N.Y. May 19, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Metowski v. Traid Corp.,* 28 Cal. App. 3d 332 (1972) . . . . . . . . . . . . . . . . . . . . . 31

*Mexia v. Rinker Boat Co.*, 174 Cal.App.4th 1297 (2009) . . . . . . . . . . . . . . . . . 34-36

*Mickens v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 142604
(D.N.J. Oct. 1, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Miles v. Raymond Corp.*, 612 F. Supp. 2d 913 (N.D. Ohio 2009) . . . . . . . . . . . . . 12

*Miller v. Basic Research, Inc.,* 2008 U.S. Dist. LEXIS 87655
(D. Utah Oct. 27, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Mitchell v. Proctor & Gamble*, 2010 U.S. Dist. LEXIS 17956
(S.D. Ohio Mar. 1, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Monday v. Saxon Mortg. Servs.*, 2011 U.S. Dist. LEXIS 105214
(E.D. Cal. Sept. 16, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Monet v. Chase Home Fin., LLC*, 2010 U.S. Dist. LEXIS 59749
(N.D. Cal. June 16, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Montich v. Miele USA, Inc.,* 849 F. Supp. 2d 439 (D.N.J. 2012) . . . . . . . . . . . . 28-29

xvi

*Morris v. Winnebago Indus., Inc.*, 71 Va. Cir. 292 (2006) . . . . . . . . . . . . . . . . . . . . .   34

*Mullin v. Auto. Prot. Corp.*, 2008 U.S. Dist. LEXIS 87577
(D.N.J. Sept. 28, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39-40

*Munch v. Sears, Roebuck & Co.*, 2007 U.S. Dist. LEXIS 62897
(N.D. Ill. Aug. 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Nebbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*,
205 Cal. App. 3d 1415 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   47-48

*Nelson v. Nissan N. Am., Inc.*, 2012 U.S. Dist. LEXIS 127522
(D.N.J. Sept. 7, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41

*Nelson v. Ranger, Inc.*, 2009 U.S. Dist. LEXIS 107014
(N.D.N.Y. Nov. 17, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Nessle v. Whirlpool Corp.*, 2008 U.S. Dist. LEXIS 56940
(N.D. Ohio July 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32, 43

*New England Power Co. v. Riley Stoker Corp.*, 20 Mass. App. Ct. 25 (1985) . . .   33-34

*Nixon v. United States*, 2013 U.S. Dist. LEXIS 1146 (N.D. Ill. Jan. 4, 2013) . . . . . .   7

*Nobile v. Ford Motor Co.*, 2011 U.S. Dist. LEXIS 26766
(D.N.J. Mar. 14, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

*Noble v. Porsche Cars North Am., Inc.*, 694 F. Supp. 2d 333 (D.N.J. 2010) . . . . . . .   41

*Nota Const. Corp. v. Keyes Associates, Inc.,* 45 Mass. App. Ct. 15 (1998) . . . . . . . .   6

*NTD Architects v. Baker*, 2013 U.S. Dist. LEXIS 52463
(S.D. Ca. Apr. 10, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9-10

*O'Donnell v. Kraft Foods, Inc.*, 2010 U.S. Dist. LEXIS 26023
(D.N.J. Mar. 18, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008). . . . .   15, 17, 28

*Oldham's Farm Sausage Co. v. Salco, Inc*., 633 S.W.2d 177 (Mo. Ct. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

*Orange County Choppers, Inc. v. Olaes Enterprises, Inc*., 497 F. Supp. 2d 541 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   50

*Ostrander v. O'Banion*, 152 S.W.3d 333 (Mo. Ct. App. 2004) . . . . . . . . . . . . . . .   9

*Overton v. Bird Brain, Inc.*, 2012 U.S Dist. LEXIS 36143 (C.D. Cal. Mar. 15, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420 (1992) . . . . . . . . . . . . . . . . . .   10, 21, 39

*Paikai v. General Motors Corp*., 2009 U.S. Dist. LEXIS 8538 (E.D. Cal. Feb 5, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   49

*Perkins v. DaimlerChrysler Corp*., 383 N.J. Super. 99 (2006) . . . . . . . . . . . . . .   39-40

*Perry v. Pioneer Wholesale Supply Co*., 681 P.2d 214 (Utah Ct. App. 1984) . . . . . .   34

*Pierce v. NICO Pyrotechnik*, 2005 U.S. Dist. LEXIS 36981 (E.D. Va. June 17, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 U.S. Dist. LEXIS 67070 (C.D. Cal. May 14, 2012) . . . . . . . . . . . . . . . . . . . . . .   4

*Proctor v. Extreme Offshore Marine, Inc.*, 2006 U.S. Dist. LEXIS 97223 (D. Md. Jan. 25, 2006) . . . . . . . . . . . . . . . . . . . . . .   21

*Prudential Ins. Co. of America v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619 (N.D. Ill 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   50

*Quality Air Servs., LLC v. Milwaukee Valve Co.*, 671 F. Supp. 2d 36 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

*Ramirez v. General Elec. Co.*, 2008 U.S. Dist. LEXIS 84178 (D. Conn. Oct. 21, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14-15

*Randleman v. Fid. Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812 (N.D. Ohio 2006) . . . .   49

xviii

*Reardon v. Hale*, 2007 Ohio 4351 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Rhee v. Highland Dev. Corp.*, 182 Md. App. 516 (2008) . . . . . . . . . . . . . . . . . . . . 20

*Richmond v. Madison Management Group, Inc.*, 918 F.2d 438 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553 (1998) . . . . . . . . . . . . 30

*Rogers v. Toni Home Permanent Co.*, 167 Ohio St. 244 (1958) . . . . . . . . . . . . . . . 36

*Roshong v. Fitness Brands, Inc.*, 2012 U.S. Dist. LEXIS 72806 (N.D. Ohio May 24, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Rule v. Fort Dodge Animal Health, Inc.,* 604 F. Supp. 2d 288 (D. Mass. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41-42

*Russell ex rel. Russell v. Wright*, 2013 U.S. Dist. LEXIS 1421 (W.D. Va. Jan. 4, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ryba v. LaLancette*, 417 F. Supp. 2d 199 (D. Mass. 2006) . . . . . . . . . . . . . . . . . . 24

*Salerno v. Innovative Surveillance Tech., Inc.,* 402 Ill. App. 3d 490 (2010) . . . . . . . 11

*Saltzman v. Pella Corp*, 2007 U.S. Dist. LEXIS 19650 (N.D. Ill. Mar. 20, 2007). . . . 44

*Sanchez v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 33746 (E.D. Cal. May 8, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*San Diego Hospice v. Cnty. Of San Diego*, 31 Cal. App. 4th 1048 (1995) . . . . . . 18-19

*Savett v. Whirlpool Corp.*, 2012 U.S. Dist. LEXIS 124086 (N.D. Ohio Aug. 31, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48-49

*Sellers v. Boehringer Ingelheim Pharms., Inc.*, 881 F. Supp. 2d 992 (S.D. Ill. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Shannon v. Boise Cascade Corp.*, 208 Ill. Ed 517 (2004) . . . . . . . . . . . . . . . . . . . 44

*Sharpe v. Gen. Motors Corp.*, 198 Ga. App. 313 (1991) . . . . . . . . . . . . . . . . . . . . 39

xix

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Shaterian v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 128549 (N.D. Cal. Nov. 7, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Singleton v. Manitowoc Co.*, 727 F. Supp. 217 (D. Md. 1989) . . . . . . . . . . . . . . . . . 21

*Slaney v. Westwood Auto, Inc.*, 366 Mass. 688 (1975) . . . . . . . . . . . . . . . . . . . . . . . 42

*Slisze v. Stanley-Bostitch*, 1999 UT 20 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Smith v. Pacific Prop. & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004) . . . . . . . . . . . 4

*Sommer v. Federal Signal Corp.*, 79 N.Y.2d (1992) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sovel v. Richardson*, 1995 Ohio App. LEXIS 5076 (Ohio Ct. App. Nov. 15, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*State by Division of Consumer Protection v. GAF Corp.*, 89 Utah Adv. Rep. 14 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Stein v. D'Amico*, 1989 U.S. Dist. LEXIS 9511 (N.D. Ill 1989) . . . . . . . . . . . . . . . . . 35

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833 (N.D. Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Stewart v. Smart Balance, Inc.*, 2012 U.S. Dist. LEXIS 138454 (D.N.J. Jun. 25, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Stolzoff v. Waste Sys. Int'l, Inc.*, 58 Mass. App. Ct. 747 (2003) . . . . . . . . . . . . . . . . 24

*Stone v. Ethan Allen*, 232 Va. 365 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 34

*Strotman v. K.C. Summers Buick, Inc.*, 141 Ill. App. 3d 8 (1986) . . . . . . . . . . . . . 10

*Suzik v. Sea-Land Corp.*, 1993 U.S. Dist. LEXIS 2004 (N.D. Ill. Feb. 25, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 14

*Sw. Sunsites v. FTC*, 785 F.2d 1431 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . 46

xx

*Swedish Civil Aviation Admin. v. Project Mgmt. Enters. Inc.*,
190 F. Supp. 2nd 785 (D. Md. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   50

*Tait v. BSH Home Appliances Corp.*, 2011 U.S. Dist. LEXIS 54456
(C.D. Cal. May 12, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   48

*Tait v. BSH Home Appliances Corp.*, 2011 U.S. Dist. LEXIS 103584
(C.D. Cal. Aug. 31, 2011) . . . . . . . . . . . . . . . . . . . . . . . . .   11, 13, 16-18, 36, 45-46

*Tait v. BSH Home Appliances Corp.*, 2012 U.S. Dist. LEXIS 183649
(C.D. Cal. Dec. 20, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234 (2005) . . . . . . . . . . . . . . .   40

*Tidikis v. Network for Med. Communs. & Research, LLC*,
274 Ga. App. 807 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   48

*Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123
(N.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18-20, 37-38

*Time-Cap Labs., Inc. v. Spirit Pharm., L.L.C.*,
2012 N.Y. Misc LEXIS 2911 (N.Y. Sup. Ct. June 13, 2012 (UNPUBLISHED) . . . .   8

*Toone v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 109455
(D. Utah Sept. 27, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   46

*Trans States Airlines v. Pratt & Whitney Can.*, 177 Ill. 2d 21 (1997) . . . . . . . . . . .   7-8

*Trustees of Columbia Univ. v. Gwathmey Siegel & Assocs. Architects*,
601 N.Y.S.2d 116 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*United New Jersey Bank v. Kensey*, 306 N.J. Super. 540 (1997) . . . . . . . . . . . . . . .   24

*United States v. Gillion*, 2012 U.S. App. LEXIS 26568
(4th Cir. Dec. 28, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*United States Gypsum Co. v. Mayor of Baltimore*, 336 Md. 145 (1994) . . . . . . .   10, 39

*Varavvas v. Mullet Cabinets, Inc.*, 185 Ohio App. 3d 321 (2009) . . . . . . . . . . . . . .   44

xxi

*Vieira v. First Am. Title Ins. Co.,* 668 F. Supp. 2d 282 (D. Mass. 2009) . . . . . . . . . .   50

*Village of Groton v. Tokheim Corp.*, 608 N.Y.S.2d 565 (1994) . . . . . . . . . . . . . . . .   9

*Villasenor v. Sears, Roebuck & Co.*, 2011 U.S. Dist. LEXIS 4301
(C.D. Cal. Jan. 18, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Wade v. Jobe*, 170 Utah Adv. Rep. 5 (1991) . . . . . . . . . . . . . . . . . . . . . . . . .   46

*Wade v. Midwest Brake Bond Co.*, 1998 U.S. Dist. LEXIS 15055
(N.D. Ill. Sept. 22, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

*Wade v. Tiffin Motorhomes, Inc.,* 686 F. Supp. 2d 174 (N.D.N.Y 2009) . . . . . . . . . .   35

*Wagner v. Ohio State Univ. Med. Ctr.*, 2013 Ohio 2451 (2013) . . . . . . . . . . . . . . .   9

*Wash. Freightliner, Inc. v. Shantytown Pier, Inc.,* 351 Md. 616 (1998) . . . . . . . . . .   33

*Washington v. Baenziger*, 673 F. Supp. 1478 (N.D. Cal. 1987) . . . . . . . . . . . . . . .   13

*Waterloo Coal Co. v. Komatsu Mining Sys.*, 2003 U.S. Dist. LEXIS 411
(S.D. Ohio Jan. 6, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

*Waters v. J.C. Christensen & Assocs.*, 2011 U.S. Dist. LEXIS 41075
(D. Mass. Mar. 4, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   42

*Watkins v. Ford Motor Co.*, 190 F.3d 1213 (11th Cir. 1999) . . . . . . . . . . . . . . .   10, 22

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F. Supp. 2d 1099
(C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

*Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D.N.Y. 1997), *vacated and
remanded on other grounds*, 14 Fed. Appx. 136 (2d Cir. 2001) . . . . . . . . . . . . . . .   31

*Whalen v. Rutherford*, 2012 U.S. Dist. LEXIS 176464
(W.D. Va. Dec. 13, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

*Whetstine v. Gates Rubber Co.*, 895 F.2d 388 (7th Cir. 1990) . . . . . . . . . . . . . .   10-11

*White Consol. Industry, Inc. v. Swiney*, 237 Va. 23 (1989) . . . . . . . . . . . . . . . . . . . . .   33

*White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278 (2006) . . . . . . . . . . . . . . . .   14

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) . . . . . . . . . . . . . . .    7

*Williams v. Ballenger*, 87 Ga. App. 255 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) . . . . . . . . . . . . . . . .   38

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) . . . . . . . . . . .   16, 19, 37

*Wolf v. Prudential-Bache Secs.*, 41 Mass. App. Ct. 474 (1996) . . . . . . . . . . . . . . .   24

*Woods v. Google Inc.*, 2013 U.S. Dist. LEXIS 51170
(N.D. Cal. Apr. 9, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

*Woods v. Maytag Co.*, 2010 U.S. Dist. LEXIS 116595
(E.D.N.Y. Nov. 2, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

*Woods v. Maytag Co.*, 807 F. Supp. 2d 112 (E.D.N.Y. 2011) . . . . . . . . . . . .   15-16, 27

*Worldwide Mach., Inc. v. Wall Mach., Inc.*, 2006 U.S. Dist. LEXIS 66432
(D. Utah Sept. 12, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

*Yang v. Sun Trust Mortg., Inc.*, 2011 U.S. Dist. LEXIS 147656
(E.D. Cal. Dec. 22, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

*Yazd v. Woodside Homes Corp.*, 2006 UT 47 (2006) . . . . . . . . . . . . . . . . . . . . . . .   46

*Young v. Elmira Transit Mix, Inc.*, 383 N.Y.S.2d 729 (1976) . . . . . . . . . . . . . . . .   27

<u>STATUTES</u>

15 U.S.C. §§ 41(2013), *et seq.*, Federal Trade Commission Act ("FTCA") . . . . . . .   46

15 U.S.C. §§ 2301 (2013), *et seq.*, MMWA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36-37

Cal. Bus. & Prof. Code § 17200-17210 (2013)
California's Unfair Competition Law (Enforcement) . . . . . . . . . . . . . . . . . . . . .   37-38

Cal. Bus. & Prof. Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

Cal. Civ. Code §§ 1750 (2013), *et. seq.*,
Consumers Legal Remedies Act ("CLRA") . . . . . . . . . . . . . . . . . . . . . . . . . . .   37-38

Cal Civ Code § 1790 *et seq.* (2013), Song-Beverly Consumer Warranty Act . . .   35, 37

Cal. Civ. Code § 1791.1(c) (2013) Implied warranty of merchantability;
Implied warranty of fitness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34-36

Cal. Com. Code § 2607(3)(A) (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

Cal. Comm. Code § 2725 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

Ga. Code Ann. ("O.C.G.A.") §§ 10-1-390 (2013) *et seq.*, Georgia Fair
Business Practices Act ("FBPA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39

Ga. Code Ann. § 11-2-725 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

Ga. Code Ann. § 23-2-53 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

Ga. Code Ann. § 51-1-11.1 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

815 ILCS §§ 501/1 (2013), *et seq.*, Illinois Consumer Fraud and Deceptive
Practices Act ("ICFA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   44-45

Mass. Gen. Laws ch. 93A, §§ 1 (2013) *et seq.*,
Massachusetts Consumer Protection Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41-42

Mass. Gen. Laws ch. 93A, § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   42

Mass. Gen. Laws ch. 93A, § 9(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   42

Mass. Gen. Laws ch. 93A, § 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   42

Md. Commercial Law Code Ann. §§ 13-101 (2013), *et seq.*,
Maryland Consumer Protection Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38-39

N.J. Stat. §§ 56:8-1(2013) *et seq.*, New Jersey
Consumer Fraud Act ("NJCFA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39-41

N. J. Stat. § 2A:58C-1, *et seq.* (2013), New Jersey's
Product Liability Act ("NJPLA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28-29, 39

N.Y. Gen. Bus. §§ 349 (2013), *et seq.*,
New York Deceptive Practices Act  ("NYDPA") . . . . . . . . . . . . . . . . . . . . .   45-46

Ohio Rev. Code ("ORC") Ann. §§ 1345.01 (2013) *et seq.*, Ohio Consumer Sales
Practices Act ("OCSPA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   43-44

Ohio Rev. Code § 1345.09 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   43

Ohio Rev. Code Ann. §§ 2307.71-.81 (2013),
Ohio Product Liability Act ("OPLA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12-13

Ohio Rev. Code Ann. § 2307.71 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Ohio Rev. Code Ann. § 2307.72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Utah Code Ann. §§ 13-11, *et seq.* (2013), Utah Consumer Sales Practices Act
("UCSPA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   46-47

Utah Code Ann. § 13-11-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   46-47

Utah Code Ann. § 13–11–19(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   47

Utah Code Ann. § 13–11–19(4)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   47

Utah Administrative Code R152-11-10 B . . . . . . . . . . . . . . . . . . . . . . . . . . .   47

Va. Code §§ 59.1-196 (2013)*, et seq.*, Virginia Consumer Protection Act . . . . . .   42-43

RULES

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 43

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13-18, 44

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
Case No. 8:11-cv-01733-FMO-MLG**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4-5

OTHER AUTHORITIES

67A Am. Jur 2d Sales § 250 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32

Restatement (Second) of Torts § 388. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 19, 21-27

Restatement (Second) of Torts § 551. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22-24

Restatement (Third) of Torts: Products Liability § 10 . . . . . . . . . . . . . . . . . . .   9-10, 14

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
Case No. 8:11-cv-01733-FMO-MLG**

# I.    __INTRODUCTION__

Plaintiffs are eighteen persons from eleven states – representing a putative class of tens of thousands of consumers, if not more – who are past or present owners of Whirlpool-manufactured dishwashers branded "Whirlpool," "Kenmore" or "KitchenAid" (collectively, "DWs") that pose a health and safety hazard caused by a defect in their design and manufacture ("Defect").[1] As detailed in the Fourth Amended Complaint ("FAC"), the Defect, located at the terminal connecting the wiring for the heating element and the electronic control board, causes the connection to overheat to extreme temperatures – exceeding 1000° F – sufficient to ignite surrounding plastics and wire insulation. *Id.*, ¶¶ 7-8, 50, 164-165. Flames can erupt from the DWs and set fire to flammable materials nearby. *Id*. This creates an unreasonable risk of potentially catastrophic destruction, including property damage, personal injury and loss of life. *Id.*, ¶ 163. Five Plaintiffs experienced flames erupting from their DWs; two witnessed external sparks; and one observed electrical arcing radiating from his DW. Some saw smoke and smelled fumes.  All of the DWs were rendered inoperable. *Id.*, ¶ 2.

