Case No. 8:11-CV-01733-FMO-AN

Jeffrey M. Cohon (CSBN 131431)
Howard Pollak (CSBN 147077 )
**COHON & POLLAK, LLP**
10250 Constellation Boulevard,
Suite 2320
Los Angeles, California  90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610
jcohon@cohonpollak.com

Charles S. Fax (*pro hac vice*)
Liesel J. Schopler (*pro hac vice*)
**RIFKIN, WEINER, LIVINGSTON,
LEVITAN & SILVER LLC**
7979 Old Georgetown Road,
Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-6535
cfax@rwlls.com
lschopler@rwlls.com

David H. Weinstein (CSBN 43167)
Robert Kitchenoff (*pro hac vice*)
**WEINSTEIN KITCHENOFF &
ASHER LLC**
100 South Broad St., Suite 705
Philadelphia, Pennsylvania 19110-1061
Telephone: (215) 545-7200
Telecopier: (215) 545-6535
weinstein@wka-law.com
kitchenoff@wka-law.com

Steven A. Schwartz (*pro hac vice*)
Timothy N. Mathews (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania
19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com
tnm@chimicles.com

Nicole Sugnet (CSBN 246255)
**LEIFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California
94111-3339
Telephone: (415) 956-1000
Telecopier: (415) 956-1008
klaw@lchb.com
nsugnet@lchb.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

I

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

STEVE CHAMBERS, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

WHIRLPOOL CORPORATION, *et al.*,

Defendants.

Case No. 8:11-cv-01733-FMO-AN

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Action Filed: November 9, 2011

*The Honorable Fernando M. Olguin*

Date:    October 22, 2015
Time:    10:00 a.m.
Dept.:   Courtroom 22, 5th Floor

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Table of Contents | …………………………………………… | ii |
| Table of Authorities | …………………………………………… | v |
| I. INTRODUCTION | …..………………………………………… | 1 |
| II. LITIGATION HISTORY | …………………………………… | 5 |
| A. Plaintiffs' Factual Allegations and Claims | ……………… | 5 |
| B. Procedural History of This Action | ……………………… | 6 |
| C. Discovery | …………………………………………… | 6 |
| D. Settlement Negotiations, Related Proceedings in This Court, and Confirmatory Discovery | ……………… | 7 |
| III. THE SETTLEMENT TERMS | …………………………………… | 8 |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

II

A.    Settlement Class   ……………………………………   8

B.    Class Settlement Consideration   …………………………   9

    1.    Prior Overheating Event Claims   ………………   9

    2.    Future Overheating Events   ………………………   10

    3.    Benefits Available to All Settlement Class Members   ……………………………………..   10

C.    Compensation for Non-Class Dishwashers   ………………   11

D.    Warning Labels   …………………………………..   12

E.    Claims Process   …………………………………..   13

F.    Proposed Class Notice   ………………………….........   14

    1.    Postcard and Email Notice   ………………………   14

    2.    Packaging Notice   …………………………….........   14

    3.    Publication Notice   ………………………………   14

    4.    Website Notice   …………………………………   15

G.    Other Settlement Benefits   ………………………………   15

    1.    Purchase of Plaintiff Steve Chambers' Websites   ……………………………….........   15

    2.    Attorneys' Fees and Costs; Incentive Awards …………………………………..   16

H.    Settlement Release   ………………………………   17

IV.   THIS SETTLEMENT SATISFIES THE LEGAL REQUIREMENTS FOR PRELIMINARY APPROVAL   …………   17

A.    Summary of Argument   …………………………   17

B.    Preliminary Approval is Appropriate   ………………...........   18

    1.    The Settlement is the Product of Arms Negotiations and Is Informed by the Litigation and Factual Investigations   …………………   19

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

III

   2.   This Settlement is Within the Range of
        Reasonableness Given the Benefits Conferred
        And the Risks of Litigation   ………………………   21

   3.   Plaintiffs' Counsel, Who Are Highly
        Experienced Class Action Attorneys,
        Support the Settlement   …………………………......   23

V.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED
     AND CLASS COUNSEL APPOINTED   ….………………..   24

VI.   THE PROPOSED CLASS NOTICE SHOULD
      BE APPROVED   …………………………………..   27

VII.   PLAINTIFFS' COUNSEL WILL APPLY SEPARATELY
       FOR ATTORNEYS' FEES AND COSTS AND INCENTIVE
       AWARDS   ……………………………………………   29

VIII.   THE FINAL APPROVAL HEARING SHOULD
        BE SCHEDULED   …………………………………   30

IX.   CONCLUSION   ……………….…………………   30

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997)  …………………   24, 26, 28

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610 (N.D. Cal. 1979)   …………   23

*Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566
(9th Cir. 2004)   ………………………………………   18

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268
(9th Cir. 1992)   ………………………………………   18

*Cortez v. Purolator Air Filtration Prods. Co.,* 999 P.2d 706
(Cal. 2000)   ………………………………………   26

*Dunleavy v. Nederlander,* 213 F.3d 454 (9th Cir., 2000)   ……………   21

*Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15
(N.D. Cal. 1980)   ………………………………   23

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,*
137 F.R.D. 240 (S.D. Ohio 1991)   ……………………   23

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998)   ……………   18, 22

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,*
MDL No. 2147, 2011 WL 2204584 (N.D. Ill. June 2, 2011)   …………   21

*In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555
(C.D. Cal. June 10, 2005)   ………………………………   20

*In re High-Tech Employee Antitrust Litig.,* 2014 U.S. Dist. LEXIS
110064, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014)   …………………   19

*In re Pharm. Indus. Average Wholesale Price Litig.,* 252 F.R.D. 83
(D. Mass. 2008)   ………………………………   22

*In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078
(N.D. Cal. 2007)   ………………………………   28

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit
Transactions Act (FACTA) Litig.,* 295 F.R.D. 438 (C.D. Cal. 2014)   ……   19

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

v

1

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Vioxx Class Cases,* 180 Cal.App.4th 116 (Cal. Ct. App. 2009) …… 26

*Lane v. Facebook, Inc.,* 696 F.3d 811, 824 (9th Cir., 2012) …………... 21

*Mazza v. American Honda Motor Co.,* 666 F.3d 581 (9th Cir. 2012) …… 22

*McLaughlin v. American Tobacco Co.,* 522 F.3d 215 (2d Cir. 2008) …… 22

*Miller v. CEVA Logistics USA, Inc.,* 2015 U.S. Dist. LEXIS 20171
(E.D. Cal. February 19, 2015 ) ………………………………….. 19

*Montanez v. Gerber Childrenswear, LLC,* 2011 U.S. Dist. LEXIS
150942, 2011 WL 6757875 (C.D. Cal. 2011) ……………………… 26

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004) ……………………………….. 20, 23

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615
(9th Cir. 1982) ………………………………………………….. 18, 21

