STEVE A. MILLER (CA Bar No. 171815)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

JOHN C. KRESS (#53396MO)
The Kress Law Firm, LLC
P.O. Box 6525
St. Louis, MO  63125
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

JONATHAN E. FORTMAN (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 Saint Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax:  (314) 524-1519
Email:  jef@fortmanlaw.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEVE CHAMBERS, et al., | ) | Case No: 8:11-cv-01733-FMO(ANx) |
|    Plaintiffs, | ) | |
| | ) | |
|      vs. | ) | **KELLY KRESS' OBJECTIONS TO** |
| | ) | **CLASS ACTION SETTLEMENT AND** |
| | ) | **ATTORNEYS' FEES** |
| WHIRLPOOL CORPORATION, et al, | ) | |
| | ) | The Honorable Fernando M. Olguin |
|    Defendants. | ) | |
| | ) | Date: August 25, 2016 |
| | ) | Time: 10:00 a.m |
| | ) |      Courtroom: 22 |

COMES NOW, Objector Kelly Kress, a resident of St. Louis, Missouri, and owner of a

Kenmore Dishwasher during the class period,, Model Number 665.17053400, and Serial Number

FR3901467, Post Card Claim #: WCH-1204529001, and having filed her claim on May 24,

2016, objects to the proposed class action settlement.[1] Attached hereto, and incorporated by reference herein, are the copy of notice received by Mrs. Kress and the proof of claims.  Mrs. Kress also provides her attached signature attesting to her ownership and purchase of such product. (EXHIBIT A, attached hereto and incorporated by reference herein) and set forth the following:

**Introduction:**

This is not a settlement.  To the contrary, it's an unsophisticated marketing ploy utilized by the Defendants in this case to rebuild the brand name loyalty for their dishwasher products that for years have literally caught fire and understandably undermined consumer confidence in their products. To rebuild this brand image, the Defendants now offer class members a discount between 10% and 20% if they purchase a new dishwasher-a cash rebate.

This is disguised as "relief" for the majority of class members.  Some class members will receive cash payments- if they can prove their dishwasher had an "overheating event". Most wont' see a dime.  And the person that created the awareness, or the lightning rod for all Defendant's problems, is the named plaintiff Mr. Steve Chambers.  He created some websites that tracked the complaints against Defendants, and informed the consumer about the risk of the dishwasher having the capacity to set your china on fire.

Not surprisingly, it's only Mr. Chambers and class counsel getting paid on this case.  Mr. Chambers rakes in $100,000 for the privilege of allowing Defendants to turn off his websites and Class Counsel makes off with $15 Million from Defendants for allowing them to initiate their new advertising and customer loyalty program. Conflicts are abundant.  Money is going to change hands.  But very little of that cash will reach the consumer's pocket.

---

1   Objector withholds her telephone number and address pursuant to this Court's redaction Rules, and offers to provide such information after an appropriate order is entered by this Court.

**#1- The Settlement is Unfair to the class members because the parties have conveniently arranged for the Defendant to purchase a website owned by Steve Chambers who is also a named plaintiff that collects "safety research data" and there is a conflict of interest between the named plaintiffs and the class members they purport to represent who receive substantial cash payments while most class members receive nothing.**

According to the FAQ's page, "As part of the Settlement, Whirlpool has agreed to purchase two websites owned by Plaintiff Steve Chambers for the sum of $100,000. This purchase payment will be made separately by Whirlpool and will not reduce the amount of benefits available to the Settlement Class." (FAQ's- par $24- "How will these lawyers be paid?"). The parties strain credibility by claiming that the purchase is "separately" made and does not reduce benefits to the class. However, that claim may be true because the class members get nothing but cash incentives for purchasing new dishwashers- not benefits to class members that do not require continued business with the Defendants. It is unequivocal that payment to Plaintiff Steve Chambers of $100,000 is a "part of the settlement."

Without payment of such amount to Plaintiff Chambers, it is understood that settlement would never occur. Paying Steve Chambers has created a conflict of interest between Mr. Chambers and the class of persons he purports to represent, where he has abandoned the class interests by placing his need to receive $100,000 over the needs of the class.

Many unanswered questions remain. For example, why is it that Defendant wants to purchase these two (2) websites? When were the websites first offered for sale? Or did the Defendant solicit Mr. Chambers during the course of the litigation and offer to pay him $100,00 for the websites? Was the purpose of the websites to conduct informal discovery of the claims asserted against the Defendant? According to the Settlement Agreement, it appears that the Defendants are offering to pay Mr. Chambers to disassemble, or shut down the websites which

are geared to generating negative attention directed toward Defendant.  In essence, Mr.

Chamber's is being paid separately by Defendants to "go away".

