Joseph Darrell Palmer
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer PC
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (858) 583-8115

Attorneys for Objectors Geri Whaley and John Hightower

UNITED STATES DISTRICT COURT

CENTRAL DISRICT OF CALIFORNIA

| | |
|---|---|
| STEVE CHAMBERS, *et al.*, all of whom sue in their individual capacities and for all others similarly situated<br><br>    Plaintiffs,<br><br>                    v.<br><br>WHIRLPOOL CORPORATION, *et al*,<br><br>    Defendants. | Case No. 8:11-cv-01733<br><br>The Honorable Fernando M. Olguin<br><br>OBJECTIONS OF GERI WHALEY AND JOHN HIGHTOWER TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENT TO APPEAR |

## I.   INTRODUCTION

Geri Whaley and John Hightower object to the settlement. Objectors, Geri Whaley and John Hightower, represent to the court that they are Class Members,

1

qualified to make a claim as set forth in the NOTICE OF CLASS ACTION SETTLMENT.

### A. Summary of the Settlement

Back in 2009, Lead Plaintiff Steve Chambers ("Chambers") and his wife were unsatisfied with the response from Whirlpool when their dishwasher combusted. Thereafter, Chambers started a website "www.kitchenaidfire.com" and began to collect data. One and a half years of collecting data lead to approximately 500 posts from consumers reporting fire incidents causes by Whirlpool-manufactured dishwashers. After collecting all the data and still unsatisfied with Whirlpool's attention to this matter, Chambers retained counsel.

The claims against Whirlpool, KitchenAid and Kenmore ("Whirlpool, et al," or "Defendants") were initially filed November 9, 2011 alleging a severe product design defect in the connections to the circuit board causing some dishwashers to combust and catch on fire. This design defect exists in a significant number of dishwashers produced. Litigation ensued including the retention of engineering experts, extensive amounts of discovery, and motions for a number of years. Although the first settlement negotiations began in November 2013, it was not until September 2015 that the parties reach a preliminary settlement.

Purchasers of dishwashers manufactured between October 2000 and January 2006 are the Class Members. The payoff is "uncapped" and includes a cacophony of different qualifiers for reimbursement depending on the category of the purchaser. Defendants created a rebate program for all Class Members and divided the rest of the settlement into two categories – (1) "a Past Overheating Event" that "occurred within 12 years of purchase but before Notice to the Class; and (2) a Future Overheating Event" that "occurred within 10 years of purchase or

2 years after the Notice Date, whichever is later." *Plaintiffs' Memorandum in Support of Preliminary Approval of Class Action Settlement*, 9:9-11.

Rebates consist of 10 to 15% off a retail price purchase of a new dishwasher. Class members who experienced thermal cut-off ("TCO") repairs can receive an "enhanced" rebate of 15 to 20% off a retail price purchase of a new dishwasher. *Settlement Agreement and Release of All Claims*, pp. 19-21.

Class members who experienced a "Past Overheating Event" are eligible for reimbursement of paid "Qualifying Repairs" or "Replacements." *Settlement Agreement and Release of All Claims*, p.26. Qualifying paid "repairs" will be reimbursable for actual costs expended or up to $200 without proof of payment documentation. Qualifying paid "replacements" will be reimbursed up to $300 for a Whirlpool-built replacement dishwasher or $200 for a non-Whirlpool replacement dishwasher. *Settlement Agreement and Release of All Claims*, p.26:21-26.

Class members who experience a "Future Overheating" event are eligible for either $100.00 cash payment or 30% rebate off a new Whirlpool-brand, et al, dishwasher. However, Whirlpool "at is sole discretion … has the option to buy back or replace the Dishwasher for an appropriate price" under this subclass. *Settlement Agreement and Release of All Claims*, p.29:5-7.

Lastly, a portion of the settlement provides $100,000.00 to Chambers for the sole purpose of removing any and all "gripe [web]sites" on the internet. *Settlement Agreement and Release of All Claims*, p.35:21-27.

**B. The Standard for Approving a Proposed Class Action Settlement**

In reviewing the settlement, the district court has the duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2) Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions"…. and

recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corporation*, 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

The Court must be protective of unnamed Class Members. "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that "settlement is fair and not a product of collusion, and that the Class Members' interests were represented adequately."" *Grant*, citing *In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986). *See also Silber v. Mahon,* 957 F. 2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent Class Members.")

Courts also may refuse to approve a settlement if insufficient notice is provided to Class Members to protect their due process rights. Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all Class Members who would be bound by the proposal."

Recent Ninth Circuit case law has established certain additional guidelines for considering the fairness of class action settlements. In *In re Bluetooth Headset Products Liability Litig.*, 654 F. 3d 935 (2011), the court noted that "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's

approval as fair." *Id*., at 946, *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Circ. 1998), *et al*. The court observed, "Collusion may not always be evident on the face of the settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id*. (citations omitted) The court noted that the following may be signs of such impropriety," (2) "when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*., at 947.

