Timothy R. Hanigan (125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE CHAMBERS, *et al.*,<br><br>    Plaintiff,<br><br>vs.<br><br>WHIRLPOOL CORPORATION, *et al.*,<br><br>    Defendants. | Case No: 8:11-cv-01733-FMO (ANx)<br><br>The Honorable Fernando M. Olguin |

# FIRST AMENDED OBJECTIONS OF CHRISTINE KNOTT AND KIMBERLY SMITH

## INTRODUCTION

Before the Court is a proposed claims-made settlement against Whirlpool, which manufactured millions of dishwashers that had a dangerous defect, causing them to emit smoke, fume and sparks, and to erupt in flames. *See* Fourth Amended Class Complaint, Doc. 98, at 4-5. Plaintiff allege that Whirlpool and Sears, Roebuck & Company knew about these dangers and actively concealed them from millions of consumers. *Id.*

In the context of these disturbing allegations, the parties seek approval of settlement which requires consumers, as a significant component of the settlement benefit, to use rebates to make future purchases from Whirlpool, the same company which sold them the potentially life-threatening products. The settlement also contains a red flag for adequacy of class representation. It rewards class representative, Steve Chambers, a remarkable $100,000 for two websites, suggesting a conflict between his interests and those of the unnamed class members.

And for this questionable settlement, class counsel request an astonishing $15 million in attorneys' fees. Although class counsel submitted general lodestar information in which they claim to have worked a staggering 24,000 hours (nearly three years of time), it appears from Objectors' review of PACER that all detailed billing records were submitted under seal. Certainly, not all of the billing records are privileged. Something other than self-serving declarations should be submitted so class members can evaluate the extent of the excessiveness of class counsels'

requested $15 million.

For these and other reasons, Objectors assert the proposed settlement is not fair, adequate and reasonable; it creates intra-class conflicts and implicates adequacy problems; and the proposed award of attorneys' fees is excessive.

## STANDING AND PROCEDURES TO OBJECT

Objectors' full names, addresses and telephone numbers are as follows:

Christine Knott
1901 Wooded Trace
Owings, Maryland 20736
Tel:  (443) 254-4586
Email:  ccoryknott@comcast.net

Kimberly Smith
1736 Eric Lane
Libertyville, Illinois 60048
Tel: (847) 404-9929
pkjsmith@sbcglobal.net

Objectors are class members who timely filed claims (claim number 12007643331 for Christine Knott and claim number 60020798501 for Kimberly Smith) and therefore have standing to make their objections. *See* Declaration of Christine Knott, Exhibit A hereto, incorporated by reference as though set forth in full and Declaration of Kimberly Smith, Exhibit B hereto, incorporated by reference as though set forth in full. Objector Christine Knott purchased a Kenmore dishwasher, Model Number 17534202, Serial Number FP330255 on August 29, 2003. Objector Kimberly Smith purchased a KitchenAid dishwasher Model Number KUDSO1, Serial Number FL1413264 on April 7, 2001. Objectors are represented by

Timothy R. Hanigan, LANG, HANIGAN & CARVALHO, LLP. and Bandas Law Firm, PC. Chris Bandas of Bandas Law Firm does not presently intend on making an appearance for himself or his firm. The statement of the objections and the grounds therefore are set forth below. Objectors do not intend on appearing at the fairness hearing either in person or through counsel but ask that their objection be submitted on the papers for ruling at that time. Objectors rely upon the documents contained in the Court's file in support of these objections. Objection is made to any procedures or requirements to object in this case that require information or documents other than those that are contained herein on grounds that such requirements seek irrelevant information to the objections, are unnecessary, unduly burdensome, are calculated to drive down the number and quality of objections to the settlement and violate Objectors' and counsel's due process rights and/or Rule 23.

Objectors incorporate by reference the arguments and authorities contained in other filed objections, if any, made in opposition to the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses that are not inconsistent with this objection.

