Timothy R. Hanigan (SBN 125791)
Vaughn M. Greenwalt (SBN 298481)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372

Attorneys for Objectors/Class Members,
CHRISTINE KNOTT and KIMBERLY SMITH

Jeffrey M. Cohon, Esq. (CSBN 131431)
Kristina S. Keller, Esq. (CSBN 161946)
**COHON & POLLAK, LLP**
10250 Constellation Boulevard, Suite 2320
Los Angeles, California  90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610
 jcohon@cohonpollak.com

Charles S. Fax, Esq. (*pro hac vice*)
Liesel Schopler, Esq. (*pro hac vice*)
**RIFKIN WEINER LIVINGSTON, LLC**
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-6535
cfax@rlls.com; lschopler@rlls.com

Steven A. Schwartz, Esq. (*pro hac vice*)
Timothy N. Mathews, Esq. (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com; tnm@chimicles.com

Attorneys for the Plaintiffs and Court-Appointed Class Counsel

[Full counsel appearances on signature page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
(818) 883-5644

| | |
|---|---|
| STEVE CHAMBERS, *et al.*, all of whom sue in their individual capacities and for all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WHIRLPOOL CORPORATION, *et al.*,<br><br>Defendants | Case No: **8:11-cv-01733-FMO-MLG**<br><br>**LOCAL RULE 37-1 JOINT STIPULATION REGARDING (1) TIMOTHY R. HANIGAN'S MOTION: (A) TO QUASH SUBPOENA; AND (B) SANCTIONS; AND (2) PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM TIMOTHY HANIGAN AND CHRISTOPHER BANDAS**<br><br>Hearing Date: August 25, 2016<br>Time: 10:00 a.m.<br>Place: Courtroom 6B<br><br>**DISCOVERY MATTER**<br><br>Oral Argument Requested<br><br>Before Magistrate Judge Nakazato |

# **TABLE OF CONTENTS**

JOINT STIPULATION ................................................................................ 1

I.    INTRODUCTORY STATEMENTS ................................................... 1

      A.    JOINT REPRESENTATIONS TO THE COURT.................................. 1

      B.    HANIGAN'S INTRODUCTORY STATEMENT ............................ 4

      C.    CLASS COUNSEL'S INTRODUCTORY STATEMENT..................... 5

II.   MR. HANIGAN'S CONTENTIONS ................................................. 8

      A.    BACKGROUND.......................................................................... 8

      B.    PRELIMINARY MATTER: THE BAD FAITH
            MEET-AND-CONFER PROCESS AND GROSS
            MISREPRESENTATIONS TO THIS COURT........................................ 9

      C.    PRELIMINARY MATTER:  CLASS COUNSEL FAILS
            TO PROVIDE ANY SUPPORT FOR THE RELIEF REQUEST
            AND INTENTIONALLY MISREPRESENTS THE CITATIONS
            PROVIDED .............................................................................. 10

      D.    PRELIMINARY MATTER:  BANDAS IS NOT SUBJECT
            TO THE JURISDICTION OF THIS COURT ................................... 12

      E.    OBJECTORS SERVE A CRITICAL ROLE ................................... 14

      F.    COURTS START WITH THE PRESUMPTION THAT
            ATTORNEY DEPOSITIONS ARE IMPROPER ............................. 15

      G.    THERE IS NO LEGITIMATE BASIS FOR
            THE DEPOSITION OF OBJECTORS' COUNSEL ............................ 16

      H.    INFORMATION SOUGHT FROM OBJECTORS' ATTORNEY
            IS NOT RELEVANT, AND CERTAINLY NOT CRUCIAL ................ 16

i

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

I.    CLASS COUNSEL CANNOT SHOW THAT NO OTHER
      MEANS EXIST TO OBTAIN WHATEVER THEORETICALLY
      RELEVANT, NON-PRIVILEGED INFORMATION
      THEY SEEK FROM OBJECTORS' ATTORNEY ................................. 18

J.    SANCTIONS ........................................................................... 19

      1.    This Court should grant Rule 45(d)(1) sanctions .......................... 19

      2.    The Court should grant sanctions
            Pursuant to the Court's inherent power ......................................... 20

K.    MR. HANIGAN'S CONCLUSION & PRAYER ................................... 21

II.   CLASS COUNSEL'S CONTENTIONS IN SUPPORT
      OF THEIR MOTION TO COMPEL AND IN OPPOSITION
      TO THE MOTION TO QUASH ........................................................ 22

A.    BANDAS AND HANIGAN ARE SERIAL
      OBJECTORS WHO FILE OBJECTIONS IN BAD FAITH ................. 22

B.    COURTS ROUTINELY COMPEL THE DISCOVERY SOUGHT
      HERE FROM SERIAL OBJECTORS AND THEIR COUNSEL ......... 27

C.    THE BASELESS NATURE OF THE OBJECTIONS
      DEMONSTRATES AN IMPROPER PURPOSE AND IN
      ANY EVENT THE OBJECTIONS HAVE BEEN DISCLAIMED
      BY THE OBJECTOR CLIENT MS. KNOTT ......................................... 32

D.    BANDAS WAS SERVED WITH THE SUBPOENA AND
      DEPOSITION REQUEST AND HAS NOT SERVED OR
      FILED ANY OBJECTIONS OR MOTION TO QUASH OR
      PROVIDED ANY REASONS WHY HE SHOULD NOT BE
      COMPELLED TO SIT FOR A DEPOSITION ....................................... 34

E.    HANIGAN/BANDAS' SANCTIONS REQUEST IS BASELESS ........ 37

F.    PLAINTIFFS' CONCLUSION AND PRAYER ................................... 38

III.  CONCLUSION .................................................................................. 38

ii

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

Plaintiffs, by their counsel of record, and subpoenaed counsel for the objectors to the proposed class action settlement, Timothy R. Hanigan, Esq., in accordance with L.R. 37-1 and 37-2.1, state as follows:

## JOINT STIPULATION

## I.    INTRODUCTORY STATEMENTS

### A.    JOINT REPRESENTATIONS TO THE COURT

1.    This case arises from plaintiff's allegations that Whirlpool-manufactured dishwashers sold between October 2000 and January 2006 had a design defect that caused overheating in high current connections to the electronic control board, causing the boards to smoke, emit fumes and sparks, or catch fire. Judge Olguin granted preliminary approval to the proposed class action settlement that was negotiated over several years before mediator Prof. Eric Green. The Settlement provides full reimbursement of repair costs for class members who suffered Overheating Events; payments of $200 and $300 for class members to replace, rather than repair, their dishwashers due to overheating events; significant safety warnings to consumers and service repair personnel; plus rebates between 10% and 20% for the purchase replacement washers for those class members who dishwashers have not yet suffered an overheating event but are concerned about the safety of their washers. *See generally* Preliminary Approval Order, Dkt. No. 199.

2.    Objectors Christine Knott and Kimberly Smith filed their Objections to the Parties' joint motion for final approval of the class action settlement of this class action ("Objection") on May 27, 2016.  [ECF No. 229]  Their counsel of record was Timothy R. Hanigan, Esq.  In their Objection, they recited that "Objectors are represented by Timothy R. Hanigan, LANG, HANIGAN & CARVALHO, LLP, and Bandas Law Firm, P.C.  Chris Bandas of Bandas Law Firm does not presently intend on making an appearance for himself or his firm."  *See* Objection at 3-4.

1

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

3.     Later that same day, Objectors Knott and Smith filed their "First Amended Objections."  [ECF No. 232].  On pages 3-4 thereof, they made the same statement regarding their legal representation: "Objectors are represented by Timothy R. Hanigan, LANG, HANIGAN & CARVALHO, LLP, and Bandas Law Firm, P.C.  Chris Bandas of Bandas Law Firm does not presently intend on making an appearance for himself or his firm."

4.     On June 17, 2016, one of co-lead counsel for Plaintiffs, Steven A. Schwartz, caused subpoenas *ad testificandum* and *duces tecum* to be issued to attorneys Hanigan and Bandas, noticing their depositions for "June 30, 2016 or [an]other agreeable date."

5.     The document requests appended to the subpoenas were identical:

    A.     Produce all non-privileged DOCUMENTS related to your OBJECTION to the proposed settlement of this action, including but not limited to, all non-privileged communications and DOCUMENTS related to the settlement, notice and claims process in this action and any communications related to the solicitation of class members/potential class members to serve as OBJECTORS in this action.

    B.     Produce all DOCUMENTS relating to agreements between YOU and any other person (including but not limited to any other objector or attorney) in relation to this action, including any agreement to provide compensation to YOU or anyone else, or to share any recovery, including but not limited to recovery of attorneys' fees.

    C.     Since January 1, 2010, with respect to all OBJECTIONS you filed, served as counsel, or had a direct or indirect FINANCIAL INTEREST in (in your capacity as an objector or an attorney or referral attorney, and regardless of whether YOU formally entered

YOUR appearance), produce all DOCUMENTS that pertain to (a) any CONSIDERATION paid as a direct or indirect result of YOUR agreement (or the agreement of YOUR client) to withdraw the OJBECTIONS, (b) the division of any CONSIDERATION between YOU and any other person (including client(s), attorneys and non-attorneys), (c) if YOU contend that any relief was obtained for the Class in conjunction with the resolution, dismissal or withdrawal of any such OBJECTIONS (including appeals related to such OBJECTIONS), all DOCUMENTS sufficient to establish the relief, if any, YOU obtained, (d) if you contend that any CONSDIERATION paid as a direct or indirect result of YOUR agreement (or the agreement of YOUR client) to withdraw any OBJECTIONS was disclosed to or approved by the presiding court, DOCUMENTS sufficient to show such disclosure and/or approval, and (e) any DOCUMENTs sufficient to show any familial or business relationship between the objector and any attorney who represented the objector or had a FINANCIAL INTEREST in the objection (whether or not the attorney entered his or her appearance).

