**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **STEVE CHAMBERS, et al,** | |
| **Plaintiffs,** | **Case No. 8:11-cv-01733-FMO** |
| **v.** | **OBJECTOR KRESS AND COUNSEL OPPOSITION TO MOTION TO COMPEL DISCOVERY** |
| **WHIRLPOOLCORPORATION, et al,** | |
| **Defendants.** | |

**I.   Plaintiffs' Motion to Compel Discovery must be denied because they seek a ruling from this Court that would violate the Federal Rules of Civil Procedure, in particular Rule 37(a)(2), by inducing this Court to exceed its jurisdiction to compel discovery in the instant matter.**

Rule 37(a)(2) is clear that "A Motion for an order to a nonparty must be made in the court where the discovery is or will be taken."  Fed. R. Civ. P. 37 (a)(2) "Motion for an Order Compelling Disclosure or Discovery" (2015).  Class Counsel admits that they have failed to serve subpoenas upon Kelly Hortiz Kress and her attorneys John Kress and Steve Miller, who are non-parties and do not reside in this district (Doc # 285-1, p. 6-8).

Serving a subpoena "requires delivering a copy to the named person which is interpreted to mean personal service." Fed. R. Civ. P. 45(b)(1); _Moore v. Chase Inc., Case No. 1:14-cv-01178-SKO, p. 3 (E.D. Cal., 2015) citing _Prescott v. Cnty. of Stanislaus_, No. 1:10-cv-00592 JLT, 2012 WL 10617, at *3 (E.D. Cal. Jan. 3, 2012) (a majority of courts interpreting "delivering" to require personal service); _Morgutia-Johnson v. City of Fresno_ ,_Case No. 1:14-cv-00127-LJO-

*SKO, p. 3(E.D. Cal., 2015).*  Class Counsel must perfect personal service by personally serving the subpoena upon the non-parties Hortiz-Kress, Kress and Miller.[1]

If this Court allows such discovery to be compelled without service of the subpoena, it will be a violation of Rule 83 of the Federal Rules Civil Procedure, which "allows the district court to formulate local rules to the extent they are not inconsistent with the federal rules." *Tyler v. Knowles*, No. 14-15480, p. 3 (9th Cir. 2015) quoting *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976); *Marshall v. Gates*, 812 F. Supp. 1050, 1055 (C.D. Cal., 1993) citing *Frazier v. Heebe*, 482 U.S. 641, 107 S.Ct. 2607 (1987); *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1389 (C.A.9 (Cal.), 1990).  Granting a Motion to Compel Discovery against objector Kelly Hortiz Kress and her attorneys John Kress and Steven Miller will be inconsistent with Rule 45, and therefore run afoul of the limitations imposed by Rule 83. See Judge Olguin Order, Dkt. 293.[2]

---

[1] Class Counsel never properly triggered Local Rule 37-1, because they never served the subpoenas at issue upon Objector and her attorneys by personal service.  Objector's attorney responded with a letter that Class Counsel omitted from their Motion to Compel that is attached hereto as EXHIBIT A, explaining their reasons for not participating in such "meet and confer" and subsequent filing of a stipulation.  Moreover, the very language of Local Rule 37-1 indicates that the party availing itself, or triggering of the Rule is the moving party, or the one who is served with discovery. Once service is perfected upon Objector and/or her attorney's they may elect to avail themselves of the provisions afforded to them under Rule 37-1, or to file their Motion for Protective Order and/or to Quash in the respective district courts in which they reside and/or operate their law practices.

[2] In addition, Jonathan E. Fortman, co-counsel with Mr. Kress and Mr. Miller, has already provided a confidential affidavit pursuant to the Protective Order entered in this case [Doc. #54] providing the requested information in response to a subpoena served on him in Missouri and will be deposed on August 17th.  Therefore, the information sought is duplicative and is further evidence that Class Counsel is seeking only to harass Ms. Kress and her counsel.

**II.  Objector and her Counsel have complied in all respects with this Court's Orders and Notices as well as Rule 23.  Compelling Counsel for Objector to submit to depositions is utter harassment designed to interfere with Rule 23.**

As outlined and explained in counsel's letter to Class Counsel of July 12, 2016 (Exhibit A), Objector and her counsel have complied in all respects with this Court's pending Orders and Notices as well as Rule 23.

Lurid accusations are cast by Class Counsel against Objector Kress and her counsel, in the desperate hope that the Court's attention will be distracted from the proposed settlement that is nothing more than a collaborative effort at marketing and advertising the products of Whirlpool which provides no real benefits to the class.  Meanwhile, Class Counsel fight over their attorney's fees application with Defendants who have defined Class Counsels' fee request as something akin to a work of fiction in a bookstore.

Class Counsels' allegations fail to reveal nothing more than the opinions they hold of Objector Kress and her attorneys, and cannot be the basis for this Court to Compel Discovery. Class Counsel has multiple problems with their settlement, and to distract this Court has attacked the objector and her counsel repeatedly while ignoring the law and the facts, discussing the case of <u>Roberts v. Electrolux</u> when they know that such case does not support their position.

Class Counsel, in furtherance of their fraud depict the objectors in their Motion to Shorten Time, stating "this Court and many others have recognized that Objector's Counsel here are serial objectors, who offer nothing more than baseless objections that seek to obtain fees for themselves by threatening to delay meritorious settlements. *Roberts v. Electrolux Home Prods., 2014 U.S. Dist. LEXIS 130163, at *42-43 (C.D. Cal. Sept. 11, 2014)* (Doc # 286, p. 8, lines 13-18).  What the Court said in that case was that "The Court has considered the objections raised

by Ms. Newman and Ms Miller, and overrules them in their entirety." (EXHIBIT B, Doc 3193, p. 27-29).

Class Counsel, not willing to allow the truth to get in the way of a good story attacking Objector and her counsel that helps hide their poor settlement instead claims:

> Judge Snyder recounted their dubious history and held: "The Court has considered the objections of Ms. Newman and Ms. Miller, overrules them in their entirety, finds that they too appear to have been made with an improper motive (to extract a fee and not to benefit the Class), and finds that they are meritless. The Court finds that these objections are driven by counsel well-known and recognized by Courts for routinely filing meritless objections to class action settlements." Id. at *42-47. (Doc # 286, p. 8-14).

There is only one problem.  This paragraph does not exist in the Court's judgment/Order. The inflammatory language does not appear anywhere in Judge Snyder's Judgment/Order concerning Objector's counsel Mr. Miller or Mr. Kress. Here, Class Counsel has elected to embark upon a pattern and practice of deceiving this Court, instead of actually reading the correct opinion attached hereto (EXHIBIT B), which has such offensive language omitted.

Nevertheless, the false statements submitted by Class Counsel are repeated verbatim in their Motion to Compel Discovery (Doc # 285-1, p. 8-9) as the basis again for this Court ignoring the Federal Rules of Civil Procedure, and creating a new rule that disposes of the requirement of issuing a subpoena –when discovery involves objectors and their counsel. Instead of owning up to the "mistake", Class Counsel instead references that the "language was subsequently removed" in a footnote, making a vague allegation that the language was removed "in connection with the agreement of various objectors to drop their appeals without any corresponding benefit for the class" (Doc # 285-1, p. 9).  Once again, more rumor and innuendo

that is not based in reality or fact.  Class Counsel continues to rely on the language or the

"mistake" they made, by restating the same language from Judge Snyder that was subject to the

nunc pro tunc order in fueling other arguments in their Motion (Doc # 285-1, p. 11-12).

Class Counsel continues to distort the record.  No finding has ever been made by any

court that the objections made by Objector Kress and her counsel were in bad faith, lacked merit

or were baseless. Instead, Class Counsel latches upon other opinions that address other objectors

specifically and argue that such analysis is either intended to apply to Miller and Kress or should

be applied.

 In the nunc pro tunc order entered by Judge Snyder in *Electrolux*, Miller and Kress lack

any such "dubious history."  Nor has Judge Snyder (or any other court for that matter) found that

the objection in question "appear to have been made with an improper motive."  Judge Snyder

did not find that Miller and Kress' objection was "to extract a fee and not to benefit the Class".

Nor did Judge Snyder find Miller and Kress' objection was "meritless."  Finally, Judge Snyder

did not determine that Miller and Kress' objection was "driven by counsel well known and

recognized by Courts for routinely filing meritless objections to class action settlements."

Instead, Judge Snyder's Judgment/Order sets forth the following language:

> The Court has considered the objections raised by Ms. Newman
> and Ms. Miller, and overrules them in their entirety.

(EXHIBIT B, Doc # 193, p. 27-29).  Why was the inflammatory language removed and a new

judgment approved by Judge Snyder?  Because it was untrue. The original Judgment with the

offensive language was written up by class counsel in that case and provided to the court, ex

parte for her signature.  Understandably, Miller and Kress required the entry of a nunc pro tunc

order because of the sweeping allegations and conclusory statements that were not supported by

the record.  Class Counsels' continued efforts to vilify Objector Kress and her attorneys by

depicting them in a false light before this Court is driven by their insatiable need to protect what little attorneys' fees they will receive for essentially pushing a settlement on the class members in Whirlpool that does nothing more than provide coupons for past customers to purchase new washers with a discount.

