# EXHIBIT 3 TO SCHWARTZ DECLARATION

1              UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4   STEVE CHAMBERS, et al.,    )

5             Plaintiffs,      )

6      v.                      ) Case No.
                                 8:11-cv-01733-FMO-MJG
7   WHIRLPOOL CORPORATION,     )
    et al.,
8                              )

9             Defendants.      )

10  _____)

11

12

13

14            DEPOSITION OF TIMOTHY R. HANIGAN

15            (CONFIDENTIAL PORTION EXCERPTED)

16                 August 18, 2016

17                    10:12 a.m.

18

19       10250 Constellation Boulevard, Suite 2320

20                 Los Angeles, California

21

22

23

24  REPORTED BY:

25  Kristi Caruthers, CSR No. 10560

```
 1                    MR. HANIGAN:  Attorney product and

 2     attorney-client.

 3     BY MR. SCHWARTZ:

 4            Q.   Okay.  And then in Paragraph 6 you

 5     said the first such E-mail was on May 25, 2016;

 6     correct?

 7            A.   I do.

 8            Q.   Was that the very first communication

 9     you had with Mr. Bandas or his firm regarding this

10     case?

11                    MR. HANIGAN:  Objection;

12     attorney-client work product.

13     BY MR. SCHWARTZ:

14            Q.   Was that the first written

15     communication you had with Mr. Bandas or his firm

16     in this case?

17            A.   To my knowledge, yes.

18            Q.   Prior to May 25, 2016, did you have

19     any telephone calls with Mr. Bandas or anyone from

20     his firm regarding this case?

21                    MR. HANIGAN:  Objection; attorney

22     work product.

23     BY MR. SCHWARTZ:

24            Q.   Just so we're clear, are you

25     asserting that -- putting aside the substance of
```

```
 1    any telephone calls, are you asserting that the
 2    fact of a phone call is subject to attorney work
 3    product privilege?
 4              A.   Yes.  Who I talked to in preparation
 5    of this case, regardless of what was said, is
 6    attorney work product.
 7              Q.   Prior to May 25, 2016, did you have
 8    any involvement in this case?
 9              A.   Not to my knowledge.
10              Q.   In Paragraph 8 you reference a
11    retainer agreement between you -- or your firm and
12    Mr. Bandas's firm from 2012 in the -- I believe
13    it's the Netflix case.
14              Do you see that?
15              A.   Yes, I do.
16              Q.   Now, you have attached a copy of
17    that agreement to your declaration, so if you
18    could just look at that for a moment.  Let me know
19    when you get there.
20              A.   I'm there.
21              Q.   I notice that the copy of this
22    agreement that you provided us is only signed by
23    you but not by Mr. Bandas's firm.
24              Is that because this is the only
25    copy that you were able to find in your file?
```

```
 1              A.   That is correct.
 2              Q.   Is it your recollection or
 3    understanding that this version of the contract
 4    was at some point signed by Mr. Bandas?
 5              A.   I do not recall.
 6              Q.   Does the retainer agreement in the
 7    Netflix case accurately reflect that you understand
 8    your agreement is with Mr. Bandas's firm in
 9    connection with your role in this case?
10              A.   With respect to the hourly fees,
11    yes.  Other than that, I haven't really gone over
12    it in detail.
13              Q.   Okay.  Has Mr. Bandas's firm
14    retained your firm with an hourly, noncontingent
15    basis in this case?
16              A.   Yes.
17              Q.   Do you have any financial interest
18    other than collecting your hourly rates as billed
19    in this case?
20              A.   Nope.
21              Q.   So it's your understanding that you
22    can't receive any bonus or a portion of any other
23    fees or monies that might be paid in connection
24    with this case other than what you're paid for
25    your hourly time and hourly rate?
```

```
 1              A.   No.
 2              Q.   I may have asked the question the
 3    wrong way so it may have been ambiguous, so I'll
 4    ask it again just to make sure that we have a good
 5    record.
 6                   Is it your understanding that you
 7    will not be able to receive any compensation in
 8    this case other than what you're paid from
 9    Mr. Bandas's firm for the hourly time and rates
10    that you've put into this case?
11              A.   That's my current agreement,
12    correct.
13              Q.   So if we could go to the privilege
14    log that's attached to your declaration.  Let me
15    know when you're there.
16              A.   Okay.
17              Q.   The first entry on this is on
18    May 25, 2016, and it's an E-mail thread regarding
19    communications regarding filing of objections, and
20    it was sent from Donna -- the author is Donna
