# EXHIBIT 5 TO SCHWARTZ DECLARATION

1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3                       --oOo--

4    STEVE CHAMBERS, et al.,       )
                                   )
5           Plaintiffs            )
                                   )
6              vs.                )No. 811CV01733FMO(ANX)
                                   )
7    WHIRLPOOL CORPORATION, et     )
     al.,                          )
8                                  )
            Defendants.            )
9    _____ )

10

11              TELEPHONIC DEPOSITION OF

12                JONATHAN FORTMAN
     _____
13                August 17, 2016

14

15

16           (Beginning at 10:07 a.m.)

17

18

19

20

21

22

23

24

25

```
 1              A.   We would bring her in on different

 2    cases.  I mean, there's no -- I mean, I can't tell

 3    you why or why not.  I mean, it's just, you know --

 4    it's Steve Miller, John Kress and I, and then if we

 5    think we need additional assistance, we'll bring

 6    somebody else in.

 7              Q.   Does the decision as to whether

 8    Ms. O'Connors -- or whether Ms. Connors as part of

 9    the group in an objection that's filed, is that --

10    has that in the past hinged on whether or not

11    Ms. Connors was bringing in one of her relatives in

12    as a client to serve as the objector?

13              A.   No, it had nothing to do with that.

14    It's whether she was performing any service in the

15    case.

16              Q.   Now, in this case, the client is

17    Mr. Kress's wife, Kelly Kress, correct?

18              A.   Correct.

19              Q.   And in other cases, you have been

20    counsel where Mr. Miller's wife has been the

21    objector; is that correct?

22              A.   That's correct.

23              Q.   And there have been cases where, I

24    believe it's sisters of Ms. O'Connor has been the

25    client; is that correct?
```

```
 1         A.   That's correct.

 2         Q.   Has Ms. -- has Ms. Connors been one of

 3    the lawyers in all the cases in which you have been

 4    involved when one of Ms. Connors' relatives was the

 5    objector?

 6              MR. KRESS:  I would just state that you

 7    have to look at the docket.  I mean, and there's a

 8    number of cases, and obviously what those cases

 9    reflect and demonstrate are those are the attorneys

10    of record in those respective cases, Steve.

11              THE WITNESS:  But I think if you -- if

12    you at the chart, I mean, it would tell you.  If she

13    was --

14              MR. SCHWARTZ:  Why don't we mark your

15    affidavit so we get that because I know you're going

16    to be looking at it, so we'll mark it as Exhibit 1,

17    the docket which is in folder L which is the

18    affidavit of Jonathan Fortman.  So if the court

19    reporter could pull out from folder L, let's mark

20    that as Exhibit 1.

21              (Exhibit 1 was marked for

22               identification.)

23              THE WITNESS:  So as far as I know, in

24    cases where her sisters were the objector, that she

25    was an attorney on that.  I mean, I don't have the
```

```
 1      objector names on the chart but, yeah, I think
 2      that's true.
 3              BY MR. SCHWARTZ:
 4              Q.   You have raised conflicts of interest
 5      issues related to the class representatives in this
 6      case; is that correct?
 7              A.   Yeah.  I think, yeah, that's accurate.
 8              Q.   And in various other cases in which
 9      you've served as counsel for an objector, you've
10      raised conflict of interest issues related to either
11      the lawyers or the class representatives in those
12      cases as well, correct?
13              A.   That's correct.
14              Q.   Do you believe that there's any
15      conflict of interest present when objector counsel,
16      such as you and the members of your group,
17      Mr. Miller, Mr. Kress, Ms. Connors, use as their
18      client objectors, their wives or their sisters or
19      other relatives?
20              A.   I don't -- it's not a conflict as it
21      would be when you're looking at a class
22      representative who is representing all the unnamed
23      members of the class, where, you know, they need to
24      be the oversight on behalf of the class and dealing
25      with class counsel.  And I think, you know, the
```

1    other -- the other issue that we have is, in these

2    cases, when we do file objections, class counsel

3    goes on the attack and, you know, if I can use

4    somebody that is, you know, ready for that attack,

5    knowing that they're going to be called all sorts of

6    names, then I will do that.  So I don't see it as a

7    conflict, no.

8           Q.   Do you believe that the objectors that

9    you represent in connection with class actions have

10   any responsibility to the other members of the

11   class?

12          A.   I don't believe that Rule 23 imposes

13   upon them a duty on behalf of all the other absent

14   class members.  Now, you know, if you look at the

15   rule, but I think as a practical matter, they are

16   proceeding, trying to raise issues that would be

17   relevant to all the other class members or, if

18   they're a member of a subclass, members of that

19   subclass.  But I don't think there's a duty imposed

20   upon the objector that they have to proceed in that

21   manner.

