# EXHIBIT 6 TO SCHWARTZ DECLARATION

1              UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
2

3
   STEVE CHAMBERS, et al.,)
4                         )
            Plaintiffs,  )
5                         )
            vs.           )No: 8:11-cv-01733-FMO(ANx)
6                         )
   WHIRLPOOL CORPORATION  )
7  et al.,                )
                          )
8           Defendants.   )

9

10

11

12

13      VIDEO CONFERENCE DEPOSITION OF JOHN C. KRESS

14          TAKEN ON BEHALF OF THE PLAINTIFFS

15                AUGUST 18, 2016

16

17

18

19

20

21

22

23

24

25

 1    drier, that this objection therefore connotates or

 2    indicates it is a boilerplate objection that has no

 3    legal thought, that was just simply filed

 4    willy-nilly, so to speak, without any regard to any

 5    review of the case, the settlement, et cetera.

 6              And I guess while we're on the subject,

 7    I do believe that there are objectors out there that

 8    probably do that, and you can review those.  They're

 9    out there in cyber space and in other cases, but

10    this is not one of those cases, and those are not

11    objections that we filed.

12         Q.   Sure.  And just so we have good

13    communication on the terms I'm using, while people,

14    and perhaps I at points in time, have made arguments

15    about what people do in cutting and pasting, when I

16    ask a question about cutting and pasting, I

17    literally mean when you're on your -- when you

18    highlight a portion, you cut it from one document

19    and you then go paste it into another document, so

20    why don't I get to the issue this way.

21              Your group, you, Mr. Fortman and Mr.

22    Miller, filed an objection in the Electrolux case,

23    correct?

24         A.   Yes, that's correct.

25         Q.   And would it be fair to say that the

1  Electrolux case dealt with the risk of fires in

2  driers and this case deals with the risk of fires in

3  dishwashers?  Would it be fair to say that there was

4  similar claims brought in both cases?

5          A.   To be fair, Steven, I don't recall all

6  the facts of Roberts v Electrolux.  What I recall

7  from it more than anything is that there was a nunc

8  pro tunc order entered that removed a great deal of

9  offensive language directed as us as objectors's

10  counsel that continues to be repeated in this case

11  before Judge Olguin, which is patently false.

12              I don't remember the specific facts, I

13  knew -- I can tell you it involved driers and it

14  involved I guess an overheating event, but beyond

15  that, I can't really tell you more about it without

16  actually reviewing their settlement again and those

17  documents.

18          Q.   Do you know or recall why your group

19  and your clients withdrew the objection filed in the

20  Roberts versus Electrolux case?

21          A.   I don't believe that objection was

22  withdrawn.  I believe that we ended up appealing

23  that court's decision in that particular case.

24          Q.   Did you at some point dismiss your

25  appeal?

 1        A.   Yes, we did.

 2        Q.   Were you paid any money to dismiss your

 3   appeal?

 4        A.   I'm sorry, was I paid any money?

 5        Q.   Yeah, was there any money or other

 6   compensation paid to you and your group in

 7   connection with the dismissal of the appeal in the

 8   Roberts verse Electrolux case?

 9        A.   What I will tell you that it is not

10   uncommon under certain circumstances that the

11   objectors' attorneys are awarded attorneys' fees by

12   class counsel at that stage of the proceedings.  I

13   can't really get into the specifics of that because

14   I believe it does exceed the scope of your subpoena.

15            But to be fair with you, you brought it

16   up, or actually perhaps I brought it up also, or

17   both of us did, but I would tell you it would not be

18   uncommon for that to occur under certain conditions.

19        Q.   I'm going to ask my question again --

20        A.   Sure.

21        Q.   -- because I have a court order

22   deposition subpoena for you to testify which was not

23   limited to what documents were produced.

24            Were you and your group paid money in

25   connection with the dismissal of the appeal that you

```
 1   filed in the Electrolux case?
 2                MR. FORTMAN:  Well, let me interpose an
 3   objection here because even though he was served
 4   with a subpoena, it does not permit him absent a
 5   court order to get into specifics of any settlement
 6   on appeal.  Those are all protected by circuit court
 7   mediation protections and confidentiality.  There's
 8   been no court order to disclose that information.
 9                So subject to that, I mean you can -- I
10   mean, you can answer whether there was a settlement.
11                THE WITNESS:  And --
12        Q.    (By Mr. Schwartz)  Let me just say
13   this --
14        A.    Sure.
15        Q.    -- before you go forward, Mr. Kress, in
16   response to the objection of your counsel.  The
17   issue of payments and appeals was briefed in the
18   Motion to Compel Proceedings, we got an order
19   compelling the testimony.  We got a second order on
20   your reconsideration motion, or Mr. Fortman's
21   reconsideration motion that it wasn't just for the
22   documents in this document portion of the subpoena,
23   but also protective about these issues, so I
24   disagree that you have not been ordered to testify
25   about these issues and payments not just for trial
```

1   court dismissal but appellate dismissals, we have an

2   understanding that the information that would be

3   designated confidential under the confidentiality

4   agreement, and I think it's fair to say that both

5   the orders from the Eastern District of Missouri and

6   from the Central District of California rejected the

7   notion that there was a privilege or confidentiality

8   protection that would prevent disclosure of the

9   amounts of the payments, even though they may be

10  subject to confidentiality for our proceeding.

