STEVE A. MILLER (CA Bar No. 171815)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

JOHN C. KRESS (#53396MO)
The Kress Law Firm, LLC
P.O. Box 6525
St. Louis, MO  63125
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

JONATHAN E. FORTMAN (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 Saint Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax:  (314) 524-1519
Email:  jef@fortmanlaw.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEVE CHAMBERS, et al,** | |
| **Plaintiffs,** | **Case No. 8:11-cv-01733-FMO** |
| **v.** | **OBJECTOR KELLY KRESS' MOTION FOR LEAVE TO FILE A REPLY TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN RESPONSE TO CERTAIN OBJECTIONS BASED ON RECENTLY COMPLETED DISCOVERY** |
| **WHIRLPOOLCORPORATION, et al,** | |
| **Defendants.** | |

1. On August 22, 1016, Plaintiffs' filed their Motion for Leave to file their "Supplemental Memorandum In Response to Certain Objections Based on Recently Completed Discovery."  (Doc # 312).

2.  On August 23, 2016 this Court entered its Order permitting Plaintiffs' to file such Memorandum (Doc # 314).

3.  Objector Kress and her counsel seek leave to file their Reply to Plaintiffs' Supplemental Memorandum in Response to Certain Objections Based on Recently Completed Discovery (EXHIBIT A, attached hereto and incorporated by reference herein), as it would further aid this Court in determining whether or not this proposed settlement is fair and reasonable for the class members in question, and because it contains the deposition transcript of Kelly Kress from her 3 ½ hour deposition obtained by Class Counsel as ordered by this Court that occurred on August 17, 2016 which Objector Kress believes will aid this court in its evaluation of the proposed settlement.

WHEREFORE, Objector Kress respectfully requests that this Court grant her Motion for Leave to file her response to Plaintiffs' Supplemental Memorandum as described above.


Respectfully submitted,

 _/s/ Steve A. Miller
STEVE A. MILLER (CA Bar No. 171815)
STEVE A. MILLER, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

JOHN C. KRESS (53396MO)
The Kress Law Firm, LLC
P.O. Box 6525
St. Louis, MO  63125
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

JONATHAN E. FORTMAN (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 Saint Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax:  (314) 524-1519
Email:  jef@fortmanlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served upon all parties via the Court's ECF system this 24th day of August, 2016.

s/Steve A. Miller

**EXHIBIT A**

STEVE A. MILLER (CA Bar No. 171815)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

JOHN C. KRESS (#53396MO)
The Kress Law Firm, LLC
P.O. Box 6525
St. Louis, MO  63125
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

JONATHAN E. FORTMAN (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 Saint Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax:  (314) 524-1519
Email:  jef@fortmanlaw.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEVE CHAMBERS, et al., | ) | Case No: 8:11-cv-01733-FMO(ANx) |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **KELLY KRESS' REPLY TO** |
| | ) | **PLAINTIFFS' SUPPLEMENTAL** |
| | ) | **MEMORANDUM IN RESPONSE** |
| | ) | **TO CERTAIN OBJECTIONS** |
| WHIRLPOOL CORPORATION, et al, | ) | |
| | ) | The Honorable Fernando M. Olguin |
| Defendants. | ) | |
| | ) | Date: August 25, 2016 |
| | ) | Time: 10:00 a.m |
| | ) | Courtroom: 22 |

In their supplemental response [Doc. #312-2], Class Counsel choose to completely ignore the facts surrounding the filing of the objection by Kelly Kress.  Ms. Kress filed her objection pursuant to Rule 23 and the Notice approved by this Court.  There is no issue of her status as a class member and there is no issue that as an absent class member represented by Class Counsel she has an absolute right to raise her concerns about the proposed settlement with this Court. Instead, Class Counsel refer to issues wholly irrelevant as to the fairness of the settlement and the issue of appropriate attorney fees to be determined by this Court. Class Counsel, without any evidence of wrongdoing by Ms. Kress and her counsel, and without any evidence whatsoever of any improper motive, make inflammatory and specious allegations which are not supported anywhere in the record.

Ms. Kress' objection raises two basic issues.  First, Ms. Kress questions whether a conflict exists between a class representative being paid $100,000 and the vast majority of the class who are entitled to a rebate.  Second, Ms. Kress asserts that the rebates being offered to the majority of the class are "coupons" pursuant to the Class Action Fairness Act.  Class Counsel cannot credibly argue that such issues are frivolous and inapplicable to all absent class members.

Class Counsel went to great lengths to obtain the deposition of not only Ms. Kress but her counsel.  Ms. Kress was deposed for three and a half hours and two of her attorneys, Jonathan E. Fortman and John C. Kress were each deposed for over two hours.  Jonathan E. Fortman provided a comprehensive and extensive affidavit containing all information requested in the subpoena served upon him.  That information was provided 13 days before his deposition was taken. At no time prior to the depositions did Class Counsel raise any issues as to the information disclosed nor did Class Counsel request additional information.  Now, Class Counsel attempts to convince this Court that information concerning settlements of appeals was required to be

disclosed.  However, the subpoena merely requested information concerning cases in which an objection was withdrawn.  Obviously, in an appeal, the objection has not been withdrawn.  Otherwise, the absent class member would lack standing to appeal.  During the depositions, when Class Counsel sought information concerning appellate proceedings, Ms. Kress' counsel agreed to cooperate with Class Counsel to obtain an appropriate order to disclose information otherwise deemed confidential by various circuit court mediation programs.  Class Counsel conveniently fails to reveal that information as it contradicts their narrative.  After all of that time and effort, Class Counsel cannot support its baseless allegations of any wrongdoing by Ms. Kress and her counsel.

Class Counsel picks out individual sentences within Ms. Kress' objection to somehow insinuate that there are repeated false statements.  However, when the objection is read in its entirety, Ms. Kress' position is clear and correct.  Interestingly, after taking a lengthy deposition of Ms. Kress, Class Counsel's own client, they choose not to disclose any of its contents to this Court.  They omit any such reference because the substance of Ms. Kress' deposition fully addresses her meritorious objections and destroys Class Counsel's narrative as to any improper motive or purpose.  Ms. Kress believes that this Court should fully consider her testimony in determining the issues in this case.  Accordingly, the full transcript of her testimony is attached hereto as Exhibit A.

Should there be any doubt as to the merits of Ms. Kress' objection, the Court need only consider Defendants' response to Class Counsels' Motion for Fees.  That response, filed well after Ms. Kress' objection was filed, addresses the very issues raised by Ms. Kress relating to the lack of recovery for the majority of the class and the "coupon" nature of the settlement under the Class Action Fairness Act.  In fact, Defendants directly cite to Ms. Kress' objection.  However,

Class Counsel seems to take the position that simply because Defendants have objected to the amount of fees requested in an adversarial process, that this Court should simply disregard any absent class members raising the same issue.  If anything, Defendants' position should be considered in conjunction with the objections of the absent class members.

The objection filed by Ms. Kress and the extensive deposition of Ms. Kress make one thing clear.  Her objection is meritorious and based upon extensive investigation by her and her counsel.  This Court should consider her objection and testimony when undertaking its analysis of the fairness of the settlement and the proper amount of attorneys' fees to be awarded and should disregard Class Counsels' unsupported attacks.

Respectfully submitted,

 /s/ Steve A. Miller
STEVE A. MILLER (CA Bar No. 171815)
STEVE A. MILLER, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

JOHN C. KRESS (53396MO)
The Kress Law Firm, LLC
P.O. Box 6525
St. Louis, MO  63125
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

JONATHAN E. FORTMAN (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 Saint Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax:  (314) 524-1519
Email:  jef@fortmanlaw.com

## CERTIFICATE OF SERVICE

A true copy of the foregoing has been served upon all parties by operation of this Court's ECF system this 24th day of August, 2016.

_____ /s/ Steve A. Miller _____

# EXHIBIT A

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE CENTRAL DISTRICT OF CALIFORNIA

3                    --o0o--

4   STEVE CHAMBERS, et al.,        )
                                   )
5          Plaintiffs             )
                                   )
6              vs.                )No. 811CV01733FMO(ANX)
                                   )
7   WHIRLPOOL CORPORATION, et      )
    al.,                           )
8                                  )
           Defendants.            )
9   _____ )

10

11              TELEPHONIC DEPOSITION OF

12                   KELLY KRESS

13   _____
                 August 17, 2016

14

15

16            (Beginning at 1:44 p.m.)

17

18

19

20

21

22

23

24

25

Kelly Kress
August 17, 2016

1                             INDEX

2                                              PAGE

3

4    EXAMINATION BY MR. SCHWARTZ .....................7

5    EXAMINATION BY MR. MYERS ......................127

6    FURTHER EXAMINATION BY MR. SCHWARTZ ...........129

7                           EXHIBITS

8    Exhibit 5   Certification of Kelly Kress      13

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3                        --oOo--

 4   STEVE CHAMBERS, et al.,        )
                                    )
 5                                  )
                                    )
 6        Plaintiffs                )
                                    )
 7              vs.                 )No. 811CV01733FMO(ANX)
                                    )
 8   WHIRLPOOL CORPORATION, et      )
     al.,                           )
 9                                  )
          Defendants.               )
10   _____ )

11                        --oOo--

12           TELEPHONIC DEPOSITION OF KELLY KRESS,

13   produced, sworn, and examined on Wednesday, August

14   17, 2016, taken on behalf of the Plaintiff, at the

15   offices of Carey, Danis & Lowe, 8235 Forsyth

16   Boulevard, Suite 1100, in the City of St. Louis,

17   State of Missouri, before RENÉE COMBS QUINBY, a

18   Certified Court Reporter (MO), Certified Shorthand

19   Reporter (CA), Registered Merit Reporter, Certified

20   Realtime Reporter, and a Notary Public within and

21   for the State of Missouri.

22

23

24

25
```

```
 1                    A P P E A R A N C E S

 2

 3     FOR THE PLAINTIFFS:

 4         Steven A. Schwartz, Esq. (via telephone)
           Chimicles & Tikellis, LLP
 5         361 West Lancaster Avenue
           Haverford, Pennsylvania  19041
 6         610-642-8500
           steveschwartz@chimicles.com
 7

 8     and

 9         James J. Rosemergy, Esq.
           Carey, Danis & Lowe
10         8235 Forsyth, Ste. 1100
           St. Louis, MO 63105
11         (314) 725-7700
           jrosemergy@careydanis.com
12

13     FOR THE DEFENDANTS:

14         Andrew H. Myers, Esq. (via telephone)
           Wheeler Trigg O'Donnell LLP
15         370 Seventeenth Street, Suite 4500
           Denver, Colorado  80202
16         303-244-1800
           awmyers@trial.com
17

18      FOR THE WITNESS:

19         John C. Kress, Esq.
           The Kress Law Firm, LLC
20         4247 South Grand Boulevard
           St. Louis, MO  63111
21         (314)631-3883
           jckress@thekresslawfirm.com
22

23     ALSO PRESENT:  Jonathan Fortman

24

25
```

Kelly Press
August 17, 2016

1    COURT REPORTER:

2         RENÉE COMBS QUINBY, RMR, CRR
          CSR (CA) #11867
3         CCR (MO) #1291
          Realtime Systems Administrator

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      --oOo--

 2          IT IS HEREBY STIPULATED AND AGREED by and

 3    between counsel for the Plaintiffs and counsel for

 4    the Defendants, that this deposition may be taken in

 5    machine shorthand by RENÉE COMBS QUINBY, a Certified

 6    Court Reporter and Notary Public, and afterwards

 7    transcribed into typewriting, and the signature not

 8    waived by agreement of Counsel and consent of the

 9    Witness.

10                      --oOo--

11                  KELLY KRESS,

12    of lawful age, having been first duly sworn to

13    testify to the truth, the whole truth, and nothing

14    but the truth in the case aforesaid, deposes and

15    says in reply to oral interrogatories propounded as

16    follows, to-wit:

17             P R O C E E D I N G S   1:44 p.m.

18                      --oOo--

19          MR. SCHWARTZ:  Okay.  Steve Schwartz

20    for the plaintiffs and the class from Chimicles &

21    Tikellis.

22          MR. MYERS:  Andrew Myers on behalf of

23    the Sears and Whirlpool defendants.

24          MR. SCHWARTZ:  And, Mr. Kress, why

25    don't you just introduce yourself.
```

```
 1                    MR. KRESS:  John Kress for Kelly Kress.

 2                    MR. SCHWARTZ:  And my local counsel

 3       James Rosemergy will be back in the room in a little

 4       bit.

 5                         EXAMINATION

 6            BY MR. SCHWARTZ:

 7            Q.   So good morning, or I guess it's good

 8       afternoon now, Miss Kress.  My name is Steve

 9       Schwartz from Chimicles & Tikellis.  I'm the

10       Court-appointed co-lead counsel in this case and

11       I'll be asking you some questions today about the

12       objection that you filed.

13            Q.   Is there any reason why you can't

14       testify truthfully and accurately today?

15            A.   No.

16            Q.   Now, I understand you're a lawyer with

17       an active license in the State of Missouri; is that

18       correct?

19            A.   Yes.

20            Q.   Are you licensed in any other

21       jurisdiction?

22            A.   I am inactive in the state of Ohio.

23            Q.   Okay.  So at one point you were an

24       active licensed attorney in Ohio but you've been

25       inactive for a certain period of time?
```

```
 1              A.    Yes.

 2              Q.    I need a yes or no.

 3              A.    I said yes.

 4              Q.    Okay.  When did you become inactive in

 5    Ohio?

 6              A.    2002 or 2003.

 7              Q.    Okay.  Any other jurisdictions that you

 8    were ever licensed in besides Ohio and Missouri?

 9              A.    No.

10              Q.    Now, in Missouri, you're active in

11    terms of the state bar.  Are you still an active

12    practitioning lawyer?

13              A.    No.

14              Q.    And when did you stop being active as a

15    practitioning lawyer in Missouri?

16              A.    2007, I believe.

17              Q.    And was there any reason that you

18    became inactive as a practitioning lawyer in

19    Missouri in 2007?

20              MR. KRESS:  I'm going to object as to

21    relevance.

22              But you can go ahead and answer.

23              THE WITNESS:  I left the practice of

24    law and became an executive director of a

25    not-for-profit, and then several years after that I
```

```
 1    became a stay-at-home mom.
 2              BY MR. SCHWARTZ:
 3         Q.   Okay.  Had you ever been sanctioned in
 4    any jurisdiction or by any bar?
 5         A.   No.
 6         Q.   Now, with respect to the objections you
 7    filed today -- well, actually before we start that.
 8    Based on your experience as an attorney, are you
 9    familiar with the deposition process and the rules
10    of deposition?
11         A.   Yes.
12         Q.   And how many times have you been
13    deposed, if any, before today?
14         A.   Once, I believe.
15         Q.   And what was that in connection with?
16              THE WITNESS:  Do you remember which --
17              MR. KRESS:  If you don't remember then
18    tell him you don't recall.
19              THE WITNESS:  I don't remember.  I'm
20    sorry.  It's been quite a few years.
21              BY MR. SCHWARTZ:
22         Q.   Did it have anything to do with class
23    actions or objections in class actions?
24         A.   I don't believe so.
25         Q.   In connection with the objection that
```

1   was filed on your behalf, your lawyer's filed the

2   objection or your husband Mr. John Kress and

3   Jonathan Fortman and Steve Miller; is that correct?

4          A.   Yes.

5          Q.   Are there any other lawyers who are

6   representing you or providing you legal advice in

7   connection with your objection in this case?

8          A.   No.

9          Q.   And in connection with the objection

10  that you have filed, are you doing any legal work in

11  connection with that objection?

12         A.   No.

13         Q.   In connection with this objection

14  that's been filed on your behalf, have you done any

15  legal work and will you be doing any legal work?

16         A.   No.

17         Q.   In connection with other objections

18  that you're involved in with respect to class

19  action, have you ever done legal work?

20         A.   No.  No, my area of what -- of practice

21  was family law.  Some probate.  Some traffic.

22         Q.   Now, with respect to your other

23  experience in class actions, how many times have you

24  been an objector in class actions?

25         A.   I believe this is my third.

```
 1              Q.   And what were the other two cases?

 2              A.   It's been some time so I'll have --

 3              Q.   Was Ticketmaster one of them?

 4              A.   I know I was in the class of

 5     Ticketmaster so -- is that --

 6              Q.   Do you know whether you were an

 7     objector in Ticketmaster?

 8              A.   Yes.

 9              Q.   Were you an objector in Ticketmaster?

10              A.   Yes.

11              Q.   Besides Ticketmaster, can you remember

12     the other one besides this case that you were an

13     objector in?

14              A.   Off the top of my head I cannot

15     remember but I can get that answer for you.

16              MR. SCHWARTZ:  Okay.  And, Mr. Kress,

17     if you know the answer or can help refresh -- help

18     refresh her recollection that would be okay.

19              MR. KRESS:  Sure.  I believe that

20     Ms. Kress has objected before in the LCD case and in

21     DRAM and in Ticketmaster and in this current case,

22     Whirlpool.

23              THE WITNESS:  Oh, I forgot about that.

24     So four.

25              BY MR. SCHWARTZ:
```

```
 1              Q.   So, Ms. Kress, does that help refresh

 2     your recollection?

 3              A.   Yes.

 4              Q.   So do you remember now that you were an

 5     objector in LCD, DRAM, and Ticketmaster in addition

 6     to this case?

 7              A.   Yes.

 8              Q.   And in all those other objections you

 9     were just an objector; you were not an attorney,

10     correct?

11              A.   Correct.

12              Q.   And as part of those objections you did

13     not provide legal work to assist your counsel; is

14     that correct?

15              A.   No, I did not.

16              Q.   And in those other objections was your

17     husband, John Kress, one of the objector counsel in

18     each of those?

19              MR. KRESS:  I'm going to object to the

20     extent that the record reflects what it does.  I

21     believe it's going to show on LCD and DRAM that I

22     was counsel of record on those cases and on

23     Whirlpool.

24              BY MR. SCHWARTZ:

25              Q.   Is that your recollection, Ms. Kress?
```

Kelly Kress
August 17, 2016

13

```
 1          A.   I don't recall if I just -- if I

 2    objected or if it proceeded past that on

 3    Ticketmaster.

 4          Q.   When you say "proceeded past that on

 5    Ticketmaster," you don't recall if you objected

 6    pro se or whether you objected through counsel?

 7          A.   Correct.

 8          Q.   You just don't remember?  Do you

 9    remember that in Ticketmaster you filed a pro se

10    objection?

11          A.   If that's what my objection says then

12    I'm going to refer you to the actual objection.

13               MR. KRESS:  That's what your

14    certification says.  It has Ticketmaster attached.

15                    (Exhibit 5 was marked for

16                     identification.)

17    BY MR. SCHWARTZ:

18          Q.   I'm not trying to do a memory test.

19    And maybe if you want, we marked your certification

20    as Exhibit 5, so why don't we put that in front of

21    you and you can refer to that at any point you want.

22    Let me ask you a few questions about the

23    certification.

24               First of all, did you -- did you

25    carefully read this certification that's been marked
```

```
 1    as Exhibit 5 before you signed it?

 2            A.   Yes.

 3            Q.   By the way so the record is clear,

 4    Exhibits 1 through 4 were marked in a deposition

 5    earlier today of Mr. Fortman and we're just going to

 6    keep the numbers sequential and use some of those

 7    exhibits.

 8                 So for this certification marked as

 9    Exhibit 5, did you draft it or did you get

10    assistance from counsel in drafting the

11    certification?

12            MR. KRESS:  And I'm going to object

13    under attorney-client privilege and work product and

14    instruct the witness not to answer.

15            BY MR. SCHWARTZ:

16            Q.   Okay.  And, Ms. Kress, you're going to

17    follow your counsel's instruction not to answer that

18    question and any other instruction not to answer; is

19    that correct?

20            A.   Yes.  That's why he's here.

21            Q.   Okay.  If you take a look at the last

22    document which is Exhibit B to your certification,

23    there's a letter from you in the Ticketmaster case.

24    Let me know when you're at that case.

25            A.   Yes.
```

Kelly Kress
August 17, 2016                                                    15

```
 1              Q.   And I notice that it has your signature
 2    and on the first page at the judge it says you're a
 3    class member and an attorney, but there's no counsel
 4    representing you.
 5                   Does this help refresh your
 6    recollection that in Ticketmaster you were not
 7    represented by counsel?
 8              A.   I'm sorry, you referred me to Exhibit C
 9    but ...
10              Q.   Exhibit C.
11              A.   But Exhibit C is the Court's ruling and
12    order.
13              Q.   Yes, this is -- Exhibit B is the letter
14    you filed --
15              A.   Exhibit B.
16              Q.   -- on Ticketmaster.
17                   So let's start over again.  Do you see
18    this is a letter that you wrote that does not
19    reflect that you're represented by counsel?
20              A.   Correct.
21              Q.   Did you at some point become
22    represented by counsel in the Ticketmaster case?
23                   MR. KRESS:  I'll just point out for the
24    record, Steve, that clearly according to her
25    certification she did not and she did not proceed
```

1    beyond that original judgment with her objection.

2              MR. SCHWARTZ:  Okay.  I appreciate

3    that.  That's -- let's repeat the ground rules, at

4    least the ones I've set for the earlier deposition

5    today, that there shouldn't be speaking objections.

6              If Ms. Kress remembers the answer to a

7    question I ask, then you can provide that answer.

8    And, Ms. Kress, if you just don't remember, just say

9    that and if it will help to look at some documents

10   you can point that out -- you can point that out to

11   me.

12             But I am entitled to know what the

13   witness's recollection is today.

14        Q.   So as you sit here today, Ms. Kress, do

15   you know whether or not you were ever represented by

16   counsel in this Ticketmaster case?

17        A.   I did not have counsel enter of record

18   on Ticketmaster.

19        Q.   Okay.  So if we go through your

20   certification -- if we go to page 2, do you see your

21   response at page 2 which relates to documents

22   related to your objections?

23        A.   Yes.

24        Q.   And you referred to your -- your

25   objection and defendants' opposition to fees, and

```
 1    then you also attach the screen shot -- do you see

 2    in the middle of the page, "Also attached is the

 3    screen shot from Sears that advertises its recent

 4    'Friends and Family' sale" --

 5         A.   Yes.

 6         Q.   -- "that offers the same relief to

 7    nonclass members that class members receive"?

 8         A.   Yes.

 9         Q.   Did you get that document or was that

10    document provided to you?

11         A.   I got that document.

12         Q.   Where did you find that document?

13         A.   I typed "Whirlpool, dishwasher, sale,"

14    into Google and this popped up.

15         Q.   And what is the relevance of this sale

16    to your objection?

17         A.   Because this sale provides the same

18    benefit to the general public that this settlement

19    provides to the class members, but the general

20    public doesn't have counsel representing them and

21    that counsel is not being -- requesting fees of

22    $15 million for their benefit.

23         Q.   So let's take a look at Exhibit A which

24    is this Friends and Family sale.

25         A.   Uh-huh.
```

Kelly Freese
August 17, 2016

1          Q.   Is it your understanding that with the

2     purchase of a new dishwasher, the general public,

3     including you, could get 15 percent off, plus if

4     you're a member you can get an additional 10 percent

5     in points?

6          A.   That is what the sale reads.

7          Q.   And what's your understanding of what

8     the 10 percent in points are if you're a member?

9          A.   I'm not a member.

10         Q.   Okay.

11         A.   So I don't know.

12         Q.   Let's talk about -- we'll talk about

13    you and people like you.  So if you wanted to buy a

14    new dishwasher or anybody else wanted to buy a new

15    dishwasher, they could get 15 percent off based on

16    the sale, correct?

17         A.   Depending upon the product.  Some

18    products are limited to 10 percent.  It's in the

19    fine print.

20         Q.   Okay.  Now, as a class member in this

21    case you are entitled to the rebate discounts that

22    are available in this case as well --

23         A.   You mean for the rebate period that's

24    already closed?

25         Q.   Did you file a claim in this case?

```
1           A.   I did not receive a notification of the

2    rebate period opening.

3           Q.   When the settle -- if the settlement is

4    approved will you be entitled to a rebate, one of

5    the rebates that's offered as part of the

6    settlement?

7           A.   Yes.

8           Q.   Do you know whether if this Family and

9    Friends opportunity is still available whether you

10   can use the rebate from this case in addition to the

11   Family and Friends 15 percent off, or do you know

12   whether you'd have to choose one or the other?

13          A.   My understanding is that Whirlpool has

14   bound Sears to honor both the rebate and the

15   discount, despite the fact that this fine print says

16   that coupons cannot be stacked, but that I must

17   front the money -- I must notify the settlement

18   administrator that I want to use the rebate, then

19   after that I've notified them, that I must front the

20   money and then wait up to 12 weeks after I turn in

21   my rebate form to get the money back.

22          Q.   So your understanding is you can stack

23   or combine the rebate offered in connection with the

24   proposed settlement with any other sales, negotiated

25   discounts, or any other price reductions that you
```

1    can obtain elsewhere, correct?

2            A.   I understand that is what the

3    settlement agreement says.  Whether or not the clerk

4    at Sears will actually allow me to do that is

5    another question because the Sears fine print says

6    you can't use multiple discounts.

7            Q.   As an attorney married to an attorney,

8    would it be fair to say that if you chose to use the

9    rebate from this settlement in conjunction and in

10   addition to another discount or sale that's going

11   on, that the -- you would be very persuasive in

12   making sure that happened for whatever reason even

13   if a store doesn't understand what the rules are?

14           A.   I understand what you are saying the

15   rules are.  Whether or not the clerk at Sears is

16   going to honor them or I'm going to have to argue

17   with various levels of management that Whirlpool

18   said so in this class action settlement, therefore

19   they should honor it, that I cannot predict.

20           Q.   Okay.  I'm a little confused so help me

21   out here.  The clerk at the Sears store is not the

22   person who is paying the rebate in this settlement?

23           A.   Correct.

24           Q.   And you would be submitting the rebate

25   to the claims administrator in this case, so the

1    clerk at the Sears store is not the person who has

2    to combine; it's the settlement administrator.  Is

3    this your understanding?

4            A.   This must be redeemed online, for one.

5    This is an online sale.  But if I notified the

6    administrator that I wanted to use the rebate so

7    that they could do whatever they have to do so that

8    I can actually use the rebate and then submit the

9    rebate after I have fronted the money, yes, those

10   are two separate people.

11           I'm not sure why that extra step is in

12   there, why we had to -- since they already know who

13   I am because they mailed me a postcard originally so

14   my name is on a list somewhere.

15           But now it's put upon me that I have to

16   go out and notify them that, yes, I want to take

17   advantage of the benefit that I received as a member

18   of this class, so they can then do whatever they

19   need to do so I have permission to do that, go out,

20   front the money, then submit my proof of purchase to

21   wait 12 weeks to get back my refund, my rebate.

22           Q.   Is that an objection that you have

23   raised in the objection that was filed with the

24   court?

25           A.   I do not believe so, no.

1          Q.   Okay.  Have you ever negotiated a

2   discount off of the price of an appliance -- I'm

3   talking generally -- of just going into the -- sure.

4   Let me start over.

5               Have you ever negotiated a discount off

6   of the listed price of an appliance?

7          A.   No.

8          Q.   Have you ever tried?

9               MR. KRESS:  Objection.  Relevance.

10               But you can answer.

11               THE WITNESS:  You want to know if I

12   haggled over the price of an appliance?

13               BY MR. SCHWARTZ:

14          Q.   Yes.

15          A.   Typically I do not shop at places where

16   haggling is -- I don't want to say "allowed," but

17   most major -- most major stores don't allow you to

18   haggle the price.  You buy what merchandise they

19   have at the price they have.  It's not a used car.

20          Q.   You've haggled over the price of a new

21   car, haven't you?

22               MR. KRESS:  Good heavens.  Same

23   objection as to relevance.