Combusting DWs are not confined to the Plaintiffs. Plaintiff Chambers' website, www.kitchenaidfire.com (FAC ¶ 29), had garnered almost five hundred complaints as of early 2012, when he stopped posting new notices. The Consumer Product Safety Commission's website, www.consumeraffairs.com (FAC ¶188), also contains numerous accounts of the Defect. Further evidence of the geographic scope of this hazard is found in illustrative narratives in the FAC, including external flames experienced by four consumers (*id.*, ¶ 3), a house burning down (*id.*), the inside of another house destroyed (*id.*), and multiple personal accounts from around the country (*id.*, ¶¶ 177, 188). By its very nature, exact causation may be impossible to determine in

---

[1] The Fourth Amended Complaint avers both that the Defect is embedded in the DWs' "design or manufacturing process or both," *id.*, ¶ 8, and that the DWs "contain a design Defect," *id.*, ¶¶ 163, 165. In fact, the ongoing investigation of Plaintiffs' retained expert indicates that it is a design defect that is replicated in the manufacturing process.

__PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS FOURTH AMENDED COMPLAINT__
__Case No. 8:11-cv-01733-FMO-MLG__

a fire so intense that it burns down the house and kills its inhabitants, but there are reported cases where the Defect might have caused such tragedies. *Id.*, ¶¶ 9, 186, 187. This lawsuit aims to prevent such horrific incidents in the future.

## II.   PERTINENT ALLEGATIONS IN THE COMPLAINT

It is no surprise that Defendants ignore the FAC's comprehensive narrative detailing the existence and severity of the Defect. They have consistently ignored the many reports of the Defect reflected in the FAC and have refused to warn purchasers of the risk of fire,[2] despite Defendants' continuing duty to the public. To the contrary, Defendants have deceptively advertised that the DWs are of high quality and, implicitly, defect-free.[3] What is more – if not worse – Defendants have insisted to consumers, including Plaintiffs, *after they have complained about the Defect*, that it does not exist![4] This is despite overwhelming evidence that Defendants have known of the Defect since at least 1995 due to their own testing, replacement part sales data, aggregate data from DW dealers, consumer complaints and warranty claims.[5] In that regard, Defendants make much of the fact that Plaintiffs describe the Defect in terms of its manifestation and impact, rather than its precise causation, as if that fails to meet the requisite standard of pleading.[6]   Of course, Defendants themselves, in internal memoranda, have characterized the Defect in precisely the same manner – by manifestation and impact – and have equivocated on exact causation.[7] More fundamentally, Defendants overlook the fact that a complaint need not allege precise causation in order to allege a product defect, *infra* fn. 39; Plaintiffs are in the midst of

---

[2] *Id.* ¶¶ 28-30, 46, 59, 67, 144 (ignored reports); *id.*, ¶¶ 33, 41, 49, 55, 60-61, 64, 72, 78, 85, 91, 95, 101, 103, 107, 112, 115, 120, 126, 132, 137, 140 (refused to notify of risk of combustion).

[3] *Id.*, ¶¶ 16, 26, 33, 158-62, 191, 300, 334, 338, 353, 357, 372, 376, 393, 397, 413, 417, 432, 436, 450, 454, 469, 473, 487, 491, 506, 510, 519.

[4] *Id.*, ¶¶ 15, 19, 31, 59, 67-68, 97, 114, 144, 177(B).

[5] *Id.*, ¶¶ 4-5, 10-13, 17-18, 28-30, 37-38, 45-46, 51, 58-59, 67-68, 74-75, 80, 82, 89, 96-97, 103, 110, 114, 117-18, 124, 135, 144-45, 167, 177, 180-82, 184-88, 202, 290, 301, 312(A), 330-32, 349-51, 368-70, 389-91, 409-11, 429-31, 446-48, 465-67, 483-85, 502-04, 536-38.

[6] *See, e.g.,* MTD 8-9, 12, 31, 37, 40, 41, 44.

[7] FAC ¶¶ 10-11.

2

reviewing the hundreds of thousands of pages produced by Defendants (who have not completed production, the ordering of which they control); Plaintiffs' expert has yet to render his report; and Plaintiffs have not yet deposed defense witnesses.

The FAC states in detail each of the elements needed to state the claims alleged. The situs and manifestation of the Defect are identified.[8] The fact that all Plaintiffs and consumers discussed in the FAC experienced the *same* phenomenon is abundantly demonstrated.[9] Defendants note that "Plaintiffs allegedly experienced a wide variety of electrical failures: some saw 'flames,' while other saw 'sparks and smoke,' while others saw 'electrical arcing' and others saw 'smoke' alone." MTD 3. Defendants muse that these various descriptions "suggest a variety of different potential causes," *id.*, 1. In fact, each is a stage of combustion in an electrical fire caused by the Defect, to which many DWs have succumbed and many more will.[10]

The FAC adequately alleges that Defendants have known of the Defect for a long time,[11] but have concealed that knowledge – as well as the knowledge that recommended repairs or replacement DWs do not remedy the Defect[12] – to induce consumers to purchase DWs, pay for inadequate repairs, and forbear from insisting that Defendants fulfill their warranty obligations by installing non-defective components.[13] Had Defendants disclosed that the Defect can disable the DWs from their intended use during their expected lives; poses a significant risk of combustion; and threatens lives

---

[8] *Id.*, ¶¶ 7-8, 14, 163-66.
[9] *Id.*, ¶¶ 14, 27, 34, 36, 42-43, 50, 57-58, 65-66, 73-74, 79, 86-87, 89, 96, 102, 108, 113, 116-17, 122, 128, 134-35, 141-42, 166, 177, 188.
[10] *Id.*, ¶¶ 5, 17, 21, 168.
[11] *See supra* fn. 6.
[12] *Id.*, ¶¶ 15, 19, 26, 28, 30-31, 33, 41, 45-46, 49, 52, 55, 5-61, 64, 67-68, 72, 78, 85, 92, 95-97, 101, 103, 105, 107, 112, 114-15, 117, 120, 126, 132, 138, 140, 144, 158-62, 177(B), 287, 302, 312, 337-38, 343, 353, 356-57, 362, 372, 375-76, 393, 396-97, 402, 413, 416-17, 422, 432, 435-36, 441, 450, 453-54, 459, 469, 472-73, 478, 487, 490-91, 496, 506, 509-10, 522, 526-27, 540, 543-44, 549.
[13] *Id.*, ¶¶ 192, 313, 338-40, 358, 398, 418, 437, 455, 474, 492, 511, 528, 545.

and property,[14] Plaintiffs would not have bought the DWs, nor paid for service calls, repairs or replacement DWs, and would have demanded that Defendants satisfy their warranties.[15] Plaintiffs have suffered injuries including overpayment for defective DWs, costs for inadequate repairs, loss of use of their DWs and property damage.[16]

Whirlpool's sophistic argument – that only a devastating conflagration can suffice to show a danger to public safety – is a "Catch-22". When such a fire occurs, exact causation can be impossible to prove because the DW itself is consumed by the fire. Thus does Whirlpool deny the necessity for a programmatic solution to its programmatic malfeasance. This Court should reject Whirlpool's invitation to avoidance, and deny their MTD.

## III.   RULE 12(b)(6) PLEADING REQUIRMENTS

In adjudicating a Rule 12(b)(6) motion, the Court should accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the pleader. *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 U.S. Dist. LEXIS 67070 at *11-12 (C.D. Cal. May 14, 2012). While "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" need not be taken at face value, *id*., the Court must assume that general allegations embrace the necessary, specific facts to support the claim. *Smith v. Pacific Prop. & Dev. Corp*., 358 F.3d 1097, 1106 (9th Cir. 2004). "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Baker v. Rodriguez*, 2011 U.S. Dist. LEXIS 113094, at *6 (C.D. Cal. Sept. 29, 2011). Thus "[t]o survive a motion to dismiss, a complaint must contain

---

[14] *Id.*, ¶¶ 2-3, 5, 8, 12-13, 17, 21, 27, 34, 36, 42, 50, 65, 73, 79, 86, 96, 102, 108, 113, 116, 122, 128, 134, 141, 163, 165-68, 177, 188, 278, 280, 285, 324.

[15] *Id.*, 6, 23, 33, 41, 49, 52, 55, 61, 64, 72, 78, 85, 92, 95, 101, 105, 107, 112, 115, 120, 126, 132, 138, 140, 173, 177-78, 192, 311, 315, 335, 354, 359, 373, 378, 394, 399, 419, 433, 438, 451, 456, 470, 475, 488, 493, 507, 512, 524, 529, 541, 546.

[16] *Id.*, ¶¶ 22, 23, 28, 38-39, 44, 47, 51, 53, 60, 62, 68-70, 76, 81, 83, 91, 93, 98-99, 106, 110-11, 115, 118-19, 125, 130-31, 137, 139, 142, 146-47, 169, 171, 193-94, 281, 289, 296, 304-06, 316, 325, 342, 361, 383, 401, 421, 440, 458, 477, 495, 514, 530, 548.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plaintiffs meet this standard, and therefore the MTD should be denied.

## IV. PLAINTIFFS STATE CLAIMS FOR STRICT PRODUCT LIABILITY, FAILURE TO WARN AND NEGLIGENCE

### A. The Economic Loss Doctrine Is Not A Bar

Defendants argue that the claims of Chambers (Md.), O'Donnell (Ga.), LeBlanc (Mass.), Meneghetti (Ill.), Paolini and Koswener (N.Y.), and Steffes (Utah) for strict product liability, strict product liability failure to warn, negligent failure to warn and negligence should be dismissed under the economic loss doctrine ("ELD"). The ELD generally prohibits recovery for these torts where a product defect damages only the product, but Plaintiffs' claims falls within well-recognized exceptions to the rule.[17]

**Md.:** Under the *Whiting-Turner* exception, the ELD does not bar tort claims where the alleged "defect presents a substantial, clear and unreasonable risk of death or personal injury." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 123-124 (2007) (citation omitted); *Council of Co-owners Atlantis Condo. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 35 (1986) ("[w]here the risk is of death or personal injury the action will lie for recovery of the reasonable cost of correcting the dangerous condition" even "*in the absence of actual injury*" (emphasis added)).[18] Chambers and Van der Veer aver

---

[17] Defendants assert that the referenced Plaintiffs' states have adopted "[t]he economic loss doctrine, in various forms." MTD 6 n.2. However, in support of their argument that the ELD bars these tort claims even where "an abrupt, accident-like event" occurs, *id.*, 6, they cite only to a federal admiralty law case and a New Jersey case, *id.*, neither of which controls the referenced claims.

[18] Maryland uses a two-prong analysis to determine whether this exception applies in a given case. This analysis includes consideration of both (1) "the nature of damage threatened" and (2) the "probability of damage occurring." *Lloyd*, 397 Md. at 128 (citation omitted).  The exception applies in cases where there is either a substantial likelihood of injury, *or* where resulting injuries are likely to be severe, *id.,* at 129 ("[I]f the possible injury is extraordinarily severe, *i.e.* multiple deaths, we do not
*Footnote Continued*

that on March 22, 2009, their DW erupted in flame just after beginning a normal cycle. FAC ¶ 27. A serious fire would have ensued had Van der Veer not been nearby. *Id.* As both the probability of damage and risk of severe injury, including fatality, was unreasonably high, the *Whiting-Turner* exception applies and the ELD is not a bar.

**Ga.:** O'Donnell states tort claims under the accident and misrepresentation exceptions to the ELD.[19] *Lumbermen's Underwriting Alliance v. Blount Int'l, Inc.*, 2007 U.S. Dist. LEXIS 102300, at *6-7 (N.D. Ga. Feb. 5, 2007); *Holloman v. D.R. Horton*, 241 Ga. App. 141, 147-48 (1999).

**Mass.:** LeBlanc's tort claims are preserved under the negligent misrepresentation exception to the ELD.[20] *Nota Const. Corp. v. Keyes Associates, Inc.*, 45 Mass. App. Ct. 15, 20 (1998); *Grafton Partners, LLC v. Barry & Foley Motor Transp., Inc.*, 2007 Mass. Super. LEXIS 253, at *6-9 (Apr. 9, 2007).[21] LeBlanc alleges that Defendants knowingly or negligently omitted material information in the DWs' sale and servicing, upon which LeBlanc justifiably relied, causing damages.[22] Massachusetts also recognizes an exception to the ELD based on a theory of negligent breach of contractual duties. *Brown v. Quest Diagnostics, LLC*, 2008 U.S. Dist. LEXIS 101678, at *11-12 (D. Mass. Dec. 16, 2008) (citing cases). As LeBlanc sufficiently alleges a claim for breach of implied warranty, the ELD does not bar his tort claims. *Id.* at *11. Further, the ELD does not apply where the plaintiff is not able to bargain or allocate risk, or where conduct involves a public safety issue. *City of Boston v. Smith & Wesson Corp.*, 2000

---

require the probability of the injury occurring to be as high as we would require if the injury threatened were less severe, *i.e.* a broken leg or damage to property.").
[19] Plaintiffs acknowledge that O'Donnell's strict product liability claims against Sears are prohibited under O.C.G.A. § 51-1-11.1.
[20] LeBlanc does not bring claims for strict product liability.
[21] While there is some question as to whether this exception extends beyond claims concerning provision of services, *see Amicas, Inc. v. GMG Health Sys.*, 2009 U.S. Dist. LEXIS 29626, at *2-3 (D. Mass. Apr. 7, 2009), as LeBlanc's claim involves his DW *and* its servicing, his service-related claims clearly survive under the negligent misrepresentation exception, *see id.* at *4.
[22] *See First Marblehead Corp. v. House*, 473 F.3d 1, 9 (1st Cir. 2006) ("Massachusetts law allows negligent misrepresentation claims to be predicated upon a failure to disclose.").

Mass. Super. LEXIS 352, *39-40 (2000). Here, Defendants concealed the Defect from LeBlanc, depriving him of any reason to "bargain freely concerning the allocation of risk," and the conduct involved a public safety issue. *Supra* fns. 10, 12, 14.

**Ill.:**   The ELD does not apply to tort claims where a duty arises outside of a contract. *Nixon v. United States*, 2013 U.S. Dist. LEXIS 1146, at *12 (N.D. Ill. Jan. 4, 2013); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). Defendants' duty to exercise reasonable care in designing and manufacturing their products to make them reasonably safe for intended or foreseeable uses[23] and their duty to warn of dangerously defective products[24] existed independent of the contract. Thus, the ELD is inapplicable to Meneghetti's tort claims. Even if it did apply, her tort claims survive under the "accident" exception for consumer products: "[W]here the plaintiff sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence," recovery will lie. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 337-38 (2006) (citation omitted).[25] While the Illinois Supreme Court held in *Trans States Airlines v. Pratt & Whitney Can.*, 177 Ill. 2d 21, 41-42 (1997), that in a *commercial context* that exception does not permit recovery for damage solely to the defective product, the court reserved ruling on whether the exception would allow a *consumer* to recover where only the product was damaged, *id.* at 39-40.[26] Based on that distinction, the court in *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 664 F. Supp. 2d at 772, refused to dismiss

---

[23] *See Sellers v. Boehringer Ingelheim Pharms., Inc.*, 881 F. Supp. 992, 1009 (S.D. Ill. 2012).

[24] *See, e.g., Suzik v. Sea-Land Corp.*, 1993 U.S. Dist. LEXIS 2004, at *11-12 (N.D. Ill. Feb. 25, 1993).

[25] Illinois does not require, for the sudden and calamitous event exception to apply, that it must pose an unreasonable risk of injury. *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 664 F. Supp. 2d 752, 772-73 (E.D. Mich. 2010). Nevertheless, that fact is present here.

[26] *See also AIG Aviation Ins. v. Avco Corp.*, 709 F. Supp. 2d 1124, 1127 n.3 (D.N.M. 2010) ("Some courts have applied the economic loss rule specifically to commercial plaintiffs, leaving open the possibility that a noncommercial consumer may be able to recover purely economic losses in tort." (Citing authorities including *Trans States Airlines*)).

7

plaintiff consumers' claims under the Illinois ELD. Meneghetti states tort claims.[27]

**N.Y.:**   The ELD does not bar tort claims where the damage to the product resulted from an "abrupt, cataclysmic occurrence," or where the product is unduly dangerous. *Asian Vegetable Research & Dev. Ctr. v. Institute of Int'l Educ.*, 944 F. Supp. 1169, 1181 (S.D.N.Y. 1996) ("here there was no abrupt, cataclysmic occurrence, *such as a fire*, that would support a tort claim [for only economic loss]" (citation omitted) (emphasis added)); *Time-Cap Labs., Inc. v. Spirit Pharm., L.L.C.*, 2012 N.Y. Misc. LEXIS 2911, at *4-7 (N.Y. Sup. Ct. June 13, 2012) (UNPUBLISHED) (recognizing unduly dangerous exception but not applying it as plaintiff made no such allegations); *Trustees of Columbia Univ. v. Gwathmey Siegel & Assocs. Architects*, 601 N.Y.S.2d 116, 118 (1993). The FAC alleges that Koswener's DW erupted in flames 4" high; that Paolini saw electrical arcing approximately 6-8" in length; and that the Defect causes significant injury-producing fires.[28] The abrupt, cataclysmic occurrence and unduly dangerous exceptions apply.

Further, New York recognizes an ELD exception where there is a duty independent of contract. *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 551 (1992). Koswener and Paolini allege that Defendants breached their independent duties to (1) exercise reasonable care in designing and manufacturing the DWs to make them reasonably safe for intended or foreseeable uses;[29] (2) perform repairs in a workmanlike manner;[30] and (3) warn of dangerously defective products.[31]

---

[27] Allowing a claim for damage to the product in a consumer context squarely comports with the court's recognition in *Trans States Airlines* that "strict products liability arose out of a concern that consumers and remote parties are not on an equal footing with the manufacturer or seller to bargain effectively for the allocation of risk." *Trans States Airlines*, 177 Ill. 2d 21, 39.

[28] FAC ¶¶ 13, 122, 134, 177, 186-88.

[29] *Maxwell v. Howmedica Osteonics Corp.*, 713 F. Supp. 2d 84, 90 (N.D.N.Y. 2010); *Nelson v. Ranger, Inc.*, 2009 U.S. Dist. LEXIS 107014, at *5 (N.D.N.Y. Nov. 17, 2009).

[30] *See Levine v. Sears Roebuck & Co., Inc.*, 200 F. Supp. 2d 180, 186-87 (E.D.N.Y. 2002).

[31] *See, e.g., Fisher v Multiquip, Inc.*, 949 N.Y.S.2d 214, 217-18 (2012) ("'manufacturers have a duty to warn against latent dangers due to intended uses and foreseeable unintended uses of their products,'" *id.* at 218 (citation omitted)); *Village of Groton v. Tokheim Corp.*, 608 N.Y.S.2d 565, 568

*Footnote Continued*

---

8

**Utah**: The ELD does not bar tort claims based on a duty independent of contract. *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, P49 (2003). A contracting party has an independent duty to disclose known material information, *e.g.*, defects that reduce an item's value. *Worldwide Mach., Inc. v. Wall Mach., Inc.*, 2006 U.S. Dist. LEXIS 66432, at *12 (D. Utah Sept. 12, 2006). Further, Utah follows the Restatement (Second) of Torts § 388 ("Rest. 388"), which imposes a "duty to warn against a product's latent hazards that are known to the manufacturer but unknown to the consumer." *Slisze v. Stanley-Bostitch*, 1999 UT 20, P15 (1999) (citations omitted).[32] These duties are especially pronounced where the defendant has superior bargaining power or expertise on the subject of the contract. *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, P30 (2009). Steffes alleges that Whirlpool knew or had reason to know of the Defect and thus had an independent duty to warn of it.[33] Also, Whirlpool had a duty to exercise reasonable care in manufacturing the DWs to make them reasonably safe for intended or foreseeable uses.[34] These duties are distinct from Defendants' contract obligations. Steffes's tort claims stand.

## B. Chambers, Himler, O'Donnell, LeBlanc, Mederlet, Bathon, Meneghetti, Koswener, Paolini and Steffes State Failure To Warn Claims

Defendants argue that these Plaintiffs fail to allege adequately a duty to warn, and thus their failure to warn claims should be dismissed. MTD 7-10. They are wrong.[35]

---

(1994) (finding duty to warn of dangerous condition created by product defect). This duty exists post-sale. *Infra* fn. 38.