*Rodriguez v. West Publ'g Corp.,* 563 F.3d 948 (9th Cir. 2009) …………. 30

*Ross v. Trex Co., Inc.,* No. C 09–670, 2009 U.S. Dist. LEXIS 69633
(N.D.Cal. July 30, 2009) …………………………………………. 19

*Staton v. Boeing Co.,* 327 F.2d 938, (9th Cir. 2003) ………………. 18

*Vasquez v. USM Inc.,* 2015 U.S. Dist. LEXIS 49123 at *6
(N.D. Cal. April 13, 2015) ……………………………………… 19

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002) …………... 16

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 254 (2011) ………………… 24

## <u>FEDERAL RULES</u>

Fed. R. Civ. P. 23 ……………………………………………….…… 26-28

Advisory Committee Notes to Rule 23(b)(3)
(1966 Amendments) ………………………………………….. 26

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

## <u>STATUTES</u>

Cal. Comm. Code § 2714 ………………………………………….. 26

## <u>OTHER</u>

Federal Judicial Center, Manual for Complex Litigation § 21.63,
et seq. (4th ed. 2004) ……………………………………….. 17

Manual for Complex Litigation (Third) § 30.42 (1995) ……………... 20
                                                                          28
4 Newberg on Class Actions, § 11:22, et seq. (4th ed. 2002) …………. 17,19

# I.    **INTRODUCTION**

All Plaintiffs individually, and Plaintiffs Steve Chambers, Lynn Van der Veer, Kevin O'Donnell, Joseph Cicchelli, Kurt Himler, Gary LeBlanc, George Bliss, LynDee Walker, W. David Beal, Zila Koswener, Pamela Walchli, Raymond Paolini, Jr., and Jackie Steffes, as representatives of the proposed Settlement Class[1], submit this Memorandum in support of the Joint Motion of All Parties for preliminary approval of the proposed Settlement Agreement ("Settlement"). The Settlement would resolve all claims in this action against Defendants Whirlpool Corporation, Sears Holding Corp. and Sears, Roebuck and Co. ("Defendants") premised on Plaintiffs' allegation that certain Whirlpool-manufactured dishwashers branded "Whirlpool®," Kenmore®," or "KitchenAid®" had a design defect that caused overheating in high current connections to the electronic control board ("ECBs"), causing the ECB consoles to smoke, emit fumes and sparks and/or catch fire ("Overheating Events"), thereby posing a safety risk. After vigorously contested litigation, extensive discovery and intense negotiations that spanned more than a year, including 6 full-day mediation sessions before Professor Eric

---

[1] This Settlement is a hybrid, as it provides for Class-wide relief and a Class-wide release for consumers with dishwashers with Rush or Rushmore-model control boards, and provides similar relief, without a Class-wide release, for consumers with dishwashers with NewGen or Raptor control boards. Named Plaintiffs Susan Milicia, Linda Sample, Susan Bathon and Maureen Meneghetti owned the latter models and, therefore, do not seek appointment as Class representatives. Plaintiff Shirl Mederlet, who owned a dishwasher with a Skywalker model control board, is afforded the relief offered to NewGen and Raptor owners, but her model is not included in the remainder of the settlement.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

1

Green in Boston, Massachusetts, the parties now submit their proposed Settlement to the Court for its review and approval.

The Settlement provides substantial benefits to purchasers and owners of certain Whirlpool-manufactured dishwashers that utilized four models of ECBs: named Rush, Rushmore, NewGen and Raptor. The Class portion of the settlement (Rush/Rushmore ECB purchasers/owners), is summarized as follows:

- Full reimbursement of repair costs (with a minimum $200 cash payment with inadequate documentary proof of repair costs) for those who had an Overheating Event before the Notice Date and within 12 years of purchase;

- Cash payment of $200-$300 for Class members who replaced, rather than repaired, their dishwasher (amount depends on replacement brand) before the Notice Date and within 12 years of purchase;

- Prequalified Class members will be offered compensation without any need to submit documentary proof;

- A choice of a $100 payment or 30% off rebate for a new KitchenAid- or Whirlpool-brand dishwasher for those who have an Overheating Event at any time within 2 years after the Notice Date;

- In addition to direct mail, email, and publication notice, a sticker will be placed on relevant replacement part packaging notifying consumers and service personnel of the availability of benefits;

- *All* roughly 6 million Class Members – even those who never experienced an Overheating Event, and those who no longer own the dishwasher – will be entitled to 10% rebate off a new Whirlpool-brand dishwasher, or 15% off a new KitchenAid dishwasher, (in addition to any other sales, discounts or rebates available);

- An enhanced 15 % rebate off a new Whirlpool-brand dishwasher, or 20% off a new KitchenAid dishwasher, for any Class member who had a TCO repair[2]; and

- Revision of Whirlpool's service kit pointers and training bulletins to provide important information about the critical safety function of TCOs and to instruct technicians and consumers about the dangers of bypassing TCOs.

By any measure, the benefits of the Settlement are significant. Whirlpool manufactured approximately 6 million Class dishwashers between 2000-2006. Declaration of Gina Intrepido-Bowden Decl., Fax Decl. Exh. V, at ¶¶ 15, 23. Class members who experienced an overheating event within 12 years of purchase are entitled to *full recovery* for repair or a *minimum of $200* if they replaced the dishwasher. Given that the youngest Class dishwasher is now nearly 10 years old, the rebates offered to *all* Class members, and the compensation provided for future Overheating Events for the next two years, are generous. Further, Plaintiffs believe that the settlement's mandate that Whirlpool issue revised training and service kit literature achieves a very important public safety benefit. Moreover, the Settlement releases Class Members' economic loss claims only; claims for injury or damage to property other than the dishwasher are preserved.

Whirlpool will bear the costs of Notice and Administration of the Settlement, which the proposed Settlement Administrator, Kurtzman Carson Consultants, LLC ("KCC") estimates will range from between $1.5 million to $2.0

---

[2] A TCO repair is defined as a "Thermal Cut Off" repair. TCOs are heat-activated fuses intended to trip the circuit in the event that the surface temperature of the control board reaches a certain level, and thus cut power, to prevent the Overheating Event from propagating beyond the control console enclosure.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

million, depending on the claims filing rate and other factors.  Notice will entail: (1) a summary notice mailed and emailed to all Class Members who are identifiable in Defendants' or Plaintiffs' records (including prequalified Class members, who will receive a tailored notice); (2) a summary notice published in national publications and on various online media; and (3) a notice posted on the Settlement website, Plaintiffs' Counsel's websites, and Plaintiff Chambers' websites (www.kitchenaidfire.com and www.whirlpoolsafetydefects.com, hereinafter "Chambers Websites") until the effective date. Further, for two years after the Notice Date, Whirlpool will affix stickers to replacement parts advising that consumers may be entitled to benefits under the Settlement.