How important is this sale of the website by Mr. Chambers to the parties to settle this

action?  It's a "material term of this Agreement" (Stlmt Agrmt, p. 35, par C1).  Indeed, the

purpose of the sale is to shut down the website, as

> No later than five business days after the Effective Date, Mr.
> Chambers shall remove form any other websites or Internet pages
> that he controls or has the ability to modify (such as his
> Facebook.com pages) any and all information or material that is
> derogatory toward Whirlpool or Dishwashers or other appliances
> that Whirlpool manufactures.

(Stlmt Agrmt, p. 36, par. C1).  Here, the named plaintiff even agrees "not to create, control or

contribute to any other existing or new websites (or "gripe sites") that criticizes Whirlpool" *Id.*

Other than the other named plaintiffs in this case who each are slated to receive $4,000.00 each,

it is only Mr. Chambers who appears to be successful with this class action lawsuit-forcing

Defendant to pay to silence Mr. Chambers.  Meanwhile, the class members get nothing more

than a discount toward a future dishwasher purchase.  Clever advertising disguised as "relief" to

the class.

The website at www.whirlpoolsafetydefects.com  actively collects, and solicits data from

consumers concerning the issues addressed in this litigation.  And if purchase of this website is

so necessary, how is it that the sites were valued at $100,000? The parties direct this Court to to a

website to review methodology, but continue to fail to substantiate how a cool $100,000 was

agreed upon as the purchase price.  According to Mr. Chambers, his sites were worth over

$400,000 (Memo Support of Attny Fees, doc #5369, p. 59, lines 10-11).   Who determined the

values for the website?  It does not appear to be an independent 3rd party.  Why $100,000?  It

does appear that Mr. Chambers has spent a great deal of effort and energy to galvanize support

and awareness of the defective products.  However, perhaps his role should have been relegated to that of a consultant instead of a named plaintiff who appears to have a conflict of interest with the class he purports to represent.

The parties fail to provide these answers, instead claiming that the figure "was negotiated at arm's length" by Mr. Chambers, and was "based upon their respective valuations of the websites using metrics commonly employed to value web domains" (P's Memo in Support of Preliminary Approval, Doc # 3769, p. 22-23). Did Mr. Chambers negotiate his own deal, or was it through class counsel?  Notably, it is not revealed to this Court why it was necessary for the Defendant to purchase these websites, nor was the data supporting such purchase price submitted to the Court for its review.  Such lack of candor strengthens the conclusion that Mr. Chambers exchanged the interests of the class for a payday of $100,000, ignoring the disappointing fact that the class members only receive a discount on a future dishwasher purchase.

The website at www.whirlpoolsafetydefects.com has a disclaimer that asserts that the "website content is the opinion of Steve Chambers and Lynn Van der Veer. The type of defects described above have been experienced by us in our kitchen." Does Ms. Van der Veer live with Mr. Chambers?  The defects were in "our kitchen".  How much does Ms. Van der Veer stand to make off this transaction with the Defendant for $100,000? Indeed, are any of the other named plaintiffs slated to realize benefits from this "transaction" with Defendant?  This Court should require that the parties produce contract, or agreement for the sale and transfer of the two websites, along with any other attendant documentation concerning appraisals and value.

The parties lack of transparency concerning the sale and purchase of websites alone is sufficient justification to deny the settlement. The parties could not be bothered to inform this Court of what the exact websites were that are the subject matter of the transactions.  This writer

could only locate the website at www.whirlpoolsafetydefects.com.  Strangely enough, the parties claim that "There is no conflict present: Plaintiffs and the Settlement Class members share the same interest in maximizing their recovery and obtaining relief with dispatch." (Doc # 3779, p. 32, lines 22-23). Same interest?  The named plaintiffs get cash, and most class members get no cash, and instead have to spend money to realize a discount on a new dishwasher.

According to the parties, it appears as though Mr. Chambers role in the litigation was as a "hired gun" or contractor whose duties included "creating the Chambers Websites, logging and categorizing consumer complaints, corresponding with the Class Members and the CPSC, assisting counsel, and participating in mediations, to name just some of his extensive efforts." (Doc #3779, p. 32, lines 17-20).

The purchase of the websites appears to be nothing more than an excuse to compensate Mr. Chambers for his efforts in spreading the word to other consumers about the Defendant's defective products, that under normal market conditions (absence of a class action lawsuit) would be completely without value to Defendant-other than shutting it down. This conflict of interest should not be tolerated by this Court.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has indicated that "the proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" _In re Mego Fin. Corp. Sec. Litig._, 213 F.3d 454, 462 (9th Cir. 2000).

In this case, the conflict of interest of Plaintiff and his counsel is so apparent that the Court cannot find that the representative parties can fairly and adequately protect the interests of

the class.  Mr. Chambers appears more interested in selling a website to the Defendants that injures the product manufacturer's brand loyalty by informing all who will review the website that Defendants' products are dangerous. And Defendants are keen on settling a case with a named plaintiff that is hurting their bottom line, and damaging their marketing efforts.