## II.   ARGUMENT AND OBJECTIONS

### A. The Settlement Consideration is Illusory

Class Members that do not qualify for reimbursement of repairs or replacements resulting from the defect are offered a "rebate" of 10% to 15% off the retail price, does not include sales price, depending on the brand of dishwasher. Class members who experience repairs, are eligible for a similar "rebate," but enhanced to 15% to 20% off the retail price. Although labeled rebates, this is a coupon settlement.

#### 1. *The rebates are coupons and provide little value to class members*

"And some claimants are entitled only to "coupons" … — a warning sign of a questionable settlement." *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006). In *Synfuel Technologies, Inc. v. DHL Express*, the Seventh Circuit reversed the settlement approved in the trial court because the pre-paid shipping envelopes were "in-kind compensation" akin to a coupon, forcing class members to continue doing business with defendants, and subject to higher scrutiny by the trial court.

CASE NO. 8:11-cv-01733
OBJECTIONS OF GERI WHALEY AND JOHN HIGHTOWER TO SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

For Class Members that have not experienced a problem as of yet with their qualifying dishwasher, the only recourse is a rebate. Additionally, the rebates represent only a small fraction of the total price of the product. This is not a settlement, this is another advertising campaign that only benefits Whirlpool by obliging the class members to purchase Whirlpool brands. Defendants have created a continuing business relationship where the value to the class is indiscernible.

The fact that the rebate offers merely a percentage off the purchase price of a new product – a fairly small percentage at that, ranging from 10% to 20% - means that Class members will have to spend hundreds of dollars to take advantage of the Settlement. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (Wood I.) (A "discount on a proposed purchase" is typical coupon relief). The value of these coupons should be looked at with skepticism. Section 1712 was born of the recognition that "[c]ompensation in kind is worth less than cash of the same nominal value." *Id* at *654*.

The primary problem with coupons is that they "mask the relative payment of the class counsel as compared to the amount of money actually received by the class members." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184 (9th Cir. 2013) (*quoting* Christopher R. Leslie, A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation, 49 UCLA L. Rev. 991, 1049 (2002)). "[C]ourts aim to tether the value of an attorneys' fees award to the value of the class recovery… But where class counsel is paid in cash, and the class is paid in some other way, for example, with coupons, comparing the value of the fees with the value of recovery is substantially more difficult." *Id* at 1187. "If a proposed settlement in a class action provides for a recovery of coupons to a class member," then it is governed by CAFA, 28 U.S.C. §1712(a)-(c); accord §1712 (e). Here the settlement provides for rebates, tantamount to a coupon, hence Section

6

1712 applies. Where there is a "portion of [the] attorney's fee award… that is attributable to the award of coupons, a court must scrutinize that portion of the attorney's fee and base it "on the value to the class members of the coupons that are being redeemed." 28 U.S.C. §1712(a). CAFA requires that coupons be valued at "the value to the class members of the coupons that are redeemed."

It is unclear whether the rebates are "stackable," meaning they can be combined with other discounts, and they cannot be valued at face value. This makes it difficult to ascertain the actual value of the rebates to the class. The Class Action Fairness Act, particularly 28 U.S.C. § 1712 was born of recognition that "[c]ompensation is kind and worth less than cash of the same nominal value." *Id at* 654. Coupons are particularly problematic when class members need to spend their own money to realize any benefit from the settlement. Here class members must spend hundreds of dollars to take advantage of the rebates. The limitation on the rebate is that it does not qualify if the Class Member purchases a dishwasher on sale or if it is stackable. Burned by the purchase of defendant's dishwashers, a sensible customer probably will not return to the Whirlpool brand. These coupons are a Whirlpool marketing device. Coupon redemption will be low or nonexistent.

### 2. *Revisions to Service Kit Pointers or Training Bulletins is too little too late*

Whirlpool has offered revising its service kit pointers or training bulletins to technicians for when dishwashers are serviced. Here, only members that have already made replacements or repairs can receive cash reimbursement. Rather than preventing a future fire, Class Members who have not yet experienced a defect can only seek cash reimbursement when a future qualifying event, i.e. a fire, has occurred and within the next 2 years. Otherwise, the measly rebate or coupon is the only remedy. This logic is tantamount to waiting for a catastrophe

7

to happen.  The repercussions of any fire are extremely hazardous and harmful, and Whirlpool is not even putting a band-aid on the problem.

Based on the allegations, Whirlpool should issue a product recall and replacement program.  Dangerous products should be repaired or replaced.