## OBJECTIONS

**The Proposed Settlement Is Not Fair Adequate And Reasonable.**

Objection is made to the rebate component of the settlement, which class Counsel represent as a significant percentage of the settlement benefits. *See*

Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses and For Service Awards for Plaintiffs Case, Doc. 218-1, at 37-38 (estimating the value of the rebates at between $7.6 million and $33 million, while estimating the gross settlement value at between $55.7 million and $116.7 million).

Because this appears to be a coupon settlement subject to the Class Action Fairness Act (*see e.g.*, this Court's Order re: CAFA Compliance, Doc. 196.),[1] it is subject to a heightened level of scrutiny. *True v. Am. Honda Motor Co. .,* 749 F.Supp.2d 1052, 1069 (C.D. Cal. 2010) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 654 (7th Cir. 2006); *Figueroa v. Sharper Image Corp.,* 517 F.Supp.2d 1292, 1321 (S.D. Fla. 2007)); *see also* 28 U.S.C. § 1712(e); FED. R. CIV. P. 23(h), 2003 Advisory Committee Notes ("Settlements involving non-monetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class."). As such, before granting final approval, the court "must discern if the value of a specific coupon settlement is reasonable in relation to the value of the claims surrendered." *True,* 749 F.Supp.2d at 1069.

It must be remembered that [c]lass counsel are duty bound to represent the best interests of class members." *In re HP Inkjet Printer Litig.,* 716 F.3d 1173, 1178 (9th Cir. 2013) (citation omitted). "[B]ecause the interests of class members and class

---

[1] *See also* Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses and For Service Awards for Plaintiffs Case, Doc. 218-1, at 9 (stating that "[a]ll 6 million Class members are entitled to rebates on the purchase of new dishwashers, ranging from 10-20%" an estimating that "[t]he maximum *potential* value of these rebate claims exceeds $33 million").

counsel nearly always diverse, courts must remain alert to the possibility that some class counsel may 'urge a class settlement at a low figure or less-than-optimal basis in exchange for red-carpet treatment on fees." *HP Inkjet Printer.*, 716 F.3d at 1178 (*Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir.1991)).

Objectors assert that the settlement rebates here are less-than-optimal and have very little value given they require the consumer to return to the company which sold them a dangerous product. *Synfuel Techs., Inc.*, 463 F.3d at 654 (rebates or coupons in a settlement "'require the claimant to return to the Defendant to do business with him,' something at least some class members likely would prefer not to do"). It appears class counsel structured the settlement so that it advances Whirlpool's business interests by requiring consumers to purchase additional Whirlpool products, at the expense of the class, presumably in exchange for little resistance to requested $15 million in attorneys' fees. When weighed against the claims of the millions of potential class members, this component of the settlement is unfair to the class.

The settlement further provides less compensation to consumers who replaced their dishwasher with something other than a Whirlpool product, again illustrating the compromised interests of class counsel. Dishwasher owners who had a prior overheating event are entitled to "$300 if they bought a replacement Whirlpool-manufactured dishwasher and $200 if they purchased any other brand." Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses and For Service Awards for Plaintiffs Case, Doc. 218-1, at 27. Thus, class members are penalized for

choosing not to do business with the company that sold them defective and dangerous products. These components of the settlement favor Whirlpool at the expense of the class. Objectors urge that class members should receive equal compensation regardless of whether they purchased a different brand.

The settlement also loses sight of the best interests of the class by providing a $100,000 payment from Whirlpool to Mr. Chambers, a class representative, for the purchase of two websites. This unreasonable sum represents consideration that could have gone to the class. Objection is further made to the claims-made structure of the settlement, which given a likely low claims' rate, will ensure a minimal payout by Whirlpool at the expense of the class, in tacit exchange for little resistance to class counsels' request for an exorbitant amount of attorneys' fees.

For these reasons, the proposed settlement is not fair, adequate and reasonable and the proponents of this settlement have failed to discharge their burden of proof on the issue of fairness.