    D.    All DOCUMENTS reflecting your purchase or ownership of your Class Dishwasher in this action, your disposition of your dishwasher, and all DOCUMENTS related to any Overheating Event.[1]

    E.    All DOCUMENTS upon which YOU rely in support of YOUR OBJECTIONS to the settlement in this action.

    6.    Subsequent to service on him, Mr. Hanigan telephoned Mr. Schwartz on June 22, 2016, to discuss the subpoena and assert his position that Plaintiffs did not

---

[1] "You" and "Your" are defined to include, *inter alia*, law firms.

3

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

have the right to depose him or obtain the documents requested. Counsel were unable to reach any agreement on the matter. Accordingly, later that day Mr. Hanigan emailed to Mr. Schwartz, with copies to all counsel of record, a formal objection to Plaintiffs' subpoena.

7.     The disputants herein engaged in addition email correspondence, telephone conferences, and exchange of sections for this Joint Stipulation, and exchange are satisfied that they have met the "meet and confer" requirement of L.R. 37-1.  Mr. Bandas has not entered an appearance in this case, and Mr. Hanigan's Motion to Quash is herein argued only as it applies to Mr. Hanigan.

8.     Class Counsel contends the issue for resolution is whether Class Counsel can depose Mssrs. Hanigan and Bandas and obtain the requested documents, or whether the subpoenas should be quashed.  Mr. Hanigan contends the issue for resolution is whether Class Counsel can depose Mr. Hanigan, and further contends the question as to whether Mr. Bandas can be deposed is not proper before this court.

9.     Class Counsel has deposed Objector Knott and Objector Smith.

**B.     HANIGAN'S INTRODUCTORY STATEMENT**

This is a motion to quash an improper subpoena (the "Motion") issued by Class Counsel for the deposition of attorney Timothy Hanigan ("Objectors' Counsel"), who represents objecting class members Christine Knott and Kimberly Smith ("Objectors"). *See* FED. R. CIV. P. 45(d)(3) ("[o]n timely motion, the court for the district where compliance is required **must** quash or modify a subpoena that . . . requires a disclosure of privileged or other protected matter . . . or subjects a person to undue burden"). Because there is no legitimate basis for allowing an attorney deposition here, and the sole purpose of the subpoena is to harass and impose undue burden, Mr. Hanigan further seeks attorneys' fees in being forced to respond to the subpoena pursuant to FED. R. CIV. P. 45(d)(1).

This Motion applies only as to Mr. Hanigan, and does not include Mr. Bandas in any way.  Mr. Hanigan, as stated below, is the only proper party before this Court

and the only party to which this Court holds jurisdiction.  Class Counsel seeks to include Mr. Bandas as part of this motion for one (improper) purpose only:   to associate Mr. Hanigan with Mr. Bandas as if they were one person, and then paint Mr. Hanigan with the same broad brush in order to improperly smear him.  Indeed, if Class Counsel were left to argue this motion *only* as it applies to Hanigan, he would not be able to employ the vast majority of his arguments contained herein.

The class action settlement notice in this case specifically invites class members to file objections to the settlement. ECF Nos. 229, 232, 232-2. On May 27, 2016, based on this invitation, class members Christine Knott and Kimberly Smith filed timely objections to the settlement through their attorney Timothy Hanigan. Among other objections, they asserted the proposed settlement is unfair in favoring of Whirlpool at the expense of the class, awarding an excessive $15 million to Class Counsel (without any detailed billing information), and creating a clear conflict of interest in providing a $100,000 payment to the class representative. Both objectors set forth their standing as class members through supporting documents attached to the objections. *Id.*

Instead of responding to the merits of Objectors' assertions, Class Counsel issued subpoenas on June 17, 2016, for the depositions of and production of documents from both Objectors and their attorney Timothy Hanigan.  There is not even a cognizable justification, however, for the deposition of Objectors' Counsel. As an aside, the motion to compel as it applies to Bandas, is equally improper.

## C.    CLASS COUNSEL'S INTRODUCTORY STATEMENT

As reflected in Judge Olguin's Preliminary Approval Order, this is an outstanding class settlement that provides for a full recovery of out-of-pocket damages due to the alleged defect, safety enhancements, plus rebates of up to 30% to replace decade-old dishwashers *that have not manifested the alleged defect*, plus a state-of-the-art claims process.  Unlike most class settlements, the parties have not agreed to the amount of fees to be paid to Class Counsel.  Rather, parties agreed to

5

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

have fees decided pursuant to a contested petition before Judge Olguin. Class Counsel requested $15 million, which represents a 1.68 multiple of Class Counsel's lodestar; Defendant Whirlpool filed a massive opposition with expert reports suggesting the appropriate amount should be less than $4 million. As part of the Settlement, Whirlpool insisted on purchasing lead class representative plaintiff Steve Chambers' websites, which collected safety defect information about the subject dishwashers, for $100,000. Judge Olguin preliminarily approved that payment in a detailed analysis. Dkt. No. 199 at 26-28.

Against this backdrop, Attorneys Hanigan and Bandas filed objections on behalf of their clients Knott and Smith challenging the fees, falsely claiming that the contested fee process represents a "tacit exchange" of a settlement with "minimal payout" for "little resistance to class counsel's request for an exorbitant amount of attorneys' fees." Dkt. No. 232 at 7. The objection also challenges the website sale even though their client Ms. Knott admitted under oath that she does not object to that sale. To the contrary, she agreed with Judge Olguin's analysis approving it because: "It makes sense." *See* Declaration of Steven A Schwartz at Exhibit C (Knott deposition excerpts) at pages 147-152 (quotation at 150:25). Ms. Knott also disagrees with her attorneys regarding the proper amount of fees. She testified that she did not care about how much Whirlpool paid class Counsel in fees, and opined that Class Counsel should at least get their lodestar and costs (about $9 million) and would not object if Judge Olguin awarded multiples of 2 ($18 million) and 3 ($27 million)—far more than Class Counsel asked for! Knott Tr. at pages 67-68; 73-77; 145-146. Her lawyers never even bothered to tell her Whirlpool was filing and in fact filed an opposition to the fee request. *Id. at* 145-146; 173. Simply put, the client of Bandas and Hanigan has disclaimed the purported objections under oath and the failure of Bandas/Hanigan to withdraw them raises serious Rule 11 issues.

Class Counsel seek discovery from attorneys Hanigan and Bandas because they have been "excoriated" by numerous courts as "serial" or "professional" objectors

6

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

who assert baseless objections to class action settlements in order to extort fees for themselves *with no corresponding benefit to class members*. *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012). The same discovery sought here has been compelled from objectors and/or their counsel by various federal courts in California and elsewhere. *In re Law Office of Jonathan E. Fortman, LLC*, 2013 U.S. Dist. LEXIS 13903, at *1-2 (E.D. Mo. Feb. 1,  2013) (compelling attorneys' custodian of records); *In re Cathode Ray Tube (CRT) Antitrust Litig,* 281 F.R.D. at 532; *In re Apple iPhone/iPod Warranty Litig.*, C.A. No. 3:10-cv-01610-RS (N.D. Cal. Jan. 13, 2014), ECF No. 126 (Schwartz Decl., Exhibit G); *In re Flonase Antitrust Litig.*, No. 08-3301 (E.D. Pa. May 7, 2013) at ECF No. 583 (Schwartz Decl., Exhibit F) (compelling depositions of objectors and their attorneys). This court should follow those decisions and compel the discovery sought here. In this regard, at the time the subpoenas were issued, Class Counsel made clear their willingness to "consider deferring depositions until after production of the requested documents or alternatively a proffer under oath via declaration or otherwise providing the information sought in the document requests," but never got a response to that offer from either Mr. Hanigan or Bandas. Schwartz Decl., ¶2 & Exhibit A.

    With respect to Mr. Bandas' attempt to avoid jurisdiction of this Court, this Court should not permit his tactic of orchestrating and controlling objections behind the scenes.  He tried those jurisdiction-avoiding tactics in connection with a frivolous objection in *Garber v. Office of the Comm'r of Baseball*, No. 12-cv-3704 (S.D.N.Y), where the court recently ordered him to personally appear at a court conference "to discuss why the Court should not, *sua sponte*, issue an Order to Show Cause why sanctions should not be imposed on the attorneys including Bandas. *Id.* at Dkt. No. 589 (Schwartz Decl., Exhibit H).

## II.     MR. HANIGAN'S CONTENTIONS

## A.     <u>BACKGROUND</u>

These are dueling motions for a protective order/to compel an appearance pursuant to an improper subpoena (the "Motion") issued by Class Counsel for the deposition of attorney Timothy Hanigan ("Objectors' Counsel" or "Hanigan") who represents objecting class members Christine Knott and Kimberly Smith ("Objectors").   Similarly, the Motion also seeks to enforce a subpoena against attorney Christopher Bandas ("Bandas"), which is similarly in error.  *See* Fed. R. Civ. P. 45(d)(3) ("[o]n timely motion, the court for the district where compliance is required **must** quash or modify a subpoena that . . . requires a disclosure of privileged or other protected matter . . . or subjects a person to undue burden").  Because there is no legitimate basis for allowing an attorney deposition here, the fact that Class Counsel is unable to provide ***any*** authority for support thereof, the fact that Bandas is not subject to the jurisdiction of this Court, and that the sole purpose of the subpoena is to harass and impose undue burden, the Motion should be denied.

Mr. Hanigan further seeks attorneys' fees in being forced to respond to the subpoena, and for the gross misconduct of Class Counsel in perpetrating a fraud on this Court.

The class action settlement notice in this case specifically invites class members to file objections to the settlement.[2] On May 27, 2016, based on this invitation, class members Christine Knott and Kimberly Smith filed timely objections to the settlement through their attorney Timothy Hanigan.[3] Among other objections, they asserted the proposed settlement is unfair in favoring of Whirlpool at the

---

[2] *See* Post Card Notices to Christine Knott and Kimberly Smith, [ECF. 232-2, 232-5] ("If you remain in the class, you can object to the proposed settlement or Class Counsel's request for attorneys' fees by filing an objection with the U.S. District Court for the Central District of California, 312 North Sprina St., Los Angeles, California 90012").