No court has ever stated that Mr. Miller and Kress and their colleague "offer nothing more than baseless objections that seek to obtain fees for themselves by threatening to delay meritorious settlements" (Doc. #3, p. 3). Instead, Class Counsel distorts the objections raised by Kelly Hortiz Kress, offering a difference of opinion, at best, and fail to acknowledge in their Motion the conflict of interest they have created with their class members by creating a settlement that only pays money to a key plaintiff for shutting down his website, and the named plaintiffs (Doc # 226, p. 3-11).  The class members merely receive coupons good for the purchase of new dishwashers, while the named class members receive cash.  Class Counsel obfuscates the unfortunate facts of their settlement by claiming other courts have permitted deposing objectors and their attorneys by citing to other cases where apparently the objectors were actually served with subpoenas and their attorneys were not (such as Apple IPod (Doc # 285-1, p. 9), or an outlier case from Pennsylvania, _In re Flonase Antitrust Litigation_ that Class Counsel fails to discuss fully or disclose the circumstances permitting such deposition, and why it should permit a substantial change, or deviation from the Federal Civil Rules of Procedure (Doc # 285-1, p. 14).

Not surprisingly, Class Counsel avoids any substantive analysis that would permit this Court to throw out Rule 45 and simply order depositions of Objector and her counsel of record.

**III.    Class Counsels' Motion to Compel should be denied because they cannot overcome the requirement of Rule 45 of the Federal Rules of Civil Procedure that mandates that a non-party be served with a subpoena.**

Class Counsel grasps at straws by claiming that Federal Rule 30 supports their contention that Objector Kress and her attorneys should simply "be required to testify", without service of process (Doc # 285-1, p. 18). However, Rule 30 fails to stand for such proposition, as outlined by Rule 30(g)(2) which states that a party may recover attorney's fees if the "noticing party failed to serve a subpoena on a nonparty deponent, who consequently did not attend." Fed. R. Civ. Proc. 30(g)(2).  Again, the Federal Rules make it clear that a non-party must be served with a subpoena. This is not a gray area, or an area for the courts to expand upon.

The fundamental rule is that:

> if the deponent is not a party and does not consent to attend the deposition, the examining party may not set the place of the deposition more than 100 miles from where that persons resides, is employed, or regularly transacts business in person. Fed. R. Civ. 45(c)(3)(A)(ii). This is because a nonparty deponent's attendance at a deposition must be compelled by subpoena under Rule 45 . . .

*Weingand v. Harland Fin. Solutions, Inc., Case No. 11-cv-03109 EMC (N.D. Cal. 2012)* ("Though Rule 30 does not say so expressly, a subpoena is not necessary if the person to be examined is a party or an officer, director, or managing agent of a party.").  Issuance of a subpoena and service of process by personal service on a nonparty is a requirement, not a procedural device to be discarded when a litigant cannot effectuate service.  Federal Courts have threatened parties with monetary sanctions when they seek to compel discovery from nonparties when ignoring the requirements of Rule 45. *Robinson v. Cnty of San Joaquin, Case No. 2:12-cv-2783 MCE GGH PS (E.D. Cal, 2013).*

In a last ditch maneuver to avoid serving subpoenas, Class Counsel argues recent case law from *In re Cathode Ray Tube (CRT) Antitrust Litigation, 281 F.R.D. at 532-*33 supports

abandoning the Federal Rules of Civil Procedure and permitting discovery against Objector Kelly Hortiz Kress and her attorneys Miller and Kress (Doc # 285-1, p. 19).  In fact, the Court compelled the discovery against Objection Sean Hull in that case due in part to the fact that he was served with a subpoena while acknowledging that a court in 1976 did hold "absent class members are parties to an action", but ultimately reasoned that "Hull voluntarily appeared in this litigation by objecting to the Chungwa Settlement and was served with a subpoena, and is properly subject to discovery."  *In re Cathode Ray Tube (CRT) Antitrust Litig. Mast File No. CV-07-5944-SC, MDL No. 1917 (N.D. Cal., 2012).*

Nothing in that recent case supports the proposition that attorneys who represent absent class members who are either considered parties or nonparties to litigation may be deposed or compelled to produce discovery, absent a valid subpoena issued to the attorney(s) in question. Nonetheless, Class Counsel persists in advocating that this Court abandon the Federal Rules and instead permit a substitution of service, such as mail delivery citing to *Toni Brattin & Co., v. Mosaic Int'l, LLC* (Doc # 285-1, p. 20), another outlier case that is limited to the facts involved in which class counsel relies for the proposition that personal service of a subpoena should be waived, or substituted.  That reliance is misplaced, as *Brattin* stands only for the proposition that a court has the power "to command the appearance of witnesses in administrative proceedings". *Brattin & Co. v. Mosaic Int'l, LLC (N.D. Cal., 2015).* The issues in Brattin involved proceedings before the Patent Trademark Office.  Indeed, while the Ninth Circuit does not appear to have had many opportunities to construe the service requirement of Rule 45, it has indicated that personal service is preferred in the unpublished decision of Chima v. U.S. Dep't of Defense, 23 Fed. App'x 721, 724-25 (9th Cir. Dec 14, 2001) ("service by mail rather than by personal service" of subpoenas duces tecum on defense witnesses held improper). *Id.*

There is no substitute for personal service of a subpoena. This Court should deny the Motion to Compel outright.

## Conclusion

WHEREFORE, for the foregoing reasons, this Court should deny the Motion to Compel.

/s/ Steve A. Miller
STEVE A. MILLER (CA Bar No. 171815)
Steve A. Miller, P.C.
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# (303) 892-9933
Fax: (303) 892-8925
Email: sampc01@gmail.com

JOHN C. KRESS (53396MO)
The Kress Law Firm, LLC
P.O. Box 6525
St. Louis, MO  63125
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

JONATHAN E. FORTMAN (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florissant, Missouri  63031
Ph# (314) 522-2312
Fax:  (314) 524-1519
Email:  jef@fortmanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served upon all parties via the Court's ECF system this 9th day of August, 2016.

s/Steve A. Miller

EXHIBIT A

LAW OFFICES
## STEVE A. MILLER, P.C.
THE BARCLAY, NO. 2905
1625 LARIMER STREET
DENVER, COLORADO 80202-1539

TELEPHONE
(303) 892-9933

FACSIMILE
(303) 892-8925

July 12, 2016

Mr. Schwartz:

We are responding to your e-mail dated July 8, 2016.   We will not accept service of your subpoenas.   Nor do we believe that your communications to us constitute a notice of deposition, or invoke Local Rule 37.

On November 12, 2015, the District Court entered its preliminary approval order certifying a settlement class, approving notice to class members, setting deadlines for class members to oppose and file objections to the proposed class settlement and class counsel's request for attorney's fees, and setting a final fairness hearing to consider the fairness, reasonableness, and adequacy of the settlement, as well as to address class counsel's request for attorney's fees.

On February 23, 2016, the District Court entered an order amending certain deadlines in connection with the proposed class settlement.   These amended deadlines included February 25, 2016 as the last day for the settlement administrator to mail notices to class members and May 27, 2106 as the last day for class members to submit objections to the settlement and class counsel's application for attorney's fees, along with any opposition or objection by Defendants to class counsel's application for attorney's fees.   In addition, the District Court ordered class counsel to file its motion for final approval of the class settlement and responses to class member objections on or before July 8, 2016.

Our client, Kelly Kress, received postcard notice of the class settlement, which also advised class members to consult the long form notice published at www.DishwasherSettlement.com.   These court approved notices advise class members that they may file written objections to the settlement and class counsel's request for attorney's fees.   The notices advise class members that "Objecting is simply telling the Court that you don't like something about the Settlement."   These notices also advise class members that they may hire their own lawyer and that they do not have to attend the fairness hearing personally or through their own lawyer if they have timely filed their written objection by May 27, 2016.   These notices say nothing about class member objectors or their counsel being subjected to depositions or subpoenas, nor do any of the court orders that have been entered in connection with the proposed settlement.   Indeed, FRCP 23(c)(20(B)(iv) specifically grants class members who receive notice of proposed class settlements the right to have attorneys enter appearances on their behalf.   FRCP 23 does not limit the number of times counsel may represent class member objectors, nor does FRCP 23 subject counsel to depositions for entering their appearances on behalf of class member objectors.