21    Lopez -- well, the author, it says Donna Lopez and
22    Tim Hanigan, but I suspect that was just Donna
23    Lopez sending an E-mail to you; am I wrong?  Or
24    there are multiple E-mails, I guess.
25              A.   I believe it said E-mail thread,
```

```
 1    which would tell me it was more than one.
 2              Q.   Right.  And I think you talked
 3    about this before.
 4                   Was May 25, 2016 the first time you
 5    did anything in this case?
 6              A.   To my knowledge, yes.
 7              Q.   Now, keep the privilege log handy,
 8    but if you go back to the bills that you provided.
 9              A.   Okay.
10              Q.   I notice that the first bill, which
11    is the June 1, 2016 bill, the very first entry is
12    a May 22nd, 2016 entry for .7 hours for your work.
13                   Do you see that?
14              A.   Yes.
15              Q.   So am I right that you did not bill
16    for the E-mail thread on May 25?
17              A.   I did not.
18              Q.   And was the reason why you did not
19    bill for the E-mail thread on May 25 that you did
20    not -- you would not spend enough time that would
21    get your minimum billing threshold, which is .2 an
22    hour?
23              A.   I don't recall why.
24              Q.   Are you generally careful about
25    making sure that if you do substantive work for a
```

```
 1    client that you bill your time as opposed to

 2    forgetting to bill your time?

 3              A.   I do both.

 4              Q.   Do you believe you forgot to bill

 5    for any substantive time on May 25, 2016?

 6              A.   I do not recall.

 7              Q.   So when the bill for the 5-27-2016

 8    entry, it says, "Review objection, telephone calls

 9    with Donna regarding same, prepare and review

10    E-mails."

11                   Do you see that?

12              A.   Yes --

13              Q.   Now, Donna Lopez, is it your

14    understanding she's a paralegal at Mr. Bandas's

15    firm; correct?

16              A.   I don't know what her capacity is.

17              Q.   But you don't know whether she's an

18    attorney or a paralegal or anyone else?

19              A.   I don't --

20              Q.   Do you understand?

21              A.   Yeah, but your follow-up question

22    doesn't necessarily follow your first.  I don't

23    believe she's an attorney.

24              Q.   Okay.  Was May 27 the first time

25    you reviewed any draft objection in this case?
```

```
 1                    MR. HANIGAN:  Objection; attorney

 2     work product.

 3     BY MR. SCHWARTZ:

 4              Q.   Do you recall that May 27 was the

 5     day that the objection that you filed in this case

 6     was filed?

 7              A.   I do not recall.

 8                    MR. SCHWARTZ:  Let's mark as

 9     Exhibit 2 the objection of Christine Knott and

10     Kimberly Smith.  That was in Folder D as in dog.

11              (Whereupon, Hanigan Exhibit 2 was

12              marked for identification by the

13              deposition reporter and is attached

14              hereto.)

15     BY MR. SCHWARTZ:

16              Q.   Is this a true and correct copy of

17     the objections of Christine Knott and Kimberly

18     Smith that you signed and filed?

19              A.   It appears to be.

20              Q.   And does the PACER stamp on top

21     reflect that it was filed on May 27, 2016?

22              A.   It does.

23              Q.   And so does that refresh your

24     recollection that that was the day that the

25     objection was filed?
```

```
 1              Q.   Is it possible it's no more than

 2      two?

 3              A.   Yes.

 4              Q.   Are you sure that it's not five or

 5      more?

 6              A.   I am not sure.

 7              Q.   Okay.  Is it possible it could be

 8      more than five?

 9              A.   Anything's possible.

10              Q.   Is your best estimate that you have

11      been retained by fewer than five law firms to

12      assist in working on class action objections?

13              A.   Yes.

14              Q.   And would it be fair to say that

15      the majority of your work in class action

16      objections was work with Mr. Bandas?

17              A.   Yes.

18              Q.   Prior to the time that you filed

19      the objection -- withdrawn.

20                   Have you ever spoken or communicated

21      directly with Ms. Knott or Ms. Smith?

22              A.   No.

23              Q.   And to your knowledge, has anyone

24      from your firm spoken directly with Ms. Knott or

25      Ms. Smith?
```

1              A.   No.

2              Q.   Do you believe that you've

3    satisfied your obligations under Federal Rule of

4    Civil Procedure 11 before you filed the objections

5    that you signed in this case?