22          Q.   Do you believe that it's appropriate

23   for an objector in a class action that you're

24   involved as counsel to seek solely personal

25   financial gain for themselves or for their lawyers

```
1      any of the lawyers have a -- either a fee agreement

2      or retention agreement with Kelly Kress in this

3      case?

4              A.   No.

5              Q.   Have you had fee or retainer

6      agreements, or has co-counsel had fee or retainer

7      agreements with your class action client objectors

8      in the other cases that are listed in this affidavit

9      or the others that you've been involved in?

10             A.   No.

11             Q.   Do you or your co-counsel have retainer

12     agreements with any of the various objectors that

13     you have represented in connection with objections

14     as a class action?

15             A.   No.

16             Q.   And as part of the resolutions of any

17     of the objections, have any of your clients received

18     any money as part of the resolution of the

19     objection?

20             A.   Non-attorneys have not received any

21     money.

22             Q.   Okay.  Now, let's make sure we're

23     talking about the same thing.  No attorney -- no

24     non-attorney, to your knowledge, has ever received a

25     payment -- let me start over.
```

```
 1                  There's no -- no non-attorney that you

 2      have represented has received any financial payment

 3      as a result of the resolution of objections that

 4      you've been involved in; is that correct?

 5           A.   Correct.  Well, as set out in the

 6      exhibit, yes, that's correct.

 7           Q.   Okay.  Let's talk about people who are

 8      attorneys but served as clients or the objector in

 9      cases.

10           A.   Yes.

11           Q.   Have any of those been paid in

12      connection with the resolution of objections?

13           A.    In the eMachines case that is set out

14      in that -- in that exhibit where Ms. Connors and

15      Mr. Kress were the objectors, they were paid fees

16      because they provided services in the case.

17           Q.   Okay.  So we're looking at the, what is

18      the exhibit, Exhibit A to your affidavit?

19           A.   Correct.

20           Q.   And we're looking at the eMachines

21      case.

22           A.   Correct.

23                  MR. KRESS:  I'm sorry, Steve, and just

24      for clarity, that's also Exhibit 1, correct?

25                  THE WITNESS:  Well, it's Exhibit --
```

 1              MR. SCHWARTZ:  The affidavit is

 2   Exhibit 1, and the chart is Exhibit A to Exhibit 1.

 3              MR. KRESS:  Thank you.

 4         BY MR. SCHWARTZ:

 5         Q.   And the eMachines case is -- I just

 6   want to find out exactly where that is.

 7         A.   It's about 60 percent of the way down.

 8         Q.   I see it.

 9         A.   Stroud versus eMachines.

10         Q.   So in the eMachines case, who were

11   the -- who were the objector clients?

12         A.   Maureen Connors and John Kress.

13         Q.   And they were paid -- okay, so your

14   group as a whole was paid $300,000 for that case,

15   correct?

16         A.   That's correct.

17         Q.   And the reason why John Kress and

18   Maureen Connors were paid the amounts listed, which

19   is about $67,000 each, even though they were not

20   serving as objector counsel in that case, was

21   because they were providing legal work in their

22   capacity of objectors?  Is that your testimony?

23         A.   Yes.

24         Q.   And I don't want to get into the

25   substance of that work.  But how is that work

1    different when Mr. Kress and Ms. Connors were

2    serving in the role as objector from what they would

3    do in the other cases where they served as counsel?

4    Is there any difference of the nature of the work

5    that they did or is it pretty much the same?

6            A.   It's -- well, I mean, it was a lot more

7    extensive work that they performed, but, what it

8    comes down to is, you know, under the Missouri Rules

9    of Ethics, I cannot share fees with non-attorneys.

10   So, you know, when we look at the source of the

11   funds that are paid as part of the settlement, there

12   are attorney's fees and, you know, I am very

13   conscientious of, you know, I would love to be able

14   to provide some compensation to the non-attorney

15   objector, but I think that raises a whole host of

16   issues for us for sharing fees and ultimately could

17   cause problems for class counsel if, you know,

18   there's -- there's fees ultimately paid to settle an

19   objection that ends up with an non-attorney who, you

20   know, could get paid more than the class reps do.

21   And so it's just been our practice as a practical

22   matter to let them know that, you know, unless

23   there's further benefit to the class, we cannot pay

24   them.