11          So I've asked the question, I would

12  like to know if there was a payment and what the

13  amount is, you're either going to answer that

14  question or you're not, and then if you don't

15  answer, we will have to ask to have a further

16  proceedings from the court to figure out whether we

17  get that answer or not.  So are you going to answer

18  that question or not?

19          MR. FORTMAN:  Well, we definitely

20  disagree with your characterization of what the

21  court has ordered.  The court has ordered the

22  production of the documents pursuant to your

23  subpoena and it did not exceed that scope.  So I'm

24  going to instruct him, he can -- he can tell you

25  whether it was settled or not, but beyond that,

1   they're subject to confidentiality agreements in the

2   various circuit court mediation programs, and, you

3   know, without some additional subpoena or some

4   additional Motion to Compel, I don't think he's

5   required to, and I think he would be violating the

6   terms of those confidentiality agreements if he

7   disclosed specifics of those settlements.

8            Q.   (By Mr. Schwartz)  Mr. Kress, are you

9   going to answer the question or not?

10           A.   The answer to your question is yes,

11   that case did settle.  That's the extent of my

12   answer for that.

13           Q.   And are you refusing to tell me whether

14   you and your group was paid money to settle that

15   case and dismiss the appeal?

16               MR. FORTMAN:  I mean, I think -- I

17   mean, I think we can say that there was financial

18   compensation paid.

19               THE WITNESS:  There was -- I -- I'm --

20   there was payment of attorneys' fees, and beyond

21   that, I'm not permitted to disclose further without

22   another order from the court and with some subpoena

23   compelling that information and narrowing the scope

24   of what it is that you seek.

25           Q.   (By Mr. Schwartz)  Can you identify any

1  change made to the Electrolux settlement or any

2  change to the fees that were awarded by the court in

3  the Electrolux case that were the result of the

4  objections that you filed?

5          A.   As I sit here, off the top of my head,

6  I don't recall any changes being made to that

7  settlement in particular or any changes to the

8  amount of the attorneys' fees.  It has always been

9  our position and continues to be that the filing of

10  the objection itself, again reinjects the

11  adversarial process, or to put it a different way,

12  it points out issues to all the parties and the

13  court that may have been kind of lost or cast aside

14  as the parties were either figuring out how they

15  wanted to settle the case and the payment of

16  attorneys' fees or, quite frankly, under certain

17  conditions hadn't been considered at all that we

18  believe are legitimate issues and that, therefore,

19  point out to the parties and to the court.

20          Q.   So in the Electrolux case, would it be

21  your position that even though there is no change

22  for the better for the settlement or reduction in

23  the fees or concrete any benefit that was achieved

24  by your objection in terms of what the settlement

25  was and the fees were, that the benefit that

1  justifies the payment of the fees was assisting in

2  the adversarial process and bringing the issues in

3  front of the court so there could be a better

4  assessment, is that basically what you're saying?

5      A.   You're asking several things, but I

6  think I can address them one-by-one.  First of all,

7  as justification for payment of an award of

8  attorneys' fees, you really would have to ask class

9  counsel that question.  I can't get into their heads

10  as to their motivation and, as you know as an

11  attorney, perhaps what someone's motivation is is

12  not necessarily what they outwardly display to a

13  third party or necessarily what they're willing to

14  share with you.

15          And so what would motivate class

16  counsel to make that or justify that, you would

17  really have to -- you would have to go back to class

18  counsel and either depose them or perhaps just

19  simply ask them what motivated them to do that.

20          What I can tell you is that -- you just

21  disappeared from me, Steven, on the video.

22          MR. FORTMAN:  There he is.

23          THE WITNESS:  Okay.  Now you're back.

24  Can you see me okay?

25      Q.   (By Mr. Schwartz)  Yes, I can.

1        A.    Okay.  Because you disappeared from me

2   and I couldn't see, and didn't want you -- anyhow,

3   the actual -- the filing of that objection again

4   provides that benefit to the class members and

5   it's -- I think it's also important to keep in mind

6   is that, you know, under Rule 23, we don't have that

7   duty to the class that you as class counsel have.