24               But you can answer.

25               THE WITNESS:  In my lifetime have I

```
 1    ever haggled over the price of a car?  Yes.

 2            BY MR. SCHWARTZ:

 3            Q.   Okay.

 4            A.   Not really sure what that has to do

 5    with me going into Sears and buying a dishwasher

 6    but ...

 7            Q.   Have you used other coupons or sales in

 8    connection with the purchases of appliances in the

 9    past?

10            MR. KRESS:  Objection.  Relevance.

11            You can answer.

12            THE WITNESS:  Yes.

13            BY MR. SCHWARTZ:

14            Q.   Let's talk about your dishwasher in

15    this case.  Did you purchase that dishwasher?

16            A.   Yes, I purchased that dishwasher.

17            Q.   Do you know when you purchased it?

18            A.   2002 from the Sears outlet.

19            Q.   And do you still have that dishwasher?

20            A.   Yes, I do.

21            Q.   So you've had it for about 14 years?

22            A.   Yes, I purchased it in 2002.

23            Q.   Have you ever had an overheating event

24    with your dishwasher?

25            A.   No, I have not.
```

```
 1              Q.    Have you ever had any problems with

 2     your 14-year-old dishwasher?

 3              A.    Yes, actually.  But they had more to do

 4     with product design than -- and the drain at the

 5     bottom getting clogged and having to take the entire

 6     dishwasher apart to get to the drain than any kind

 7     of wiring issue.

 8              Q.    Were those issues fixed under warranty?

 9              A.    No, they were not.

10              Q.    So you paid out of pocket to fix those

11     issues?

12              A.    No, I watched a YouTube video and I

13     learned how to take my dishwasher drain apart so

14     that I could unclog it because --

15              Q.    Okay.  So you did it yourself?

16              A.    I did it myself.

17              Q.    Well done.  Congratulations.

18                    Did it work after you made that

19     do-it-yourself fix?

20              A.    Which time?  It repeatedly happened and

21     I got pretty good at taking the dishwasher apart and

22     putting it back together.

23              Q.    How many times did you have to do it?

24              A.    I would say at least 10, but I no

25     longer actively use that dishwasher.  I still have
```

```
 1    it but I -- it was replaced.
 2             Q.   Okay.  So now let me -- let's get some
 3    clarity on that.  When you say you still have it but
 4    you don't actively use it, why don't you tell me
 5    exactly what you mean.
 6             A.   It's sitting in my garage.
 7             Q.   When did you put the dishwasher out of
 8    service and into your garage?
 9             A.   In 2013.
10             Q.   Okay.  So to have more clarity for your
11    prior testimony, you used it from 2002 to 2013,
12    about 11 years, and then you took it out of service
13    and it's just sitting in your garage.
14             A.   Yes.
15             Q.   What is the reason why you're keeping
16    it in your garage as opposed to disposing of it?
17                  MR. KRESS:  Objection.  Relevance.  She
18    can answer.
19                  THE WITNESS:  I'll answer.  Because in
20    my family you don't get rid of a perfectly good
21    appliance because somebody might need that someday.
22    There's a lot of things in my garage.
23             BY MR. SCHWARTZ:
24             Q.   Does that dishwasher still work?
25             A.   Yes.
```

```
 1              Q.   And for the about ten times where you
 2    had the -- the drain-clogging issue, did you ever
 3    reach out to Whirlpool or Sears and say, "Hey, why
 4    does this keep on breaking?  You should either fix
 5    it or give me compensation or give me a
 6    replacement"?
 7              A.   No, I did not.
 8              Q.   Is there a reason why you did not --
 9    well, let me ask a different question.
10              Do you believe that the dishwasher was
11    somehow defective that you kept on having the same
12    drainage problem?
13              A.   Do I believe --
14              MR. KRESS:  I'm going to object to
15    relevance and asking perhaps to be a Maytag
16    repairman.
17              But you can answer.
18              THE WITNESS:  It affected my decision
19    whether or not to purchase that particular model and
20    brand when I replaced the dishwasher.  I didn't want
21    to keep having that problem, so I chose a model of a
22    different brand that is not set up the same way.
23              So now I actually can just take the
24    little basket out and unclog it.  I don't have to
25    take an Allen wrench and take the entire dishwasher
```

```
 1    apart to get to it.

 2            BY MR. SCHWARTZ:

 3            Q.  Okay.  Understood.  My question was

 4    just from a layperson's perspective, do you think

 5    that the dishwasher or the design of the dishwasher

 6    was defective because you kept on having this

 7    drainage problem?

 8                 MR. MYERS:  Object to the form.

 9                 THE WITNESS:  That wasn't my counsel.

10    So ...

11                 MR. FORTMAN:  Never was.

12                 THE WITNESS:  Would I have preferred it

13    to be designed differently?  Yes.  Is it designed

14    differently?  No.  Did I use it for 11 years?  Yes.

15            BY MR. SCHWARTZ:

16            Q.  Do you think you got your money's worth

17    out of that dishwasher since you used it for 11

18    years?

19            A.  I guess that would depend on the

20    diminuation of value of the dishwasher over time.

21    Was I happy to have to buy a new dishwasher?  Not

22    particularly.  Did I think that it was Whirlpool's

23    fault that I needed a new dishwasher?  No.

24            Q.  And you never had what is involved in

25    this case, which is an overheating event with
```

Kelly Freese
August 17, 2016                                                    28

```
 1   your --
 2           A.   No, I did not.
 3           Q.   With this dishwasher, correct?
 4           A.   Correct.
 5           Q.   And what brand did you buy for your
 6   replacement dishwasher which is what you're using
 7   now?
 8           A.   A Bosch.
 9           Q.   When was the first time you learned of
10   the issue of possible overheating events in the
11   Whirlpool dishwasher that you have?
12           A.   When I received the postcard.
13           Q.   You mean the class notice postcard?
14           A.   Yes.
15           Q.   So this lawsuit was -- a notice from
16   this lawsuit was the first time you learned there
17   could be an overheating safety risk with your
18   dishwasher, correct?
19           A.   Yes.
20           Q.   And when you got the postcard -- I want
21   to be careful about any attorney-client issues
22   here -- but I see in your certification there was a
23   statement about you weren't solicited.  Was it your
24   idea to go seek out counsel to evaluate what to do
25   in this case?
```

1          A.    Yes, I received a postcard in the mail

2    and I happened to be married to someone who does

3    class action work, so I turned to my spouse and

4    said, "Hey, I've got a class action postcard in the

5    mail."

6          Q.    Don't tell me any more about what you

7    said to your husband on this issue, but with respect

8    to the drainage issues that you had over time with

9    the ten or so times you had to get the Allen wrench

10   and be a Maytag repairman apparently and be a good

11   one, did you ever consider having the expertise of

12   your husband, Mr. Kress, to pursue Whirlpool to try

13   to get you either a fix to that or some warranty

14   coverage or some compensation because the machine

15   kept on breaking?

16         A.    No.  And I did not seek out that in

17   this instance.  I was notified I was a class member,

18   which you represent, so you're my counsel.

19         Q.    Indeed I am.  To a certain extent.

20         A.    No, you are my counsel.  I am a member

21   of the class.

22         Q.    You're a member of the class and I

23   represent you along with the other class members.

24         A.    Yes, you do.

25         Q.    I'll pick up from there.  But at the

```
 1    same time you're also separately represented by your

 2    husband Mr. Kress and Mr. Fortman and Mr. Miller, so

 3    we're just playing semantics here.

 4              But now that we've got that cleared up

 5    let me ask you this:  Do you believe that you had

 6    been damaged by the fact that your Whirlpool

 7    dishwasher had an overheating event safety risk, and

 8    if so, explain to me how you have been damaged.

 9         A.   I believe I have been damaged by the

10    settlement that you agreed to on my behalf.  That's

11    why we're here.  I filed an objection because I am

12    incredibly disappointed in the settlement that was

13    reached.

14         Q.   Okay.  You answered a different

15    question than the one I asked, so I'll ask the

16    question I asked again and see if I can get an

17    answer.

18         A.   I don't understand what relevance that

19    has.  We're at settlement -- we're -- it's -- that

20    part is done.  If I had had a strong feeling about

21    pursuing litigation over my dishwasher, that window

22    has closed.  I am now a member of this class, this

23    class as a result of the settlement that you and

24    your co-counsel have agreed to.

25              I give up all my rights and I get a
```

```
 1    10 percent off coupon, for which you are asking
 2    $15 million.  Not you personally but you
 3    collectively, my class counsel.  That's why I'm
 4    sitting in this chair.
 5         Q.   Okay.  Now I'm going to go back to the
 6    question I asked and we'll see whether I can get an
 7    answer to that question.
 8              Do you believe that you have been
 9    damaged due to the fact that the dishwasher you used
10    from 2002 to 2013 had an overheating event safety
11    risk that never materialized in your dishwasher?
12              MR. MYERS:  Object to form.
13              THE WITNESS:  Mr. Schwartz, you alleged
14    I did.
15         BY MR. SCHWARTZ:
16         Q.   I'm asking what you believe,
17    Mrs. Kress.
18         A.   I'm going to go with what my counsel
19    said on my behalf.  You said I was damaged in a
20    pleading that you filed on my behalf as a member of
21    the class.
22         Q.   Look, Mrs. Kress, you have been ordered
23    by the Court --
24         A.   And I answered your question.  But
25    also, I am your client.  And I -- just because you
```

1   don't like the fact that I am unhappy with the way

2   you did your job, does not mean that you get to be

3   adverse to me.  You owe me a duty.  And your duty is

4   to negotiate the best outcome of this lawsuit

5   possible.

6               And I disagree with what you say is the

7   best outcome of this lawsuit.  Because I give up my

8   right to pursue anything.  I get a 10 percent

9   coupon, some other members, named plaintiffs,

10  receive some benefit, and some folks who did have

11  their dishwasher catch on fire receive some benefit.

12              And then a whole bunch of people that

13  are specifically excluded from this class receive

14  benefit, and for doing all of those things, you have

15  asked for attorneys' fees.  So here we are.

16              Whether or not I specifically think

17  that this lawsuit should have been brought is

18  irrelevant at this point because it was brought and

19  I'm a member of the class.

20          Q.   Are you finished with your answer?

21          A.   Yes.

22          Q.   Okay.  Maybe we should have gone over

23  the ground rules before we started for a deposition.

24  Because one of the ground rules for a deposition is

25  that when the lawyer asking the questions is asking

 1    them, the witness waits until the lawyer is finished

 2    and doesn't interrupt; just like when the witness is

 3    answering the question, the lawyer is not supposed

 4    to interrupt.  And in connection with the last

 5    exchange you interrupted me.

 6            A.   I apologize.

 7            Q.   So --

 8            A.   I just did it again.

 9            Q.   So no need to do that.  I'm just trying

10    to make sure we have the right ground rules here.

11    So I have something I need to say first which is

12    that in a contested proceeding the judge in this

13    case ordered you, over your objections, to show up

14    for this deposition and to cooperate in this

15    deposition.

16                And I am asking you questions, and

17    unless there's an instruction not to answer based on

18    privilege or attorney work product or spousal

19    privilege or maybe Fifth Amendment privilege, you're

20    required to answer the questions even if you don't

21    believe it's relevant or if you disagree with the

22    nature of the question.

23                And I have a question that I'm asking

24    which I would like an answer to which is not what

25    you've answered.  So I'm going to reask the question

```
 1    again.  I'm not talking about the settlement in this

 2    case.

 3                What I'm trying to figure out is

 4    whether you believe that you have been damaged due

 5    to the fact that you owned a dishwasher and used it

 6    from 2002 through 2013 because the dishwasher had an

 7    alleged overheating event safety risk even though

 8    the safety risk never materialized in your

 9    dishwasher before you put it out of service?

10                MR. KRESS:  And I'm going to object

11    that this has already been asked and answered.  I

12    believe the record reflects that she gave you her

13    answer once.

14                But you can go on ahead and answer it

15    again.

16                THE WITNESS:  Mr. Schwartz, just

17    because you don't like my answer doesn't mean I did

18    not answer the question.  As I said --

19         BY MR. SCHWARTZ:

20         Q.   Well, in fact --

21         A.   -- my counsel, you, asserted on my

22    behalf that I was damaged by this.

23         Q.   You have not answered my question.  I'm

24    asking whether you believe you were damaged.  It's a

25    yes-or-no question.  Do you believe you were damaged
```

```
 1    due to the safety defect that did not materialize in

 2    your dishwasher before you put it out of service?

 3              MR. MYERS:  Object to form.

 4              MR. KRESS:  Same objection.  Asked and

 5    answered.

 6              THE WITNESS:  So we've got two

 7    objections out there.

 8         BY MR. SCHWARTZ:

 9         Q.   I'll take an answer subject to the

10    objection.

11              MR. KRESS:  Kelly, if you want to

12    answer it again go right on ahead.

13              THE WITNESS:  I already said it twice.

14              MR. KRESS:  Steve, I think you have

15    your answer then.

16              MR. SCHWARTZ:  Yeah, I don't believe

17    your client, sir, is being responsive, and if we go

18    back to the Court on getting answers for questions

19    like this, we will absolutely seek sanctions for the

20    time we spend filing a motion.

21              I'm entitled to know whether the --

22    don't interrupt me.  I am entitled to know whether

23    or not an objector for this settlement believes she

24    has actually suffered any damage due to the fact of

25    her using the dishwasher which never manifested the
```

```
 1    defect for about 11 years.
 2              THE WITNESS:  And I am entitled to
 3    be -- to refer you back to the pleadings that were
 4    filed on my behalf.  They allege I am -- I was
 5    damaged.  The fact that you filed them but yet you
 6    want to ask that question doesn't change the fact
 7    that there is an assertion to the Court that I was
 8    damaged.
 9              BY MR. SCHWARTZ:
10        Q.   Do you agree that you were damaged due
11    to the fact that your Whirlpool dishwasher had an
12    alleged overheating event safety risk that never
13    manifested before you took it out of service after
14    11 years of use?
15              MR. KRESS:  Well, I guess, let me just
16    state, Steve, I'm just trying to move this along.
17    Perhaps the fact that she had to consistently work
18    on the washer over a period of time, maybe it was
19    electrical.  Maybe it was an overheating event but
20    it just didn't catch fire.  We don't know.  But I'm
21    just suggesting it could be a lot of answers, and I
22    think she's told you that she had been injured.  She
23    had to repeatedly make repairs to the washer but ...
24              MR. SCHWARTZ:  Mr. Kress, that is
25    beyond acceptable because it was not only a speaking
```

```
 1    objection but apparently it seems like you're eager

 2    to begin your testimony today instead of waiting

 3    until tomorrow.

 4              I'm entitled to an answer to the

 5    question whether this client agrees or believes that

 6    she has been damaged due to her asymptomatic

 7    dishwasher, and we can go around and around here,

 8    but I'm going to get my answer one way or the other

 9    for this question which is a basic question.

10              So if you want to give me the answer,

11    give it to me.  If you're just never going to give

12    me any better answer, just say so and we'll let the

13    Court deal with it.

14              THE WITNESS:  I've answered it three

15    times.

16         BY MR. SCHWARTZ:

17         Q.   I actually have a different question

18    which is whether you agree that you have been

19    damaged due to the fact that you had a Whirlpool

20    dishwasher that had an alleged safety defect that

21    never materialized in your machine after 11 years of

22    use.  Do you agree or disagree?

23         A.   Changing of the semantics of the

24    wording of the question doesn't change my answer.

25    You alleged on my behalf that I was damaged.
```

1        Q.   Do you agree or disagree with that?

2        A.   So you want my opinion on whether or

3   not you should have filed this lawsuit?

4        Q.   I asked you whether you agree or

5   disagree that you have been damaged based on the

6   safety defect that did not manifest in your washer.

7        A.   For purposes of moving this process

8   along, I'm going to say I am willing to be bound by

9   the pleadings that were filed on my behalf.

10            MR. KRESS:  Which --

11            THE WITNESS:  They allege that I was

12   damaged.  So I'll say I'm damaged because there was

13   a pleading filed on my behalf that says I was.

14        BY MR. SCHWARTZ:

15        Q.   You're aware, are you not, that class

16   counsel, including myself, filed pleadings asking

17   the Court to approve this settlement.  Are you

18   willing to be bound by that pleading?

19        A.   I don't have a choice.  My -- my -- my

20   recourse is to file an objection which is what I

21   did.  The Court will decide whether or not I'm bound

22   by your settlement agreement because it's the

23   Court's ultimate decision.

24        Q.   Is there a reason why you did not opt

25   out of this settlement?

    1           A.   I have no desire to separately pursue

    2    Whirlpool.

    3           Q.   Why not?

    4                MR. KRESS:  I'm going to object to the

    5    extent it may invade the attorney-client privilege.

    6                But subject to that if you can answer,

    7    go ahead, please.

    8                THE WITNESS:  I have no desire to

    9    pursue litigation over my dishwasher.  I was sucked

   10    into this litigation.

   11           BY MR. SCHWARTZ:

   12           Q.   Tell me why you did not have any desire

   13    to pursue litigation with respect to your

   14    dishwasher?

   15           A.   I don't particularly want to pursue

   16    this litigation.  However, I was sucked into it and

   17    am pursuing my rights to object to the settlement

   18    because I don't like the settlement.

   19           Q.   Do you disagree with the fact that

   20    class counsel has filed this lawsuit on behalf of

   21    the class representatives?

   22           A.   Do I think you overreached and filed

   23    too broad of a class?  Yes.

   24           Q.   Well, which class should we have

   25    sought?

```
 1              A.   Not 18 million dishwashers' worth.

 2              Q.   Which class do you believe we should

 3      have sought?

 4              A.   I do not believe that the named

 5      plaintiff has completely aligned claims with the

 6      rest of the class.  He has separate claims that make

 7      him special and apart.

 8                   And then there are all the folks who

 9      are specifically excluded from the class in the

10      settlement agreement, and then there's the folks

11      whose dishwasher actually set on fire.  But the rest

12      of us got thrown in there too, so here we are.

13              Q.   I'm trying to get clarity since you

14      have an opinion that the class raised in this case

15      was too broad.  Is it your belief that the class

16      should be limited to people only who actually

17      suffered an overheating event?

18              A.   For purposes of this litigation, I

19      believe their -- their injury is separate and

20      distinct from any potential injury of the rest of

21      the class.  Should they have all been named in one

22      lawsuit?  I don't believe so.  But they have been,

23      so it's done.

24              Q.   What is the potential injury to what

25      we'll call asymptomatic dishwashers that you're
```

```
 1    referring to?
 2              A.   Well, Mr. Schwartz, you're the one that
 3    alleged it.  See, this is what I'm talking about.
 4    You're my counsel and you are asking me questions as
 5    if I am not your client.  The time for that probably
 6    would have been sometime earlier than now to
 7    determine whether or not I would have been a named
 8    plaintiff.
 9              But we're now in a situation where
10    you're my counsel; I'm a party member.  I'm a party
11    because I am one of the unnamed class members.  You
12    have entered into a proposed settlement on my
13    behalf, and now you're asking me questions about
14    whether or not I believe you did your job and
15    whether or not I think I should have been included
16    in that class.  We're past that now.
17              Q.   Well, the order of the Court requiring
18    you to appear today means we're not past my ability
19    to ask you questions, and apparently you don't
20    believe I've done a good job on your behalf and I'm
21    trying to figure out exactly why.
22              And so my question, which I'll try to
23    get an answer to is:  In your prior testimony you
24    referred to people who had asymptomatic washers
25    possibly being potentially damaged.  I'm trying to
```

```
 1    figure out what possible potential damage you're
 2    talking about for those folks like yourself.
 3              A.   And Mr. --
 4              Q.   Maybe you don't believe they've been
 5    damaged at all.  I'm just trying to figure out what
 6    the basis of your prior testimony was.
 7              A.   My prior testimony is that you alleged
 8    that.  I'm included because I'm a class member of
 9    the class that you identified and filed with the
10    Court.
11              Q.   Do you believe that you have less
12    damages for your asymptomatic dishwasher then class
13    members who had an overheating event?
14              A.   Yes.
15              Q.   Do you believe you should get less
16    recovery in a settlement than class members who had
17    an actual overheating event?
18              A.   I believe that compensation should be
19    proportional to damages, yes.
20              Q.   Fine.  Tell me what damages you've had
21    so I can evaluate the proportionality you're talking
22    about.
23              A.   Personally, I have had none.  But you
24    allege that I have.  And there's actually an expert
25    that I recall from reading these various documents
```

```
 1    that you hired on my behalf to say that I have had

 2    damages.

 3         Q.   You don't believe you've been damaged,

 4    though?

 5         A.   Personally I have not attempted to do

 6    anything that would allow me to determine if I have

 7    suffered any type of monetary damage from the

 8    dishwasher that I purchased.  I have not attempted

 9    to sell it.  I have not attempted to make an

10    insurance claim on it.  I have no way to tell if my

11    used dishwasher declined in value because of this

12    incident.

13         Q.   Is it your objection that the rebate

14    discounts that are available to people in your

15    situation are not enough compensation to constitute

16    a fair and reasonable settlement?

17              MR. KRESS:  I'm sorry.

18              THE WITNESS:  I'm sorry, I need to

19    pause because I just lost the connection with you.

20    I don't know if the face-to-face is more important

21    than the audio?  But my computer is getting ready to

22    shut down.  The computer says it's going to shut

23    down.

24              MR. SCHWARTZ:  I'm losing picture too.

25    Why don't we continue just on the phone if that
```

 1    works for you.

 2                    THE WITNESS:  Okay.  That's fine with

 3    me.

 4                    MR. SCHWARTZ:  By the way, just so

 5    we're all clear.  This is not being video-recorded.

 6    There won't be a video of this deposition.

 7                    THE WITNESS:  Okay.

 8            BY MR. SCHWARTZ:

 9            Q.    So do you have the question in mind or

10    should I repeat it?

11            A.    Repeat it, please.

12            Q.    Sure.  Do you believe that the rebate

13    discount compensation available to class members

14    like yourself who have dishwashers that have not

15    suffered an overheating event before they were put

16    out of service, do you believe that compensation is

17    not enough for the settlement to be fair and

18    reasonable?

19            A.    I believe it is not in proportion to

20    the requested attorneys' fees.

21            Q.    Putting attorneys' fees aside, is the

22    relief available to asymptomatic dishwasher owners

23    sufficient in your view to be a fair and reasonable

24    settlement?

25            A.    My opinion is that a coupon settlement

```
1    that requires expenditure of funds out of pocket is

2    never a sufficient settlement.  Proportionally

3    should the folks who experienced an overheating

4    event receive more than folks who have not?  Yes.

5    Should anyone be receiving a coupon?  No.

6         Q.   I just want to make sure I heard you

7    right.  Is it your view that everyone who owns one

8    of these dishwashers should not receive some kind of

9    rebate discount?

10        A.   My opinion is that coupons or rebates,

11   however you would like to characterize them, that

12   require me to spend money in order to realize the

13   benefit are not a reasonable settlement.

14        Q.   So for the people like you in this case

15   who have a dishwasher that, and we'll take you

16   again, worked for 11 years, you put it out of

17   service for reasons unrelated to the overheating

18   event issue as far as you know, what would be a

19   reasonable compensation for you to resolve your

20   potential claim?

21        A.   Not a coupon.

22        Q.   So what would the compensation be?  Is

23   there a dollar amount or is there some other

24   compensation you can think of?  I just want to see

25   what you think would have been reasonable.
```

```
 1          A.   There are any number of venues that

 2   could have been utilized besides a coupon which

 3   requires me to spend money in order to realize the

 4   benefit.  If it were not a coupon, if it were a,

 5   say, gift certificate that required that I could use

 6   in its entirety to purchase something that was made

 7   by the manufacturer, that doesn't require me to

 8   expend funds.

 9          Like I said, there are multiple routes

10   to the same end.  The one that doesn't work is the

11   one where the manufacturer requires me to expend

12   more funds in order to take advantage of their

13   coupon or rebate.

14          Q.   So just give me one example of what

15   relief you believe would have been fair and adequate

16   to folks in your situation.

17          A.   I just did.

18          Q.   Give me a number.  You said a gift

19   certificate.  Are you talking about a gift

20   certificate to buy a Whirlpool or Sears-branded

21   product?

22          A.   Since they are the defendant in this

23   case, yes.  I am not -- I am not attacking a dollar

24   amount.  I am unhappy with the fact that I have to

25   expend funds in order to realize benefit.
```

1           Q.   So explain to me how your gift

2      certificate idea would work.  If there's a gift

3      certificate for -- I'll pick a number off the top of

4      my head -- $20 for a Whirlpool or Sears-branded

5      product.  That -- would that be acceptable?  You

6      could take the gift certificate and buy any product

7      that Whirlpool or Sears has and you get $20 off?

8           A.   $20 off is not a gift certificate.

9      That's a coupon.  If --

10          Q.   So what --

11          A.   If I have --

12          Q.   I'm sorry, go ahead.

13          A.   It's hard to do when we can't see each

14     other.  If it were a standalone item, usually

15     characterized as a gift certificate, or I'm not sure

16     what else to call it.  That is a -- do I think that

17     that would be better than having to expend money?

18     Yes.  Do I think that that is the only resolution

19     that is agreeable or that would be a benefit to the

20     class?  No.  But it's better than what we've got.

21          Q.   And so what amounts for the gift

22     certificate for asymptomatic machines, those that

23     have not experienced the overheating event, what is

24     the minimum amount that you would say, "Yeah, that

25     is a fair and reasonable settlement"?

```
 1              A.   I don't have a dollar amount to give

 2     you.

 3              Q.   Other than you're able to say that $20

 4     sounds like a coupon to you?

 5              A.   You said $20.  I said I don't have a

 6     number to give you because I know how these things

 7     work.  The money goes in a pool.  It gets divided by

 8     the number of people who respond, and even if when

 9     you make the settlement agreement you say everybody

10     is going to get X amount of dollars, by the time

11     it's over and done, you get what you get based on

12     the number of participants.  So what dollar value I

13     say really has no bearing.

14              Q.   Does the amount of the rebate discount

15     you will get depend on how many other class members

16     seek and use the rebate discount?

17              A.   I do not believe so, no.

18              Q.   Does the amount that people who have

19     suffered overheating events get to compensate them

20     for repair or replacement costs vary depending on

21     how many people seek those costs?

22              A.   No.

23              Q.   Do you have any objection to the amount

24     of relief that is being provided to class members

25     who had an overheating event?
```

```
 1              A.    Do I believe that the compensation

 2      obtained for those class members is adequate?

 3              Q.    Yes, that's the question.

 4              A.    I would say it would depend on their

 5      particular event and what percentage of their actual

 6      damages was being reimbursed.

 7              Q.    While they incurred repair costs, do

 8      you know what percentage of those repair costs

 9      they're going to get as reimbursement for the

10      settlement?

11              A.    My understanding is whatever they can

12      prove with receipts.

13              Q.    And is it also your understanding if

14      the class member does not have sufficient

15      information as to the amount, that Whirlpool and

16      Sears must look through their databases to find the

17      amount if they have it?

18              A.    If it was a repair made by a Sears or

19      Whirlpool repair person that then, yes, the

20      defendants are supposed to provide that information.

21      If it was not a Sears or Whirlpool repair person and

22      they don't have their receipts, then they have a

23      problem.

24              Q.    Is it also your understanding that if

25      there is evidence that there was in fact a repair
```

```
 1   but there's a lack of evidence as to the amount,

 2   that there's a minimum payment that's available

 3   under the settlement for people who incurred repair

 4   costs?

 5        A.    I believe that they have an amount that

 6   they get from their -- their rebate amount is more

 7   which, once again, they have to put towards the

 8   purchase of a new dishwasher which requires them to

 9   expend the money and get the rebate.

10        Q.    Are you aware that class members who

11   had an overheating event had evidence of a repair

12   but that don't have evidence of the amount of the

13   repair, that there is a minimum cash amount they

14   would get?  Are you aware of that provision or not?

15        A.    I don't recall off the top of my head

16   since that particular section did not pertain

17   directly to me, I just skimmed through it.  I didn't

18   retain a lot of the individual facts.

19              MR. KRESS:  Steve, this is John Kress

20   again.  Can we take a break, just ten minutes, and

21   if you want to keep asking Ms. Kress questions for a

22   while, that's okay.  I just, you know -- I could use

23   a break.

24              MR. SCHWARTZ:  Sure.  Sure.  And that's

25   fine.  It's 2:46 so why don't we say about 2:55?
```

```
 1              MR. KRESS:  That's fine.  Thank you.

 2              MR. SCHWARTZ:  Just so there's no

 3    misunderstanding about our views as to proper

 4    procedure, it is my view that in the middle of

 5    depositions it is not appropriate for lawyer and

 6    client to converse on substantive matters and that

 7    if they do it's not privileged, so I'd just put that

 8    out there.  I don't know whether you take a

 9    different view, but I'm putting out there my

10    position just so there's no -- no surprise.

11              MR. KRESS:  I understand your position

12    that you're taking.

13              MR. SCHWARTZ:  Okay.  So we'll

14    reconvene at -- in about ten minutes.

15                  (Recess taken.)

16         BY MR. SCHWARTZ:

17         Q.   Ms. Kress, before your objection was

18    filed, did you review it?

19         A.   Yes.

20         Q.   Did you participate in the drafting of

21    the objection?

22              MR. KRESS:  Objection to the extent

23    that that may invade the attorney-client privilege

24    and work product.

25                  And instruct you not to answer that
```

```
 1   question.
 2           BY MR. SCHWARTZ:
 3           Q.   I'm not sure that's quite right, but
 4   are you going to stand on that?
 5           MR. KRESS:  You're wanting -- I'm
 6   sorry, Steve, just to clarify.  You're asking her if
 7   she participated in drafting the objection, correct?
 8           MR. SCHWARTZ:  I'm trying to find out
 9   whether something was stuck in front of her face --
10   let me start off with a brand-new question.
11           THE WITNESS:  Okay.
12           BY MR. SCHWARTZ:
13           Q.   Before your objection was filed, did
14   you review it and suggest any edits that you deemed
15   were appropriate?
16           A.   I think I can answer where you're going
17   with this.
18           MR. KRESS:  Same objection.
19   Attorney-client privilege.
20           But go on ahead and answer if you can
21   keep it without invading that.
22           THE WITNESS:  Was I aware that an
23   objection was being drafted on my behalf that was
24   going to be presented to me for signature?  Yes.
25   Did I participate in the physical typing?  No.
```

```
 1              BY MR. SCHWARTZ:

 2              Q.   Did you authorize the filing of the

 3     objection that was filed on your behalf?

 4              A.   Yes.

 5              Q.   And before it was filed, did you review

 6     it and make sure that the content was satisfactory

 7     to you?

 8              A.   Yes.

 9              Q.   And was there anything that limited

10     your ability to either make or suggest edits to be

11     made to whatever drafts you received to make sure

12     you were comfortable that everything in the

13     objection was 100 percent accurate?

14              A.   I was able to -- I was able to comment

15     on --

16              MR. KRESS:  Let me just object and say

17     it's already been asked and answered.

18              THE WITNESS:  Yes, I knew about this

19     objection.  I knew that court documents were being

20     prepared.  I knew what they said.  I signed it.

21              BY MR. SCHWARTZ:

22              Q.   And you were satisfied or were you

23     satisfied that the objection filed on your behalf

24     was 100 percent accurate in the factual assertions

25     that it made?
```

 1              MR. KRESS:  I'm going to object to the

 2   extent that you are seeking something that may

 3   invade the attorney-client privilege and work

 4   product, and in terms of 100 percent satisfied, I

 5   mean, what does that mean?  Talk about vague and

 6   calling for speculation.