[32] This duty exists post-sale. *See Herrod v. Metal Powder Prods.*, 2012 U.S. Dist. LEXIS 79562, at *17-19 (D. Utah June 7, 2012) (citing Restatement § 10(b)(1) and cmt. c.)).

[33] *Supra* fn. 5 (knowledge); *infra* § V(b).

[34] *See, e.g., Hunt v. ESI Eng'g, Inc.*, 158 Utah Adv.Rep. 26 at *6 (1991).

[35] "Where the issue of duty turns on the resolution of a factual dispute, 'the question . . . is not for the court as a matter of law,' and must be determined at trial." *Durove v. Fabian Transp. Inc.*, 2004 U.S. Dist. LEXIS 25258, at *15 (S.D.N.Y. Dec. 10, 2004). *See also Everett v. Norfolk S. Ry.*, 292 Ga. 106, 108 (2012); *Ostrander v. O'Banion*, 152 S.W.3d 333, 338 n.2 (Mo. Ct. App. 2004); *Wagner v. Ohio State Univ. Med. Ctr.*, 2013 Ohio 2451, P40 (2013). Even where the issue is a matter of law, whether it was breached is generally a fact question. *Kellerman v. McDonough*, 278 Va. 478, 487 (2009);

1  There are numerous allegations that Defendants knew, should have known or had

2  reason to know[36] of the Defect as early as 1995.[37] Further, pre-sale knowledge is not

3  required because there is a post-sale duty to warn of product defects.[38]

4      As detailed above, Plaintiffs adequately plead the existence of a Defect, that the

5  DWs are dangerous as a result, and that Defendants had knowledge.[39] *See, e.g., Falk v.*

6

---

7  *Cracchiolo v. O'Hara Corp.*, 2013 U.S. Dist. LEXIS 72558, at *10 (D. Mass. May 22, 2013); *NTD*
   *Architects v. Baker*, 2013 U.S. Dist. LEXIS 52463, at *13 (S.D. Cal. Apr. 10, 2013); *Austin v. Soo*
8  *Line R.R. Co.*, 1996 U.S. Dist. LEXIS 13929, at *12 (N.D. Ill. Sept. 19, 1996); *McCrae v. Wal-Mart*
   *Stores*, Inc., 2005 Ohio 4472, P18 (2005); *Hardesty v. Am. Seating Co.*, 194 F. Supp. 2d 447, 450 (D.
9  Md. 2002); *Lockwood v. Berardi*, 522 N.Y.S.2d 279, 280 (1987); *DeBry v. Valley Mortgage Co.*,192
   Utah Adv. Rep. 35, at *9-10 (1992); *Jordan v. Atlanta Replex Corp.*, 228 Ga. App. 670, 675 (1997).
10
   [36] "'Reason to know' means that the actor 'has information from which a person of reasonable
11 intelligence *or of the superior intelligence of the actor* would infer that the fact in question exists, or
   that such person would govern his conduct upon the assumption that such fact exists.'" *Russell ex rel.*
12 *Russell v. Wright*, 2013 U.S. Dist. LEXIS 1421, at *58 (W.D. Va. Jan. 4, 2013) (emphasis added)
   (citation omitted).
13 [37] *Supra* fn. 5. While a negligent failure to warn claim in New York requires that a plaintiff show that
14 breach of a duty "rendered the product 'defective, *i.e.* reasonably certain to be dangerous,'" MTD 8
   (emphasis in original) (citation omitted), due to the fact that "negligent failure to warn claims are
15 intensely fact specific," *Cibbarelli v. Bombardier, Inc.*, 2004 U.S. Dist. LEXIS 26009, at *14
   (E.D.N.Y. Sept. 1, 2004), "the undisputed facts may be sufficient to warrant dismissal as a matter of
16 law" only in limited circumstances, *id.* Further, the FAC - which includes allegations that Koswener's
   DW erupted in flames 4" high; Paolini's DW experienced electrical arcing approximately 6-8" in
17 length; and that significant injury-producing fires have occurred as a result of the Defect – *supra* fn.
   28, plainly shows that the defective DWs are reasonably certain to be dangerous.
18 [38] *See* Restatement (Third) of Torts: Products Liability § 10 ("Rest. 10"); *United States Gypsum Co. v.*
19 *Mayor of Baltimore*, 336 Md. 145, 162-63 (1994); *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 446-
   47 (1992); *Lewis v. Ariens Co.*, 434 Mass. 643-44 (2001); *Russell*, 2013 U.S. Dist. LEXIS 1421, at
20 *54-55; *Cover v. Cohen*, 61 N.Y. 2d 261, 275-77 (1984); *Adams v. Genie Indus., Inc.*, 861 N.Y.S.2d
   (2008); *Herrod*, 2012 U.S. Dist. LEXIS 79562, at *17-19; *Watkins v. Ford Motor Co.*, 190 F.3d 1213,
21 1218 (11th Cir. 1999).
22 [39] *Supra* fns. 1, 5, 8, 10, 14. Defendants' contention that Plaintiffs fail to allege a duty to disclose
   because they "cannot identify a specific defect," MTD 9, is misplaced. Plaintiffs need not allege the
23 "specific defect" at this stage of the proceedings. *See Cholakyan v. Mercedes-Benz USA, LLC*, 796 F.
   Supp. 2d 1220, 1237 n. 60 (C.D. Cal. 2011). *See also Strotman v. K.C. Summers Buick, Inc.*, 141 Ill.
24 App. 3d 8, 11 (1986) (To allege specific defective conditions in manufacture or design, a plaintiff need
25 only "plead and prove specific facts from which an inference of defect may be deduced. The requisite
   specificity includes pleading facts which narrow the search for a defect to a smaller product or to a
26 limited system within a large or complex machine like an automobile." (Citations omitted)).
27     The cases cited by Defendants, in which the courts found that the allegedly defective products
   were *not dangerous* and granted *motions for summary judgment*, are inapt here, in the context of a
28 Rule 12(b)(6) motion to dismiss. *See Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 393 (7th Cir.
                                                                                    *Footnote Continued*

---

10

*G.M. Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007); *Tait v. BSH Home Appliances Corp.*, 2011 U.S. Dist. LEXIS 103584, at *7-8 (C.D. Cal. Aug. 31, 2011); *Feldman v. Mercedes-Benz United States, LLC*, 2012 U.S. Dist. LEXIS 178924, at *30-31 (D.N.J. Dec. 18, 2012); *Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 82746, at *16-24 (C.D. Cal. June 10, 2013). Certainly the Defect was "knowable."[40] And as Defendants concede that the FAC alleges that by 2008 widespread information about the Defect was extant, MTD 16-17, they should have known of the Defect then.[41] Defendants should be held liable for failure to warn regardless of pre-sale knowledge.[42]

---

1990) (finding no duty warn where plaintiff offered no specific evidence disputing the defendants' argument that the explosion was caused by plaintiff's misuse of the hose and did not rebut defendant's expert testimony that the hose was not defective or unreasonably dangerous); *Featherall v. Firestone Tire & Rubber Co.*, 219 Va. 949, 962-64 (1979) (finding no evidence that the lid was dangerous or defective when it left the manufacturer's hands; the evidence indicated that the components of the tank system were mismatched (a lid manufactured by one company was being used with a tank built by a different company), and misuse of the lid could not have been "foreseen or reasonably anticipated" by the manufacturer, *id.* at 964); *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 499-500 (2010) (finding that the plaintiff waived his failure to warn claims where he acknowledged that there was no evidence demonstrating any alleged design defects and, conceding that the design of the van was not the problem, abandoned his claim for defective design).  *Salerno*, in fact, supports Plaintiffs' position as it recognizes that "[a] manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning." 402 Ill. App. 3d at 499. There can be no dispute that the FAC adequately pleads that the DWs are dangerous, *supra* fn.14.

[40]   The store where Cicchelli purchased his replacement ECB keeps many in stock as they are frequently purchased to replace ECBs that burned out in Whirlpool-manufactured DWs, FAC ¶ 45, and the technician who inspected Walker's DW noted that he could not guarantee that a repair would fix the problem "as there appear to be multiple recorded cases of the problem reoccurring," *id.*, ¶ 87. If they knew of the problem, Defendants surely knew, should have known or had reason to know of it.

[41]   For that reason, Defendants had a "pre-sale" duty to warn when: Meneghetti purchased her first DW in 2008, Mederlet purchased her second DW in 2010; Bathon's DW was purchased in 2008; Paolini purchased his second DW in 2012; and Himler contacted them as to his DW failure in the summer of 2010, and Whirlpool gave him a defective replacement DW. FAC ¶¶ 50-52, 78, 101, 107, 137.

[42]   Contrary to Defendants' argument, Himler, LeBlanc and Koswener adequately plead failure to warn claims against Sears, including pre-sale knowledge of the Defect and a post-sale duty to warn. *Supra* fns. 5, 38. Even assuming that pre-sale knowledge is required and that Sears had no reason to know of the Defect until there was wide-spread publicity in 2008, it clearly had "pre-sale" knowledge when Himler contacted Defendants regarding his DW failure in the summer of 2010 and he was provided a

*Footnote Continued*

11

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS FOURTH AMENDED COMPLAINT**
**Case No. 8:11-cv-01733-FMO-MLG**

## C.    The OPLA Does Not Abrogate Bathon's Tort Claims

The Ohio Product Liability Act ("OPLA"), ORC Ann. §§ 2307.71, *et seq.*, applies only to "a claim . . . that . . . seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question." *Id.*, § 2307.71. "Any recovery of compensatory damages for economic loss[43] . . . other than a product liability claim, is not subject to §§ 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code." *Id.*, § 2307.72. Thus, common law negligent design and failure to warn claims that seek damages only for economic loss, and not for death, injury, or physical damage to property beyond the product, are not abrogated by OPLA. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 949-50 (N.D. Ohio 2009); *Hale v. Enerco Group, Inc.*, 2011 U.S. Dist. LEXIS 781, *21-22 (N.D. Ohio Jan. 5, 2011). As Bathon did not incur, nor does she seek, damages for death, physical or emotional injury, or physical damage to property other than her DW, her common law claims for economic loss are not abrogated by OPLA.[44]

---

similarly defective replacement DW, and when Sears inadequately serviced Koswener's DW in 2012. FAC ¶¶ 50-52, 124-25.

[43] Economic loss is defined as "direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product in question, and nonphysical damage to property other than that product." ORC Ann. § 2307.71.

[44] The three cases cited by Defendants' are inapposite. The plaintiffs in two of the cases, in addition to economic loss, incurred damages for death, personal injury or physical damage to property other than the product in question. *See Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 917-18 (N.D. Ohio 2009) (wrongful death action); *Mitchell v. Proctor & Gamble*, 2010 U.S. Dist. LEXIS 17956, at *10-11 (S.D. Ohio Mar. 1, 2010) (plaintiff suffered personal injury as a result of food-borne illnesses). While the *Mitchell* court stated that a plaintiff "cannot separate out his claims from the purview of the OPLA simply by claiming only economic losses," 2010 U.S. Dist. LEXIS 17956, at *10, Bathon is not separating out her claims. Unlike the plaintiffs in the cases cited by Defendants, she did not suffer any damages for death, injury or physical damage to property other than her DW. FAC ¶¶ 102-06.

In the third case, the plaintiffs did not argue that common law claims for economic loss are not abrogated by OPLA and thus the court did not consider such contention. *Roshong v. Fitness Brands, Inc.*, 2012 U.S. Dist. LEXIS 72806, at *5-6 (N.D. Ohio May 24, 2012). In support of their argument

*Footnote Continued*

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS FOURTH AMENDED COMPLAINT**
**Case No. 8:11-cv-01733-FMO-MLG**

# V.   PLAINTIFFS STATE CLAIMS FOR FRAUDULENT CONCEALMENT

## A.   Plaintiffs Meet The Pleading Requirements of Fed. R. Civ. P. 9(b)

Rule 9(b) requires that "circumstances constituting fraud" be "state[d] with particularity." Defendants seek dismissal of Plaintiffs' claims for fraudulent concealment/non-disclosure under that standard for failing to "plead the who, what, when, where, and how of the misconduct charged." MTD 12. The argument fails: Defendants ignore the more liberal standard applicable to fraudulent *omission* cases, like this one, where time and place cannot be affirmatively pled.[45] Tellingly, the sufficiency of Plaintiffs' fraud-by-omission claim was recognized in multidistrict litigation against Whirlpool concerning defective front-loading washing machines. *See In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 684 F. Supp. 2d at 961.[46]

---

that OPLA did not abrogate their negligence claims, the plaintiffs in *Roshong* relied on *Hertzfeld v. Hayward Pool Prods., Inc.*, 2007 Ohio 7097 (2007). *Id.* There the plaintiffs suffered personal injury and economic loss, 2007 Ohio 7097, at P2, and the court simply held that common law causes of actions that arose prior to the 2005 amendment to OPLA can survive under *Carrel* (which held that negligent design claims *seeking more than economic loss* survive the enactment of the OPLA). *Id.* at P56-57. The *Roshong* court found that the plaintiffs' reliance on *Hertzfeld* was misplaced as the 2005 amendment applied in their case. *Roshong* is clearly not instructive as to Bathon's argument that common law claims *for only economic loss* are not abrogated by OPLA.

[45] *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987); *Tait v. BSH Home Appliances Corp.*, 2011 U.S. Dist. LEXIS 103584, at *6 (C.D. Cal. Aug. 31, 2011); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545 (D. Md. 2011). "An allegation of fraudulent concealment satisfies the particularity requirement if it alleges the facts a defendant, who was under the duty to disclose, failed to reveal." *Fireman's Fund Ins. Co. v. Allied Programs Corp.*, 1993 U.S. Dist. LEXIS 16247, at *26 (S.D.N.Y. Nov. 15, 1993) (citation omitted). The "content" of an omission is adequately pled by alleging why or how it was material. *See Energy Absorption Sys., Inc. v. Roadway Safety Service Inc.*, 1993 U.S. Dist. LEXIS 13731, *4-6 (N.D. Ill. Sept. 16, 1993).

[46]     [T]he Plaintiffs' fraud-by-omissions claims notify Whirlpool of the time (never), place (nowhere), and content (nothing) of the alleged misrepresentations, the Plaintiffs' alleged reliance (materiality), the fraudulent scheme (Whirlpool's knowledge of the supposed defects and problems), its fraudulent intent (failure to disclose them), and the resulting injury (overpayment). Rule 9(b) does not require more.

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 684 F. Supp. 2d at 96. "Requiring a plaintiff to identify . . . the precise time, place and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission." *Id.* Further, while Defendants

*Footnote Continued*

---

13

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS FOURTH AMENDED COMPLAINT**
**Case No. 8:11-cv-01733-FMO-MLG**

Plaintiffs aver that Defendants knew material facts - the Defect causes combustion, smoke, fumes and fire, poses a health and safety hazard to consumers and results in the DWs' premature failure. Defendants had a duty to disclose, but concealed these facts from Plaintiffs. Had they known, they would not have bought DWs nor paid for ineffective repairs or agreed to accept or buy similarly defective DWs.[47]

Defendants rely on inapposite cases to argue that Plaintiffs fail to establish the materiality and duty elements of these claims. MTD 12-14.  As to materiality, Defendants rely on *Munch v. Sears, Roebuck & Co.*, 2007 U.S. Dist. LEXIS 62897 (N.D. Ill. Aug. 27, 2007) and *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278 (2006), to argue that the allegations are deficient due to the absence of information about the rate of failures. MTD 13-14. However, in those cases plaintiffs alleged that *the failure rates* were the material facts at issue that defendants should have disclosed. *Coss v. Playtex Products*, 2009 U.S. Dist. LEXIS 66905, at *8 (N.D. Ill. July 10, 2009). Here, where the material fact is a danger Defect that renders a product unsuitable for

---

cite *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009), MTD 12, this Court held that the strict pleading requirements stated there, including identification of a specific advertisement where information about the defect was omitted, are improper. *Overton v. Bird Brain, Inc.*, 2012 U.S Dist. LEXIS 36143, at *14-15 (C.D. Cal. Mar. 15, 2012) (refusing to adopt the strict pleading requirements of *Marolda* and noting other courts' holdings that *Marolda* exceeds the Ninth Circuit's application of Rule 9(b)). In any event, the FAC specifically alleges that "[n]othing in the user manuals, warranties, or on the DWs themselves disclosed the Defect." FAC ¶ 13. The FAC also alleges fraudulent concealment *after* the DWs' purchase; misleading advertisements are not the sole basis for the suit, as in *Marolda*. *See, e.g.,* Restat. 10. Plaintiffs also aver that they know of nothing in Defendants' advertising or marketing materials disclosing the Defect, *supra* fn. 12, and that they would not have purchased the DWs, or would have paid less, and would not have paid for ineffective repairs or accepted or bought defective replacement DWs, had they known of the Defect, *supra* fn. 15. That is sufficient. *See, e.g., Grill v. Philip Morris USA, Inc.*, 653 F. Supp. 2d 481, 495-96 (S.D.N.Y. 2009).

[47]*Supra* fns. 5, 12, 14, 15; *infra* § V(b). Defendants' argument that Plaintiffs fail to meet Rule 9(b)'s pleading standards because Plaintiffs "improperly lump[ed] 'Defendants' together for all purposes," MTD 14, is unavailing. The FAC is distinguishable from *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007), as it is saturated with specific references to Whirlpool and Sears, and misconduct of each.  Plaintiffs do not merely state as a catch-all that either Defendant was an "active participant." 476 F.3d at 765.

---

normal use, there is no need to allege information about rates of failure, *id.*;[48] *Ramirez v. General Elec. Co.*, 2008 U.S. Dist. LEXIS 84178, at *10-13 (D. Conn. Oct. 20, 2008) (rejecting Defendants' argument (based on *White* and *Munch*) that plaintiff needed to allege the failure rate of the microwaves ovens at issue to establish materiality).

To support their argument that Plaintiffs fail to establish the duty element of their claims, Defendants rely on *Meserole v. Sony Corp.*, 2009 U.S. Dist. LEXIS 42772 (S.D.N.Y. May 18, 2009); *Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 33387 (C.D. Cal. Feb. 19, 2013); *Berenblat v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 9, 2010); and *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008). MTD 13-14. In *Meserole*, the plaintiffs provided no "particularized allegations evincing that Sony knew about the alleged defect prior to distributing the products to Plaintiffs." 2009 U.S. Dist. LEXIS 42772, at *12. "Specifically, the Complaint states the Complaint states that 'Sony has known about the defect in the design of the Optical Block contained in the Televisions since no later than 2005 . . . .' However, no Plaintiffs allege that they purchased the Televisions in 2005 or later. In fact, the Complaint is devoid of any dates indicating when the Televisions were actually bought by Plaintiffs." *Id.* at *25-26. That is not the case here.[49]

Defendants twist the *Grodzitsky*, *Berenblat* and *Oestreicher* holdings in broadly asserting that "allegations of customer complaints about a product [are] insufficient to show the defendant's knowledge of a defect."[50] MTD 13. The *Grodzitsky* Court, noting

---

[48]     . . . *White* and *Munch* are distinguishable because the plaintiffs in those cases alleged that the failure rates were the material facts at issue. If the material fact is the failure rate, factual allegations concerning the specifics of the failures are necessary, but plaintiff in the instant case does not allege that defendant should have disclosed the failure rate. Rather, plaintiff alleges that a design defect makes the bottles unsuitable for normal use. Therefore, plaintiff is not required to allege failure rates or the standard rates of failure for other bottles.

*Coss*, 2009 U.S. Dist. LEXIS 66905, at *8 (citations omitted).

[49] *Supra* fn. 5; FAC ¶¶ 26, 33, 41, 49, 51, 55, 60, 64, 72, 78, 85, 91, 95, 101, 104, 107, 112, 115, 120, 126, 132, 137, 140.