The Settlement grants comparable benefits to Non-Class Dishwasher owners (NewGen/Raptor ECBs) that have had, or will have, an Overheating Event:

- Reimbursement of full repair costs (with a minimum $200 cash payment if there is inadequate documentary proof of repair costs) for those who had an Overheating Event before the Notice Date and within 12 years of purchase;

- Cash payment of  $200 to $300 if they replaced their dishwasher;

- Prequalified owners will be offered compensation without any need to submit documentary proof;

- A 30% off rebate off a new KitchenAid- or Whirlpool-brand dishwasher for those who experience an Overheating Event at any time within 2 years after the Notice Date, and those who have an over Overheating Event within 2 years of the notice date and 10 years of the dishwasher purchase have a choice of the 30% rebate or  $100.

Approximately 18 million Non-Class dishwashers were manufactured between 1995 and 2012.  Notice of the benefits for Non-Class Dishwasher owners

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

4

will be mailed and emailed to those owners identified in Whirlpool's, Sears's, CPSC's or Plaintiff Chambers' databases, or who contacted Plaintiffs' counsel and who reported an Overheating Event. Notice of such benefits will also be posted on the Settlement website, Plaintiffs' counsel's websites and the Chambers Websites. Further, for two years after the Notice Date, Whirlpool will affix stickers to replacement parts for Non-Class Dishwashers stating that consumers may be entitled to benefits.

## II.   LITIGATION HISTORY

### A.   Plaintiffs' Factual Allegations and Claims

Plaintiffs, 18 persons from 11 states, owned one or more Whirlpool-manufactured dishwashers branded as Whirlpool, KitchenAid or Kenmore, and had an Overheating Event. ECF 98, ¶¶ 25-147. Plaintiffs allege that their Overheating Events were caused by a design defect that rendered certain high-current connections to the ECBs insufficiently robust. That led to gradual degradation of the electrical pathways, causing resistance heating, leading to overheating to extreme temperatures and ignition of surrounding plastics and wire insulation. *Id.*, ¶¶ 7-8, 50, 164-165. Plaintiffs allege that Defendants failed to disclose, or actively concealed, this defect. *Id.*, ¶¶ 189-191.  Plaintiffs sue on behalf of a class of millions of consumers who have owned such Whirlpool-manufactured dishwashers, whether or not they had an Overheating Event.

## B.   **Procedural History of This Action.**

Suit was filed on November 9, 2011 (Fax Decl. ¶ 7). The Fourth Amended Complaint[3] was filed on May 6, 2013.  (ECF 98).  Defendants filed a partial motion to dismiss each complaint (ECF 25, 55, 73, and 104).  Their latest such motion was filed on June 6, 2013, was fully briefed and is under submission (ECF 123).  Defendants later filed a Motion to Affirm Confidentiality Designations (ECF 149), following Plaintiffs' challenge to confidentiality designations of certain documents.  The hearing on that motion was stayed on March 11, 2015, at the parties' request to engage in final mediation efforts. (ECF 177).

## C.   **Discovery**

Discovery was extensive, and included 3 sets of document requests (over 80 in number) and interrogatories to Whirlpool and Sears; 2 sets of document requests (over 80 in number) and 1 set of interrogatories to Plaintiffs; production of over 350,000 pages of documents by Defendants and third parties (including numerous detailed and lengthy spreadsheets, engineering drawings, and other complex documents); Plaintiffs' experts' inspections of over 40 burned ECBs and numerous damaged dishwashers; depositions of all 18 Plaintiffs; 5 days of depositions of Defendants' 30(b)(6) engineer-designees and employees; 1 non-party deposition; document productions in response to subpoenas served on Whirlpool's component part suppliers; and document productions in response to over 40 subpoenas served

---

[3] Hereinafter "FAC." The FAC contains 25 counts for violations of the Magnuson-Moss Warranty Act, Breach of Express Warranty, breach of Implied Warranty, Tortious Breach of Implied Warranty, violations of the Song-Beverly Act, Strict Products Liability, Strict Products Liability Failure to Warn, Negligent Failure to Warn, Unjust Enrichment/Restitution, Fraudulent Concealment/Nondisclosure, Negligence, Violation of the consumer fraud/consumer protection statutes of the states at issue, and Declaratory Judgment.

on insurance carriers that paid claims to Whirlpool-manufactured dishwasher owners. Further, Plaintiff Chambers analyzed and evaluated over 1,300 fire incident reports posted to his websites. Plaintiffs also submitted three expert reports, including two by highly qualified electrical engineering experts, James Martin, P.E., and Michael Pecht, Ph.D.[4] (Fax Decl. ¶¶ 8, 9).

### D. Settlement Negotiations, Related Proceedings in This Court, and Confirmatory Discovery.

The parties participated in 6 full-day mediation sessions before nationally acclaimed mediator Professor Eric Green – on November 7, 8 and 22, 2013, March 20, 2014, and May 4-5, 2015. The parties exchanged 3 sets of primary mediation briefs, as well as rebuttal briefs. Plaintiffs' counsel, and Whirlpool's head of global product safety and its lead dishwasher division engineer, made presentations at the first mediation session. Lead Plaintiff Chambers attended and participated in all sessions except the one on March 20, 2014 (Fax Decl., ¶ 10).

The mediation was prolonged, as the parties had difficulty finding common ground. Despite tentative agreements reached in the first several sessions, an impasse was reached on March 20, 2014. Negotiations were resumed in May 2015,

---

[4] Dr. Pecht is the founder and Director of the CALCE Electronic Products and Systems Center, and the George Dieter Chair Professor in Mechanical Engineering, at the University of Maryland. He has consulted with over 80 major international electronics companies, written over 30 books and 700 articles on electronic product design, manufacture, testing, reliability and supply chain management, and has served on various National Academy of Science/Engineering Committees. Dr. Pecht has served as an expert witness in these fields numerous times, including several investigations conducted on behalf of U.S. Congressional committees. Mr. Martin has been a practicing electrical engineer for 45 years and has testified over 100 times, roughly half of which cases concerned fire causation in household electrical appliances, including 13 cases concerning fires in Whirlpool-manufactured dishwashers. Their resumes are attached to the Fax Decl. as Exhibits T (Dr. Pecht) and U (Mr. Martin).

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

7

and the parties then reached a settlement agreement in principle, embodied in a term sheet signed on May 5, 2015. Since then, the parties have been negotiating a formal settlement agreement with attachments, including details of Notice and Settlement Administration. Final settlement was reached during the week of September 6-11 2105 (Fax Decl., ¶¶ 11- 14).

## III.   THE SETTLEMENT TERMS

The Settlement (Fax Decl., Exh. A) resolves all claims of Plaintiffs and the Settlement Class against the Defendants.  Its terms are as follows:

### A.   Settlement Class

The "Settlement Class," includes:

all residents in the United States and its territories who either (a) purchased a new Class Dishwasher; (b) acquired a Class Dishwasher as part of the purchase or remodel of a home; or (c) received as a gift, from a donor meeting those requirements, a new Class Dishwasher manufactured between October 2000 and January 2006, not used by the donor or anyone else after the donor purchased the Class Dishwasher and before the donor gave the Class Dishwasher to the claimant.[5]

Settlement, § I (UU) (Definition of "Settlement Class").