However, Mr. Chambers is not adequately representing the class members. And it doesn't appear that the remaining class representatives are either, since they each receive $4,000.00 each ("They will also ask for a service award of $4,000 to be paid to each Class Representative.") (FAQ's #24-How will these lawyers be paid?). That's a staggering recovery, when you consider that most class members actually have to spend money to receive the benefits of this settlement.

An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class. *Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir.1998).*   The adequacy requirement is paramount, and applies to both the named plaintiff(s) and counsel. *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 (1997).*  A primary purpose of the adequacy inquiry is to "uncover conflicts of interest between named parties and the class they seek to represent." *Id. at 625-626.* The adequate representation requirement "is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 331, 100 S.Ct. 1698, 1707 (1980); Prado-Steiman ex rel. v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)* (noting that the "incentives" of the class representative must "align with those of absent class members so as to assure that the absentees' interests will be fairly represented").

Well that's an easy one to determine: class members have to spend money to get the benefits, but the named plaintiffs get cash and don't need to spend money.  No alignment of incentives with the class members. *Bush, supra.*

Cash payments for the named class members gives such persons a perverse incentive to end this litigation, so that they may receive their additional reimbursement- without regard to the character or nature of the settlement proposed by the parties. Otherwise, they'd get nothing out of this litigation- just like the rest of the class members.  It also demonstrates that the named plaintiffs are not above negotiating cash payments at the expense of the class members they purport to represent, using the class action device as a tool to extract settlement from the Defendant.

The named plaintiffs must adequately represent the interests of the class, acting as fiduciaries on behalf of the class, without any conflicts with class interests. *Williams v. L.A. Fitness Int'l, LLC, B225622, Dist. Div. 8, (Cal. App., 2011)*, citing *LaSala v. American Sav. & Loan Assn., 5 Cal. 3d 864 (1971).*  Here, the class members interests are in receiving the maximum benefit that can be achieved through either litigation or settlement.  Whereas, the Named Plaintiffs interests are clearly divergent, seeking to recover the maximum amount from Defendant- without considering the class members recovery.  And Mr. Chambers is more interested in selling his website that he knows is hurting Defendants' marketing efforts and has value over and above the claims of the class members he represents.

Adequate representation "as required by Federal Rules of Civil Procedure Rule 23(a)(4) 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.' "*Linney v. Cellular Alaska Partnership, 151 F.3d 1234,1239 (C.A.9 (Cal.), 1998),*

citing <u>Brown v. Ticor Title Ins. Co.</u>, 982 F.2d 386, 390 (9th Cir. 1992).  Adequacy is measured by both class counsels' conduct and that of the class representatives. <u>Id.</u>  Any protestations that the sale of two websites that damage Defendants' brand name and reputation by Mr. Chambers, a named plaintiff do not interfere or conflict with Class Counsels' continued representation of the class is unavailing.  Class Counsel has demonstrated that they are willing to sell out the Class Members, who each are not scheduled to receive any funds, while the Named Plaintiff and perhaps other persons are earmarked for distributions for $100,000 for a website that has no value to Defendant once this lawsuit is concluded.  Sale of the websites is a "material term" to the settlement that has been offered up to this Court.

Class Counsel has negotiated a settlement which provides a windfall of compensation to one particular client while limiting the recovery of the absent class members to discounts on Defendants' product.  While limiting the potential compensation to the absent class members to amounts much less than their own clients will receive, Class Counsel seeks $15 million in fees.  This is much more than an appearance of impropriety.  It is an actual conflict which cannot be remedied.  Antagonism exists between the named class representative(s) who are scheduled to receive a portion of the $100,000 proceeds once the "sale" of the websites occur, on behalf of the unnamed class members they claim to represent.  Class Members do not share anything with the Named Plaintiffs in this case who are able to utilize the class action mechanism to facilitate the sale of websites.   It is incumbent upon this Court to prohibit certification of a class at this time, and remove both the Named Plaintiffs and Class Counsel from this litigation.

This behavior of permitting the class action suit to be used as a vehicle to sell one named class member's websites to the Defendants while giving the class members merely a discount on future products purchased from Defendants demonstrates the existence of divided loyalties.