### *a. Whirlpool does little to compensate victims of fire damage*

For the Class Members who have actually had a qualifying event, can only seek reimbursement for repair or replacement of the dishwasher.  There is no recourse for reimbursement resulting from any collateral damage caused by the fire resulting from Whirlpools' design defect. For victims of a burning dishwasher in the future, Whirlpool easily gets off the hook by offering either $100 or a 30% rebate and not having to pay repair or replacement.  Whirlpool must be accountable for any and all damages stemming from this fatal design flaw, now and in the future.

### 3. *Conflict of interest to pay Chambers for a marketing problem*

Paying class money to resolve a marketing problem for Defendants is extremely problematic and a clear conflict of interest in violation of Rule 23(a)(4). Class proceeds belong to the class and paying Chambers $100,000.00 to take down a couple of websites does not benefit the class.  It is the Court's duty to allocate to the benefit of the class.

### 4. *Conflict of interest using Class monies for Non-Class Members*

Section D of the Settlement allows for compensation to "Non-Class" members, NewGen and Raptor owners.  Whirlpool agreed to reimburse the non-class member for out-of-pocket expenses resulting from an Overheating Event, including repair and replacement.  Whirlpool is going to take Class monies and pay for mailing notices and even a sticker program for replacement parts.  None of this benefits the Class Members.  This is a clear conflict of interest between the subclass and non-class members in violation of Rule 23(a)(4).

Whirlpool is improperly utilizing Class monies for settling the same design defect, but in product-lines, that are not included in this action. Class proceeds belong to the class and paying for non-class members' repairs, replacements, etc., does not benefit the class. As previously stated, it is the Court's duty to allocate the benefit of the class.

**B. The Fee Request is Unreasonable**

Under CAFA, "the portion of any attorney's fee award to class counsel that is attributable to ... coupons shall be based on the value to class members of the coupons that are redeemed," not the value of coupons available. 28 U.S.C. § 1712(a). This calculation is absent from the settlement and needs to be determined in order to fairly and adequately assess the fee award. Similar to this case, *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 197 (3d Cir. 2013), the court vacated the attorneys' fee award and have the Court consider reducing the "attorneys' fees based on the level of direct benefit provided to the class." It is requested that the court appoint an independent agency to determine the reasonable accuracy of the distribution of the funds that will result from the claims process in order to evaluate the proportionality of the fee award as suggested by the court in *In re Baby Products Antitrust Litigation,* 708 F.3d 163, 192 (3d Cir. 2013).

There also needs to be a "relationship between the amount of the fee awarded and the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Where the attorney fees are disproportionate to the amount of underlying relief, there is exists a disparity. California courts largely favor the lodestar method of calculating attorney's fee award by multiplying the market billing rate by the hours reasonably expended. The issue in class actions with many law firms, wanting their proverbial "piece of the pie" is making them accountable for actual hours worked, expenses that were necessary to the case, and hourly rates

commensurate with experience and market rates. Aptly stated, the court in *Hensley* pointed out that it is "far from inevitable that attorneys will attempt to charge those hours to their client," referring to "fee request hours that are excessive, redundant, or otherwise unnecessary." Id at 434.

Here, there are few measurable benefits to the Class, yet Class counsel seeks fees and costs of $15,000,000.00. *Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses and for Service Awards for Plaintiffs*, p.1:23. Absent from the Declarations attached to the Fees award are detailed and accurate billing records. Since there are no billing records or explanation of the work performed, the Court must demand and scrutinize detailed time sheets.

### 1. *Fees should not be awarded until the settlement benefit is calculated*

The settlement value cannot be determined until the actual claims and rebates are tallied. The Court should order Class Counsel to report back with actual numbers for the court to be informed. Additionally, the Court should order the information to be published on the settlement website for the purpose of the Class being informed.

It is hereby requested that the Court to consider requiring Class Counsel to produce accurate and detailed contemporaneous billing records for verification and comparison to the Declarations submitted in support of the Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards. It is also requested that the Court appoint an independent agency or person to review such records to verify the validity and analyze for a variety of claims including, but not limited to, duplication and miscalculation of the lodestar.

### III.   JOINDER IN OTHER OBJECTIONS

Objectors join in, adopts and incorporate by reference as though fully stated in this Objection each objection by other class members, which are not inconsistent with these objections.

## IV. CONCLUSION

The Court should carefully scrutinize this settlement proposal and fee request. This is a settlement that shields the Defendant from vast future liability while conferring little benefit on the class. For the foregoing reasons and all others to be presented at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

LAW OFFICES OF DARRELL PALMER PC

Dated: May 27, 2016          By: /s/ Joseph Darrell Palmer
                                 Joseph Darrell Palmer
                                 Attorney for Objectors Geri Whaley and John Hightower

11

# CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2016, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Central District of California by using the USDC CM/ECF system.

I certify that all participants in the case who are registered CM/ECF users that service will be accomplished by the USDC CM/ECF system.

/s/ Joseph Darrell Palmer____
Joseph Darrell Palmer
Attorney for Objectors Geri Whaley and
John Hightower