**Intra-Class Conflicts And Adequacy of Representation**.

Objector challenges the adequacy of class representative, Steve Chambers, who, as discussed *supra*, is rewarded with a $100,000 payment from Whirlpool for two websites, in addition to a $4,000 service fee. Settlement Agreement, at 35-36, 47. "[U]ncovering conflicts of interest between the named parties and the class they seek to represent is a critical purpose of the adequacy inquiry." *Rodriguez v. W. Publg. Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591,

625 (1997)). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974)). An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998).

The settlement's enormous payment to Mr. Chambers, outside the standard benefits to the class, obviously isolates him from other class members. It appears that he pockets at least **200 times** what the average class member receives.[2] This sizeable payment to a class representative suggests his interests are not aligned with the remaining members of the class. *See Staton v. Boeing Company,* 327 F.3d 938, 975 (9th Cir. 2003) ("[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard") (quotation omitted). As the Ninth Circuit has recognized, if "such members of the class are provided with special 'incentives' in the settlement agreement, they may be more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large." *Id.* at 977. Even if

---

[2] This assumes an average of $500 in compensation for class members, which would appear to be on the high end of class counsels' estimation. *See* Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses and For Service Awards for Plaintiffs Case, Doc. 218-1, at 36-38.

you indulge the incredulous notion that Mr. Chambers' two websites are actually worth $100,000, the fact that the settlement provides him an additional amount, separate and apart from the settlement benefits and the $4,000 service fee, suggests a conflict of interest that makes him an inadequate representative.

Objection is further asserted to the extent the parties have not complied with the requirements of separate representation for intra-class conflicts as set forth in Rule 23(a)(4), *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856-58 (1999). The adequacy of class counsel is also in question given the unfair settlement which they negotiated.

**Class Counsel's Fee Request Is Excessive.**

Under Federal Rule of Civil Procedure 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). The burden of proving the fairness and reasonableness of the settlement, including attorneys' fees, is on the proponents. *Gen. Motors.,* 55 F.3d 768, 785 (3d Cir.1995), *cert. denied,* 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995); *In re Certain Teed Cor. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 483 (E.D. Pa. 2010); *see also Holmes*, 706 F.2d at 1147. An actual showing is required, beyond a court's "complete confidence in the ability and integrity of counsel." *Day v. Persels & Assocs., LLC,* 729 F.3d 1309, 1315 (11th Cir. 2013).

Class counsel here seek $15 million based on the lodestar method of calculating fees. They claim to have worked an incredible 24,000 hours, for a total lodestar of $8,948,487.98, and seek a multiplier of 1.68.

With 24,000 hours billed, it would appear that, at the very least, there has been some padding. After all, this is nearly three years of time![3] Yet, class counsel appear to have submitted their billing records entirely under seal.[4] Objector asserts that in doing so, class counsel have undermined class members' ability to evaluate the extent of the excessiveness of the award, and objection is made on this basis. As the proponents of the settlement, it was incumbent upon class counsel to show their lodestar is reasonable. The manner in which class counsel have submitted evidence does not satisfy this quantum of proof.

Although some portion of the billing records may be privileged, inevitably not all of the 24,000 hours are. *See Roberts v. Heim*, 123 F.R.D. 614, 636 (N.D. Cal. 1988) (attorney billing information not protected by the attorney-client privilege where nothing "suggest[ed] that disclosure of the amounts and dates of payments of fees by appellant to his attorney would in any way convey the substance of confidential professional communications between appellant and his attorney"); *cf. U.S. v. $1,379,879.09 Seized From Bank of Am.*, 374 Fed. Appx. 709, 711 (9th Cir.

---

[3] 365 days x 24 hours = 8,760 hours in a year. 24,000 hours billed by class counsel % 8,760 hours in a year = 2.73 years of work billed by class counsel.

[4] Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses and For Service Awards for Plaintiffs Case, Doc. 218-1, at 20 (noting that class counsel "have attached a copy (under seal) of their detailed daily time entries").