[3] Objection and First Amended Objections of Christine Knott and Kimberly Smith and attachments [ECF 229, 232].

8

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

expense of the class, awarding an excessive $15 million to Class Counsel (without any detailed billing information), and creating a clear conflict of interest in providing a $100,000 payment to the class representative. Both objectors set forth their standing as class members through supporting documents attached to the objections.[4]

Instead of responding to the merits of Objectors' assertions, Class Counsel issued subpoenas on June 17, 2016, for the depositions of and production of documents from both Objectors and their attorney Timothy Hanigan.[5]  As of this writing Objectors, without objection, have already been deposed for the limited purpose of discovery related to their objections to the settlement. There is not even a cognizable justification, however, for the deposition of Objectors' Counsel.

## B.   PRELIMINARY MATTER: THE BAD FAITH MEET-AND-CONFER PROCESS AND GROSS MISREPRESENTATIONS TO THIS COURT

In attempting to meet-and-confer regarding the merits of these Motions pursuant to Local Rule 37-1, Hanigan repeatedly pointed to flaws in Class Counsel's arguments, to false and misleading citations, and to blatant violations of the Federal Rules of Civil Procedure.    At no time did Class Counsel *ever* provide substantive responses to any of these disputes.

Aside from the fact that Class Counsel's entire Motion is premised on bad faith argument and an attempted fraud on this Court, Class Counsel similarly misleads the Court in its harsh vitriol regarding Mr. Hanigan, stating, *among others*, the following:

> This Court and many others have recognized that Mssrs. Hanigan and Bandas are serial objectors, who offer nothing more than baseless objections to seek to obtain fees for themselves by threatening to delay meritorious settlements. *See e.g., Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, *31 (C.D. Cal. Sept. 11, 2014) (describing Mr. Hanigan as a serial objector and noting that the objection he asserted on behalf of his client

---

[4] *Id.*

[5] Greenwalt Declaration, Exhibit A, Subpoena of Timothy Hanigan. In a further inappropriate measure, Class Counsel apparently seek to depose Objectors' general counsel, Christopher Bandas, who has not made an appearance in this case.

9

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

"misunderstand[s] or misread[s] the Settlement Agreement, or provide[s] no evidence or support (besides attorney argument) to advance his objection.").

Unsurprisingly, the citation to support this rhetoric is misleading. Indeed, Judge Snyder did make a reference, *in dicta*, similar to what is argued by Class Counsel. However, Judge Snyder went on to issue no less than ***two*** separate amended orders replacing her original order *nunc pro tunc* in which she *specifically* removed the passage at issue.[6] In effect, due to the *nunc pro tunc* nature of the two amended orders, the document does not exist, nor do the apparently mistaken statements regarding Mr. Hanigan. See, *Roberts v. Electrolux Home Prods.*, Case No.: 8:12-cv-01644-CAS-VBK [ECF Nos. 193](C.D. Cal. Sept. 11, 2014) [Greenwalt Declaration, EXHIBIT B]. All of this was known to Class Counsel, and yet he continued to use the citation and failed and refused to remove it from his argument.

After reading Class Counsel's argument, the Court may be under the impression that Mr. Hanigan has a long and storied history as some sort of professional objector; this, however, is entirely false and only illustrates the bad faith tactics of Class Counsel's *argument*. Indeed, Class Counsel cannot point to a single citation in which Mr. Hanigan has *ever* been admonished or called a serial objector.

## C.   PRELIMINARY MATTER:  CLASS COUNSEL FAILS TO PROVIDE ANY SUPPORT FOR THE RELIEF REQUEST AND INTENTIONALLY MISREPRESENTS THE CITATIONS PROVIDED

First, Mr. Hanigan informed Class Counsel that there is simply no authority to support the subpoena issued, and that any motion seeking to enforce the same would similarly be improper. On June 20, 2016, Class Counsel, sent an email referencing eight cases which he claimed "order[ed] similar discovery."[7] In fact, *not one* of the cases requires an attorney representing an objector to give a deposition.[8] Indeed, all of

---

[6] Class Counsel proffers *subjective* facts for why this was done. However, his private conversations with various individuals are irrelevant and inadmissible hearsay.

[7] Greenwalt Decl., Exhibit C, Correspondence of June 28, 2016.

[8] *In re Apple iPhone/iPod Warranty Lit.*, No. 10-01610 (N. D. Cal. Dec. 30, 2014, Dkt. No. 116) (not involving a requested attorney deposition; the Court denied,

10

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

the cases cited by Class Counsel allowed discovery of the objectors themselves; but *not* objectors' counsel.  Unabashedly, Class Counsel argues, infers, and misleads this Court that its citations stand for the premise that courts "regularly" allow depositions of counsel in similar situations.  This is entirely false.

Even worse, the only case dealing with the issue quashed an attorney deposition as inappropriate. *See Dremak v. Iovate Health Sciences Group, Inc.* (*In re Hydroxycut Mktg. & Sales Practices Litig.*), No. 09-md-2087 BTM, 2013 U.S. Dist. LEXIS 61674 (S.D. Cal. Apr. 29, 2013); *In re Hydroxycut Mktg. and Sales Practices Litig.*, 09CV1088 BTM KSC, 2013 WL 5275618, at *1 (S.D. Cal. Sept. 17, 2013) (noting that "in an order filed on April 29, 2013, the Court granted in part and denied in part the motion to quash. The Court quashed the subpoena directed to attorney Mr. Palmer. However, the Court determined that limited discovery of the Objectors was warranted."). In fact, it appears after researching on Westlaw that ***no court has ever***

---

without prejudice, a motion to quash the deposition of an objector); *In re Netflix Privacy Litig.*, 2013 WL 6173772 (N.D. Cal. 2013) (order allowing discovery of class members, but not discussing or authorizing attorney depositions);  *In re TFT-LCD Flat Panel Antitrust Litig.*, No. 07-1827 SI, 2013 U.S. Dist. LEXIS 23109 at 60-61 (N.D. Cal. Feb. 19, 2013) (not involving attorney deposition; court issued a contempt order relating to objectors' failure to appear at a deposition and alleged misconduct by an attorney at a deposition);  *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 532 (N.D. Cal. 2012) (court required an objector to appear for deposition; no issue of an attorney deposition); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, Case No. M:07-cv-01819-CW at Dkt. No. 1393 (Order dated September 23, 2011 granting motion to compel discovery from objectors, but not discussing an attorney deposition); *Dremak v. Iovate Health Sciences Group, Inc.* (*In re Hydroxycut Mktg. & Sales Practices Litig.*), No. 09-md-2087 BTM, 2013 U.S. Dist. LEXIS 61674 (S.D. Cal. Apr. 29, 2013) (court allowed limited discovery of objectors, but specifically quashed the subpoena directed to the objector's attorney); *In re Law Office of Jonathan E. Fortman*, LLC, No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903, at *2-3 (E.D. Mo. Feb. 1, 2013) (while court required the custodian of records for an attorney to attend a deposition and produce documents, it did not require an attorney deposition); *In re Flonase Antitrust Lit.*, No. 08-3301 (E.D. Pa. May 7, 2013) (Class Counsel did not cite an order in this case, and Movant could find no order in this case requiring an attorney deposition).

ordered an objector's attorney to give a deposition like the one Class Counsel seeks here.[9]

After bringing these arguments to the attention of Class Counsel, no meaningful response has been provided other than "we disagree." This, in-and-of-itself, is evidence of bad faith in relation to the meet-and-confer requirements of L.R. 37-1. The Motion should be denied on these grounds alone.

**D.    PRELIMINARY MATTER:  BANDAS IS NOT SUBJECT TO THE JURISDICTION OF THIS COURT**

Similarly, Hanigan attempted to meet-and-confer regarding this Motion as it applies to Bandas. Hanigan informed Class Counsel that a motion to compel Bandas in this Court is not proper under FRCP 45(d)(1), (2)(B)(i), (3)(A) & (B), (g) (amend. eff. 12/1/13). Specifically, motions to compel compliance with a subpoena are decided by "the court for the district where compliance is required." *Id.*

Here, the subpoena issued by Class Counsel for Bandas requires that Bandas appear in Corpus Christi, Texas, in the Southern District of Texas. See, Greenwalt Decl., Exhibit D. Therefore, any motion to compel compliance with the Bandas subpoena must be brought in the Southern District of Texas. Class Counsel is <u>fully</u> aware of this requirement. Nevertheless, Class Counsel insists on filing a motion to compel Bandas' deposition in this Court for no other purpose than to smear Hanigan's reputation because of Hanigan's association

---

[9] Under different circumstances, it appears one court allowed the deposition of an attorney of an objector who petitioned for $400,000 in attorney's fees. *See Collier v. Brightman*, No. 1:12-cv-1016, 2013 WL 652448, at *3-4 (S.D. Ind. Feb.21, 2013). Additionally, a district court required a custodian of records for an attorney of an objector to appear for deposition. *In re Law Office of Jonathan E. Fortman*, LLC, No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903, at *2-3 (E.D. Mo. Feb. 1, 2013). But, there do not appear to be any opinions on Westlaw authorizing a deposition of an attorney concerning the merits of his or her client's objections.

12

L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel

with Bandas in this case.  However, Hanigan is not a serial objector and has done absolutely nothing improper.