Acting in compliance with the court approved notices, Ms. Kress retained counsel and timely filed her opposition and objection to the proposed class settlement on May 27, 2016.   In so doing, Ms. Kress asserted her objection by simply telling the court through her counsel what she does not like about the settlement as she was instructed to do in the notices. Objectors like Ms. Kress bring added scrutiny to class action settlements where the adversarial process has been lost due to the mutual interest settling plaintiffs and defendants have in seeking court approval of their negotiated settlements.   *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). Moreover, the Ninth Circuit insists upon heightened scrutiny of any class settlement, as here, that was negotiated before formal class certification.   *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

We note that you have now timely filed your response to objections, required by court order on July 8, 2016.   Your continued effort to depose our client, as well as us while appearing as her counsel in this matter, is an abuse of process designed to harass and intimidate objectors from asserting their Rule 23 substantive rights and to harass and interfere with the attorney-client relationships of any attorney who enters his appearance under Rule 23 for a class member objector.

We have complied with all of the orders and notices for representing a class member objector in this matter.   Your e-mail to us is not a notice to take depositions under Rule 30.   We are not parties, nor is our client.   If you believed otherwise, you would have given us advance notice of your intent to take depositions under Rule 30(b)(1) and intent to serve subpoenas under Rule 45(4) instead of trying to ambush us with deposition subpoenas.

Local Rule 37 does not apply since you have not effected service of your subpoenas on a non-party.   Your reliance on *Apple iPhone / iPod Warranty* is misplaced since in that matter you only sought the deposition of the class member objector after he had been served with a subpoena.   There was never any effort to subpoena his counsel for depositions.

Finally, we note that a disagreement among counsel of record as to any matter relating to the case, including discovery, does not permit you to approach the court *ex parte*.


s/Steve A. Miller


s/John Kress


s/Jonathan Fortman

EXHIBIT B

Case 8:12-cv-01644-CAS-VBK Document 629 Filed 08/04/18 Page 14 of 47 Page ID #:8843

1

2

3

4

5

6

7

## UNITED STATES DISTRICT COURT

8

## CENTRAL DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| SHAWN ROBERTS, et al., | Master File No. SACV12-1644-CAS(VBKx) |
| Plaintiffs, | |
| vs. | CLASS ACTION |
| ELECTROLUX HOME PRODUCTS, INC., | **[PROPOSED]** SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT |
| Defendants. | |
| | The Honorable Christina A. Snyder |
| This Document Relates To: All Actions. | |

10

11

12

13

14

15

16

17

18

19

20

21

22

Plaintiffs Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan and Tammie Humphrey, on behalf of themselves and a nationwide Settlement Class ("Plaintiffs"), and Defendant Electrolux Home Products, Inc. ("Electrolux") (collectively, "the Parties") have entered into a Settlement Agreement ("Settlement Agreement" or "Agreement"). The Parties previously

23

24

25

26

27

28

-1-

submitted the Settlement Agreement to this Court for preliminary approval of the class action settlement provided for therein (the "Settlement"). On May 5, 2014, this Court entered a Class Settlement Preliminary Approval Order ("Preliminary Approval Order"), which included provisional certification of a nationwide class ("Settlement Class"). Now, the matter having come before the Court for hearing on August 18, 2014, having considered the Parties' joint motion for entry of an order granting final approval of the proposed Settlement and for entry of final judgment in this matter; the Parties' memoranda in support; Class Counsel's application for attorneys' fees, expenses, and incentive awards; briefing submitted to the Court on class members' objections; and arguments presented to the Court at the final approval hearing, the Court FINDS, CONCLUDES, ORDERS, AND ADJUDGES as follows:

## I. JURISDICTION OF THE COURT

The Parties and the members of the nationwide Settlement Class ("Settlement Class Members") have submitted to the jurisdiction of this Court for purposes of the Settlement; the Court has personal jurisdiction over the Parties and the Settlement Class Members; the Court has subject matter jurisdiction to release all claims and causes of action released in the Settlement; and the Court has subject matter jurisdiction to approve the Settlement.

## II. CLASS CERTIFICATION

In the Preliminary Approval Order, this Court granted conditional class certification to the above-referenced Settlement Class, as well as to the Past Dryer Fire Subclass and Future Dryer Fire Subclass. The Court ordered that notice of the Settlement be directed by the claims administrator to the Settlement Class and Subclasses, defined as follows:

    a. <u>Settlement Class.</u> All residents of the United States who purchased,

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

primarily for personal or household purposes, a Dryer.  A "Dryer" is defined in the Settlement Agreement as a Frigidaire-, White Westinghouse-, Kelvinator-, Gibson-, Tappan-, Crosley-, or Kenmore- brand ball-hitch freestanding clothing dryer manufactured by Electrolux between January 1, 2002, and December 31, 2011. Excluded from the Settlement Class are (a) officers, directors, and employees of Electrolux and its parents or subsidiaries; (b) insurers of Settlement Class Members; (c) subrogees or entities claiming to be subrogated to the rights of Dryer purchasers, owners, or a Settlement Class Members; and (d) issuers or providers of extended Dryer warranties or service contracts.

b. <u>Past Dryer Fire Subclass.</u> All Settlement Class Members who experienced a Past Dryer Fire Event, defined as a fire in the drum, behind the drum, in the lint screen or adjacent air duct and blower, or base of the Dryer that occurred within 10 years after the purchase date of the Dryer that caused the Settlement Class Member to incur some unreimbursed out-of-pocket expense, including, but not limited to, property damage, insurance deductible, or repair or replacement of their Dryer.

c. <u>Future Dryer Fire Subclass.</u> All Settlement Class Members who experience a Future Dryer Fire Event, defined as after the Final Approval Order has been entered, but within the first 10 years after purchase of the Dryer, a fire occurring in the drum, behind the drum, in the lint screen or adjacent air duct and blower, or base of the Dryer that causes the Settlement Class Member to incur some unreimbursed out-of-pocket expense, including, but not limited to, property

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

damage, insurance deductible, or repair or replacement of their Dryer.

The Court found and concluded that the Settlement Class and the two subclasses satisfied all the requirements of due process and other applicable federal law and made several specific decisions relating to the Settlement Class. First, the Court appointed Edward A. Wallace, Amy E. Keller, and Dawn M. Goulet of Wexler Wallace LLP, Erin Dickinson and Charles Crueger of Hansen Reynolds Dickinson Crueger LLC, and Gregory F. Coleman of Greg Coleman Law PC as Co-Lead Counsel for Plaintiffs and the Settlement Class ("Class Counsel"), with authority to execute any and all pleadings and documents on behalf of the Settlement Class. Second, the Court appointed Plaintiffs Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan and Tammie Humphrey as class representatives ("Class Representatives"). Third, the Court appointed Kurtzman Carson Consultants ("KCC") as Class Administrator.

Having considered all submissions filed with the Court pursuant to the Preliminary Approval Order, the Court now finds and concludes that those provisional findings and conclusions should be, and hereby are, confirmed in all respects as a final class certification order under Federal Rule of Civil Procedure 23 for the purposes of implementing the nationwide class action Settlement provided for in the Settlement Agreement and entering final judgment in this action. The Court also overrules any remaining objections, and awards Class Counsel the requested attorneys' fees and costs and Class Representatives' the requested incentive payments.

## III. NOTICE

The Court considered the Settlement Notice Plan submitted by the parties, and the Declaration of Carla A. Peak of KCC describing the Notice Plan. The Preliminary Approval Order approved (1) the form and content of a mailed notice

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

of the Settlement to be provided to identifiable members of the Settlement Class (the "Settlement Notice"); (2) the form and content of a publication notice (the "Publication Notice") to be published in the nationally-circulated magazines *Parade* and *People*, as well as Internet banner notices which ran on websites such as HGTV.com and Facebook.com; (3) the form and content of the Frequently Asked Questions Form (the "FAQ") to be posted on the website created for this Settlement by the Settlement Administrator and mailed to any Settlement Class Member who requests a hard copy; (4) the form and content of the Claim Form; and (5) the plan specified in the Settlement Agreement for distributing and publishing the Settlement Notice, the FAQ, the Publication Notice, and the Claim Form.

The Court finds that the Notice itself is appropriate, and complies with Fed. R. Civ. P. 23(b)(3), 23(c)(2)(B), and 23(e), because the Settlement Notice, FAQ, and Publication Notice fairly, accurately, and reasonably informed members of the Settlement Class, in plain language, of (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreement; (2) appropriate information about, and means for obtaining, additional information regarding this litigation and the Settlement Agreement; (3) appropriate information about, and means for obtaining and submitting, a Claim Form; (4) appropriate information about the right of members of the Settlement Class to exclude themselves from the Settlement, object to the terms of the Settlement Agreement, including Class Counsel's request for an award of attorneys' fees and costs, and the procedures to do so; and (5) appropriate information about the consequences of failing to submit a Claim Form or failing to comply with the procedures and the deadline for opting out of, or objecting to, the Settlement.

Additionally, the Notice is appropriate and complies with the applicable

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

rules because it describes in plain language: (1) the nature of the action; (2) the definition of the Settlement Class and Subclasses; (3) the class claims, issues, or defenses; (4) that a Class member could enter an appearance through an attorney if the member so desired; (5) that the Court will exclude from the Class any member who timely requested exclusion; (6) the time and manner for requesting exclusion; (7) the time and manner for objecting to the Settlement; and (8) the binding effect of a judgment on Settlement Class members under Fed. R. Civ. P. 23(c)(3) and the terms of the releases.