6              A.   Define the responsibilities for me.

7              Q.   Are you familiar with Federal Rule

8    of Civil Procedure Rule 11?

9              A.   I am.

10             Q.   Did you sign the objection that was

11   filed in this case?

12             A.   I did.

13             Q.   And do you believe you complied

14   with Federal Rule of Civil Procedure Rule 11?

15             A.   You need to tell me what it is

16   specifically and I'll tell you.

17             Q.   Do you believe that you violated

18   any provisions of Rule 11 when you signed and

19   filed the objections in this case?

20             A.   I need to know what provisions

21   you're talking about, because off the top of my

22   head, I can't tell you what the actual provisions

23   state.  Quote -- you can quote them for me.

24             Q.   Let me read Rule 11(b) to you,

25   okay?

```
 1              A.    Okay.

 2              Q.    "Representations to the Court.

 3                    By presenting to the court a

 4              pleading, written motion, or

 5              other paper -- whether by

 6              signing, filing, submitting, or

 7              later advocating it -- an

 8              attorney or unrepresented party

 9              certifies that to the best of the

10              person's knowledge, information,

11              and belief, formed after an

12              inquiry reasonable under the

13              circumstances:

14                    (1) it is not being

15              presented for any improper

16              purpose, such as to harass, cause

17              unnecessary delay, or needlessly

18              increase the cost of litigation;

19                    (2) the claims, defenses,

20              and other legal contentions are

21              warranted by existing law or by a

22              nonfrivolous argument for

23              extending, modifying, or

24              reversing existing law or for

25              establishing new law;
```

```
 1                    (3) the factual contentions

 2              have evidentiary support or, if

 3              specifically so identified, will

 4              pass evidentiary support after a

 5              reasonable opportunity for

 6              further investigation and

 7              discovery, and

 8                    (4) the denials of factual

 9              contentions are warranted on the

10              evidence or, if specifically so

11              identified, are reasonably based

12              on belief or a lack of

13              information."

14         A.   Have I complied with that?  Is that

15    what the question is?

16         Q.   Yes.

17         A.   Yes, I have.

18         Q.   And in connection with this case,

19    you're aware that there was a joint stipulation

20    that was filed with respect to the motion to

21    compel and quash related to this deposition?

22         A.   Yes.

23         Q.   And you signed that joint

24    stipulation; correct?

25         A.   I believe so.
```

```
 1            (non-confidential testimony commences.)

 2     BY MR. SCHWARTZ:

 3            Q.   Mr. Hanigan, I don't want to have a

 4     debate with you over the propriety of some of the

 5     privilege and work product objections that you've

 6     made on the record.  I do disagree with some of

 7     them that you've made, so I'm going to ask a few

 8     questions which may be repetitive of what I asked

 9     before just to give you the opportunity to fully

10     evaluate whether you want to make that objection

11     and stand on that and not answer in this deposition,

12     because -- you know, I'm just giving you full

13     disclosure.  It is possible we'll go back to the

14     court and ask the court to tell you to answer

15     certain questions.

16                 So I just want to give you that so

17     you have the opportunity to evaluate the position

18     by respecting you're entitled to make objections

19     if you think they're valid -- and I don't think

20     it's productive for us to debate on the record

21     whether they're valid or not, unless you think it

22     would be helpful, but I just want to get a clear

23     record that you're going to stand on certain

24     objections despite this disclosure that I'm

25     making, okay?
```

```
 1              A.   Okay.

 2              Q.   So with respect to prior to signing

 3    and filing the objection, did you review the

 4    settlement agreement in this case?

 5                   MR. HANIGAN:  Attorney work

 6    product.

 7    BY MR. SCHWARTZ:

 8              Q.   And did you review the motion for

 9    preliminary approval?

10                   MR. HANIGAN:  Attorney work

11    product.

12    BY MR. SCHWARTZ:

13              Q.   And did you review the preliminary

14    approval order?

15                   MR. HANIGAN:  Same objection.

16    BY MR. SCHWARTZ:

17              Q.   And, again, I don't want to waste

18    your time or waste mine.

19                   Is it fair to say that you're going

20    to refuse to tell me whether you looked at any

21    material before filing the objection based on the

22    attorney work product assertion?

23              A.   Before and after and up through

24    today.  Whatever work I did on this case, that's

25    attorney work product.
```