25           Q.   But it's your view that if an attorney

```
 1   serves as the actual objector in connection with an
 2   objection, that that objector attorney can be paid
 3   legal fees or a portion of legal fees that are
 4   covered as part of the objection, right?
 5            A.   For work that's performed, yes.
 6            Q.   Okay.  So that gets me back to my --
 7   where we started with this which is, how does the
 8   work that Mr. Kress and Ms. Connors performed in the
 9   eMachines case when they were in the capacity of the
10   objector different from the work they have done in
11   the other objections where they were serving as
12   objector's counsel?  I'm trying to figure out if
13   there's any meaningful difference that you can
14   explain to me in terms of the legal work that they
15   did.
16            A.   No, it's the same.  It's the, you know,
17   legal research, helping draft the objection and all
18   of that, so it is no different.  It's just that
19   they're the absent class member that is the
20   objector.
21            Q.   Looking through this chart, it appears
22   that you and Mr. Kress and Mr. Miller tend to get
23   pretty much the same share of fee recovery as part
24   of objections and there may be a few little small
25   differences, but is that generally correct?
```

```
 1          A.   Yeah, I mean, that's our -- our
 2   understanding between us, without getting too
 3   specific as to what each party does, is that we
 4   equally divide the work.
 5          Q.   So in terms of equally dividing the
 6   work, and I don't want to get into specifics, but do
 7   you generally equally divide the work in each
 8   objection, or is it sometimes one takes the lead in
 9   one objection and another takes the lead in
10   another --
11               MR. KRESS:  I'm going to instruct
12   Mr. Fortman not to answer that.  I think that goes
13   into attorney-client privilege, and it's also work
14   product.  I don't think it's proper that class
15   counsel knows who's the lead on what particular case
16   because that would go to a litigation strategy
17   necessarily under certain circumstances and
18   conditions.
19               Next question, Steve.
20               MR. SCHWARTZ:  Okay.  Right.  Just for
21   the record, I haven't asked -- and just so the
22   record is clear, I'm not trying to find out who took
23   the lead in a particular case.  I am only trying to
24   find out whether, as part of this agreement to
25   equally share in the work and the fees, whether
```

```
 1   paid but there's no corresponding benefit to the

 2   class?  Are you aware of those situations?

 3            A.   Yes.

 4            Q.   Is that something that you or the

 5   members of your group, Mr. Kress and Mr. Miller,

 6   have ever done?

 7            A.   Have we settled cases on appeal?  Yes.

 8            Q.   Have you settled a case on appeal where

 9   there was no corresponding benefit to the class, but

10   there was a payment made to your group for

11   attorney's fees?

12            A.   Yeah, there's been cases settled on

13   appeal, yes.

14            Q.   Where there is no corresponding benefit

15   to the class?

16            MR. KRESS:  I'm just going to object to

17   the extent that if there's --

18            THE WITNESS:  Well --

19            MR. KRESS:  Go ahead, Jon.  It's fine.

20            THE WITNESS:  Well, where -- yeah, I

21   mean, there's been cases where, you know, we have --

22   we have wanted changes made, class counsel has

23   refused and there's been a settlement -- a monetary

24   settlement, yes.

25            BY MR. SCHWARTZ:
```

1          Q.   Could you just say that again?  I

2     didn't quite hear it.

3          A.   There have been cases where we have

4     wanted settlements changed, where want benefit to

5     the class.  Class counsel has refused and instead

6     negotiated a payment of fees as part of a

7     settlement.

8          Q.   So you have been paid fees in cases

9     where there's no change to the settlement agreement

10    or no corresponding benefit to the class; is that

11    correct?

12         A.   Well, let me go back.  I think we have

13    brought benefit to the class, as I state in the

14    declaration, by bringing the objection and raising

15    those issues.  So, you know, I think there is

16    benefit to the class, but has there been an actual

17    change to the settlement?  No.

18         Q.   Has there ever been a case where there

19    was no benefit to the class achieved or no change in

20    the settlement agreement achieved, but you also got

21    paid to dismiss either an objection or an appeal?

22         A.   Can you restate that question, please?

23    I mean, because you're saying dismiss the appeal or

24    dismiss the objection.  I mean --

25         Q.   Okay.  Let's break it down.  Let's talk

```
1    about appeal.

2              Is there any case that you've been

3    involved in where there is no benefit achieved on

4    behalf of the class in the trial court --

5         A.   Uh-huh.

6         Q.   -- you filed an appeal, and you

7    dismissed that appeal in exchange for money where

8    there was no corresponding additional benefit for

9    the class?

10        A.   Yes.

11        Q.   Which cases are those?

12        A.   Well, I mean, as part of what you

13   requested, you requested information concerning

14   where objections were withdrawn.  In appeals the

15   objection is not withdrawn.

16        Q.   We're talking about appeals that are

17   dismissed.  Can you identify the cases where you

18   filed appeals, the appeals were dismissed, and you

19   were paid money with no corresponding benefit to the

20   class?

21        A.   I mean, I can go off the top of my

22   head.  I'm not prepared with any kind of list or

23   anything.

24        Q.   Sure.  Why don't you do your best.

25        A.   In LCD, in DRAM, D-R-A-M, there was a
```

```
 1   United Healthcare case, In Re. Lawn Mower, Propane
 2   one and two, and Bank of America in the Checking
 3   Account Overdraft Litigation.  And there may be one
 4   or two more, but I don't have that list in front of
 5   me.
 6              MR. KRESS:  If I believe correctly,
 7   wasn't Lawn Mower -- and just for the record, Steve,
 8   since you asked, just to clarify, I think that Lawn
 9   Mower, the attorney fee reduction at the trial level
10   was, I think, around 7 million before that was
11   appealed.
12              BY MR. SCHWARTZ:
13       Q.   Okay.  Let's put Lawn Mower to the
14   side.  The other cases you mentioned, LCD, DRAM and
15   United Health, Propane one and two and Bank of
16   America overdraft.  In those cases, you did not get
17   an additional benefit for the class from the trial
18   court, you filed an appeal, you did not get an
19   additional benefit for the class, but you agreed to
20   dismiss your appeal in exchange for a cash payment;
21   is that correct?
22       A.   Well, and I think in Bank of America,
23   and I think I put this in the papers and, you know,
24   in the motion to quash in response to your chart,
25   there was a change made to that settlement well
```

1    after the Court had overruled the objections, and he

2    then went back when they went for a side pray

3    payment and, you know, reversed them self.  So there

4    was in that one a change which then led to changes

5    in every case after that, so -- so in that respect,

6    I do believe that the objectors brought benefit in

7    that class.