8             Nonetheless, it is our efforts and our

9   attempt to inform, if you will, the court that these

10  are issues that should be addressed, this is why we

11  believe they need to be addressed, and that this is

12  why this is important and can assist and help the

13  class.

14            I'll be the first one to tell you, and

15  you already know this, it's an uphill battle and

16  it's not an easy one to win if the way you are going

17  to analyze it is stating okay, show me in the

18  court's order, for example, where it says that your

19  group or your objector brought benefit to the class.

20  It's a difficult thing to accomplish, but it has

21  been done under certain circumstances.

22        Q.    Was there any disclosure of that

23  payment made to the trial court judge in Electrolux?

24        A.    I think, as I already testified, that

25  was up on appeal, and I'm not familiar with any rule

```
 1   that would have required its disclosure to the trial
 2   court, and I'm not familiar with any rule that would
 3   require that in general.
 4             My understanding is that through these
 5   various mediation offices, when cases are appealed,
 6   it is not uncommon, one of the first documents that
 7   is required to be filled out is the -- I believe
 8   it's called a mediation questionnaire, where the
 9   parties indicate whether or not that they would even
10   have an interest in discussing with the other side
11   resolution of their particular issues while on
12   appeal.
13             As you well know, sometimes that
14   happens, sometimes it doesn't.  Sometimes there's a
15   mediation and it's successful, sometimes it's not,
16   under a variety of circumstances.  But I'm not
17   familiar with anything that would require a party or
18   us or our counsel to inform or notify the trial
19   court that there has been a settlement up on appeal.
20        Q.   Okay.  Mr. Kress, I think we've both
21   fallen into a trap which is that the attorneys, we
22   didn't go over the rules, because we assume we know
23   them, but there's an old quote that says attorneys
24   make the worst witnesses, and I don't mean that as a
25   pejorative term for you, but one of the rules we
```

1    usually go over with witnesses, both when we prepare

2    them and when we are taking their deposition, is

3    listen to the question and answer the question,

4    don't answer a different question.

5            I specifically asked you whether or not

6    there had been disclosure to the trial judge, and

7    you asked all the reasons why you think there was a

8    need to have disclosure.  So I want to see if we can

9    speed things along a little bit by your answering my

10   specific question, so I'll go back to the question

11   where I started from, which was just yes or no, was

12   there any disclosure of that payment to the

13   Electrolux case that dismissed the appeal to the

14   trial court judge?

15       A.   I can tell you that it was not -- the

16   trial court was not informed that there was a

17   payment of attorneys' fees, but I do believe, and

18   you would have to look through the docket, but I

19   believe that you will find a motion or memorandum

20   that was filed by class counsel that informed the

21   trial court that that nunc pro tunc order was

22   necessary in part due to a settlement that had been

23   reached with our objectors.

24           I can't remember the document number

25   or -- well, I just recall that there was some basis

```
 1   that -- well, my understanding is that was filed for

 2   that reason, so that the court would understand that

 3   we're doing this and you're doing this for this

 4   reason also.  They needed to advise the court and

 5   give them additional supporting information.  So I

 6   hope you find that helpful.

 7        Q.   Mr. Kress, my recollection from

 8   reviewing that docket was there's no such document

 9   filed making that explanation as you described.  Let

10   me then -- let me get back into that in a different

11   way.

12             Was -- was part of the consideration

13   for dismissing the appeal having class counsel or

14   the parties go back to the trial judge and request a

15   nunc pro tunc change to the final approval order?

16        A.   Yes.

17        Q.   And were you or your co-counsel part of

18   any teleconference with the judge regarding changing

19   the final approval order?

20        A.   No, no.

21        Q.   And in the Electrolux case, remind me,

22   who was your client, the objector of the Electrolux

23   case?

24        A.   I'm sorry, I don't recall the names of

25   the clients in that case.
```

```
 1          Q.    Okay.

 2          A.    That was several years ago.

 3          Q.    Were those by lawyers or are they

 4   non-lawyers?

 5          A.    I believe they were non-lawyers.

 6          Q.    Okay.  And I believe Mr. Fortman

 7   testified yesterday, but confirm this for me, that

 8   for your group, and I'm using that as shorthand for

 9   you and Mr. Miller and Mr. Fortman --

10          A.    Certainly.

11          Q.    -- that you had never been involved in

12   an objection in a class action where a non-lawyer

13   client objector received money in connection with

14   their participation as an objector above and beyond

15   what they got as a regular class member, is that

16   right?

17          A.    That's correct.

18          Q.    And is Electrolux another one of those

19   cases where you and Mr. Miller and Mr. Fortman

20   shared whatever fees were paid by class counsel

21   based upon an equal basis relative to your work that

22   you did?

23          A.    Yes.

24          Q.    Do you know whether other objectors

25   were paid money to dismiss their appeals in the
```

 1  Electrolux case?

 2        A.   I have no knowledge of what other

 3  objectors did in that case or whether or not those

 4  appeals were resolved or in what manner, or if they

 5  appealed for that matter.