 7              But, Ms. Kress -- Kelly, you can

 8   answer.

 9              THE WITNESS:  It's my objection.  I am

10   standing by it.

11         BY MR. SCHWARTZ:

12         Q.   Did you review the objection again

13   before your deposition today?

14         A.   Yes.

15         Q.   What did you do to prepare for your

16   deposition today?

17              MR. KRESS:  I'm going to object to the

18   extent that what you're seeking invades the

19   attorney-client privilege and work product.

20              And I'm going to instruct you not to

21   answer.

22              MR. SCHWARTZ:  Well, let's break it

23   down because that instruction I'm sure is not

24   proper.

25         Q.   Did you review documents to prepare for

```
 1    your deposition?

 2                 THE WITNESS:  Are you going to object?

 3                 MR. KRESS:  You can answer that.  You

 4    can say yes, you reviewed documents.

 5                 THE WITNESS:  Yes, I reviewed

 6    documents.

 7            BY MR. SCHWARTZ:

 8            Q.   Did you review your objections?

 9            A.   Yes.

10            Q.   Did you review any other documents?

11            A.   Yes.

12            Q.   Did you review your certification?

13            A.   Yes.

14            Q.   Were there any other documents that you

15    reviewed?

16            A.   Yes.

17            Q.   Did reviewing any of those other

18    documents help refresh your recollection of any

19    facts or issues related to this case?

20                 MR. KRESS:  Objection as to vague and

21    calling for speculation as to what facts or issues.

22                 THE WITNESS:  Yes, I reviewed

23    documents.

24            BY MR. SCHWARTZ:

25            Q.   And did those documents help remind you
```

```
 1    of things that were contained in those documents?

 2            A.   Yes.

 3            Q.   What were the other documents that you

 4    reviewed?

 5            A.   I reviewed the settlement agreement.  I

 6    reviewed the -- I don't remember if it was a

 7    separate document or included in with the settlement

 8    agreement.  It was the request for attorneys' fees,

 9    and then I reviewed the defendants' either response

10    or objection to the motion for attorneys' fees.

11            Q.   Did you review the preliminary approval

12    order?

13            A.   I believe that that was attached to my

14    copy of the settlement agreement.  I don't remember

15    it being a standalone document but I do believe that

16    I have seen it.

17            Q.   About how much time did you spend

18    preparing for your deposition?

19                 MR. KRESS:  And I'm going to object to

20    that again.  Getting into work product and

21    attorney-client privilege.  I'm going to instruct

22    her not to answer.  You don't have the right to know

23    how much time she spent reading anything.

24                 MR. SCHWARTZ:  Actually I do,

25    Mr. Kress.  I can even find out how much time she
```

```
 1    spent with her lawyers.  I can't ask what she talked
 2    with her lawyers about.  I --
 3                MR. KRESS:  And I'm also objecting --
 4                MR. SCHWARTZ:  I was still speaking.  I
 5    can find out how much time she spent with lawyers,
 6    who the lawyers were in the room.  I can't find out
 7    the substance of those communications, but I can
 8    certainly find out how much time she spent preparing
 9    independently and preparing with lawyers.
10                If you want to stand by your objection,
11    that's your choice.  I'm just telling you that that
12    would be not a well-founded objection.
13                MR. KRESS:  Well ...
14                MR. SCHWARTZ:  I'll ask my questions
15    and you can make any objections you want.
16          Q.   My first question was how much time did
17    you spend reviewing documents to prepare for your
18    deposition today?
19          A.   Several hours.
20          Q.   And did you meet with lawyers to
21    prepare for your deposition?
22          A.   Yes.
23          Q.   And who were the lawyers that you met
24    or communicated with?
25          A.   I met with my counsel, both John Kress
```

```
 1   and Jon Fortman.
 2          Q.   And how long did you meet or talk with
 3   Mr. Kress and Mr. Fortman to prepare for your
 4   deposition?
 5          A.   I'd say two to three hours over the
 6   course of several days, not in one block.
 7          Q.   Okay.  And was that time, two or three
 8   hours you met with your lawyers, was that separate
 9   from the several hours you spent looking at
10   documents or was that all part of the same --
11          A.   Yes, separate.  I was given -- I was
12   given copies of my documents.  I read them.  Prior
13   to that we discussed --
14              MR. KRESS:  And, again, I'm just going
15   to object.  I don't want you getting into what was
16   discussed.
17              THE WITNESS:  I met with counsel for a
18   block of time.  I was given documents.  I read, then
19   I met with counsel again.
20          BY MR. SCHWARTZ:
21          Q.   Before your objection was filed, had
22   you read the settlement agreement?
23          A.   Yes.
24          Q.   Before your objection was filed, had
25   you read the order signed by the judge granting
```

1    preliminary approval for the settlement?

2              A.   Yes.  I believe so.  I'm sorry.  Some

3    things I'm not sure the order in which things

4    happened.  If you have the preliminary order, you

5    have my objection, chronological order.

6              Q.   Where the preliminary approval order

7    was signed several months before your objection was

8    filed, I just want to make sure that before you

9    filed your objection did you read the Court's -- I

10   think it was a 30-page or so preliminary approval

11   order granting preliminary approval for the

12   settlement before you filed your objection?

13             A.   Yes.

14             Q.   And how about the motion for attorneys'

15   fees.  Did you read that before you filed your

16   objection?

17             A.   I read the documents that were

18   available to me at that time.  If that was filed

19   before I filed my objection, then, yes, I read that.

20             Q.   Okay.  I'll just let you know that that

21   plaintiffs' motion for attorneys' fees was filed

22   before your objection was filed.

23                  When -- in terms of those documents

24   that you read, did you go on to the settlement

25   website to get them yourself or were those documents

1    that were provided to you?

2          A.   Some of the documents were online.  I

3    don't recall if I read the Court order online or if

4    it was a hard copy.  I'm sorry.  I don't recall if I

5    visited the website and that's where the documents

6    came from or if my counsel had copies of them from

7    PACER.

8          Q.   Okay.  But one way or another you were

9    able to read and review and access the documents

10   that were already in existence before you filed your

11   objection?

12         A.   Yes.

13         Q.   In connection with the work you did

14   reviewing your objection and the other documents

15   before the deposition, did you identify any

16   statements in your objections that you said to

17   yourself, "Oh, these are wrong.  These are a

18   mistake.  I should withdraw these statements"?

19         A.   No.

20         Q.   Anything like that?

21              And so do you still stand behind

22   statements that are made in your objection?

23         A.   Yes.

24         Q.   Okay.  Let's put your objection in

25   front of you, what was previously marked as

```
 1   Exhibit 4.  Let me know when you have that.
 2           A.   Okay.  I have Exhibit 4.
 3           Q.   Okay.  And is this the objection that
 4   your attorneys filed on your behalf in this case?
 5           A.   Yes, I believe so.
 6           Q.   Let's go to page 2 and the page numbers
 7   we'll use are the PACER stamp up at the top.  Do you
 8   see that?
 9           A.   Yes.
10           Q.   Okay.  You understand what we're
11   talking about, about the proposed sale of class
12   representative Mr. Chambers' website to Whirlpool
13   and Sears, right?
14           A.   Yes.  I know what you're referring to.
15           Q.   Okay.  Down at the last paragraph on
16   page 2, your objection it states or you state, "Not
17   surprisingly, it's only Mr. Chambers and class
18   counsel getting paid on this case."  Do you see
19   that?
20           A.   Yes, I do see where it says that.
21           Q.   Is it true that under the proposed
22   settlement only Mr. Chambers and class counsel are
23   getting paid money in this case?
24           MR. KRESS:  I'm going to object to the
25   extent that you're taking this document piecemeal.
```

```
 1      The document speaks for itself and it's

 2      approximately 30 pages.  I'm also objecting to the

 3      extent that you're seeking to invade the

 4      attorney-client privilege, work product, and also

 5      the spousal privilege.

 6              BY MR. SCHWARTZ:

 7              Q.   This is your objection that you

 8      approved and you said is accurate, so I'm asking you

 9      whether that statement, this objection that it's

10      only Mr. Chambers and class counsel getting paid on

11      this case, whether that is accurate.

12              A.   As it pertains to the context within

13      it's stated, yes.  Mr. Chambers and class counsel

14      get far and away the bulk of the money that is on

15      the table.  The other named plaintiffs do receive

16      funds, but it is 4 percent of what Mr. Chambers is

17      getting, if my math is correct.

18              Q.   Would it be fair to say that you --

19      sure.

20              Would you agree, Ms. Kress, that what

21      you just testified to about the 4 percent number is

22      not the same as what was stated in your objection

23      that it's only Mr. Chambers and class counsel

24      getting paid in this case?

25              A.   I would say it probably should have
```

 1    been worded differently.

 2          Q.    Okay.  Let's go to page 3.

 3          A.    Yes.

 4          Q.    And in the middle of the first whole

 5    paragraph, your objection states, "The parties

 6    strain credibility by claiming that the purchase is

 7    'separately' made and does not reduce benefits to

 8    the class.  However, that claim may be true because

 9    the class members get nothing but cash incentives

10    for purchasing new dishwashers - not benefits to

11    class members that do not require continued business

12    with the Defendants."  Do you see that?

13          A.    Yes, I do see where it says that.

14          Q.    Is it true that class members get

15    nothing but cash incentives for purchasing the

16    dishwashers?

17                MR. KRESS:  Same objection.  You've got

18    to look at the document as a whole.  It's a 30-page

19    document.  You can read through it.  It will talk

20    about what other people receive as well, Steve.

21    Also to the extent that you're wanting to get into

22    her head about what her attorneys talked about, work

23    product and attorney-client privilege and spousal

24    privilege.

25                But go ahead and answer if you can.

```
 1              MR. SCHWARTZ:  Well, Mr. Kress, that
 2     was a totally inappropriate speaking objection
 3     designed to coach your witness and your wife.  I'll
 4     caution you again not to make those kinds of
 5     objections and not do that kind of coaching, because
 6     if it continues, we will seek relief.
 7         Q.    But you can answer whether -- whether
 8     that statement in the brief was also and perhaps
 9     should have been worded a little bit differently.
10         A.    If you read the bold heading of --
11     immediately above that, it is worded differently.  I
12     try and avoid absolutes.  My counsel's drafting
13     style is not mine.  But it is what he drafted and
14     it's my objection.
15         Q.    We've only just met, Ms. Kress, but I
16     get the sense you're not a shrinking violet, so I'm
17     going to ask you a question of if you thought that
18     the statement at that time that you authorized this
19     objection be filed was phrased in an absolute way
20     that was not accurate, why didn't you go and either
21     suggest or make an edit to make it accurate?
22              MR. KRESS:  I'm going to object to the
23     extent that you're mischaracterizing her previous
24     testimony.  I don't believe she testified that the
25     objection had any inaccuracies in it.
```

```
 1              Subject to that you can answer.
 2              THE WITNESS:  Mr. Schwartz, my husband
 3   and I have been married a long time.  I have learned
 4   to pick my battles.  Class action work is what he
 5   does.
 6              MR. KRESS:  Okay.  I'm going to
 7   instruct you not to give a narrative that's not
 8   responsive to the question.
 9              THE WITNESS:  I'm answering his
10   question, why did I not object.  I -- am I -- I am
11   satisfied that an objection was filed that conveyed
12   my complaints with the settlement.  If I had written
13   it myself, would it have been worded this way?  No.
14   But I retained counsel.  This is the way he worded
15   it.  It's my objection.
16              BY MR. SCHWARTZ:
17        Q.   Let's go to page 4, please.
18        A.   Yes, go ahead.
19        Q.   And in the first full paragraph down
20   towards the bottom, do you see where it says, "Other
21   than the named" -- I'm sorry, "Other than the other
22   named plaintiffs in this case who each are slated to
23   receive $4,000 each, it is only Mr. Chambers who
24   appears to be successful with this class action
25   lawsuit - forcing Defendant to pay to silence
```

Kelly Reese
August 17, 2016                                    66

```
 1    Mr. Chambers.  Meanwhile" --
 2              A.   I'm sorry, I'm not -- I'm on page 4 and
 3    I don't see where you are.
 4                   MR. ROSEMERGY:  It's the middle of the
 5    page.
 6                   THE WITNESS:  Okay.
 7              BY MR. SCHWARTZ:
 8              Q.   So do you see -- okay, so it starts
 9    with the word "Other."  Do you see that now?  "Other
10    than"?
11              A.   Yes.
12              Q.   Okay.  So I'll start over again.
13    "Other than the other named plaintiffs in this case
14    who each are slated to receive $4,000 each, it is
15    only Mr. Chambers who appears to be successful with
16    this class action lawsuit - forcing Defendant to pay
17    to silence Mr. Chambers.  Meanwhile, the class
18    members get nothing more than a discount toward a
19    future dishwasher purchase."  Do you see that?
20              A.   Yes.
21              Q.   Is it true that class members, the ones
22    who aren't the class representatives, get nothing
23    more than a discount toward a future dishwasher
24    purchase?
25              A.   For the bulk of the class, yes.  With
```

1    the exception of the very small percentage who had

2    reimbursable damages.

3         Q.   Class members who had out-of-pocket

4    damages for an overheating event, correct?

5         A.   Right.

6         Q.   And that was not stated as part of a

7    qualification of the statement in your objection

8    that class members get nothing more than a discount

9    toward a future dishwasher purchase, correct?

10        A.   That's what the sentence says.

11        Q.   And is that another sentence where if

12   you were the original drafter or it happened over

13   again you would have done it differently?

14        A.   I think it conveys the point.  Out of

15   18 million dishwashers, approximately under 3,000.

16   So while I avoid absolutes I think it conveys the

17   point.

18        Q.   Another way to convey the point is

19   everyone who actually suffered any damage out of

20   pocket for the defect is getting cash.  You could

21   say that too, right?

22        A.   You could.  You could say a lot of

23   things but that's not what it says.

24        Q.   Okay.  Going to the bottom of page 4,

25   what you wrote about or what your objection about

1    Mr. Chambers is, "It does appear that Mr. Chambers

2    has spent a great deal of effort and energy to

3    galvanize support and awareness of the defective

4    products."  Do you see that?

5         A.   Yes.

6         Q.   Do you agree with that statement?

7         A.   Yes.

8         Q.   Do you believe that it was to the

9    benefit of class members that Mr. Chambers spent a

10   great deal of effort and energy to set up his

11   website and gather a lot of information about all

12   the overheating events that he and class members

13   could generate for him so he had that database of

14   information?  Was that helpful to the class members

15   in your view?

16        A.   Yes, and that's why that next sentence

17   is there.  I do believe Mr. Chambers should have

18   been compensated.  I don't necessarily think he

19   should have been the lead plaintiff and that his

20   compensation should have been part of the settlement

21   of this lawsuit as the lead plaintiff.

22             I think that he should have been

23   compensated as an expert who had gathered all this

24   information together and was entitled to be

25   compensated for his expertise.

 1          Q.   And how much do you think Mr. Chambers

 2    should be compensated for in his role as a

 3    consultant, as you put in your objection?  Is there

 4    an hourly rate that you have in mind or is there

 5    some flat figure you have in mind?

 6          A.   Mr. Chambers asserted he was worth

 7    $400,000.  Whether or not he is, I do not know that.

 8    I know that's what he asserted.  I know that the

 9    settlement was reached that he is willing to accept

10    $100,000.

11          Q.   Do you think $100,000 is, again, as a

12    consultant role that you suggested he should have

13    been in given all the time and work and energy and

14    the amount of information he gathered, do you think

15    $100,000 would have been an excessive or

16    inappropriate payment to him as a consultant?

17          A.   Well, since I don't know what the work

18    was or how he valued the work to come up with his

19    number, I cannot make an educated decision on that.

20          Q.   Do you have any idea how many hours

21    approximately he spent?

22          A.   No.

23          Q.   Before you filed your objection did you

24    read Mr. Chambers' detailed affidavit that he filed

25    in connection with the preliminary approval papers?

1          A.   If it was attached to the documents,

2    yes, I read them.  Do I recall off the top of my

3    head what this man said he did?  No.  Do I believe

4    that he put a lot of work in and he should be

5    compensated?  Yes.  But you're asking me to recall

6    things that are multiple years old and are one fact

7    out of literally thousands of pages of documents.

8          Q.   So let me just see if I understand what

9    your objection is.  Is your objection that

10   Mr. Chambers getting $100,000 for his website and

11   his work is too much money, or is your objection

12   that he just can't be one of the dozen-plus class

13   representatives who are getting that money?

14         A.   My objection is that at the point where

15   Mr. Chambers was being offered different

16   compensation than the rest of the named plaintiffs

17   and the rest of the class, his interests diverged.

18   I am suggesting that that could have been avoided if

19   he was not the lead plaintiff and he could have been

20   compensated for his work in a way that did not put

21   him and you in a position where the lead plaintiff

22   has a different agenda than the rest of the class.

23         Q.   So do you think that it would be better

24   off for the class if one of the class

25   representatives was less knowledgeable than

```
 1    Mr. Chambers was; is that what you're saying?
 2          A.    I'm saying that Mr. Chambers does not
 3    share the characteristics of the bulk of the class.
 4    He has a situation that is different, and more time
 5    was spent dealing within these documents, more pages
 6    was spent devoted to Mr. Chambers and the settlement
 7    of his singular issue with the websites than to the
 8    bulk of the class.
 9          Q.    What does the number of pages sent
10    addressing objections or questions about the
11    Chambers' payment have to do with whether he's an
12    adequate class member?
13          A.    Because they are singular to him.  They
14    do not address a characteristic shared by anyone
15    else in the class.
16          Q.    And how about the other class
17    representatives who are getting the settlement if
18    the judge approves these service award payments of
19    $4,000?  It's a bit unclear from reading the
20    objection whether your objection objects that those
21    $4,000 proposed payments are not for the other class
22    representatives only.  Spell it for out for me.
23          A.    No, I am not -- sorry.
24          Q.    Do you -- do you object to the proposed
25    $4,000 payments to the other class representatives?
```

1          A.   I do not object to them receiving

2    compensation.  How the $4,000 number was arrived at,

3    I don't know.  They should be compensated.  I am not

4    disputing that -- that fact.

5          Q.   Okay.  And did you understand from

6    reading the documents that besides being deposed and

7    producing documents and answering interrogatories

8    that they also had Whirlpool and Sears or their

9    experts come into their homes and inspect their

10   dishwashers?

11         A.   Like I said, I am not opposed to them

12   receiving compensation.  Whether or not $4,000 is

13   fair is not my decision.  If they are willing to

14   accept $4,000 as payment for the experience they

15   have gone through such as the things you just

16   outlined and their counsel advised them that that

17   was a suitable payment, then it is what it is.

18         Q.   Okay.  And to put it more in a -- to

19   crystalize it more.  If the judge who's evaluating

20   those payments said, "Yes, I believe it's reasonable

21   after looking at everything," that's not something

22   you're going to take issue with?

23         A.   No.

24         Q.   Going back to Mr. Chambers, are you

25   aware that according to his declaration he spent in

```
 1    excess of 535 hours working on this case?

 2              A.   As I have said, I am not disputing that

 3    Mr. Chambers is entitled to compensation.  I don't

 4    particularly like how the compensation of

 5    Mr. Chambers and his expertise is tied to the fate

 6    of the rest of the class, and the fate of the rest

 7    of the class is tied to Mr. Chambers agreeing to

 8    take $100,000.

 9              I think the man should be compensated

10    for his expertise.  Whether or not that should be as

11    the lead plaintiff or if that should be in another

12    form is what I am having issue with.

13              Q.   Do you know whether it was Mr. Chambers

14    who requested that Whirlpool and Sears pay him to

15    purchase his website or whether it was Whirlpool and

16    Sears that made the initial request to purchase

17    Mr. Chambers' website?

18              A.   I don't recall.

19              Q.   Would it change your view of the

20    propriety of that website -- the proposed website

21    sale if it was Whirlpool and Sears that insisted

22    that before going forward with the settlement they

23    had to negotiate it for the rest of the members of

24    the class that they wanted to get a purchase of

25    Mr. Chambers' website?
```

```
 1          A.   As a defense counsel, I would certainly
 2    want that.  As a plaintiff's counsel, should I tie
 3    the fate of all the other class members to
 4    Mr. Chambers being willing to sell his websites to
 5    Whirlpool?  No.  But that is what has occurred, so
 6    like I said, should it be part of the settlement of
 7    this case, with him as lead plaintiff?  No.  But it
 8    is.
 9          Q.   If there was no proposed $100,000 sale
10    of Mr. Chambers' website, would you be -- and let's
11    put aside the issue of attorneys' fees because we
12    have no idea what the Court will award anyway for
13    attorneys' fees, are you then satisfied with the
14    negotiating process between class members and class
15    counsel and the settlement relief that was achieved?
16               MR. KRESS:  Objection.
17          BY MR. SCHWARTZ:
18          Q.   With the class members?
19               MR. KRESS:  I'm sorry.  Objection as to
20    vague and calls for speculation.
21               THE WITNESS:  I'm sorry.  You want me
22    to speculate on how things should have been done
23    when in fact they're already done?
24          BY MR. SCHWARTZ:
25          Q.   What I'm trying to do is find out
```

1    whether your objection is to just the fees and

2    Mr. Chambers' website sale, or whether if those

3    issues are put to the side whether you think there

4    was some collusion going on with respect to the

5    amounts of settlement relief that has been

6    negotiated between the parties in this case?

7              A.   I think you're operating under a

8    misconception.  I am not -- it's -- it's not the

9    specific dollar amount that I am objecting to.  It

10   is the fact that the lead plaintiff in this case has

11   what you have stated is a major hurdle to settlement

12   of this case that exists only for the lead plaintiff

13   and for no one else in the class.

14              Therefore, he is not representative of

15   everyone else in the class.  He has his own separate

16   issue.  However, the bulk of -- I shouldn't say "the

17   bulk."  Let me rephrase that.

18              A great deal of time and effort has

19   been devoted to this one particular client who has

20   this one particular issue that no one else has.

21   That should have been dealt with separately and

22   apart from everyone else in the class.  It was not.

23              And, in fact, all I know is that it was

24   an arm's-length transaction.  It does not tell me

25   whether or not Mr. Chambers had separate counsel.

1    It does not tell me what went into him agreeing to

2    this amount.  All I do know is that he's the named

3    plaintiff and as a result of this settlement, he is

4    selling two websites to the defendant.

5         Q.   Do you think Mr. Chambers or any of the

6    other class representatives tried their best to get

7    the best relief possible for class members?

8              MR. KRESS:  I'm going to object as to

9    calls for vague and it's speculative.

10             But subject to that.

11             THE WITNESS:  I don't know

12   Mr. Chambers.  I don't know the other named

13   plaintiffs.  I do know that except for the very

14   small percentage of people who are getting

15   reimbursed for damages that they sustained, the only

16   other people that are getting compensation are the

17   named plaintiffs, who are entitled to compensation

18   but collectively do not receive as much as the lead

19   plaintiff who gets compensated for something that

20   only happens to him, only has to do with him, and

21   counsel.

22             And the amount that counsel has asked

23   for is in such a disproportion to the amount that is

24   actually seen by Mr. Chambers and the other named

25   plaintiffs and everyone else who is a class member,

```
 1   that it's a problem.

 2           BY MR. SCHWARTZ:

 3           Q.   Do you believe that the class counsel

 4   in this case tried their best to negotiate the

 5   maximum relief from Whirlpool?

 6               MR. KRESS:  Again objection.  Vague.

 7   Calls for speculation.

 8               THE WITNESS:  It's an opinion question.

 9   I'll answer it.

10               Whether or not you tried your best does

11   not change the end result.  It -- unfortunately in

12   litigation, success and failure is not tied to best

13   effort.  You can give something your best effort and

14   still not be successful.  And --

15           BY MR. SCHWARTZ:

16           Q.   Sure.

17           A.   And in litigation -- sorry.  In

18   litigation success is determined by final dollar

19   amount.  So whether or not you tried your best

20   doesn't really determine what you're entitled to as

21   fees.

22           Q.   And I'm just asking whether as part of

23   your objection you believe class counsel tried their

24   best in good faith to get the best possible

25   negotiated settlement they could, or whether you
```

1    believe class counsel were colluding with Whirlpool

2    to give them an easy settlement?

3                    MR. KRESS:  Objection as to what she

4    believes.  Again, vague.  Calls for speculation.

5                    Subject to that, you can answer.  If

6    you know what class counsel ...

7                    THE WITNESS:  At the end of the day

8    even if you put forth your best effort it doesn't

9    change the outcome.  And we don't get paid in this

10   business for our efforts; we get paid for results.

11   Unless you bill hourly.

12                   BY MR. SCHWARTZ:

13        Q.   You were a domestic relations lawyer?

14        A.   Yes.  Yes, I was.

15        Q.   Were you paid on a contingent basis as

16   a domestic relations lawyer, or were you paid on an

17   hourly basis?

18        A.   I was paid on an hourly basis.

19        Q.   And so even if you tried your best and

20   were the greatest lawyer in the world, you got paid

21   the same hourly rate whether you won or lost because

22   that's just what the facts are and how the judge

23   ruled, correct?