[50] As to the element of knowledge, "[w]hile the fraud alleged must be stated with particularity, Rule 9(b) specifies that '[m]alice, intent, *knowledge*, and other conditions of a person's mind may be

*Footnote Continued*

---

that "[a]wareness of a few customer complaints [ ] does not establish knowledge of an alleged defect," 2013 U.S. Dist. LEXIS 33387, at *21 (citation omitted), found that evidence of only ten online complaints, many of which were posted post-sale, could not establish the defendant's pre-sale knowledge of the defect, *id.*, *21-22.[51] The *Berenblat* court held that an unspecified number of complaints posted on defendant's website was

---

alleged generally.'" *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (quoting Fed. R. Civ. P. 9(b)) (emphasis added). "Indeed, 'it is not unusual in cases involving concealment that a plaintiff will be unable to state the facts constituting fraud in detail since such facts are necessarily peculiarly within the knowledge of the defrauding party.'" *Id.* at 125 (citation omitted). "[W]here information indicating fraud is solely within the possession of the defendant the pleading party [need only] 'provide a statement of facts upon which the belief is founded.'" *Id.* (citations omitted). Plaintiffs here adequately aver facts upon which their belief of Defendants' knowledge is founded. *Supra* fn. 5.

[51] Further, the *Grodzitsky* Court incorrectly found that *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012), overruled the holding in *Falk. See* 2013 U.S. Dist. LEXIS 33387, at *22-23 n. 8 ("Plaintiffs argue that allegations 'nearly identical' to theirs were deemed sufficient to establish knowledge under the CLRA by the district courts in *Falk* and *Ehrlich*; however, those decisions were made before the Ninth Circuit's decision in *Wilson*."). The *Wilson* court differentiated *Falk* and did not overrule it. *See, e.g., Wilson*, 668 F.3d at 1147:

> By contrast, the plaintiffs in *Falk* alleged that "[o]nly GM had access to the aggregate data from its dealers[,] only GM had access to pre-release testing data[, and] only GM had access to the numerous complaints from its customers." These facts led the court to conclude that plaintiffs sufficiently "state[d] a claim that GM had exclusive knowledge of the alleged defect in their speedometers." . . .
>
> Plaintiffs rely on *Falk* and distinguish *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, (N.D. Cal. 2010),[ ] in asserting that customer complaints can impute knowledge on a defendant. . . . The *Falk* court, however, considered "the amassed weight of [customer] complaints" together with other indications that GM had knowledge of the defect. 496 F. Supp. 2d at 1096-97.

Thus, *Falk* remains good law. This case is like *Falk* and, therefore, the Court should find the knowledge allegations sufficient. *See Falk*, 496 F. Supp. 2d at 1096-97 (N.D. Cal. 2007) (finding exclusivity where defendant was in a superior position to know that its speedometers might fail based in part on its aggregate data from dealers, prerelease testing data and consumer complaints). *See also Tait*, 2011 U.S. Dist. LEXIS 103584, at *7-8 (finding that the plaintiffs sufficiently allege Defendant's knowledge of the defect based on first-hand experience and consumer complaints, and stating that "whether Defendant *actually* possessed exclusive knowledge of the machines' alleged problems . . . is a factual question to be resolved at a later date," *id.* at *8 n.2 (emphasis in original)); *Feldman*, 2012 U.S. Dist. LEXIS 178924, at *30-31 ("Plaintiffs have adequately pled exclusive knowledge" based on "pre-release testing data, early consumer complaints about the AIS Defect . . . testing conducted in response to those complaints, warranty and post-warranty claims, replacement part sales data, aggregate data from Mercedes dealers, and from other internal sources." (Alterations in original)).

insufficient to show that defendant had knowledge of the defect – rather, the postings only showed knowledge that there were complaints. 2010 U.S. Dist. LEXIS 46052, at *27-28. In *Oestreicher*, the court simply stated in a footnote that "[r]andom anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants." 544 F. Supp. 2d at 975 n. 9.

By contrast, Plaintiffs allege Defendants' knowledge of the Defect due to (1) the experiences of Plaintiffs and others whose stories are detailed in the FAC; (2) numerous customers complaints received since at least 2002, with dates and information on several of those instances; (3) Whirlpool's prior experience with terminal connection defects in its dishwashers; (4) pre-release testing; (5) replacement part sales data; (6) aggregate data from DW dealers; (7) DW warranty claims; and (8) other internal sources to which Defendants had exclusive access.[52] *Supra* fn. 5. These robust, detailed allegations overwhelm the scant pleadings in *Grodzitsky*, *Berenblat* and *Oestreicher*. Plaintiffs adequately allege pre-sale knowledge and thus establish the element of duty.[53]

---

[52] Defendants argue that Plaintiffs may not base fraud allegations on "information and belief" as that "would effectively nullify the pleading requirements for materiality and knowledge . . . ." MTD 14. Defendants are wrong. *See Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 961 n.85 (C.D. Cal. 2012). Under California law, a "plaintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true." *Mendez v. AstraZeneca Pharms. LP*, 2012 U.S. Dist. LEXIS 73270, 7-8 (E.D. Cal. May 25, 2012); *Jhaveri v. ADT Sec. Servs., Inc.*, 2012 U.S. Dist. LEXIS 38100, at *15-16 (C.D. Cal. Mar. 6, 2012) (same). Here, Plaintiffs identify the sources of Defendants' knowledge, *supra* fn. 5, thus adequately pleading that Defendants had pre-sale knowledge of the Defect. Further, Plaintiffs do not plead materiality on information and belief – they allege that DWs have a dangerous Defect based on their own experiences; others whose stories are told in the FAC; and numerous customer complaints.

Defendants misconstrue *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006). The language quoted from *Daugherty*, MTD 14, had nothing to do with pleading on "information and belief." *See* 144 Cal. App. 4th at 830. Further, *Daugherty* dealt with a non-dangerous defect, which distinguishes it from the case at hand. *See Keegan*, 838 F. Supp. 2d at 940-41. And, Defendants' argument that Plaintiffs should not be permitted to make allegations on "information and belief" because "of substantial document discovery from Defendants," MTD 14, is groundless, as the pleadings are still at the complaint stage; Defendants are still producing documents on a rolling basis, which Plaintiffs have not had time to analyze; Plaintiffs have not deposed any of Defendants' representatives yet; and Plaintiffs' expert has not yet rendered his report.

[53] *See, e.g., Falk*, 496 F. Supp. 2d at 1096; *Tait*, 2011 U.S. Dist. LEXIS 103584, at *7-8; *Feldman*, 2012 U.S. Dist. LEXIS 178924, at *30-31; *Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist.

*Footnote Continued*

17

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS FOURTH AMENDED COMPLAINT**
**Case No. 8:11-cv-01733-FMO-MLG**

Finally, unlike in Defendants' cases, Plaintiffs allege a post-sale duty to warn of a Defect that posed an unreasonable safety risk. *Supra* fns. 5, 14, 38. Pre-sale knowledge is not required to support the fraudulent concealment claims.

### B.   Defendants Had A Duty To Disclose The Defect

Contrary to Defendants' assertion, MTD 12-17, the FAC clearly shows that Defendants had a duty to disclose the Defect.[54] Defendants' primary argument, that "Plaintiffs offer only bald allegations that" Defendants have superior knowledge of the Defect and that Defendants actively concealed information about the Defect, *id.*, 15, is baseless.[55] *Supra* fns. 4, 5, 12. Further, Defendants only argue that Plaintiffs fail to

---

LEXIS 82746, at *16-24 (C.D. Cal. June 12, 2013) (holding that the complaint sufficiently alleged defendant's knowledge of a defect that posed an unreasonable safety hazard); *Ho v. Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 35748, at *23-24 (N.D. Cal. Mar. 14, 2013) (holding that Plaintiffs had adequately alleged that Toyota had knowledge of a headlamp defect upon alleging that Toyota "had non-public, internal data about the Class Vehicles' headlamp problems, including prerelease testing data, early consumer complaints about the defect to Defendants' dealers who are their agents for vehicle repairs, dealership repair orders, testing conducted in response to those complaints, and other internal sources") (internal quotation marks omitted)).

[54] Defendants' assertion that they cannot be liable for fraudulent concealment as to Plaintiffs who purchased their DWs after 2008 (at which time Defendants concede that the FAC plausibly alleges widespread availability of public information on the internet concerning the Defect, MTD 16-17) – because the information could have been discovered by those Plaintiffs, *id.* – is likewise unavailing. This argument has been rejected by this very Court. *See Tait*, 2011 U.S. Dist. LEXIS 103584, at *7-8:

> [T]he fact that information about consumer complaints may have been available on the internet does not negate a claim for fraudulent omission.
> . . . Many customers would not have performed an internet search before beginning a [product] search.  Nor were they required to do so." *Falk*, 496 F. Supp. 2d at 1096. Plaintiffs have adequately plead a duty to disclose.

(Footnote omitted). Further, the FAC alleges that Defendants knew of the Defect from their pre-release testing, consumer complaints made to Defendants *that were not listed publically on the Internet*, and warranty claims. FAC ¶ 312. Plaintiffs had access to none of that material. Plaintiffs could not have discovered the Defect through *reasonable* inspection or inquiry.  *First Place Bank v. Skyline Funding, Inc.*, 2011 U.S. Dist. LEXIS 83430, at *23-24 (N.D. Ill. July 27, 2011).

[55] Defendants' reliance on *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010), and *San Diego Hospice v. Cnty. of San Diego*, 31 Cal. App. 4th 1048, 1055 (1995), is misplaced. MTD 15. Defendants quote the statement in *Tietsworth* that "a plaintiff cannot establish a duty by pleading, in a purely conclusory fashion, that a defendant was in a superior position to know the truth about a product and actively concealed the defect," *id.* (citation omitted), while omitting the next sentence: "However, a plaintiff can establish that a duty exists if she alleges facts showing that the defendant knew of the alleged defect and did nothing to fix it or alert customers to its existence,"

*Footnote Continued*

---

allege facts showing two grounds to impute a duty to disclose – superior knowledge and active concealment. As shown below, Plaintiffs argue that Defendants had a duty to disclose on additional grounds.

**Cal.:** A duty to disclose arises when the defendant: (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts; (3) actively conceals a material fact from the plaintiff; *or* (4) makes partial representations but also suppresses some material fact. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 ( 1997). The FAC meets criteria 2-4. The California Plaintiffs adequately plead that Defendants had superior or exclusive knowledge of a material fact. *Supra* fn. 5. Further, "California has adopted Section 388 of the Restatement Second of Torts," *Grammer v. Advocate Mines, LTD*, 2011 U.S. Dist. LEXIS 151700, at *10 (E.D. Pa. Dec. 1, 2011) (citations omitted), imposing on direct and indirect suppliers a duty to warn of a product's dangers.[56] This duty exists post-sale.[57] *Supra* fn. 38.

California Plaintiffs adequately plead active concealment by alleging that Defendants concealed and denied the Defect. *Supra* fns. 4, 12. Further, when Himler complained about his defective DW in 2010, and Whirlpool provided him with a similarly defective replacement DW, Defendants still failed to disclose the Defect. FAC

720 F. Supp. 2d at 1134 (citation omitted). That is the case here. *Supra* fns. 2, 4, 5, 12. And, as the FAC includes allegations of Defendants' direct knowledge of the Defect, *San Diego Hospice* is inapposite. *See* 31 Cal. App. 4th at 1056 (refusing to rescind a release based on fraudulent nondisclosure where plaintiff relied solely on allegations of imputed knowledge, did <u>not</u> allege that defendant's agents had actual knowledge of the concealed fact or that the concealed fact was in defendant's records).

[56] The duty imposed by Restat. 388 applies to fraudulent concealment actions. *See, e.g., Jeter v. Brown & Williamson Tobacco Corp.*, 294 F. Supp. 2d 681, 688 (W.D. Pa. 2003).

[57] The *Wilson* Court noted that "one commits fraudulent deceit 'who willfully deceives another with intent to induce him to alter his position to his injury or risk." 668 F.3d at 1146 n.6 (citing Cal. Civ. Code § 1709). This definition of fraud supports Plaintiffs' post-sale fraudulent concealment claims which allege Defendants "induce[d] them to act thereon by . . . paying for service or repairs to the Dishwashers. Defendants also intentionally failed to disclose the Defect in order to mislead owners during the express warranty period and to avoid performance of their contractual duties under the warranty." FAC ¶ 313; *id.*, ¶ 23 ("Plaintiffs and reasonable consumers . . . would have demanded that Defendants perform their contractual duties under the warranties had they known of the Defect.").

¶ 50-53. *See Tietsworth*, 720 F. Supp. 2d at 1134-35 (active concealment sufficiently alleged under where plaintiffs contacted defendant for service of defective machines and were told there was no defect and/or denied free service or replacement parts); *Tait v. BSH Home Appliances Corp.*, 2012 U.S. Dist. LEXIS 183649, at *38 (C.D. Cal. Dec. 20, 2012) ("Defendants' repeated denial of the existence of a defect to complaining customers and authorities" is common proof of active concealment of a material fact).

Defendants made partial representations as to the DWs' quality in advertisements, user manuals, warranty terms and in communications with California Plaintiffs. *Supra* fn. 3; FAC ¶¶ 51-52. Defendants represented that the DWs were fit for intended use, were of superior quality, reliability and longevity, and came with "outstanding warranties," FAC ¶ 158, while suppressing the material fact of the Defect that would cause them to fail prematurely and pose a serious safety risk, *supra* fn. 12.[58] And there was certainly a post-sale duty to disclose when Himler contacted Defendants regarding his DW failure in the summer of 2010 and a pre-sale duty when Whirlpool provided Himler with a second similarly defective replacement DW.[59] FAC ¶¶ 50-53.

**Md.:** Plaintiff need not allege a duty to disclose in a fraudulent concealment/non-disclosure claim where the defendant intended to deceive the plaintiff by omission. *Rhee v. Highland Dev. Corp.*, 182 Md. App. 516, 524-25 (2008). As Plaintiffs allege

---

[58] "Advertisements that make representations about safety are actionable." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1176 (C.D. Cal. 2010) (citation omitted). The FAC includes allegations that Defendants made representations that led reasonable consumers to believe that the DWs were safe. *See, e.g.,* FAC ¶ 159 (". . . 'Your Kenmore® appliance is designed, manufactured *and tested* to provide years of dependable operation.'" (Emphasis added)); *id.* at ¶ 158 ("Whirlpool is a brand name *you can trust* for quality and reliability, and Sears is the home of appliance value." (Emphasis added)); *id.* ("*Trust KitchenAid appliances* for reliability and performance, *and count on Sears* to deliver great installation and protection plans." (Emphasis added)).

[59] Representations to Plaintiffs and consumers that Defendants had no knowledge of the Defect or overheating incidents, FAC ¶¶ 59, 177(B), 214, are clearly actionable partial representations. *In re Toyota Motor Corp.*, 2010 U.S. Dist. LEXIS 142663, at *208-09 (C.D. Cal. Dec. 9, 2010), as are repair or replacement recommendations without disclosing that the replacements/repairs would not cure or rectify the Defect, FAC ¶¶ 51-52, 190, 313, 315.

intent to defraud, *supra* fn. 13, they need not allege a duty to disclose.[60] In fact, however, the FAC alleges a duty to disclose because the Defect poses a safety hazard. *Supra* fn. 14; *Doll,* 814 F. Supp. 2d at 546-47. Maryland adopts Rest. § 388, requiring direct and indirect suppliers to warn of product dangers. *See Proctor v. Extreme Offshore Marine, Inc.*, 2006 U.S. Dist. LEXIS 97223, at *11 (D. Md. Jan. 24, 2006); *Singleton v. Manitowoc Co.*, 727 F. Supp. 217, 223 (D. Md. 1989). This duty exists even if the danger is discovered post-sale. *Supra* fn. 38.[61]

Further, Whirlpool had a duty to disclose based on the misleading statements about the DWs' quality in marketing, advertising, warranties and direct communications with Chambers.[62] *Supra* p. 20 (discussing under Cal. law); FAC ¶¶ 26, 28-30, *200 North Gilmor, LLC v. Capital One, Nat'l Ass'n*, 2012 U.S. Dist. LEXIS 36537, at *34-35 (D. Md. Mar. 19, 2012); *Lubore*, 109 Md. App. at 330-31.

Finally, "Maryland law recognizes 'a cause of action for fraud predicated upon a promise made with a present intention not to perform it.'" *200 North Gilmor*, *supra* at *36. The FAC alleges that Whirlpool knew of the Defect at the time of sale, at which point the duty to repair arose – but Whirlpool made no such obligatory repairs. *Supra* fns. 2, 5; FAC ¶¶ 28, 171, 183, 190. Thus, Maryland Plaintiffs properly allege a cause of fraudulent concealment premised on Whirlpool's promise to replace defective components in the DWs with the present intention not to perform.

---

[60]While Maryland Plaintiffs acquired their new DW with the purchase of their home, they may still bring an action for fraud based Whirlpool's material omissions. *See Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820-21 (D. Md. 2005).
[61] Silence is actionable where there is a legal obligation to speak. *Lubore v. RPM Assoc., Inc.*, 109 Md. App. 312, 330 (1996).
[62] A duty to disclose under Maryland law extends to subsequent purchasers where "it is foreseeable that subsequent purchasers would take the property without notice of the fraudulently concealed condition." *Lawley v. Northam*, 2011 U.S. Dist. LEXIS 137971, at *42-43 (D. Md. Dec. 1, 2011). *See also Owens-Illinois*, 325 Md. at 446-47 (not limiting a manufacturer's duty to disclose to *purchasers* by stating that "the post-sale duty to warn requires reasonable efforts to inform *users* of the hazard once the manufacturer is or should be aware of the need for a warning" (emphasis added)).

**Ga.:** A duty to disclose "may arise from the confidential relations of the parties or from the particular circumstances of the case." O.C.G.A. § 23-2-53. A party has "a duty to disclose material facts that are more readily known by one side of the transaction." *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 907-08 (W.D. Mo. 2009) (citation omitted). Further, as Georgia has adopted Rest. § 388, a supplier must warn foreseeable users of its product's latent dangers. *Carter v. E.I. DuPont de Nemours & Co., Inc.*, 217 Ga. App. 139, 140-41 (1995). This duty "is a continuing one and may arise months, years, or even decades after the date of the first sale of the product." *Watkins*, 190 F.3d at 1218; *supra* fn. 38.

O'Donnell pleads a duty to disclose by asserting that the Defect was known to Defendants. *Supra* fn. 5. Despite that duty, Whirlpool concealed the Defect pre- and post-sale, including when he contacted Whirlpool about the problem, and neither Defendant disclosed the Defect when their agent A&E Factory Service, LLC ("A&E")[63] inadequately repaired his DW. *Supra* fn. 12*; FAC ¶¶ 33-39. Further, fraud in Georgia may be proven by showing a present intent to dishonor a promise to undertake a future act. *FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 145 n.10 (5th Cir. 1981). As argued above under Maryland law, it is clear that Whirlpool did not intend to fulfill its warranty. *Supra* p. 21; FAC ¶¶ 33-38.