"Class Dishwasher" means "all KitchenAid, Kenmore, and Whirlpool brand automatic dishwashers manufactured by Whirlpool between October 2000 and

---

[5] Excluded from the Settlement Class are (a) officers, directors, and employees of Whirlpool, Sears, or their parents or subsidiaries, (b) insurers of Settlement Class Members, (c) subrogees or all entities claiming to be subrogated to the rights of a Class Dishwasher purchaser, a Class Dishwasher owner, or a Settlement Class Member, and (d) issuers or providers of extended warranties or service contracts for Class Dishwashers.

January 2006 that contained either a 'Rushmore' or 'Rush' electronic control board." Settlement, § I (G).[6] The Settlement Class consists of two subclasses: the "Past Overheating Subclass" and the "Future Overheating Subclass." *Id.* at § I (DD) and (S). An "Overheating Event" means "the overheating of the Dishwasher's Electronic Control Board such that the class member or another person observed or experienced smoke, flames, fumes, sparks, or electrical arcing [emanating] from the console area of their Dishwasher." *Id.* at § I (Z). A Past Overheating Event is one that occurred within 12 years of purchase but before Notice to the Class; and a Future Overheating Event is one that has occurred within 10 years of purchase or 2 years after the Notice Date, whichever is later. *Id.*at §§ I (DD) and (S).

**B.    Class Settlement Consideration.**

The settlement is uncapped – Defendants agree to compensate all eligible Settlement Class Members.  Defendants will also pay Class Counsel's attorneys' fees and expenses awarded by the Court; pay all costs of Notice and Settlement Administration; purchase the Chambers Websites; and make payments to the named plaintiffs as awarded by the Court to compensate them for their service and reward them for bringing this litigation. Each form of relief is addressed in turn.

**1.    Prior Overheating Event Claims.**

Defendants will fully compensate Past Overheating Subclass Members for dishwasher repairs costs (parts and labor). Prequalified Class Members – those who can be identified in Whirlpool's, Sears', or the CPSC's databases as having paid some amount for a Qualifying Repair or Qualifying Service Contract – will

---

[6]  A list of the model numbers and serial number ranges of dishwashers containing these ECBs is attached to the Settlement (Fax Decl., Exh. A) as Exhibit 2.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

not be required to submit any documentary evidence unless they dispute the prequalified amount to be paid in satisfaction of their claim. They will receive a tailored notice and will need only to confirm their contact information, check the eligibility boxes, and sign the form.  If Defendants' or the CPSC's records reflect payment for repair but not the amount paid, Prequalified Class Members will receive a minimum of $200, or they may submit documentation supporting a higher amount.  A non-Prequalified Class member must attest on the claim form that he or she had an Overheating Event within 12 years of purchase and provide some record that a Qualifying Repair occurred, (*e.g.*, canceled check, credit card statement, service documents, or identification in Defendants', the CPSC's or Plaintiff Chambers' database). If the claimant provides adequate documentary evidence of the fact of repair, but not the cost, he or she will receive $200.  If a Past Overheating Subclass Member replaced, rather than repaired, his or her Class Dishwasher due to an Overheating Event, they will be eligible for payment of out-of-pocket costs up to $300 if they purchased a Whirlpool-manufactured dishwasher, and up to $200 if they bought a non-Whirlpool dishwasher.

## 2. <u>Future Overheating Events.</u>

Future Overheating Subclass Members may claim either a $100 payment or a 30% rebate off the purchase price of a new Whirlpool or KitchenAid dishwasher. Also, as part of its field safety monitoring processes, Whirlpool may pay an additional sum to buy back or replace the dishwasher.

## 3. <u>Benefits Available to All Settlement Class Members.</u>

In addition to the above relief, all members of the Settlement Class will be offered a cash rebate toward the purchase of a new Whirlpool-manufactured dishwasher (10% off for Whirlpool-brand or Kenmore-brand and 15% off for

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

10

KitchenAid-brand). This rebate is available regardless of whether the Settlement Class Member had an Overheating Event or still owns the dishwasher. Further, the rebate will be offered to all Class Members on top of any other rebates, sales, promotions, or other discounts to which they may be entitled. An additional rebate (15% off for Whirlpool-brand or Kenmore-brand dishwashers and 20% off for KitchenAid-brand dishwashers) will be offered to Class Members shown in Defendants' records as having had service on their TCO. All Class dishwashers are now 9-15 years old, and thus, the value of these rebates is substantial as many Class Members have already received the benefit of the expected lifespan of their dishwashers.

## C.    **Compensation for Non-Class Dishwashers.**

In addition to the compensation available to owners of Class Dishwashers, the Settlement affords similar compensation to owners of Non-Class Dishwashers that have had or will have an Overheating Event.  The primary difference between the relief available for the two sets of consumers is that Non-Class Dishwasher owners who have not experienced an Overheating Event will not be offered a rebate towards a new machine.  Further, there is no Non-Class-wide release, but only individual releases for those Non-Class Dishwasher owners who participate.

Non-Class Dishwasher owners who had an Overheating Event before the Notice Date and within 12 years of purchase can claim full repair costs, or $200 absent adequate documentation of the amount paid.[7]  If they replaced their dishwasher, they may claim $300 if they did so with a Whirlpool-manufactured

---

[7] Like the Settlement Class, Non-Class Dishwasher owners who are identified in Whirlpool's, Sears', the CPSC's or Plaintiff Chambers' database as having paid for repairs will be prequalified; get a tailored postcard notice; and need only fill out a

dishwasher, and $200 otherwise.   Prequalified Non-Class Dishwasher owners will not be required to submit any documentary evidence unless they dispute the prequalified amount to be paid in satisfaction of their claim. They will receive a tailored notice and will need only to confirm their contact information, check the eligibility boxes, and sign the form.  Non-Class Dishwasher owners who have an Overheating Event within 2 years after the Notice Date can get a 30% rebate off the purchase price of a new Whirlpool, Kenmore or KitchenAid-brand dishwasher; and, if also within 10 years of the purchase of the dishwasher, may elect to receive a $100 cash payment instead. To obtain payment, Non-Class Dishwasher owners shall sign a 1-page release of their claims against Whirlpool, Sears, and all other entities in the chain of manufacture or distribution. The Class Settlement does not release the claims of NewGen/Raptor owners generally. Settlement §§IV.D.1-5.