Class Counsel is willing to go the extra mile for their named plaintiffs, and include this sale as part of the settlement, but abandon such vigorous pursuit of damages and funds for the class members they purport to represent. In California, Class Counsel has a duty of loyalty to all the clients in this litigation. *Rotenberg v. Brain Research Labs, LLC* Super. Ct. No. 30-2010-00401652, 4th App. Dist. Div. 3 (Cal. App., 2011).  In the 9th Circuit, "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Rodriguez, 563 F.3d at 967; citing Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1465 (9th Cir. 1995) (quoting Sullivan v. Chase Inv. Servs. Of Boston, Inc., 79 F.R.D. 246, 258 (N.D. Cal. 1978).*

This Settlement Agreement implicates California ethics rules that prohibit representation of clients with conflicting interests. *See Image Tech. Serv., Inc. v. Eastman Kodak Co., 136 F.3d 1354, 1358 (9th Cir.1998)* (noting that "[s]imultaneous representation of clients with conflicting interests (and without informed written consent) is an automatic ethics violation in California") and is grounds for disqualification.  *Flatt v. Superior Court, 9 Cal.4th 275, 36 Cal.Rptr.2d 537, 885 P.2d 950, 955 (1994); accord Rodriguez v. West Publishing Corp., 563 F.3d 948, 967 (9th Cir., 2009).* An attorney "cannot recover fees for such conflicting representation." Id.

In the 9th Circuit, "Class Counsel's fiduciary duty is to the class as a whole and it includes reporting potential conflict issues." *Rodriguez, 563 F.3d at 967.* Class Counsel has failed to disclose whether or not they represented Mr. Chambers when he sold his websites to Defendant, and they have failed to provide this Court with any transparency concerning the existing transaction, its specific terms or how the value of what appears to be a useless website was reached.  Class Counsel should not be allowed to profit from such circumstances that they created at the expense of the class they agreed to vigorously represent.

Class Counsel has placed their interests and the interests of the named Plaintiff Chambers and the other class representatives who receive cash awards above those of the absent class members. This Court must protect the due process rights of the absent class members and refuse to permit the conflicts of interest in this case to continue.

It is incumbent upon this Court to remove class counsel from representation of the unnamed class members, and remove the named plaintiff Mr. Chambers, and anyone else to stands to benefit from such website sale as well. In addition, the named class representatives that remain should be stripped of their $4,000 rewards, and given exactly what most class members receive- nothing.

**#2-The Proposed Settlement is Unfair to the class members, as the relief offered for the majority of class members consists only of a discount offered to class members if they purchase a new product from Defendant, which is nothing more than a coupon to encourage the class member to purchase more of the Defendant's products to realize the "benefit".**

The totality of the settlement is nothing more than a marketing ploy to sell more dishwashers to the majority of class members. According to the parties, the settlement provides "cash rebates, reimbursement for Class Dishwasher repairs for replacements due to and Overheating Event . . ." (FAQ's, #9-What benefits does the Settlement provide?). It's nothing more than offering a discount or a coupon against future dishwasher purchases with Defendant, providing the class member with either 10%, 15% or 20% of a cash rebate off of a "retail purchase", depending upon what the class member is prequalified for according to the notice (whatever that means) (FAQ's, #10-Tell me more about the cash rebates).

Here, unless you can prove your dishwasher caught fire- and you have the receipts to back up your damages, class members get zero dollars from the Defendant. The number of class members who receive zero recovery is approximately 6 million persons (Memo. Support Fees,

Doc # 5322, p. 11, lines 15-16.  While Class Counsel paints a rich picture involving potential recovery of some 24 million dishwashers that "may" have experienced an overheating event over the last 13 years are entitled to receive some cash payment of a few hundred dollars- if you kept your receipts. (Doc #5322, p. 11, lines 5-10).  Potential recovery, which here translates into little or no benefit to the class.

What does the average person do when an appliance is defective?  Get rid of it. What are the chances class members maintained documentation on the "overheating event" of a defective dishwasher 13 years ago?  Keeping such facts in mind, *The Pocket Guide For Judges*, promulgated for the purpose of aiding the judiciary with its decision making in approving- and improving- class action settlements, contains this warning concerning non-monetary benefits as described above:

> Likewise, in cases in which the benefit to the class is nonmonetary (coupons, discounts, warranties, injunctions, and the like), determining the actual value to the class requires looking beyond the face value of nonmonetary or contingent benefits. Redemption data or other evidence of class use is essential. . . In other cases, perhaps a majority, the only reliable test of the benefit to the class will be evidence of class members' use or redemption of the coupons, warrants, or other nonmonetary scrip.

(*Managing Class Action Litigation: A Pocket Guide for Judges, p. 34. Rothstein, Barbara J. & Willging, Thomas E., (Federal Judicial Center, 2010, referred to herein as "Pocket Guide").* Here, Class Counsel should at the very minimum, be required to demonstrate that class members are not only submitting claims for rebates, but the class members have realized the "benefit" by purchasing a new dishwasher.  This non-monetary benefit, on its very face is problematic because it seeks to only provide a discount towards the purchase of a new dishwasher, forcing the class member to conduct business with the Defendant in order to realize the benefit from the Settlement.