2010)(unpublished) (court "abused its discretion when it reviewed the billing records *in camera* and denied the government the opportunity to raise specific objections to the billing records[;]" while some portions of billing records might have been privileged, there was no reason redacted versions of the billing records could not be submitted for review by the government); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 505 (9th Cir. 1986) ("No reason appears why the timesheets should not have been made available to MGIC and MGIC given the opportunity to challenge them. We remand for the sole purpose of a hearing in which MGIC may challenge the reasonableness of the fees awarded. The court may withhold from MGIC any information it finds protected by the lawyer-client privilege."); *see also Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003) (courts faced with requests to seal or redact begin "with a strong presumption favor of access to court records"). Objector thus requests that class counsel be required to submit detailed billing records, subject to limited redaction, for review by the class. *See e.g., In re Cathode Ray Tube (Crt) Antitrust Litig..,* 3:07-CV-5944 JST, 2016 WL 721680, at *35 (N.D. Cal. Jan. 28, 2016) (detailed billing records submitted allowed class members to complain "that the billing records . . . show sloppy and potentially inaccurate timekeeping practices" which the court concluded were "a good reason to use a lodestar as a check against a percentage of the fund – with appropriate scrutiny of the billing records"); *Gonzalez v. S. Wine & Spirits of Am. Inc.,* 2:11-CV-05849-ODW, 2014 WL 1630674, at *4 (C.D. Cal. Apr. 24, 2014) (reducing attorneys' fees after reviewing billing entries, and noting that although "it is .

. . not the Court's intention to split hairs over each of class counsel's billing entries[,]" class counsel "bear the burden of proving that they are entitled to that amount, and cursory entries, blockbilling, and inefficiency do not satisfy that burden"); *Cook v. Howard Industries, Inc.*, 2:11CV199-KS-MTP, 2013 WL 943664, at *4 (S.D. Miss. Mar. 11, 2013) (approving $457,500 in attorneys' fees where class counsel submitted "sworn declarations and detailed billing records); *In re Bluetooth Headset Products Liab. Litig.*, 07-ML-1822 DSF EX, 2012 WL 6869641, at *2 (C.D. Cal. July 31, 2012) (noting that the Court "raised numerous concerns about the billing statements"); *Lucas v. Kmart Corp.*, CIV.A. 99-01923, 2006 WL 2729260, at *4 (D. Colo. July 27, 2006) (observing that "[c]lass Counsel have submitted detailed billing records").

Objection is further made to the extent this is a coupon settlement and class counsels' attorneys' fees fail to comply with CAFA's means for calculating attorneys' fees under 28 U.S.C. § 1712(a)-(c) (in a mixed settlement "that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated" under the percentage method "based on the value to class members of the coupons that are redeemed").

Finally, objection is made to the extent a lump sum attorneys' fees award is made to multiple firms without judicial allocation of the funds. *See In re High Sulfur Content Gasoline Prods. Litig.*, 517 F.3d 220, 227–28 (5th Cir. 2008); *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987).

## CONCLUSION

Objectors request that this settlement be rejected. In the alternative, Objectors request that the proposed award of attorneys' fees be rejected or, at minimum, substantially reduced.

DATED:  May 27, 2016					Respectfully submitted,
							*/s/ Timothy R. Hanigan*
							Timothy R. Hanigan (125791)
							LANG, HANIGAN & CARVALHO, LLP,
							21550 Oxnard Street, Suite 760
							Woodland Hills, California 91367
							(818) 883-5644
							trhanigan@gmail.com

							Attorney for Objectors/Class Members

For the foregoing reasons, I object to this settlement.

DATED: March 18, 2016

_____
Kimberly Smith
1736 Eric Lane
Libertyville, Illinois 60048

For the foregoing reasons, I object to this settlement.

DATED: March 18, 2016

Christine Knott
1901 Wooded Terrace
Owings, Maryland 20736

**Certificate of Service**

The undersigned certifies that today he filed the foregoing First Amended Objections and associated declarations on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: May 27, 2016

/s/ *Timothy R. Hanigan*
Timothy R. Hanigan