There is a mechanism in place to transfer a subpoena-related motion to the issuing court, but the party seeking transfer must have the consent of the nonparty, or the court (in this case, the Southern District of Texas) must find "exceptional circumstances" to transfer the motion to the Central District of California.  See, Fed. R. Civ. P. 45(f); *Woods ex rel. U.S. v. SouthernCare, Inc.* (N.D. AL. 2014) 303 FRD 405, 408 – no exceptional circumstances based on "judicial efficiency" of transfer to issuing court; see *Moon Mountain Farms, LLC v. Rural Comm. Ins. Co.* (N.D. Cal. 2014) 301 FRD 426, 429-430 (collecting "exceptional" cases).  Class Counsel has failed to even open a discovery action in the Southern District of Texas – further evidence of his bad faith tactics and shirking of procedural constraints.

Class Counsel cites to various cases which *he argues* stand for the premise that an order compelling Bandas is proper in this Court.  Again, these citations are purposefully misleading and, at times, completely false.

In *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 281 F.R.D. at 533, the party in questions was *again*, a class member/objector; not, as Class Counsel argues, objector's counsel.  Moreover, that party had already made an appearance in that case and thus was obviously subject to orders of the court.  Moreover, Class Counsel also cites to an internal citation of *In re Cathode Ray*, suggesting that the court in *In re Itel Securities Litigation*, 595 F.Supp.226 233 (N.D. Cal. 1984), *aff'd*, 791 F.2d 672 (9th Cir. 1986) allowed a deposition of an attorney who had not made an appearance in an action but was "working behind the scenes."  Shockingly, a cursory reading of *In re Itel* greatly departs from this proposition as the court makes perfectly clear, the attorney in question:  "Mr. Bader […] entered the securities litigation."  *Id.* at 229; "Mr. Bader… fil[ed] a motion in the securities litigation…" *Id.* at 230; "The [] objection was filed by

13

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

Mr. Bader…" *Id.* at 230.  Indeed, the *In re Itel* record is replete with instances in which the attorney in question had entered an appearance and taken several different actions in which he personally affected the docket.

Again, Class Counsel's citations are conspicuously misleading.  Worse so, when each and every instance of these misleading citations have been brought to his attention, he has not seriously addressed them.  While the occasional misleading cite may be overlooked as zealous advocacy, when a memorandum is rife with inaccurate summations one begins to question the veracity of the filer.

**E.     OBJECTORS SERVE A CRITICAL ROLE**

The deposition subpoena served on Objectors' Counsel is abusive and retaliatory. It serves only to discourage Objectors from pursuing their legitimately filed objections.

Given the judicially recognized role objectors play in the approval process of class action settlements, this should not be tolerated. "Objectors can also "add value to the class-action settlement process by . . . preventing collusion between lead plaintiff and defendants." *UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 236 (10th Cir. 2009) (citation omitted); *see also* 2003 Committee Note, Rule 23(h) ("In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as ... attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of Class Counsel").  Further, "[o]bjectors can encourage scrutiny of a proposed settlement and identify areas that need improvement. They can provide important information regarding the fairness, adequacy, and reasonableness of the settlement terms." *Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562, 568 (Mont. 2012).

Because objectors may pose a risk to Class Counsels' fees, "class action lawyers may try to fend off interlopers who oppose a proposed settlement as

insufficiently generous to the class[.]" *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, J.).  Yet, these tactics should be curtailed – objectors "prevent[] cozy deals that favor class lawyers and defendants at the expense of class members..." *Id.*

With this in mind, the subpoena for Objectors' Counsel must be quashed. While Class Counsel have the right to argue against any concerns that objectors raise, they do not have the right to use an attorney deposition as a platform to harass or to engineer the dismissal of valid objections before their merits can be reached.

## F.     COURTS START WITH THE PRESUMPTION THAT ATTORNEY DEPOSITIONS ARE IMPROPER

From the outset, attorney depositions are disfavored. *M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, C-08-02658-RMW, 2014 WL 819161, at *1 (N.D. Cal. Feb. 28, 2014) (unpub.). When a party seeks to depose opposing counsel, the normally permissive discovery rules become substantially less so. *Coleman v. D.C.*, 284 F.R.D. 16, 18-19 (D.D.C. 2012); *see Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) ("[t]he practice of forcing trial counsel to testify as a witness, however, has long been discouraged").

"Depositions of opposing counsel undermine attorney-client communications, present unique opportunities for harassment, disrupt opposing counsel's preparation, may lead to opposing counsel's disqualification, and may spawn collateral litigation on issues of privilege, scope, and relevancy." *Coleman v. District of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012). Given these serious concerns, courts "presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise." *Id.* "[A]ttorney depositions even for fact discovery generally are allowed only when the discovery cannot be obtained from another place." *State Natl. Ins. Co. v. Khatri*, C 13-00433 LB, 2014 WL 1877618, at *5-6 (N.D. Cal. May 9, 2014) (unpub.).

**G.   THERE IS NO LEGITIMATE BASIS FOR THE DEPOSITION OF OBJECTORS' COUNSEL**

District Courts in the Ninth Circuit have applied the standard from *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), which forbids a party from deposing opposing counsel unless: (1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. *Riverbank Holding Co., LLC v. New Hampshire Ins. Co.*, 2:11-CV-02681-WBS, 2012 WL 4748047, at *3 (E.D. Cal. Oct. 3, 2012) (unpub.) ("[t]hough not expressly adopted by the Ninth Circuit, the *Shelton* criteria has been widely used by the district courts of this circuit and many others, and we apply it here") (citations omitted); *Pastrana v. Local 9509, Communication Workers of America, AFL–CIO,* No. 06-CV-1779, 2007 WL 2900477, at *2 (S.D. Cal. 2007) ("*Shelton* [ ] is generally regarded as the leading case on attorney depositions."); *Massachusetts Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479, 482 (N.D. Cal. 1998) (applying *Shelton*).

Moreover, all information sought by Class Counsel is equally available through the actual Objectors – whom Class Counsel has already deposed.  The instant Motion, as it applies to Hanigan, is nothing more than an attempt to harass him.

**H.   INFORMATION SOUGHT FROM OBJECTORS' ATTORNEY IS NOT RELEVANT, AND CERTAINLY NOT CRUCIAL**

Class Counsel cannot satisfy their *Shelton* burden because they cannot show that Objectors' Counsel's testimony is "relevant" or "crucial" to the client's objections or the merits of the class action settlement. Class Counsel plainly want to inquire about Mr. Hanigan's representation of objectors in ***other*** class actions.[10]

---

[10]  *See* Greenwalt Decl., Exhibit A, Subpoena of Timothy Hanigan, Attachment A, request 3 (seeking documents and materials relating to all objections filed by Objectors' attorney since January 1, 2010).

16

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

But the representation of objectors in other class actions "has no greater bearing on the merits of the objection raised [in this class action] than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings." *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010). Class Counsels' objective is for the Court to prejudge Knott's and Smith's objections based on outcomes in other class actions involving their attorney. However, "[m]erely characterizing some of the attorneys as "professional objectors" without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011); *see also In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 2010 WL 4630846, MDL No. 08-1999 (E.D. Wisc. Nov. 2, 2010); *In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 1049269, No. 06-MD-1775 (JG)(VVP) (E.D.N.Y. Mar. 22, 2010). Other Courts have explicitly held that the motive of objectors or their counsel is simply not relevant to the merits of an objection.  See, e.g., *Corpac v. Rubin & Rothman, LLC,* 2012 WL 2923514, at *2-*3 (E.D.N.Y. July 19, 1012)("[t]he Court 'fail[s] to see how motives of [Objector], other than the obvious financial once of maximizing [his] recovery, would make any fact of consequence to the determination of reasonable fees, the amount of damages or the restriction on pursuing future claims] more or less probable.'") (citing *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 587 (3d Cir. 1984)). It is neither logically nor legally permissible to conclude that an objection is valid or invalid from outcomes in other cases, especially when those outcomes are mixed.

Only the merits of the objections should be of concern to the Court and Class Counsel. And, deposing Objector's attorney on his representation of other objectors in other class action lawsuits has absolutely no bearing on the merits here.

Thus, there has not been, nor can there be any showing that Mr. Hanigan's deposition is relevant. Certainly, it is not "crucial" that Class Counsel be permitted to

depose Objectors' Counsel about his representation of other objectors in unrelated class action settlements. As such, the subpoena must be quashed. *Riverbank*, 2012 WL 4748047, at *2 (without a "showing of what unique and crucial information would be provided by counsel's deposition on this matter . . . the defendant is not entitled to counsel's deposition and the court will not guess at possible, compelling reasons to allow one) (citing *Shelton*, 805 F.2d at 1327); *Villaflor v. Equifax Info.*, C-09-00329 MMC, 2010 WL 2891627, at *3 (N.D. Cal. July 22, 2010) (party seeking attorney deposition did not meet its Shelton burden; the information sought was "only marginally relevant" and there was "no showing that the information [was] crucial to the preparation of [the] case").

I. **CLASS COUNSEL CANNOT SHOW THAT NO OTHER MEANS EXIST TO OBTAIN WHATEVER THEORETICALLY RELEVANT, NON-PRIVILEGED INFORMATION THEY SEEK FROM OBJECTORS' ATTORNEY**

Even if there were some theoretically possible basis for concluding that Mr. Hanigan can provide relevant, non-privileged testimony that is "crucial" to Class Counsel, which there is not, there is no reason why such information cannot be secured by some other method than an attorney deposition. To the extent Class Counsel seek information concerning the merits of Objectors' objections or their standing in the class, they have already initiated discovery from Objectors.

There has been no showing by Class Counsel on this requirement under *Shelton*, nor can there be. Accordingly, Class Counsel are not entitled to depose Objectors' counsel and the subpoena must be quashed. *Riverbank*, 2012 WL 4748047, at *5 (refusing to allow a deposition of counsel where party "failed to show that no other means exist to obtain this information"); *Simmons Foods, Inc. v. Willis,* 191 F.R.D. 625, 630–31 (D. Kan. 2000) (refusing to allow attorney deposition where party seeking deposition failed to show that the information sought could only come from the attorney).

Additionally, Rule 45 of the Federal Rules of Civil Procedure **requires** the Court to quash a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden. FED. R. CIV. P. 45(3)(A)(iii), (iv.)