On June 19, 2014, Carla A. Peak submitted a declaration informing the Court of the Parties' compliance with the notice procedures. And on August 8, 2014 (supplemented on September 11, 2014), Kenneth A. Stalzer—counsel for Electrolux—informed the Court that KCC mailed letters, pursuant to 28 U.S.C. § 1715, to the Attorney General of the United States and the attorneys general of each of the 50 states, U.S. territories, and the District of Columbia, and that no objections to the Settlement from any attorney general were received.

The Court finds that the Notice Plan—which includes the direct notice and publication notice as described above, in addition to the creation of a Settlement website (which includes copies of the Notice, Claim Form, FAQ or "long form" notice, and relevant pleadings) and toll-free number that Settlement Class members may call for additional information, meets the requirements of due process and Fed. R. Civ. P. 23(c) and (e), is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice.

Accordingly, the Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and California laws and due process. The Court finally approves the Notice Plan in all respects. The

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1 Court also finds that notice to appropriate federal and state officials pursuant to

2 the federal Class Action Fairness Act has been timely sent and that such notice

3 satisfies the requirements of the federal Class Action Fairness Act, 28 U.S.C. §

4 1715. Any objections to the notice provided to the Class are hereby overruled.

## IV. FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

6   In the Preliminary Approval Order, the Court found that the Settlement

7 Agreement appeared to be fair, reasonable, and adequate. The Court confirms this

8 finding, holds that the Settlement is fair, reasonable and adequate and grants final

9 approval of the Settlement.

### A. Benefits Available Under the Settlement

11   Pursuant to the Settlement, Electrolux is required to provide several

12 different benefits to Settlement Class Members: (1) a Customer-Instruct Safety

13 Notice mailed to identifiable Settlement Class Members with the Settlement

14 Notice and posted to Frigidaire and Electrolux's websites (as well as the

15 Settlement website); (2) a free safety cleaning service for Settlement Class

16 Members who experienced a Qualifying Performance Problem (as that term is

17 defined in the Settlement Agreement), and to provide training to its authorized

18 service professionals regarding the proper way to perform this cleaning service

19 pursuant to the Settlement and for Dryers in the future; (3) cash reimbursement to

20 members of the Past Dryer Fire Subclass and the Future Dryer Fire Subclass of

21 out-of-pocket expenses incurred due to a Dryer fire within the first 10 years after

22 purchase; and (4) a cash rebate to any Settlement Class Members for the purchase

23 of a new Frigidaire- or Electrolux-brand dryer or other qualifying home appliance

24 upon the submission of a qualifying claim form, or a discount code to any

25 Settlement Class Member who submits a qualifying claim form to be used in

26 purchasing new products from Electrolux's direct-to-consumer website,

27

28

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1   www.ElectroluxAppliances.com, in lieu of purchasing a new home appliance.

2   The Settlement does not require consumers to release any personal injury or

3   property damage claims—save for the economic loss to the Dryers, themselves.

4       Plaintiffs' counsel retained Frank Bernatowicz to perform a valuation of the

5   various benefits under this Settlement.  Mr. Bernatowicz has a Bachelor of

6   Science in Electrical Engineering and a Master of Business Administration degree

7   (along with a concentration in Accounting).  He is also a Professional Engineer

8   and Certified Public Accountant with lengthy experience as described in his

9   Declaration.  (ECF No. 153-1 at 28-29.)  Mr. Bernatowicz employed methods and

10   analyses of a type reasonably relied upon by experts in his field forming opinions

11   or inferences on valuation.  In connection with his valuation, Mr. Bernatowicz

12   also relied upon the Settlement Agreement, reports of two of Plaintiffs' other

13   experts (Marthinus van Schoor, Ph.D. and Carol Pollack-Nelson, Ph.D.), a report

14   authored by the Federal Emergency Management Agency ("FEMA") concerning

15   dryer fires which utilized conservative, voluntarily-reported data from the

16   National Fire Incident Reporting System ("NFIRS") where the fire department

17   was called, and a review and summary of literature on consumer motivation and

18   behavior concerning recall effectiveness authored by the United States Consumer

19   Product Safety Commission ("CPSC").  The Court has reviewed Mr.

20   Bernatowicz's valuation, along with the Parties' submissions and the record, and

21   makes the following findings concerning the Settlement's benefits.

### 1.    Customer-Instruct Safety Notice

23       The Court finds that the Customer-Instruct Safety Notice confers significant

24   benefits to Class Members, informing them that lint can build up inside of their

25   Dryers—more specifically, behind the drums of the Dryers—and should be

26   cleaned by an authorized service professional at least every 18 months.  The Court

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

notes that, in addition to being disseminated to identifiable class members by U.S. Mail and electronic mail, the notice is also posted to Electrolux and Frigidaire's websites and the Settlement website.

This Customer-Instruct Safety Notice was negotiated and developed by the Parties to address the allegations in Plaintiffs' Second Amended Consolidated Class Action Complaint ("Complaint"), as well as certain findings by their expert witnesses. Electrolux's cleaning instructions and warning in its Use and Care Guides contained no specific instructions that consumers needed to clean and remove lint *behind* the drums of these Dryers—where lint could accumulate next to the Dryers' heat source. Notably, Plaintiffs' expert Carol Pollack Nelson, a human factors psychologist specializing in consumer product safety (and who formerly worked for the United States Consumer Product Safety Commission), found—based upon research and a survey of Electrolux dryer owners—that consumers were not likely to follow safety and cleaning instructions when they are buried within the materials consumers receive when purchasing a Dryer. A stand-alone instruction is more likely to be read and understood by consumers and, according to Plaintiffs' expert Frank Bernatowicz, will "have a significant impact on the number of future fire incidents that will occur related to the subject Electrolux dryers," because it will influence consumer behavior. Mr. Bernatowicz estimates, utilizing data from Dr. van Schoor concerning future fires, that the benefits to the Class from the Customer-Instruct Safety Notice are valued at approximately $15.8 million.[1]

---

[1] Mr. Bernatowicz provides "full utilization" values and "projected utilization" values. The Court discusses Mr. Bernatowicz's "projected utilization" values, here, but notes that Mr. Bernatowicz provides a range of values as well as Electrolux's overall total potential liability as part of Class Counsel's Application

*(Footnote cont'd on next page.)*

9

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

The Court finds that this portion of the Settlement provides a substantial benefit to the Class and addresses the defects alleged in Plaintiffs' Complaint.

### 2. Safety Cleaning Service, Free-of-Charge to Class Members

Class members who experienced a Qualifying Service Problem with their Dryers—such as overheating, burning, or scorching of laundry loads—within the first five years of the purchase of the subject Dryers (and if the Dryers are less than ten years old—the "useful life" of these Dryers), are eligible for one free cleaning of the Dryer by an Electrolux-authorized service representative. Eligible Class members may schedule this cleaning any time within the next two years, and will be reminded 30 days before the end of that period to schedule the service. The cost of this service, which takes about an hour to perform, is estimated to be approximately $100 and there is no evidence in the record to rebut this estimate. Further, under the terms of the Settlement, should the cleaning be more than $100 or take more than one hour, Class members will *not* be charged for this service. As described in the Settlement Agreement and represented by the Parties to this Court—this service will occur free-of-charge to qualifying Class members.

Another component to this Settlement benefit requires Electrolux to provide training materials to its authorized service technicians concerning how to properly clean the subject Dryers. Plaintiffs' counsel notes that, through testimony provided to the Court from Electrolux's witnesses, in order to clean these Dryers, the drums of the Dryers must be removed and lint cleaned from the heater pan. These witnesses also testified that Electrolux previously provided no training or

---

*(Footnote cont'd from previous page.)*

for Attorneys' Fees and Expenses and for Service Awards. (ECF No. 153.) No one has presented any evidence rebutting Mr. Bernatowicz's valuations.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

instructions to its authorized service technicians to clean the Dryers.  So, in some instances, if Class members previously requested and paid for a cleaning, there would be no guarantee that their Dryers would be properly cleaned, and that lint would be removed from behind the drums and in the heater pans.

Mr. Bernatowicz examined this and other data provided by Plaintiffs' expert Dr. van Schoor.  Dr. van Schoor's report included findings that the number of Dryer fires increases up to year five, and then significantly declines immediately thereafter.  Further, individuals who experience the "Qualifying Service Problems" discussed in the Settlement Agreement may have Dryer conditions that are more likely to result in a fire.  Dr. Bernatowicz determined that the benefit to the Class members under this portion of the Settlement is approximately $11.9 million.

The Court finds, based upon a review of the record, that this portion of the Settlement also provides a tangible benefit and a service to the Class members— free of charge—that is not a coupon.