1          Q.   And just so I understand the

2     contours of the basis of your attorney work

3     product objection, are you suggesting that whether

4     or not you reviewed the preliminary approval

5     papers and the settlement agreement would

6     somehow -- before filing the objections would

7     somehow disclose your mental impressions or

8     evaluations on any aspect of the case?

9          A.   Anything I looked at in preparation

10    of any aspect of the case is work product.  The

11    fact I'm looking at it tells you I believe it's

12    important to look at it.

13               I may have looked at things you

14    never would have thought of looking at, and if I

15    tell you what I've looked at, I would tip you off

16    to what I believe are important issues in the

17    case.

18               So, yes, what I've looked at, what

19    I've spoken, what I've written, whatever that is,

20    that's attorney work product.

21          Q.   Prior to the time you signed and

22    filed the objections, did you look at any document

23    that was reflected in the PACER docket for this

24    case?

25               MR. HANIGAN:  Attorney work

```
 1              Q.   I appreciate that.

 2                   Are there any other documents that

 3    you haven't produced that were responsive to the

 4    subpoena?

 5              A.   No.  And --

 6              Q.   Are there any -- I'm sorry.  Go

 7    ahead.

 8              A.   No, go ahead.

 9              Q.   Are there any other documents or

10    any documents that you reviewed prior to your

11    deposition that have refreshed your recollection

12    on any of the topics related to the subpoena or

13    the depositions?

14              A.   No.

15              Q.   Let's go to Page 10 of 14 of the

16    deposition.

17              A.   Of the what?

18              Q.   Oh, I'm sorry, for the objection.

19    Exhibit 2.  That's Page 10 of 14.

20              A.   Okay.

21              Q.   In the second paragraph, the

22    objection that you filed says:

23                   "With 24,000 hours billed,

24              it would appear that, at the very

25              least, there has been some
```

```
 1                padding."
 2                     Do you see that?
 3           A.    Yes.
 4           Q.    What was the basis for the charge
 5   that it appeared, at the very least, there's been
 6   some padding --
 7           A.    Because that's a lot of --
 8           Q.    -- other than the fact there's
 9   24,000 hours billed?
10           A.    That would be the reasoning.
11           Q.    Is there any other basis, any other
12   information, any other underlying documents that
13   provide the basis for that statement in this
14   objection that you filed?
15           A.    Yes.
16           Q.    And what is that?
17           A.    Well, put aside the fact that
18   whatever Bandas's firm knows to support it, I
19   don't know.  I relied on their representation,
20   which I've never had an issue with.  Put that
21   aside, Whirlpool's opposition to your attorneys'
22   fees motion.
23           Q.    You did not have the Whirlpool
24   attorney fee opposition at the time you filed this
25   objection; correct?
```

Timothy Halloran
August 18, 2016

60

```
 1            A.   Correct.
 2            Q.   Okay.  So that was not a basis for
 3   your statement that you signed and filed in the
 4   objection; correct --
 5            A.   Well --
 6            Q.   -- at that time?
 7            A.   Well, it was, indirectly.
 8            Q.   I'm not sure whether you worked
 9   this -- you said it was not indirectly --
10            A.   I said it was not indirectly.  No,
11   that's my answer.  It was not directly?  I'd have
12   to hear that one back and my response again.
13            Q.   Let me ask the question again -- it
14   probably will be quicker than Kristi reading it
15   back -- just to make sure we're on the same page.
16            A.   Yeah.
17            Q.   At the time you filed the objection
18   and signed off on the statement regarding some
19   padding, Whirlpool's objection to fees had not
20   been filed and, therefore, is not something that
21   you relied on as part of the basis to sign off on
22   the padding statement; fair?
23            A.   Fair.
24            Q.   Now, you mentioned that you relied
25   on Bandas's presumed investigation for that
```

1    statement and that you never had a problem with

2    him before, and I'm paraphrasing your words.