8         Q.   So let's talk about LCD, DRAM, United

9    Health, and Propane one and two.  Were there any

10   corresponding benefits to the class as a result of

11   the objection to --

12              MR. KRESS:  Ken, I'm going to object

13   that this has been asked and answered.  You continue

14   to persist in asking the same question.  Mr. Fortman

15   has already testified repeatedly that the benefit

16   that is brought but is not required to be brought by

17   the objector is simply the filing of the objection

18   and advising the Court of what the issues are that

19   the other parties are not addressing.

20              Subject to that, Jon, you can answer.

21              MR. SCHWARTZ:  Mr. Kress, you're not

22   getting the speaking objection.  You're going to

23   have your chance to testify, and I don't believe he

24   actually said that testimony, although he may have

25   said it in his affidavit.

```
 1              THE WITNESS:  No.

 2          BY MR. SCHWARTZ:

 3          Q.   But I just want to make sure we have a

 4   clean record so neither one of us is confused.

 5   We're talking about LCD, DRAM, United Health and

 6   Propane one and two.

 7              Were there any corresponding benefits

 8   to the class achieved in those cases in exchange for

 9   the payment made to dismiss the appeals?

10          A.   Well, and I did say before that I

11   believe that every case we've filed benefits the

12   class in injecting that adversarial process again,

13   so, yeah.

14          Q.   Okay.  Besides the -- your filing of

15   the objection and promoting the adversarial process

16   that you testified --

17              (Reporter clarification.)

18          Q.   Beyond simply filing the objection and

19   whatever benefit there is to the adversarial process

20   of filing the objection, is there any concrete

21   substantive additional benefit that you can point to

22   that would achieve the classes in LCD, DRAM, United

23   Health and Propane one and two, in exchange for the

24   dismissal of the appeal and the corresponding

25   payment of money that you received?
```

```
 1              A.    No.   The answer is no.

 2              Q.    Okay.   Let's go to page 6 of your

 3     affidavit.

 4              A.    Okay.

 5              Q.    Before you do that, so we're talking

 6     about the benefits of the adversarial process.   Why

 7     don't you give me a little more detail or

 8     explanation as to what you mean by the filing of

 9     objections, if there's a change to the settlement

10     agreement or the fees, how that benefits the

11     adversarial process and what benefit that brings to

12     the class?

13              A.    Because we're raising issues at a time

14     when you have an inherent conflict with your class

15     that, you know, you're seeking your fees and you're

16     seeking approval of a settlement and, you know,

17     several courts have found that, and to that extent,

18     you know, I think that injecting these issues where

19     we're looking at, is a settlement fair, reasonable

20     and adequate to, you know, our absent class member,

21     you know.   And injecting that and causing class

22     counsel to respond to that and sometimes a defendant

23     to respond to it, you know, to assist the Court and

24     I think, you know, that is what the process is

25     designed to do.   I think that's why Rule 23 has that
```

1    provision.

2              So, you know, I think that that is

3    really the benefit that is brought by objectors to

4    allow the Court to look at it and to consider those

5    issues.

6         Q.   As part of objections that you and your

7    group have filed in the past, have you made

8    arguments related to the propriety of what are

9    called clear sailing agreements?

10        A.   Absolutely.

11        Q.   Why don't you explain what clear

12   sailing agreements are and why you've objected to

13   those?

14        A.   Where the defendant has agreed not to,

15   you know, object to a certain fee up to a certain

16   amount that class counsel is seeking, so, you know,

17   that -- to look out for collusion, where the

18   defendant obviously wants to -- to buy some finality

19   to a case and is looking at their risk, and I think

20   the danger is class counsel coming in and exploiting

21   that and saying, you know, we want to ask for X

22   amount in fees and then we can provide this benefit

23   to the class that, you know, that is something that

24   the Court needs to be aware of.

25        Q.   And in terms of how it affects the

```
 1   objections.
 2            Q.   Do you believe -- why do you believe
 3   that there should be transparency in fees that are
 4   paid to class counsel and class representatives --
 5   and vendors, correct, that's separate from the rule,
 6   but that's something you feel strongly about,
 7   correct?
 8            A.   Correct.
 9            Q.   And you believe that the same rules
10   should apply for payments to objectors or objectors"
11   counsel, that there should be transparency?
12            A.   Well, I agree that there should be
13   transparency in the system including with what the
14   objectors do.  I mean, the whole purpose -- you
15   know, I think it goes beyond the pale doing this
16   deposition of objectors' counsel, but, you know, as
17   far as what the rule says, the Court has the right
18   to inquire and, you know, we've never stood in the
19   way of that.
20            Q.   Could you explain to me why, if that's
21   what you believe, you oppose our request to provide
22   a list like the list that you provided in your
23   affidavit of cases and the amounts that were paid in
24   those cases?  Why did you oppose providing that
25   information if you believe in the transparency that
```

```
 1    you just testified about?
 2              A.   Because I think it's ridiculous that
 3    you've subpoenaed another practicing attorney.  I
 4    think that's ridiculous.  I mean, if you had come to
 5    me, you know, without trying to serve me with a
 6    subpoena, we could have worked this out, but I felt
 7    the need, I had to file the motion to quash because
 8    I think it's improper but that's -- that's why I did
 9    that.  I mean, you know, I could have chosen to be
10    held in contempt and taken it up to the Eighth
11    Circuit, but I didn't want to do that either so...
12              Q.   And just so I understand, is your
13    testimony that -- that we could have worked out you
14    providing the information like you provided in the
15    list, in this Exhibit 1, if we had had more
16    discussions in that summary objection to your
17    objection to this deposition part of it?
18              A.   I mean, I still would have objected to
19    it.  I mean, you requesting it, but, you know, I
20    understand the need for transparency.  I mean, we're
21    saying that, you know, the Courts have found you
22    have a potential inherent conflict, and so we're --
23    we're -- they're picking away at you that it should
24    only be fair that you get to look at kind of, you
25    know, our -- our motives and things like that.  I
```