 6        Q.   What -- was the resolution of your

 7  Electrolux appeal done by a circuit court mediator

 8  or was it done bilaterally with class counsel?

 9        A.   Well, I don't think I can answer.

10             MR. FORTMAN:  Yeah, I think you're

11  getting into kinda what was covered under the

12  mediation confidentiality rules.

13             THE WITNESS:  We're getting too close,

14  I don't think I can discuss that, unfortunately.

15             MR. FORTMAN:  I think the mechanics of

16  how that case was resolved, I think is covered by

17  that protection.

18             MR. SCHWARTZ:  Well, I'm trying to

19  determine whether mediation applies, whether it's

20  actually a mediation --

21             THE COURT REPORTER:  I can't understand

22  you, sir.

23             MR. SCHWARTZ:  -- or what the nature

24  and extent of that was.  Like for example, in our

25  case we know that Professor Oragreid [phonetic]

 1   served as mediator and we provided details of that

 2   to the court.  So I'm just trying to figure out --

 3            THE WITNESS:  Steven, I'm sorry to

 4   interrupt you, the court reporter here is saying

 5   she's having trouble hearing you, so.

 6            MR. SCHWARTZ:  Oh, okay.  Do you want

 7   me to speak slower or is it the voice quality?

 8            THE COURT REPORTER:  It's the voice

 9   quality.

10       Q.   (By Mr. Schwartz)  Okay.  Let's see if

11   by speaking clearer and slower we can make this

12   better.

13            Was the Electrolux appeal resolved in

14   connection with a court sponsored mediation process?

15            MR. FORTMAN:  Again, I think that's

16   getting too close to, you know, because whether it

17   was through the mediation process or confidentiality

18   between the parties under the California rules, I

19   think you're still getting into a point where we are

20   not able to disclose that information absent some

21   order from the court.

22            THE WITNESS:  And let me be clear for

23   the record, Steven, you know, I don't have issues

24   with disclosing what's going on with settlements on

25   appeal.  I think there should be that transparency,

1    but there are also these offices that handle these

2    mediations, and I'm aware that they say that the

3    terms will be held strictly confidential, and along

4    with those settlement agreements.

5              So if this is an issue for you and you

6    feel this strongly about it, and if you're going to

7    be filing something with the court to do that, let

8    us know and I will talk to my group and see if

9    there's some way that we can either join you in that

10   motion perhaps, because, you know, my issue is that

11   I don't want to disclose something to you and then

12   I've got these other circuit mediators or their

13   offices saying okay, now you've done this.  I don't

14   even know how that's handled in terms of if you do

15   that without absent a court order.

16             But again, if that's something you feel

17   strongly about and you need those numbers, you know,

18   when we're done today, call me, talk to me and we'll

19   see if we can't work something out and we'll file a

20   joint motion if you feel that's necessary if my

21   co-counsel are agreeable with that.  Because I think

22   the information you're seeking is reasonable is what

23   I'm trying to say, but I can't disclose it.

24        Q.   I appreciate that.  I appreciate that.

25   What I'm trying to figure out is whether a circuit

1    court mediator was actually involved in the

2    settlement and dismissal of your appeal in

3    Electrolux, but I don't have that information yet.

4          A.    And I understand your need for that,

5    and to be fair to you, I would like to tell you more

6    about that, but I believe that I can't because of

7    the rules and because of the objections that my

8    co-counsel has just raised.

9              But I'm again telling you I'm willing

10   to explore that with you at a later time other than

11   today if there's something you feel that is so

12   necessary that you want to obtain that information,

13   you know, contact me and call me and we'll discuss

14   it.

15         Q.    Okay.  And just to close a loop, you're

16   refusing to provide that specific information to me

17   today at this deposition?

18         A.    Yes, sir, I am.

19         Q.    Okay.  Let's talk about what you

20   testified about in the Fortman case, similar

21   testimony about, even if there's no what I'll call

22   success in approving the settlement or reducing the

23   fee, et cetera, that there's a benefit that

24   objectors provide to transparency and the

25   adversarial process and giving the judge information

1   injury, and I think that there should be damages

2   that are paid to those class members.  I think as

3   you refer to it as asymptomatic dishwasher, that

4   they should be paid something in cash, and they

5   should receive something for that as part of their

6   damages because the opinion would be is that if

7   they're capable of providing a coupon -- here is an

8   example.