24        A.   Basically, yes.

25        Q.   And going back to your testimony, I

```
 1    still want to know, you've made a lot of

 2    allegations, not just about Mr. Chambers but you

 3    made allegations about me and my co-counsel.  And I

 4    just want to see whether one of the allegations

 5    you're making to the judge saying you shouldn't

 6    approve this settlement is that class counsel,

 7    including me, did not try our best to get the best

 8    possible relief given under the circumstances.

 9              Is that one of your complaints about

10    class counsel or is your complaint just based on the

11    results?

12         A.   I would not say that I told the judge

13    you weren't doing your best.  I would say perhaps

14    your best wasn't good enough.  And sometimes that's

15    what happens.  The difference is I'm not asking for

16    a lodestar.  Domestic relations, we get what we get.

17    Our hourly rate is our hourly rate.  We don't ask

18    for a multiplier.

19         Q.   You also didn't take any risk in terms

20    of getting paid in your domestic relations work

21    either, assuming you got appropriate security from

22    your clients, right?

23         A.   That is the nation -- nature of

24    domestic relations work.  That is why I did not do

25    contingent work because contingent work is
```

```
 1   contingent.  And I also don't do personal injury

 2   where you can put in multiple hours and come away

 3   with nothing.

 4              There are any number of the fields of

 5   law where you can do your best and it's still not

 6   good enough to come away with money in hand for your

 7   client.  But in those fields, you don't ask for a

 8   lodestar.

 9        Q.   In those fields you just get paid your

10   lodestar without risk of nonpayment, correct?

11        A.   They're --

12        Q.   With little risk of nonpayment?  I

13   understand there's some risk.

14        A.   Yes, yes.

15        Q.   Right?

16        A.   It's a different beast.

17        Q.   But generally what I said is right

18   though, correct?

19              MR. KRESS:  I'm -- objection as to

20   generally.  You've been saying a lot of things in

21   this case, Steve.  Why don't you restate the

22   question and ask if she thinks it's right then.

23              BY MR. SCHWARTZ:

24        Q.   Sure.  Generally in practices like your

25   prior practice, domestic relations practice where
```

1    you're getting paid hourly, besides some small risks

2    of nonpayment in certain situations, you get paid

3    your lodestar without substantial risk, fair?

4          A.   Correct.

5          Q.   Okay.  I think we're on page 5 of your

6    objections.  And on the last full paragraph there's

7    a discussion about Mr. Chambers and Ms. Van der

8    Veer, and on the third line of that paragraph your

9    objection says, "Does Ms. Van der Veer live with

10   Mr. Chambers?"  Do you see that?

11         A.   Yes.

12         Q.   Are you aware that Ms. Van der Veer is

13   Mr. Chambers' wife?

14         A.   I am not aware of that.  That's why I

15   asked because he's getting a payment but she's not.

16         Q.   Are you aware that if you or your

17   counsel had looked at Mr. Chambers' and Ms. Van der

18   Veer's declarations that they filed in support of

19   preliminary approval that the answer for that was

20   right there along with other places such as the

21   complaint?  Are you aware of that?

22         A.   If the fact is in the document, it is

23   in the document.  It doesn't change the fact that he

24   gets a bunch of money while she gets $4,000.  Which

25   is, I believe, the point of this paragraph.

1    Q.   Wasn't the point of asking whether

2  Ms. Van der Veer lives with Mr. Chambers, wasn't the

3  point you didn't know the answer to something that

4  was readily available, posted on the website and in

5  various documents filed in the case, including

6  specifically where to expect to look for it in your

7  declaration?

8    A.   I believe you are taking one sentence

9  out of many because the question of that paragraph

10 is that how does Ms. Van der Veer stand to benefit

11 from the defendants -- from the transaction with the

12 defendant where Steve Chambers gets $100,000.

13   Q.   Probably the same way any other wife

14 benefits if their husband makes money.  Such as if

15 your husband makes money as an attorney in this

16 case, I guess there's some way we could say that you

17 benefited.  There's not much difference between the

18 two, is there?  Especially since she was one of the

19 named plaintiffs in this case.

20   A.   What we asked for in that paragraph was

21 the contract or agreement for sale along with the

22 attendant documentation concerning appraisals and

23 values.  That's the next sentence.

24   Q.   Do you know whether or not you have

25 seen or your counsel has seen what you described as

1    the contract of sale for Mr. Chambers' website?

2         A.   I believe that's why we're asking the

3    Court to require the parties to produce that

4    contract.

5         Q.   So you're not aware -- you and counsel

6    are not aware that the contract for sale of the

7    website is the settlement agreement and the court

8    filings that we have is the settlement agreement and

9    there's no separate contract for the sale of those

10   websites?  Is that just a fact that was missed?

11        A.   I think the fact that the settlement

12   agreement is being used as a contract between one

13   member of the class, the lead plaintiff, and the

14   defendants for something that only pertains to the

15   lead plaintiff and the defendants is a problem.  I

16   would like to know if Mr. Chambers had independent

17   counsel because it's a problem if he didn't.

18             The fact that you just said that he --

19   his contract is incorporated into a document that

20   pertains to 18 million dishwashers is a problem.

21   Because how much of the money that you are asking to

22   be compensated for deals exclusively with the lead

23   plaintiff?  That if he were not the lead plaintiff,

24   would not have been billed to the class.

25        Q.   Do you think that Mr. Chambers' work in

```
 1   creating a website, gathering the information,
 2   talking with class members who experienced
 3   overheating events, do you think that that work
 4   required class counsel to do more work than they
 5   otherwise would have done or less work than they
 6   otherwise would have done?
 7             MR. KRESS:  Objection.  Vague.  Calls
 8   for speculation as to what you know the class
 9   counsel did.
10             Subject to that you can answer.
11             THE WITNESS:  I think that, as I have
12   said multiple times, Mr. Chambers is entitled to
13   compensation for the work he has done.  I do not
14   believe that the proper format for his compensation
15   is an individualized remedy that only he receives
16   which has -- there is reason for him to be
17   compensated.  I disagree with the format in which it
18   was done.
19             Whether or not the lead plaintiff did a
20   bunch of the work for you does not change the fact
21   that he's being paid $100,000 for the sale of two
22   websites and that the settlement of the class is
23   dependent upon one person receiving compensation for
24   something that has nothing to do with the rest of
25   the class.
```

```
 1          BY MR. SCHWARTZ:
 2          Q.   You think the work that Mr. Chambers
 3   did in creating the website has nothing to do with
 4   the rest of the class?
 5          A.   It is -- the purchase of those websites
 6   is exclusive to Mr. Chambers.  Where everyone else
 7   in the class has nothing to do with the exchange
 8   between Mr. Chambers and the defendants, but yet it
 9   is in the document that pertains to all of us.
10          Q.   Do you agree that it was necessary and
11   proper for the terms of this website sale, proposed
12   sale, and that the price of $100,000, do you agree
13   that that information was something that necessarily
14   should have been provided to the Court and available
15   to class members in terms of evaluating the
16   settlement?
17          A.   I think it should have been a separate
18   transaction that could have been referred to the
19   attention of the Court.  Do I think that the rest of
20   the --
21          Q.   Do you -- I'm sorry, go ahead.
22          A.   Do I think that the rest of the
23   settlement should be contingent, as you stated, upon
24   Mr. Chambers selling his websites?  No.
25          Q.   But when you talk about it being a
```

Kelly Freese
August 17, 2016

86

```
1    separate document or separate transaction, you still

2    believe -- and tell me if I'm wrong -- you still

3    believe that it was necessary and appropriate that

4    there be disclosure of that proposed sale to the

5    Court and to class members so that that can be

6    evaluated by the Court and class members as part of

7    the settlement review, correct?

8              A.   I do believe that the Court should be

9    aware that the lead plaintiff has something that the

10   defendant wants, that only he has.

11             Q.   And the Court was made aware of that,

12   wasn't it?

13             A.   Yes.

14             Q.   So let's go to the bottom of page 5 of

15   your objection, and the last partial paragraph where

16   you talk about a lack of transparency concerning the

17   sale.  Do you see that?

18             A.   Yes.

19             Q.   And then you -- your objection states,

20   "The parties could not be bothered to inform this

21   Court of what the exact websites were that are the

22   subject matter of the transactions."  Do you see

23   that?

24             A.   Yes, I see where it says that.

25             Q.   Are you asserting in your objection
```

```
1    that Whirlpool and Sears and class counsel and

2    Mr. Chambers did not tell the Court and tell class

3    members exactly which websites were being sold?

4         A.   I believe that the description in the

5    settlement document is not sufficient to be a

6    stand-alone.  And I believe that Mr. Chambers and

7    defendants should have entered into a standalone

8    contract with Mr. Chambers having separate counsel.

9         I do not know if Mr. Chambers had

10   separate counsel.  It just says it's an arm's-length

11   transaction.

12        Q.   Your objection states, "The parties

13   could not be bothered to inform this Court of what

14   the exact websites were that are the subject matter

15   of the transactions."

16        I'm asking you, as you sit here today

17   based on the -- throughout this case, whether or not

18   it is true that the parties have not provided the

19   Court and class members with the exact website that

20   are the subject matter of the proposed sale?

21        A.   I believe there could have been greater

22   clarity with the websites.

23        Q.   So when you filed this objection you

24   didn't know exactly which two websites were part of

25   the sale?  Was that --
```

```
 1              A.   Well, I could only find one.  Now,

 2    whether that was because Mr. Chambers had already

 3    taken the other one down or because it was no longer

 4    active, I could only find one based on the

 5    information presented to me.

 6              Q.   Did you actually look for the websites

 7    or was that something that your counsel did?

 8              A.   I looked up the websites.

 9              Q.   Was that a statement that you drafted

10    or was that a statement that your counsel drafted?

11              A.   My counsel submitted my objection with

12    my signature.  Who typed the specific language is

13    work product.

14              Q.   Right.  But you testified that you

15    searched for the websites and could only find one

16    site.  So I guess what I'm really asking is whether

17    it was only you who couldn't find both websites or

18    whether it was both you and your counsel?

19              MR. KRESS:  I'm going to object as to

20    work product and attorney-client privilege.

21              And instruct you not to answer.  And,

22    further, you've already answered his question.

23              BY MR. SCHWARTZ:

24              Q.   Okay.  Will you refuse to answer that

25    question?
```

Kelly Kress
August 17, 2016                                              89

```
 1                    MR. KRESS:  I'm instructing you not to

 2       answer.  You already told him you looked it up on

 3       the computer.  Whether or not your attorneys did and

 4       how many times is irrelevant.  And, again,

 5       attorney-client privilege and work product.

 6                    BY MR. SCHWARTZ:

 7            Q.   And I'm not trying to argue with you

 8       not to listen to your counsel.  I'm just making sure

 9       I have a record that you're going to follow your

10       counsel's instruction.

11            A.   I have answered your question.  My

12       counsel has instructed me to not discuss it any

13       further.

14            Q.   Okay.  You'll follow that instruction,

15       correct?

16            A.   Yes.

17            Q.   Okay.

18                    MR. KRESS:  Steve, maybe you can follow

19       this and it's not really an instruction, but I need

20       to use the restroom.  Can we take another ten

21       minutes?

22                    (Recess taken.)

23                    BY MR. SCHWARTZ:

24            Q.   Ms. Kress, during this break or any of

25       the other breaks, have you had any substantive
```

1    conversations about the substance of your testimony

2    with your counsel and husband, Mr. Kress?

3            A.   No.

4            Q.   Going back to your objection that was

5    marked as Exhibit 4, on page 8, do you see in the

6    third full paragraph at the end of the citation of

7    the first couple cases, your objection states,

8    "Here, the class members' interest are in receiving

9    the maximum benefit that can be achieved through

10   either litigation or settlement."  Do you see that?

11           A.   Yes.

12           Q.   And you stand by that statement,

13   correct?

14           A.   Yes.

15           Q.   That's generally a true statement for

16   all litigation, fair?

17           A.   Yes.

18           Q.   For people who suffered overheating

19   events, do you believe that the compensation that's

20   been negotiated for those people in this case is the

21   maximum benefit that could have been achieved by

22   settlement or litigation?

23           A.   I do not believe that it is in an

24   appropriate format.  I do not believe that they

25   should have to spend more money with the same

```
 1    company in order to realize part of the recovery.

 2            Q.   Okay.  Let's make sure we're on the

 3    same page.  We're talking about people who suffered

 4    overheating events, had out-of-pocket damages.  You

 5    understand the settlement provides them

 6    reimbursement for those, correct?

 7            A.   For their out-of-pocket expenses.

 8            Q.   And you also understand if they

 9    purchased a new dishwasher it provides, I believe,

10    up to $300 as reimbursement?

11            A.   Which they have to purchase the new

12    dishwasher in order to get that $300 benefit.

13            Q.   Do you understand that that's for

14    people who had an overheating event in the past and

15    then went and purchased before the settlement a

16    replacement dishwasher because the dishwasher no

17    longer worked because the circuit board was fried?

18            A.   Yes, they had to expend money in order

19    to receive that benefit.

20            Q.   Okay.  Were those overheating event

21    folks, do you believe that the amount that is

22    available for them in this settlement is the maximum

23    that could be achieved through litigation?

24            A.   I believe that that is the amount that

25    their class counsel settled for.  That's what's in
```

1    the settlement.

2              Q.   Yes, but that doesn't answer the

3    question whether you believe some better counsel

4    could have achieved some higher recovery than full

5    reimbursement of repair costs, for example.  Is

6    there some better settlement that could be achieved

7    in your view through settlement or litigation than

8    full reimbursement of repair cost?

9              MR. KRESS:  Objection.  Vague.  Calls

10   for speculation.

11             You can answer.

12             THE WITNESS:  It is the amount that has

13   been proposed.  I was not in the room to reach that

14   settlement amount.  I do know that's what the number

15   is now but they had -- the issue I have is not with

16   the fact that they are receiving compensation.

17             The problem I have is that in these

18   instances, both for the nonevent class members and

19   the class members who had a fire event, that they

20   are required to either expend money out of their

21   pocket in the future or they have already expended

22   that money and they're now being reimbursed.  That's

23   the problem I have.

24        BY MR. SCHWARTZ:

25             Q.   So are you saying that you don't have a

1    problem with the fact that full reimbursement of

2    documented repair costs is a maximum benefit that

3    can be achieved for litigation of settlement, it's

4    just that they had to actually have spent that money

5    for repair costs in order to be eligible?

6              A.   They had to purchase a new dishwasher,

7    pay for the installation of the new dishwasher, and

8    go through the time and trouble of having to get a

9    new dishwasher.  They are being compensated for the

10   fact that they had actual damages, and on top of

11   that they're being compensated for the fact that

12   they had to replace the product that caught on fire.

13             This -- in the class members who had an

14   actual fire event, their situation is different

15   because they have actual recordable damages.

16   They're being compensated.  I don't like how they're

17   being compensated.  I do believe they are entitled

18   to compensation.  The dollar amount of that

19   compensation is for someone other than me to

20   determine.  That's what you pay experts for.

21             Q.   And again just so I understand your

22   objection because it's hard, frankly, to understand

23   what exactly you're testifying here.  If someone had

24   one these dishwashers, they had an overheating

25   event, they paid $350 for the service person to come

1      in and replace their control board and fix the

2      dishwasher so it was working again and that was in

3      Whirlpool's records.

4                  And those people through the expedited

5      prequalified process got a $350 check in this case,

6      are you -- are you claiming as part of your

7      objection that they haven't received the maximum

8      benefit that could have realistically been achieved

9      through settlement or litigation, or are you saying

10     that that person should get an active settlement?

11     What are you saying here for your objection for that

12     person?

13         A.   I'm saying that is not the only thing

14     they are receiving, that's one.  And two, whether or

15     not those folks who experience this event had to go

16     through the trouble of having someone come out,

17     service their dishwasher, and then live with the

18     dishwasher that could potentially catch fire, if

19     they are satisfied with that.

20                 That doesn't apply to me.  I cannot

21     speak for them.  I can only speak for me.  And I am

22     not one of the folks who had an overheating event.

23     I do not like the format in which they are able to

24     recover, but that is the format in which it is

25     presented.

1           Q.   Based on all of your legal experience,

2     do you believe that you or your husband or some

3     other lawyer could get a better recovery for someone

4     who has a dishwasher that has an overheating event,

5     paid $350 for a serviceman to repair it, and get

6     $350 of compensation, or are you saying this part of

7     the case is not your situation so you're really

8     focused on the people in the class who only had no

9     overheating event?

10          A.   I am focused on the two things that I

11    objected to.  I objected to the way the purchase of

12    the website was handled and the way it is tied to

13    the settlement, and I objected to the coupons.

14    That's what I'm focused on, the two things that are

15    the items that I objected to.

16          Q.   Okay.  So it sounds like that for the

17    relief that's available for the people who suffered

18    overheating events, that's not what your objection

19    is focused on; is that fair?

20          A.   Correct.

21          Q.   Let's go to page 9.  And in the middle

22    of the first paragraph, the first incomplete

23    paragraph, about five lines down your objection

24    states, "Class Counsel has demonstrated that they

25    are willing to sell out the Class Members, who each

```
1    are not scheduled to receive any funds, while the

2    Named Plaintiff and perhaps other persons are

3    earmarked for distributions for $100,000 for a

4    website that had no value to Defendant once this

5    lawsuit is concluded."  Do you see that?

6              A.   Yes.

7              Q.   And you authorized your attorneys to

8    file this objection saying that class counsel,

9    meaning me and my co-counsel, sold out the class?

10   That's what you wrote in your objection, right?

11             A.   Yes.

12             Q.   And that's what you believe, that I

13   sold out the class and all of my co-counsel?

14             A.   Yes, I do.

15             Q.   And what is the basis for your

16   statement that I have sold out the class?

17             A.   I think that you overreached.  You

18   tried to do something you were unable to pull off

19   and you're trying to recover.  Because there are

20   multiple years' worth of your time and other

21   people's time in this lawsuit and you're trying to

22   make the best of it.

23             Q.   What do you mean by class counsel

24   overreached?

25             A.   I do not believe that the lawsuit
```

 1    should have been filed on behalf of 18 million

 2    dishwashers.  And I believe that there was another

 3    lawsuit that did not go well, which led class

 4    counsel to realize they needed to settle this

 5    lawsuit while they could.  It's referenced in

 6    defendants' objection to your attorneys' fees.

 7         Q.   And what was the other lawsuit that you

 8    think -- well, first of all, did you see the

 9    defendants' objection before you filed this

10    objection of yours?

11         A.   I do not remember what order I saw them

12    in.

13         Q.   Okay.  Theirs was filed after yours was

14    filed, so I'll just represent to you theirs was not

15    filed beforehand.

16              When you filed this objection, did you

17    have a view that there was some other lawsuit that

18    did not go well that -- that had a factor in this

19    settlement?

20         A.   At that time I did not know that.  I

21    just knew that the amount of attorneys' fees being

22    asked was grossly disproportionate to the amount of

23    monetary relief being received by all of the named

24    and unnamed class members.

25         Q.   Well, your prior answer you said that

1    the reason why class counsel sold out the class was

2    because they overreached in bringing too big of a

3    case and some other lawsuit didn't go well.  So are

4    those the reasons why you wrote this objection and

5    filed this objection saying class counsel sold out

6    the class, or is there some other reason that was on

7    your mind when you wrote this?

8           A.   I believe finding out about the

9    additional lawsuit only supplemented my feeling that

10   class counsel is trying to recover years' worth of

11   time they invested in a lawsuit that they know is

12   not going to go well if they don't settle.

13          Q.   So is it your view then that -- that

14   there were very substantial risks that class counsel

15   were going to be successful if this case were

16   litigated instead of settled?

17          A.   I do not believe that this case would

18   have been successful if it had not been settled.  I

19   believe that defendants would have prevailed.  But

20   as in any lawsuit, you don't know what the judge is

21   going to do on any given day until after he or she

22   has done it.

23               So whenever there is an opportunity to

24   settle a lawsuit, it usually is in the best interest

25   of everyone involved to settle it.  Do I agree with

```
 1    how it was settled?  No.  But I was not there in the
 2    room.
 3              Do I think that there is a settlement
 4    that could have been reached that would have been
 5    more beneficial to the class?  Yes.  Do I think that
 6    by following the guidelines in -- I'm going to get
 7    the acronym wrong.  What's the acronym for the class
 8    action guide?
 9              MR. KRESS:  I don't know what you're
10    talking about.  The pocketbook?
11              THE WITNESS:  No, the one --
12              MR. KRESS:  Federal guide?
13              THE WITNESS:  The one that gives advice
14    to judges on the class actions, including the
15    information about coupons and in the very limited
16    instances where they should be.  It's referenced in
17    a bunch of places.  Where's my -- I'm sorry.  I lost
18    my train of thought.
19              Do I think that it should have been
20    done differently?  Yes.  Do I think that there were
21    available resources that direct class attorneys who
22    are settling lawsuits to do it differently?  Yes.
23    Do I think that attorneys' fees in cases such as
24    these should be proportional to recovery for the
25    class?  Yes.
```

```
 1                 When you add that all together, a
 2      handful of people get monetary compensation.  Class
 3      counsel gets what they have asked for, substantial
 4      monetary compensation, and the rest of the class
 5      basically gets the equivalent of buying it on sale.
 6                 BY MR. SCHWARTZ:
 7            Q.   Are there any other reasons why you
 8      believe that class counsel sold out the class
 9      members in this case which you stated we would have
10      lost if it went to trial?
11            A.   I think that summarizes it.
12            Q.   Do you believe that you have any
13      responsibility to the other absent members in the
14      class as your role as objector, or do you believe
15      that you're just filing the objection to represent
16      your specific individual interests?
17            A.   As an objector I have no duty to the
18      other class members.  Can the other class members
19      benefit from my objection if the Court sees fit to
20      take into account what I have objected to?  Yes.
21            Q.   Do you believe you have any
22      responsibility whatsoever to protect the interests
23      of other class members in light of the fact that you
24      have filed this objection?
25            A.   No, that's your job.  You're class
```

 1   counsel.  My job is to bring to the attention of the

 2   Court the fact that there is a conflict of interest

 3   between the named plaintiff and his sole remedy, and

 4   I mean that in the sense that it is the remedy that

 5   he exclusively receives, and when class counsel

 6   switches gears from defending the lawsuit that they

 7   have brought to seeking fees and receiving those

 8   from the defendant.

 9        Q.   Well, you seem very willing to talk

10   about what the responsibilities are of class

11   counsel, but I'm asking about what you believe your

12   responsibilities are.  So let's try this again.

13             Do you believe that you had any

14   responsibility whatsoever to the absent class

15   members in light of the fact that you have filed

16   this objection?

17             MR. KRESS:  Objection.  Asked and

18   answered.

19             Go on ahead.

20             THE WITNESS:  I'll say this again.  I

21   have no duty to the class.  As an objector, I have a

22   right to bring to the Court's attention problems I

23   have with the settlement; that does not create a

24   duty for me.  You as class counsel always have a

25   duty.

1              You have a duty to the class as a

2    whole, and when you are negotiating on behalf of one

3    individual out of the class to the detriment or not

4    of the class members, it really doesn't matter.

5    It's still a conflict of interest.

6              You can't negotiate on behalf of one

7    individual who happens to be a member of the class

8    for a remedy that is exclusive to him and represent

9    the interest of everyone else in the class.

10        BY MR. SCHWARTZ:

11        Q.   If you achieve through this objection

12   zero benefit for the class, do you believe it would

13   be appropriate if you or your counsel were to file

14   an appeal for you and your counsel to ask for and

15   receive money that goes just to you and your counsel

16   but does not provide any corresponding benefit to

17   the class to dismiss the appeal?

18             MR. KRESS:   Objection.  Assuming facts

19   not in evidence.  Calls for speculation and may

20   invade work product and attorney-client privilege.

21   You're asking about speculating about an appeal, if

22   it were to occur, whether or not someone would ask

23   for money.

24             And, you know, if -- subject to those

25   objections, if you believe you can answer, go on

```
 1    ahead.
 2              THE WITNESS:  I believe that I have a
 3    right to file an objection.  I have filed that
 4    objection.  At this point in time, I do not believe
 5    it is appropriate to determine if compensation
 6    should be given to my attorneys.  That's a decision
 7    the Court makes.
 8         BY MR. SCHWARTZ:
 9         Q.   So are you saying that your attorneys
10    can't receive any compensation in this case unless
11    it's approved by the judge?
12         A.   I believe so.
13         Q.   You testified a lot about lawyers,
14    class action lawyers, and maybe I guess me who you
15    believe should be paid based on their success and I
16    guess get nothing if they have no success.  Do you
17    similarly believe if you and your lawyers have zero
18    success in either changing the settlement or getting
19    any extra benefits for the class or to appeal the
20    settlement, do you believe you or your lawyers
21    should still be entitled to some payment?
22         A.   I believe it is up to the Court to
23    determine if and who receives compensation.  I have
24    not said that you do not receive -- you are not
25    entitled to any compensation.  I have said I have a
```

```
 1    problem with the gross disparity between what you're
 2    asking for and the actual monetary relief realized
 3    by the class.
 4              And I realize that, you know, in
 5    California rates are a little bit different than
 6    here in the midwest.  But these rates are pretty
 7    high by any standard.
 8              And as an attorney who is used to
 9    having to justify the work performed, particularly
10    if that is paid by someone else, I'm used to people
11    having to look at my bill because part of domestic
12    relations is asking the opposing counsel to have
13    their client pay for my bill.  So I'm used to having
14    to justify my hourly rate and what went in.
15              There's a lot of hours in this case.
16    Who billed them, how much they billed them for,
17    whether or not that was the appropriate level of
18    billing for the work that was being done, these are
19    all factors that have to be determined by the Court.
20    There are protocols that we have to follow for that.
21              The Court has to find your hourly rate
22    reasonable.  It has to find what you have done, the
23    amount of hours put in, reasonable.  There's a
24    reason for that.  It's a safeguard.  If the Court
25    decides this is what you're entitled to, that's why
```

```
 1    they're there.

 2              Q.   Going back to your testimony about the

 3    Court approving all payments in this class action

 4    for lawyers, including objectors' counsel, including

 5    your own, do you believe it would be improper for

 6    you and your lawyers to accept money that is not

 7    disclosed to the court, not disclosed to the class,

 8    not disclosed to anyone publicly in exchange for

 9    some resolution of your specific objection, whether

10    or not it provides any benefit to the class?

11              A.   That's -- there's multiple chunks in

12    what you just asked me.

13              Q.   Let me break it down then.

14              A.   Break it down.

15              Q.   That's a fair statement, so I'll break

16    it down.

17                   In terms of transparency, you agree

18    that as class counsel, and also for Mr. Chambers and

19    the other class representatives, you believe there

20    should be no payments to the class counsel or to the

21    class representatives or to Mr. Chambers unless

22    that's disclosed to the Court and approved by the

23    Court, correct?

24              A.   Correct.

25              Q.   And I believe you also previously
```

```
 1     testified, in fact you did previously testify, that

 2     you believe that there should be similar

 3     transparency and Court involvement with respect to

 4     payments or fees for objectors' counsel, correct?

 5          A.   Yes.

 6          Q.   And so now you would also agree that

 7     you think it would be highly improper, very improper

 8     for class counsel or the class representatives for

 9     Mr. Chambers to be secretly paid money out of the

10     review of the Court, out of the review and knowledge

11     of the class members, and held in secret.  That

12     would not be appropriate in your view, correct?

13          A.   Correct.

14          Q.   And you similarly believe that it would

15     be inappropriate to have objectors' counsel such as

16     your counsel in this case or other objectors'

17     counsel be paid secretly out of the view of the

18     Court or class members and held confidential to

19     resolve objections; is that fair?

20          A.   The caveat I'm wondering about is when

21     you say that they're being paid, paid by whom?

22          Q.   Either defendants' or plaintiffs'

23     counsel.

24          A.   So I believe there should be

25     documentation of fees that are paid.
```

```
 1              Q.   When you say "documentation," you mean

 2     no secret payments; it's got to be disclosed to the

 3     Court.  You think that's the appropriate procedure

 4     for transparency purposes, for objectors' counsel

 5     just like class counsel and the class

 6     representatives; is that right?

 7              A.   Do they have to be approved by the

 8     Court?  Yes.

 9              Q.   And approval by the Court means

10     disclosure to the Court?

11              A.   Well, I don't know how they would

12     approve them if they didn't know they were there so,

13     yes.

14              Q.   Correct.  And therefore it sounds like

15     that as a matter of principle you believe secret

16     payments to either objectors' counsel or class

17     counsel or class representatives are improper,

18     correct, in class actions?

19                   MR. KRESS:  I'm just going to object to

20     the characterization of the term "secret payments."

21     I think that's vague.  Calls for speculation.  Maybe

22     you can rephrase it, Steve.

23                   MR. SCHWARTZ:  I'll make sure there's

24     no ambiguity.  "Secret payments" meaning held

25     confidential, not disclosed to the Court, not
```

```
 1    disclosed to the class members.

 2                 THE WITNESS:  Well, I think lumping

 3    those all in together, just because something is a

 4    confidential settlement does not mean it is not

 5    disclosed to the Court.

 6            BY MR. SCHWARTZ:

 7            Q.   Right.  My question is if it's not

 8    disclosed to the Court or class members, also

 9    otherwise held confidential.  It sounds like you

10    believe it's improper whether there be any secret

11    payments in class actions to objectors' counsel,

12    objectors, class counsel, and class representatives;

13    is that correct?

14            A.   I really don't like the phrase you keep

15    tossing out with secret payments.  Can there be

16    settlements reached that the Court approves that are

17    confidential?  Yes.  Do I think that a -- one law

18    firm should write another law firm a check off the

19    books?  No.  But should things be able to be

20    confidential?  Yes.

21            Q.   But payments that are made to either

22    class counsel, class representatives, objectors, or

23    objectors' counsel can't be held secret and

24    confidential from the Court in your view; is that

25    fair?
```

1          MR. KRESS:  I'm just going to object

2     again.