**N.J.:**  New Jersey follows the Restatement Second of Torts § 551 ("Rest. 551"), which "requires a party to disclose 'facts basic to the transaction if he knows that the other is about to enter into it under a mistake . . . and that the other, because of the relationship between them, the customs of the trade or other objective circumstances,

---

[63] *See*, *e.g.*, http://www.twice.com/article/248266 (last visited May 24, 2012) (stating that A&E is a joint venture of Whirlpool and Sears); *Chambers v. Sears Roebuck & Co.*, 793 F. Supp. 2d 938, 941 n.2 (S.D. Tex. 2010) (discussing an affidavit filed on behalf of Sears written by an employee stating that he was the District Service Manager for Sears *and* A&E, on the basis of which the court "assumed Sears and A&E are related entities" and deemed the Motion for Summary Judgment to be on behalf of both, even though Sears was the only movant); *Villasenor v. Sears, Roebuck & Co.*, 2011 U.S. Dist. LEXIS 4301, at *1 (C.D. Cal. Jan. 18, 2011) (stating that A&E is a subsidiary of Sears).

would reasonably expect a disclosure of those facts.'" *City of Millville v. Rock*, 683 F. Supp. 2d 319, 331-32 (D.N.J. 2010) (citing Rest. 551(2)(e)). Absent a fiduciary or special relationship, a duty to disclose may arise if one party makes a partial or ambiguous statement that requires further disclosure to avoid misleading the other party, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993); a product contains material defects and a consumer could not be expected to reasonably learn of the defect, *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 1997 U.S. Dist. LEXIS 24064, at *72 (D.N.J. Sept. 30, 1997); or safety is a concern, *In re Phillips/Magnavox TV Litig.*, 2010 U.S. Dist. LEXIS 91343, at *19 (D.N.J. Sept. 1, 2010). New Jersey also follows Rest. 388. *Merklin v. United States*, 788 F.2d 172, 177-78 (3d Cir. 1986). The duty to warn exists even if the danger is discovered post-sale. *Lally v. Printing Mach. Sales & Serv. Co.*, 240 N.J. Super. 181, 184-85 (1990).

As to Rest. 551, Plaintiffs allege that Defendants, with superior knowledge and access to information basic to the transaction,[64] knowingly marketed and sold the DWs with no intent to replace defective parts with non-defective parts as warranted.[65] This is conduct "'so shocking . . . as to amount to a form of swindling.'" Rest. 551, comment (l). A duty to disclose arose in this circumstance. Further, Defendants had a duty to disclose based on their partial disclosures,[66] and the fact that the Defect is material,

---

[64] *i.e.*, the Defect would cause the DWs to fail in an unreasonably unsafe manner. *Supra* fn. 5.

[65] *Supra* fns. 3, 12, 13; *supra* p. 21 (discussing intent not to honor warranty obligations).

[66] *Supra* p. 20 (discussing partial representations); *supra* fn. 3; FAC ¶¶ 46, 56-61, 114-18. Further, Plaintiffs allege that Whirlpool warranted that it would replace defective components yet, at the time it made such warranty representations, Whirlpool knew that the DWs contained defective components and did not disclose that it was not taking action to fulfill it warranty representations. *See supra* fn. 65; *Lightening Lube*, 4 F.3d at 1186 (under New Jersey law, a plaintiff may prove a fraud claim arising from a contract by showing that a promise to perform that was unfulfilled and that "at the time the promise to perform was made, the promisor did not intend to fulfill the promise" (citations omitted)).

latent and a safety hazard.[67] Even if they were not aware of the Defect at the time of sale, they had a post-sale duty to warn when they learned of its dangers.[68]

**Mass.:** The duty to disclose is governed by the Rest. 551. *Wolf v. Prudential-Bache Secs.*, 41 Mass. App. Ct. 474, 476 (1996). A duty to disclose may also exist where needed to prevent one's words from being misleading, *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc*., 717 F. Supp. 2d 156, 162 (D. Mass. 2010),  or where one party has knowledge of material facts to which the other party does not have access, *id.* Massachusetts also follows Rest. 388. *See Ryba v. LaLancette*, 417 F. Supp. 2d 199, 206 n.12 (D. Mass. 2006). The duty to warn of product defects exists even when discovered post-sale. *See Lewis v. Ariens Co.*, 434 Mass. at 643-44.

For the reasons discussed above, Defendants had a duty to disclose: (1) under § 551, *supra* p. 23; (2) based on LeBlanc's allegations of Defendants' partial disclosures, *supra* fn. 3; FAC ¶¶ 64, 67-68; *Stolzoff v. Waste Sys. Int'l, Inc.*, 58 Mass. App. Ct. 747, 763 (2003) (duty to disclose arose when plaintiffs' specific inquiries were met with "half-truths and misleading assurances and information"); and (3) based on Defendants' superior knowledge of the Defect, *supra* fn. 5. Even if unaware of the Defect at the time of sale, Defendants had a post-sale duty to warn of the Defect.

**Va.:** Rest. 551 governs the duty of disclosure. *Folsom v. Continental Illinois Nat'l Bank & Trust Co.*, 633 F. Supp. 178, 186 (N.D. Ill. 1986). The duty also arises "(1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist; or (2) if one party takes actions which divert the other party from making prudent investigations (*e.g.*, by

---

[67] *Supra* fn. 14. The Defect is clearly poses a safety hazard as Cicchelli suffered from smoke inhalation and all Plaintiffs allege that their DWs performed unsafely by overheating or catching fire.
[68] The cases cited by Defendants - *Harvey v. Nissan N. Am., Inc.*, 2005 WL 1252341 (N.J. Super. Ct. Apr. 29, 2005) (UNPUBLISHED) and *United New Jersey Bank v. Kensey*, 306 N.J. Super. 540, (1997), MTD 16 n.12 - are inapposite as Plaintiffs here allege a substantial and unreasonable risk of property damage, personal injury and death (*i.e.*, more than the possibility economic loss) and do not argue that Defendants had a duty to disclose based on a fiduciary relationship.

making a partial disclosure).”[69] *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999). Further, Virginia adopts Rest. 388. *Cotton v. Buckeye Gas Prods. Co.*, 840 F.2d 935, 937 (D.D.C. 1988). The duty to warn exists post-sale. *Supra* fn. 38. For all these reasons, as discussed above, Virginia Plaintiffs allege a duty to disclose.

**Mo.:** “[A] legal duty to speak arises when there is a confidential or fiduciary relationship, when there is privity of contract, or when one party has superior knowledge or information regarding a material fact not readily available to the other party.” *Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*, 2011 U.S. Dist. LEXIS 110505, at *29 (E.D. Mo. Sept. 28, 2011). “Silence can be an act of fraud where matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence.” *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007) (citation omitted). Thus, a buyer may rely on a “seller to disclose where the undisclosed material information would not be discoverable through ordinary diligence.” *Id.* (citation omitted). Further, Missouri adopts Rest. 388. *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1004-05 (8th Cir. 2006). Sample adequately alleges that Whirlpool had a duty to disclose the Defect because Whirlpool was in privity of contract with her; provided her with a written warranty; and she purchased her DW from an authorized Whirlpool dealer. FAC ¶ 95. Also, for the reasons discussed above, Whirlpool had superior knowledge about the Defect, *supra* fn. 5, giving rise to its duty to disclose. *Artilla Cove Resort v. Hartley*, 72 S.W.3d 291, 298-99 (Mo. Ct. App. 2002).

**Ohio:** A duty to disclose arises where there is a special relationship, which may exist “where one party imposes confidence in the other because of that person’s position, and the other party knows of this confidence.” *Mancini v. Gorick*, 41 Ohio

---

[69] While materiality is not required under the second test, the undisclosed information concerning the Defect is certainly material as “‘a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.’” *U.S. v. Gillion*, 2012 U.S. App. LEXIS 26568, at *24 (4th Cir. Dec. 28, 2012) (quoting *Neder v. U.S.*, 527 U.S. 1, 22 n.5 (1999)).

App. 3d 373, 374-75 (1987). "Nondisclosure rises to the level of fraud when the seller intentionally fails to disclose a material fact with the intent of misleading the buyer and the buyer justifiably relies on the failure to disclose." *Reardon v. Hale*, 2007 Ohio 4351, P16 (2007).[70] Such duty can also arise absent a special relationship where a party has superior knowledge or the means to acquire it, *id.*, or makes partial disclosures, *see Auto Chem Labs. Inc. v. Turtle Wax, Inc.*, 2008 U.S. Dist. LEXIS 83158, at *47-48 (S.D. Ohio Sept. 23, 2008). Further, Ohio adopts Rest. 388. *Ackley v. Wyeth Labs.*, 919 F.2d 397, 404 (6th Cir. 1990). The duty to warn of product defects exists even where they are discovered post-sale. *Supra* fn. 38.

There was a special relationship between Bathon and Whirlpool, which actively participated in the design, manufacturing and testing of the DWs, giving rise to a duty to disclose the Defect. FAC ¶¶ 16, 149, 154. Further, the duty arose because Whirlpool concealed material information about the Defect with the intent to deceive Bathon into purchasing her DW for more than their fair value; it had superior knowledge of the Defect; and because its marketing, advertising, warranties and communications about the DWs misled by non-revelation or partial revelation of facts. *Supra* fn. 3, 5, 12, 13; FAC ¶¶ 101-06. While Whirlpool certainly should have known of the Defect prior to the sale of both of Bathon's DWs (in December 2008 and February 2012), triggering a pre-sale duty to warn, it also had a post-sale duty to warn of the risk.

**Ill.:**   A known product defect is a material fact that must be disclosed. *AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1040-41 (7th Cir. 1990). A party also has a duty to disclose if it intentionally conceals a material fact, *Heider v. Leewards Creative Crafts*, 245 Ill. App. 3d 258, 269 (1993); when it makes partial disclosures, *id.*, 811; and where the non-disclosing party has superior knowledge, *Go for It, Inc. v. Aircraft Sales Corp.*, 2003 U.S. Dist. LEXIS 11043, at *6-

---

[70] The court in *Reardon* also stated that "[s]ellers have a common law 'duty to disclose material facts that are latent.'" 2007 Ohio 4351, at P16 (citations omitted).

7 (N.D. Ill. June 25, 2003). Further, Illinois adopted Rest. 388. *Wade v. Midwest Brake Bond Co.*, 1998 U.S. Dist. LEXIS 15055, at *17 n.8 (N.D. Ill. Sept. 22, 1998). Meneghetti alleges that Defendants had a duty to disclose, asserting that they knew of the Defect and that the recommended repairs would not fix it, *supra* fn. 5; intentionally concealed such information, *supra* fn. 12; made partial misleading disclosures, *supra* p. 3; FAC ¶ 107, 110; and had superior knowledge of the Defect, *supra* fn. 5.

**N.Y.:** A duty to disclose exists "'first, where the party has made a partial or ambiguous statement . . .  second, when the parties stand in a fiduciary or confidential relationship with each other . . .  and third, 'where one party possesses superior knowledge, not readily available to the other, and know that the other is acting on the basis of mistaken knowledge.'" *Woods*, 807 F. Supp. 2d at 124 (citation omitted). Also, New York adopts Rest. 388. *Young v. Elmira Transit Mix, Inc.*, 383 N.Y.S.2d 729, 731 (1976). This duty exists even when the danger is discovered post-sale. *Supra* fn. 38.

Defendants had a duty to disclose. Plaintiffs allege that Defendants: (1) made partial misleading disclosures, *supra* fn. 3; FAC ¶¶ 120, 124, 132, 135-38; (2) had superior knowledge of the Defect, *supra* fn. 5; (3) knew of it yet failed to warn Plaintiffs prior to and post-sale, *supra* fn. 12; and (4) knew that Plaintiffs received their DWs under the mistaken belief that Defendants believed their components were non-defective as Defendants had a warranty obligation to replace defective components with non-defective components, FAC ¶¶ 18, 120, 132, 173, 192-93, 313. Koswener pleads that she had her DW repaired by Sears under the mistaken belief that the repairs would cure the underlying problem and Paolini pleads that he purchased a replacement DW under the mistaken belief that it did not contain the Defect. *Id.* ¶¶ 124-25, 137-38, 313.

**Utah:** Whirlpool had a duty to disclose under Utah law as it had knowledge of the omitted material fact – the latent, dangerous Defect, and had direct relationship with Steffes as the warrantor of her DW. *Supra* p. 9; *supra f*ns. 5, 14; FAC ¶ 140.

## C.    A Finding Of Liability Would Not Make Defendants Permanent Insurers

Defendants' argument that warrantors have no duty to disclose a defect manifesting after expiration of a warranty, MTD 17-18, fails for at least three reasons: (1) Defendants concede that the FAC alleges that almost 50% of Plaintiffs' DWs were within the applicable warranty periods when the Defect manifested;[71] (2) Plaintiffs allege the DWs were not complete and operational when sold as the Defect rendered the DWs unfit for their intended use at all times,[72] *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 594-95 (2011); and (3) where a defect threatens safety, the duty to disclose trumps the warranty's expiration, *Cholakyan*, 796 F. Supp. 2d at 1234.[73]

## D.    The NJPLA Does Not Abrogate The Fraudulent Concealment Claims Of The N.J. Plaintiffs

Defendants aver that the New Jersey Plaintiffs' claims for fraudulent concealment are subsumed in New Jersey's Product Liability Act ("NJPLA"), N. J. Stat. §§ 2A:58C-1, *et seq.* MTD 20. Where the damage alleged is to the product itself,

---

[71] MTD 18 (stating that Plaintiffs allege that 7 of their 17 DWs malfunctioned within the applicable warranty periods). With that many DWs overheating or catching fire within the warranty period, not to mention the numerous allegations in the FAC of DWs doing so after the warranty period but within the DWs' expected life, Defendants' claim that the FAC "demonstrate[s] that the Dishwashers have an exemplary safety rate," MTD 17 n.21, is absurd. The cases cited by Defendants are inapposite as they involved defects manifesting *only* post-warranty. *Oestreicher*, 544 F. Supp. 2d at 970; *Hoey v. Sony Elec. Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007).

[72] Rather than wearing out or breaking over time because of use and wear, the terminal spade connection parts never worked properly and were abnormal heat sources at all times, resulting in consumers inability to ever use the DWs without an unreasonably risk of fire. FAC ¶¶ 11, 14, 171.

[73] While *Cholakyan* concerned CLRA and UCL claims, it is relevant here because those claims employ the same "'duty' analysis applicable to common law fraudulent concealment actions in order to determine whether a defendant was 'obligated to disclose' the information . . . ." *Gray v. Toyota Motor Sales, U.S.A.*, 2012 U.S. Dist. LEXIS 15992, at *10 (C.D. Cal. Jan. 23, 2012) (citation omitted). Moreover, *Cholakyan* relied on a case involving a fraudulent concealment claim in differentiating cases holding a duty to disclose safety-related defects that manifest post-warranty. 796 F. Supp. 2d at 1234 (citing *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010)).

Defendants cite *Hoey* for the proposition that a warrantor has no duty to disclose a defect that manifests post-warranty, MTD 18, but ignore the caveat – plaintiffs need only "allege *more* than the existence of a warranty and a defect occurring outside the warranty period to survive [the] motion to dismiss." 515 F. Supp. 2d at 1105 (emphasis added). Here, "more" is alleged – the Defect was a known safety risk.

---

28

however, a claim falls outside the NJPLA. *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 456-57 (D.N.J. 2012); *Fishman v. GE*, 2013 U.S. Dist. LEXIS 61389, at *9-10 (D.N.J. Apr. 30, 2013) (holding that the NJPLA did not subsume the plaintiffs' statutory consumer fraud, breach of implied warranty, and unjust enrichment claims where the plaintiffs did "not claim any physical injury to person (or pet) as part of their damages," *id.* at *10, and  "the crux of [their] allegations is that the washing machines themselves do not work as promised; *i.e.*, Plaintiffs allege that the harm was 'to the product itself,'" *id.*). New Jersey Plaintiffs allege damage to their DWs only. FAC ¶¶ 47, 62, 19. As "the alleged harm [is] the malfunction of the [ ] machine itself," *Montich*, 849 F. Supp. 2d at 457, the fraudulent concealment claim is outside the NJPLA.[74]

## E.   Mederlet, Walker, Koswener, Paolini And Steffes Plead Damages

Defendants argue that Plaintiffs cannot assert fraudulent concealment claims because the ELD in their states bars such claims where a contract governs the dispute, MTD 19; however, that general rule does not apply where there is an independent duty to disclose.[75] Here, an independent pre-sale and post-sale duty to disclose is adequately

---

[74]Defendants' cited cases are inapposite, as they involve damage caused *by* a product rather than *to* the product. *See DeBenedetto v. Denny's, Inc.*, 421 N.J. Super. 312, 315-16 (2010) (alleged damages caused by eating high-sodium meals; damage not to product (meal) itself); *O'Donnell v. Kraft Foods, Inc.*, 2010 U.S. Dist. LEXIS 26023 (D.N.J. Mar. 18, 2010) (alleged damages caused by eating carcinogenic hot dogs; damage not to product (hot dog) itself).  *See also Montich*, 849 F. Supp. 2d at 457 n.14 (differentiating *Kraft* and similar cases wherein "lost value of the product was tangential to the other alleged harms" from cases where the only harm is to the product itself, and explaining that the latter are not subsumed by the NJPLA).

[75] *See Koch Indus., Inc. v. Aktiengesellschaft*, 727 F. Supp. 2d 199, 214 (S.D.N.Y. 2010); *Woods v. Maytag Co.*, 2010 U.S. Dist. LEXIS 116595, at *29-30 (E.D.N.Y. Nov. 2, 2010); *Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990) (applying Virginia law); *Harris v. Universal Ford, Inc.*, 2001 U.S. Dist. LEXIS 8913, at *12 n.7 (E.D. Va. Feb. 5, 2001) ("Ford Credit's reference to case authority involving the economic loss rule is also misplaced as at least concerns fraud which constitutes a separate and distinct tort actionable in its own right." (Citations omitted)); *Belote v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 178971, at *18, n.4 (E.D. Va. Dec. 18, 2012); *Whalen v. Rutherford*, 2012 U.S. Dist. LEXIS 176464, at *18-20 (W.D. Va. Dec. 13, 2012); *supra* p. 9 (discussing application of ELD under Utah law).

Defendants' cited cases are not to the contrary. *A.T. Massey Coal Co., Inc. v. Rudimex GmbH*, 2006 U.S. Dist. LEXIS 1882, at *14-15 (E.D. Va. Jan. 9, 2006) (dismissing the fraud claim because the plaintiff did not allege damages flowing from fraudulent conduct, *independent of damages for*

Footnote Continued

29

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS FOURTH AMENDED COMPLAINT**
**Case No. 8:11-cv-01733-FMO-MLG**

alleged. *Supra* § V(B). Even if the ELD were applicable to these claims, it would not bar their claims pursuant to its well-recognized exceptions. *Supra* § IV(A).[76]

## VI. HIMLER, O'DONNELL, MILICIA, WALKER, BATHON, MENEGHETTI AND PAOLINI STATE CLAIMS FOR BREACH OF EXPRESS WARRANTY

Defendants argue that all breach of express warranty claims except Mederlet's should be dismissed because Himler, Walker, Milicia, Bathon and Paolini do not allege that their DWs malfunctioned;[77] Himler does not satisfy the statutory notice requirement; O'Donnell and Meneghetti fail to allege that Whirlpool breached its warranty obligations; and Milicia and Bathon fail to allege that Whirlpool refused to fulfill its warranty obligations. MTD 20-22. These arguments are unavailing.

While under warranty, Defendants are obligated to provide free replacement parts for defective electronic control components. FAC ¶¶ 250-52. A DW need not malfunction to trigger this duty.[78] Himler, Walker, Milicia, Bathon and Paolini

---

*breach of contract*); *Pierce v. NICO Pyrotechnik*, 2005 U.S. Dist. LEXIS 36981, at *8-9 (E.D. Va. June 17, 2005) ("an action for fraud is not changed from a tort action to a contract action simply because the parties had a contractual relationship . . . . The problem for Plaintiff in this case is that his action for fraud arises only out of the contractual specifications agreed to by the Government and the Defendant."); *Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553, 558 (1998) ("a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty. However, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" (Citations omitted)).

[76] Mederlet's fraudulent concealment claims against Sears should not be dismissed for the additional reason that she was in privity with it. *See Factory Mut. Ins. Co. v. DLR Contr., Inc.*, 2005 U.S. Dist. LEXIS 25876, at *22 (E.D. Va. Oct. 20, 2005).

[77] Plaintiffs assume that Defendants make this argument as to Milicia's and Bathon's second DWs only, as their first DWs manifested the Defect within their applicable warranty periods.