### D.    **Changes to Service Instructions and Warning Labels**

Discovery disclosed that service personnel and homeowners occasionally remove or bypass TCOs (a safety shut-off device) on the ECBs of Class and Non-Class Dishwashers. Removing the TCO does not trigger overheating, but it can increase the likelihood that an Overheating Event will not be contained within the dishwasher control panel housing. Defendants contended that in nearly all instances in which a serious fire in a subject dishwasher was attributed to an Overheating Event, there was evidence that the TCO had been removed and/or bypassed. Accordingly, the Settlement provides that Whirlpool will revise its relevant service kit pointers and training bulletins for all models to provide

simple form to confirm their data and eligibility.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

12

important information about the critical safety function of TCOs and alert technicians and consumers about the dangers of bypassing TCOs.

     **E.**   **Claims Process**

     As discussed above, prequalified Class and Non-Class Dishwasher owners will receive a tailored notice, and need only confirm their contact information and eligibility, and manually or electronically sign the form, to receive payment. Non-Prequalified owners who had, or will have, Overheating Events, must submit claims attesting that they had an Overheating Event, and provide documentation of repair or replacement.  For past Overheating Events, they must submit a claim (or, for those prequalified, confirm their claim) within 120 days after the Notice Date. Settlement §IV.B.2.h. For Future Overheating events, claims must be made within 120 days of the Overheating Event.  *Id.* at §IV.C.5. Class Members who want the 10-20% rebate towards a new dishwasher must register for the rebate program within 120 days of the Notice date, and buy a new dishwasher and submit the completed rebate form within 120 days after receiving the rebate form from the Settlement Administrator.  This gives Class Members more than 8 months to make an eligible purchase.  While the claim form will require the model and serial number of the dishwasher, such information will be prepopulated in the online claim form if the model and serial numbers are reflected in Whirlpools' or Sears' warranty registration databases, which their counsel advises are estimated to include approximately 74% of the Class.

     Whirlpool has chosen the Settlement Administrator, KCC, subject to Plaintiffs' approval.  The Settlement Administrator will create a Settlement Administration Website that will include all necessary information for Settlement Class and Non-Class Dishwasher owners, including the Claim Form, FAQ, the

Opt-Out Form, deadline information, and a link to Whirlpool's dishwasher safety website.  The Settlement Administrator will accept online and hard-copy Claim Forms, supporting documents and Opt-Out Forms.  Settlement §§VI.F-H.

**F.     Proposed Class Notice.**

**1.     Postcard and Email Notice.**

All Class Members (and Non-Class Dishwasher owners who reported an Overheating Event) identifiable from records available to Defendants, including records maintained by the CPSC, or who have self-identified to either Class Counsel or Plaintiff Chambers through the Chambers Websites, will be sent a postcard and/or email notice, depending upon the contact information available. At least 67.3% of the Class will receive notice in this manner  Intrepido-Bowden Decl., Exh. V. to Fax Decl., at ¶ 23).  For Class Members, these short form notices, Settlement Agreement, Exh. A to Fax Decl., at Exhs. 7, 9, 10 and 11 thereto, provide the requisite summary information regarding the class action and its settlement, and refer the class member to the settlement website. For Non-Class Dishwasher owners, the notice provides the benefits available to them.

**2.     Packaging Notice**

For two years following the Notice Date, Whirlpool will affix stickers to relevant replacement part packaging for Class and non-Class Dishwashers stating that owners who experienced Overheating Events may be entitled to benefits available under the Settlement and that the Service Technician should contact Whirlpool with the pertinent consumer identification information.  Whirlpool will then contact the consumer directly.

**3.     Publication Notice**

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

14

Notice will also be published in People Magazine and TV Guide, and also through social media banner ads, including 11million Facebook impressions and 3 million Run of Network (RON) Internet websites.  Intrepido-Bowden Decl., Exh. V to Fax Decl., at ¶ 25Although the Publication Notice will be directed to Class Members, it will also guide Non-Class Dishwasher owners to the Settlement Website, as someone with a past Overheating Event is unlikely to know whether he or she had a Rush/Rushmore or NewGen/Raptor ECB.

### 4.    Website Notice

A Settlement website will be launched. Class members will be able to file Settlement claims on the website and process rebate claims online.  The forms of notice will be substantially similar to the draft Notices attached as Exhibit 3 to the Settlement Agreement, Exh. A to the Fax Decl.. The Notices provide clear information regarding the Settlement terms, the Fairness Hearing, Class members' rights to object or opt out of the Settlement, and the request for attorneys' fees and costs. (*Id*.) Notice of the Settlement's benefits and a link to the Settlement website will be posted on the Chambers Websites until the effective date, and may be posted on Class counsel's websites throughout the benefits period.

### G.    Other Settlement Benefits

### 1.    Purchase of Plaintiff Steve Chambers' Websites

The Settlement provides that Defendants will purchase the Chambers Websites from Plaintiff Chambers for $100,000.  That figure was negotiated at arm's length by Plaintiff Chambers and Whirlpool based upon their respective valuations of the websites using metrics commonly employed to value web

domains, including the volume of traffic generated by the sites[8], and the cost and significant time invested by Mr. Chambers in building and maintaining them. He will relinquish control of these websites, which will be removed after the Effective Date, and thereafter, inquiries to either web address will be redirected to Whirlpool's webpage regarding dishwasher safety.

## 2. Attorneys' Fees and Costs; Service Awards.

Defendants have agreed to pay Class Counsel's attorney's fees and reimburse their expenses awarded by the Court.[9] The parties will attempt to negotiate for a number to submit jointly to the Court for approval. If unable to reach agreement, counsel will submit their dispute to the Court.[10] In that event, Defendants may oppose the fee and/or expense request.[11] This procedure contrasts sharply with the typical case in which Class Counsel's fees and expenses are deducted from the settlement fund, thereby reducing the Settlement Class's recovery. *See* Settlement, § IX. This benefits the members of the Class greatly – when fees are awarded from the recovery, it is typically reduced by 25% or more.

---

[8] The Chambers Websites have had approximately 160,000 unique visitors and, as of this writing, kitchenaidfire.com is the number one result returned by Google searches for the terms "dishwasher fire," "Whirlpool fire," and "Kitchenaid fire."

[9] Counsel negotiated the substantive elements of the settlement before addressing attorneys' fees and expenses.

[10] Before the deadline for objections or requests for exclusion by class members, either the parties will advise the Court of their agreed-upon figures for payment of attorneys' fees and costs, or Plaintiffs' Counsel will submit their motion for an award of attorneys' fees, costs, and class representative recognition payments.

[11] The Settlement provides that Class Counsel may seek an award of fees based on their work in prosecuting the lawsuit and the benefits created for both Class and Non-Class Dishwasher owners. Settlement at 18-19.

*See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002) (affirming "benchmark" of awarding attorneys' fees in the amount of 25 percent of a common fund). Subject to Court approval, Defendants have also agreed to a $4,000 payment to each named plaintiff in recognition of their efforts in pursuing the litigation on behalf of the millions of affected consumers throughout the country. *See* Settlement, § V(C)(1).