Ordinarily, a coupon settlement is viewed as a rarity, and considered unique when discovered or presented to a court by the parties. *Pocket Guide, p. 18.* ("Coupon settlements were rare even before the passage of CAFA."). Courts typically seek information from the parties as to whether the coupons are transferrable, can be discounted or converted to cash, "compare favorably with bargains generally available to a frugal shopper" and whether the coupons are likely to be redeemed by class members. *Id.*

A "coupon settlement" is rejected where "in kind compensation" is proposed as the relief provided to class members. *Synfuel Technologies v. Dhl Express (USA), 463 F.3d 646, 654 (7th Cir., 2006).* In *Synfuel*, the court of appeals rejected a settlement where the class members were to receive pre-paid Letter Express envelopes instead of cash, with the court determining that the proposed settlement only benefited those class members who would continue to utilize Defendant's services and that the fairness of the settlement "must be evaluated primarily based on how it compensates class members for these past injuries." *Id. ("Our confidence in the fairness of the settlement is further undermined by the agreement's bias toward compensating class members with pre-paid Letter Express envelopes instead of cash.").*

Compensation in kind "is worth less than cash of the same nominal value since, as is typical with coupons, some percentage of the pre-paid envelopes claimed by class members will never be used and, as a result will not constitute a cost to Airborne [Defendant]. *Synfuel Technologies, 463 F.3d at 654, citing In re Mexico Money Transfer Litig., 267 F.3d 743, 748 (7th Cir. 2001). T*his case is worse. Defendants' are making money from the majority of the class members when they redeem their "benefit".

The modern view is for courts to view coupon based settlements with skepticism, as the reality is that most consumers will not redeem the coupons that are issued, making the relief

obtained worthless to the consumer.  S*ee Christopher R. Leslie, "The Need to Study Coupon Settlements in Class Action Litigation", 18 GEO. J. Legal Ethics 1395, 1396-97 (2005)* (Identifying three problems with coupon settlements: 1) it is doubtful that they "provide meaningful compensation to most class members"; 2) they often "fail to disgorge ill-gotten gains from the defendant; and 3) they may force class members "to do future business with the defendant.") *accord, Synfuel Technologies, 463 F.3d at 653.*

This is not compensation, but barely disguised marketing of Defendants' new dishwashers.  It is a means of mitigating the loss of the the defective product's lifespan with the consumer while insulating the Defendant from liability, by having the consumer purchase new dishwashers, which in turn generate increased profits for Defendant and reimburse payment of attorney's fees to class counsel.   Indeed, forcing Class Members to do future business with Defendants to realize the settlement benefits is a problem that this Court should look into further. *Syfuel Technologies, supra.*  Without offering the Class Members in question the option of receiving cash refunds, it instead forces these particular Class Members to "do future business with Sears." *Geoffrey P. Miller & Lori Singer, "Nonpecuniary Class Action Settlements," 60 Law & Contemp. Probs, 97, 108 (1997)* (noting that for many consumers "the right to receive a discount [or a coupon] will be worthless.") *accord, Synfuel Technologies, 463 F.3d at 653.* Extending discounts and rebates for new dishwashers is no relief at all for class members, and is nothing more than another "sale" or promotion generated by Defendant.

A coupon settlement may benefit certain groups of the class more than others. *In re General Motors Corp. Pick-Up Truck Fuel Tank, 55 F.3d 768 (3rd Cir. 1995).* Here, the only class members that will benefit are those class members who have decided that despite Defendants' track record of selling products that catch fire they have decided to play Russian

roulette with the performance of such product again by making a new purchase, risking yet again another malfunction and suit.

In addition, CAFA requires this Court to scrutinize the proposed coupon settlement "and restricts the use of unredeemed coupons in calculating fees for class counsel. *Pocket Guide, p. 18 ("It is important to discern whether attorney fees are being calculated using the face value of the coupons instead of the value of coupons actually redeemed.").*  The *Pocket Guide* strongly suggests that trial courts ". . . hold back the portion of any attorney fee awards that is linked with coupons, discounts, or other nonmonetary benefits until after the redemption period has ended and the value of the benefits can be established by calculating class members' actual use." (*Pocket Guide, p. 34, A. Evaluating monetary and nonmonetary results achieved*).

Here, if this Court allows the settlement to go forward, it is necessary for this Court to refrain from establishing a value for the rebate program until after such time the Court determines how many class members actually submit claims for such a rebate, and in turn purchase new dish washers. After such point in time, then this Court should ascertain the value of the cash rebate, and its corresponding value to Class Counsel in an award of attorneys' fees. This approach is consistent with the Pocket Guide, "Determining the precise value to the class of the rare beneficial coupon settlement, though, calls for hard data on class members' redemption of the coupons (*Pocket Guide, p. 18, Hot Button Indicators- 1.Coupons*).