The information sought in the production of documents falls squarely within each of these two categories. Considering the requests and the posture of the case, these requests are unduly burdensome and have nothing to do with successful conclusion of the upcoming final settlement hearing. This Court must quash the subpoena.

## J.    SANCTIONS

### 1.    This Court should grant Rule 45(d)(1) sanctions.

Rule 45(d) of the Federal Rules of Civil Procedure requires sanctions for imposing an undue burden or expense on a person subject to subpoena. The rule provides, in relevant part:

> (d) Protecting a Person Subject to a Subpoena; Enforcement.
>
> (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required **must enforce this duty and impose an appropriate sanction**—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

FED. R. CIV. P. 45(d)(1)(emphasis added).

A court may "impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Leg. Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) (citing *Mount Hope Church v. Bash Back!,* 705 F.3d 418, 425, 428 (9th Cir.2012); *Mattel Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 814 (9th Cir.2003)).

19

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

The attorney subpoena here was clearly imposed to dissuade Objectors from pursuing their valid objections to the class action settlement and to impose undue burden on Objectors' Counsel. As discussed *supra*, there is no legitimate basis for deposing Mr. Hanigan as it relates to the merits of the objections to the settlement. Indeed, the information in which Class Counsel seeks to compel has *already* <u>been obtained from the objectors themselves!</u>

Accordingly, this Court should order Class Counsel to pay costs and attorneys' fees in being forced to respond to the subpoena. FED. R. CIV. P. 45(d)(1).

### 2. The Court should grant sanctions Pursuant to the Court's inherent power.

Federal Courts have inherent power to impose sanctions against attorneys for "bad faith" conduct in litigation. *Chambers v. NASCO, Inc.* (1991) 501 U.S. 32, 43 111 S.Ct. 2123, 2132; *Ralways Express, Inc. v. Piper* (1980) 447 U.S. 752, 764-766, 100 S.Ct. 2455, 2463-2464. The Court's inherent powers "are not governed by rule or statute but by the the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers, supra*, 501 U.S. at 43, 111 S.Ct. at 2132.

The relevant inquiry in deciding to impose sanctions is whether the attorney acted in "bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers, supra* 501 U.S. at 45-46, S.Ct. 2133. Sanctions under the court's inherent power are particularly appropriate for fraud practiced upon the court. *See, Chambers, supra* 501 U.S. at 32, 54, S.Ct. at 2134, 2138 fn. 17. A fraud on the court occurs when an officer of the court perpetrates a fraud that affects the ability of the court or jury to judge the case impartially. *Pumphrey v. K.W. Thompson Tool Co.* (9th Cir. 1995) 62 F.Supp.3d 1128, 1131.

On the instant facts, Class Counsel's conduct rises to the level of bad faith for a number of reasons: (1) citing to an order in another case which it knows to have been replaced in its entirety by no less than two separate amended orders *nunc pro tunc;*

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

(2) knowingly misrepresenting to the Court that the case law it cites stands for the proposition that an attorney's deposition is proper under these circumstances (when in fact, each case cited relates to the compelling of the actual objector, not the attorney for the objector); and (3) Class Counsel's improper attempt to compel Bandas' deposition in this matter contrary to the Federal Rules, so as to give Class Counsel a platform to smear Hanigan's reputation because of Hanigan's association with Bandas.

Class Counsel engages in such bad faith acts for no other motive than to commit a fraud on this Court "designed to improperly influence the court in its decision." *Pumphrey v. K.W. Thompson Tool Co.* (9th Cir. 1995) 62 F.Supp.3d 1128, 1131.  This is only more evidence when such falsehoods were repeatedly brought to the attention of Class Counsel by Hanigan.

In light of the blatant and ongoing bad faith actions by Class Counsel, the Court should grant sanctions pursuant to the Court's inherent power.

## K.    MR. HANIGAN'S CONCLUSION & PRAYER

In light of the foregoing, Mr. Hanigan respectfully requests that this Court quash the subpoena for production of attorney Timothy R. Hanigan and the productions of documents by same.  Mr. Hanigan also requests that this Court sanction Class Counsel by ordering payment of attorneys' fees and costs associated with responding to the subpoena, including costs for preparation and arguing of this motion.  Similarly, that this Court should set the foregoing sanctions request for immediate hearing, and issue and order requiring Class Counsel to appear *in person* to answer for their improper subpoena of Objectors' attorney.

### III.   CLASS COUNSEL'S CONTENTIONS IN SUPPORT OF THEIR MOTION TO COMPEL AND IN OPPOSITION TO THE MOTION TO QUASH

#### A.   BANDAS AND HANIGAN ARE SERIAL OBJECTORS WHO FILE OBJECTIONS IN BAD FAITH

Messrs. Hanigan and Bandas are notorious "professional" or "serial" objectors[11] who have a long history of asserting baseless objections to class action settlements—just like the baseless objections they assert here—in order to extort fees for themselves with no corresponding benefit to class members. "[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing." *In re Cathode Ray Tube Antitrust (CRT) Litig.*, 281 F.R.D. 531, 533 n.3 (N.D. Cal. 2012) *(quoting In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. Nov. 22, 2011) (internal quotations omitted).As noted above, the Knott/Smith objection filed by Mr. Hanigan states that Mr. Bandas is co-counsel, but that Mr. Bandas "does not presently intend on making an appearance for himself or his firm." This is a tactic regularly used by Mr. Bandas to avoid the imposition of sanctions on him. Among other cases, Mr. Bandas used this tactic in the *In re Flonase Antitrust Litig.*, C.A. No. 08-3301 (E.D. Pa. May 7, 2013), where his local counsel was ordered to appear for a deposition. A Motion to Sanction an objector represented by Mr. Bandas, and to refer Mr. Bandas to the State Bar of Texas's Commission for Lawyer Discipline, is currently pending in *Garber v. Office of the Comm'r of Baseball*, No. 12-cv-3704 (S.D.N.Y). In that case Mr. Bandas' similarly orchestrated the objection while trying to remain behind the scenes.

---

[11]   A professional objector is an attorney who "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2012 WL 1319881, at *2 (N.D. Cal. Apr. 16, 2012).

22

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

1  The docket does not reflect an entry of appearance by Bandas or any filing directly

2  made by under his name. His local counsel Mr. Stein withdrew his appearance after

3  admitting that Mr. Bandas had drafted the objection and Mr. Stein could not "stand

4  by" the objection he signed and filed without making a pre-filing "inquiry reasonable

5  under the circumstances." *See generally Garber* Dkt. No. 554-1 at 6. On July 7, 2016,

6  even though the frivolous objection/appeal was withdrawn (thereby ending the case),

7  the court ordered all objector's counsel including Mr. Bandas, to personally appear

8  "to discuss why the Court should not, *sua sponte*, issue an Order to Show Cause why

9  sanctions should not be imposed on the attorneys including Bandas. *Id.* at Dkt. No.

10  589 (Schwartz Decl., Exhibit H).

11       Of particular importance here, Bandas' objector-client here, Christine Knott,

12  testified that her retainer agreement was with Mr. Bandas; that her retainer with Mr.

13  Bandas required him ███████████████████████████████████

14  ███████████████████████████████████, which she expected to be

15  strictly followed; that Mr. Bandas never ███████████████████████

16  ██████████████; that she did not even know Mr. Hanigan was representing her; that

17  she never spoke with Mr. Bandas or any other lawyer before the objection was filed;

18  and she only spoke with a Bandas paralegal who had been a long-time friend.

19  Schwartz Decl., Exhibit C (transcript excerpts) at pages 34-38; 46-47; 94-98; 102;

20  121-123 Exhibit D (Bandas retainer).

21       This Court and many others have recognized that Mssrs. Hanigan and Bandas

22  are serial objectors, who offer nothing more than baseless objections that seek to

23  obtain fees for themselves by threatening to delay meritorious settlements. *See, e.g.,*

24  *Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, at *31 n.4 (C.D.

25  Cal. Sept. 11, 2014) (describing Mr. Hanigan as a serial objector and noting that the

26  objection he asserted on behalf of his client "misunderstand[s] or misread[s] the

27  Settlement Agreement, or provide[s] no evidence or support (besides attorney

28  argument) to advance his objection.").

23

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

Mr. Bandas is infamous not only for challenging class action settlements, but for doing so for personal gain rather than as an advocate for the interests of the class:

> [A]ttorney Christopher Bandas, [is] a "professional" or "serial" objector . . . . Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. at 533.

Courts have repeatedly sanctioned Mr. Bandas for his abuse of the objection process. In *Embry v. ACER Am. Corp.*, 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012), the Court struck the objection Mr. Bandas filed after he failed to post an appellate bond mandated by the court and refused to dismiss his appeal. In *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270 (W.D. Wash. 2013), the court "revoke[d] Mr. Bandas' authorization to practice in the Western District of Washington" after he failed to post a bond. *Dennings v. Clearwire Corp.*, No. 10-01859 (W.D. Wash. Aug. 20, 2013) (Dkt. Entry 166). Courts have also repeatedly imposed bond requirements on Mr. Bandas and his clients for appeals because they recognize that he files appeals for improper purposes as a matter of course. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 2010 WL 786513, at *1-*2 (D. Nev. Mar. 8, 2010) ($500,000.00 bond); *Conroy v. 3M Corp.*, 2006 U.S. Dist. LEXIS 96169 (S.D. Cal. Aug. 10, 2006) ($431,167.00); *Dennings*, 928 F. Supp. 2d at 1272 ($41,400.00); *Embry*, 2012 WL 3777163, at *2 ($70,650.00); *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Nov. 12, 2015), ECF No. 102 ($121,866.00).