### 3. Monetary Benefits for Dryer Fire Subclass Members

Class members who experience a Dryer fire within the first ten years after the Dryer's purchase (which is, again, the useful life of the Dryers) will be eligible to receive up to $1,300 for unreimbursed expenses incurred in repairing or replacing their Dryers or for property damage.  This benefit is available for individuals who experienced a Dryer fire in the past or may experience one in the future for the entire prospective useful life of the last models of these Dryers sold—or until December 31, 2022.  Again, like the other benefits available to the Class members, individuals who make claims under this portion of the Settlement will not be releasing any personal injury or property damage claims—except for economic loss claims regarding damage to the Dryers themselves.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

Utilizing data from Plaintiffs' experts, the estimated value of this portion of the Settlement is $7.8 million based upon expected utilization rates. This portion of the Settlement provides real, tangible benefits in the form of monetary relief to the Fire Subclass members.

### 4. Cash Rebates and Online Vouchers to Purchase New Products

Finally, the Settlement provides up to $350 off the purchase price of a replacement Electrolux- or Frigidaire-brand clothes Dryer or an online code that can be used to purchase a number of Electrolux products at up to a 20% discount online. Customers will have up to two years to use the cash rebate benefit or online voucher code, and will be reminded to do so 30 days prior to its expiration. Additionally, the rebates and vouchers are fully transferrable—Settlement Class members may sell or give these benefits away to non-Class members.

The parties presented evidence and argument to the Court that Electrolux ceased producing these Dryers in 2011. Therefore, individuals who purchase new Electrolux products using the benefits provided under the Settlement will *not* be purchasing one of the allegedly-defective Dryers.

Mr. Bernatowicz did not assign a value to this portion of the Settlement, but the Court finds that it provides additional benefits to the Settlement Class members above and beyond the benefits already discussed.

### B. Additional Fairness Considerations

The Court finds that the benefits offered to the Settlement Class members are substantial. Taking other factors into account as required for final approval, the Court finds that the Settlement was negotiated with the assistance of nationally-renowned mediator Jonathan Marks, who submitted a declaration that the Settlement was reached after arms' length negotiations without any evidence

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1  of fraud or collusion in the negotiation process.

2  The Settlement was reached notwithstanding that on the merits Plaintiffs

3  faced a number of obstacles on the merits, including that Electrolux has won every

4  case it has tried regarding the alleged defects found in these Dryers, and that

5  Electrolux takes the position that over 99 percent of Dryer owners will never

6  experience a fire.  In addition to issues presented on the merits proving design

7  defects and causation, Plaintiffs faced obstacles regarding the economic loss rule

8  and manifestation of injury defenses under state law.  Plaintiffs also faced

9  obstacles related to the certification of a nation-wide or several state-wide classes

10  and maintaining certification through trial.

11  Having considered (1) the benefits offered to Settlement Class Members;

12  (2) the strength of Plaintiffs' case on the merits, and the defenses that may be

13  asserted by Electrolux; (3) the risks to members of the Settlement Class that

14  Electrolux would successfully defend some or all of the claims asserted by

15  Plaintiffs, whether litigated on a classwide basis or by members of the Settlement

16  Class themselves; (4) the expense and complexity of continued litigation; (5) the

17  length of time that would be required for members of the Settlement Class, or any

18  group thereof, to obtain a final judgment through one or more trials and appeals;

19  (6) the experience and views of Co-Lead Counsel and Electrolux's counsel; and

20  (7) the small number of members of the Settlement Class who have elected to be

21  excluded from the Settlement or who have objected to the Settlement, the Court

22  finds the Settlement to be fair, reasonable, and adequate.  Moreover, the Court

23  finds that the Settlement is the result of extended, arm's length negotiations

24  among experienced counsel, before an experienced mediator, and is non-collusive.

25  In consideration of the foregoing, the Court grants final approval of the

26  Settlement Agreement and enters this Final Order and Judgment implementing its

27

28

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

terms, including but not limited to the releases in the Settlement Agreement as to Settlement Class members except those who timely sought exclusion. All objections filed by members of the Settlement Class have been considered by the Court and are hereby overruled, as explained further herein. The Court finds that the Settlement Agreement is in all respects fair, reasonable, adequate, and in the best interest of the Settlement Class and hereby adopts and incorporates the terms of the Settlement Agreement for purposes of this Final Order and Judgment, including the definitions set forth in the Agreement. The Parties are directed to consummate the Settlement Agreement in accordance with its terms.

## V. FEES, COSTS, AND INCENTIVE AWARDS

The Court recognizes that Mr. Marks's declaration also stated that attorneys' fees were negotiated separately and apart from the Settlement. The Court finds that certain provisions of this Settlement will require additional work by Class Counsel, and that they have incurred, and will continue to incur, additional fees and expenses for which they will not seek reimbursement, including potential follow-on enforcement actions and monitoring of the Settlement. Class Counsel must monitor the Fire Subclass portion of this Settlement until at least December 31, 2022, as the Settlement provides for a meet and confer process regarding any denied claims.

The Court finds that the lodestar method is the appropriate approach for the calculation of attorneys' fees in this case. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *In re Ferrero Litig.*, No. 11-cv-00205-KSC, 2012 U.S. Dist. LEXIS 94900, *10 (S.D. Cal. July 9, 2014), *aff'd*, No. 12-56469, 2014 U.S. App. LEXIS 13573 (9th Cir. July 16, 2014) (in class action settlement providing for injunctive relief, "[t]he Court concludes that Plaintiffs are prevailing parties as the term is used in the fee-shifting provision of

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

the Consumer Legal Remedies Act, and Class Counsel are thus entitled to a reasonable fee and expense award for their work."). This litigation asserted claims under fee-shifting statutes including state consumer protection statutes (Cal. Civ. Code § 1750, *et seq.*, Ark. Code Ann. § 4-88-107, *et seq.*, N.Y. G.B.L. § 349, *et seq.*), and the Magnuson-Moss Warranty Improvement Act (15 U.S.C. § 2301, *et. seq.*)), each of which provides for attorneys' fees to a successful plaintiff (15 U.S.C. § 2310(d); Cal. Civ. Code. § 1780(e); Ark. Code Ann § 4-88-113; N.Y. G.B.L. § 349(h)) as well as significant injunctive relief and safety benefits. Under these circumstances the lodestar method of calculating fees is the appropriate method by which to measure attorneys' fees in this matter.

The Court hereby awards Class Counsel $8,000,000 for their incurred expenses and costs, as well as for attorneys' fees. As the record reflects, all of the attorneys appointed Class Counsel—in addition to local counsel in each of the consolidated actions—have prosecuted this action, with no guarantee of recovery, and have advanced all costs to date. The Court notes that Class Counsel has incurred over $627,000 in costs. As of July 22, 2014, this $8,000,000 request represented only a 1.23x multiplier on Class Counsel's fees[2]—and this multiplier will likely decrease as the Settlement moves forward and Class Counsel continues to monitor claims and respond to inquiries from the Class members. The Court finds that this multiplier is appropriate given the extensive amount of time spent by Class Counsel over the course of the two years prosecuting this action, the complexity of the case, the quality of representation, the novelty of issues presented (including the sophisticated engineering concepts involved in this case),

---

[2] The Court finds that Class Counsel's hourly rates are consistent with prevailing market rates.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

and the risk of nonpayment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citations omitted).

The Court also notes that a settlement valuation cross-check supports this fee award. The evidence and expert testimony submitted to the Court supports a valuation of the Settlement benefits totaling a minimum of $35.5 million. This value is based on expected utilization rates for which no contradictory evidence has been submitted. According to the evidence submitted, the total potential value of the Settlement is $155 million, however, that number was not used in evaluating the fee request. The cash rebate portion of the Settlement has not been valued or included in performing a valuation for lodestar cross-check purposes.

The requested fees approximate 21% of the value of the Settlement. This is well within—and even below—the benchmark recognized as appropriate in this Circuit. *See Hanlon*, 150 F.3d at 1029; *Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*, No. 05-cv-0633-JLS (CAB), 2011 U.S. Dist. LEXIS 21824, **36-37 (S.D. Cal. Mar. 3, 2011) (attorneys' fees represented 16.48% of settlement's "full utilization value," and 29.95% of the settlement's "projected utilization value"). The payment of attorneys' fees and costs will not diminish any of the benefits provided to the Settlement Class members.