3                  Can you explain what you were

4    trying to say with respect to that testimony, that

5    relying on what Mr. Bandas or his firm had written

6    and not having had a problem with that before?

7            A.    That's what I said.

8            Q.    So is it fair to say that there are

9    portions of this objection where the basis was not

10   from research and analysis that you or your firm

11   did, but was analysis that was performed and

12   drafted by the Bandas firm that you relied on?

13           A.    Both.

14           Q.    Did you do any independent analysis

15   or investigation to satisfy yourself that each and

16   every statement within this document had a

17   reasonable basis, or did you rely, to at least a

18   certain extent, on work that had been performed by

19   Mr. Bandas and his firm?

20           A.    I relied on Mr. Bandas's work,

21   correct.

22           Q.    And you said you've never had a

23   problem with relying on Mr. Bandas's work before;

24   is that right?

25           A.    That's correct.

```
 1          Q.    And so do you believe that based on

 2   your knowledge and understanding of work

 3   Mr. Bandas has done in connection with class

 4   action objections that it is reasonable for you to

 5   rely on his work in connection with documents that

 6   are incorporated that you filed with the court?

 7          A.    That's too broad.  I only know from

 8   what he's done on the objections I've worked on

 9   him with.

10          Q.    So I have the same question with

11   respect to objections that you've worked on with.

12                For the objections where you have

13   worked with Mr. Bandas, have you formed a

14   conclusion that it is reasonable to rely on the

15   work that Mr. Bandas and his firm does and the

16   underlying investigations that they do, to the

17   extent that you feel comfortable complying with

18   the Rule 11 obligations that we referred to

19   earlier for documents that you signed and filed

20   with the court?

21          A.    That's too broad.  I can't --

22   generally, yes, but, you know -- yeah, I would say

23   yes.

24          Q.    Can you identify for me any

25   instance where you believe that -- withdrawn.
```

```
 1                  Without getting into each portion
 2      of the objection where you're relying on work that
 3      the Bandas firm has done versus work that may have
 4      been joint work on the underlying investigation or
 5      your own work, would it be fair to say that the
 6      majority of the objection relates to portions
 7      where you're relying on Mr. Bandas's and his
 8      firm's work?
 9              A.   Yes.
10              Q.   Did you rely on Mr. Bandas's work
11      with respect to -- well, let me ask it a better
12      way that will be easier for you.
13                  You never had any communications
14      with any of the objectors, Ms. Knott or Ms. Smith,
15      before you filed the objections; correct?
16              A.   That is correct.
17              Q.   So with respect to everything in
18      this objection that relates to them, is it fair to
19      say that you or your firm were relying on
20      Mr. Bandas's work and communications with Ms. Knott
21      and Ms. Smith?
22              A.   Again, you like broad-sweeping
23      questions.  I'm not sure I can go that broad.  But
24      to the extent that there's information in the
25      objections, for example, her declarations, the
```

```
 1    attachments and all that, yes, we relied on the

 2    Bandas firm.

 3             Q.   Did you also rely on the Bandas

 4    firm for authorization to file the objection on

 5    their behalf?

 6             A.   Yes.

 7             Q.   And did you also rely on the Bandas

 8    firm to make sure that there was appropriate

 9    communication between lawyer and client to make

10    sure what the lawyer was filing was consistent

11    with the client's instructions and wishes?

12             A.   That one you'll have to repeat.  I

13    don't think that's a good question.

14             Q.   Okay.  Let me try to make a better

15    question.

16             A.   If you would, please.

17             Q.   Did you rely on the Bandas firm to

18    make sure that the objections that were being

19    filed were consistent with the instructions from

20    clients Knott and Smith?

21             A.   Specifically, no.

22             Q.   Did you take any steps or did

23    anyone at your firm take any steps to verify that

24    the objections that were filed were consistent

25    with the instructions of clients Knott and Smith?
```

```
 1              A.   Yes.

 2              Q.   What were those steps?

 3              A.   I was authorized to do so on behalf

 4     of the Bandas firm.

 5              Q.   Beyond Mr. Bandas's authorization,

 6     did you take any other steps to verify that the

 7     objections were consistent with the instructions

 8     of Ms. Knott and Ms. Smith?

 9              A.   No.

10              Q.   And in terms of allocation of

11     responsibility -- withdrawn.  We already --

12     withdrawn.

13                   And as you sit here today, you have

14     not had any direct communication with Ms. Knott or

15     Ms. Smith?

16              A.   I think for the fourth time, I

17     believe that's correct.

18              Q.   Let's go to Page 7 of the

19     objection.

20              A.   7 of 14?

21              Q.   Yes.

22              A.   Okay.

23              Q.   In the first full paragraph,

24     there's a reference to the claims-made structure

25     of the settlement?
```

```
 1                  A.   What is it -- "The settlement also

 2     loses sight of the" -- where are you at?

 3                  Q.   Okay.  Yeah, from the paragraph

 4     "The settlement also loses sight" --

 5                  A.   Okay.

 6                  Q.   -- let's go down on the two lines:

 7                       "Objection is further made

 8                  to the claims-made structure of

 9                  the settlement, which given a

10                  likely low claims' rate, will

11                  ensure a minimal payout by

12                  Whirlpool at the expense of the

13                  class, in tacit exchange for

14                  little resistance to class

15                  counsels' request for an

16                  exorbitant amount of attorneys'

17                  fees."

18                       Do you see that?

19                  A.   Yes.

20                  Q.   Is that a portion of the objection

21     where you relied on Mr. Bandas's firm?

22                  A.   At what point in time?

23                  Q.   Oh.  We're talking about at the

24     time you signed and filed the objection.

25                  A.   Yes.
```