1   mean, I have no problem with that.  It was the whole

2   process that, you know, was my issue.

3          Q.   Okay.  Later down there's a reference

4   to Mr. Kessinger who is now running a restaurant, I

5   guess, in Hawaii, but he served as co-counsel and

6   sometimes as the objector client in some objections

7   that you've been involved in; is that correct?

8          A.   That's correct.

9          Q.   What were the facts he moved to Hawaii

10  and did this restaurant deal, had he been part of

11  what I'll call the Miller/Kress working group prior

12  to that, or was he -- was he a full-fledged member

13  of that group or was he someone that came in and out

14  of that group?

15         A.   There was no -- I mean, you're saying a

16  full-fledged group.  There really wasn't a group.  I

17  mean, you know, we have the core -- John and I have

18  worked together for almost 14 years now on different

19  cases and so, you know, there's really -- there's

20  really no group.  I mean, there's no written

21  agreements.  There's no partnership, there's nothing

22  like that.  So, I mean, I can't -- that's

23  speculation that -- and I can't answer that.  It

24  depends.

25         Q.   Okay.  And before we take our break,

1          If you file an objection as attorney

2    and you learn after you filed it that you have made

3    a factual misrepresentation or a factual mistake in

4    the objection, do you believe you have an obligation

5    to correct those mistakes for the Court?

6          A.   I think that's -- obviously, I think if

7    it's something that isn't addressed, yeah, I think

8    we need to.  But, I mean, that's a really broad

9    question, you know.

10               MR. KRESS:  Yeah, objection as to

11   improper hypothetical and vague.

12               THE WITNESS:  I mean, you know, it

13   depends on if it's a disputed fact.  I mean, you

14   know, I don't think that, you know, if class counsel

15   is coming in and saying, well, that's not correct

16   and this is why we think so and there's still a

17   dispute, then, no, but, you know, it's such a broad

18   question.

19         BY MR. SCHWARTZ:

20         Q.   Sure.  But if it's objectively, you

21   just flat-out made a mistake, do you believe it's

22   your responsibility to correct your flat-out

23   mistakes when you learn from them, from filings with

24   courts?

25               A.   Again, it's a broad question.  But, I

```
 1   mean, I would hope so, yes.
 2             Q.   Okay.  Let's mark as Exhibit 4 the
 3   objection of Ms. Kress, Kelly Kress, that was filed
 4   in this case, and I believe that's available to the
 5   court reporter to mark.
 6                  (Exhibit 4 was marked for
 7                   identification.)
 8                  THE WITNESS:  I've got it.
 9             BY MR. SCHWARTZ:
10             Q.   Okay.  This is the objection that you
11   and your co-counsel filed on behalf of Kelly Kress,
12   correct?
13             A.   That's correct.
14             Q.   And similar to what we discussed
15   before, is this an objection that you participated
16   in the drafting of along with your co-counsel?
17             A.   Yes.
18             Q.   And you may or may not answer this
19   question, so we'll wait for an objection if it
20   comes, but is there any particular person, whether
21   it's Mr. Miller or Mr. Kress or yourself, that took
22   primary responsibility for drafting and researching
23   this objection?
24                  MR. KRESS:  And again --
25                  MR. SCHWARTZ:  For --
```

 1              MR. KRESS:  I'm sorry, Steve.  Finish

 2      your question.

 3              MR. SCHWARTZ:  Go ahead, Mr. Kress.  Is

 4      there an objection?

 5              MR. KRESS:  Yes, there is an objection

 6      on work product and attorney-client privilege.  I

 7      would instruct you not to answer, Jon.

 8              THE WITNESS:  Yeah, I'm not going to

 9      answer that.

10          BY MR. SCHWARTZ:

11          Q.   Okay.  Let's get at it a different way.

12      Is it fair to say that since you were listed on this

13      objection before it was filed, you reviewed the

14      objection and you felt you had a basis to make the

15      statements in this objection along with your

16      co-counsel?

17          A.   Yes.

18          Q.   And as one of the lawyers in this

19      objection, you take responsibility for this

20      objection as opposed to saying, no, it was Mr. Kress

21      and Mr. Miller who are responsible, I'm not

22      responsible for any mistakes; is that fair?

23          A.   If my name appears on an objection, I

24      take full responsibility.