9             Instead of giving them the 15 percent

10  off of the dishwasher, you give them that equivalent

11  in cash, or you offer them the discount and say

12  look, I can give you -- I can give you 15 percent

13  off today, or I can give you that equivalent in cash

14  tomorrow or on another day or on the same day, but

15  you're giving -- you're giving the class members

16  that option, and then you're making sure that that

17  particular certificate or option, as I refer to it,

18  is transferable or marketable instead of just saying

19  well, here, you just get what everybody else gets at

20  a sale over Labor Day weekend, or it just appears to

21  me that Sears has more holidays sales, they must

22  have more holidays than anybody, maybe Mr. Myers can

23  chime in, they may keep a different calendar, but

24  they appear to have sales constantly.

25             So when the only thing you're offering

1    to the class is what they can already get on the

2    street, it doesn't appear to be a benefit.

3         Q.   Okay.  Let's just be -- just make sure

4    we're on the same page here in our language.  Not

5    everyone on the street can stack a discount from

6    this litigation with other sales, correct?

7         A.   If they're able to do that.  I think

8    any time you can stack a coupon, and I think the way

9    you're using that term means add them both together

10   for a cumulative discount, I think that's always

11   good for the consumer.  Always.

12        Q.   And that's a portion of our negotiation

13   where you would say yes, they made them stackable

14   and usable with any other discounts compared to not

15   do willing that, correct?

16        A.   That could be helpful to the consumer.

17   But I also believe that based on the testimony of

18   Kelly Kress, my wife, yesterday, that when she

19   pulled up that website, there's a disclaimer that

20   says that you can't take this discount with any

21   other coupons, which would create a conflict with

22   that clerk at that respective Sears or Sears outlet,

23   I just -- I think that that creates even bigger

24   issues, which is why I go back to that I think that

25   what -- because you asked me what I thought that the

```
 1   class should be given and what should be done, they

 2   should be given cash.  I believe that's what they

 3   should be given.

 4        Q.   Well, how much do you think that people

 5   like you and your wife should get in cash to get

 6   over the threshold where you and your wife would be

 7   satisfied and that meets the minimum standards for

 8   fairness as a part of the resolution of the claims

 9   that --

10        A.   Well, I don't have a particular dollar

11   amount.  I go back to my previous testimony.  I gave

12   you can example where at minimum what you could do

13   is just simply say instead of a 15 percent off or as

14   I understand up to a 20 percent off coupon under

15   these circumstances, instead of taking the coupon,

16   they get the cash based on the value of that drier.

17   I'm sorry, that dishwasher.

18             You know, they dry dishes, what can I

19   tell you?  I do it with the dishwasher also, so over

20   the clothing washer.

21        Q.   That drier --

22        A.   Sorry, you know, the syntax here could

23   be for me internally, so my apologies, that just

24   provides further confusion.

25        Q.   That's okay.  So it sounds like what
```

1   complaining about what they're calling, I think is

2   it the moldy washer cases or something, and somebody

3   was claiming, I think the article was titled All

4   Washed Up, and it talks about how class counsel is

5   getting all these fees but the class doesn't get

6   anything but coupons.

7            But that's how I'm familiar with that.

8   But beyond that, I really don't have any knowledge

9   of that, unfortunately.

10       Q.   Okay.  So you're not familiar with the

11  class certification?

12       A.   No, I'm not.

13       Q.   Okay.  So it sounds like what I'm

14  hearing is that you don't believe in this kind of

15  appliance case where there's an alleged defect but

16  for the people who don't have the defect, it sounds

17  like what I'm hearing is you don't believe that any

18  settlement that does not paid cash but that pays or

19  provides discounts is going to not meet the minimum

20  standards of fair and reasonable and adequate from

21  your perspective, is that fair?

22       A.   That is fair, and I'll provide that

23  with a caveat.  You know, here would be a different

24  situation.  You know, what's being offered isn't

25  much more and maybe under certain circumstances is

1   less than what a consumer could acquire at a Sears

2   outlet or at another merchant on sale.  So perhaps

3   if the coupon were for something obviously

4   strikingly amazing, say half off, we're talking

5   about talking a substantial discount, whereby, for

6   example, and then the consumer could say well, you

7   could either take 25 percent of the value cash or

8   you can take half off of a new -- a new dishwasher.

9           But I -- you know, again, we stand

10  behind our objection, we think that the relief

11  offered to the class, for those people that you're

12  referring to as asymptomatic dishwashers is woefully

13  inadequate.