3          THE WITNESS:  You keep --

4          MR. KRESS:  Vague and speculative.  I

5     mean, a check written to class counsel for what

6     purpose?  Or class counsel writing a check to who

7     for what purpose?  Just I think it's too general,

8     Steve.  I'd like you to narrow the question.

9          BY MR. SCHWARTZ:

10         Q.   Sure.  For fees paid as a result of

11    work done in connection with class actions to

12    objectors' counsel and class counsel and for money

13    payments made to class representatives and to

14    objectors, those kinds of payments in your view

15    cannot be properly made unless there's some

16    disclosure to the Court; is that fair?

17         A.   Yes.

18         Q.   And you also believe it would be

19    improper to have such payments made unless there is

20    disclosure to the class; is that also correct?

21         A.   By "disclosure to the class," what are

22    you talking about?  It being part of the record that

23    a settlement was reached by -- I mean, what do you

24    mean by "disclosure to the class"?

25         Q.   Sure.  Let me help you out with that

1    one.  You believe that the amount of fees that class

2    counsel gets in this case as ultimately awarded by

3    the judge, class counsel -- class members are

4    entitled to know how much that payment was, correct?

5         A.   Yes, the rules require that.

6         Q.   Do you believe that class members are

7    also entitled to know the amounts that are paid to

8    objectors' counsel?

9         A.   I believe that they have to be approved

10   by the Court.  I do not -- to the best of my

11   knowledge, the rules do not require that.  It does

12   require that fees be found reasonable by the Court.

13        Q.   Do you believe it makes sense that

14   payments to objectors' counsel for fees in class

15   actions should be disclosed to the class?

16             MR. KRESS:  Objection.  Asked and

17   answered.

18             Go ahead.

19             THE WITNESS:  I think that the rules

20   should be followed, so if the rules say that

21   something has to be disclosed, and I'm making a

22   distinction between disclosed and published to the

23   class.  If the rules say they need to be disclosed,

24   they should be disclosed.

25             I do know that the rules require the

```
 1    Court to approve payments, including settlements,

 2    and as long as the Court approves a settlement,

 3    whether that is for payments to the class, payments

 4    to the class members, payments to experts, payments

 5    to any of the multiple categories of attorneys who

 6    were involved, as long as the Court has approved

 7    those documents, the parties have fulfilled their

 8    obligation.

 9         BY MR. SCHWARTZ:

10         Q.   Let's talk about fees in this case.

11    Are you familiar with provisions that are generally

12    class actions, whether it's an agreement between

13    class counsel and defendants, that class counsel

14    will receive the amount of fees awarded by the Court

15    up to X dollars and the defendants will not object

16    to that amount?  Are you familiar with that which is

17    called a clear sailing agreement?

18         A.   I believe that they object -- they will

19    not object to the payment of attorneys' fees.  I do

20    not believe that it says they will not object to the

21    amount of the attorneys' fees.  But in general in

22    principle, yes, I am aware of what you're talking

23    about.

24         Q.   Okay.  Just take it away from this case

25    and talk about most class actions.  It's your
```

```
 1    understanding that generally in class settlements

 2    there's an agreement in class counsel, defense

 3    counsel, that class counsel will receive fees up to

 4    a maximum of some amount and the defendants will not

 5    object to the payment even if they have to pay that

 6    amount?  You're familiar with those kinds of

 7    settlements?

 8              A.   Yes.

 9              MR. KRESS:  Objection.  Vague.  Calls

10    for speculation.

11              THE WITNESS:  Just move this along.

12              Yes, I'm familiar with the concept that

13    you are discussing.

14         BY MR. SCHWARTZ:

15              Q.   Okay.  And do you understand that in

16    this case there's been a different arrangement on

17    attorneys' fees that there's been no agreed-upon

18    amount between defendants and class counsel and we

19    decided that we will just have a litigated

20    proceeding that's adversarial and the judge will

21    decide with everyone trying to fight their

22    respective positions.  You understand that process,

23    correct?

24              A.   Yes.

25              Q.   Do you believe that is an appropriate
```

```
 1    process through which to determine the appropriate

 2    fees, that adversarial process?

 3          A.    Yes.

 4          Q.    And you're not objecting to that

 5    adversarial process, are you?

 6          A.    No, that's the mechanism by which fees

 7    in a case like this are settled.

 8          Q.    Well, generally actually they're not

 9    contested proceedings in these kind of cases.  You

10    understand that this contested fee proceeding is

11    very unusual in a national consumer class action.

12    Don't you understand that it's very unusual?

13          MR. KRESS:  Objection.  Vague.  Calls

14    for speculation and opinion.

15          But go ahead.

16          THE WITNESS:  In a case where the

17    primary relief for the gross majority of the class

18    members is a coupon, there are procedures outlined

19    by which attorneys' fees should be determined.  In

20    this case that has resulted in an adversarial

21    proceeding where class counsel gets to prove they're

22    entitled to what they're asking for and defendants

23    can try and challenge the amount of time, amount of

24    billing rate, and multiplier.

25          BY MR. SCHWARTZ:
```

```
1              Q.   Ms. Kress, you understand that it is

2       the defendants, Whirlpool and Sears, who will pay

3       the attorneys' fees that are awarded by the Court,

4       correct?

5              A.   Yes.

6              Q.   And since they're paying those

7       attorneys' fees, would you agree that they have

8       every incentive in the world to try to fight as hard

9       as possible to keep those fees as low as possible?

10             A.   Yes.

11             Q.   And I think you mentioned that you read

12      at least once, maybe twice, defendants' opposition

13      to the fee for the class?

14             A.   Yes.

15             Q.   Would it be fair to say there's no

16      evidence of collusion of the competing agrees on the

17      fees and this is going to be a hard-fought,

18      vigorous, arm's-length fight before the Court as to

19      what the appropriate amount of fees is between

20      Whirlpool and Sears on the one hand and class

21      counsel on the other?

22             A.   Yes.

23             Q.   Do you think that Whirlpool and Sears

24      did the best job that reasonably good lawyers or

25      maybe even exceptional lawyers could do presenting
```

```
1    their position on fees?

2              MR. KRESS:  Objection.  Asked and

3    answered.

4              But go ahead.

5              THE WITNESS:  I believe that they have

6    made some valid arguments as to what would be

7    reasonable fees in this case.

8         BY MR. SCHWARTZ:

9         Q.   And based on your review of their

10   brief, do you reach the conclusion these are good

11   lawyers who are doing the best job possible to argue

12   Whirlpool and Sears' position on the fees?

13        A.   I believe they are doing an adequate

14   representation of their client, yes.

15        Q.   And would it be fair to say that unlike

16   other class action cases where the defendant is not

17   coming in and voicing an objection to fees and the

18   amount of fees, that in this case because of a

19   contested process that Judge Olguin will have a very

20   rich adversarial record to evaluate in deciding what

21   the proper amount of fees is?

22        A.   I believe that the adversarial nature

23   of this proceeding is directly tied to the fact that

24   class counsel asked for what I believe to be an

25   outrageous amount of fees, and if they had not
```

1    presented that number for the fees, we don't know

2    what would have happened.

3        Q.   Well, you realize that your husband and

4    his co-counsel filed a lot of objections basically

5    saying that -- contending instances about motions in

6    their view that class counsel fees are outrageous?

7        A.   Just because something happens more

8    than once doesn't mean it's not true in each

9    instance.

10       Q.   Sure.  Do you think Whirlpool and Sears

11   forgot to make any arguments that they should have

12   made in terms of trying to fight for the lowest fee

13   possible?

14            MR. KRESS:  Objection.  It's vague.

15   Calls for speculation about a transaction.

16            MR. MYERS:  Object to the implication.

17            THE WITNESS:  He is still there.

18            I believe that the counsel for

19   Whirlpool and Sears are doing an adequate job

20   representing their client.  They're not my lawyer.

21       BY MR. SCHWARTZ:

22       Q.   Are you satisfied that there was no

23   collusion between class counsel and Whirlpool

24   regarding the competing fee positions or the

25   procedure to have fees decided in this case?

1          A.    Do I believe that class counsel and

2    defendant's counsel are not colluding?  I do not

3    believe that class counsel and defendants' counsel

4    are colluding in this case.  No.

5          Q.    Okay.  And in terms of the

6    non-collusive nature of the relationship between

7    class counsel and Whirlpool, would you agree that

8    applies to just the fees or it includes the fees and

9    the settlement negotiations?

10               And to put it differently, you already

11   said you don't believe the fee issue was collusive.

12   Do you believe that Whirlpool and class counsel

13   colluded in connection with the settlement of the

14   negotiation and terms, or do you believe that that

15   was also a -- an adversarial fight where each side

16   fought without colluding with each other?

17         A.    I do not believe there was collusion,

18   because if there was collusion it probably would

19   have been a better deal.

20         Q.    I'm sorry, I don't understand your --

21         A.    No.

22         Q.    -- your testimony.  Let me -- let me

23   just make sure I flush this out because you may have

24   misspoken.

25               You're not saying if Whirlpool had

```
 1    colluded with class counsel, Whirlpool would have
 2    agreed to a better deal for class members, are you?
 3              A.   Well, that's typically the result of
 4    collusion.  But I do not believe that the attorneys
 5    representing both sides in this case have colluded
 6    with each other.
 7              Q.   Okay.  And it's also fair to say
 8    there's no collusion between either class counsel or
 9    Whirlpool on the one hand and the counsel
10    representing you or any other objector in the
11    other -- objection on the other hand in this case,
12    fair?
13              A.   Correct.  Correct.  We have not
14    colluded with anyone.
15              Q.   Do you know whether or not the current
16    iteration of dishwashers manufactured by Whirlpool
17    and sold by Whirlpool and Sears have the same
18    components that are the subject of a defect in this
19    case related to overheating of them?
20                   MR. MYERS:  Object to the form.
21                   THE WITNESS:  I'm sorry, you're going
22    to have to rephrase that.  I'm not sure what you're
23    asking me.
24                   MR. SCHWARTZ:  Sure.  And I'll let you
25    know where I'm going.
```

```
 1                THE WITNESS:  Okay.

 2           BY MR. SCHWARTZ:

 3           Q.   This case is about whether the class

 4      dishwasher has components that are defective and

 5      create an inappropriate risk of an overheating

 6      event.  My question to you is:  With respect to the

 7      current iteration of dishwashers manufactured by

 8      Whirlpool for which class members can use the rebate

 9      to purchase, are you aware that those dishwashers

10      did not have the same components and don't have the

11      same safety defects?

12                MR. MYERS:  Same objection.

13                THE WITNESS:  I do not know one way or

14      the other.

15           BY MR. SCHWARTZ:

16           Q.   Do you have any basis to dispute the

17      evidence that was put in the record in connection

18      with the settlement approval that in fact the

19      current version of Whirlpool-manufactured

20      dishwashers available for sale do not have the same

21      overheating-event-related components?  Do you have

22      any basis to dispute that?

23           A.   I have no basis to dispute the fact

24      that they have changed suppliers for parts.

25           Q.   There are safety warnings and other
```

```
 1   safety issues that are part of the settlement.  Do

 2   you have any objection to those?

 3              MR. MYERS:  Object to the form.

 4              THE WITNESS:  Do I object to the

 5   stickers?  No.

 6         BY MR. SCHWARTZ:

 7         Q.   Do you object to the stickers, training

 8   manuals, any of the aspects that are related to

 9   trying to promote safety in terms of the operation

10   and the servicing and repair of the -- of the class

11   dishwashers?  Is that something you object to?

12         A.   I do not object to it but I do not

13   believe that it adds value to the settlement.

14         Q.   And what is your basis for the

15   statement that it does not add value?

16         A.   The fact that the defendant is making

17   its own repair people aware that they should not

18   bypass safety, I do not believe that that adds

19   value.  The same way that I would not believe that

20   telling someone that they need to obey the law adds

21   value.

22              The manual says they're supposed to be

23   repaired a certain way.  You're supposed to repair

24   it a certain way.  If employees or independent

25   contractors chose to not follow the manual, I'm not
```

1    sure how adding extra warning to the manual is going

2    to make them suddenly comply.

3         Q.   Well, I don't want to pry and ask you

4    whether you have children.  But from my parenting

5    with my children, I know sometimes I can say

6    something once and there's a need to repeat certain

7    things in order to have them understand that it's

8    very important to do something.

9              From the material that you've read,

10   you're aware that we have alleged on the plaintiffs'

11   side that, in fact, that there was not compliance

12   with the proper safety standards and that some of

13   the thermal cutoff safety devices were being

14   disabled.  You're aware of that issue was something

15   that was litigated in this case, correct?

16        A.   Yes, I am aware.  And I'm taking note

17   that when it is in your favor, you want me to

18   acknowledge what you have said on my behalf.  But

19   when you want to attempt to use it against me, you

20   don't want to acknowledge what you have said on my

21   behalf.

22        Q.   I'm not going to respond, beyond saying

23   I disagree with what you just said, but with respect

24   to the issue of the fact that PPOs were being

25   bypassed and proper safety standards were not being

1    met, you're not saying that it was harmful to have

2    additional warnings and instructions, are you?

3           A.   No, I am not saying it was harmful.  I

4    am saying it doesn't have monetary value to the

5    class.

6                MR. KRESS:  And, Steve, if I may

7    interrupt.

8           BY MR. SCHWARTZ:

9           Q.   Do you believe it has any value to the

10   class for the safety enhancements that are part of

11   the settlement, is the value in your view zero or is

12   it just not a lot?  What is the value from your

13   perspective?

14               MR. KRESS:  Objection.  Vague.  Calls

15   for speculation.

16               But go ahead, you can answer.

17               THE WITNESS:  I do not believe the

18   defendant offering additional training or warnings

19   or stickers or anything on their own internal

20   materials that are used by their employees adds

21   benefit to the class.  I think that was something

22   that would probably be done in any case to lessen

23   their liability to future damages.

24          BY MR. SCHWARTZ:

25          Q.   So is it your view that class members

1    would be no worse off if the Court just said, "Well,

2    you don't have to do that anymore"?

3                   MR. KRESS:  Same objection.

4                   MR. SCHWARTZ:  Or --

5                   THE WITNESS:  I believe that's the same

6    question I just answered phrased in a different way.

7    The class receives no direct benefit by Whirlpool

8    putting stickers or additional language in their

9    manuals.  Whether or not the class orders them --

10   I'm sorry, whether or not the Court orders that they

11   should do that, doesn't change the rest of the

12   settlement and the basis for my objections.

13                  MR. KRESS:  Steve, I'd like to

14   interrupt.  I'd like to take another break.  We're

15   approaching the hour mark again.  I just want to

16   take another walk for about ten minutes and maybe

17   throw some money in the meter also.

18                  MR. SCHWARTZ:  Okay.  Why don't we come

19   back in about ten minutes.  We should be -- I

20   believe it will be 5:06.

21                  MR. KRESS:  Okay.

22                     (Recess taken.)

23        BY MR. SCHWARTZ:

24        Q.   So, Ms. Kress, please go to page 18 of

25   your objection, please.

```
 1            A.    Okay.
 2            Q.    And do you see in the first full
 3   paragraph, in the second sentence there's a sentence
 4   that starts with "Arguably"?
 5            A.    Uh-huh.
 6            Q.    And it talks about a dryer that catches
 7   fire.  Do you see that?
 8            A.    Yes.  And I do believe that is a typo.
 9            Q.    This case is about dishwashers, not
10   dryers?
11            A.    Yes.
12            Q.    Do you have any idea how the word
13   "dryer" got put in there?
14            A.    Besides the fact that it is a typo, no,
15   I don't know.  I have not been involved in any dryer
16   litigation.
17            Q.    Is that a mistake that you just failed
18   to catch when you reviewed your objection or
19   preauthorized it?
20            A.    Looking back there are several
21   mistakes.  There's some punctuation that I should
22   have corrected.  My professor would have been very
23   upset with me to let it go.  But, yes, apparently I
24   missed that.
25            Q.    You mentioned you're not involved in
```

```
 1    any dryer cases.  Do you know whether there have
 2    been any class actions related to fires in dryers?
 3              A.   I honestly don't know.  I try not to
 4    get involved in anything that doesn't directly
 5    concern me.
 6              Q.   Are you aware that there's a case
 7    called Roberts versus Electrolux which related to
 8    dryer fires where there's a class action settlement
 9    and your husband and Mr. Fortman and Mr. Miller
10    filed objections to that settlement?
11              A.   If you say so.
12              Q.   Well, I'm just asking if you're aware.
13              A.   I'm not disputing.  Like I said, I try
14    not to get involved.  I'm not an active member of
15    the firm.  I try not to spend my evenings discussing
16    legal matters.
17              Q.   Good for you.  Just to close the loop
18    though, my question is simply whether you are aware
19    of the objection made by your husband and his
20    co-counsel in that Electrolux case, or whether
21    you're just learning it for the first time here.
22              A.   The name sounds vaguely familiar.  I
23    wasn't involved.
24              Q.   Can you identify any objection that you
25    made to the fee request in this case that was not
```

1    made in Whirlpool and Sears filing an opposition to

2    the fee request?

3            A.   I'm sorry, are you saying that is there

4    anything in my objection that was not used in

5    defendants' -- I guess I'm not clear.

6            Q.   Maybe I did not ask a good question.

7    In terms of the objections that you have made that

8    the fee should be less than requested, can you

9    identify any arguments or points that you have

10   raised in your objection that were not also raised

11   in Whirlpool's objections?

12           A.   I do not recall if there was anything

13   that if they -- I believe my objection was filed

14   first.  But -- I believe, but I'm not certain about

15   that.  But are there things in my objection that

16   defense counsel chose not to object to; is that what

17   you're asking me?

18           Q.   I'm basically asking whether there are

19   any objections that you have made to the amount of

20   fees that you don't think are covered in Whirlpool's

21   and Sears' opposition.

22           A.   I believe they covered the same points.

23   Whether or not they presented the same points of law

24   and citations, that I don't ...

25               THE REPORTER:  I'm having technical

 1    difficulties.  Can we go off the record a moment?

 2                    (Discussion off the record.)

 3                    MR. SCHWARTZ:  Okay.  Could you just

 4    read back the last question and answer, please?

 5                    THE WITNESS:  I believe you were asking

 6    me if there was anything in their --

 7              BY MR. SCHWARTZ:

 8         Q.   Right.

 9         A.   -- objection to your fees that was not

10    in my objection.  I thought we answered that.

11         Q.   That's not my frame of reference.

12         A.   Okay.  I -- I believe that the topics

13    in my objections were also covered by them, whether

14    or not the specific points of law that we raised and

15    the case references are the same, I do not believe

16    so.  So is my objection unique from their

17    objection -- their filing?  I do believe that it is

18    different.

19                    MR. SCHWARTZ:  Okay.  I have no further

20    questions at this time.  I understand Whirlpool's

21    lead lawyer is going to have some questions.  So

22    I'll pass the baton over to him.

23                         EXAMINATION

24              BY MR. MYERS:

25         Q.   Okay.  Hi, Ms. Kress.  My name is

 1   Andrew Myers and I represent the Sears and Whirlpool

 2   defendants.  Can you hear me all right?

 3          A.   Yes.

 4          Q.   Okay.  I'm going to make this quick.

 5   You object to class counsel in this case receiving

 6   $15 million in attorneys' fees.

 7          A.   Yes.

 8          Q.   Please tell me why.

 9          A.   I do not believe that the fees are

10   proportional to the relief granted to the class.  I

11   do know in a coupon settlement such as this there is

12   a method for determining those fees that is

13   recommended, and I do not believe that is the method

14   that has been used.  That's point one.

15              Point two is I believe the hourly rate

16   that has been asserted is not necessarily

17   appropriate for all of the time for which it is

18   being asked.

19          Q.   Any other reasons?

20          A.   I think that sums it up.

21          Q.   Do you think it would be objectionable

22   if class counsel received, say, 3 million rather

23   than 15 million in fees?

24          A.   I am hesitant to put a number on it.

25   Because there are multiple factors that go into the

1    calculation of the fee request.  I am willing to

2    abide by what the Court determines is a reasonable

3    amount of fees.

4           Q.   Let me ask you another one, kind of

5    like that.  Do you believe that plaintiffs' lawyers

6    should receive more in fees than the class receives

7    in benefits?

8           A.   I believe that there is a model for

9    calculating fees in coupon cases, and I believe that

10   model should be followed.  I have not done the

11   specific math in my head on how that would come out.

12   But I believe the model to be a good one.

13              MR. MYERS:  Okay.  I have no more

14   questions.

15                    FURTHER EXAMINATION

16         BY MR. SCHWARTZ:

17          Q.   Okay.  I have just a few questions.

18   This is Steve Schwartz again.

19              In terms of rates, are you familiar

20   with cases that have been decided which have set a

21   reasonable rate in these kinds of complex national

22   class actions that are prosecuted in California

23   Federal courts and in the Central District of

24   California?  Are you familiar with any of those

25   cases regarding reasonable rates?

1          A.   I know that those cases exist.  I know

2     that in those cases the Court found those fees to be

3     reasonable relative to the attorneys who were making

4     the request.  I also know that in this particular

5     case, which is a coupon settlement, that there is a

6     model that should be followed, and if it is not

7     being followed, there needs to be a clear

8     explanation by the Court on why they chose to

9     deviate from the model.

10               I realize California is more expensive

11     than St. Louis.  That being said, there is work

12     that's done by an associate.  There's work that's

13     done by a partner.  There's work that's done by the

14     temp agency that comes in and the attorneys sit

15     around a table and review documents.

16               Those are all different hourly rates.

17     That all has to be taken into consideration.  I

18     don't believe it's appropriate that document review

19     gets billed at partner rates when it could be

20     accomplished by temp attorneys who are billing at a

21     much lower rate.

22          Q.   Yeah, I think you answered a slightly

23     different question than what I asked which was very

24     focused on rates.  So I'll ask that one again which

25     is simply you mentioned that you believe that the

```
 1    rates of class counsel were too high.

 2              And I simply asked you whether or not

 3    you're familiar with case law setting forth

 4    reasonable rates for class counsel in complex

 5    consumer class actions that are prosecuted in

 6    California Federal Court including the Central

 7    District of California?  Are you familiar with those

 8    cases that relate to appropriate rates?

 9         A.   I would say I'm not sure that this

10    falls into the same category of complex litigation

11    as the cases that you are referring to.  But I'm

12    aware of their existence, yes.

13         Q.   And are you aware that there are cases

14    in California Federal Court, including the Central

15    District, that have approved the -- not just the

16    rate at the level of class counsel here, but in fact

17    rates that are higher?

18         A.   As I said, if the Court in that

19    instance found those rates to be reasonable, that's

20    the Court's decision.  I am asking the Court in this

21    case to determine whether the rates you were asking

22    for and your co-counsel and all the folks who work

23    for the various people involved, if the Court finds

24    those rates to be reasonable.  It's a case-by-case

25    decision that has to be made every time.
```

1       Q.   Now, you mentioned that with respect to

2  the amount of the fee in response to questioning by

3  defendants' counsel, that you would abide by the

4  Court's decision and you were not going to try to

5  set a number.  When you're talking about abiding by

6  the Court's decision, you're talking about

7  Judge Olguin who's the District Court judge, or

8  you're talking about the Ninth Circuit, or you're

9  talking about the Supreme Court?  From your

10  perspective, who is the decision-maker that you're

11  willing to abide by in terms of the appropriate

12  amount of a fee?

13       A.   Well, I believe that the judge that

14  this case is in front of who in the ordinary course

15  of litigation would determine if your fees are

16  reasonable makes a ruling.  That is the -- that is

17  the ruling on attorneys' fees.

18            Whether anyone else involved will agree

19  and choose to appeal, that I cannot control.  I can

20  only say there's a process for this.  The judge is

21  going to conduct the process, and then it goes from

22  there.  If it goes up to a higher level, because

23  someone objects to the outcome of what the judge

24  says, that's not something I can control.

25       Q.   Understood.  I understood also that you

```
 1    can't control whether anyone else files an appeal.

 2    But I just want to understand what your position is

 3    since you're the objector for this specific

 4    objection.  Are you willing to abide by the decision

 5    by our District Court judge, Judge Olguin, or are

 6    you telling me that you're going to consider filing

 7    an appeals if you decide you don't like where

 8    Judge Olguin draws the line in the contested fee

 9    process?

10              MR. KRESS:  I'm going to object that I

11    think what you're getting into may be work product

12    and attorney-client privilege.

13              But still subject to that, Ms. Kress,

14    if you think you can answer, go ahead, without

15    revealing that.

16              THE WITNESS:  My --

17              MR. KRESS:  And, I'm sorry, an

18    additional objection.  You're asking for Ms. Kress

19    to speculate as to what she's going to do on a

20    future event.

21              MR. SCHWARTZ:  Sure.  And just to

22    respond to the objections because Mrs. Kress

23    testified she would abide by the Court's decision, I

24    just want to understand exactly what that testimony

25    means.
```

1            THE WITNESS:  There is a mechanism in

2      place.  I believe that there is case law and

3      recommendations on how a case like this and its fees

4      should be handled.  And am I going to tie myself

5      down and -- and say under no circumstances will I

6      object?  No, I'm not going to do that.

7            Am -- do I believe that this judge is

8      competent to make a fair decision that abides by the

9      rules that we as attorneys follow?  Yes.  Will I

10     hope that he makes a decision that I feel is fair to

11     the parties involved?  Yes.

12           Am I going to absolutely rule out

13     following any recourse I have if I feel that he has

14     for some reason not followed what I believe to be a

15     fair and reasonable outcome?  I'm not going to rule

16     anything out.  Do I intend to do that as I sit here

17     in this chair?  No.

18         BY MR. SCHWARTZ:

19         Q.   And with respect to your understanding

20     of the appropriate standards for evaluating fees in

21     this case, you talked about that in your deposition.

22     Are you an expert or are you what I would call

23     conversant as a lawyer since you don't practice in

24     the objection area?  Are you fully conversant with

25     the current standards for class action settlements

```
1    of this type, or would it be fair to say that --
2    that -- that you're not an expert lawyer in those
3    areas?
4           A.   I am not an expert.  I know there are
5    other folks who are who have produced documents that
6    should be used as guidance for this.  There's the
7    pocket guide.  There is the rules set forth in CAFA.
8    Smarter people than me have figured out how this
9    compensation should work.  I'm asking that they be
10   paid deference and that that be used in determining
11   the compensation.
12          Q.   And that I assume would also include
13   case decisions evaluating the relevant rules and
14   statutes and standards, correct?
15          A.   Yes.
16          Q.   And would it be fair to say given the
17   adversarial nature of the fee battle between the
18   defendants and class counsel, that the -- the
19   legal -- the relevant legal authorities have been
20   fully presented to Judge Olguin to assist him in
21   making his evaluation of where to draw the line in
22   this very wide disparity between what class counsel
23   believe they're entitled to and what Whirlpool and
24   Sears believes they're entitled to?
25                MR. KRESS:  Objection.  Vague.  Calls
```

```
 1    for speculation.  Possibly assuming facts not in

 2    evidence.

 3               But subject to that you can answer.

 4               THE WITNESS:  I do believe there is --

 5    let me rephrase that.

 6               Multiple things have been raised in the

 7    various pleadings by various people that should be

 8    aid the judge in making his determination.  That's

 9    why he's a judge and I'm not.

10               MR. SCHWARTZ:  Nor am I or any of the

11    other lawyers who are participating in this

12    deposition.

13               On that note of agreement, unless

14    Mr. Myers has anything else, and subject to any

15    issues that we may have on questions that you

16    refused to answer, I don't have any further

17    questions.

18               MR. MYERS:  And I have no further

19    questions.  And I have to get up and leave right

20    now, so thank you everybody for your time.

21               Ms. Court Reporter, I'd like a PTX and

22    electronic exhibits.

23               MR. KRESS:  We'll read.

24               MR. SCHWARTZ:  Okay.  And, John, we're

25    starting at 8:00 o'clock your time tomorrow,
```

1   9:00 o'clock my time.