[78] *Quality Air Servs., LLC v. Milwaukee Valve Co.*, 671 F. Supp. 2d 36, 43-45 (D.D.C. 2009); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 534 (C.D. Cal. 2012); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 73690, at *41-49 (D.N.J. Sept. 3, 2008) (malfunction of a product/manifestation of a defect is not an element of a cause of action for breach of warranty under California or New Jersey law). Defendants' cited cases are not to the contrary. *Daugherty* and *Nobile v. Ford Motor Co.* state that latent defects *discovered after the term of the warranty* are not actionable. *Nobile*, 2011 U.S. Dist. LEXIS 26766, at *8 (D.N.J. Mar. 14, 2011); *Daugherty*, 144 Cal. App. 4th at 830 (same). In *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 2005 U.S. Dist. LEXIS 45312, at *10 (N.D. Ohio Feb. 22, 2005), the warranty guaranteed that a coating used for house siding would not

*Footnote Continued*

discovered the Defect *within their warranty periods* and demanded that Defendants remedy it.[79] As Defendants refused, Plaintiffs' express warranty claims stand.

While Himler was not required to give notice to Sears under Cal. Com. Code § 2607(3)(A), as he did not purchase his second DW there, *Mason v. Nature's Innovation, Inc.*, 2013 U.S. Dist. LEXIS 68072, at *16-18 (S.D. Cal. May 13, 2013), the demand letters sent to Defendants fulfill that notice requirement. FAC, Exhs. A, B; *Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972) (notice may be satisfied by a demand for a refund or other satisfaction made within a reasonable time); *Sanchez v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 33746, at *11-12 (E.D. Cal. May 8, 2007) (notice sufficient where plaintiff writes a letter contending product is defective).

O'Donnell[80] and Meneghetti allege that Whirlpool breached their warranties by failing to repair their DWs *effectively* (evidenced, *e.g.*, by the fact that a repairman who inspected Walker's DW warned that repairs are unlikely to work because "there appear to be multiple recorded cases of the problem reoccurring [and] Whirlpool . . . has not upgraded the replacement parts or issued a recall . . ." FAC ¶ 87). *Id.*, ¶¶ 19-20, 33-39, 107-11, 190, 255, 258. And, notwithstanding the demand letters, FAC, Exhs. A & B, Defendants did not take corrective action. Thus, despite notice of the Defect and a chance to cure, Defendants failed, refused or were unable to do so within a reasonable time, breaching O'Donnell's and Meneghetti's express warranties.[81]

---

lose film integrity within 40 years of installation. Thus, unlike here, the only way to assert a claim was if the coating actually malfunctioned. Likewise, in *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, *passim* (S.D.N.Y. 1997), there was no duty to replace known defective components, and thus the fact that plaintiff did not allege that his child seat malfunctioned vitiated to his claim, *id.* at 99-100. *Stone v. Ethan Allen*, 232 Va. 365, 367 (1986), is off point - the court held merely that the applicable statute of limitations barred the breach of warranty claims.

[79] FAC ¶¶ 19-20, 52-53, 60-62, 87, 91-93, 104-06, 137-39, 223, 250-52, 256-58, 260-63.

[80] O'Donnell had his ECB replaced under warranty in 2008 after it overheated, and that new ECB was replaced in 2010 by Whirlpool after it also overheated. FAC ¶¶ 34-38.

[81] *See, e.g., McDonald v. Mazda Motors of Am., Inc.*, 269 Ga. App. 62, 65 (2004) ("When there is a written warranty that includes repair or replacement of parts, two conditions of the warranty are notice of the defect and a reasonable opportunity to repair the defect before a breach of warranty can exist."

*Footnote Continued*

---

31

Milicia and Bathon allege that Whirlpool breached their warranties in failing to offer free, non-defective electronic control components. Milicia alleges that in July 2010, when her DW failed again due to the Defect,[82] she was only offered a prorated refund or a new DW for $400. Bathon alleges that when her DW failed due to the Defect, Whirlpool only offered her a new DW for $150. FAC ¶¶ 55-59, 101-03. Adding insult to injury, the new DWs contained the same defective components. *Id.* at ¶¶ 60-62, 104-06, 250, 253-55, 258. Milicia and Bathon state breach of warranty claims.[83]

## VII.  PLAINTIFFS STATE BREACH OF IMPLIED WARRANTY CLAIMS

**Merchantability:** Contrary to Defendants' argument, MTD 22-23, Himler, O'Donnell, Cicchelli, Milicia, LeBlanc, Mederlet, Walker, Bathon, Meneghetti, Paolini and Koswener adequately allege that their DWs are not merchantable.[84] While Defendants argue that their DWs are merchantable as they can wash dishes, they

---

(Citations omitted)); *Collum v. Fred Tuch Buick*, 6 Ill. App. 3d 317, 322 (1972) ("In order to recover on a theory of breach of express warranty, the plaintiff must prove that the alleged malfunctioning [ ] was caused by a defect in the parts or workmanship, and that the manufacturer failed to repair or replace the parts in accordance with the warranty."); *DeLoach v. Gen. Motors*, 187 Ga. App. 159 (1988) (breach of warranty occurs where "there is a lack of success in making repairs or replacement"); *Ford Motor Co. v. Gunn*, 123 Ga. App. 550, 552 (1971) (affirming trial court's ruling in favor of plaintiff where there was evidence that a defendant's efforts to correct a defect, including by replacing parts, had not been successful). *See also, e.g., Henson v. Allison Transmission*, 2008 U.S. Dist. LEXIS 6112, at *11-12 (S.D. Fla. Jan. 28, 2008) (denying a motion for summary judgment on the plaintiff's express warranty claim where a factual dispute existed as to whether defendant actually repaired the reported defect); 67A Am. Jur. 2d Sales § 250 (2003); *Matco Mach. & Tool Co. v. Cincinnati Milacron Co.*, 727 F.2d 777, 780 (8th Cir. 1984); *Clark v. International Harvester Co.*, 99 Idaho 326, 340 (1978). Defendants' cited case are inapposite. *See Knight v. Am. Suzuki Motor Corp.*, 272 Ga. App. 319, 322 (2005) (affirming *summary judgment* because the plaintiff failed to come up with any evidence of defects or refusal to repair or lack of success in repairing); *Collum*, 6 Ill. App. 3d at 322 (affirming *judgment on the merits* because "evidence does not prove that the alleged malfunctioning resulted from defective parts or workmanship").

[82] Whirlpool also breached Milicia's warranty when her first DW previously failed by inadequately repairing it with defective replacement components. FAC ¶¶ 19-20, 55-58, 87, 190, 255, 258.

[83] *Nessle v. Whirlpool Corp.*, 2008 U.S. Dist. LEXIS 56940, at *10-11 (N.D. Ohio July 25, 2008), is inapposite, as there the plaintiff did not allege that Whirlpool failed to repair or replace any defective parts, which is all the warranty required. Here, Milicia and Bathon allege that Whirlpool failed to replace defective electronic control components as required under their warranties.

[84] FAC ¶¶ 8, 17, 20, 171, 173, 175-78, 233-35.

conveniently ignore a key allegation: the DWs cannot be used for their ordinary purpose without imposing an unreasonable risk of fire. *Supra* fn. 14. Defective products that impose such safety risks,[85] regardless of whether they fail, are not merchantable.[86]

**Limitations:** California, Maryland, Georgia, New Jersey, Massachusetts, Virginia, New York, and Utah Plaintiffs' implied warranty claims are timely. Limitations were tolled by Defendants' fraudulent concealment and the discovery rule. Further, Defendants are equitably estopped to assert such defense. FAC ¶¶ 212-14.[87]

---

[85] To imply that the DWs are safe, Defendants misrepresent the facts surrounding the Plaintiffs' "use" of their DWs.  For example, O'Donnell and LeBlanc allege that they are afraid to run the DWs and will not do so when they are asleep or no one is in the house. FAC ¶¶ 38, 69. Cicchelli's, Milicia's, Mederlet's, Walker's, Bathon's, Meneghetti's, Paolini's, and Koswener's original DWs malfunctioned, and they do not allege that they use their replacement or repaired DWs in the manner intended. *Id.*, ¶¶ 42-45, 58-60, 79-81, 86-92, 102-105, 108-110, 122-124, 134-138.

[86] *See, e.g., Williams v. Ballenger*, 87 Ga. App. 255, 258 (1952) (reversing demurrer of implied warranty claim where heater was alleged to be "inherently dangerous . . . because of latent defects therein"); *Stella v. LVMH Perfumes & Cosmetics USA, Inc*., 564 F. Supp. 2d 833, 836 (N.D. Ill. 2008) (implied warranty claim pled where complaint alleged lipstick was not safe); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig*., 2008 U.S. Dist. LEXIS 73690, at *60-62 (D.N.J. 2008) (implied warranty claim pled where complaint alleged that vans were unfit to safely transport 15 passengers); *White Consol. Industry, Inc. v. Swiney*, 237 Va. 23, 29 (1989) (upholding verdict in favor of implied warranty claim where oven had caught fire); *Isip v. Mercedes-Benz USA*, LLC, 155 Cal. App. 4th 19, 27 (Cal. App. 2007) ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose."); *Commonwealth v. Johnson Insulation*, 425 Mass. 650, 661 (Mass. 1997) (upholding jury verdict that products "were unfit for their ordinary purposes" because of failure to warn "the dangers of exposure to asbestos.").

[87] *See Cartwright v. Viking Indus., Inc*., 249 F.R.D. 351, 354-55 (E.D. Cal. 2008) (warranty claims were tolled because, due in part to the defendant's fraud, plaintiffs did not discover the defect until a year before filing complaint); *Doll*, 814 F. Supp. 2d at 536; *Gantt v. Bennett*, 231 Ga. App. 238, 244 (1998); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.,* 2008 U.S. Dist. LEXIS 73690, at *53-57; *Compagnie de Reassurance d'lle de Fr. v. New England Reinsurance Corp.*, 944 F. Supp. 986, 1000; *Healy v. Chesapeake Appalachia, LLC*, 2011 U.S. Dist. LEXIS 759, at *29-37 (W.D. Va. Jan. 5, 2011); *Access N. Sec. Corp. v. Linear Corp*., 1998 U.S. Dist. LEXIS 13943, at *15-18 (S.D.N.Y. Aug. 28, 1998); *Johnson v. Henry Vogt Mach. Co*., 544 F. Supp. 2d 1276, 1283 (D. Utah 2008); *American Glue & Resin v. Air Prods. & Chem., In*c., 835 F. Supp. 36, 42 (D. Mass. 1993) (citing ALM GL ch. 106 § 2-725(4)).

The cases and statutes Defendants cite are either inapposite or inapplicable. Cal. Comm. Code § 2725 (explicitly states that it does not "alter the law on tolling of the statute of limitations"); Ga. Code Ann. § 11-2-725 (same); *Wash. Freightliner, Inc. v. Shantytown Pier, Inc.*, 351 Md. 616, 626 (1998) (does not address fraudulent concealment or equitable estoppel); *New England Power Co. v.*

Footnote Continued

---

33

Further, New Jersey, Virginia, Missouri, Ohio, and Illinois Plaintiffs' implied warranty claims are not limited by any warranty terms, as Plaintiffs allege that the warranties are unconscionable due to the failure to disclose, and concealment of, the Defect. FAC ¶ 237; *In re Samsung DLP TV Class Action Litig.*, 2009 U.S. Dist. LEXIS 100065, at *13-16 (D.N.J. Oct. 27, 2009) (implied warranty claim not limited because the plaintiffs adequately alleged that, due to the defendant's fraud, the express warranties were unconscionable); *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 823 (S.D. Ohio 2012) (same).[88] Further, the purported limitations on implied warranties are not conspicuous as required by New Jersey, Virginia, Missouri, Ohio and Illinois law – they are written in text of the same size and color as the text of the limited warranty. FAC ¶ 238.[89]

Finally, Defendants mistake the one-year term of limited warranties in California's Song-Beverly Act (Cal. Civ. Code § 1791(c)) for a statute of limitations triggered at the time of sale. This reading has been universally rejected by California courts. *See, e.g., Mexia v. Rinker Boat Co., Inc.,* 174 Cal. App. 4th 1297, 1310-1311 (2009) (such interpretation would create a notification deadline applicable "even if the

---

*Riley Stoker Corp.*, 20 Mass. App. Ct. 25, 28-29 (1985) (same); *Stone*, 232 Va. at 366-67 (same); *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 219 (Utah Ct. App. 1984) (same); *Coba v. Ford Motor Co.,* 2013 U.S. Dist. LEXIS 8366, at *36 (D. N.J. Jan. 22, 2013) (admitting that fraudulent concealment may toll statute of limitations where there is a duty to disclose, but failing to address whether duty to disclose a known safety defect exists); *Marshall v. I-Flow, LLC*, 2012 U.S. Dist. LEXIS 110978, at *8-10 & n.1 (N.D.N.Y Aug. 7, 2012) (citing District of Columbia law on fraudulent concealment and failing to address whether fraudulent concealment or equitable estoppel, under New York law, tolled the statute of limitations).

[88] This is an issue of fact that cannot be resolved on the pleadings. *Carlson v. General Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989) ("[T]he district court erred by ruling, solely on the basis of the pleadings, that GM's durational limitations on any and all implied warranties were both 'reasonable' and 'conscionable' as a matter of law.").

[89] *Morris v. Winnebago Indus., Inc.*, 71 Va. Cir. 292, 293 (2006); *Oldham's Farm Sausage Co. v. Salco, Inc.*, 633 S.W.2d 177, 181 (Mo. App. 1982); *Delia v. Erickson*, 1989 U.S. Dist. LEXIS 16558, at *10 (D.N.J. May 23, 1989) (language must be conspicuous and usually is so "if it is in larger or other contrasting type or color"); *DG Equip. Co. v. Caterpillar, Inc.*, 2008 U.S. Dist. LEXIS 86905, at *11 (S.D. Ohio Oct. 27, 2008) (same); *Kehrer Bros. Constr., Inc. v. Custom Body Co.*, 2008 U.S. Dist. LEXIS 3934, at *20 (S.D. Ill. Jan. 18, 2008) (same).

---

consumer has not discovered or could not have discovered the breach within the duration period," which would be at odds with the Act's intent "to expand consumer protection and remedies"). Plaintiffs' implied warranty claims are timely.

**Privity:** Defendants' assertion that California, Ohio, Illinois and New York Plaintiffs' implied warranty claims fail for lack of privity, MTD 26-27, is without merit. California, Ohio and Illinois recognize that privity exits between manufacturers and consumers, as the latter are intended third-party beneficiaries of the contracts between manufacturers and retailers.[90] FAC ¶ 239. And New York Plaintiffs' claims are not barred, as there is an exception to the privity rule for dangerous products. *Supra* fn. 14; *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 191 (N.D.N.Y 2009).

## VIII.  CALIFORNIA PLAINTIFFS STATE SONG-BEVERLY ACT CLAIMS

The "latent defect" rule preserves Plaintiffs' Song-Beverly claims even if their DWs did not malfunction within the express warranty period.  FAC ¶ 269; *Kas v. Mercedes-Benz USA, LLC,* 2011 U.S. Dist. LEXIS 127581, at *7 (C.D. Cal. Oct. 31, 2011) ("Where a plaintiff alleges a latent defect undiscoverable at the time of sale, . . . the implied warranty of merchantability is breached 'by the existence of the unseen defect, not by its subsequent discovery.'" (quoting *Ehrlich,* 801 F. Supp. 2d at 922)); *Keegan,* 838 F. Supp. 2d at 948; *Cholakyan,* 796 F. Supp. 2d at 1235. Further, where the 5 year express warranty extends to future performance, limitations is tolled until Plaintiffs reasonably knew of the Defect and that Defendants would or could not repair it.[91] *Ehrlich v. BMW of N. Am., LLC,* 801 F.Supp.2d at 924-925.[92]

---

[90] *Horvath v. LG Elecs. MobileComm U.S.A., Inc.,* 2012 U.S. Dist. LEXIS 19215, at *19-22 (S.D. Cal. Feb. 13, 2012) (declining to dismiss implied warranty claim because "California has recognized an exception to the vertical privity requirement where the plaintiff consumer is an intended third-party beneficiary of the contract for sale of a good between a manufacturer and a dealer"); *Bobb Forest Prods. v. Morbark Indus.*, 151 Ohio App. 3d 63, 83 (2002) (when the distributor "merely becomes the agent of the manufacturer, then the manufacturer and the ultimate consumer are in privity of contract"); *Stein v. D'Amico,* 1989 U.S. Dist. LEXIS 9511, at *2-3 (N.D. Ill 1989) ("[A] third party beneficiary may sue for breach of contract made for his benefit.")

[91] Defendants' argument that the claims fail as the Defect was discovered outside the warranty period certainly does not apply to Himler's second DW as it is still within the warranty period.

## IX.   BATHON STATES A CLAIM FOR TORTIOUS BREACH OF IMPLIED WARRANTY

Defendants argue incorrectly that a claim for tortious breach of implied warranty may not be stated in conjunction with a contract claim for breach of express warranty. MTD 29.[93] Bathon's claim is based on the tort duty of merchantability imposed by law; it is not premised on contractual duties. FAC ¶¶ 241-246. Thus, her implied warranty claim is not precluded by her express warranty claim.[94]

## X.   PLAINTIFFS STATE MAGNUSON-MOSS WARRANTY ACT CLAIMS

As all of the underlying warranty claims are well-pled, *supra* pp. 30-36, Defendants' argument that Plaintiffs' claims for breach of express and implied warranties under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, should be dismissed (excepting Mederlet's claim of breach of express warranty), MTD 30, fails. *Tait*, 2011 U.S. Dist. LEXIS 103584, at *15.

## XI.   PLAINTIFFS STATE CONSUMER PROTECTION ACTS CLAIMS

---

[92] Defendants' argument that the duration provision in Cal. Civ.Code § 1791.1(c) is a one year statute of limitations, MTD 28 n.44, also fails. *Mexia*, 174 Cal.App.4th at 1305; *Keegan*, 838 F.Supp. 2d at 948 (failure to discover defect within one year does not defeat claim).

[93] The cases Defendants cite do not support their argument. *Waterloo Coal Co. v. Komatsu Mining Sys.*, 2003 U.S. Dist. LEXIS 411, *10-11 (S.D. Ohio Jan. 6, 2003) and *Rogers v. Toni Home Permanent Co.*, 167 Ohio St. 244, 249 (1958) stand for the uncontroversial principle that a contract claim for implied warranty may not be premised on representations identical to those upon which an express warranty claim is based; *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1029-30 (6th Cir. 2003) holds that the ELD bars tort claims involving *commercial* parties; *Daffin v. Ford Motor Co.*, 2004 U.S. Dist. LEXIS 18977, at *6-7 (S.D. Ohio July 15, 2004), holds that the plaintiff lacked typicality with respect to implied warranty claims in the class certification context. To the extent *Daffin* implies that plaintiffs with express warranties may never state claims for implied warranties, even when premised on different conduct, it misstates Ohio case law. *See id.* (citing *Inglis v. Am. Motors Corp.*, 3 Ohio St. 2d 132, 140 (1965) and *Rogers*, 167 Ohio St. at 249).

[94] *See Lonzrick v. Republic Steel Corp.*, 6 Ohio St. 2d 227, 229-30 (1966) (in products liability cases, a plaintiff may pursue claims for (1) negligence, (2) breach of a contractual warranty, and (3) tortious breach of an implied warranty); *Johnson v. Monsanto Co.*, 2002 Ohio 4613, P26 (2002) (reversing summary judgment on claims for breach of express warranty and tortious breach of implied warranty, because the two claims arise under "entirely separate bod[ies] of law").

Defendants gratuitously assert that "merely listing another state's consumer fraud statutes" is insufficient to state a claim. MTD 30.[95] In fact, each count for violation of state consumer protection statutes contains approximately 17 paragraphs of substantive allegations and also incorporates the allegations in the FAC ¶¶ 1-178.  The elements of these claims are fully stated.