### H.    Settlement Release.

Plaintiffs agree to an appropriately tailored release of Defendants from liability. *See* Settlement, § X. The release does not release claims for personal injury or for damage to property other than the Class Dishwasher itself. *Id.*

## IV.    THIS SETTLEMENT SATISFIES THE LEGAL PREREQUISITES FOR PRELIMINARY APPROVAL

### A.    Summary of Argument.

Rule 23, Fed.R.Civ.P., mandates a three-step procedure for approval of class action settlements: (1) Certification of a settlement class and preliminary approval of the proposed settlement after submission of a motion for preliminary approval; (2) Dissemination of notice of the proposed settlement to the affected class members; and (3) A fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented. Federal Judicial Center, *Manual for Complex Litigation* § 21.63, *et seq*. (4th ed. 2004) ("*Manual*"). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as guardian of class interests. *See* 4 *Newberg on Class Actions*, § 11:22, *et seq*. (4th ed. 2002) ("*Newberg*"). The first step is for the Court to "peruse the proposed compromise to ratify both the

propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.2d 938, 952 (9th Cir. 2003). By their Joint Motion, the parties ask the Court to take that step and grant preliminary approval to the Settlement.

The Settlement followed intense, protracted negotiations, including 6 full-day negotiating sessions facilitated by Professor Green over the course of almost two years. Professor Green and all counsel endorse the final agreement, which is well within the range of reasonableness given the value to the Settlement Class and the risks of ongoing litigation, including the difficulty in obtaining certification of an 11-state consumer class. *See* Green Decl., Exh. W to Fax Decl., *passim*. The Settlement provides substantial benefits to the owners of Class Dishwashers and Non-Class Dishwashers. Finally, it achieves a public safety benefit by providing service bulletin warnings about the danger of bypassing TCOs, and incentivizing owners of Class dishwashers to replace them.

## B.   **Preliminary Approval Is Appropriate.**

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution"—particularly in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ; *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ("[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In the exercise of its discretion, the Court should give "proper deference to the private consensual decision of the parties . . . . [T]he court's intrusion upon what is

otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. at 1027; *see* Fed. R. Civ. P. 23(e).

At the preliminary approval stage, the Court need only find that the proposed settlement is within the "range of reasonableness," such that dissemination of notice to the class and the scheduling of a fairness hearing are worthwhile and appropriate. "[P]rior decisions from this district have looked to whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.' *See In re High-Tech Employee Antitrust Litig*., 2014 U.S. Dist. LEXIS 110064, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014)." *Vasquez v. USM Inc*., 2015 U.S. Dist. LEXIS 49123 at *6 (N.D. Cal. April 13, 2015). "The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the 'range of reasonableness.'" *Miller v. CEVA Logistics USA, Inc*., 2015 U.S. Dist. LEXIS 20171 at *12 (E.D. Cal. February 19, 2015 )  *See* 4 *Newberg* § 11:25; *see also Ross v. Trex Co., Inc.*, No. C 09–670, 2009 U.S. Dist. LEXIS 69633, at *9 (N.D.Cal. July 30, 2009).

### 1. The Settlement Is the Product of Arms' Length Negotiations and Is Informed by the Litigation and by Factual Investigations.

Where a settlement is the product of arms' length negotiations conducted by capable and experienced counsel, the Court begins its analysis with a presumption that it is fair and reasonable. *See* 4 *Newberg* § 11:41; *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 450

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

19

(C.D. Cal. 2014) ("the court concludes that the settlement is a product of informed,
arm's-length negotiations, and is therefore entitled to a presumption of fairness.");
*In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10,
2005) ("A presumption of correctness is said to 'attach to a class settlement
reached in arm's-length negotiations between experienced capable counsel after
meaningful discovery.'") (quoting *Manual for Complex Litigation (Third)* § 30.42
(1995)); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523,
528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine
arms-length negotiation is presumed fair"). As noted above, the settlement
negotiations here were conducted at arm's-length, with one of the nations' most
highly-regarded mediators, over the course of almost two years. *See* Green Decl.,
Exh. W to Fax Decl., *passim*.  The Settlement is further informed by Plaintiffs'
thorough investigation. Prior to filing the complaint, Plaintiff Chambers received
information from hundreds of persons who had experienced Overheating Events.
Plaintiffs' counsel investigated, conducting interviews with dishwasher owners and
having their dishwashers and electronic control panels examined. Plaintiffs'
counsel retained dishwasher design, electrical engineering, and economics experts
to investigate the facts further and assess the viability of the claims. Settlement
negotiations were also informed by massive discovery as discussed above.

Plaintiffs' counsel thus had a sound basis for measuring the terms of the
Settlement against the risks of continued litigation. Although class certification
issues have not yet been litigated, this is "an early resolution [that] demonstrate[s]
that the parties and their counsel are well prepared and well aware of the strength
and weaknesses of their positions and of the interests to be served by an amicable

end to the case." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, MDL No. 2147, 2011 WL 2204584 (N.D. Ill. June 2, 2011) (citations omitted).

> ### 2.     This Settlement Is Within the Range of Reasonableness Given the Benefits Conferred and the Risks of Litigation.

The Settlement provides fair and adequate benefits to the Settlement Class, particularly when viewed in light of the litigation risks.  Settlement Class members who paid for Qualifying Repairs are entitled to full recovery of the amount they paid for parts and labor, and those who replaced their Class Dishwashers are eligible to receive either $200 or $300 cash depending upon whether they bought a Whirlpool or non-Whirlpool dishwasher.  Class members who have a Future Overheating Event are eligible for payment of $100 or a 30% rebate on the purchase of a new Whirlpool or KitchenAid dishwasher.  All members of the Class, regardless of whether they have had failures or paid for repairs, and regardless of whether they still own the dishwasher, are eligible for a rebate of either 10% or 15% of the purchase price of a new Whirlpool dishwasher.  The Settlement thus confers a more than adequate percentage of recovery upon the Settlement Class members.  The "claims of some class members might prove valuable if successful at trial, but that does not cast doubt on the district court's conclusion as to the fairness and adequacy of the overall settlement amount to the class as a *whole*." *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir., 2012). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Dunleavy v. Nederlander*, 213 F.3d 454, 459 (9th Cir., 2000)( citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall

fairness...." *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1026 (9th Cir.1998) (citations omitted).

Further, the Settlement promotes public safety by requiring new warnings to service personnel about the dangers of removing or bypassing TCOs, and by creating an incentive for current owners to replace their Class Dishwashers. This broader safety benefit, along with the safety warnings to be distributed to service personnel, supply a further reason for preliminary approval.