The 9th Circuit holds that a settlement that provides class members with the option of a cash recovery or "cash equivalent forgiveness of indebtedness already incurred" is not a coupon settlement, and does not trigger the Class Action Fairness Act's limitations on contingent fees awarded in connection with such settlements. <u>CLRB Hansons Indus. LLC v. Weiss & Assoc. PC</u>, *(unpublished) (January 5, 2012) (9th Cir., 2012); 28 U.S.C. Sec. 1712(a).*  Again, Class Counsel

could avoid this requirement and establish a fund under which class members could receive

checks for 20% of the value of a new replacement washer, in lieu of a coupon good for a

particular percentage discount on the purchase of a new dishwasher.

Because of the manner in which the parties have structured this settlement- with

marketing as the primary goal as opposed to relief to the class- this Court should require data

showing the actual purchase of new dishwashers by class members and calculate a reasonable fee

from such data as a percentage of the fund.

**#3-      The Attorneys' Fees sought by Class Counsel should not be approved, as such amounts cannot be linked to any recovery or relief received by the Class Members they purport to represent.**

For assisting the Defendants in this case in rescuing the brand name of their dishwashers

from being entirely associated with spontaneous combustion, "Class Counsel seek the Court's

approval of attorneys' fees of $15 million" (Doc # 5323, p. 11, lines  22-23)  and claim such fees

are "for their success in achieving the settlement." Id.  Class Counsel claims to have rung up

almost 9 million in lodestar, and seek a multiplier of 1.68 plus expenses of half a million or so

dollars (Doc #5323, p. 11, lines 23-25).  At an attempt to boost the numbers, Class Counsel

extrapolates findings in one area and uses that to magnify what they believe to be the number of

rebates sought- 110,000 (Doc # 5358, p. 47, lines 12-13). But there is no data that supports this

number.  This Court should avoid jumping to the conclusion Class Counsel has already reached.

The fees sought by Class Counsel cannot be squared up against the number of claims

made that currently show, at most, payment of between $4.6 to 6 Millio by Defendants, as

reported by Class Counsel (Doc # 5357-5358, p. 46-47). And this is guessing at best by Class

Counsel.  The real numbers have not been calculated yet or revealed by the claims administrator.

In the rarefied air in which the parties breathe before this Court, Class Counsel claims "the gross value of the settlement ranges from approximately $55.7 million to $116.7 million." (Doc #5356, p. 45, lines 5-6). If so, then why do the majority of class members receive only a coupon good for the purchase of a new dishwasher?  Incredibly, Class Counsel claim "there is also no cap on Defendants' liability here." (Doc # 5367, p. 46, lines 15-16).  That's because the only people paid happen to have tracked their burning dishwasher event, and kept paperwork. Everyone knows, including the Defendants that people do not keep receipts for 13 years, much less a defective dishwasher that caught fire.  No cap on liability because no real risk loss to Defendants.

There is absolutely no justification for the fees sought. The best that can be said at this stage is this court needs more information about claims data before entertaining any fees. Without calculating the numbers of the 6 million dishwasher owners who replace Defendants products after receiving a rebate, and reviewing the number of class members who put in claims for an "overheating event" it's impossible to value this settlement, because it is nothing more than marketing disguised as relief to the class members.

The Pocket Guide makes clear that "in such cases, it is especially importing to link the amount of any attorney fees with the actual benefit to the class." *(Pocket Guide, p. 34).*   As discussed above, Class Counsel has failed to provide any meaningful relief to the class members, nor has any fund of money been created through which a claim would lie for a portion of the common fund as payment of their fees.  The Common Fund exception "entitles a plaintiff to a fee award only if he has created, discovered, increased or preserved a fund to which others also have a claim." *B.P. North America Trading, Inc. v. Vessell Panamax Nova, 784 F.2d 975, 977 (9th Cir., 1986).*  As established above, Class Counsel has failed to establish any fund through

which the class members may claim.  Instead, a host of sales pitches with discounts for new dishwashers are offered to the majority of class members.  Some class members will have the opportunity to wrangle through Defendant's claim process to receive a chance at a cash reward, if they can provide information and paperwork backing up an "overheating event."  There is very little, if anything for this Court to review to justify the massive fee award sought.

But the marketing program for Defendant's new dishwashers discussed above does not provide monies for which the class members are entitled, or "to which others have a claim." *B.P. North America, supra.* Arguably, at best the only way to value the services offered is based on the utilization by the class members- which for most class members, is unlikely to occur, since common sense dictates you dispose of a dryer after it catches fire, along with the attendant paperwork that the class member would need to submit a claim.

As discussed above, this Court should refrain from including the Defendant's marketing program to offer "cash rebates" to the class members in calculating any award of attorneys' fees. At best, fees may be awarded based on the actual rate of redemption of the purchase of new dishwashers from claimants.  However, even this is a stretch, because doing so rewards attorneys for rolling out and supporting Defendants' marketing efforts and assisting them in extinguishing websites that have provided bad press for Defendants.