Mr. Bandas' history of abuse is so bad, in fact, that well-known ideological objector Ted Frank has disassociated himself with Mr. Bandas, having concluded that his tactics are "'repugnant' and 'unethical.'" Alison Frankel, *The Ted Frank Interview*, Reuters, June 25, 2015; *see also* http://www.litigationandtrial.com/files/2015/06/Frank-Declaration.pdf (reflecting

---

24

that contrary to his promises upon associating with Mr. Frank, Mr. Bandas "settled" an appeal with large cash payments to his objector client and himself with no corresponding benefit to the class).  They are repugnant and unethical because he seeks not to benefit class members, but to obtain payoffs for himself and his clients. In *In re Hydroxycut Marketing & Sales Practices Litigation*, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013), the court found that Mr. Bandas sought $400,000 to "make his objection go away—otherwise, he could hold the settlement process up for two to three years through the appeal process. . . . Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made." Incredibly, none of the attorneys representing Ms. Knott ever told her about the extensive criticism of Bandas and his unethical conduct seeking to extort payments with no corresponding benefits to class members, or of any judicial criticism of Mr. Bandas (or Hanigan).  Knott Tr. at 117-119; 137; 153-173.  Ms. Knott did make clear she would never endorse such practices, agreeing such payments would be "improper.' *Id.* at 117-119.  In effect, Ms. Knott disclaimed the entire business model of Mr. Bandas. She also testified she never intended to hire an attorney who had been "excoriated" by federal judges for his conduct.  *Id.* at 156-157,

Judge Cote recently found that an objector's "relationship with Bandas, a known vexatious appellant, further supports a finding that [the objector] brings this appeal in bad faith."  *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014).

Mr. Bandas' practice of refraining from entering his appearance in cases—as he has done here—is a tactic whose very purpose is to avoid court sanctions.  *See, e.g., In re Hydroxycut Mktg. & Sales Practices Litig.*, 2014 WL 815394, at *3 (S.D. Cal. Mar. 3, 2014) (declining to impose Rule 11 sanctions for improper objection because it was "doubtful whether the Court has jurisdiction to sanction Mr. Bandas," but threatening to refer Mr. Bandas "to the State Bar of Texas's Commission for Lawyer Discipline"); *In re Flonase, supra.  See also Brown v. Wal Mart*, No. 01-L-

85 (Ill. Circuit Court, 14th Judicial Dist. Oct. 29, 2009) (Schwartz Decl., Ex. E (reflecting in various cases "Bandas' local counsel appeared at the final fairness hearing but only to withdraw as counsel due to the fact that he could not in 'good conscience . . . continue to work toward the strategic objectives outlined . . . by Mr. Bandas" and "Bandas' co-counsel is being referred by the Iowa court to the Iowa Supreme Court's disciplinary committee"). As discussed above, the recent order issued in *Garber v. Office of the Comm'r of Baseball* (Schwartz Decl., Exhibit H), reflects that courts are growing wary of Mr. Bandas' tactics (and believe they have jurisdiction to compel his personal appearance).

Mr. Hanigan has a similar history of making frivolous objections, appealing them when they are overruled, and then voluntarily withdrawing the appeal before it is ruled upon, usually after attempting to extract a payment without any corresponding benefit to the class or judicial scrutiny.[12]

Given this documented history of filing bad-faith objections, the assertion by Bandas/Hanigan, citing *Blessing*, that "merely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in a bad faith or vexatious, is not enough," is off base.

---

[12] *See, e.g.*, *Roberts*, 2014 WL 4568632, at *11 n.4 (finding that objections filed by Mr. Hanigan  "misunderstand or misread the Settlement Agreement, or provide no evidence or support"); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-CV-0248 JAH (WVG) (S.D. Cal.), ECF Nos. 167-1, 169, 171 & 175 (where Hanigan—along with co-counsel (and now suspended attorney, *see* ECF 242, 244  here) Joseph Palmer and Bandas—voluntarily withdrew their client's objection after it was revealed that one of them (apparently Bandas) signed their objector-client's signature onto a purported *pro se* objection filed with the court that was ghostwritten by those attorneys, and the objector had no knowledge of the substance of the objection). Such ghostwriting is improper. *Ellis v. Maine*, 448 F.2d 1325, 1328 (1st Cir. 1971); *Duran v. Carris*, 238 F.3d 1268 (10th Cir. 2001); *Ostovell v. Ostevoll*, 2000 WL 1611123 (S.D. Ohio 2000); *Wesley v. Don Stein Buick, Inc.*, 987 F. Supp. 884 (D. Kan. 1997) ("[t]he practice of 'ghostwriting' may also involve violations of professional ethics and contempt of court.").

26

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

**B.     COURTS ROUTINELY COMPEL THE DISCOVERY SOUGH HERE FROM SERIAL OBJECTORS AND THEIR COUNSEL**

Courts have repeatedly allowed Class Counsel to take discovery like the discovery sought here from professional objectors and their counsel. *See In re Law Office of Jonathan E. Fortman*, *LLC*, 2013 U.S. Dist. LEXIS 13903, at *1-2 (E.D. Mo. Feb. 1, 2013). In *In re Fortman*, Class Counsel argued and the court agreed in granting the motion to compel the custodian of records for Mr. Fortman's law practice that:

> When assessing the merits of an objection to a class action settlement, *courts consider the background and intent of objectors **and their counsel**, **particularly when indicative of a motive other than putting the interest of the class members first***.

*Id.* (emphasis added); *see also Koz v. Kellogg Co*., 2013 U.S. Dist. LEXIS 129205, at *11 n.2, 2013 WL 4834805 (S.D. Cal. Sept. 10, 2013) (citing *In re Fortman* for the proposition that "courts consider the background and intent of objectors and their counsel" in assessing the merits of an objection).

In *In re Fortman*, for example, the court ordered custodian of records for serial-objector lawyer Fortman to sit for deposition and produce documents related to the following: "(1) The filing of the objection in the underlying action; (2) Any objections filed in state or federal court by [Fortman] to other class action settlements; (3) Any fee sharing arrangements between [Fortman's firm] and its clients in relation to the current and their objections; and (4) Any settlements or payouts [Fortman] received in return for withdrawing a client's objection or appeal." *Id.* at *2. That is substantially the same information sought here, and objectors Knott and Smith cannot provide that information.

The same is true in *In re Flonase Antitrust Litigation*, No. 08-3301 (E.D. Pa. May 7, 2013), ECF No. 583 (Schwartz Decl., Exhibit F), where the court ordered both that "Class Counsel may take the depositions of the objectors and of the objectors' counsel." *See also Sullivan v. Kelly Sers., Inc.*, No. 08-cv-3893 (N.D. Cal.

27

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

Aug. 10, 2011), ECF No. 121 (ordering depositions of objector and custodian or records of his counsel regarding fee arrangements).

Likewise, in the $53 million cash settlement achieved by Co-Lead counsel here in *In re Apple iPhone/iPod Warranty Litigation*, a well-known group of professional objector attorneys (Mssrs. Kessinger, Fortman, Miller, and Kress) who take turns alternating between serving as objector and objector's counsel for each other, filed a frivolous objection.[13] The court ordered an attorney in that group (Kessinger) who served as an objector in that particular case to sit for deposition and produce discovery almost identical to that sought here.  No. 3:10-cv-01610-RS (N.D. Cal), ECF No. 126.[14]

Similarly, in *In re Netflix*, 2013 WL 6173772, at *4-5 (N.D. Cal. Nov. 25, 2013), Judge Davila ordered the objector to produce discovery regarding the "underlying basis for his objections, and his relationship with counsel." (citing *In re CRT Litig.*, 281 F.R.D. at 532–33).  Judge Davila further held that: "Plaintiffs' request seeks information regarding the merits and motivations behind the Objectors' appeals as well as their relationships with Counsel. The request for discovery is proper." *Id.* at 14.

In *In re Cathode Ray Tube (CRT) Antitrust Litigation*, class counsel sought similar discovery from a serial objector (Mr. Hull, who is Bandas' client in *Garber v. Office of the Comm'r of Baseball*) regarding the underlying basis for his objection and

---

[13] That group filed an objection here. Dkt. No. 226.

[14] In that case discovery was only sought from Kessinger. Because Kessinger served as attorney in with the Fortman/Miller/Kress cabal in numerous cases, the order to compel the deposition of and document production from Kessinger (over privilege objections) was sufficient and had the same practical effect as if the same discovery had been sought and compelled from Fortman, Miller, or Kress since, unlike objectors Knott and Smith here (neither of whom are attorneys or objected before), Kessinger had knowledge and access to the same information sought here (a list of objections, and payments for dismissals with an accounting of whether there was any corresponding benefits to the class for the extorted payments).

28

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

his relationship with "professional" or "serial" objector counsel including Mr. Bandas.  281 F.R.D. at 532.  Judge Conti found that:

> The information sought by IP Plaintiffs, including the bases for Hull's objection and his claimed standing to object, are clearly relevant to the Settlement now before the Court.….The requests for documents focus solely on the objector's standing, the bases for his current objections, his role in objecting to this and other class settlements, and his relationships with the counsel that are believed to be behind the scenes manipulating him. As such, the requested information and documents are relevant, needed and reasonably narrowly tailored.

*Id.* at 553.  *See also In re Static Random Access memory (SRAM) Antitrust Litig.*, Case No. 4:07-md-01819 at ECF Nos. 1393, 1386-7 (ordering objector to produce all documents "reflecting their communications with others . . . including attorneys . . . regarding their objections . . . ; all documents relating to agreements with others regarding the SRAM Litigation; and all documents related to objections made to settlements in other cases, including payments receive therein and any changes made to any settlement as a result of their objections"); *In re TFT-LCD Flat Panel Antitrust Litig.*, 2013 U.S. Dist. LEXIS 23109 (N.D. Cal. Feb. 19, 2013) (a Special Master appointed by the court ordered the same kind of discovery sought here, including discovery regarding the factual support for the objections, and other settlements where the objector had objected (and whether they received any compensation from those cases)).