The Court further awards $3,000 as an incentive award to each Class Representative: Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan and Tammie Humphrey, for their time spent prosecuting this action— including sitting for depositions, responding to discovery, and making their homes and Dryers available for inspection. The Court notes that certain Class Representatives experienced past dryer fires, and will submit claim forms as part of the Past Dryer Fire Subclass, and their claims will be considered and paid pursuant to the terms of the Settlement Agreement.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

The Court further finds that the Class Representatives are individually releasing claims for the property damage experienced as a result of their Dryer fires (and none of the absent Settlement Class members are providing these releases). The Court notes that, as part of their individual settlements, Plaintiffs will receive the following for individual (non-class) property damage claims: $25,000 to Shannon Carty; $7,587.33 to Matthew Downs; and $1,239.65 to Michelle McGowan. These separate settlement amounts do not render the Class Representatives inadequate or otherwise cause a conflict of interest; rather, the Class Representatives are settling their individual claims and providing releases— above and beyond the Settlement—as part of their own individual property damage claims. The Court finds that this creates no conflict of interest between the Class Representatives and the Class; nor does it creates a conflict between Class Counsel and the Class. *See La Fleur v. Medical Mgmt. Int'l*, No. 13-01960-VAP (OPx), 2014 U.S. Dist. LEXIS 90367, *22 (C.D. Cal. June 25, 2014) (incentive payment of $15,000 to each named plaintiff approved because, *inter alia*, the named plaintiffs released *all* claims against the defendant); *Hillgamyer v. Reliastar Life Ins. Co.*, No. 11-cv-729, 2013 U.S. Dist. LEXIS 147457 (W.D. Wis. Oct. 4, 2013) (pursuit and settlement of class representative's individual claim not incompatible with her serving as class representative so long as no class-wide release given). Finally, the Court awards $839 in litigation costs to Tammie Humphrey for the destructive testing of her Dryer as a necessary cost to pursue this litigation.

These amounts shall be paid by Electrolux consistent with the terms of the Settlement Agreement and will not diminish any of the benefits afforded to the Settlement Class members.

17

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

## VI.   OBJECTIONS TO THE SETTLEMENT

The Court has had an opportunity to review the objections submitted by a small percentage of the Settlement Class Members (10 objections by consumers, and objections from four objectors represented by counsel) and finds that an overwhelming majority of the Settlement Class views the Settlement favorably (there are approximately 6.5 million Class members), and notes that a majority of the consumer objectors have represented to Class Counsel that they will be or have withdrawn their objections.[3]  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to class members.").  *See also Churchill Vill., LLC v. GE*, 361 F.3d 566, 577 (9th Cir. 2003) (settlement approved with 500 opt-outs and 45 objections out of 90,000 class members); *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042, *12 (N.D. Cal. Mar. 5, 2010) (response of Class favored settlement where only 12 of 82,000 class members objected).  Of the remaining objections, the Court has carefully considered the letters and briefs submitted on behalf of the objectors and by Class Counsel and overrules the objections on the following bases.

---

[3] All objections received by Class members were attached to the Declaration of Amy E. Keller (ECF No. 163).  The Court has reviewed those objections in connection with issuing this Order, and finds that the objections, if not formally withdrawn, are overruled for the same reasons discussed herein related to the other objections.

### A. Consumer Objectors

#### 1. Objector Jerry Atkins

The Court notes that Mr. Atkins bases his objection on three main points: 1) that Electrolux has failed to inform owners of the cause and remedies considering long-term use of the Dryers; 2) that Electrolux has offered no preventative solutions; and 3) that Electrolux has not identified any design changes in newer models that would eliminate the alleged defect.

The Court finds that Mr. Atkins's objections are actually addressed by the terms of the Settlement: 1) Class members are receiving a Safety Notice that informs them that lint must be cleaned from behind the Dryers' drums to reduce the risk of fire and that this cleaning must be performed every 18 months; 2) Electrolux is cleaning eligible Class members' Dryers at no cost to the Class members; and 3) that newer models of Electrolux dryers do not contain the alleged defect or "ball-hitch" design described in Plaintiffs' Complaint. Mr. Atkins states that he fears that the "suit will permit escaping responsibilities for defective design," however, that ignores the reality of Electrolux's obligations under the terms of the Settlement as well as the fact that Class members are not, nor will they be required to, release any personal injury or property damage claims for past or future Dryer fires. Mr. Atkins's objection is hereby overruled.

#### 2. Objector Ronald Mondary

Mr. Mondary objects to the Settlement for a number of reasons; however, his objections are the result of a misunderstanding of the Settlement Agreement and issues with Electrolux that appear to have nothing to do with the allegations of this case. Namely, Mr. Mondary argues that he will be charged for the safety cleaning benefit; however, that benefit will be provided to eligible class members free-of-charge. Concerning Mr. Mondary's other objections (that his refrigerator

is not, as advertised, energy efficient, or that delivery persons who installed his Electrolux machines robbed his home), those claims are not the subject of this lawsuit, and he retains the right to seek relief concerning those other events, as appropriate, pursuant to another lawsuit if he so chooses.   Mr. Mondary's objection is hereby overruled.

## B.   Objections by those Represented by Counsel

The Court notes that, initially, three objections were filed by objectors represented by counsel July 28, 2014.   One of those objections, advanced by Daniel Hall, was later withdrawn after Class Counsel submitted a response to his objection on August 11, 2014.[4]   Two objections remain.   Neither counsel for the objectors nor the objectors themselves appeared at the Fairness Hearing on August 8, 2014.   The objectors submitted no evidence or expert testimony in support of their objections.

As the Ninth Circuit recognized in *Hanlon v. Chrysler Corp.*:

Of course it is possible . . . that [a] settlement could have been better.   But this possibility does not mean [a] settlement presented [is] not fair, reasonable or adequate.   Settlement is the offspring of

---

[4] Despite the withdrawal of this objection, the Court notes that the objection would have been overruled in its entirety.   It is unclear whether Mr. Hall even had standing to object to the Settlement.   The rest of Mr. Hall's objections misunderstand or misread the Settlement Agreement, or provide no evidence or support (besides attorney argument) to advance his objection.   For example, the Court overrules Mr. Hall's characterization of the Settlement as providing only "illusory value" to the Class—as stated herein—the benefits to the Class are substantial.   Mr. Hall also misinterprets the Settlement Agreement concerning his objections related to the Fire Subclasses—no Class member is required to release his or her personal injury or property damage claims under the Settlement. Finally, no conflicts exist between Class Counsel, the Class Representatives, and the Class.   As explained herein, Class Counsel's attorneys' fees request is reasonable and the Class Representatives' settlement of their individual claims does not render them inadequate.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion. In this regard, the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness. There [is] no disparate treatment between class members; all stood to benefit equally, a fact which lessens the likelihood that the named Plaintiff and their attorneys colluded with [the defendant] to increase their own recovery at the expense of the unnamed Plaintiff who Class Counsel had a duty to represent. . . . [Objectors who] . . . thought that [their personal claim was being sacrificed for the greater good] had the right to opt out of the class.

*Hanlon*, 150 F.3d at 1027.

The Court addresses the particular objections of the objectors represented by counsel as follows.

## 1. Objector Patrick Sweeney

The Court has considered the objections of Mr. Sweeney, overrules them in their entirety, finds that they are not made for the purpose of benefitting the Class), and finds that they are meritless in all respects. The objections are filed by counsel who routinely files objections to class settlements. *See, e.g., City of Roseville Empls. Ret. Sys. v. Orloff*, 484 F. App'x 138, 141 (9th Cir. 2012) (Mr. Palmer's appeal of an award of attorneys' fees found to be "meritless" and based upon misapprehensions of the law); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, **22-24, n.4 (N.D. Cal. July 11, 2014) (overruling objections and recognizing that "[l]ike Darrell Palmer, attorney Patrick Sweeney also has a long history of representing objectors in class action

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

proceedings"); *In re Dell Sec. Litig.*, No. A-06-CV-726-SS, ECF No. 342 (W.D. Tex. Jan. 11, 2011) (objection showed "little respect for the intelligence of [the] Court.").[5]  Here, as noted in Plaintiffs' response to Mr. Sweeney's objection, the fact that Mr. Palmer's client is also a serial objector in class action matters raises additional issues as to the legitimacy of the objection.

Aside from the fact that the Court finds that the objection is lawyer-driven and appears to be brought for an improper motive, and would otherwise delay important safety benefits to the Settlement Class members, the Court also finds that the objection is without merit, without evidentiary support and rests on inaccurate premises and mischaracterizations of the Settlement.