1              Q.   As you sit here today, would you

2      agree with me that Whirlpool has not either

3      tacitly or in any way other agreed to provide

4      little resistance to class counsels' request for

5      attorneys' fees?

6              A.   I have no knowledge.

7              Q.   Have you reviewed Whirlpool's

8      opposition to class counsels' attorneys' fees

9      request?

10             A.   For what purpose?

11             Q.   I'm just asking whether you're

12     familiar with --

13             A.   Yes, I reviewed it.

14             Q.   Would you agree that, based on

15     Whirlpool's opposition, it would be inaccurate to

16     say that Whirlpool has provided little resistance

17     to class counsels' fee request?

18             A.   I don't know.

19             Q.   Let's go back to Exhibit 3, which

20     was the joint stipulation.

21             A.   Okay.

22             Q.   And if you go to Page 30 --

23             A.   Okay.

24             Q.   -- and if you'd take a look at --

25     I'll just refer your attention to the end of

1    Footnote 15 down by Line 26 and 27.

2              A.   Okay.

3              Q.   There's a statement with a

4    transcript citation that:

5                   "Ms. Knott agrees that the

6              Class Representatives deserve the

7              proposed $4,000 service award."

8                   Do you see that?

9              A.   Yes.

10             Q.   Would it be fair to say that with

11   respect to making sure that the stated objections

12   were consistent with the views of the clients

13   Knott and Smith that that was the Bandas's firms

14   responsibility as opposed to yours?

15             A.   Yeah, shoot that one again?  I got

16   to hear that question again.

17             Q.   Okay.  Just tell me if I'm

18   incorrect.

19                  Is it fair to say that with respect

20   to making sure that the objections that were filed

21   were consistent with the views of clients Knott

22   and Smith, that that was the Bandas's firm's

23   responsibility as opposed to yours?