25          Q.   Okay.  There are no page numbers that

```
 1    are on the objection at the bottom, but we'll use

 2    the page numbers at the top which is the page -- so

 3    if you go to page 2 of 30, do you see that?

 4         A.   Yes.

 5         Q.   Okay.  The introduction of the

 6    objection that you filed, do you see at the last

 7    paragraph you're talking about Mr. Chambers and the

 8    payment that is proposed for him for his website, do

 9    you see where you wrote at the beginning of the last

10    paragraph, "Not surprisingly, it's only Mr. Chambers

11    and class counsel getting paid on this case"?

12         A.   Uh-huh.

13         Q.   Do you see that?

14         A.   I see that.

15         Q.    Is that statement true that only

16    Mr. Chambers and class counsel are getting paid cash

17    money in this case?

18         A.   Look, Steve, I don't want to get into

19    the merits of this objection.  I don't think this is

20    proper to do that.  You're asking me as the attorney

21    as to kind of, you know, you're going to get into

22    what documents I reviewed to support the statements

23    in the objection.  I don't think that's proper.  It

24    goes to my work product.  I am not going to answer

25    anything about the work that I performed or anything
```

 1   in this objection.

 2            Q.   Okay.  I'm not asking you what the

 3   basis was for that statement.  I haven't asked you

 4   what work you did or what you looked at.  I simply

 5   asked whether that statement that it is only

 6   Mr. Chambers and class counsel getting paid on this

 7   case, whether that statement in the objection you

 8   filed was true or not.

 9            A.   I will say that there are other --

10   there are people that, you know, that had fire

11   events that are getting payments in that case.  Or

12   had overheating events, I guess.  So there's a small

13   minority of classes -- of class members that are

14   getting some actual payment.

15            Q.   Did you disclose that fact when you

16   wrote or approved the statement that it's only

17   Mr. Chambers and class counsel getting paid on this

18   case?

19            A.   I don't want to get into this argument

20   with you.  I don't think this is proper, and I am

21   not going to answer anything related to what I put

22   in an objection as the attorney.

23            Q.   Let's go to page 3.

24            A.   Okay.

25            Q.   Do you see in the first paragraph on

1    page 3 the objection that you are a part of states,

2    "However, that claim may be true because the class

3    members get nothing but cash incentives for

4    purchasing new dishwashers."  Do you see that?

5         A.   Yes.

6         Q.   Is it true that class members get

7    nothing but cash incentives for purchasing new

8    dishwashers?

9         A.   Well, I think that's part of it.

10             MR. KRESS:  And, well, and do you also

11   see on page 2 -- Steve, if we're going to do this,

12   let's do it right, please.  This is John Kress on --

13             (Simultaneous speech.)

14             MR. SCHWARTZ:  Please let me speak --

15             THE WITNESS:  Just follow up.  Follow

16   up.

17             Okay.  All right.  So what's the

18   question?

19        BY MR. SCHWARTZ:

20        Q.   The question was whether it is true

21   that class members get nothing but cash incentives

22   for purchasing new dishwashers.

23        A.   Again, I don't -- you know, I'll tell

24   you what I told you before, that there are -- a

25   minority of the class is getting payments for

```
 1   overheating events.  But, but, you know, that's --
 2   that's what I am saying.
 3           Q.   And just so we have the same
 4   understanding as to who gets paid, everyone who had
 5   an overheating event for one of the class washers
 6   has the opportunity to get reimbursement for the
 7   full cost of repair, and I believe it's $300 for a
 8   replacement if there is some documentary proof
 9   either in Whirlpool and Sears databases or provided
10   by the class member.  Is that your understanding?
11               MR. MYERS:  Object to the form.
12               THE WITNESS:  Yeah.  And I'm going to
13   say the settlement agreement speaks for itself.
14       BY MR. SCHWARTZ:
15           Q.   Let's go to page 4 of your objection.
16           A.   And just for the record it is not my
17   objection.  It is an objection I filed on behalf of
18   an absent class member.
19           Q.   And that is a fair point.  I was using
20   shorthand, but I'll try to keep the language
21   accurate.
22               On the first full paragraph at the
23   bottom, the objection that you again stated,
24   "Meanwhile, the class members get nothing more than
25   a discount toward a future dishwasher purchase."  Do
```

```
 1   you see that?

 2             A.   Yes.

 3             Q.   Is that statement true?

 4             MR. KRESS:  And, again, I'm going to

 5   object.  I'm going to object that the document

 6   speaks for itself.  I'm also going to object that

 7   it's -- I'm going to object as to the form of the

 8   question, and you're not looking at the document in

 9   its totality.  You're asking about one sentence, and

10   I think for that basis that the question is unfair

11   and it's objectionable on that basis.  But, Jon, if

12   you can answer, go right ahead.

13             THE WITNESS:  Well, again, you know,

14   we've identified in the settlement agreement that

15   there are, you know, at least a small benefit going

16   to those who have had overheating events.

17             BY MR. SCHWARTZ:

18             Q.   Everyone who is subject to the defect

19   and actually suffered, right?

20             A.   Well, it's all in the -- it's all in

21   the settlement agreement.

22             Q.   Right, which says that defendants are

23   going to pay damages for anyone who had an

24   overheating event for their dishwasher which was the

25   defect that was challenged in the lawsuit, right?
```

```
 1           A.   Correct.
 2           Q.   Towards the bottom of page 3 and the
 3  beginning of -- I'm sorry, the bottom of page 4 and
 4  the beginning of page 5, there's more discussion
 5  about the proposed purchase of Mr. Chambers' website
 6  by defendant.  And at the bottom of page 4, the
 7  objection states, "It does appear that Mr. Chambers
 8  has spent a great deal of effort and energy to
 9  galvanize support and awareness of the defective
10  product."  Do you see that?
11           A.   That's what it says.
12           Q.   And that, in fact, is a true statement,
13  right?
14           A.   Well, again, I don't want to get into
15  arguing --
16           MR. KRESS:  Same objection.
17           THE WITNESS:  Well, I don't want to get
18  into arguing the merits of what is going through my
19  thought process because I think that's improper.  It
20  is what it says in the objection.
21           BY MR. SCHWARTZ:
22           Q.   You then wrote, however -- "However,
23  perhaps this role should have been relegated to that
24  of a consultant instead of a named plaintiff."  Is
25  that --
```