14      Q.   Okay.  And just to close the loop, I

15  think your wife in her certification attached a sale

16  where someone could get 15 percent off, and then if

17  you added one of the rebate opportunities from our

18  litigation, whether it's a 10 or 15 or 20 or 30, you

19  get up to 30 to 45 percent off, depending on what

20  the level of the rebate was and what your situation

21  was in this case, there is an opportunity by the

22  stacking feature to actually get a very significant

23  discount off of a replacement washer for current

24  washers, right?

25      A.   I think what she also testified to, she

```
 1   did -- I believe she testified that stacking is a

 2   good thing for consumers, but that in this situation

 3   according to the disclaimer that she had read

 4   online, that would not be permitted.

 5        Q.   Okay.

 6        A.   So your, you know, your settlement

 7   forces the consumer to further haggle or wrangle

 8   with getting this discount.  And by the way, when I

 9   said a 50 percent, what we're still missing here at

10   the heart of this is cash, and giving the consumer

11   the option, because I think it's important to

12   understand that there are probably enough consumers

13   out there who don't want those products any more

14   because they're concerned that again, as I refer to

15   them, is they could be potential fire bombs in their

16   kitchen even if Whirlpool disclaims them and says

17   we've changed these models, they're more safe now,

18   et cetera, et cetera.  So I think cash is still the

19   primary component that is lacking from your

20   settlement.

21             And with that, Steven, and I don't want

22   to cut you off, we've been here for about hour, I'd

23   like to stretch my legs for about ten minutes and a

24   cup of water, but if you want to finish up with me,

25   I don't want to cut you off.
```

 1         Q.   No, actually this is a good time for a

 2   break, and as we discussed yesterday, just let me

 3   know when you need breaks so you can stretch because

 4   I understand there are some back issues.

 5         A.   Yes.  Carrying canoes, Steven, never a

 6   good thing to do at my age.

 7         Q.   Well, at least you're doing stuff and

 8   not sitting around.  So why don't we come back round

 9   9:30.  Okay?

10         A.   Sounds great.

11              (Short recess.)

12         Q.   (By Mr. Schwartz)  Let's talk about the

13   relief for people who had to repair their

14   dishwashers due to an overheating event.  Okay?

15         A.   Okay.

16         Q.   You understand those people will get

17   the full amount of the repair costs subject to the

18   documentation requirements, right?

19         A.   I seem to recall reading that, yeah.  I

20   believe you're correct on that.

21         Q.   Well, is there an issue that you -- an

22   objection that you're prosecuting has with respect

23   to that provision of the settlement?

24         A.   I think really why that is important to

25   us is that just simply demonstrates that very few

 1  week is devoted to class action objections, and if

 2  you would ask me that question, I would say it

 3  doesn't occur on a weekly basis.  It's sporadic, so

 4  I think it's -- your percentage would be 20 percent

 5  or perhaps even less would be the amount of --

 6          Q.   Okay.  What kind of consumer protection

 7  cases are you involved in?

 8          A.   Well, the ones that I just mentioned I

 9  would consider consumer protection, those three

10  cases in particular.  Another case that was recently

11  filed, I believe it's styled Hunsinger v Gordmans.

12          Q.   What was that case about?

13          A.   I believe that's a TCPA case.

14          Q.   I went through with your wife, Kelly

15  Kress, and a little bit with Mr. Fortman some of the

16  statements made in the objections related to -- and

17  I'll give you an example, one is the claim may be

18  true because the class members get nothing but

19  cash -- well, let me go back.  Why don't we put the

20  objection in front of you.  It was marked as Exhibit

21  4 yesterday.

22          A.   We're looking here.  Yeah, I got the

23  objection.

24          Q.   Okay.  So why don't we go to page three

25  for example.

1        A.    Sure.

2        Q.    And in that first full paragraph, about

3   two thirds of the way down, do you see the sentence

4   where it says:  However, that claim may be true

5   because the class members get nothing but cash

6   incentives for purchasing new dishwashers?  Do you

7   see that?

8        A.    Yes.

9        Q.    And do you remember I went through with

10  your wife and Mr. Fortman various other statements

11  that were said in an absolute way that class members

12  don't get any -- any cash.  Do you remember the

13  testimony about that -- that topic?

14       A.    Yeah, I do recall that.

15       Q.    Okay.  And generally, if I asked you

16  the same questions I asked Mr. Fortman and your

17  wife, is it fair to say I'm generally going to get

18  the same answers?

19       A.    I think you're going to get the same

20  answers and the same objections.  I think what I

21  would simply tell you is that the document speaks

22  for itself and it's to be interpreted as the whole.