2                    (Whereupon, signature was not

3                    waived and the witness was

4                    excused at 5:27 p.m.)

5                         --oOo--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              CERTIFICATE OF REPORTER

 2

 3              I, RENÉE COMBS QUINBY, a Registered Merit

 4     Reporter, Certified Realtime Reporter, Certified

 5     Shorthand Reporter (CA), Certified Court Reporter

 6     (MO), Realtime Systems Administrator, and Notary

 7     Public within and for the State of Missouri, do

 8     hereby certify that the witness whose testimony

 9     appears in the foregoing deposition was duly sworn

10     by me to testify to the truth and nothing but the

11     truth; that the testimony of said witness was taken

12     by stenographic means by me to the best of my

13     ability and thereafter reduced to print under my

14     direction.

15              I further certify that I am neither

16     attorney nor counsel nor related nor employed by any

17     of the parties to the action in which this

18     deposition was taken; further, that I am not a

19     relative or employee of any attorney or counsel

20     employed by the parties hereto or financially

21     interested in this action.

22              My Commission expires April 9, 2017

                 Renee Combs Quinby
23

24     -------------------------------------

25         Renée Combs Quinby, RMR, CRR, CCR #1291
```

 1      I have read the foregoing transcript of

 2   my deposition given on August 17, 2016, and

 3   it is true, correct and complete, to the best

 4   of my knowledge, recollection and belief,

 5   except for the corrections noted hereon

 6   and/or list of corrections, if any, attached

 7   on a separate sheet herewith.

 8

 9

10

11

12              _____

13              KELLY KRESS

14

15

16

17         Subscribed and sworn to

18         before me this _____ day

19         of _____, 2016.

20

21

22         _____

23         Notary Public

24

25

```
 1              E R R A T A   S H E E T

 2     I, KELLY KRESS, do hereby certify that I

 3   have read the foregoing transcript of my testimony, and

 4   further certify that it is a true and accurate record

 5   of my testimony (with the exception of the corrections

 6   listed below).