**Cal. (Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA")):** As discussed above, Defendants' argument that Plaintiffs fail to allege adequately the failure to disclose a material fact or pre-sale knowledge of the Defect, MTD 31-32, fails. *Supra* §§ V(A), (B); *Cirulli v. Hyundai Motor Co.*, 2009 U.S. Dist. LEXIS 125139, at *9 (C.D. Cal. June 12, 2009); *Grodzitsky*, 2013 U.S. Dist. LEXIS 82746, at *16-24.[96]

**Cal. (Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")):** The UCL makes illegal business transactions that are unlawful, unfair or fraudulent. Cal. Bus. & Prof. Code § 17200.  Plaintiffs sufficiently plead UCL claims under each theory. As to unlawfulness, the FAC alleges that Defendants violated the CLRA, Song-Beverly Act, MMWA and "other state and federal statutes and common law alleged in this Fourth Amended Complaint." FAC ¶ 380; *Monday v. Saxon Mortg. Servs.*, 2011 U.S. Dist. LEXIS 105214, at *15-16 (E.D. Cal. Sept. 16, 2011); *Keegan*, 838 F. Supp. 2d at 944 n.50; *Tietsworth*, 720 F. Supp. 2d at 1136-37.[97] The FAC states

---

[95] Defendants seek to dismiss all consumer protection act claims except as to Sample (Counts XXIII-XIX and XXI-XXIV).

[96] *See supra* pp. 15-17 and fn. 71 (differentiating case law on which Defendants rely). *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir 2012) is likewise inapposite as it did not involve a safety concern. *Id.* at 1143-45 (finding plaintiffs *failed* to allege how the defect could cause the laptops at issue to catch on fire). In addition, unlike here, the plaintiffs in *Wilson* cited only 14 consumer complaints (12 of which were undated and 2 which were dated years after Plaintiffs purchased their laptops) without indicating where or how the complaints were made. *Id.* at 1148.

[97] Defendants do not move to dismiss Himler's strict product liability and negligence claims, and thus he has stated a UCL claim based on that alleged activity. *See, e.g., Monday*, 2011 U.S. Dist. LEXIS 105214, at *16 (finding negligence claim sufficient to support "unlawful" UCL claim); *Clark v. Prudential Ins. Co. of Am.*, 736 F. Supp. 2d 902, 929-30 (D.N.J. 2010) (finding that common law causes of action may serve as an "unlawful" act for a UCL violation).

an "unfair" UCL claim as Defendants' concealment of the costs associated with the Defect and the fact that it threatens consumers' home and lives[98] is not outweighed by any countervailing benefits to consumers and competition.[99] *Keegan*, 838 F. Supp. 2d at 944; *Ho*, 2013 U.S. Dist. LEXIS 35748, at *29-30.[100] Finally, as Defendants' conduct entails deception to the public,[101] they properly allege a UCL claim for fraudulent business practices. *See Keegan*, 838 F. Supp. 2d at 944; *Tietsworth*, 720 F. Supp. 2d at 1137; *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).[102]

**Md.:** Defendants' argument that Plaintiffs fail to plead a claim under the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101, *et seq.*, for

---

[98] *Supra* fn. 12. As Plaintiffs' DWs overheated or caught fire, *Tietsworth* is inapposite. 720 F. Supp. 2d at 1133-34 (finding plaintiffs lacked standing to pursue claims for nondisclosure of a safety defect because neither they nor identifiable class members experienced machines spinning out of control).

[99] To support an "unfair" UCL claim, it is sufficient to allege unfair practices caused unavoidable injury and "offered no countervailing benefit to consumers or competition." *Woods v. Google Inc.*, 2013 U.S. Dist. LEXIS 51170, at *23 (N.D. Cal. Apr. 9, 2013). The balancing test is not even required here as Plaintiffs state CLRA and other statutory violations. *Keegan*, 838 F. Supp. 2d at 944 n.50; *Grodzitsky*, 2013 U.S. Dist. LEXIS 82746, at *26-27 (CLRA violation is a UCL "unfair" practice).

[100] Defendants' assertion that Plaintiffs could have avoided injury by buying service contracts, MTD 35, is frivolous. Plaintiffs who had service contracts (or were within their express warranty periods) suffered injury nonetheless. *See Tietsworth*, 720 F. Supp. 2d at 1137. Likewise, Defendants' argument that Plaintiffs did not suffer a "substantial injury," MTD 34, fails as none of the cases on which Defendants rely involved a defect that posed *safety concerns*.

[101] *Supra* fns. 12, 13. *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001), is inapposite: (1) the ruling was on motion for summary judgment, *id.* at 1118 (noting that the Court found the allegations sufficient at the pleading stage); and (2) the Court granted the motion as to UCL liability for fraud because the plaintiff - a business competitor - was not a member of the public or a consumer entitled to such protection, *id.* at 1121. *Clemens v. DaimlerChrysler Corp.* is likewise inapposite. 534 F.3d 1017, 1026 (9th Cir. 2008) (finding there was insufficient evidence that a consumer expected a head gasket life span to exceed the warranty period). Plaintiffs here allege that the DWs' expected life span exceeds the warranty period and also that a reasonable consumer would not expect a DW to pose an *unreasonable* safety hazard. Thus, Defendants' concealment of the hazardous Defect was likely to, and did, deceive reasonable consumers. *Supra* fns. 15, 16. Further, as Plaintiffs state claims for fraudulent concealment and CLRA violations, *supra* pp. 13-30, 37, their UCL claim for fraudulent business practices stands. *Ho*, 2013 U.S. Dist. LEXIS 35748, at *31.

[102] Defendants further argue that the UCL "fraud" claim fails because the FAC does not sufficiently allege pre-sale knowledge. MTD 36. While the FAC does so, knowledge is not required for a UCL fraud claim. *Yang v. Sun Trust Mortg., Inc.*, 2011 U.S. Dist. LEXIS 147656, at *23-24 (E.D. Cal. Dec. 22, 2011). And, even if it was required, *pre-sale* knowledge is certainly not as there is a post-sale duty to disclose safety defects. *Supra* fn 38. *Daugherty* is inapposite as it did not involve a safety defect.

---

not alleging that they "viewed a particular advertisement or marketing material prior to the purchase," MTD 36, fails. There is no such requirement, especially where a post-sale duty to warn is alleged. *Supra* fn. 46; *United States Gypsum*, 336 Md. 145, at 162-63; *Owens-Illinois*, 325 Md. 420, at 446-47.[103]

**Ga.:** Defendants' argument that O'Donnell fails to state a claim under the Georgia Fair Business Practices Act, O.C.G.A. §§ 10-1-390, *et seq.*, because he does not "allege that Defendants unfairly or deceptively failed to disclose the existence of a defect," MTD 37, fails. *Supra* fns. 1, 5, 8, 13; *supra* § V(B), *supra*.[104]

**N.J.:** Defendants argue that Plaintiffs fail to state a claim under the New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.* ("NJCFA"),[105] because the NJPLA abrogates their claims;[106] they did not suffer ascertainable loss; and they did not allege Defendants knowingly concealed the Defect.[107] MTD 38-39. "[T]o satisfy the ascertainable loss element of the NJCFA, plaintiffs need only prove that they paid for a product and 'got something less than what had been promised.'" *Elias v. Ungar's Food Prods.*, 252 F.R.D. 233, 249 (D.N.J. 2007) (citations omitted). Ascertainable loss may

---

[103] Plaintiffs sufficiently alleged that Defendants concealed the Defect. *Supra* fn. 12; FAC ¶¶ 28-31. *Hayes v. Hambrunch*, 841 F. Supp. 706 (D. Md. 1994), is inapposite as that case involved a motion for summary judgment concerning the tenants of landlord-tenant law, *id.*, 708, 713.

[104] The two cases cited by Defendants are inapposite as the plaintiff in each one alleged a defect only in his car, and not a common defect "visited on the consuming public." *See Sharpe v. Gen. Motors Corp.*, 198 Ga. App. 313, 314 (1991); *DeLoach v. Gen. Motors*, 187 Ga. App. 159, 160 (1988).

[105] Courts have recognized that a motion seeking dismissal of a NJCFA claim must be approached "with hesitation," *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 525 (D.N.J. 2008); *Stewart v. Smart Balance, Inc.*, 2012 U.S. Dist. LEXIS 138454, at *23 (D.N.J. Jun. 25, 2012), which is consistent with its broad remedial purpose: "[the NJCFA] was intended to be one of the strongest consumer protection laws in the nation . . . [and] should be construed liberally in favor of protecting consumers.'" *Homa v. Am. Express Co.*, 558 F.3d 225, 232 (3d Cir. 2009) (citation omitted).

[106] The NJPLA does not abrogate NJCFA claims where the damage alleged is only to the product itself. *Supra* pp. 28-29.

[107] Plaintiffs sufficiently allege that Defendants knowingly concealed the existence Defect. *Supra* fns. 5, 12. *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418 (2003), is inapposite as it involved a motion for judgment notwithstanding the verdict, *id.* at 421, and the court merely held that there can be no finding that the defendant knowingly concealed a material fact (its Chapter 11 status) where there was no duty to disclose such information, *id.* 427-28. This argument further fails as Plaintiffs also allege affirmative acts based on Defendants' partial representations, *supra* p. 20, *supra* fn. 3, and intent is not a required element for affirmative acts under the NJCFA, *Judge*, 357 N.J. Super. at 425.

be "an out-of-pocket loss or a loss in value." *Mullin v. Auto. Prot. Corp.*, 2008 U.S. Dist. LEXIS 87577, at *8 (D.N.J. Sept. 28, 2008); *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 111 (2006) (diminution in value is ascertainable loss). Plaintiffs allege both types of harm: out-of-pocket costs to repair or replace their DWs, and overpayment for their defective DWs.[108] *Supra* fn. 16; FAC ¶¶ 41, 44, 46-47, 55, 60, 62, 112, 115, 118-19; *McCalley v. Samsung Elecs. Am., Inc.*, 2008 U.S. Dist. LEXIS 28076, at *7-8, *25-26 (D.N.J. 2008) (purchasers of TVs with an undisclosed defect pled ascertainable loss based on TVs' poor performance and costs incurred to fix them).

Defendants' claim that Cicchelli and Beal fail to allege injury as their DWs "outperformed the warranty period," MTD 38-39, is unavailing. *See, e.g., Henderson v. Volvo Cars of N. Am. LLC*, 2010 U.S. Dist. LEXIS 73624, at *10 (D.N.J. July 21, 2010) (where defects manifested after the warranties expired, the court held that the plaintiffs alleged all elements of a NJCFA claim by pleading that their vehicles had "a common defect, that Defendant was aware of the defect and that Defendant failed to disclose it"); *Doll*, 814 F. Supp. 2d at 546 (distinguishing *Perkins*, the court found a warranty defense unavailable "where there are allegations of intentional concealment of a defect or where a defendant has an obligation to disclose the defect"); *Maniscalco*, 627 F. Supp. 2d at 502. In *In re Philips/Magnavox TV Litig.*, 2010 U.S. Dist. LEXIS 91343, at *17 (D.N.J. Sept. 1, 2010), where a defect in TVs only manifested after the expiration of the warranty period, the court rejected the defendants' argument that the NJCFA claim

---

[108] Defendants cite language in *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234 (N.J. 2005), stating that warranty repairs performed "at no cost . . . do not provide the predicate 'loss' . . . ." MTD 38, to argue that Milicia did not suffer loss. First, a plaintiff need not "provide any evidentiary material to rebut defendant's contention that she had not sustained an ascertainable loss" at the motion to dismiss stage. *Perkins*, 383 N.J. Super. at 1004 (distinguishing *Thiedemann*, which concerned a motion for summary judgment). Further, the *Thiedemann* court found no ascertainable loss because the defendant *adequately* replaced defective components with plaintiffs suffering *no out-of-pocket loss*. 872 A.2d at 793. Milicia alleges that the defective components were not adequately replaced, FAC ¶¶ 19-20; 56-62, so she "'receive[d] less than what was promised,'" *McCalley*, 2008 U.S. Dist. LEXIS 28076, at *25 (citation omitted), as Whirlpool did not perform its warranty duties. Additionally, she suffered out-of-pocket loss as she paid $400 for her new DW. FAC ¶ 60.

should be dismissed because "consumer protection statutes cannot be used as an end-run around well settled warranty law," and noted that "a warranty defense is generally unavailable where there are allegations of intentional concealment of a product defect," or where "a defendant has an obligation of disclosure," *id.* at *19 (collecting cases). The court found plaintiffs pled a NJCFA claim by alleging that defendants had knowledge of the defect and received numerous consumer complaints, yet failed to disclose this fact. *Id.* at *20. Plaintiffs allege the same here. *Supra* fns. 2, 12.[109]

**Mass.:**  Defendants argue that LeBlanc fails to state a claim under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1, *et seq.* ("Ch. 93A"), because he fails to allege a common material defect;[110] his post-warranty repair is not an injury under the Act; and his allegation that his DW will more than likely fail again due to the Defect is speculative and not compensable under Ch. 93A. MTD 39-40. These arguments fail.

---

[109] The cases on which Defendants rely, MTD 38-39, are unpersuasive. The plaintiff in *Perkins* had a car with some 108,000 miles on it and failed to allege that any purported "defect" had ever manifested or that it might implicate safety concerns. *See Nelson v. Nissan N. Am., Inc.*, 2012 U.S. Dist. LEXIS 127522, at *24-25 (D.N.J. Sept. 7, 2012) (finding *Perkins* not to be "instructive" where an alleged vehicle defect "created a dangerous condition," and the vehicles actually required repair or replacement). Further, the *Perkins* plaintiff "did not allege that the defendant knew that its specific product contained a defect that would cause it to fail before that product's expected useful life." *Maniscalo*, 627 F. Supp. 2d at 501 (citing *Perkins*, 383 N.J. Super. at 103). In *Noble v. Porsche Cars North Am., Inc.,* 694 F. Supp. 2d 333 (D.N.J. 2010), the plaintiff did not allege that the defendant had pre-sale knowledge of a safety defect that would cause product failure during the expected useful life.

"The notion that a manufacturer would be absolved from liability for knowingly omitting a defect because it acknowledges the possibility of defects in its warranty is both illogical and contrary to the spirit of the NJCFA." *Coba v. Ford Motor Co*., 2013 U.S. Dist. LEXIS 8366, at *25-26 (D.N.J. Jan. 22, 2013).  *See also Mickens v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 142604, at *12, 37 (D.N.J. Oct. 1, 2012) ("[w]arranty coverage of a particular problem does not, as a matter of law, negate a [NJ]CFA claim that the manufacturer knowingly omitted information about a . . . defect," *id.* at *37).

[110] The FAC sufficiently alleges the common, material Defect. *Supra* fns. 1, 8. *Iannacchino v. Ford Motor Co.*, 451 Mass. 623 (2008) is inapt as the plaintiffs in that case did not allege that the product malfunctioned. *See Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 303 n.14 (D. Mass. 2009) (where plaintiffs alleged that the product caused dogs to get sick, the court held, "The *Iannacchino* court's statements regarding the pleading requirements for alleging a 'defect' therefore have no bearing on this case because the complaint's allegations that the product was defective clearly meet the requirements of *Twombly*.").

---

An injury under § 9(1) occurs when an unfair or deceptive act [ ] 'caused loss of money, loss of property,' 'a personal injury loss such as emotional distress' or ''the invasion of any legally protected interest of another.''" *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 2012 U.S. Dist. LEXIS 165613, at *26-27 (D. Mass. Nov. 20, 2012) (citations omitted). LeBlanc adequately alleges that he suffered economic injuries[111] and invasion of his legally protected interest.[112] LeBlanc's allegation that his DW will fail again due to the Defect is sufficient to allege injury under Ch. 93A. *See Rule*, 604 F. Supp. 2d at 295-96 (while distinguishing the facts in the case before it, the court observed a plaintiff has a cognizable injury where a product is unreasonably unsafe and is still within its anticipated useful life[113]).[114]

**Va.:**  Contrary to Defendants' argument, MTD 40-41, Virginia Plaintiffs state

---

[111] FAC ¶¶ 64-70. *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16 (1st Cir. 2001), does not support Defendants' argument that LeBlanc's post-warranty repairs are not cognizable injuries. MTD p. 40. In *Cummings*, there was no evidence that defendant knew or should have known that its statements about its product were false, or that the product was negligently designed, and the court applied the standards pertinent to commercial parties under § 11 of Ch. 93A instead of the "the more forgiving consumer standard contained in section 9 of Chapter 93A." 244 F.3d at 23, 26. Here, Defendants cannot use the warranty period to escape liability for their deceitful acts, especially where they had an on-going, post-sale duty to warn of the Defect. *Supra* § V(B); *supra* fn. 13; *Cummings*, 244 F.3d at 26 (". . . Massachusetts courts, for public policy reasons, have long held that a party cannot *induce* a contract by fraudulent misrepresentations and then use contractual devices to escape liability").

[112] Defendants traversed LeBlanc's legally protected interests by breaching their duty to warn of the Defect and the implied warranty of merchantability. *Supra* §§ V(B), § VII*; Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 702-03 (1975) ("A failure to disclose a defect . . . is unlawful . . . and is actionable under § 9."); *Cf., Maillet v. ATF-Davidson Co.*, 407 Mass. 185, 192-93 (1990). Defendants' breaches led LeBlanc to buy a DW, pay for repairs, and not make timely warranty claims. FAC ¶¶ 23, 64, 456; *Greenery Rehab. Group, Inc. v. Antaramian*, 36 Mass. App. Ct. 73, 78 (1994) (one violates Ch. 93A "by failing to disclose to a buyer a fact that might have influenced the buyer to refrain from the purchase"); *Klairmont v. Gainsboro Rest., Inc.*, 465 Mass. 165, 175-76 (2013).

[113] While the *Rule* court discussed injury in the context of an implied warranty claim, the same standard applies to Ch. 93A claims. *See In re GMC*, 383 F. Supp. 2d 1340, 1345 (W.D. Okla. 2005).

[114] *Waters v. J.C. Christensen & Assocs.*, 2011 U.S. Dist. LEXIS 41075 (D. Mass. Mar. 4, 2011), is inapposite as it was a ruling on summary judgment, *id.* at *1, and the plaintiff merely alleged that defendant's actions "were sufficient 'to have caused a person to act differently from the way he or she would otherwise have acted' by - for example - causing a person to attempt settlement of the account sooner than he/she otherwise would have, or causing a person to contact defendant in the hope of avoiding or delaying legal action, which appeared imminent," *id.* at *40-41. Unlike the speculative injury in that case, LeBlanc pleads actual injury. FAC ¶¶ 23, 68-69, 456.

---

42

claims under the Virginia Consumer Protection Act, Va. Code §§ 59.1-196, *et seq.*, as they properly allege that Defendants knowingly failed to disclose a material fact, as they allege both an omission of a material fact – the Defect – and Defendants knowledge thereof. *Supra* fns. 1, 5, 8, 12.

**Oh.:** Defendants argue that Bathon fails to "identify any offending conduct" in compliance with Rule 8 or 9(b) despite observing a plaintiff need only "show a material misrepresentation, deceptive act or omission that impacted his decision to purchase the item at issue" to assert a claim under the Ohio Consumer Sales Practices Act, ORC Ann. §§ 1345.01, *et seq.* ("OCSPA"). MTD 41. The FAC is replete with specific allegations of material omissions and misrepresentations, *supra* fns. 3, 12, which affected Bathon's purchasing decision. *Supra* fn. 15, FAC ¶¶ 101, 340. Defendants further claim that Bathon failed to identify any prior court decision that would put Defendants on notice that the alleged conduct violated the OCSPA, MTD 42,[115] but she alleges ample Ohio case law putting Defendants on notice that its misrepresentations, omissions, and failure to honor their warranties violated the OCSPA, FAC ¶ 344.[116]

The two year SOL does not bar Bathon's OCSPA claim; although she purchased

---

[115] For a plaintiff to maintain a class action under the OSCPA, a prior court decision or rule must set forth "a general rule which reasonably tells potential actors or practitioners what they may not do." *Amato v. General Motors Corp.*, 11 Ohio App. 3d 124, 130 (1982) (finding that the Ohio Division of Commerce's rules generally prohibiting certain omissions in advertising (Ohio Admin. Code § 109:4-3-02) and forbidding bait and switch tactics (Ohio Admin. Code § 109:4-3-03) were enough to put GM on notice that selling Oldsmobiles with Chevrolet engines violated the OCSPA). The notice requirement under Ohio Rev. Code § 1345.09 is <u>not</u> a pleading requirement. *See Lilly v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 22114, at *17-18 (S.D. Ohio Apr. 21, 2006).