The Settlement is even more compelling given the substantial litigation risks. Nationwide class certification under California law or the laws of multiple states would be an uphill battle. *See Mazza v. American Honda Motor Co.*, 666 F.3d 581, 590-94 (9th Cir. 2012); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) (noting that "[w]hile numerous courts have talked-the-talk that grouping of multiple state laws is lawful and possible, very few courts have walked the grouping walk."). The potentially individualized issue of Class members' reliance upon Defendants' representations or omissions would raise an additional hurdle to certification of the fraud based claims. *See McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222-26 (2d Cir. 2008).

Defendants would mount challenges to the express warranty claims as well. They would argue that Whirlpool's limited warranty covering "defects in materials and workmanship" does not extend to the alleged design defect. They would further argue that the warranty claims lack merit because Plaintiffs allegedly did not satisfy all conditions precedent to coverage. In addition, Defendants would attack the warranty claims on the grounds that the defect did not manifest and/or was not substantially certain to manifest in many if not most of the Class Dishwashers owned by Plaintiffs and the Settlement Class. The Class Dishwashers

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

were no longer manufactured after January 2006 and, therefore, Defendants would argue that any warranties had expired and that most Class Members received the full value of the useful life of their dishwashers.

Plaintiffs believe that their case is strong, but must acknowledge these significant hurdles.  Even assuming they were overcome and a class certification order were issued and upheld on interlocutory appeal, defeating summary judgment and winning the case at trial, and sustaining the final judgment on appeal, could be daunting. *Cf. Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (rejecting the argument "that the Class should get more" because of the "very real potential that the Class could come away from a long expensive trial with nothing."). The risks of continued litigation are formidable.  Weighed against them, and coupled with the delays associated with protracted litigation, the Settlement falls within the range of reasonableness.

### 3.   Plaintiffs' Counsel, Who Are Highly Experienced Class Action Attorneys, Support the Settlement.

The judgment of competent counsel regarding the Settlement should be given significant weight.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (" 'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.");*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). Plaintiffs' counsel are experienced in litigating and settling consumer class actions and other complex matters. Fax Decl. at ¶ 18.  They have

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

intensively investigated and litigated the factual and legal issues raised in this action. *Id.*, at ¶ 16-18.

## V. THE SETTLEMENT CLASS SHOULD BE CERTIFIED AND CLASS COUNSEL APPOINTED

Provisional certification of a settlement class is necessary for preliminary approval. The Court need not consider the manageability of a potential trial involving multiple states' laws because the Settlement would obviate the need for a trial. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon*, 150 F.3d at 1021-23. The Court should certify the Settlement Class because the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) have been met.

First, the members of the Settlement Class are so numerous that joinder of all members is impractical. Whirlpool advises that approximately 6 million Class Dishwashers were manufactured between 2000 and 2006.[12]  Second, this litigation involves common class-wide issues that, absent the Settlement, would drive the resolution of Plaintiffs' claims. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Numerous issues are common to Plaintiffs and the Settlement Class, including whether the Class Dishwashers are materially defective due to a design flaw; whether Defendants knew or should have known that the Class Dishwashers were allegedly defective; whether the Class Dishwashers are not of merchantable quality; whether the Class Dishwashers will fail before the end of their reasonable expected life; whether the alleged design flaw in the Class Dishwashers creates an unreasonable safety risk to owners and users; whether the Class Dishwashers create an unreasonable safety risk to owners and users; whether

---

[12] Approximately 18 million New Gen and Raptor dishwashers were manufactured and sold between 1995 and 2012.

Defendants engaged in unfair, unlawful, or fraudulent practices in violation of the UCL and similar laws; whether Defendants engaged in false advertising when they represented to consumers that Class Dishwashers were of a certain standard, quality, and grade when allegedly they were not; whether Defendants had a duty to disclose that the Class Dishwashers could smoke, shoot flames, arc and cause property damage; and whether Defendants' alleged false representations and concealment of the defect in the Class Dishwashers were made with intent to deceive Plaintiffs and the Settlement Class. (FAC at ¶ 200.)

Third, the claims of the representative Plaintiffs with Rush/Rushmore circuit boards are typical of the claims of the Settlement Class: All owned Class Dishwashers. Thus, the facts surrounding Defendants' alleged misconduct are common to Plaintiffs and the Settlement Class members. Fourth, the named Plaintiffs with Class Dishwashers are adequate Class representatives whose interests in this litigation are coterminous with the interests of the Settlement Class. All of the Plaintiffs produced discovery, were deposed, oversaw the litigation, and approved the settlement. Plaintiff Chambers invested significant time and effort in creating the Chambers Websites, logging and categorizing consumer complaints, corresponding with the Class Members and the CPSC, assisting counsel, and participating in mediations, to name just some of his extensive efforts. Those Plaintiffs with Class Dishwashers should therefore be appointed Class representatives for purposes of settlement. There is no conflict present: Plaintiffs and the Settlement Class members share the same interest in maximizing their recovery and obtaining relief with dispatch.

Fifth, common issues predominate, and the proposed nationwide Settlement is a superior way to resolve this nationwide controversy.  As noted, because the

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

Settlement avoids a trial, the manageability factor in Fed. R. Civ. P. 23(b)(3)(D) plays no role in the predominance analysis. *Amchem*, 521 U.S. at 620. As for the claims of fraudulent omissions and other breaches – they focus on Defendants' conduct. Defendants either had an obligation to disclose their knowledge of the problems with the Class Dishwashers or they did not.  Defendants did not owe this obligation to some Class members but not others.  Similarly, it is implausible that the effect of Defendants' alleged misstatements and omissions differed between purchasers. *See, e.g.*, Advisory Committee Notes to Rule 23(b)(3) (1966 Amendments) (noting that "fraud perpetrated on numerous persons by the use of similar misrepresentations" can be "an appealing situation for a class action").

Moreover, the base measure of damages or restitution for the economic loss claims is the same whether they are for common law fraud, statutory fraud, or breach of warranty. It consists of the difference between the value Defendants promised and the value received by Plaintiffs and the Settlement Class. *See, e.g., In re Vioxx Class Cases*, 180 Cal.App.4th 116, 131 (Cal. Ct. App. 2009) (in case premised on the UCL and False Advertising Law, "[t]he difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution") (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 713 (Cal. 2000); Cal. Comm. Code § 2714 ("The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . . ."). Thus the economic loss claims raise no uncommon issues.[13]

_____

[13] Courts have often found that class actions seeking to recover the difference between the value of a product (a) as represented and (b) as delivered present a common question amenable to class-wide resolution. In *Montanez v. Gerber*

Pursuant to Rule 23(g), Plaintiffs' counsel respectfully request that the Court appoint as Class Counsel the firms whose attorneys negotiated this Settlement, and also appoint as Co-Lead Counsel the firms Rifkin, Weiner, Livingston Levitan & Silver LLC and Chimicles & Tikellis LLP.[14] These attorneys are capable in the fields of complex litigation and class actions; their diligence in securing this Settlement speaks for itself; and their appointment will facilitate a fair and efficient administration of the Settlement.