Furthermore, the attorneys' fees sought in this case are not part of any fund of money- they are paid separately by the Defendant, and are not subject to such analysis under the common fund doctrine.  It is a fundamental concept in class action jurisprudence that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Wininger v. Si Management*

*L.P., 301 F.3d 115, 1120 (9th Cir., 2002).* Since Class Counsel established zero funds, they get just that- zero.

The fact that Class Counsel touts that the fees paid by Defendant may be disputed by Defendant, and are not subject to a clear sailing provision are unavailing, particularly when the primary relief offered the class is a discount on the purchase of a new product from Defendant.

If this Court is still willing to entertain making an award of attorneys' fees, the *Pocket Guide* provides for Court scrutiny of such ambiguous relief as set forth by the parties:

> A direct way to ensure that you have sufficient information to determine attorney fees in cases with nonmonetary benefits is simply to hold back the portion of any attorney fee awards that is linked with coupons, discounts, or other nonmonetary benefits until after the redemption period has ended and the value of the benefits can be established by calculating class members' actual use.

*(Pocket Guide, p. 34)*. If this Court is generous with its interpretation of Defendant's marketing program as a benefit for the class members for which class counsel has provided as a benefit, then it should be calculated only after this Court determines how many consumers or class members avail themselves of the benefit offered, by purchasing new dishwashers and receiving a cash rebate.  This Court should also analyze the exact number and amount of claims for past "overheating events" in such calculation as well.

 As stated before, why on earth would someone decide to keep an appliance that has caught fire in the past or smoked/smouldered ruining dishes (or worse)? Such premise assumes the class members lack common sense to dispose of a hazardous product, making the reimbursement program for past overheating events specious, at best.  Likewise, no one is keeping that defective product to plan for a future overheating event: they want it out of their household.   Such program has zero value for calculating attorney's fees.

This Court should require that Class Counsel go back to the Defendant and negotiate a settlement that actually produces benefits for the class, and not just a clever marketing scheme to boost Defendants' sales.

WHEREFORE, Objector prays that this Court enter its order/judgment with the following:

1) Removing Class Counsel from this litigation due to the conflict of interest that exists between them and the unnamed class member Steve Chambers and any other class members that benefit from the sale of Mr. Chambers website;

2) Remove the Named Plaintiffs from this litigation due to the conflict of interest that exists between them and the unnamed class members they purport to represent, since the majority of class members receive nothing but coupons good for the purchase of a new dishwasher, while the named class representatives receive $4,000 each; in the alternative strike the cash incentives awards to named plaintiffs and the sale of the website to Defendants;

3) Enter an Order denying Class Counsels' Application for Attorneys' fees based upon the conflict of interest in this litigation;

4) Enter an Order denying Class Counsels' Application for Attorneys' fees based upon the finding that the relief offered to the class has zero value concerning coupons for future dryer purchases;

5) In the alternative, enter an Order adjusting Class Counsels' fees to account for the value that this Court has found that one or more of the offered items of relief provide after determining the amount of class participation in the reimbursement program and "overheating event" programs;

6) Enter an Order denying Class Counsels' Application for Attorneys' fees due to the failure

to establish a common fund for class members under which Class Counsel can establish

such right to entitlement of fees;

7) Order the parties to negotiate a settlement that involves offering money to the class in

lieu of a coupon forcing class members to purchase products from Defendants;

8) Any other relief that this Court finds necessary within the premises.


_/s/ Steve A. Miller
STEVE A. MILLER (CA Bar No. 171815)
STEVE A. MILLER, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

JOHN C. KRESS (53396MO)
The Kress Law Firm, LLC
P.O. Box 6525
St. Louis, MO 63125
Ph.#: (314) 631-3883
Fax: (314) 332-1534
Email: jckress@thekresslawfirm.com

JONATHAN E. FORTMAN (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 Saint Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax: (314) 524-1519
Email: jef@fortmanlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May, 2016, I have filed and served via ECF Filing
using the USDC CD CA Electronic Filing System a true and correct copy of the foregoing
Objections to Class Action Settlement and Attorneys' Fees.


s/Steve A. Miller

EXHIBIT A

My name is Kelly Kress, and I am a class member in the Dishwasher Settlement, as I own a Kenmore Dishwasher that was purchased during the relevant period, and I object to this proposed settlement for the reasons set forth in my attached objections.

Kelly Kress     5/27/16

NOTICE OF PROPOSED
CLASS ACTION SETTLEMENT

## You may be eligible for compensation from, and your rights may be affected by, a class action settlement about KitchenAid-, Kenmore-, and Whirlpool-brand dishwashers.

For more information on the proposed settlement, filing a claim or objection, or excluding yourself, visit www.DishwasherSettlement.com or contact the Settlement Administrator or Class Counsel. Do not contact the Court, Sears, Whirlpool, or any appliance retailer or dealer for information about the settlement.