Hanigan/Bandas cite *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), for the proposition that depositions of counsel are disfavored, but that case and the line of decisions following it do not preclude such discovery here.  Under the *Shelton* line of cases, "opposing trial counsel is [not]  . . . immune from being deposed." *Shelton*, 805 F.2d at 1327.  Rather, in deciding whether deposition of counsel should be allowed, courts consider whether "(1) no other means exist to obtain the information than to depose opposing counsel . . .; (2) the information

sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id*.   All of those factors weigh in favor of allowing deposition here.

As discussed above, the Bandas/Hanigan client here, Ms. Knott, testified she has no knowledge of her counsel's notorious backgrounds or practice of extorting payments to dismiss objections/appeals with no corresponding benefits to the class. Moreover, she not only was ignorant of the objections that Hanigan/Bandas filed on her behalf, she also flatly disclaimed virtually all of them at her deposition. She is clearly nothing more than a puppet of Hanigan/Bandas, who are the real parties in interest. So the requested information can only come from Hanigan/Bandas.

As noted above, the "background and intent of objectors **and their counsel**" is highly relevant, "particularly when indicative of a motive other than putting the interest of the class members first." *In re Law Office of Jonathan E. Fortman, LLC*, 2013 U.S. Dist. LEXIS 13903, at *1-2. Messrs. Hanigan and Bandas' long history of making baseless objections, sometimes without proper client permission (like appears to be the case here), and then filing appeals to delay implementation of settlements, and then leveraging that delay and dismissing appeals in exchange for large payments to themselves and their objector clients[15] with no corresponding benefit to class members, is therefore highly relevant here.   Further, as these arrangements are not publicly disclosed, there is no way to discover them absent the discovery sought.[16]

---

[15] The Frank affidavit reflects Mr. Bandas secured a $25,000 payment for his client to dismiss a frivolous appeal, along with hundreds of thousands of dollars in attorneys' fees to Mr. Bandas, a practice disclaimed as improper by Bandas client Ms. Knott. Ironically here Bandas/Hanigan object to the proposed $4,000 service awards to the class representatives who filed this case, produced documents, sat for depositions, and had their washers inspected. And Bandas' standard retainer references ███████ ███████████████████████████████████. Schwartz Decl., Ex. D, at §3.2.   But their client Ms. Knott agrees that the Class Representatives deserve the proposed $4,000 service award. Knott Tr. at 151-152.

[16] Ironically, while Messrs. Hanigan and Bandas make a practice of opposing fee awards to class counsel, which are publicly disclosed to and vetted by the courts, they chronically refuse to provide any information about the fees they collect by asserting

1  *See also Gebremedhin v. Am. Family Mut. Ins. Co*., 2015 U.S. Dist. LEXIS 91948, at

2  *18 (D. Colo. July 15, 2015) (allowing discovery of counsel under *Shelton* factors

3  where discovery was potentially crucial to determining whether an agreement was the

4  "product of fraud or collusion").

5  Further, courts have concluded that "the purpose of the Shelton rule—

6  protecting litigation strategy – [is] not implicated by … discovery … relate[d] to

7  *concluded litigation*."  *FMC Techs., Inc. v. Edwards*, 2007 U.S. Dist. LEXIS 18328,

8  *8-9, 2007 WL 836709 (W.D. Wash. Mar. 15, 2007) (emphasis added).  The focus of

9  the discovery sought here pertains to Messrs. Hanigan's and Bandas' long history of

10  *other cases* in which they extracted payment with no benefit to class members.

11  Another focus of the discovery will be to determine how they could file and persist in

12  the pursuit of objections that their client does not agree with and has disclaimed under

13  oath. This is exactly the type of information compelled in *In re CRT*, 281 FRD at 533,

14  and in the *Apple iPhone/iPod Litigation*.

15  Finally, there is nothing privileged about consideration paid to withdraw

16  objections in other cases, the division of such consideration, whether any benefits to

17  the classes in those cases were created, whether such consideration was disclosed to

18  the courts in those cases, and whether there were familial or business relationships

19  between counsel and those objectors. Indeed, the purported basis to all the of the

20  objections Messrs. Hanigan and Bandas file regarding class action fees is that they

21  should be subject to strict scrutiny by Courts.  The same should apply to their fees

22  and payments to their clients. A proposal that mandates disclosure and court approval

23  of any payments in connection with withdrawal of appeals is being considered in

24  connection with proposed amendments to Rule 23 and the Appellate Rules.  Any

25  confidentiality concerns are irrelevant since there is a protective order in place that

26  applies to non-party discovery. Dkt. No. 54. Such arguments have been rejected

27  before. *See In re Law Office of Jonathan E. Fortman, LLC*, 2013 U.S. Dist. LEXIS

28

baseless objections and seeking confidentiality agreements.

13903 (E.D. Mo. Feb. 1, 2013) (Fortman's custodian or records ordered to produce the same discovery requested here, with Court noting that "confidentiality concerns of Movant [Fortman] can be addressed by an appropriate protective order."); *see also* Order on Joint Discovery Letters, *In re Apple iPhone/iPod Warranty* Litigation, No. 3:10-cv-01610-RS (N.D. Cal Jan. 13, 2014), ECF No. 126 (Schwartz Decl., Exhibit G) (ordering the same discovery sought here and also requiring detailed privilege log in the event there are any assertions of attorney-client privilege).

## C.    THE BASELESS NATURE OF THE OBJECTIONS DEMONSTRATES AN IMPROPER PURPOSE AND IN ANY EVENT THE OBJECTIONS HAVE BEEN DISCLAIMED BY THE OBJECTOR CLIENT MS. KNOTT

While Class Counsel will address the so-called "merits" of the Knott and Smith objection more fully in their Motion for Final Approval and Reply in Support of the Motion for Attorneys' Fees, it is obvious that their objections are nothing more than a strained effort to extract a toll from the parties, and as such, are both frivolous and sanctionable. The settlement provides class members with full reimbursement of costs to repair their dishwashers due to Overheating Events, along with significant safety warnings to consumers and service repair personnel, plus rebates off the purchase of replacement washers that did not suffer Overheating Events.

For example, with respect to the component of the settlement providing all 6 million Class Dishwasher owners the opportunity to claim rebates of 10-20% on the purchase of new Whirlpool-manufactured dishwashers, the Knott/Smith objection states: "It appears class counsel structured the settlement so that it advances Whirlpool's business interests by requiring consumers to purchase additional Whirlpool products, at the expense of the class, presumably in exchange for little resistance to requested $15 million in attorneys' fees." That is absurd. As clearly disclosed in the Notice and Plaintiff's Fee Memorandum, Whirlpool has vigorously opposed Class Counsel's fee request, suggesting a $3.1 million fee, which represents only about 20% of Class Counsel's fee request and about 33% of Class Counsel's

32

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

1    lodestar. Dkt. No. 246.  Moreover, the rebate component of the settlement provides a

2    tangible economic benefit to Class members who *never experienced the overheating*

3    *defect with their dishwashers*, all of which are *at least* a decade old at this point, and

4    many of which are 15 years old.   Any Class member who actually experienced a past

5    Overheating Event is entitled to 100% of repair costs or $200-$300 cash if he or she

6    replaced the machine.  Given these circumstances, the rebate component is more than

7    fair, especially since the rebate can be combined with and is in addition to any other

8    promotion or discount offered by Whirlpool or a retailer.

9         The Knott/Smith objection also criticizes the settlement because Class

10   members who actually experienced an Overheating Event and replaced their

11   dishwashers with Whirlpool-manufactured dishwashers can recover $300 cash each,

12   while Class members who purchased a non-Whirlpool-manufactured dishwasher will

13   receive $200 each.  Contrary to the Knott/Smith objectors' ridiculous assertion, this

14   disparity does not "penalize [Class members] for choosing not to do business with the

15   company that sold them defective and dangerous products."   To the contrary, it

16   *punishes Whirlpool* by requiring a disgorgement of a portion of profits that Whirlpool

17   might have earned on those purchases.  In other words, it ensures that Whirlpool does

18   not receive a disproportionate benefit from Class members who experienced the

19   alleged defect and purchased another Whirlpool.

20        The Knott/Smith objection filed by Hanigan/Bandas also baselessly claims that

21   the $100,000 payment from Whirlpool to purchase Mr. Chambers' websites is "an

22   unreasonable sum [that] represents consideration that could have gone to the class."

23   First, the Knott/Smith objection offers zero support for the claim that this sum is

24   anything other than the actual value of Mr. Chamber's websites.  This Court has

25   already closely examined that component of the settlement and concluded that the

26   amount if fair, particularly given the significant role the websites played in the

27   initiation and prosecution of the action, in protecting the interest of class members,

28   and in facilitating communication with Class members. *See* Preliminary Approval

33

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

Order, ECF No. 199, at 26-28.  Second, it is entirely untrue that this "sum represents consideration that could have gone to the class."  The settlement benefits are wholly unaffected by this purchase.  Critically, Hanigan/Bandas apparently never explained that objection to Ms. Knott, since she testified that she had no objection to the payment given the important safety benefits resulting from Mr. Chambers' work and his websites.  When presented *by Class Counsel* with Judge Olguin's discussion approving that payment in the Preliminary Approval Order, she testified that she had no objections to anything stated therein and agreed Judge Olguin's analysis made sense.

In sum, the Knott/Smith objection is just another baseless attempt by serial objectors to extract fees with no benefits to the Class members. Class Counsel are entitled to discovery to buttress that point.