This is not a "coupon settlement."  While a portion of the Settlement provides Settlement Class members with cash rebates and vouchers, it provides numerous other benefits to the Settlement Class Members that specifically address the allegations in Plaintiffs' Complaint—such as safety measures including a notice to consumers, training regarding cleaning and a cleaning program designed to prevent fires. Contrary to Objectors' unsupported arguments, the cleaning benefit is a significant and tangible benefit to Dryer owners and is not a "coupon" or a "discount for services."  The cleaning program is neither unreasonably limited nor "valueless" as Mr. Sweeney (and, as discussed below, the other objectors) asserts without support.   Further, the Settlement also includes cash payments to

---

[5] The Court notes that Mr. Palmer has faced disciplinary actions in a number of courts, and has a pending disciplinary action before the State Bar of California.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

individuals who have suffered a fire and cash payments to those individuals who buy a new dryer or other product. These actual benefits are not "coupons."[6]

The Court finds that Mr. Sweeney's claims that the Settlement is "valueless" are without merit and consist of nothing more than unsupported attorney argument that contradicts the evidence presented to this Court. As discussed fully herein, the Settlement provides significant safety benefits to the Class and provides real economic relief to Class Members. The Court finds the valuation of the Settlement performed by Mr. Bernatowicz to be reliable and based upon standard accounting practices, and notes that the Mr. Sweeney has provided no evidence that Mr. Bernatowicz's calculation is "speculative," or "excessive," as his objection so states.[7] Objectors have not provided their own valuation of the Settlement and have provided no evidence or expert testimony as to what they believe its value might be. They conclude without support or evidence that the Settlement is simply "valueless." These conclusory statements cannot be weighed against the significant evidence and expert testimony supporting the value of the Settlement benefits. *See In re Toyota Unintended Acceleration*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, **310-311 (C.D. Cal. July 24, 2013) (rejecting unsupported objections to a

---

[6] The cash rebate program has not been used to value the Settlement, but the Court notes that it does provide additional value to the Class, objectors' arguments to the contrary.

[7] Mr. Sweeney also states that the settlement benefit provided to the Fire Subclass members is of "little value" because he misinterprets the Settlement. The Settlement is *not capped*, will be *fully-funded* by Electrolux, and does *not* require any release of personal injury or property damage claims (save for the economic loss to the Dryer, itself). That is, individuals who experience a Dryer fire may recoup dollar for dollar what they paid for their Dryers, and may still pursue their own personal injury or property damage claims.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

proposed fee award where the objectors presented no expert declaration or other evidence undermining the Court's conclusions).

Mr. Sweeney also questions whether the Settlement will reduce the risk of fires, and points to the FEMA Report cited by Mr. Bernatowicz as evidence of the average damage caused by a dryer fire in the United States. Mr. Sweeney provides no expert testimony to support his speculation based on this FEMA report on dryer fire rates or on the rate of failure of Electrolux's Dryers, and his objection on this point is overruled on that basis alone. In any event, his assumption that the FEMA report forecasts dryer fires or reflects all dryer fires in the United States is inaccurate. As explained by Class Counsel at the Fairness Hearing, the National Fire Incident Reporting System ("NIFRS") data in the FEMA report does not forecast Dryer failure rates. This is because the NIFRS data only contains data from *fire departments* who *voluntarily* report information on fires where the fire department was actually called. Mr. Bernatowicz and Dr. van Schoor used Electrolux's own information to forecast potential Dryer fires using broad search terminology in Electrolux's warranty database, which the Court finds to be reliable for purposes of this settlement. Mr. Bernatowicz's valuation of the benefit provided by the safety cleaning and notice provisions of the Settlement is accepted as reliable by this Court. Mr. Sweeney has provided no evidence to show that this valuation is speculative or inaccurate.

Mr. Sweeney's arguments that commonality "may" not exist are likewise overruled. His argument that commonality may not exist because "every fire is different" or "issues of comparative negligence" may exist is unexplained and lacks merit, given members of the Fire Subclass receive identical benefits (that is, up to the value they paid for the Dryers for economic loss related to the Dryers) under the Settlement and Class Members' property damage or personal injury

24

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1    claims are *not* released under the Settlement: they (or their insurers) are still able

2    to pursue those claims.  Mr. Sweeney's argument that commonality does not exist

3    among the Class members is also without merit because Plaintiffs' claims arise

4    from breach of warranty and violations of state consumer protection laws—

5    damages from those violations which occur at the *point of sale* of the Dryers—not

6    if and when the Dryers catch fire.

7        Mr. Sweeney's argument that Class Counsel are somehow "inadequate"

8    because they are "putting their own interests ahead of the class" lacks foundation

9    and contradicts the evidence.  Sweeney and Palmer never explain their basis for

10   this conclusory statement.  Jonathan Marks, the mediator overseeing settlement

11   negotiations, found no evidence of collusion or that counsel put their interests

12   ahead of the Class.  Mr. Marks' opinion is compelling and objectors provide no

13   evidence to the contrary.  Mr. Sweeney's objection on this basis is overruled.

14       Mr. Sweeney also takes issue with the requested fee award.  The Court has

15   found that Class Counsel's fee request is reasonable, and the information provided

16   to the Court concerning their lodestar and hourly rates is adequate.  *See* Section V,

17   *supra*. Mr. Sweeney provides no evidence or expert declaration to contradict

18   Plaintiffs' submissions.   As such, his objection to the amount of Plaintiffs'

19   attorneys' fee request is properly overruled.  *See In re Toyota Unintended*

20   *Acceleration*, 2013 U.S. Dist. LEXIS 123298, **310-311 ("All objectors to the

21   proposed fee award contend that it is excessive.  As a preliminary matter, the

22   Court notes that none of the objectors have provided an expert declaration or any

23   other evidence undermining the Court's conclusions herein.").  As described above

24   in this Court's approval of Attorneys' fees, the multiplier requested by Class

25   Counsel is more than appropriate given the complexity of the case, the work

26   required, the discovery performed, and the results obtained for the Class—which

27

28

1   are substantial and appropriate.

2          Objectors' argument that the fee petition was not timely filed is also

3   overruled. Plaintiffs intent to seek attorneys' fees and the amount of those fees

4   have been in the record of this case since April 2014, and both the Plaintiffs'

5   motion for Final Approval and Class Counsel's application for Attorneys' Fees

6   were filed within the deadlines set by this Court. Plaintiffs' request for

7   Preliminary Approval, filed on April 30, 2014, listed the bases for approval, the

8   terms of the Settlement, attached the Notices and outlined the amount of fees

9   attorneys were seeking. The Notices also provided Class members with

10  information concerning the amount of fees requested. Objectors fail to explain

11  how these filings provide insufficient notice regarding the terms of the Settlement

12  and the amount of fees Class Counsel is seeking (especially when the terms are

13  identical). Plaintiffs' application for attorneys' fees and expenses was filed *prior*

14  to the deadline to submit objections. Further, the Court notes that this Settlement

15  does not involve a common fund apportioned between relief and fees—and the

16  attorneys' fee award will not reduce any benefits received by the Class. Thus, any

17  objection regarding a so-called "clear sailing" provision is also overruled. *See*

18  *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 U.S.

19  Dist. LEXIS 14301, **29-30 (C.D. Cal. Jan. 30, 2014) ("The Settlement

20  Agreement merely provides that PCNA will not object to a fee petition by

21  plaintiffs' counsel so long as the requested fees and costs do not exceed $950,000.

22  This type of provision is appropriate when, as here, it does not impact the

23  substantive benefits offered to the class."); *Calloway v. Cash Am. Net of*

24  *California LLC*, No. 09-CV-04858 RS, 2011 U.S. Dist. LEXIS 41098, **3-5

25  (N.D. Cal. Apr. 12, 2011) (where no common fund exists, no adversarial

26  relationship exists between class counsel and the class concerning fees). As

27

28

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

evidenced by their extensive objections, Mr. Sweeney, represented by Mr. Palmer, appear to have had ample opportunity to review and critique Class Counsel's fee petition and their objection based on the timing of the filing of Plaintiffs' Fee Petition therefore lacks merit.

The Court has considered the entirety of Mr. Sweeney's objection and overrules that objection as lacking merit and foundation.

### 2. Objectors Kristina Newman and Joyce Miller

The Court has considered the objections of Ms. Newman and Ms. Miller and overrules them in their entirety.

The Court has already held that this is not a "coupon" settlement. *See* Sections IV.A. and B, V., and VI.B.1., *supra.* For the same reasons as set forth in the foregoing sections of this Court's Order, Ms. Newman and Ms. Miller's objections on this point are likewise overruled.

The Court also overrules Newman and Miller's objections regarding the purported "lack of benefit" the Settlement provides the Settlement Class for the same reasons contained in Sections IV.A. and B, V., and VI.B.1., *supra.* As fully set forth therein, the Settlement provides numerous benefits to the Settlement Class Members that specifically address the allegations in Plaintiffs' Complaint—such as safety measures including a notice to consumers, training regarding cleaning, and a cleaning program designed to prevent fires. The Settlement also includes cash payments to individuals who have suffered a fire and cash payments to those individuals who buy a new dryer or other product. No part of the Settlement requires class members to release personal injury or property damage claims above the economic loss to the Dryers, themselves.

Ms. Newman and Ms. Miller provide no expert testimony or evidentiary support for their objection that the Settlement is "without benefit." Their

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1    objections cannot properly be weighed against the ample evidence and expert

2    testimony before this Court supporting the valuation of the Settlement benefits.

3    *See supra* Section VI.B.1.