24             A.   At what point in time?

25             Q.   At the point in time when the

```
1    objections were filed.

2              A.    Yes.

3              Q.    And that -- for that issue, making

4    sure that the objections were consistent with the

5    clients, that was an error where you and your firm

6    relied on Mr. Bandas's firm at the time the

7    objections were filed; correct?

8              A.    Correct.

9              Q.    After the objections had been

10   filed -- and why don't we take today -- is it

11   still the Bandas's firm responsibility, in your

12   view, to make sure that the objections are

13   consistent with the views of the client, or is

14   that now also your responsibility as well?

15             A.    I would say it was shared.

16             Q.    Can you point to any point in time

17   when that responsibility transformed, in your

18   view, from being the Bandas's firm responsibility

19   to your responsibility?

20             A.    No.  I mean -- now, I guess after I

21   filed the objection.

22             Q.    I'm sorry.  Could you repeat that

23   for me?

24             A.    Yeah.  After I filed the objection.

25             Q.    And can you give me any point in
```

```
 1   time after the objection was filed that it became

 2   your responsibility, at least on a shared basis,

 3   to make sure that the objections were consistent

 4   with the views of the clients?

 5            A.   That's always my responsibility.

 6            Q.   Isn't it your responsibility before

 7   you sign and file the objection as well?

 8            A.   Yeah, but you were talking about

 9   who you're relying on.  That wasn't your question.

10            You asked me did I rely on the

11   Bandas firm to make sure that what was in the

12   objection was consistent with my clients' views.

13   Yes.

14            Q.   As you sit here today, are you

15   still relying on the Bandas firm to make sure that

16   the objection is consistent with your clients'

17   views?

18            A.   Partially.

19            Q.   At the time you signed and filed

20   the objections, were you only partially relying on

21   the Bandas firm to make sure that the objections

22   were consistent with the clients' views, or at

23   that point in time when you signed and filed the

24   objections were you totally relying on the Bandas

25   firm?
```

1                    A.   I would say totally.

2                    Q.   And can you point to any event or

3        time or reason why the responsibility went from

4        totally to partially from the time you signed and

5        filed the objections and today?

6                    A.   No, because I'm not sure it has.

7        There's no reason for me not to keep relying on

8        the Bandas firm.

9                    Q.   Going back to the objection,

10       Exhibit 2 --

11                   A.   Yes.

12                   Q.   -- starting on Page 7 under the

13       heading Intra-Class Conflicts And Adequacy of

14       Representation, do you see there's a challenge to

15       the $100,000 proposed payment from Whirlpool for

16       one of the class representative's two websites?

17                   A.   Yes.

18                   Q.   Is that a portion of the objection

19       that, at the time it was filed, relied on

20       Mr. Bandas's firm's underlying investigation

21       regarding that objection?

22                   A.   What do you mean by that, the

23       actual fact that the payment of a hundred thousand

24       dollars was part of the settlement?