1   rules also say that those fees have to be divided

2   based upon some, you know, at least performing some

3   legal work in the case and that is not her role.

4          Q.   Okay.  So for this objection, Kelly

5   Kress did not perform any legal work, and for this

6   objection Kelly Kress will not be paid anything for

7   the division of any legal fees that you or your

8   co-counsel may get; is that correct?

9          A.   At this point, yes.

10              MR. KRESS:  I'll just -- you know,

11  Steve, since you're on the subject, you know, the

12  declaration that she's submitted, she does not

13  represent objectors.  If I need to restate that, I

14  can.

15              MR. SCHWARTZ:  No, that's okay.  That's

16  fine.  I just wanted to --

17              MR. KRESS:  I just didn't know if that

18  needed to be clarified.

19              MR. SCHWARTZ:  I just want to get an

20  understanding and you guys are being helpful here.

21          BY MR. SCHWARTZ:

22          Q.   And in the other cases, where there has

23  been -- where the objector also was an attorney and

24  has been paid fees, were those cases where those

25  objector attorneys were paid based on the amount of

```
 1    work they did in that case as opposed to simply just

 2    being the named objector?

 3         A.   Yes.

 4         Q.   And without getting the specific

 5    situation, has there been an instance where maybe

 6    the attorney objector did only, like, one percent of

 7    the work and got 20 or 30 or 40 percent of the fees,

 8    or were the fees divided roughly along the lines of

 9    the actual legal work that was -- that was borne?

10         A.   The fees have always been divided

11    roughly based upon the amount of work that was

12    performed.

13         Q.   Okay.  And I guess it sounds like

14    that's true for both the actual attorneys in their

15    capacities as attorneys when they're serving in that

16    capacity for objections, and also for the specific

17    objectors who also happened to be attorneys; is that

18    fair?

19         A.   That's fair.

20         Q.   Okay.  Down at the bottom of page 5 of

21    the objection, it states, "The parties could not be

22    bothered to inform this Court of what the exact

23    websites were that are the subject matter of the

24    transactions."  Do you see that?

25         A.   I see that.
```

```
 1    subpoena required me to sit for a depo and produce

 2    nonprivileged documents.  It does not require me to

 3    testify concerning my thoughts and mental

 4    impressions or my work product, and I think that's

 5    exactly what you're trying to do and I'm not going

 6    to answer it.

 7              MR. KRESS:  Let's just have an ongoing

 8    objection of that sort, Steve.  Let's save yourself

 9    some time here.

10              MR. SCHWARTZ:  You can have the ongoing

11    objection and, Mr. Fortman, you can have what I'll

12    call a continuing answer.  If I ask you a question

13    where you don't want to answer, you can just say,

14    "I'm refusing to answer on the same grounds," and

15    we'll use that shorthand.  But I do want to make my

16    record.

17              BY MR. SCHWARTZ:

18         Q.   On page 8 of the objection, on the

19    third paragraph, do you see in the second sentence

20    the objection states, "Here, the class members

21    interests are in receiving the maximum benefit that

22    can be achieved through either litigation or

23    settlement."  Do you see that?

24         A.   Yes.

25         Q.   Now, stepping back, generally with
```

1    litigation, would you agree with me, sir, that it's

2    difficult to get, for one party to get a full

3    recovery of everything they seek in a lawsuit that

4    they file?  And that in terms of litigation, that

5    unless there is a full trial, full exhaustion of

6    appeals, generally if there's a settlement, there's

7    going to be some compromise by both parties?

8              A.    Absolutely.

9              Q.    And would you also agree, it's rather

10   extraordinary when a litigant is able, in a big

11   case, to get a full recovery of out-of-pocket

12   damages that are sought in a case?