23  You're to look at the entire document in terms of

24  what it is stating because, like anything else, when

25  words are communicated, you know, we don't just want

```
 1   the sentence, you want the whole context within

 2   which that sentence was uttered or raised just like

 3   a conversation like you and I are having right now,

 4   but yes, I would stand behind those objections

 5   raised yesterday and the same objections would

 6   apply, I think to work product particularly and to

 7   attorney/client privilege to my mental thoughts and

 8   impressions about what was going into mine or John's

 9   or Steve's head as to, you know, what that sentence

10   ultimately conveys aside from what it speaks to on

11   the written -- on the document itself.

12        Q.   And I'm not going to go into your

13   wife's testimony about whether she may have written

14   something differently if she were the lawyer in the

15   case, but we'll put that to the side, but as you sit

16   here today, are you willing to admit that if you

17   were rewriting this objection today that you might

18   have for accuracy purposes changed some of the

19   language and sentence structure that was used on the

20   topic that I went through with Mr. Fortman and your

21   wife?

22        A.   No.  To be fair, Steven, I think what I

23   would probably have changed would be tone.  You

24   know, I'm a big believer that, you know, it's not

25   just the words, it's the tone, and, you know, it is
```

1    pretty strong language, but there were pretty strong

2    objections to why this was a bad settlement, you

3    know.  Could some of the language have been changed

4    so it would be less perhaps venomous?  Yeah, I mean

5    in hindsight, I could look at this and say sure,

6    this could have been written in a different way, but

7    I believe that although sentences when construed as

8    a whole tell the court and inform the court of

9    exactly what this objection is and why, and I

10   believe it is accurate when taken as a whole.

11        Q.   And so putting tone to one side, as you

12   sit here today you stand by the accuracy of the

13   statements made in the objections that you filed,

14   correct?

15        A.   Yes.

16        Q.   Now you have had an opportunity to

17   read -- well, actually let me verify that.  Have you

18   read the -- the brief that class counsel filed in

19   support of settlement to the extent that it

20   addressed objections?

21        A.   Yes.

22        Q.   And you also read the various briefs

23   related to the Motions to Compel discovery from you

24   and from Mr. Fortman, right?

25        A.   Yes, that had the same language that

1    had been stricken from Electrolux that continued to

2    be repeated that had been subject to the nunc pro

3    tunc order.  I do recall those specifically, Steven,

4    yes.

5           Q.   Right.  Do you also recall the briefing

6    that we did in the Motion to Compel and the

7    settlement approval brief that related to the merits

8    of the objections that you filed?

9                And I'm just literally asking whether

10   you read those two documents and so you had the

11   opportunity to read what we said about the

12   objections.

13          A.   I believe I -- I believe I read

14   everything you said about our objection for the

15   objection of Kelly Kress, yes.

16          Q.   Okay.  All I want to do is again just

17   verify that in light of everything that we've gone

18   over in the depositions of you and Ms. Kress and Mr.

19   Fortman, and in light of what has been written about

20   the objections in the various motions to compel and

21   in the settlement agreement, as of today, besides

22   maybe some tone issues, do you stand behind these

23   statements made in the objections, correct?

24          A.   That is correct, sir.

25          Q.   Okay.  And I don't want to try to short

1    circuit things in a way that disadvantages you or is

2    prejudicial, is it fair to say that if we went

3    through each and every statement I or my co-counsel

4    wrote in our brief and went through the objection

5    language, that that's not going to change your

6    belief that you stand behind everything and you've

7    had a chance to read both?

8            A.    That's correct.  That's correct,

9    Steven.

10           Q.    All right.  I don't have many more

11   questions for you at this point, and so while I may

12   not be fully done until I've had a chance to do what

13   I'll call looking for the mop-up work, it may make

14   sense for us to switch over to Whirlpool if you

15   don't object, to Whirlpool and Sears lawyer's to ask

16   his questions, and I'll come back and do my redirect

17   and mop-up if that's okay.

18           A.    Or another suggestion is if you want to

19   take a longer break and then I come back, you know,

20   if you want to take a 20 minute break and have me

21   come back and we can wrap up, that okay too.  I'm

22   flexible with your time and I appreciate your

23   consideration in moving these depo times around for

24   Kelly and I.  It was very helpful.

25           Q.    Sure.  I think we'll get out of here

 1          A.    I do recall reading that, that is

 2   correct.

 3          Q.    All right.

 4          A.    I don't remember where, but I remember

 5   reading that.  I might have found it online.  I

 6   might have found it in your memo.  I mean, good

 7   heavens, it's 64 pages, there was a lot of stuff in

 8   there.

 9          Q.    You were talking with Mr. Schwartz

10   earlier about, maybe you used the words the

11   burdensome rebate process, and I want to tell you

12   what my understanding would be of how you can stack

13   these rebates, and let me know if you disagree.