 7   PAGE  LINE              CORRECTION

 8   ____  ____    _____

 9   ____  ____    _____

10   ____  ____    _____

11   ____  ____    _____

12   ____  ____    _____

13   ____  ____    _____

14   ____  ____    _____

15   ____  ____    _____

16   ____  ____    _____

17   ____  ____    _____

18   ____  ____    _____

19   ____  ____    _____

20   ____  ____    _____

21   ____  ____    _____

22   ____  ____    _____

23   ____  ____    _____

24

25   _____            _____
     Date                    KELLY KRESS
```

| | | |
|---|---|---|
| **$** | **2:55** 50:25 | **access** 60:9 |
| | | **accomplished** 130:20 |
| **$100,000** 69:10,11,15 | **3** | **account** 100:20 |
| 70:10 73:8 74:9 | | **accurate** 53:13,24 |
| 82:12 84:21 85:12 | **3** 63:2 128:22 | 62:8,11 64:20,21 |
| 96:3 | **3,000** 67:15 | **accurately** 7:14 |
| **$15** 17:22 31:2 128:6 | **30** 62:2 | **achieve** 102:11 |
| **$20** 47:4,7,8 48:3,5 | **30-page** 59:10 63:18 | **achieved** 74:15 90:9, |
| **$300** 91:10,12 | | 21 91:23 92:4,6 93:3 |
| **$350** 93:25 94:5 95:5, | **4** | 94:8 |
| 6 | | **acknowledge** 121:18,20 |
| **$4,000** 65:23 66:14 | **4** 14:4 61:1,2 62:16, | **acronym** 99:7 |
| 71:19,21,25 72:2,12, | 21 65:17 66:2 67:24 | **action** 10:19 20:18 |
| 14 81:24 | 90:5 | 29:3,4 65:4,24 66:16 |
| **$400,000** 69:7 | | 99:8 103:14 105:3 |
| | **5** | 113:11 115:16 125:8 |
| **–** | | 134:25 |
| | **5** 13:15,20 14:1,9 | **actions** 9:23 10:23,24 |
| **--oOo--** 6:18 | 81:5 86:14 | 99:14 107:18 108:11 |
| **--ooo--** 6:1,10 137:5 | **535** 73:1 | 109:11 110:15 |
| | **5:06** 123:20 | 111:12,25 125:2 |
| **1** | **5:27** 137:4 | 129:22 131:5 |
| | | **active** 7:17,24 8:10, |
| **1** 14:4 | **8** | 11,14 88:4 94:10 |
| **10** 18:4,8,18 24:24 | | 125:14 |
| 31:1 32:8 | **8** 90:5 | **actively** 24:25 25:4 |
| **100** 53:13,24 54:4 | **8:00** 136:25 | **actual** 13:12 42:17 |
| **11** 25:12 27:14,17 | | 49:5 93:10,14,15 |
| 36:1,14 37:21 45:16 | **9** | 104:2 |
| **12** 19:20 21:21 | | **add** 100:1 120:15 |
| **14** 23:21 | **9** 95:21 | **adding** 121:1 |
| **14-year-old** 24:2 | **9:00** 137:1 | **addition** 12:5 19:10 |
| **15** 18:3,15 19:11 | | 20:10 |
| 128:23 | **A** | **additional** 18:4 98:9 |
| **18** 40:1 67:15 83:20 | | 122:2,18 123:8 |
| 97:1 123:24 | **abide** 129:2 132:3,11 | 133:18 |
| **1:44** 6:17 | 133:4,23 | **address** 71:14 |
| | **abides** 134:8 | **addressing** 71:10 |
| **2** | **abiding** 132:5 | **adds** 120:13,18,20 |
| | **ability** 41:18 53:10 | 122:20 |
| **2** 16:20,21 61:6,16 | **absent** 100:13 101:14 | **adequate** 46:15 49:2 |
| **2002** 8:6 23:18,22 | **absolute** 64:19 | 71:12 115:13 116:19 |
| 25:11 31:10 34:6 | **absolutely** 35:19 | **administrator** 19:18 |
| **2003** 8:6 | 134:12 | 20:25 21:2,6 |
| **2007** 8:16,19 | **absolutes** 64:12 67:16 | **advantage** 21:17 46:12 |
| **2013** 25:9,11 31:10 | **accept** 69:9 72:14 | **adversarial** 112:20 |
| 34:6 | 105:6 | 113:2,5,20 115:20,22 |
| **2:46** 50:25 | **acceptable** 36:25 47:5 | 117:15 135:17 |
| | | **adverse** 32:3 |
| | | **advertises** 17:3 |

**advice** 10:6 99:13
**advised** 72:16
**affected** 26:18
**affidavit** 69:24
**aforesaid** 6:14
**afternoon** 7:8
**age** 6:12
**agency** 130:14
**agenda** 70:22
**agree** 36:10 37:18,22
  38:1,4 62:20 68:6
  85:10,12 98:25
  105:17 106:6 114:7
  117:7 132:18
**agreeable** 47:19
**agreed** 6:2 30:10,24
  118:2
**agreed-upon** 112:17
**agreeing** 73:7 76:1
**agreement** 6:8 20:3
  38:22 40:10 48:9
  56:5,8,14 58:22
  82:21 83:7,8,12
  111:12,17 112:2
  136:13
**agrees** 37:5 114:16
**ahead** 8:22 34:14
  35:12 39:7 47:12
  52:20 63:25 65:18
  85:21 101:19 103:1
  110:18 113:15 115:4
  122:16 133:14
**aid** 136:8
**aligned** 40:5
**allegations** 79:2,3,4
**allege** 36:4 38:11
  42:24
**alleged** 31:13 34:7
  36:12 37:20,25 41:3
  42:7 121:10
**Allen** 26:25 29:9
**allowed** 22:16
**ambiguity** 107:24
**Amendment** 33:19
**amount** 45:23 46:24
  47:24 48:1,10,14,18,
  23 49:15,17 50:1,5,
  6,12,13 69:14 75:9
  76:2,22,23 77:19
  91:21,24 92:12,14
  93:18 97:21,22

104:23 110:1 111:14,
  16,21 112:4,6,18
  113:23 114:19
  115:18,21,25 126:19
  129:3 132:2,12
**amounts** 47:21 75:5
  110:7
**Andrew** 6:22 128:1
**answering** 33:3 65:9
  72:7
**answers** 35:18 36:21
**anymore** 123:2
**apologize** 33:6
**apparently** 29:10 37:1
  41:19 124:23
**appeal** 102:14,17,21
  103:19 132:19 133:1
**appeals** 133:7
**appears** 65:24 66:15
**appliance** 22:2,6,12
  25:21
**appliances** 23:8
**applies** 117:8
**apply** 94:20
**appraisals** 82:22
**approaching** 123:15
**approval** 56:11 59:1,
  6,10,11 69:25 81:19
  107:9 119:18
**approve** 38:17 79:6
  107:12 111:1
**approved** 19:4 62:8
  103:11 105:22 107:7
  110:9 111:6 131:15
**approves** 71:18 108:16
  111:2
**approving** 105:3
**approximately** 62:2
  67:15 69:21
**area** 10:20 134:24
**areas** 135:3
**Arguably** 124:4
**argue** 20:16 89:7
  115:11
**arguments** 115:6
  116:11 126:9
**arm's-length** 75:24
  87:10 114:18
**arrangement** 112:16
**arrived** 72:2

**aspects** 120:8
**asserted** 34:21 69:6,8
  128:16
**asserting** 86:25
**assertion** 36:7
**assertions** 53:24
**assist** 12:13 135:20
**assistance** 14:10
**associate** 130:12
**assume** 135:12
**assuming** 79:21 102:18
  136:1
**asymptomatic** 37:6
  40:25 41:24 42:12
  44:22 47:22
**attach** 17:1
**attached** 13:14 17:2
  56:13 70:1
**attacking** 46:23
**attempt** 121:19
**attempted** 43:5,8,9
**attendant** 82:22
**attention** 85:19
  101:1,22
**attorney** 7:24 9:8
  12:9 15:3 20:7 33:18
  82:15 104:8
**attorney-client** 14:13
  28:21 39:5 51:23
  52:19 54:3,19 56:21
  62:4 63:23 88:20
  89:5 102:20 133:12
**attorneys** 61:4 63:22
  89:3 96:7 99:21
  103:6,9 111:5 118:4
  130:3,14,20 134:9
**attorneys'** 32:15
  44:20,21 56:8,10
  59:14,21 74:11,13
  97:6,21 99:23
  111:19,21 112:17
  113:19 114:3,7 128:6
  132:17
**audio** 43:21
**authorities** 135:19
**authorize** 53:2
**authorized** 64:18 96:7
**avoid** 64:12 67:16
**avoided** 70:18
**award** 71:18 74:12

**awarded**  110:2 111:14
  114:3
**aware**  38:15 50:10,14
  52:22 72:25 81:12,
  14,16,21 83:5,6
  86:9,11 111:22 119:9
  120:17 121:10,14,16
  125:6,12,18 131:12,
  13
**awareness**  68:3

---

**B**

**back**  7:3 19:21 21:21
  24:22 31:5 35:18
  36:3 72:24 78:25
  90:4 105:2 123:19
  124:20 127:4
**bar**  8:11 9:4
**based**  9:8 18:15 33:17
  38:5 48:11 79:10
  87:17 88:4 95:1
  103:15 115:9
**basic**  37:9
**basically**  78:24 100:5
  116:4 126:18
**basis**  42:6 78:15,17,
  18 96:15 119:16,22,
  23 120:14 123:12
**basket**  26:24
**baton**  127:22
**battle**  135:17
**battles**  65:4
**bearing**  48:13
**beast**  80:16
**begin**  37:2
**behalf**  6:22 10:1,14
  30:10 31:19,20 34:22
  36:4 37:25 38:9,13
  39:20 41:13,20 43:1
  52:23 53:3,23 61:4
  97:1 102:2,6 121:18,
  21
**belief**  40:15
**believes**  35:23 37:5
  78:4 135:24
**beneficial**  99:5
**benefit**  17:18,22
  21:17 32:10,11,14
  45:13 46:4,25 47:19
  68:9 82:10 90:9,21

**benefited**  82:17
**benefits**  63:7,10
  82:14 103:19 129:7
**big**  98:2
**bill**  78:11 104:11,13
**billed**  83:24 104:16
  130:19
**billing**  104:18 113:24
  130:20
**bit**  7:4 64:9 71:19
  104:5
**block**  58:6,18
**board**  91:17 94:1
**bold**  64:10
**books**  108:19
**Bosch**  28:8
**bothered**  86:20 87:13
**bottom**  24:5 65:20
  67:24 86:14
**bound**  19:14 38:8,18,
  21
**brand**  26:20,22 28:5
**brand-new**  52:10
**break**  50:20,23 54:22
  89:24 105:13,14,15
  123:14
**breaking**  26:4 29:15
**breaks**  89:25
**bring**  101:1,22
**bringing**  98:2
**broad**  39:23 40:15
**brought**  32:17,18
  101:7
**bulk**  62:14 66:25
  71:3,8 75:16,17
**bunch**  32:12 81:24
  84:20 99:17
**business**  63:11 78:10
**buy**  18:13,14 22:18
  27:21 28:5 46:20
  47:6
**buying**  23:5 100:5
**bypass**  120:18
**bypassed**  121:25

**91**:12,19 93:2 94:8
  100:19 102:12,16
  105:10 122:21 123:7

---

**C**

**CAFA**  135:7
**calculating**  129:9
**calculation**  129:1
**California**  104:5
  129:22,24 130:10
  131:6,7,14
**call**  40:25 47:16
  134:22
**called**  111:17 125:7
**calling**  54:6 55:21
**calls**  74:20 76:9 77:7
  78:4 84:7 92:9
  102:19 107:21 112:9
  113:13 116:15 122:14
  135:25
**car**  22:19,21 23:1
**careful**  28:21
**carefully**  13:25
**case**  6:14 7:10 10:7
  11:12,20,21 12:6
  14:23,24 15:22 16:16
  18:21,22,25 19:10
  20:25 23:15 27:25
  28:25 33:13 34:2
  40:14 45:14 46:23
  55:19 61:4,18,23
  62:11,24 65:22 66:13
  73:1 74:7 75:6,10,12
  77:4 80:21 82:5,16,
  19 87:17 90:20 94:5
  95:7 98:3,15,17
  100:9 103:10 104:15
  106:16 110:2 111:10,
  24 112:16 113:7,16,
  20 115:7,18 116:25
  117:4 118:5,11,19
  119:3 121:15 122:22
  124:9 125:6,20,25
  127:15 128:5 130:5
  131:3,21 132:14
  134:2,3,21 135:13
**case-by-case**  131:24
**cases**  11:1 12:22 90:7
  99:23 113:9 115:16
  125:1 129:9,20,25
  130:1,2 131:8,11,13
**cash**  50:13 63:9,15
  67:20

catch 32:11 36:20
  94:18 124:18
catches 124:6
categories 111:5
category 131:10
caught 93:12
caution 64:4
caveat 106:20
Central 129:23 131:6,
  14
certificate 46:5,19,
  20 47:2,3,6,8,15,22
certification 13:14,
  19,23,25 14:8,11,22
  15:25 16:20 28:22
  55:12
Certified 6:5
chair 31:4 134:17
challenge 113:23
Chambers 61:17,22
  62:10,13,16,23 65:23
  66:1,15,17 68:1,9,17
  69:1,6 70:10,15
  71:1,2,6 72:24 73:3,
  5,7,13 74:4 75:25
  76:5,12,24 79:2
  81:7,10 82:2,12
  83:16 84:12 85:2,6,
  8,24 87:2,6,8,9 88:2
  105:18,21 106:9
Chambers' 61:12 69:24
  71:11 73:17,25 74:10
  75:2 81:13,17 83:1,
  25
change 36:6 37:24
  73:19 77:11 78:9
  81:23 84:20 123:11
changed 119:24
changing 37:23 103:18
characteristic 71:14
characteristics 71:3
characterization
  107:20
characterize 45:11
characterized 47:15
check 94:5 108:18
  109:5,6
children 121:4,5
Chimicles 6:20 7:9
choice 38:19 57:11

choose 19:12 132:19
chose 20:8 26:21
  120:25 126:16 130:8
chronological 59:5
chunks 105:11
circuit 91:17 132:8
circumstances 79:8
  134:5
citation 90:6
citations 126:24
claim 18:25 43:10
  45:20 63:8
claiming 63:6 94:6
claims 20:25 40:5,6
clarify 52:6
clarity 25:3,10 40:13
  87:22
class 6:20 9:22,23
  10:18,23,24 11:4
  15:3 17:7,19 18:20
  20:18 21:18 28:13
  29:3,4,17,21,22,23
  30:22,23 31:3,21
  32:13,19 38:15
  39:20,21,23,24 40:2,
  6,9,14,15,21 41:11,
  16 42:8,9,12,16
  44:13 47:20 48:15,24
  49:2,14 50:10 61:11,
  17,22 62:10,13,23
  63:8,9,11,14 65:4,24
  66:16,17,21,22,25
  67:3,8 68:9,12,14
  70:12,17,22,24 71:3,
  8,12,15,16,21,25
  73:6,7,24 74:3,14,18
  75:13,15,22 76:6,7,
  25 77:3,23 78:1,6
  79:6,10 83:13,24
  84:2,4,8,22,25 85:4,
  7,15 86:5,6 87:1,2,
  19 90:8 91:25 92:18,
  19 93:13 95:8,24,25
  96:8,9,13,16,23
  97:3,24 98:1,5,6,10,
  14 99:5,7,14,21,25
  100:2,4,8,14,18,23,
  25 101:5,10,14,21,24
  102:1,3,4,7,9,12,17
  103:14,19 104:3
  105:3,7,10,18,19,20,
  21 106:8,11,18

107:5,16,17,18
  108:1,8,11,12,22
  109:5,6,11,12,13,20,
  21,24 110:1,3,6,14,
  15,23 111:3,4,12,13,
  25 112:1,2,3,18
  113:11,17,21 114:13,
  20 115:16,24 116:6,
  23 117:1,3,7,12
  118:1,2,8 119:3,8
  120:10 122:5,10,21,
  25 123:7,9 125:2,8
  128:5,10,22 129:6,22
  131:1,4,5,16 134:25
  135:18,22
clear 14:3 44:5
  111:17 126:5 130:7
cleared 30:4
clerk 20:3,15,21 21:1
client 31:25 35:17
  37:5 41:5 51:6 75:19
  80:7 104:13 115:14
  116:20
clients 79:22
clogged 24:5
close 125:17
closed 18:24 30:22
co-counsel 30:24 79:3
  96:9,13 116:4 125:20
  131:22
co-lead 7:10
coach 64:3
coaching 64:5
collectively 31:3
  76:18
colluded 117:13
  118:1,5,14
colluding 78:1 117:2,
  4,16
collusion 75:4 114:16
  116:23 117:17,18
  118:4,8
collusive 117:11
combine 19:23 21:2
COMBS 6:5
comfortable 53:12
comment 53:14
communicated 57:24
communications 57:7
company 91:1

compensate  48:19
compensated  68:18,23,
  25 69:2 70:5,20 72:3
  73:9 76:19 83:22
  84:17 93:9,11,16,17
compensation  26:5
  29:14 42:18 43:15
  44:13,16 45:19,22,24
  49:1 68:20 70:16
  72:2,12 73:3,4
  76:16,17 84:13,14,23
  90:19 92:16 93:18,19
  95:6 100:2,4 103:5,
  10,23,25 135:9,11
competent  134:8
competing  114:16
  116:24
complaint  79:10 81:21
complaints  65:12 79:9
completely  40:5
complex  129:21 131:4,
  10
compliance  121:11
comply  121:2
components  118:18
  119:4,10,21
computer  43:21,22
  89:3
concept  112:12
concern  125:5
concluded  96:5
conclusion  115:10
conduct  132:21
confidential  106:18
  107:25 108:4,9,17,
  20,24
conflict  101:2 102:5
confused  20:20
Congratulations  24:17
conjunction  20:9
connection  9:15,25
  10:7,9,11,13,17
  19:23 23:8 33:4
  43:19 60:13 69:25
  109:11 117:13 119:17
consent  6:8
consideration  130:17
consistently  36:17
constitute  43:15
consultant  69:3,12,16

consumer  113:11 131:5
contained  56:1
contending  116:5
content  53:6
contested  33:12
  113:9,10 115:19
  133:8
context  62:12
contingent  78:15
  79:25 80:1 85:23
continue  43:25
continued  63:11
continues  64:6
contract  82:21 83:1,
  4,6,9,12,19 87:8
contractors  120:25
control  94:1 132:19,
  24 133:1
conversant  134:23,24
conversations  90:1
converse  51:6
convey  67:18
conveyed  65:11
conveys  67:14,16
cooperate  33:14
copies  58:12 60:6
copy  56:14 60:4
correct  7:18 10:3
  12:10,11,14 13:7
  14:19 15:20 18:16
  20:1,23 28:3,4,18
  52:7 62:17 67:4,9
  78:23 80:10,18 81:4
  86:7 89:15 90:13
  91:6 95:20 105:23,24
  106:4,12,13 107:14,
  18 108:13 109:20
  110:4 112:23 114:4
  118:13 121:15 135:14
corrected  124:22
cost  92:8
costs  48:20,21 49:7,8
  50:4 92:5 93:2,5
counsel  6:3,8 7:2,10
  12:13,17,22 13:6
  14:10 15:3,7,19,22
  16:16,17 17:20,21
  27:9 28:24 29:18,20
  31:3,18 34:21 38:16
  39:20 41:4,10 57:25
  58:17,19 60:6 61:18,

  22 62:10,13,23 65:14
  72:16 74:1,2,15
  75:25 76:21,22 77:3,
  23 78:1,6 79:6,10
  81:17 82:25 83:5,17
  84:4,9 87:1,8,10
  88:7,10,11,18 89:8,
  12 90:2 91:25 92:3
  95:24 96:8,23 97:4
  98:1,5,10,14 100:3,8
  101:1,5,11,24
  102:13,14,15 104:12
  105:4,18,20 106:4,8,
  15,16,17,23 107:4,5,
  16,17 108:11,12,22,
  23 109:5,6,12 110:2,
  3,8,14 111:13 112:2,
  3,18 113:21 114:21
  115:24 116:6,18,23
  117:1,2,3,7,12
  118:1,8,9 126:16
  128:5,22 131:1,4,16
  132:3 135:18,22
counsel's  14:17 64:12
  89:10
couple  90:7
coupon  31:1 32:9
  44:25 45:5,21 46:2,
  4,13 47:9 48:4
  113:18 128:11 129:9
  130:5
coupons  19:16 23:7
  45:10 95:13 99:15
court  6:6 21:24 31:23
  35:18 36:7 37:13
  38:17,21 41:17 42:10
  53:19 60:3 74:12
  83:3,7 85:14,19
  86:5,6,8,11,21 87:2,
  13,19 100:19 101:2
  103:7,22 104:19,21,
  24 105:3,7,22,23
  106:3,10,18 107:3,8,
  9,10,25 108:5,8,16,
  24 109:16 110:10,12
  111:1,2,6,14 114:3,
  18 123:1,10 129:2
  130:2,8 131:6,14,18,
  20,23 132:7,9 133:5
  136:21
Court's  15:11 38:23
  59:9 101:22 131:20
  132:4,6 133:23

**Court-appointed** 7:10
**courts** 129:23
**coverage** 29:14
**covered** 126:20,22
  127:13
**create** 101:23 119:5
**creating** 84:1 85:3
**credibility** 63:6
**crystalize** 72:19
**current** 11:21 118:15
  119:7,19 134:25
**cutoff** 121:13

---

**D**

**damage** 35:24 42:1
  43:7 67:19
**damaged** 30:6,8,9
  31:9,19 34:4,22,24,
  25 36:5,8,10 37:6,
  19,25 38:5,12 41:25
  42:5 43:3
**damages** 42:12,19,20
  43:2 49:6 67:2,4
  76:15 91:4 93:10,15
  122:23
**database** 68:13
**databases** 49:16
**day** 78:7 98:21
**days** 58:6
**deal** 37:13 68:2,10
  75:18 117:19 118:2
**dealing** 71:5
**deals** 83:22
**dealt** 75:21
**decide** 38:21 112:21
  133:7
**decided** 112:19 116:25
  129:20
**decides** 104:25
**deciding** 115:20
**decision** 26:18 38:23
  69:19 72:13 103:6
  131:20,25 132:4,6
  133:4,23 134:8,10
**decision-maker** 132:10
**decisions** 135:13
**declaration** 72:25
  82:7

**declarations** 81:18
**declined** 43:11
**deemed** 52:14
**defect** 35:1 36:1
  37:20 38:6 67:20
  118:18
**defective** 26:11 27:6
  68:3 119:4
**defects** 119:11
**defendant** 46:22 65:25
  66:16 76:4 82:12
  86:10 96:4 101:8
  115:16 120:16 122:18
**defendant's** 117:2
**defendants** 6:4,23
  49:20 63:12 82:11
  83:14,15 85:8 87:7
  98:19 111:13,15
  112:4,18 113:22
  114:2 128:2 135:18
**defendants'** 16:25
  56:9 97:6,9 106:22
  114:12 117:3 126:5
  132:3
**defending** 101:6
**defense** 74:1 112:2
  126:16
**deference** 135:10
**demonstrated** 95:24
**depend** 27:19 48:15
  49:4
**dependent** 84:23
**depending** 18:17 48:20
**deposed** 9:13 72:6
**deposes** 6:14
**deposition** 6:4 9:9,10
  14:4 16:4 32:23,24
  33:14,15 44:6 54:13,
  16 55:1 56:18 57:18,
  21 58:4 60:15 134:21
  136:12
**depositions** 51:5
**der** 81:7,9,12,17
  82:2,10
**description** 87:4
**design** 24:4 27:5
**designed** 27:13 64:3
**desire** 39:1,8,12
**detailed** 69:24
**determination** 136:8

**determine** 41:7 43:6
  77:20 93:20 103:5,23
  113:1 131:21 132:15
**determined** 77:18
  104:19 113:19
**determines** 129:2
**determining** 128:12
  135:10
**detriment** 102:3
**deviate** 130:9
**devices** 121:13
**difference** 79:15
  82:17
**differently** 27:13,14
  63:1 64:9,11 67:13
  99:20,22 117:10
**difficulties** 127:1
**diminuation** 27:20
**direct** 99:21 123:7
**directly** 50:17 115:23
  125:4
**director** 8:24
**disabled** 121:14
**disagree** 32:6 33:21
  37:22 38:1,5 39:19
  84:17 121:23
**disappointed** 30:12
**disclosed** 105:7,8,22
  107:2,25 108:1,5,8
  110:15,21,22,23,24
**disclosure** 86:4
  107:10 109:16,20,21,
  24
**discount** 19:15 20:10
  22:2,5 44:13 45:9
  48:14,16 66:18,23
  67:8
**discounts** 18:21 19:25
  20:6 43:14
**discuss** 89:12
**discussed** 58:13,16
**discussing** 112:13
  125:15
**discussion** 81:7 127:2
**dishwasher** 17:13
  18:2,14,15 23:5,14,
  15,16,19,24 24:2,6,
  13,21,25 25:7,24
  26:10,20,25 27:5,17,
  20,21,23 28:3,6,11,

18 30:7,21 31:9,11
32:11 34:5,6,9 35:2,
25 36:11 37:7,20
39:9,14 40:11 42:12
43:8,11 44:22 45:15
50:8 66:19,23 67:9
91:9,12,16 93:6,7,9
94:2,17,18 95:4
119:4

**dishwashers** 40:25
44:14 45:8 63:10,16
67:15 72:10 83:20
93:24 97:2 118:16
119:7,9,20 120:11
124:9

**dishwashers'** 40:1

**dismiss** 102:17

**disparity** 104:1
135:22

**disposing** 25:16

**disproportion** 76:23

**disproportionate**
97:22

**dispute** 119:16,22,23

**disputing** 72:4 73:2
125:13

**distinct** 40:20

**distinction** 110:22

**distributions** 96:3

**District** 129:23
131:7,15 132:7 133:5

**diverged** 70:17

**divided** 48:7

**do-it-yourself** 24:19

**document** 14:22 17:9,
10,11,12 56:7,15
61:25 62:1 63:18,19
81:22,23 83:19 85:9
86:1 87:5 130:18

**documentation** 82:22
106:25 107:1

**documented** 93:2

**documents** 16:9,21
42:25 53:19 54:25
55:4,6,10,14,18,23,
25 56:1,3 57:17
58:10,12,18 59:17,
23,25 60:2,5,9,14
70:1,7 71:5 72:6,7
82:5 111:7 130:15
135:5

**dollar** 45:23 46:23
48:1,12 75:9 77:18
93:18

**dollars** 48:10 111:15

**domestic** 78:13,16
79:16,20,24 80:25
104:11

**dozen-plus** 70:12

**draft** 14:9

**drafted** 52:23 64:13
88:9,10

**drafter** 67:12

**drafting** 14:10 51:20
52:7 64:12

**drafts** 53:11

**drain** 24:4,6,13

**drain-clogging** 26:2

**drainage** 26:12 27:7
29:8

**DRAM** 11:21 12:5,21

**draw** 135:21

**draws** 133:8

**dryer** 124:6,13,15
125:1,8

**dryers** 124:10 125:2

**due** 31:9 34:4 35:1,24
36:10 37:6,19

**duly** 6:12

**duty** 32:3 100:17
101:21,24,25 102:1

---

### E

**eager** 37:1

**earlier** 14:5 16:4
41:6

**earmarked** 96:3

**easy** 78:2

**edit** 64:21

**edits** 52:14 53:10

**educated** 69:19

**effort** 68:2,10 75:18
77:13 78:8

**efforts** 78:10

**electrical** 36:19

**Electrolux** 125:7,20

**electronic** 136:22

**eligible** 93:5

**employees** 120:24
122:20

**end** 46:10 77:11 78:7
90:6

**energy** 68:2,10 69:13

**enhancements** 122:10

**enter** 16:17

**entered** 41:12 87:7

**entire** 24:5 26:25

**entirety** 46:6

**entitled** 16:12 18:21
19:4 35:21,22 36:2
37:4 68:24 73:3
76:17 77:20 84:12
93:17 103:21,25
104:25 110:4,7
113:22 135:23,24

**equivalent** 100:5

**evaluate** 28:24 42:21
115:20

**evaluated** 86:6

**evaluating** 72:19
85:15 134:20 135:13

**evaluation** 135:21

**evenings** 125:15

**event** 23:23 27:25
30:7 31:10 34:7
36:12,19 40:17
42:13,17 44:15 45:4,
18 47:23 48:25 49:5
50:11 67:4 91:14,20
92:19 93:14,25
94:15,22 95:4,9
119:6 133:20

**events** 28:10 48:19
68:12 84:3 90:19
91:4 95:18

**evidence** 49:25 50:1,
11,12 102:19 114:16
119:17 136:2

**exact** 86:21 87:14,19

**EXAMINATION** 7:5
127:23 129:15

**exception** 67:1

**exceptional** 114:25

**excess** 73:1

**excessive** 69:15

**exchange** 33:5 85:7
105:8

**excluded** 32:13 40:9

**exclusive** 85:6 102:8

**exclusively** 83:22
101:5

**excused** 137:4
**executive** 8:24
**exhibit** 13:15,20
  14:1,9,22 15:8,10,
  11,13,15 17:23 61:1,
  2 90:5
**exhibits** 14:4,7
  136:22
**exist** 130:1
**existence** 60:10
  131:12
**exists** 75:12
**expect** 82:6
**expedited** 94:4
**expend** 46:8,11,25
  47:17 50:9 91:18
  92:20
**expended** 92:21
**expenditure** 45:1
**expenses** 91:7
**expensive** 130:10
**experience** 9:8 10:23
  72:14 94:15 95:1
**experienced** 45:3
  47:23 84:2
**expert** 42:24 68:23
  134:22 135:2,4
**expertise** 29:11 68:25
  73:5,10
**experts** 72:9 93:20
  111:4
**explain** 30:8 47:1
**explanation** 130:8
**extent** 12:20 29:19
  39:5 51:22 54:2,18
  61:25 62:3 63:21
  64:23
**extra** 21:11 103:19
  121:1

**F**

**face** 52:9
**face-to-face** 43:20
**fact** 19:15 30:6 31:9
  32:1 34:5,20 35:24
  36:5,6,11,17 37:19
  39:19 46:24 49:25
  70:6 72:4 74:23
  75:10,23 81:22,23
  83:10,11,18 84:20

92:16 93:1,10,11
  100:23 101:2,15
  106:1 115:23 119:18,
  23 120:16 121:11,24
  124:14 131:16
**factor** 97:18
**factors** 104:19 128:25
**facts** 50:18 55:19,21
  78:22 102:18 136:1
**factual** 53:24
**failed** 124:17
**failure** 77:12
**fair** 20:8 43:16
  44:17,23 46:15 47:25
  62:18 72:13 81:3
  90:16 95:19 105:15
  106:19 108:25 109:16
  114:15 115:15 118:7,
  12 134:8,10,15
  135:1,16
**faith** 77:24
**falls** 131:10
**familiar** 9:9 111:11,
  16 112:6,12 125:22
  129:19,24 131:3,7
**family** 10:21 17:4,24
  19:8,11 25:20
**fate** 73:5,6 74:3
**fault** 27:23
**favor** 121:17
**Federal** 99:12 129:23
  131:6,14
**fee** 113:10 114:13
  116:12,24 117:11
  125:25 126:2,8 129:1
  132:2,12 133:8
  135:17
**feel** 134:10,13
**feeling** 30:20 98:9
**fees** 16:25 17:21
  32:15 44:20,21 56:8,
  10 59:15,21 74:11,13
  75:1 77:21 97:6,21
  99:23 101:7 106:4,25
  109:10 110:1,12,14
  111:10,14,19,21
  112:3,17 113:2,6,19
  114:3,7,9,17,19
  115:1,7,12,17,18,21,
  25 116:1,6,25 117:8
  126:20 127:9 128:6,
  9,12,23 129:3,6,9

130:2 132:15,17
  134:3,20
**fields** 80:4,7,9
**fight** 112:21 114:8,18
  116:12 117:15
**figure** 34:3 41:21
  42:1,5 69:5
**figured** 135:8
**file** 18:25 38:20 96:8
  102:13 103:3
**filed** 7:12 9:7 10:1,
  10,14 13:9 15:14
  21:23 30:11 31:20
  36:4,5 38:3,9,13,16
  39:20,22 42:9 51:18
  52:13 53:3,5,23
  58:21,24 59:8,9,12,
  15,18,19,21,22 60:10
  61:4 64:19 65:11
  69:23,24 81:18 82:5
  87:23 97:1,9,13,14,
  15,16 98:5 100:24
  101:15 103:3 116:4
  125:10 126:13
**files** 133:1
**filing** 35:20 53:2
  100:15 126:1 127:17
  133:6
**filings** 83:8
**final** 77:18
**find** 17:12 49:16 52:8
  56:25 57:5,6,8 74:25
  88:1,4,15,17 104:21,
  22
**finding** 98:8
**finds** 131:23
**fine** 18:19 19:15 20:5
  42:20 44:2 50:25
  51:1
**finished** 32:20 33:1
**fire** 32:11 36:20
  40:11 92:19 93:12,14
  94:18 124:7
**fires** 125:2,8
**firm** 108:18 125:15
**fit** 100:19
**fix** 24:10,19 26:4
  29:13 94:1
**fixed** 24:8
**flat** 69:5

flush   117:23
focused   95:8,10,14,19
 130:24
folks   32:10 40:8,10
 42:2 45:3,4 46:16
 91:21 94:15,22
 131:22 135:5
follow   14:17 89:9,14,
 18 104:20 120:25
 134:9
forcing   65:25 66:16
forgot   11:23 116:11
form   19:21 27:8 31:12
 35:3 73:12 118:20
 120:3
format   84:14,17 90:24
 94:23,24
Fortman   10:3 14:5
 27:11 30:2 58:1,3
 125:9
forward   73:22
fought   117:16
found   110:12 130:2
 131:19
frame   127:11
frankly   93:22
fried   91:17
Friends   17:4,24 19:9,
 11
front   13:20 19:17,19
 21:20 52:9 60:25
 132:14
fronted   21:9
fulfilled   111:7
full   65:19 81:6 90:6
 92:4,8 93:1 124:2
fully   134:24 135:20
funds   45:1 46:8,12,25
 62:16 96:1
future   66:19,23 67:9
 92:21 122:23 133:20

G

galvanize   68:3
garage   25:6,8,13,16,
 22
gather   68:11
gathered   68:23 69:14
gathering   84:1

gave   34:12
gears   101:6
general   17:18,19 18:2
 109:7 111:21
generally   22:3 80:17,
 20,24 90:15 111:11
 112:1 113:8
generate   68:13
gift   46:5,18,19 47:1,
 2,6,8,15,21
give   26:5 30:25 32:7
 37:10,11 46:14,18
 48:1,6 65:7 77:13
 78:2
good   7:7 22:22 24:21
 25:20 29:10 41:20
 77:24 79:14 80:6
 114:24 115:10 125:17
 126:6 129:12
Google   17:14
granted   128:10
granting   58:25 59:11
great   68:2,10 75:18
greater   87:21
greatest   78:20
gross   104:1 113:17
grossly   97:22
ground   16:3 32:23,24
 33:10
guess   7:7 27:19 36:15
 82:16 88:16 103:14,
 16 126:5
guidance   135:6
guide   99:8,12 135:7
guidelines   99:6

H

haggle   22:18
haggled   22:12,20 23:1
haggling   22:16
hand   80:6 114:20
 118:9,11
handful   100:2
handled   95:12 134:4
happened   20:12 24:20
 29:2 59:4 67:12
 116:2
happy   27:21

hard   47:13 60:4 93:22
 114:8
hard-fought   114:17
harmful   122:1,3
head   11:14 47:4 50:15
 63:22 70:3 129:11
heading   64:10
hear   128:2
heard   45:6
heavens   22:22
held   106:11,18 107:24
 108:9,23
helpful   68:14
hesitant   128:24
Hey   26:3 29:4
high   104:7 131:1
higher   92:4 131:17
 132:22
highly   106:7
hired   43:1
homes   72:9
honestly   125:3
honor   19:14 20:16,19
hope   134:10
hour   123:15
hourly   69:4 78:11,17,
 18,21 79:17 81:1
 104:14,21 128:15
 130:16
hours   57:19 58:5,8,9
 69:20 73:1 80:2
 104:15,23
hurdle   75:11
husband   10:2 12:17
 29:7,12 30:2 65:2
 82:14,15 90:2 95:2
 116:3 125:9,19

I

idea   28:24 47:2 69:20
 74:12 124:12
identification   13:16
identified   42:9
identify   60:15 125:24
 126:9
immediately   64:11
implication   116:16
important   43:20 121:8

improper 105:5 106:7
  107:17 108:10 109:19
inaccuracies 64:25
inactive 7:22,25 8:4,
  18
inappropriate 64:2
  69:16 106:15 119:5
incentive 114:8
incentives 63:9,15
incident 43:12
include 135:12
included 41:15 42:8
  56:7
includes 117:8
including 18:3 38:16
  79:7 82:5 99:14
  105:4 111:1 131:6,14
incomplete 95:22
incorporated 83:19
incredibly 30:12
incurred 49:7 50:3
independent 83:16
  120:24
independently 57:9
individual 50:18
  100:16 102:3,7
individualized 84:15
inform 86:20 87:13
information 49:15,20
  68:11,14,24 69:14
  84:1 85:13 88:5
  99:15
initial 73:16
injured 36:22
injury 40:19,20,24
  80:1
insisted 73:21
inspect 72:9
installation 93:7
instance 29:17 116:9
  131:19
instances 92:18 99:16
  116:5
instruct 14:14 51:25
  54:20 56:21 65:7
  88:21
instructed 89:12
instructing 89:1
instruction 14:17,18
  33:17 54:23 89:10,

14,19
instructions 122:2
insurance 43:10
intend 134:16
interest 90:8 98:24
  101:2 102:5,9
interests 70:17
  100:16,22
internal 122:19
interrogatories 6:15
  72:7
interrupt 33:2,4
  35:22 122:7 123:14
interrupted 33:5
introduce 6:25
invade 39:5 51:23
  54:3 62:3 102:20
invades 54:18
invading 52:21
invested 98:11
involved 10:18 27:24
  98:25 111:6 124:15,
  25 125:4,14,23
  131:23 132:18 134:11
involvement 106:3
irrelevant 32:18 89:4
issue 24:7 26:2 28:10
  29:7 45:18 71:7
  72:22 73:12 74:11
  75:16,20 92:15
  117:11 121:14,24
issues 24:8,11 28:21
  29:8 55:19,21 75:3
  120:1 136:15
item 47:14
items 95:15
iteration 118:16
  119:7

J

James 7:3
job 32:2 41:14,20
  100:25 101:1 114:24
  115:11 116:19
John 7:1 10:2 12:17
  50:19 57:25 136:24
Jon 58:1
Jonathan 10:3

judge 15:2 33:12
  58:25 71:18 72:19
  78:22 79:5,12 98:20
  103:11 110:3 112:20
  115:19 132:7,13,20,
  23 133:5,8 134:7
  135:20 136:8,9
judges 99:14
judgment 16:1
jurisdiction 7:21 9:4
jurisdictions 8:7
justify 104:9,14

K

keeping 25:15
Kelly 6:11 7:1 35:11
  54:7
kind 24:6 45:8 64:5
  113:9 129:4
kinds 64:4 109:14
  112:6 129:21
knew 53:18,19,20
  97:21
knowledge 106:10
  110:11
knowledgeable 70:25
Kress 6:11,24 7:1,8
  8:20 9:17 10:2
  11:16,19,20 12:1,17,
  19,25 13:13 14:12,16
  15:23 16:6,8,14
  22:9,22 23:10 25:17
  26:14 29:12 30:2
  31:17,22 34:10 35:4,
  11,14 36:15,24 38:10
  39:4 43:17 50:19,21
  51:1,11,17,22 52:5,
  18 53:16 54:1,7,17
  55:3,20 56:19,25
  57:3,13,25 58:3,14
  61:24 62:20 63:17
  64:1,15,22 65:6
  74:16,19 76:8 77:6
  78:3 80:19 84:7
  88:19 89:1,18,24
  90:2 92:9 99:9,12
  101:17 102:18 107:19
  109:1,4 110:16 112:9
  113:13 114:1 115:2
  116:14 122:6,14
  123:3,13,21,24

127:25 133:10,13,17,
18,22 135:25 136:23

**L**

**lack** 50:1 86:16
**language** 88:12 123:8
**law** 8:24 10:21 80:5
  108:17,18 120:20
  126:23 127:14 131:3
  134:2
**lawful** 6:12
**lawsuit** 28:15,16
  32:4,7,17 38:3 39:20
  40:22 65:25 66:16
  68:21 96:5,21,25
  97:3,5,7,17 98:3,9,
  11,20,24 101:6
**lawsuits** 99:22
**lawyer** 7:16 8:12,15,
  18 32:25 33:1,3 51:5
  78:13,16,20 95:3
  116:20 127:21 134:23
  135:2
**lawyer's** 10:1
**lawyers** 10:5 57:1,2,
  5,6,9,20,23 58:8
  103:13,14,17,20
  105:4,6 114:24,25
  115:11 129:5 136:11
**layperson's** 27:4
**LCD** 11:20 12:5,21
**lead** 68:19,21 70:19,
  21 73:11 74:7 75:10,
  12 76:18 83:13,15,
  22,23 84:19 86:9
  127:21
**learned** 24:13 28:9,16
  65:3
**learning** 125:21
**leave** 136:19
**led** 97:3
**left** 8:23
**legal** 10:6,10,15,19
  12:13 95:1 125:16
  135:19
**lessen** 122:22
**letter** 14:23 15:13,18
**level** 104:17 131:16
  132:22

**levels** 20:17
**liability** 122:23
**license** 7:17
**licensed** 7:20,24 8:8
**lifetime** 22:25
**light** 100:23 101:15
**limited** 18:18 40:16
  53:9 99:15
**lines** 95:23
**list** 21:14
**listed** 22:6
**listen** 89:8
**literally** 70:7
**litigated** 98:16
  112:19 121:15
**litigation** 30:21
  39:9,10,13,16 40:18
  77:12,17,18 90:10,
  16,22 91:23 92:7
  93:3 94:9 124:16
  131:10 132:15
**live** 81:9 94:17
**lives** 82:2
**local** 7:2
**lodestar** 79:16 80:8,
  10 81:3
**long** 58:2 65:3 111:2,
  6
**longer** 24:25 88:3
  91:17
**looked** 81:17 88:8
  89:2
**loop** 125:17
**losing** 43:24
**lost** 43:19 78:21
  99:17 100:10
**lot** 25:22 36:21 50:18
  67:22 68:11 70:4
  79:1 80:20 103:13
  104:15 116:4 122:12
**Louis** 130:11
**low** 114:9
**lower** 130:21
**lowest** 116:12
**lumping** 108:2

**M**

**machine** 6:5 29:14
  37:21

**machines** 47:22
**made** 24:18 46:6 49:18
  53:11,25 60:22 63:7
  73:16 79:1,3 86:11
  108:21 109:13,15,19
  115:6 116:12 125:19,
  25 126:1,7,19 131:25
**mail** 29:1,5
**mailed** 21:13
**major** 22:17 75:11
**majority** 113:17
**make** 33:10 36:23 40:6
  43:9 45:6 48:9 53:6,
  10,11 57:15 59:8
  64:4,21 69:19 91:2
  96:22 107:23 116:11
  117:23 121:2 128:4
  134:8
**makes** 82:14,15 103:7
  110:13 132:16 134:10
**making** 20:12 79:5
  89:8 110:21 120:16
  130:3 135:21 136:8
**man** 70:3 73:9
**management** 20:17
**manifest** 38:6
**manifested** 35:25
  36:13
**manual** 120:22,25
  121:1
**manuals** 120:8 123:9
**manufactured** 118:16
  119:7
**manufacturer** 46:7,11
**mark** 123:15
**marked** 13:15,19,25
  14:4,8 60:25 90:5
**married** 20:7 29:2
  65:3
**material** 121:9
**materialize** 35:1
**materialized** 31:11
  34:8 37:21
**materials** 122:20
**math** 62:17 129:11
**matter** 86:22 87:14,20
  102:4 107:15
**matters** 51:6 125:16
**maximum** 77:5 90:9,21
  91:22 93:2 94:7
  112:4

**Maytag** 26:15 29:10
**meaning** 96:9 107:24
**means** 41:18 107:9
133:25
**mechanism** 113:6 134:1
**meet** 57:20 58:2
**member** 15:3 18:4,8,9,
20 21:17 29:17,20,22
30:22 31:20 32:19
41:10 42:8 49:14
71:12 76:25 83:13
102:7 125:14
**members** 17:7,19 29:23
32:9 41:11 42:13,16
44:13 48:15,24 49:2
50:10 63:9,11,14
66:18,21 67:3,8
68:9,12,14 73:23
74:3,14,18 76:7 84:2
85:15 86:5,6 87:3,19
92:18,19 93:13 95:25
97:24 100:9,13,18,23
101:15 102:4 106:11,
18 108:1,8 110:3,6
111:4 113:18 118:2
119:8 122:25
**members'** 90:8
**memory** 13:18
**mentioned** 114:11
124:25 130:25 132:1
**merchandise** 22:18
**met** 57:23,25 58:8,17,
19 64:15 122:1
**meter** 123:17
**method** 128:12,13
**middle** 17:2 51:4 63:4
66:4 95:21
**midwest** 104:6
**Miller** 10:3 30:2
125:9
**million** 17:22 31:2
40:1 67:15 83:20
97:1 128:6,22,23
**mind** 44:9 69:4,5 98:7
**mine** 64:13
**minimum** 47:24 50:2,13
**minutes** 50:20 51:14
89:21 123:16,19
**mischaracterizing**
64:23

**misconception** 75:8
**missed** 83:10 124:24
**Missouri** 7:17 8:8,10,
15,19
**misspoken** 117:24
**mistake** 60:18 124:17
**mistakes** 124:21
**misunderstanding** 51:3
**model** 26:19,21 129:8,
10,12 130:6,9
**mom** 9:1
**moment** 127:1
**monetary** 43:7 97:23
100:2,4 104:2 122:4
**money** 19:17,20,21
21:9,20 45:12 46:3
47:17 48:7 50:9
61:23 62:14 70:11,13
80:6 81:24 82:14,15
83:21 90:25 91:18
92:20,22 93:4
102:15,23 105:6
106:9 109:12 123:17
**money's** 27:16
**months** 59:7
**morning** 7:7
**motion** 35:20 56:10
59:14,21
**motions** 116:5
**move** 36:16 112:11
**moving** 38:7
**multiple** 20:6 46:9
70:6 80:2 84:12
96:20 105:11 111:5
128:25 136:6
**multiplier** 79:18
113:24
**Myers** 6:22 27:8 31:12
35:3 116:16 118:20
119:12 120:3 127:24
128:1 129:13 136:14,
18

## N

**named** 32:9 40:4,21
41:7 62:15 65:21,22
66:13 70:16 76:2,12,
17,24 82:19 96:2
97:23 101:3

**narrative** 65:7
**narrow** 109:8
**nation** 79:23
**national** 113:11
129:21
**nature** 33:22 79:23
115:22 117:6 135:17
**necessarily** 68:18
85:13 128:16
**needed** 27:23 97:4
**negotiate** 32:4 73:23
77:4 102:6
**negotiated** 19:24
22:1,5 75:6 77:25
90:20
**negotiating** 74:14
102:2
**negotiation** 117:14
**negotiations** 117:9
**Ninth** 132:8
**non-collusive** 117:6
**nonclass** 17:7
**nonevent** 92:18
**nonpayment** 80:10,12
81:2
**not-for-profit** 8:25
**Notary** 6:6
**note** 121:16 136:13
**notice** 15:1 28:13,15
**notification** 19:1
**notified** 19:19 21:5
29:17
**notify** 19:17 21:16
**number** 46:1,18 47:3
48:6,8,12 62:21
69:19 71:9 72:2 80:4
92:14 116:1 128:24
132:5
**numbers** 14:6 61:6

## O

**obey** 120:20
**object** 8:20 12:19
14:12 26:14 27:8
31:12 34:10 35:3
39:4,17 53:16 54:1,
17 55:2 56:19 58:15
61:24 64:22 65:10
71:24 72:1 76:8

88:19 107:19 109:1
111:15,18,19,20
112:5 116:16 118:20
120:3,4,7,11,12
126:16 128:5 133:10
134:6
**objected** 11:20 13:2,
5,6 95:11,13,15
100:20
**objecting** 57:3 62:2
75:9 113:4
**objection** 7:12 9:25
10:2,7,9,11,13
13:10,11,12 16:1,25
17:16 21:22,23 22:9,
23 23:10 25:17 30:11
35:4,10 37:1 38:20
43:13 48:23 51:17,
21,22 52:7,13,18,23
53:3,13,19,23 54:9,
12 55:20 56:10
57:10,12 58:21,24
59:5,7,9,12,16,19,22
60:11,14,22,24 61:3,
16 62:7,9,22 63:5,17
64:2,14,19,25 65:11,
15 67:7,25 69:3,23
70:9,11,14 71:20
74:16,19 75:1 77:6,
23 78:3 80:19 81:9
84:7 86:15,19,25
87:12,23 88:11 90:4,
7 92:9 93:22 94:7,11
95:18,23 96:8,10
97:6,9,10,16 98:4,5
100:15,19,24 101:16,
17 102:11,18 103:3,4
105:9 110:16 112:9
113:13 115:2,17
116:14 118:11 119:12
120:2 122:14 123:3,
25 124:18 125:19,24
126:4,10,13,15
127:9,10,16,17
133:4,18 134:24
135:25
**objectionable** 128:21
**objections** 9:6,23
10:17 12:8,12,16
16:5,22 33:13 35:7
55:8 57:15 60:16
64:5 71:10 81:6
102:25 106:19 116:4

123:12 125:10 126:7,
11,19 127:13 133:22
**objector** 10:24 11:7,
9,13 12:5,9,17 35:23
100:14,17 101:21
118:10 133:3
**objectors** 108:12,22
109:14
**objectors'** 105:4
106:4,15,16 107:4,16
108:11,23 109:12
110:8,14
**objects** 71:20 132:23
**obligation** 111:8
**obtain** 20:1
**obtained** 49:2
**occur** 102:22
**occurred** 74:5
**offered** 19:5,23 70:15
**offering** 122:18
**offers** 17:6
**Ohio** 7:22,24 8:5,8
**Olguin** 115:19 132:7
133:5,8 135:20
**online** 21:4,5 60:2,3
**opening** 19:2
**operating** 75:7
**operation** 120:9
**opinion** 38:2 40:14
44:25 45:10 77:8
113:14
**opportunity** 19:9
98:23
**opposed** 25:16 72:11
**opposing** 104:12
**opposition** 16:25
114:12 126:1,21
**opt** 38:24
**oral** 6:15
**order** 15:12 41:17
45:12 46:3,12,25
56:12 58:25 59:3,4,
5,6,11 60:3 91:1,12,
18 93:5 97:11 121:7
**ordered** 31:22 33:13
**orders** 123:9,10
**ordinary** 132:14
**original** 16:1 67:12
**originally** 21:13

**out-of-pocket** 67:3
91:4,7
**outcome** 32:4,7 78:9
132:23 134:15
**outlet** 23:18
**outlined** 72:16 113:18
**outrageous** 115:25
116:6
**overheating** 23:23
27:25 28:10,17 30:7
31:10 34:7 36:12,19
40:17 42:13,17 44:15
45:3,17 47:23 48:19,
25 50:11 67:4 68:12
84:3 90:18 91:4,14,
20 93:24 94:22 95:4,
9,18 118:19 119:5
**overheating-event-
related** 119:21
**overreached** 39:22
96:17,24 98:2
**owe** 32:3
**owned** 34:5
**owners** 44:22
**owns** 45:7

---

**P**

**p.m.** 6:17 137:4
**PACER** 60:7 61:7
**pages** 62:2 70:7 71:5,
9
**paid** 24:10 61:18,23
62:10,24 78:9,10,15,
16,18,20 79:20 80:9
81:1,2 84:21 93:25
95:5 103:15 104:10
106:9,17,21,25
109:10 110:7 135:10
**papers** 69:25
**paragraph** 61:15 63:5
65:19 81:6,8,25
82:9,20 86:15 90:6
95:22,23 124:3
**parenting** 121:4
**part** 12:12 19:5 30:20
58:10 67:6 68:20
74:6 77:22 86:6
87:24 91:1 94:6 95:6
104:11 109:22 120:1
122:10

partial 86:15
participants 48:12
participate 51:20
  52:25
participated 52:7
participating 136:11
parties 63:5 75:6
  83:3 86:20 87:12,18
  111:7 134:11
partner 130:13,19
parts 119:24
party 41:10
pass 127:22
past 13:2,4 23:9
  41:16,18 91:14
pause 43:19
pay 65:25 66:16 73:14
  93:7,20 104:13 112:5
  114:2
paying 20:22 114:6
payment 50:2 69:16
  71:11 72:14,17 81:15
  103:21 110:4 111:19
  112:5
payments 71:18,21,25
  72:20 105:3,20 106:4
  107:2,16,20,24
  108:11,15,21 109:13,
  14,19 110:14 111:1,
  3,4
people 18:13 21:10
  32:12 40:16 41:24
  43:14 45:14 48:8,18,
  21 50:3 63:20 76:14,
  16 90:18,20 91:3,14
  94:4 95:8,17 100:2
  104:10 120:17 131:23
  135:8 136:7
people's 96:21
percent 18:3,4,8,15,
  18 19:11 31:1 32:8
  53:13,24 54:4 62:16,
  21
percentage 49:5,8
  67:1 76:14
perfectly 25:20
performed 104:9
period 7:25 18:23
  19:2 36:18
permission 21:19

person 20:22 21:1
  49:19,21 84:23 93:25
  94:10,12
personal 80:1
personally 31:2 42:23
  43:5
persons 96:2
perspective 27:4
  122:13 132:10
persuasive 20:11
pertain 50:16
pertains 62:12 83:14,
  20 85:9
phone 43:25
phrase 108:14
phrased 64:19 123:6
physical 52:25
pick 29:25 47:3 65:4
picture 43:24
piecemeal 61:25
place 134:2
places 22:15 81:20
  99:17
plaintiff 40:5 41:8
  68:19,21 70:19,21
  73:11 74:7 75:10,12
  76:3,19 83:13,15,23
  84:19 86:9 96:2
  101:3
plaintiff's 74:2
plaintiffs 6:3,20
  32:9 62:15 65:22
  66:13 70:16 76:13,
  17,25 82:19
plaintiffs' 59:21
  106:22 121:10 129:5
playing 30:3
pleading 31:20 38:13,
  18
pleadings 36:3 38:9,
  16 136:7
pocket 24:10 45:1
  67:20 92:21 135:7
pocketbook 99:10
point 7:23 13:21
  15:21,23 16:10 32:18
  67:14,17,18 70:14
  81:25 82:1,3 103:4
  128:14,15
points 18:5,8 126:9,
  22,23 127:14

pool 48:7
popped 17:14
position 51:10,11
  70:21 115:1,12 133:2
positions 112:22
  116:24
possibly 41:25 136:1
postcard 21:13 28:12,
  13,20 29:1,4
posted 82:4
potential 40:20,24
  42:1 45:20
potentially 41:25
  94:18
PPOS 121:24
practice 8:23 10:20
  80:25 134:23
practices 80:24
practitioning 8:12,
  15,18
preauthorized 124:19
predict 20:19
preferred 27:12
preliminary 56:11
  59:1,4,6,10,11 69:25
  81:19
prepare 54:15,25
  57:17,21 58:3
prepared 53:20
preparing 56:18 57:8,
  9
prequalified 94:5
presented 52:24 88:5
  94:25 116:1 126:23
  135:20
presenting 114:25
pretty 24:21 104:6
prevailed 98:19
previous 64:23
previously 60:25
  105:25 106:1
price 19:25 22:2,6,
  12,18,19,20 23:1
  85:12
primary 113:17
principle 107:15
  111:22
print 18:19 19:15
  20:5

**prior** 25:11 41:23
42:6,7 58:12 80:25
97:25
**privilege** 14:13
33:18,19 39:5 51:23
52:19 54:3,19 56:21
62:4,5 63:23,24
88:20 89:5 102:20
133:12
**privileged** 51:7
**pro** 13:6,9
**probate** 10:21
**problem** 26:12,21 27:7
49:23 77:1 83:15,17,
20 92:17,23 93:1
104:1
**problems** 24:1 101:22
**procedure** 51:4 107:3
116:25
**procedures** 113:18
**proceed** 15:25
**proceeded** 13:2,4
**proceeding** 33:12
112:20 113:10,21
115:23
**proceedings** 113:9
**process** 9:9 38:7
74:14 94:5 112:22
113:1,2,5 115:19
132:20,21 133:9
**produce** 83:3,7
**produced** 135:5
**producing** 72:7
**product** 14:13 18:17
24:4 33:18 46:21
47:5,6 51:24 54:4,19
56:20 62:4 63:23
88:13,20 89:5 93:12
102:20 133:11
**products** 18:18 68:4
**professor** 124:22
**promote** 120:9
**proof** 21:20
**proper** 51:3 54:24
84:14 85:11 115:21
121:12,25
**properly** 109:15
**proportion** 44:19
**proportional** 42:19
99:24 128:10

**proportionality** 42:21
**Proportionally** 45:2
**proposed** 19:24 41:12
61:11,21 71:21,24
73:20 74:9 85:11
86:4 87:20 92:13
**propounded** 6:15
**propriety** 73:20
**prosecuted** 129:22
131:5
**protect** 100:22
**protocols** 104:20
**prove** 49:12 113:21
**provide** 12:13 16:7
49:20 102:16
**provided** 17:10 48:24
60:1 85:14 87:18
**providing** 10:6
**provision** 50:14
**provisions** 111:11
**pry** 121:3
**PTX** 136:21
**public** 6:6 17:18,20
18:2
**publicly** 105:8
**published** 110:22
**pull** 96:18
**punctuation** 124:21
**purchase** 18:2 21:20
23:15 26:19 46:6
50:8 63:6 66:19,24
67:9 73:15,16,24
85:5 91:11 93:6
95:11 119:9
**purchased** 23:16,17,22
43:8 91:9,15
**purchases** 23:8
**purchasing** 63:10,15
**purpose** 109:6,7
**purposes** 38:7 40:18
107:4
**pursue** 29:12 32:8
39:1,9,13,15
**pursuing** 30:21 39:17
**put** 13:20 21:15 25:7
34:9 35:2 44:15
45:16 50:7 51:7
60:24 69:3 70:4,20
72:18 74:11 75:3
78:8 80:2 104:23
117:10 119:17 124:13

128:24
**putting** 24:22 44:21
51:9 123:8

**Q**

**qualification** 67:7
**question** 14:18 16:7
20:5 26:9 27:3
30:15,16 31:6,7,24
33:3,22,23,25 34:18,
23,25 36:6 37:5,9,
17,24 41:22 44:9
49:3 52:1,10 57:16
64:17 65:8,10 77:8
80:22 82:9 88:22,25
89:11 92:3 108:7
109:8 119:6 123:6
125:18 126:6 127:4
130:23
**questioning** 132:2
**questions** 7:11 13:22
32:25 33:16,20 35:18
41:4,13,19 50:21
57:14 71:10 127:20,
21 129:14,17 136:15,
17,19
**quick** 128:4
**QUINBY** 6:5

**R**

**raised** 21:23 40:14
126:10 127:14 136:6
**rate** 69:4 78:21 79:17
104:14,21 113:24
128:15 129:21 130:21
131:16
**rates** 104:5,6 129:19,
25 130:16,19,24
131:1,4,8,17,19,21,
24
**reach** 26:3 92:13
115:10
**reached** 30:13 69:9
99:4 108:16 109:23
**read** 13:25 58:12,18,
22,25 59:9,15,17,19,
24 60:3,9 63:19
64:10 69:24 70:2
114:11 121:9 127:4
136:23

**readily** 82:4
**reading** 42:25 56:23
  71:19 72:6
**reads** 18:6
**ready** 43:21
**realistically** 94:8
**realize** 45:12 46:3,25
  91:1 97:4 104:4
  116:3 130:10
**realized** 104:2
**reask** 33:25
**reason** 7:13 8:17
  20:12 25:15 26:8
  38:24 84:16 98:1,6
  104:24 134:14
**reasonable** 43:16
  44:18,23 45:13,19,25
  47:25 72:20 104:22,
  23 110:12 115:7
  129:2,21,25 130:3
  131:4,19,24 132:16
  134:15
**reasons** 45:17 98:4
  100:7 128:19
**rebate** 18:21,23 19:2,
  4,10,14,18,21,23
  20:9,22,24 21:6,8,9,
  21 43:13 44:12 45:9
  46:13 48:14,16 50:6,
  9 119:8
**rebates** 19:5 45:10
**recall** 9:18 13:1,5
  42:25 50:15 60:3,4
  70:2,5 73:18 126:12
**receipts** 49:12,22
**receive** 17:7 19:1
  32:10,11,13 45:4,8
  62:15 63:20 65:23
  66:14 76:18 91:19
  96:1 102:15 103:10,
  24 111:14 112:3
  129:6
**received** 21:17 28:12
  29:1 53:11 94:7
  97:23 128:22
**receives** 84:15 101:5
  103:23 123:7 129:6
**receiving** 45:5 72:1,
  12 84:23 90:8 92:16
  94:14 101:7 128:5
**recent** 17:3

**recess** 51:15 89:22
  123:22
**recollection** 11:18
  12:2,25 15:6 16:13
  55:18
**recommendations** 134:3
**recommended** 128:13
**reconvene** 51:14
**record** 12:20,22 14:3
  15:24 16:17 34:12
  89:9 109:22 115:20
  119:17 127:1,2
**recordable** 93:15
**records** 94:3
**recourse** 38:20 134:13
**recover** 94:24 96:19
  98:10
**recovery** 42:16 91:1
  92:4 95:3 99:24
**redeemed** 21:4
**reduce** 63:7
**reductions** 19:25
**refer** 13:12,21 36:3
**reference** 127:11
**referenced** 97:5 99:16
**references** 127:15
**referred** 15:8 16:24
  41:24 85:18
**referring** 41:1 61:14
  131:11
**reflect** 15:19
**reflects** 12:20 34:12
**refresh** 11:17,18 12:1
  15:5 55:18
**refund** 21:21
**refuse** 88:24
**refused** 136:16
**reimbursable** 67:2
**reimbursed** 49:6 76:15
  92:22
**reimbursement** 49:9
  91:6,10 92:5,8 93:1
**relate** 131:8
**related** 16:22 55:19
  118:19 120:8 125:2,7
**relates** 16:21
**relations** 78:13,16
  79:16,20,24 80:25
  104:12

**relationship** 117:6
**relative** 130:3
**relevance** 8:21 17:15
  22:9,23 23:10 25:17
  26:15 30:18
**relevant** 33:21
  135:13,19
**relief** 17:6 44:22
  46:15 48:24 64:6
  74:15 75:5 76:7 77:5
  79:8 95:17 97:23
  104:2 113:17 128:10
**remedy** 84:15 101:3,4
  102:8
**remember** 9:16,17,19
  11:11,15 12:4 13:8,9
  16:8 56:6,14 97:11
**remembers** 16:6
**remind** 55:25
**RENÉE** 6:5
**repair** 48:20 49:7,8,
  18,19,21,25 50:3,11,
  13 92:5,8 93:2,5
  95:5 120:10,17,23
**repaired** 120:23
**repairman** 26:16 29:10
**repairs** 36:23
**repeat** 16:3 44:10,11
  121:6
**repeatedly** 24:20
  36:23
**rephrase** 75:17 107:22
  118:22 136:5
**replace** 93:12 94:1
**replaced** 25:1 26:20
**replacement** 26:6 28:6
  48:20 91:16
**reply** 6:15
**Reporter** 6:6 126:25
  136:21
**represent** 29:18,23
  97:14 100:15 102:8
  128:1
**representation** 115:14
**representative** 61:12
  75:14
**representatives** 39:21
  66:22 70:13,25
  71:17,22,25 76:6
  105:19,21 106:8
  107:6,17 108:12,22

109:13

**represented** 15:7,19,
22 16:15 30:1

**representing** 10:6
15:4 17:20 116:20
118:5,10

**request** 56:8 73:16
125:25 126:2 129:1
130:4

**requested** 44:20 73:14
126:8

**requesting** 17:21

**require** 45:12 46:7
63:11 83:3 110:5,11,
12,25

**required** 33:20 46:5
84:4 92:20

**requires** 45:1 46:3,11
50:8

**requiring** 41:17

**resolution** 47:18
105:9

**resolve** 45:19 106:19

**resources** 99:21

**respect** 9:6 10:18,22
29:7 39:13 75:4
106:3 119:6 121:23
132:1 134:19

**respective** 112:22

**respond** 48:8 121:22
133:22

**response** 16:21 56:9
132:2

**responsibilities**
101:10,12

**responsibility**
100:13,22 101:14

**responsive** 35:17 65:8

**rest** 40:6,11,20
70:16,17,22 73:6,23
84:24 85:4,19,22
100:4 123:11

**restate** 80:21

**restroom** 89:20

**result** 30:23 76:3
77:11 109:10 118:3

**resulted** 113:20

**results** 78:10 79:11

**retain** 50:18

**retained** 65:14

**revealing** 133:15

**review** 51:18 52:14
53:5 54:12,25 55:8,
10,12 56:11 60:9
86:7 106:10 115:9
130:15,18

**reviewed** 55:4,5,15,22
56:4,5,6,9 124:18

**reviewing** 55:17 57:17
60:14

**rich** 115:20

**rid** 25:20

**rights** 30:25 39:17

**risk** 28:17 30:7 31:11
34:7,8 36:12 79:19
80:10,12,13 81:3
119:5

**risks** 81:1 98:14

**Roberts** 125:7

**role** 69:2,12 100:14

**room** 7:3 57:6 92:13
99:2

**Rosemergy** 7:3 66:4

**routes** 46:9

**rule** 134:12,15

**ruled** 78:23

**rules** 9:9 16:3 20:13,
15 32:23,24 33:10
110:5,11,19,20,23,25
134:9 135:7,13

**ruling** 15:11 132:16,
17

**S**

**safeguard** 104:24

**safety** 28:17 30:7
31:10 34:7,8 35:1
36:12 37:20 38:6
119:11,25 120:1,9,18
121:12,13,25 122:10

**sailing** 111:17

**sale** 17:4,13,15,17,24
18:6,16 20:10 21:5
61:11 73:21 74:9
75:2 82:21 83:1,6,9
84:21 85:11,12 86:4,
17 87:20,25 100:5
119:20

**sales** 19:24 23:7

**sanctioned** 9:3

**sanctions** 35:19

**satisfactory** 53:6

**satisfied** 53:22,23
54:4 65:11 74:13
94:19 116:22

**scheduled** 96:1

**Schwartz** 6:19,24 7:2,
6,9 9:2,21 11:16,25
12:24 13:17 14:15
16:2 22:13 23:2,13
25:23 27:2,15 31:13,
15 34:16,19 35:8,16
36:9,24 37:16 38:14
39:11 41:2 43:24
44:4,8 50:24 51:2,
13,16 52:2,8,12
53:1,21 54:11,22
55:7,24 56:24 57:4,
14 58:20 62:6 64:1
65:2,16 66:7 74:17,
24 77:2,15 78:12
80:23 85:1 88:23
89:6,23 92:24 100:6
102:10 103:8 107:23
108:6 109:9 111:9
112:14 113:25 115:8
116:21 118:24 119:2,
15 120:6 122:8,24
123:4,18,23 127:3,7,
19 129:16,18 133:21
134:18 136:10,24

**screen** 17:1,3

**searched** 88:15

**Sears** 6:23 17:3 19:14
20:4,5,15,21 21:1
23:5,18 26:3 47:7
49:16,18,21 61:13
72:8 73:14,16,21
87:1 114:2,20,23
116:10,19 118:17
126:1 128:1 135:24

**Sears'** 115:12 126:21

**Sears-branded** 46:20
47:4

**secret** 106:11 107:2,
15,20,24 108:10,15,
23

**secretly** 106:9,17

**section** 50:16

**security** 79:21

seek  28:24 29:16
  35:19 48:16,21 64:6
seeking  54:2,18 62:3
  101:7
sees  100:19
sell  43:9 74:4 95:25
selling  76:4 85:24
semantics  30:3 37:23
sense  64:16 101:4
  110:13
sentence  67:10,11
  68:16 82:8,23 124:3
separate  21:10 40:6,
  19 56:7 58:8,11
  75:15,25 83:9 85:17
  86:1 87:8,10
separately  30:1 39:1
  63:7 75:21
sequential  14:6
service  25:8,12 34:9
  35:2 36:13 44:16
  45:17 71:18 93:25
  94:17
serviceman  95:5
servicing  120:10
set  16:4 26:22 40:11
  68:10 129:20 132:5
  135:7
setting  131:3
settle  19:3 97:4
  98:12,24,25
settled  91:25 98:16,
  18 99:1 113:7
settlement  17:18
  19:3,6,17,24 20:3,9,
  18,22 21:2 30:10,12,
  19,23 34:1 35:23
  38:17,22,25 39:17,18
  40:10 41:12 42:16
  43:16 44:17,24,25
  45:2,13 47:25 48:9
  49:10 50:3 56:5,7,14
  58:22 59:1,12,24
  61:22 65:12 68:20
  69:9 71:6,17 73:22
  74:6,15 75:5,11 76:3
  77:25 78:2 79:6
  83:7,8,11 84:22
  85:16,23 86:7 87:5
  90:10,22 91:5,15,22
  92:1,6,7,14 93:3
  94:9,10 95:13 97:19

99:3 101:23 103:18,
  20 108:4 109:23
  111:2 117:9,13
  119:18 120:1,13
  122:11 123:12 125:8,
  10 128:11 130:5
settlements  108:16
  111:1 112:1,7 134:25
settling  99:22
share  71:3
shared  71:14
shop  22:15
shorthand  6:5
shot  17:1,3
show  12:21 33:13
shrinking  64:16
shut  43:22
side  75:3 117:15
  121:11
sides  118:5
signature  6:7 15:1
  52:24 88:12 137:2
signed  14:1 53:20
  58:25 59:7
silence  65:25 66:17
similar  106:2
similarly  103:17
  106:14
simply  125:18 130:25
  131:2
singular  71:7,13
sir  35:17
sit  16:14 87:16
  130:14 134:16
site  88:16
sitting  25:6,13 31:4
situation  41:9 43:15
  46:16 71:4 93:14
  95:7
situations  81:2
skimmed  50:17
slated  65:22 66:14
slightly  130:22
small  67:1 76:14 81:1
Smarter  135:8
sold  87:3 96:9,13,16
  98:1,5 100:8 118:17
sole  101:3
solicited  28:23

someday  25:21
sought  39:25 40:3
sounds  48:4 95:16
  107:14 108:9 125:22
speak  94:21
speaking  16:5 36:25
  57:4 64:2
speaks  62:1
special  40:7
specific  75:9 88:12
  100:16 105:9 127:14
  129:11 133:3
specifically  32:13,16
  40:9 82:6
speculate  74:22
  133:19
speculating  102:21
speculation  54:6
  55:21 74:20 77:7
  78:4 84:8 92:10
  102:19 107:21 112:10
  113:14 116:15 122:15
  136:1
speculative  76:9
  109:4
Spell  71:22
spend  35:20 45:12
  46:3 56:17 57:17
  90:25 125:15
spent  56:23 57:1,5,8
  58:9 68:2,9 69:21
  71:5,6 72:25 93:4
spousal  33:18 62:5
  63:23
spouse  29:3
St  130:11
stack  19:22
stacked  19:16
stamp  61:7
stand  52:4 57:10
  60:21 82:10 90:12
stand-alone  87:6
standalone  47:14
  56:15 87:7
standard  104:7
standards  121:12,25
  134:20,25 135:14
standing  54:10
start  9:7 15:17 22:4
  52:10 66:12

**started** 32:23
**starting** 136:25
**starts** 66:8 124:4
**state** 7:17,22 8:11
  36:16 61:16
**stated** 62:13,22 67:6
  75:11 85:23 100:9
**statement** 28:23 62:9
  64:8,18 67:7 68:6
  88:9,10 90:12,15
  96:16 105:15 120:15
**statements** 60:16,18,
  22
**states** 61:16 63:5
  86:19 87:12 90:7
  95:24
**statutes** 135:14
**stay-at-home** 9:1
**step** 21:11
**Steve** 6:19 7:8 10:3
  15:24 35:14 36:16
  50:19 52:6 63:20
  80:21 82:12 89:18
  107:22 109:8 122:6
  123:13 129:18
**stickers** 120:5,7
  122:19 123:8
**STIPULATED** 6:2
**stop** 8:14
**store** 20:13,21 21:1
**stores** 22:17
**strain** 63:6
**strong** 30:20
**stuck** 52:9
**style** 64:13
**subject** 35:9 39:6
  65:1 76:10 78:5
  84:10 86:22 87:14,20
  102:24 118:18 133:13
  136:3,14
**submit** 21:8,20
**submitted** 88:11
**submitting** 20:24
**substance** 57:7 90:1
**substantial** 81:3
  98:14 100:3
**substantive** 51:6
  89:25
**success** 77:12,18
  103:15,16,18

**successful** 65:24
  66:15 77:14 98:15,18
**sucked** 39:9,16
**suddenly** 121:2
**suffered** 35:24 40:17
  43:7 44:15 48:19
  67:19 90:18 91:3
  95:17
**sufficient** 44:23 45:2
  49:14 87:5
**suggest** 52:14 53:10
  64:21
**suggested** 69:12
**suggesting** 36:21
  70:18
**suitable** 72:17
**summarizes** 100:11
**sums** 128:20
**supplemented** 98:9
**suppliers** 119:24
**support** 68:3 81:18
**supposed** 33:3 49:20
  120:22,23
**Supreme** 132:9
**surprise** 51:10
**surprisingly** 61:17
**sustained** 76:15
**switches** 101:6
**sworn** 6:12

**T**

**table** 62:15 130:15
**taking** 24:21 51:12
  61:25 82:8 121:16
**talk** 18:12 23:14 54:5
  58:2 63:19 85:25
  86:16 101:9 111:10,
  25
**talked** 57:1 63:22
  134:21
**talking** 22:3 34:1
  41:3 42:2,21 46:19
  61:11 84:2 91:3
  99:10 109:22 111:22
  132:5,6,8,9
**talks** 124:6
**technical** 126:25
**telling** 57:11 120:20
  133:6

**temp** 130:14,20
**ten** 26:1 29:9 50:20
  51:14 89:20 123:16,
  19
**term** 107:20
**terms** 8:11 54:4 59:23
  79:19 85:11,15
  105:17 116:12 117:5,
  14 120:9 126:7
  129:19 132:11
**test** 13:18
**testified** 62:21 64:24
  88:14 103:13 106:1
  133:23
**testify** 6:13 7:14
  106:1
**testifying** 93:23
**testimony** 25:11 37:2
  41:23 42:6,7 64:24
  78:25 90:1 105:2
  117:22 133:24
**thermal** 121:13
**thing** 94:13
**things** 25:22 32:14
  48:6 56:1 59:3 67:23
  70:6 72:15 74:22
  80:20 95:10,14
  108:19 121:7 126:15
  136:6
**thinks** 80:22
**thought** 64:17 99:18
  127:10
**thousands** 70:7
**throw** 123:17
**thrown** 40:12
**Ticketmaster** 11:3,5,
  7,9,11,21 12:5 13:3,
  5,9,14 14:23 15:6,
  16,22 16:16,18
**tie** 74:2 134:4
**tied** 73:5,7 77:12
  95:12 115:23
**Tikellis** 6:21 7:9
**time** 7:25 11:2 24:20
  27:20 28:9,16 29:8
  30:1 35:20 36:18
  41:5 48:10 56:17,23,
  25 57:5,8,16 58:7,18
  59:18 64:18 65:3
  69:13 71:4 75:18
  93:8 96:20,21 97:20

98:11 103:4 113:23
125:21 127:20 128:17
131:25 136:20,25
137:1
**times**  9:12 10:23
24:23 26:1 29:9
37:15 84:12 89:4
**to-wit**  6:16
**today**  7:11,14 9:7,13
14:5 16:5,13,14 37:2
41:18 54:13,16 57:18
87:16
**told**  36:22 79:12 89:2
**tomorrow**  37:3 136:25
**top**  11:14 47:3 50:15
61:7 70:2 93:10
**topics**  127:12
**tossing**  108:15
**totally**  64:2
**traffic**  10:21
**train**  99:18
**training**  120:7 122:18
**transaction**  75:24
82:11 85:18 86:1
87:11 116:15
**transactions**  86:22
87:15
**transcribed**  6:7
**transparency**  86:16
105:17 106:3 107:4
**trial**  100:10
**trouble**  93:8 94:16
**true**  61:21 63:8,14
66:21 87:18 90:15
116:8
**truth**  6:13,14
**truthfully**  7:14
**turn**  19:20
**turned**  29:3
**type**  43:7 135:1
**typed**  17:13 88:12
**typewriting**  6:7
**typically**  22:15 118:3
**typing**  52:25
**typo**  124:8,14

---

**U**

**Uh-huh**  17:25 124:5

**ultimate**  38:23
**ultimately**  110:2
**unable**  96:18
**unclear**  71:19
**unclog**  24:14 26:24
**understand**  7:16 20:2,
13,14 30:18 51:11
61:10 70:8 72:5
80:13 91:5,8,13
93:21,22 112:15,22
113:10,12 114:1
117:20 121:7 127:20
133:2,24
**understanding**  18:1,7
19:13,22 21:3 49:11,
13,24 112:1 134:19
**understood**  27:3
132:25
**unhappy**  32:1 46:24
**unique**  127:16
**unlike**  115:15
**unnamed**  41:11 97:24
**unrelated**  45:17
**unusual**  113:11,12
**upset**  124:23
**utilized**  46:2

---

**V**

**vague**  54:5 55:20
74:20 76:9 77:6 78:4
84:7 92:9 107:21
109:4 112:9 113:13
116:14 122:14 135:25
**vaguely**  125:22
**valid**  115:6
**valued**  69:18
**values**  82:23
**Van**  81:7,9,12,17
82:2,10
**vary**  48:20
**Veer**  81:8,9,12 82:2,
10
**Veer's**  81:18
**venues**  46:1
**version**  119:19
**versus**  125:7
**video**  24:12 44:6
**video-recorded**  44:5

**view**  44:23 45:7 51:4,
9 68:15 73:19 92:7
97:17 98:13 106:12,
17 108:24 109:14
116:6 122:11,25
**views**  51:3
**vigorous**  114:18
**violet**  64:16
**visited**  60:5
**voicing**  115:17

---

**W**

**wait**  19:20 21:21
**waiting**  37:2
**waits**  33:1
**waived**  6:8 137:3
**walk**  123:16
**wanted**  18:13,14 21:6
73:24
**wanting**  52:5 63:21
**warning**  121:1
**warnings**  119:25
122:2,18
**warranty**  24:8 29:13
**washer**  36:18,23 38:6
**washers**  41:24
**watched**  24:12
**website**  59:25 60:5
61:12 68:11 70:10
73:15,17,20,25 74:10
75:2 82:4 83:1,7
84:1 85:3,11 87:19
95:12 96:4
**websites**  71:7 74:4
76:4 83:10 84:22
85:5,24 86:21 87:3,
14,22,24 88:6,8,15,
17
**weeks**  19:20 21:21
**well-founded**  57:12
**whatsoever**  100:22
101:14
**Whirlpool**  6:23 11:22
12:23 17:13 19:13
20:17 26:3 28:11
29:12 30:6 36:11
37:19 39:2 46:20
47:4,7 49:15,19,21
61:12 72:8 73:14,15,
21 74:5 77:5 78:1