[116] In *Brown v. Lyons*, 43 Ohio Misc. 14, 19-20 (1974), for example, the court ruled in favor of the Ohio Attorney General after trial that failure to honor express and implied warranties governing household appliances, and misleading representations regarding those appliances, violated the OCSPA. *See also Sovel v. Richardson*, 1995 Ohio App. LEXIS 5076, at *9 (Nov. 15, 1999) (defendant could be liable under OSCPA for making misrepresentations regarding and failing to replace defective refrigerators). In *Nessle v. Whirlpool Corp.*, 2008 U.S. Dist. LEXIS 56940, at *8-9 (N.D. Ohio July 25, 2008), the court found that *Brown* and *Sovel*, among other cases, were sufficient to put Whirlpool on notice that its failure to honor warranties regarding its refrigerators would violate the OCSPA. *Id.* (citation omitted). Defendants' protestation that these cases do not apply because they involved "different industries" is frivolous as these cases all involved defective household appliances, and one concerned Whirlpool.

her DW in December 2008, she alleges that it malfunctioned in 2012, and that Whirlpool failed to honor her warranty when it replaced her DW with a similarly defective DW. FAC ¶ 101-104. An OSCPA violation may occur before, during or after the subject transaction, and the SOL "commences to run on the date of the occurrence of the violation, which is not necessarily date of the underlying transaction." *Varavvas v. Mullet Cabinets, Inc.*, 185 Ohio App. 3d 321, 326-27 (2009); *Bales v. Isaac*, 2004 Ohio 4677, P11 (2004) (finding that OSCPA claim was timely as SOL did not begin to run until the defendant failed to make the repairs required by its warranty). And regardless of when the OCSPA claim accrued, Bathon affirmatively plead that her claims are timely under the discovery rule, the fraudulent concealment tolling doctrine and estoppel. FAC ¶¶ 212-14; *Cerney v. Norfolk & W. Railway Co.*, 104 Ohio App. 3d 482, 488 (1995).

**Ill.:** Defendants assert that Meneghetti's Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS §§ 501/1, *et seq.* ("ICFA"), claim should be dismissed because it does not satisfy the requirements of Rule 9(b). MTD 44. This argument is unfounded. *Supra* § V(A); *Saltzman v. Pella Corp*, 2007 U.S. Dist. LEXIS 19650, at *2, 7-8 (N.D. Ill. Mar. 20, 2007). Meneghetti adequately pleads that she received communications from Defendants wherein they omitted any information about the Defect[117] and that she was deceived by Defendants' fraudulent omissions, as she would not have purchased her DW, would have demanded non-defective replacement components pursuant to her

---

[117] As Defendants observe, a plaintiff cannot maintain an action under the ICFA for a deceptive practice without a communication from the defendant containing either a deceptive misrepresentation or omission. MTD 40 (citing *De Bouse v. Bayer AG*, 235 Ill. 2d 544 (2009); *Shannon v. Boise Cascade Corp.*, 208 Ill. Ed 517, 528 (2004)). However, *De Bouse* and *Shannon* are inapposite as the plaintiffs could not demonstrate proximate cause under the ICFA as there was <u>no</u> communication between the plaintiffs and the defendants. Here, Meneghetti pleads that *she received communications from Defendants* wherein they omitted any mention of the material Defect. FAC ¶¶ 23, 107, 110-11, 419. Further, Defendants' distribution of the DWs for sale was a "statement" for purposes of the ICFA that the DWs are safe for their ordinary intended use. *In re Porsche*, 880 F. Supp. 2d at 849-50 (observing that the *De Bouse* court "limited its holding to the drug context and left open the question in the context of the sale of other products," *id.* at 850 (citation omitted)).

---

warranty, and would not have paid for inadequate repairs, had Defendants disclosed the Defect. FAC ¶¶ 23, 107, 409-419, 422; *Doll*, 814 F. Supp. 2d at 536-39; *Connick*, 174 Ill. 2d 504-05.[118]

**N.Y.:**  Defendants contend that Plaintiffs fail to allege a deceptive act under the New York Deceptive Practices Act, N.Y. Gen. Bus. §§ 349, *et seq.* ("NYDPA"), because they do not show that Defendants were aware of the Defect. MTD 45. This argument fails.[119] Defendants further argue that Plaintiffs fail to show that Defendants' deceptive omissions caused their injuries because they do not allege that they saw any statement prior to purchase. MTD 45. As the NYDPA claims are based on misrepresentation *by omission*, there is no requirement to identify any specific sign, advertisement or other representation on which New York Plaintiffs' relied and that resulted in their injuries.[120] *Supra* fn. 46; *In re Porsche*, 880 F. Supp. 2d at 860 ("although plaintiffs must allege that the deceptive conduct 'caused' their injury, they need not demonstrate that they justifiably relied on the alleged omission [to state a claim under the NYDPA]" (citation omitted)). Plaintiffs adequately identify the material omission (the Defect that threatened their health and home)[121] that caused their injuries. *Supra* fns. 1, 8, 12, 15; FAC ¶¶ 502-12, 514-15; *Tait*, 2011 U.S. Dist. LEXIS 103584, at *17 (plaintiffs stated NYDPA claims where they alleged the concealed

---

[118] Contrary to Defendants' argument, MTD 44, Meneghetti adequately pleads the existence of the Defect, thereby triggering Defendants' duty to disclose, *Supra* fns. 1, 8; *supra* § V(B). "Furthermore, it is unnecessary to plead a common law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment." *Connick*, 174 Ill. 2d at 505 (citation omitted).

[119] *Supra* fns. 1, 5, 8. While Plaintiffs allege pre-sale knowledge of both Whirlpool (especially as to Paolini's second DW) and Sears, pre-sale knowledge is not required to state a NYGBL claim because (1) there is a post-sale duty to warn under New York law; and (2) Sears had a duty to disclose the Defect when Koswener had her DW repaired pursuant to her service contract and Sears used similarly defective components that did not cure the Defect. *Supra* § V(B).

[120] In any event, the FAC avers that Plaintiffs saw no information about the Defect in any advertising, marketing or other representation or communication made by Defendants prior to or after the purchase or servicing of their DWs. *See* FAC 120-21, 124-25, 132, 135-39.

[121] Defendants grossly misread the FAC in claiming that the alleged omission simply regards "a slight possibility that [Plaintiffs'] Dishwashers might need repair after <u>ten years</u> of reliable service." MTD 45-46 (emphasis in original).

information about washing machine defect was material to their purchasing decisions); *In re Porsche*, 880 F. Supp. 2d at 860-62 (distinguishing *Against Gravity Apparel, Inc. v. Quarterdeck Corp.*, 699 N.Y.S.2d 368 (1999), the court held the NYDPA claim was adequately pled where "New York Plaintiffs allege that the coolant tube defect was material and that knowledge of the defect would have altered their individual buying decisions.").

**Utah:**  Defendants argue that Steffes's Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, *et seq.* ("UCSPA"), fails as she does not allege any affirmative misrepresentation, MTD 46, but the UCSPA does not require an affirmative misrepresentation. It broadly prohibits any "deceptive act or practice" and must "be construed liberally" in accordance with the Federal Trade Commission Act ("FTCA"). Utah Code Ann. § 13-11-4; *Wade v. Jobe*, 170 Utah Adv. Rep. 5, at *22-23 (1991). The FTCA defines deceptive acts to include material omissions that are likely to deceive reasonable consumers. *Sw. Sunsites v. FTC*, 785 F.2d 1431, 1435 (9th Cir. 1986). It follows that UCSPA liability may be premised on a "material omission," which the Utah Supreme Court has defined in fraudulent nondisclosure cases as "important" information that "could be expected to influence the judgment of a person buying property or assenting to a particular purchase price." *Yazd v. Woodside Homes Corp.*, 2006 UT 47, P34 (2006). Steffes alleges that the hazardous Defect was important to her and that she would not have purchased her DW, or would have paid less, had the Defect been disclosed to her. FAC ¶¶ 140, 529.[122]

Defendants' argument that Steffes fails to allege any "knowing or intentional[]" deceptive act in 2005 when Steffes purchased her DW, MTD 46, misstates the law, as the UCSPA prohibits a deceptive act "whether it occurs before, during, or after the

---

[122] *Toone v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 109455 (D. Utah Sept. 27, 2011), is inapposite as the plaintiffs did not allege any facts showing deceptive conduct, and instead premised liability on various non-misrepresentation theories as to why their mortgage note was invalid for not being properly endorsed—and therefore never properly transferred ownership—such that the defendants could not initiate foreclosure proceedings against them, *id.* at *9, *12.

46

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS FOURTH AMENDED COMPLAINT**
**Case No. 8:11-cv-01733-FMO-MLG**

transaction." Utah Code Ann. § 13-11-4. Further, Steffes alleges that Defendants knew of the Defect both before and after her DW purchase, but knowingly and intentionally concealed such information. *Supra* fns. 5, 12, 13; FAC ¶¶ 526-528, 536-538.

Finally, Steffes satisfies § 13–11–19(4)(a) because prior court decisions have found failure to honor warranties and falsely advertising defective products as UCSPA violations. *State by Division of Consumer Protection v. GAF Corp*., 89 Utah Adv. Rep. 14, at *3-9 (1988) (allegation that roof shingles were defective stated a UCSPA claim). Further, the Utah Division of Consumer Protection created a rule providing that it is a UCSPA violation to refuse to give refunds to consumers for "damaged or defective products." Utah Admin. Code R152-11-10(B). As such, and as Steffes alleged, Defendants were on notice that selling the dangerously defective DWs without notice and without providing free, effective repairs or replacements, constitute violations of the UCSPA, and Steffes is entitled to actual damages. FAC ¶¶ 519-520, 525-528.[123]

## XII.   PLAINTIFFS STATE CLAIMS FOR UNJUST ENRICHMENT/RESTITUTION

**Cal. and Ga.:** California has long recognized a claim for unjust enrichment. *See, e.g., Lectrodryer v. Seoul Bank*, 77 Cal. App. 4th 723, 726 (2000) (upholding jury verdict that plaintiff satisfied the elements of its unjust enrichment claim); *Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 722 (2003) (appellants stated valid claim for unjust enrichment). Moreover, in California, unjust enrichment may be pled as an alternative to a contract-based claim so long as it is not based on the terms of alleged contract; for example, where plaintiff alleges that the contract may be unenforceable or that the benefit was conferred through mistake, fraud, duress, conversion or similar conduct. *Monet v. Chase Home Fin., LLC*, 2010 U.S. Dist. LEXIS 59749, at *8-9 (N.D. Cal. June 16, 2010); *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004); *Nebbi*

---

[123] Moreover, Steffes and the Class are entitled to class-wide injunctive, declaratory, and appropriate ancillary relief under Utah Code Ann. § 13–11–19(3) notwithstanding § 13–11–19(4)(a).

*Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1422 (1988).[124]

Similarly, and as Defendants concede, Georgia recognizes a claim for unjust enrichment "as an alternative theory of recovery if a contract claim fails." MTD 47 (citing *Tidikis v. Network for Med. Communs. & Research, LLC,* 274 Ga. App. 807, 811 (2005)); *see also Fed. Ins. Co. v. Westside Supply Co.,* 264 Ga. App. 240, 248 (2003) (summary judgment on unjust enrichment claim would be premature because the jury could conclude either that the defendant was liable under the express contract, or that it was liable under an implied contract/unjust enrichment theory).

Plaintiffs assert that unjust enrichment is pled in the alternative to their contract claims (FAC ¶ 298) and that it arises out of Defendants' fraud (*id.* ¶¶ 301-303). Defendants attack Plaintiffs' contract claims; until those claims are resolved, the California and Georgia Plaintiffs' claims for unjust enrichment should stand.

**Ohio:** Defendants argue that Bathon must allege that she transacted directly with Whirlpool in order to state a claim for unjust enrichment under Ohio law.  The cases cited do not support this argument. MTD 48. The court in *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 286 (2005), held that indirect purchasers who had no valid antitrust claim against Microsoft for its alleged monopolistic software pricing could not pled an "end run around" antitrust laws by alleging unjust enrichment. Relying on

---

[124] *Melchoir v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003) is not to the contrary. The *Melchoir* court opined that "unjust enrichment" is synonymous with restitution and held that, because the plaintiff did not plead a quasi-contract theory, he could not be entitled to equitable restitution. *Id. See also Epicor Software Corp. v. Alternative Tech. Solutions, Inc*., 2013 U.S. Dist. LEXIS 79125, at *19 (C.D. Cal. May 9, 2013) ("Although courts have differed on the semantic arguments of whether 'unjust enrichment' is truly an independent cause of action or the legal theory underpinning a claim for restitution, it is clear that where both are pled, or where the plaintiff's claim for unjust enrichment can be understood as one for restitution, a cause of action will lie."). The court's reliance in *Tait v. BSH Home Appliances Corp.*, 2011 U.S. Dist. LEXIS 54456 (C.D. Cal. May 12, 2011) on cases quoting *Melchoir* to find that no such cause of action exists is therefore both contrary to the holding in *Melchoir* and California law.

*Johnson*, the court in *Savett v. Whirlpool Corp.*, 2012 U.S. Dist. LEXIS 124086, at *18-21 (N.D. Ohio Aug. 31, 2012), held that indirect purchasers must establish "that the purchaser conferred a benefit on the defendant through an economic transaction" to state an unjust enrichment claim, and that the plaintiff failed to allege that his purchase of a washing machine from Home Depot conferred any benefit on Whirlpool. Taken together, and in accord with other Ohio case law, these cases merely hold that there must be a transaction through which plaintiff proximately caused an economic benefit to be conferred directly on defendant. *See Randleman v. Fid. Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812, 816 (N.D. Ohio 2006) (distinguishing *Johnson* and finding that homeowners could bring an unjust enrichment claim against their lender's third-party title insurance company for overcharges on premiums in connection with refinancings); *Kline v. Mortgage Elec. Registration Sys.*, 2011 U.S. Dist. LEXIS 60733, at *18-19 (S.D. Ohio Mar. 29, 2011) (where plaintiffs did not transact directly with Barclays, they could allege unjust enrichment claims based on fees passed on to Barclays).

Bathon alleges that she conferred a benefit directly on Whirlpool when she paid the KitchenAid division of Whirlpool $150 to replace her defective DW. Whirlpool unjustly retained this benefit when it replaced her DW with another defective DW. FAC ¶¶ 103-104. Further, Whirlpool's refusal to provide free, non-defective electronic control components as required under warranty resulted in its direct retention of a benefit that should have gone to Bathon.[125] Bathon's unjust enrichment claim stands.

**Md., N.J., Mass., Va., Mo., Ill, N.Y., and Utah:** Defendants concede that a claim for unjust enrichment exists under the laws of the captioned states, but argue that these claims should be dismissed due to the existence of written warranties.  MTD 48. As in California and Georgia, however, claims for unjust enrichment may be pled in the

---

[125] *Paikai v. General Motors Corp.*, 2009 U.S. Dist. LEXIS 8538, at *16-18 (E.D. Cal. Feb. 5, 2009) (applying Ohio law, the court held that an Ohio plaintiff could state a claim for unjust enrichment against GM when he alleged various manufacturing defects in the car and that GM had wrongfully denied warranty coverage on the vehicle). As in *Paikai*, Whirlpool here benefitted by retaining the funds it should have expended to replace the defective components in Bathon's DW.

1    alternative.[126] Thus, the unjust enrichment claims survive.[127]

2    **XIII.  <u>CONCLUSION</u>**

3          For the reasons discussed hereinabove, Defendants' MTD should be denied.[128]

4

5    Dated:  July 8, 2013

6                          COHON & POLLAK, LLP

7                          RIFKIN, WEINER, LIVINGSTON, LEVITAN & SILVER, LLC

8                          WEINSTEIN KITCHENOFF & ASHER LLC

9                          CHIMICLES & TIKELLIS LLP

10                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

11                         By:    /s/ Charles S. Fax
                                  Charles S. Fax
12                                Rifkin, Weiner, Livingston, Levitan & Silver, LLC
13                                Attorneys for Plaintiffs

14

15

16

17

---

18    [126] *Swedish Civil Aviation Admin. v. Project Mgmt. Enters. Inc.*, 190 F. Supp. 2nd 785, 792 (D. Md. 2002); *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009); *Chem Gro of Houghton, Inc. v. Lewis County Rural Elec. Co-op. Ass'n*, 2012 U.S. Dist. LEXIS 40697, at *7-10 (E.D. Mo. Mar. 26, 2012); *Prudential Ins. Co. of America v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623-624 (N.D. Ill 2008); *Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*, 497 F. Supp. 2d 541, 560 (S.D.N.Y. 2007); *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 295 (D. Mass. 2009); *Harrell v. Colonial Holdings, Inc.*, 2013 U.S. Dist. LEXIS 18913, at *31 (E.D. Va. Feb. 12, 2013); *Miller v. Basic Research, Inc.*, 2008 U.S. Dist. LEXIS 87655, at *27-28 (D. Utah Oct. 27, 2008).

[127] As Plaintiffs' claims are viable, the declaratory judgment count should stand. *Shaterian v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 128549, at *34-35 (N.D. Cal. Nov. 7, 2011).

[128] Defendants argue erroneously that O'Donnell and Meneghetti fail to state claims against Sears. MTD 49-50. *See* FAC ¶¶ 38-39 (A&E inadequately serviced O'Donnell's DW); *id.* at 110-11 (A&E inadequately serviced Meneghetti's DW); fn. 63, *supra* (discussing A&E's relationship to Sears). As a result of A&E's inadequate repairs, O'Donnell suffered further injury – his repairs were delayed, unduly restricting his use of the DW for an additional period of time.  FAC ¶¶ 38-39 (due to defective repairs that did not resolve unreasonable threat of fire, O'Donnell will not use his DW when he is asleep or when no one is in the house).

---

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on July 8, 2013, I caused the attached Plaintiffs' Opposition

3   to Defendants' Partial Motion to Dismiss Fourth Amended Class Action Complaint to

4   be served, using the CM/ECF system which will send notification of such filing to the

5   following email addresses:

6                          Michael T. Williams ( *pro hac vice*)
                           williams@wtotrial.com
7                          Andrew M. Unthank *(pro hac vice)*
                           unthank@wtotrial.com
8                          Galen D. Bellamy (SBN 231792)
                           bellamy@wtotrial.com
9
                           Catherine R. Ruhland (*pro hac vice*)
10                         ruhland@wtotrial.com
11                         **Wheeler Trigg O'Donnell LLP**
                           370 17th Street, Suite 4500
12                         Denver, CO 80202
                           Telephone: (303) 244-l800
13                         Facsimile: (303) 244-1879
14

15                         Dean J. Zipser (SBN 094680)
16                         E-mail: dzipser@kruzlaw.com
                           **Keller Rackauckas Umberg Zipser LLP**
17                         18300 Von Karman Avenue, Suite 930
                           Irvine, CA 92612
18                         Telephone: (949) 476-8700
19                         Facsimile: (949) 476-0900

20
                           Attorneys for Defendants
21

22

23                         _____Charles S. Fax_____

24                         Charles S. Fax

25

26

27

28