## VI.    THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice of a proposed settlement must inform class

---

*Childrenswear, LLC*, 2011 U.S. Dist. LEXIS 150942, 2011 WL 6757875 (C.D. Cal. 2011)—which involved a litigation rather than a settlement class—the defendant contended that the class possessed no common damage claims because some of the children's garments it sold had not actually (or at least not yet) harmed the children. The court held that all class members suffered a common injury because they purchased a product less valuable than the defendant represented it to be: "A child's garment that is disclosed to have potentially problematic levels of skin irritants is surely worth less, a priori, than a garment without skin irritants. Indeed, a jury would likely find that no reasonable parents would purchase a garment that posed any credible risk to their child's health or safety." *Id*. at *2.

[14] Proposed Class Counsel are Charles Fax of the law firm Rifkin, Weiner, Livingston Levitan & Silver LLC; Robert Kitchenoff of the law firm Weinstein Kitchenoff & Asher LLC; Timothy Mathews and Steven Schwartz of the law firm Chimicles & Tikellis LLP; Kristin Law Sagafi of the law firm Lieff Cabraser Heimann & Bernstein, LLP; and Jeff Cohon of the law firm Cohon & Pollak, LLP *See* Settlement, § I (F) (defining "Class Counsel").  Proposed Co-Lead Counsel are Charles Fax of Rifkin, Weiner, Livingston, Levitan & Silver, and Timothy Mathews and Steven Schwartz of Chimicles & Tikellis.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

27

members (1) of the nature of the pending litigation, (2) of the general terms of the proposed settlement, (3) that more complete information is available on the docket, and (4) that any class member may appear and be heard at the fairness hearing. *See Newberg* § 8:32. The notice also must indicate that the court will exclude from the class any member who requests exclusion, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel. *See* Fed. R. Civ. P. 23(c)(2)(B).

The form of notice is "adequate if it may be understood by the average class member." *Newberg* § 11:53. The notice must be "the best . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617. Publication notice is acceptable where the identity of specific class members is not reasonably available. *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078,1080 (N.D. Cal. 2007) (citing *Manual* § 21.311).

Here, all Class Members whose mailing or email addresses are in Defendants' records will be mailed and/or emailed a summary notice. A summary notice will be published in People Magazine and TV Guide and online, on Facebook and Run of Network (RON). Notice will be posted on the Settlement website, Plaintiff's Counsel's websites, and the Chambers Websites until the effective date. For two years after the Notice Date, Whirlpool will affix stickers to relevant replacement part packaging for Class and Non-Class Dishwashers stating that consumers may be entitled to benefits under the Settlement.

The proposed Class Notice, consisting of a summary notice and long form notice, comply with due process and Rule 23. The Notice provides the definition of the Settlement Class, describes the nature of the Settlement and its terms (including

the Plan of Allocation), explains the procedure for making comments and objections, and provides contact information so that any Settlement Class member may receive answers to questions regarding the Settlement. The Notice also provides the date, time, and place of the final approval hearing, and informs Settlement Class members that they may enter an appearance through counsel. The Notice further informs Settlement Class members how to exercise their rights, including how to comment on or object to the Settlement, and that the judgment will be binding upon them if they do not opt out. Finally, the Notice informs the Settlement Class of the request for attorneys' fees and costs and incentive awards. The publication component of the Notice Program has been designed to reach a high percentage of the Settlement Class in a cost-effective manner. *See* Intrepido-Bowden Decl., Exh. V to Fax Decl., at ¶¶ 22-31  Notice of the proposed Settlement will reach at least 76.4% of likely Class Members on average 1.3 times each. *Id.*, at ¶ 28.Class members will have the convenience of submitting claims directly on the Settlement website, www.DishwasherSettlement.com, where they will also be able to review pertinent Settlement documents.

## VII.   PLAINTIFFS' COUNSEL WILL APPLY SEPARATELY FOR ATTORNEYS' FEES AND COSTS AND INCENTIVE AWARDS

Plaintiffs' counsel will apply for an award of attorneys' fees and for reimbursement of reasonable litigation costs. *See* Settlement, § IX.  Counsel will seek no more than $19 million in fees, in a contested proceeding – while Whirlpool acknowledges counsel's entitlement to fees, it will contest the amount.  Any fees and costs awarded will not reduce the settlement amounts for the Class, but will be paid separately by Whirlpool.  Plaintiffs' counsel will also apply for a $4,000 payment to each Plaintiff in recognition of their service benefiting the Settlement

Class and the risks they took in prosecuting the underlying actions. *See* Settlement, § VIII; *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (noting that service or incentive "[a]wards are generally sought after a settlement or verdict has been achieved," and "are intended to compensate class representatives for work done on behalf of the class . . . ."). Further, as discussed in the Settlement, § V (C), and for the reasons explained therein, Whirlpool will purchase the Chambers Websites for $100,000.

## VIII. THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the approval process is a Fairness Hearing. Plaintiffs respectfully request that the Court set a schedule in conformity with the times set forth at § VII of the Settlement Agreement (Exh. A to the Fax Decl.).

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Joint Motion of All Parties for Preliminary Approval of Class Action Settlement.  A proposed Order granting the requested relief is submitted herewith for the Court's convenience.

Respectfully submitted,

Dated: September 11, 2015       RIFKIN, WEINER, LIVINGSTON,
                                LEVITAN & SILVER, LLC

                                By: /s/ Charles S. Fax

                                Charles S. Fax (*pro hac vice*)
                                *cfax@rwlls.com*
                                Liesel Schopler (*pro hac vice*)
                                *lschopler@rwlls.com*

**RIFKIN, WEINER, LIVINGSTON, LEVITAN & SILVER LLC**
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150

Steven A. Schwartz (*pro hac vice*)
*sas@chimicles.com*
Timothy N. Mathews (*pro hac vice*)
*tnm@chimicles.com*
**CHIMICLES & TIKELLIS LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-363

Jeffrey M. Cohon (CSBN 131431)
*jcohon@cohonpollak.com*
Howard Pollak (CSBN 147077)
*hpollak@cohonpollak.com*
**COHON & POLLAK, LLP**
10250 Constellation Boulevard, Suite 2320
Los Angeles, California  90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610

Nicole Sugnet (CSBN 246255)
*nsugnet@lchb.com*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

31

David H. Weinstein (CSBN 43167)
*weinstein@wka-law.com*
Robert Kitchenoff (*pro hac vice*)
*kitchenoff@wka-law.com*
**WEINSTEIN KITCHENOFF &
ASHER LLC**
100 South Broad Street, Suite 705
Philadelphia, Pennsylvania  19110-1061
Telephone: (215) 545-7200
Telecopier: (215) 545-6535

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

32

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on September 11, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Charles S. Fax*
Charles S. Fax

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION OF ALL PARTIES FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:11-CV-01733-FMO-AN

33