### WCH

**Dishwasher Settlement
Claims Administrator**
P.O. Box 43394
Providence, RI  02940-3394

PRESORTED
FIRST-CLASS
U.S. POSTAGE
PAID
YORK, PA
PERMIT NO.12039

Postal Service: Please do not mark barcode

Claim #: WCH - 120-15290001  2004707

******AUTO**SCH 5-DIGIT 63131
01625722 r1625722 T2451  3084  006948
Kelly Kress

Saint Louis, MO

## Chambers v. Whirlpool Settlement

### Eligibility Requirements to Make a Claim

( * indicates a required field)

### Question 1

Did you buy, or otherwise acquire as part of the purchase or remodeling of a home, or as a gift, a new Dishwasher with model and serial numbers listed as eligible for settlement benefits on www.DishwasherSettlement.com that was sold under the brand name KitchenAid, Kenmore, or Whirlpool?

**Note: If you received a claim number that begins with a 1 or 2, Whirlpool's or Sears' records indicate that you owned a Dishwasher with a model and serial number included in the settlement. Otherwise, to locate the model number, open the door to your dishwasher and look for the model tag label on the outside rim of the door.**

\* **Choose one**

○ Yes

No

Chambers v. Whirlpool Settlement

https://www.dishwashersettlement.com/Landing.aspx

## Question 2

Which benefit(s) are you seeking under this settlement?

**All Purchasers and Owners**: Cash rebate for the purchase of a new KitchenAid, Kenmore, or Whirlpool-brand dishwasher, ranging from 10% to 20% off the purchase price.

**In Addition, For Purchasers and Owners Who Experienced An Overheating Event**: Reimbursement of out-of-pocket expenses incurred to repair or replace a Dishwasher that experienced an Overheating Event, which can include up to the full cost of repair or up to $300 for a replacement dishwasher.

Please **check all that apply**. You may be entitled to both forms of benefit if you experienced an Overheating Event.

**\* Select benefit(s)**

☑ Cash rebate for the purchase of a new KitchenAid, Kenmore, or Whirlpool-brand dishwasher.

☐ Reimbursement of out-of-pocket expenses incurred to repair or replace a Dishwasher that experienced an Overheating Event.



   KCC

www.kccllc.com

Chambers v. Whirlpool Settlement                    https://www.dishwashersettlement.com/Landing.aspx

---

## Chambers v. Whirlpool Settlement

---

# Review Your Claim

Your claim is not yet submitted. You must click the Submit button below to complete the process.

**Please review the information you entered to ensure it is correct.**

## CLAIMANT INFORMATION

**KELLY KRESS**
~~████████████~~
**SAINT LOUIS, MO** ████████

## CLAIM INFORMATION

1. Bought an eligible machine?    **Yes**

2. Selected Benefit(s):    **Cash rebate for the purchase of a new KitchenAid, Kenmore, or Whirlpool-brand dishwasher.**

### Certification

*    ☑  I affirm that all information provided in Part I of this Claim Form is true and accurate.



| Go Back | Submit Claim |
|---|---|

*Change the above information*



KCC                                    **www.kccllc.com**

Home    Request a Notice    File a Claim    Class Notice    Aviso en español    Exclusion    Court Documents    Frequently Asked Questions

5/24/16, 8:39 AM

Chambers v. Whirlpool Settlement                    https://www.dishwashersettlement.com/Landing.aspx

**Kurtzman Carson Consultants**    Terms of Use    Privacy Policy

Chambers v. Whirlpool Settlement

https://www.dishwashersettlement.com/Landing.aspx

## Chambers v. Whirlpool Settlement

## Claim Form Receipt

> Thank You. Your claim form has been submitted. Please print this page as your receipt.

Your Claim Number is 12045290001. Please retain this number for your records.

**Print**

Case Code: **WCH**

Date: **May 24, 2016**

## CLAIMANT INFORMATION

**KELLY KRESS**

~~[redacted]~~

**SAINT LOUIS, MO** [redacted]

## CLAIM INFORMATION

1. Bought an eligible machine?  **Yes**

2. Selected Benefit(s):  **Cash rebate for the purchase of a new KitchenAid, Kenmore, or Whirlpool-brand dishwasher.**

Certification  **I affirm that all information provided in Part I of this Claim Form is true and accurate.**

Please print this page and retain it for your records.

For more information about the settlement and the claims filing process, please review the Class Notice.

 KCC

www.kccllc.com

Home    Request a Notice    File a Claim    Class Notice    Aviso en español    Exclusion    Court Documents    Frequently Asked Questions

5/24/16, 8:41 AM

Chambers v. Whirlpool Settlement

https://www.dishwashersettlement.com/Landing.aspx

**Kurtzman Carson Consultants**    Terms of Use    Privacy Policy

5/24/16, 8:41 AM