**D.     BANDAS WAS SERVED WITH THE SUBPOENA AND DEPOSITION REQUEST AND HAS NOT SERVED OR FILED ANY OBJECTIONS OR MOTION TO QUASH OR PROVIDED ANY REASONS WHY HE SHOULD NOT BE COMPELLED TO SIT FOR A DEPOSITION**

As set forth above, the Bandas subpoena was served on May 27, 2016.  He was also sent the subpoena via email on June 20, 2016 with citations to numerous cases compelling such discovery and offering to meet and confer. Schwartz Declaration, ¶ 2, 4 and Exhibit A.  He never served any objection on counsel.  *Id.* Nor to counsel's knowledge did he show up at the designated time and place. *Id.* Mr. Bandas and his associate R. Clore have been copied on at least nine emails from Hanigan associate Vaughn Greenwalt and ten from attorney Wade Howard, with whom Bandas contracted to represent his clients Smith and Knott at their depositions, related to the subpoenas and instant dispute (including production of Bandas' retainers with Smith and Knott and Mr. Howard's fee arrangement). *Id.* at ¶ 5.  Class Counsel Mr. Schwartz included Mssrs. Bandas and his associate on at least ten emails regarding the same issues, including offers to meet and confer. He has also been copied on the numerous exchanges of the Joint Stipulation regarding this discovery dispute. *Id.*

1  Contrary to the assertion above, Bandas is not "general counsel" to Objector Knott;

2  he was retained for the first time solely for this case.  Knott Tr., page 50, and that

3  retainer makes clear ████████████████████████████████████████████

4  ████████████████████████. Schwartz Decl., Ex. D  (retainer agreement), §5.2

5  According to her deposition testimony, Objector Knott has never had a single

6  communication with Mr. Hanigan or his firm. Bandas is intimately involved with and

7  indeed caused the objection to be filed in this Court, cannot deny he is actively

8  seeking to profit from it, and has been provided a full and fair opportunity to

9  participate in this stipulation. Any argument that Bandas is somehow immune from

10  responding to the subpoena and complying with any order issued by this Court, where

11  he caused the objection to be filed by a counsel assisting him, and from which the

12  subpoena was issued, should be rejected.  *See In re Cathode Ray Tube (CRT)*

13  *Antitrust Litigation,* 281 F.R.D. at 533- 533 ("Some courts have held that "absent

14  class members are parties to an action, properly before the court, and subject to its

15  judicial orders…To the extent Hull is considered a party, his deposition may be

16  noticed pursuant to Rule 30.").[17] Here, the June 20 email and served subpoena are a

17  sufficient Rule 30 notice and Bandas is the real party in interest, not his purported

18  client Ms. Smith. In any event, by failing to serve objections, he has waived any right

19  to object.

20      In *Garber v. Office of the Comm'r of Baseball*, *surpa*, the court ordered Bandas

21  to personally appear at a conference regarding whether he should be sanctioned for

22  his work behind the scenes there, even though Bandas never entered his appearance

23  or filed anything under his name.[18] If the court there had jurisdiction to order Bandas

24  to appear in court, then under substantially similar circumstances this Court has

25

26  [17] Thus, Mr. Bandas should not be able to use as a shield the provisions of Rule 45

27  that depositions of nonparties are generally decided by the court for the district where compliance is required.

28  [18]  A copy of the transcript of that hearing is attached as Exhibit I to the Schwartz Declaration.

35

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

1   jurisdiction to order him to provide discovery. It would make no sense to have the

2   discovery motions related to Hanigan and Bandas heard in separate jurisdictions as

3   Hanigan suggests, especially since ██████████████████████████████████████

4   ████████████████████████████████

5          Although the *In re Cathode Ray Tube (CRT) Antitrust Litigation* court granted

6   the motion to compel discovery from the objector, the court was ultimately concerned

7   with discovery regarding the objector's "relationships with the counsel that are

8   believed to be behind the scenes manipulating him." 281 F.R.D. at 533.  It is not

9   surprising that there was not an order for Bandas to provide discovery there, since

10  objector Hull's papers did not "list counsel," and the court was merely supposing that

11  Mr. Bandas was involved behind the scenes. *Id.* Significantly, the Court was taking

12  the next step to "explore [the objector's] relationship with Bandas and his practices

13  with regard to asserting settlement objections." *Id.* In this case, there is no doubt

14  Bandas is pulling the strings. Moreover, Class Counsel has already deposed the

15  Bandas/Hanigan clients, and the clients cannot yield any information concerning

16  Bandas' or Hanigan's "practices with regard to asserting settlement objections."

17  Therefore, like in *In re CRT*, Class Counsel "justifiably served the discovery" request

18  on Bandas (and Hanigan). *Id.*

19         As noted in *In re Cathode Ray Tube (CRT) Antitrust Litigation,* 281 F.R.D. at

20  34 (internal citations removed; emphasis added) as support for ordering the

21  deposition of a client of Mr. Bandas:

22              *In re Itel Securities Litigation*, 596 F.Supp. 226, 233
23              (N.D. Cal. 1984), *aff'd*, 791 F.2d 672 (9th Cir. 1986)…**an
                **attorney worked behind the scenes** to undermine a
24              class action settlement in a securities matter. After the
                settlement was approved and judgment entered, an
25              objector filed a notice of appeal at the attorney's behest.
                Over the attorney's objection that the Court lacked
26              jurisdiction, the Court permitted extensive post-judgment
27              proceedings against the objector **and the attorney**—
                including discovery and motion practice—reasoning that
28

_____

36

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

> a federal court of equity has jurisdiction [over ancillary matters] . . . to secure or preserve the fruits and advantages of a judgment or decree rendered therein. **The same rationale applies here**.

While, as Hanigan points out above, attorney working behind the scenes in *Intel* eventually entered his appearance, the court in *In re CRT* relied on the *rationale* of the *Intel* decision case (where the attorney was forced to testify) in compelling discovery to shed light on the practices of Bandas and his client Hull in using objections for personal gain at the expense of the class. So while *Intel* is not directly on point, as reflected in *In re CRT*, the underlying rationale is. Just as in *Garber,* the Court here should similarly not let Mr. Bandas escape its jurisdiction simply because he is playing puppet master behind the scenes.

## E.    HANIGAN/BANDAS' SANCTIONS REQUEST IS BASELESS

Hanigan/Bandas provide no reasoning supporting their request for sanctions. That request obviously must be denied if the court denies their motion to quash. Even if it does not deny that motion, Plaintiffs have cited numerous cases compelling the discovery requested here not just from client-objectors, but also from their lawyers. *See Fortman, Flonase, supra*. The client-objectors here do not have the requested information, so, unlike in many of the case compelling the same information from the client objectors (*e.g.*, *In re Apple*), here the information must come from the attorneys. The sanctions request regarding counsel's citations to the disparaging remarks about Mr. Hanigan by Judge Snyder in *Electrolux* are similarly baseless. The relevant facts are provided to the Court, which can make its own determination regarding weight.  The most notable fact on that issue is Mr. Hanigan provides no factual response to what is reflected on the docket and what counsel in the case have represented—that the subsequent amendments of the decision *after Hanigan withdrew* had nothing to do with Hanigan. To the extent Hanigan remained involved working with other objectors and received a payment as part of their withdrawal is  a topic  that can be addressed in his deposition.

1    If anything, the baseless sanctions request should result in the imposition of

2  sanctions against them. Moreover, Hanigan's filing of the objections with palpably-

3  incorrect facts and arguments disclaimed under oath by his purported client (with

4  whom neither he nor any other lawyer ever spoke and with whom he has never

5  communicated), and the persistence in those objections, represents sanctionable

6  conduct that will be addressed at the appropriate time.

7  **F.     PLAINTIFFS' CONCLUSION AND PRAYER**

8    Plaintiffs' respectfully request that this Court (1) deny the motion to quash and for

9  sanctions, (2) grant the motion to compel), (3) order Mssrs. Hanigan and Bandas to

10  either produced the requested documents (along with a detailed privilege log if

11  necessary) or alternatively proffer a declaration under oath providing list reflecting

12  the information  sought in the document requests), and sit for a deposition lasting no

13  more than four hours at a mutually agreeable time sufficiently before the August 25,

14  2016 Final Approval Hearing.

15  **IV.    CONCLUSION**

16    WHEREFORE, the disputants herewith submit their discovery dispute to the

17  Court.

18

19

20  DATED:  _July 28, 2016                    Respectfully submitted,

21                                            _/s/ Timothy R. Hanigan_

22                                            Timothy R. Hanigan (125791)

23                                            LANG, HANIGAN & CARVALHO, LLP,
                                              21550 Oxnard Street, Suite 760

24                                            Woodland Hills, California 91367

25                                            (818) 883-5644
                                              trhanigan@gmail.com

26

27                                            Attorney for Objectors/Class Members

28

---

1   DATED: July 28, 2016

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Steven A. Schwartz
Steven A. Schwartz (*pro hac vice*)
Timothy N. Mathews (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com
tnm@chimicles.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jeffrey M. Cohon (CSBN 131431)
Howard Pollak (CSBN 147077 )
**COHON & POLLAK, LLP**
10250 Constellation Boulevard, Suite 2320
Los Angeles, California  90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610
jcohon@cohonpollak.com

Charles S. Fax, Esquire (*pro hac vice*)
Rifkin Weiner Livingston, LLC
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-0172

David H. Weinstein (CSBN 43167)
Robert Kitchenoff (*pro hac vice*)
**WEINSTEIN KITCHENOFF &
ASHER LLC**
100 South Broad St., Suite 705
Philadelphia, Pennsylvania 19110-1061
Telephone: (215) 545-7200
Telecopier: (215) 545-6535
weinstein@wka-law.com
kitchenoff@wka-law.com

Nicole Sugnet (CSBN 246255)
**LEIFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Telecopier: (415) 956-1008
klaw@lchb.com
nsugnet@lchb.com

*Attorneys for Plaintiffs and Court –
Appointed Counsel for the Class*

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*

1

## Certificate of Service

2       The undersigned certifies that today he filed the foregoing Joint Stipulation

3   using the Court's ECF filing system which will send electronic notification to all

4   attorneys registered for ECF-filing.

5

6   DATED:  July 28, 2016

7

8                                          */s/ Steven A. Schwartz*
                                           Steven A. Schwartz
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*L.R. 37-1 J. Stip. Re  Quash Subpoena of Counsel & Sanctions and Motion to Compel*