4            The Court also overrules the objection and finds that the claims procedure is

5    reasonable and adequate. Further, the acceptable documentation to prove that

6    Subclass members experienced a fire suggested in the Settlement papers (such as

7    photographs of the Dryer, fire department reports, or documentation from

8    insurance companies) are more than reasonable, especially considering that Class

9    Counsel may meet-and-confer with Electrolux to resolve any claims that are

10   denied for lack of sufficient documentation.[8]

11           The objectors also takes issue with the requested attorneys' fees and

12   incentive awards; however, as noted herein, Class Counsel has provided adequate

13   support to justify their reasonable fee request, and the fee request is further

14   supported by the valuation of the Settlement benefits. *See* discussion *supra*

15   Section VI.B.1. As described above in this Court's approval of attorneys' fees,

16   the multiplier requested by Class Counsel is more than appropriate given the

17   complexity of the case, the work required, the discovery performed, and the

18   results obtained for the Class. *See supra* Section V.

19           Finally, neither Class Counsel nor the Class Representatives placed their

20   interests ahead of the interests of the absent Class members—as the objectors

21   erroneously suggest. As is shown in the evidence submitted by the mediator, Mr.

22   Marks, there was no collusion in negotiating the attorneys' fees in this matter and

23

24   _____

25   [8] One consumer objector (Mr. Olesh) withdrew his objection on this basis after

26   discussing the many different types of supporting documentation he could submit
     to support his claim as a Subclass member. *See* Declaration of Amy E. Keller
     (ECF No. 163).

27                                                      28

28

1   those fees were negotiated *separate and apart* from the Class Settlement.  The

2   Class Representatives' settlement of their own personal property damage claims—

3   separate and apart from the Settlement and without reducing any of the Settlement

4   benefits—does not make them inadequate representatives, nor does it implicate

5   any breach of fiduciary duty to the absent Class members by Class Counsel.  *See*

6   *supra* Section V.

7        The Court has considered the objections raised by Ms. Newman and Ms.

8   Miller, and overrules them in their entirety.

9   **VII.   EXCLUSIONS FROM THE SETTLEMENT CLASS**

10       The Court notes, as it did in its discussion regarding objectors to the

11   Settlement, that the reaction to the Settlement has been overwhelmingly positive.

12   The Settlement Administrator has received requests for exclusion from 62

13   members of the Settlement Class, and has provided Class Counsel and

14   Electrolux's counsel copies of those requests.  Class Counsel and Electrolux's

15   counsel have jointly filed with the Court a list of those persons who have timely

16   elected to be excluded.  All persons named in the list on file with the Court as

17   having filed timely exclusions with the Settlement Administrator are hereby

18   excluded from the Settlement Class and will not be bound by the terms of the

19   Settlement.  Each individual or entity who falls within the definition of the

20   Settlement Class shall be bound by the terms of the Settlement.

21   **VIII.  IMPLEMENTATION OF SETTLEMENT**

22       Consistent with the Settlement Agreement, Electrolux shall make the

23   payments described in the Settlement Agreement, including, without limitation,

24   payment to each Settlement Class Member of the cash rebate amount, free Dryer

25   cleaning service, or cash reimbursement for a dryer fire, pursuant to applicable

26   terms and documentation requirements set forth in the Settlement Agreement. The

27

28

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES,
COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

Parties shall carry out their respective obligations as stated in the Settlement Agreement.

## IX.  RELEASE, COVENANT NOT TO SUE, AND EFFECT OF SETTLEMENT

### A.  Release

#### 1.  Settlement Class Members Who Are Not Members of the Past or Future Dryer Fire Subclass

In consideration of the terms of the Settlement Agreement, as to Plaintiffs and Settlement Class Members who are not members of the Past Dryer Fire Subclass or currently members of the Future Dryer Fire Subclass, they are hereby found, deemed, and adjudged to have fully, finally, and forever released and discharged all known and unknown claims, actions, and causes of action dealing whatsoever with the Dryers, other than claims for personal injury or property damage.  If any Class member becomes a member of the Future Dryer Fire Subclass in the future, he or she does not waive his or her ability to pursue additional compensation pursuant to this Settlement.  Plaintiffs have expressly, knowingly, and voluntarily waived the provisions of Section 1542 of the California Civil Code, which provides as follows, "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Plaintiffs have expressly waived and relinquished all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code and of all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to their released claims.

### 2. Members of the Past Dryer Fire Subclass or Future Dryer Fire Subclass

In consideration of the terms of the Settlement Agreement, as to members of the Past Dryer Fire Subclass or for those individuals who become members of the Future Dryer Fire Subclass, they are hereby found, and will be found, deemed, and adjudged to have fully, finally, and forever released and discharged all known and unknown claims, actions, and causes of action for economic loss dealing whatsoever with the Dryers, specifically excluding claims for personal injury or damage to property other than the Dryers. Plaintiffs have expressly, knowingly, and voluntarily waived the provisions of Section 1542 of the California Civil Code, which provides as follows, "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Plaintiffs have expressly waived and relinquished all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code and of all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to their released claims.

The Court shall retain jurisdiction over the Parties and the Agreement with respect to the future performance of the terms of the Agreement, and to assure that all payments and other actions required of any of the Parties by the Settlement are properly made.

### B. Covenant Not to Sue

In consideration of the terms of the Settlement Agreement, all Settlement Class Members, including Plaintiffs, are hereby found, deemed, and adjudged to

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

have (a) covenanted and agreed that neither Plaintiffs nor any of the Settlement Class Members, nor anyone authorized to act on behalf of any of them, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Settlement, against Releasees (as defined in the Settlement Agreement), or any of them, in either their personal or corporate capacity, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by Releasees, or any of them, in connection with the Released Claims (as defined in the Settlement Agreement); (b) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of any of them; and (c) agree that the Settlement Agreement shall be a complete bar to any such action.

### C. Settlement Agreement as Exclusive Remedy for Released Claims

Upon entry of this Order and Judgment, enforcement of the Settlement Agreement shall be the exclusive remedy for all members of the Settlement Class, including Plaintiffs, all of whom are hereby permanently barred and enjoined from instituting, commencing, prosecuting or continuing to prosecute, either directly or indirectly, any claims released under the Settlement Agreement against Electrolux or Releasees, as the release provisions of the Settlement Agreement define these terms. Settlement Class Members who are prosecuting or asserting any of the released claims are ordered to take whatever measures necessary to effectuate dismissal of their claims.

### D. Effect of a Final Judicial Determination of Invalidity or Unenforceability

If, after entry of this Final Order and Judgment by the Court, a notice of

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

appeal of this Final Order and Judgment is timely filed by any party, objector, claimant, or other person or entity, and if an appellate court makes a final determination that this Final Order and Judgment is in any respect invalid, contrary to law, or unenforceable (except for such determinations that are limited to the attorneys' fees or incentive awards), this Order shall be automatically vacated, the Settlement Agreement shall be null and void, and Electrolux may fully contest certification of any class as if no Settlement Class or subclasses had been certified. In addition, the Parties shall return to their respective positions in this lawsuit as they existed immediately before the Parties executed the Settlement Agreement, and nothing stated herein or in the Settlement Agreement shall be deemed an admission or waiver of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action.

## X. NO ADMISSION OF LIABILITY

The Parties entered into the Settlement Agreement solely for the purpose of compromising and settling disputed claims. Nothing contained in the Settlement Agreement, any documents relating to the Settlement, the Preliminary Approval Order, or this Final Order and Judgment shall be construed, deemed, or offered as an admission by any of the Parties or any member of the Settlement Class for any purpose in any judicial or administrative action or proceeding of any kind, whether in law or equity. In entering this Order with this provision and other limiting provisions, this Court specifically refers to and invokes the Full Faith and Credit Clause of the United States Constitution and the doctrine of comity and requests that any court in any other jurisdiction reviewing, construing, or applying this Order implement and enforce such limiting provision.

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK

## XI. ENTRY OF FINAL JUDGMENT

The Court hereby dismisses with prejudice all claims alleged in this action. The Court further orders the entry of, and enters, this Final Order and Judgment on all claims, counts, and causes of action alleged in this action by Plaintiffs, on behalf of themselves, the Settlement Class, or both.  In entering this Final Order and Judgment, this Court specifically refers to and invokes the Full Faith and Credit Clause of the United States Constitution and the doctrine of comity, and requests that any court in any other jurisdiction reviewing, construing, or applying this Judgment implement and enforce its terms in their entirety.

Without affecting the finality of this Final Order and Judgment in any way, this Court hereby reserves jurisdiction over (1) implementation of this Settlement and this action; (2) all matters relating to the administration and consummation of the Settlement; and (3) all Parties to this action for the purpose of implementing, enforcing, and monitoring compliance with, effectuating, administering, and interpreting the provisions of Settlement Agreement and this Final Order and Judgment.

In issuing this Order, the Court grants final approval to the Settlement, awards the requested attorneys' fees and costs, awards the requested incentive payments to the Class Representatives, and overrules the objections as stated herein.

IT IS SO ORDERED.

Dated: September 11, 2014

Honorable Christina A. Snyder
United States District Judge

---

34

SECOND AMENDED ORDER *NUNC PRO TUNC* GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT

MASTER FILE NO. 8:12-cv-01644-CAS-VBK