25                   Q.   The challenge for that payment, the

```
 1    underlying basis to make the challenges regarding

 2    that proposed payment.

 3              A.   Again, I'm unclear.  Independently,

 4    I believe that was a proper objection.  Now, as to

 5    the fact of that payment being part of the

 6    settlement, I relied on Mr. Bandas for that.

 7              Q.   Can you just repeat that?  Because

 8    I didn't hear that fully.

 9              A.   Well, I guess your question's

10    unclear, is what I'm saying.

11              Q.   I'm sorry.  It was just the for

12    part.  I thought you said that the part that there

13    was a $100,000 payment, you relied on Mr. Bandas.

14                   Is that what you said?

15              A.   For that fact, yes.

16              Q.   Okay.  The fact that the settlement

17    included a term that related to a proposed

18    $100,000 payment for the sale of Mr. Chambers'

19    website, that was the fact when you signed and

20    filed the objection that you didn't know

21    independently that you relied on Mr. Bandas's

22    work; correct?

23              A.   Yes.

24              Q.   And then at the bottom of Page 8,

25    if we just start at the very last line with the
```

```
 1    last sentence where it goes:
 2                    "Even if you indulge the
 3              incredulous notion that
 4              Mr. Chambers' two websites are
 5              actually worth $100,000."
 6                    Do you see that?
 7         A.   Yes.
 8         Q.   Would it be fair to say that to the
 9    extent there was any evaluation or analysis as to
10    whether those two websites could be worth a
11    hundred thousand dollars, that was work that was
12    sometimes the Bandas' firm and not your firm at
13    the time the objection was filed?
14         A.   I don't think that's what that
15    objection said.  I wasn't relying on what it was
16    worth or not; I'm relying on the fact that you
17    allowed your lead class representative to be
18    bought off by Whirlpool, thereby deincentivizing
19    him to proceed with the claims in the lawsuit, and
20    that's a man who, according to the defendants'
21    papers, actually was out there trying to get a
22    recall of all of these things.  That didn't
23    happen, so he was bought off with a hundred
24    thousand dollar payment, which I believed to be
25    improper.
```

```
 1              So whether it's worth a hundred

 2    thousand or not, that wasn't the basis of my view

 3    of what that objection is.

 4         Q.   And so with respect to that portion

 5    of the objection, it sounds like that's one where

 6    you didn't simply rely on Mr. Bandas's firm but

 7    you applied your own independent analysis in

 8    making that objection.

 9         A.   Correct, as well as Bandas's,

10    because they picked it up as well.

11         Q.   I'm just trying to make sure that

12    the testimony is clear.

13              The fact that there was this

14    payment was something only Bandas identified and

15    you relied on the fact that he had it somewhere,

16    and based on assuming that Mr. Bandas accurately

17    stated that there was a hundred thousand dollar

18    proposed sale, you came up or at least agreed

19    with, independently, the arguments made about that

20    that's reflected in the objection?

21         A.   I'm not sure if independently, but

22    I agreed with them.

23         Q.   Okay.

24         A.   Yes.

25         Q.   Okay.  I don't believe that I need
```

```
 1    judge will be evaluating is whether, in light of

 2    the risks of litigation in this case, whether the

 3    recovery is fair, reasonable and adequate, and so

 4    I'm just trying to find out, because it seems to

 5    me that the purpose of this objection is to

 6    convince Judge Olguin that the class members who

 7    have gotten 10 or 15 years out of their dishwasher,

 8    have never had an overheating event, probably

 9    getting to the point where it's time to replace

10    their dishwasher, that those people would be

11    better off if he rejects the settlement, sends it

12    back to litigation in the hope that we're going to

13    get some better deal than we've gotten already.

14              Is that what the objection is

15    about?

16         A.   The objection's what my clients

17    don't like about it.  I don't know what the other

18    objections are.  I'm objecting on behalf of my

19    clients.

20         Q.   Right.  And is it your clients'

21    position that the people in the position I'm

22    talking about that have gotten the full, expected

23    life of the dishwasher without an overheating

24    event, that those people are better off to have

25    the settlement rejected in the hopes that some
```

```
 1   State of California  )
                          ) ss
 2   County of Los Angeles)

 3

 4              I, KRISTI CARUTHERS, a Certified

 5   Shorthand Reporter duly licensed and qualified in

 6   and for the State of California, do hereby certify

 7   that there came before me on the 18th day of August,

 8   2016 at 10250 Constellation Boulevard, Suite 2320,

 9   Los Angeles, California 90067, the following named

10   person, to-wit:  Timothy R. Hanigan, who was duly

11   sworn to testify the truth, the whole truth,

12   and nothing but the truth of knowledge touching

13   and concerning the matters in controversy in this

14   cause; and that he was thereupon examined under

15   oath and his examination reduced to typewriting

16   under my supervision; that the deposition is a

17   true record of the testimony given by the witness.

18              I further certify that pursuant to

19   FRCP Rule 30(e)(1) that the signature of the

20   deponent:

21         (X)  was requested by the deponent or a

22   party before the completion of the deposition;

23         (  )  was not requested by the deponent

24   or a party before the completion of the deposition.

25
```

1            I further certify that I am neither

2   attorney or counsel for, nor related to or

3   employed by any of the parties to the action in

4   which this deposition is taken, and further that I

5   am not a relative employee of any attorney or

6   counsel employed by the parties hereto, or

7   financially interested in the action.

8                CERTIFIED TO BY ME on this 19th day

9   of August, 2016.

10

11

            _____

12            KRISTI CARUTHERS
              CSR NO. 10560

13

14

15

16

17

18

19

20

21

22

23

24

25