13             A.    I would agree with that, yes.

14             Q.    And we'll take another case which you

15   are involved and I was involved in, my Apple case,

16   where with a $53 million settlement even after

17   attorney's fees were paid, that were awarded and

18   approved by the Court, class members received checks

19   for approximately 117 percent of the amount that --

20             MR. KRESS:  And I'm going to object to

21   that question --

22             THE WITNESS:  Let him finish.

23             MR. KRESS:  -- and --

24             THE WITNESS:  Let him finish.

25             MR. SCHWARTZ:  Let me finish, please.

```
 1    And you can just say objection, irrelevant, or

 2    something else.  Don't -- don't do a speaking

 3    objection.

 4              Let me rephrase the question because

 5    I've got to start over now since I've been

 6    interrupted.

 7         BY MR. SCHWARTZ:

 8         Q.   Wouldn't you agree, sir, that in my

 9    Apple iPhone case to which you filed an objection,

10    where a $53 million settlement was big enough even

11    after deduction of attorney's fees that class

12    members received a check for approximately

13    117 percent of the amount that they paid for

14    replacement iPhones that should have been replaced

15    under warranty, that's the kind of very

16    extraordinary settlement recovery that we were just

17    talking about before; would you agree with that,

18    sir?

19         A.   Well, I mean, I can't speak to the

20    specifics of it because I just don't recall, but,

21    you know, obviously if you're getting the class

22    members 100 percent or more of what you're alleging

23    the loss is, obviously, that's, you know, a very

24    good settlement.

25         Q.   In general, when you make objections in
```

1    class actions -- I've read some of them, obviously

2    not all of them.  In some of the objections, you and

3    your co-counsel have challenged both the work and

4    the integrity of class counsel in some cases; is

5    that fair?

6              A.    Absolutely, yes.

7              Q.    And as part of -- now, I'm still

8    talking generally.  When -- when you and your

9    co-counsel make those kind of attacks on class

10   counsel, do you undertake any efforts to evaluate

11   who class counsel is, what their reputations are,

12   what they have achieved, to evaluate whether or not

13   such a charge, which is a pretty serious charge, is

14   a fair charge?

15             A.    Again, I think you're getting into work

16   product as to, you know, what the efforts that I

17   undertake when I have a client contact me about a

18   class action settlement, so I really can't get into

19   that other than to say that, you know, I do what I

20   believe I'm required to do as far as an adequate

21   investigation.

22             Q.    Let me see if I can get an answer by

23   asking a more generalized question.  Would you agree

24   with me, sir, that an attorney should take extra

25   care and undertake extra investigation before making

```
1    serious charges about other attorneys related to the

2    quality of their work and their integrity?

3              A.   I agree with that, just like class

4    counsel should do when they make the attacks on us.

5              Q.   Obviously, you are aware of my Apple

6    settlement because you -- and you studied the Apple

7    settlement because you were part of an objection

8    that was filed as counsel in that case, right?

9              MR. KRESS:   I'm going to object to the

10   use of the word "study."

11             THE WITNESS:   We have -- I was on --

12             MR. SCHWARTZ:   I'll rephrase.  Let me

13   rephrase.  It was a bad question.

14             Q.   You're familiar with my Apple

15   settlement based on the fact that you or counsel had

16   objections filed in this case, right?

17             A.   I know there was a settlement.  I have

18   no independent recollection of anything related to

19   it.

20             Q.   Are you aware I recently obtained a

21   summary judgment against Safeway for approximately

22   $42 million which was a full recovery of prejudgment

23   interest and the amount of overcharges in that case,

24   a complete recovery on summary judgment?  Are you

25   aware of that case that was entered late last year?
```

```
 1    service?
 2                   MR. KRESS:  I'm going to object again
 3    on work product and Mr. Fortman's mental thoughts
 4    and processes and what he's aware of.
 5                   THE WITNESS:  Yeah, I'll refer you --
 6    you know, the settlement agreement says what it
 7    says.  I know there are some things in there.
 8            BY MR. SCHWARTZ:
 9       Q.   Where you've been class counsel, have
10    you ever sought or been successful in obtaining a
11    service award or an incentive award for any of your
12    clients who served as class representative?
13       A.   I'm not sure on the one that we had
14    that went all the way through trial whether there
15    was -- because it was injunctive relief, so I'm not
16    so sure that there were incentive awards to the
17    named class reps.  I just don't remember.
18       Q.   Is it possible there was an incentive
19    that was requested and awarded but you just can't
20    remember?
21       A.   I really don't think there were, but,
22    you know, I'd have to go back, since it was an
23    injunctive class.
24       Q.   Do you think your client in that case
25    deserved some incentive award or service award based
```

 1    on his or her participation in that case?

 2                    MR. KRESS:  I'm going to object to

 3    relevance and, again, work product and what

 4    Mr. Fortman thinks about what someone may deserve in

 5    a case that's no longer pending or what occurred

 6    within it.

 7                    THE WITNESS:  I mean, yes, absolutely.

 8              BY MR. SCHWARTZ:

 9         Q.   I'm sorry.  Absolutely what?

10         A.   They deserved compensation.  They

11    deserved an incentive award, but I don't think they

12    got one.

13         Q.   For the objection -- we'll ask

14    Ms. Kress the same question.  I might ask Mr. Kress

15    the same question, but I'd like to get some clarity.

16    Do you believe that the proposed $4,000 incentive

17    award to the class representatives are improper or

18    accepted in this case based on the work that they

19    had done in their role as class representative?

20         A.   You know, I'm not going to answer that.

21    I think, again, that goes to what I've done and the

22    kind of work I've done.  I mean, Mrs. Kress, I

23    think, you know, it's proper to ask her, but I don't

24    think it's proper to ask her attorneys.

25         Q.   Is there an objection that is being