14               So let's say a class member finds 15

15   percent off sale on a Whirlpool dishwasher or a

16   Sears dishwasher and wants to stack that with the

17   rebate that they are entitled to under the

18   settlement.  The class member goes to a Sears store

19   and buys a dishwasher and receives the 15 percent

20   off because they printed out the coupon that they

21   found online, and the Sears store sells them the

22   dishwasher and sells them at a price that takes into

23   account that 15 percent discount, right?

24          A.    Okay.

25          Q.    And then --

```
 1          A.    Okay.

 2          Q.    And then the claimant who has made a

 3   claim and a settlement and has received a rebate

 4   form specifically from the settlement takes their

 5   receipts from that transaction with Sears and

 6   provides those receipts along with the rebate forms

 7   to the settlement administrator, and then receives,

 8   assuming the claim is approved, an additional

 9   discount in the form of cash, that effectively

10   stacks those two rebates.  Is that your

11   understanding as well?

12          A.    No, because, you know, one of the

13   contentions that we've been discussing is that this

14   whole stacking of the coupons does not appear to be

15   realistic.  On the one hand, I believe it's class

16   counsel's contention that they can be stacked, and

17   perhaps your's as well, Mr. Myers, but when you go

18   to the website it says that it cannot be combined

19   with any other offer, and so you're putting those

20   class members at loggerheads with people who were

21   paid a wage and they are given their marching orders

22   and instructions in terms of how they ring things

23   out at the register, and I foresee many problems

24   with that.  I think in a perfect world that would be

25   beautiful, and then perhaps in that perfect world
```

1  that all those clerks would be understanding of

2  that, but I don't see that as the reality of the

3  situation, so I would disagree with that.

4          Q.   So your understanding is that the

5  rebates that come through the settlement are

6  required to be redeemed with Sears, like at a Sears

7  location or Sears online?

8          A.   I don't believes that's my

9  understanding.  My understanding is these particular

10  coupons, they can seek a cash rebate, you go out,

11  you buy the -- the washer in question, and then once

12  you've done that, you have your paperwork that

13  you've received, that you then notify Sears and say

14  look, I'd like my rebate for this, and I believe

15  it's like a period of within 12 weeks or up to 12

16  weeks you'll receive that rebate, that cash rebate

17  back.

18          Q.   So you believe that the rebate that

19  results from the settlement has to be redeemed

20  through Sears rather than the settlement

21  administrator?

22          A.   I didn't say that either.

23          Q.   Okay.  So would you agree with me,

24  though, that the rebate that comes through the

25  settlement is redeemed through the settlement

 1   administrator, you know, specifically appointed by

 2   the court to administer this process?

 3          A.   If -- that's correct.  I don't recall

 4   if it has to be redeemed through the settlement

 5   administrator or if it's redeemed directly through

 6   Sears.

 7          Q.   Okay.

 8          A.   I recall reading at one point -- I

 9   apologize, Mr. Myers, I just don't remember, I don't

10   remember that particular --

11          Q.   This website you're talking about that

12   says that the coupon can't be stacked, you're not

13   talking about the settlement administrator website,

14   right?

15          A.   That is correct, sir.

16          Q.   Okay.  And if the settlement

17   administrator has been instructed by the parties in

18   this case by the settlement agreement and by the

19   court to honor the stacking of rebates, and the

20   rebates must be redeemed through the settlement

21   administrator, would you agree that there's probably

22   not going to be an issue with the stacking of the

23   rebates?

24          A.   I would -- I could answer and say there

25   probably wouldn't be an issue of the stacking with

1  the rebates so long as the class member had

2  sufficient time to take that coupon, take that

3  rebate, purchase that drier -- I'm sorry, I did it

4  again -- washer, to purchase the washer, because you

5  know, Steven, it dries dishes too, but anyhow, by

6  doing that, I think that the paperwork involved,

7  that would also make that cumbersome, so I think,

8  Mr. Myers, under your scenario, yeah, that would be

9  an additional benefit, if the stacking were

10  permitted, and if that were to occur in that manner,

11  yes.

12          Do I think it's a better benefit than

13  cash?  No.  As I told Mr. -- as I told Steven

14  earlier, they should be giving people the option,

15  here's cash or here is your coupon.

16          Q.   I understand.  You and Mr. Schwartz

17  earlier were discussing the types of damages that

18  you thought appropriate for class members who had

19  never experienced the malfunctioning that's alleged

20  in this case, and you were discussing premium price

21  damages, and I believe you said that yes, that would

22  be appropriate in this case, correct?

23          A.   I think I testified that I'm aware of

24  premium pricing, but I don't have a lot of

25  information about it other than in generalities, so