```
   87:1 114:2,20,23
   115:12 116:10,19,23
   117:7,12,25 118:1,9,
   16,17 119:8 123:7
   126:1 128:1 135:23
Whirlpool's  27:22
   94:3 126:11,20
   127:20
Whirlpool-manufactured
   119:19
wide  135:22
wife  64:3 81:13 82:13
window  30:21
wiring  24:7
withdraw  60:18
witness's  16:13
won  78:21
wondering  106:20
word  66:9 124:12
worded  63:1 64:9,11
   65:13,14
wording  37:24
work  10:10,15,19
   12:13 14:13 24:18
   25:24 29:3 33:18
   36:17 46:10 47:2
   48:7 51:24 54:3,19
   56:20 60:13 62:4
   63:22 65:4 69:13,17,
   18 70:4,11,20 79:20,
   24,25 83:25 84:3,4,
   5,13,20 85:2 88:13,
   20 89:5 102:20
   104:9,18 109:11
   130:11,12,13 131:22
   133:11 135:9
worked  45:16 91:17
working  73:1 94:2
works  44:1
world  78:20 114:8
worse  123:1
worth  27:16 40:1 69:6
   96:20 98:10
wrench  26:25 29:9
write  108:18
writing  109:6
written  65:12 109:5
wrong  60:17 86:2 99:7
wrote  15:18 67:25
   96:10 98:4,7
```

```
            Y

years  8:25 9:20 23:21
   25:12 27:14,18 36:1,
   14 37:21 45:16 70:6
years'  96:20 98:10
yes-or-no  34:25
Youtube  24:12
```