CASE NO. 8:11-cv-01733 FMO (JCGx)

Jeffrey M. Cohon (CSBN 131431)
Howard Pollak (CSBN 147077 )
**COHON & POLLAK, LLP**
10250 Constellation Boulevard, Suite 2320
Los Angeles, California 90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610
jcohon@cohonpollak.com

Charles S. Fax (*pro hac vice*)
Liesel J. Schopler (*pro hac vice*)
**RIFKIN WEINER LIVINGSTON LLC**
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-6535
cfax@rwlls.com
lschopler@rwlls.com

David H. Weinstein (CSBN 43167)
Robert Kitchenoff (*pro hac vice*)
**WEINSTEIN KITCHENOFF & ASHER LLC**
100 South Broad St., Suite 705
Philadelphia, Pennsylvania 19110-1061
Telephone: (215) 545-7200
Telecopier: (215) 545-6535
weinstein@wka-law.com
kitchenoff@wka-law.com

Steven A. Schwartz (*pro hac vice*)
Timothy N. Mathews (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com
tnm@chimicles.com

Nicole Sugnet (CSBN 246255)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Telecopier: (415) 956-1008
nsugnet@lchb.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

STEVE CHAMBERS, *et al.*, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

WHIRLPOOL CORPORATION, *et al.*,

    Defendants.

Case No. 8:11-cv-01733-FMO (JCGx)

Honorable Fernando M. Olguin

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN RESPONSE TO CERTAIN OBJECTIONS BASED ON RECENTLY-COMPLETED DISCOVERY**

Date:  August 25, 2016
Time: 10:00 am
Place: Courtroom 22

# TABLE OF CONTENTS

I.    ALL OF THE OBJECTIONS ARE WITHOUT MERIT AND
      SHOULD BE REJECTED AND MANY ARE SANCTIONABLE ................... 1

      A.   Relevant Rule 11 Standards ....................................................... 2

      B.   Baseless Arguments And Sanctionable Conduct
           Related To The Hightower/Whaley Objections (ECF 231)
           Filed By Suspended Attorney Darrell Palmer And
           Continued By Palmer's Co-Counsel Attorney Steven Helfand ................ 4

      C.   Baseless Arguments And Sanctionable Conduct Related
           To The Knott/Smith Objections (ECF 231) Filed
           By Attorney Hanigan On Behalf Of Attorney Bandas ............................ 5

      D.   Baseless Arguments And Sanctionable Conduct Related
           To The Kelly Kress Objections (ECF 226) Filed By
           Attorneys John Kress, Steve Miller And Jonathan Fortman ................... 13

      E.   Baseless Arguments And Sanctionable Conduct
           Including Non-Compliance With A Duly-Served
           Subpoena Related To The Sweeney Objection (ECF 234) ..................... 17

      F.   Baseless Arguments And Sanctionable Conduct By
           Serial Objector W. Allen McDonald And Withdrawn
           Lawyer Scott Cain Including Their Refusal To
           Comply With Court-Ordered Discovery (ECF 236) .............................. 19

      G.   The Liacopolous Objection (ECF 235) Is A Vehicle By
           Attorney Sam Miorelli To Use His Mother And
           Disabled Grandfather To Enrich Himself ................................................. 22

II.   CONCLUSION ......................................................................................... 23

i

**I.      ALL OF THE OBJECTIONS ARE WITHOUT MERIT
AND SHOULD BE REJECTED AND MANY ARE SANCTIONABLE**

Class Counsel recognize that objectors can provide genuine assistance by identifying problems in a proposed settlement and accompanying fee request. However, unlike most class settlements and fee requests, the contested fee process agreed to here has provided the Court with a rich, adversarial record upon which to evaluate the settlement recovery and fee request in comparison to settlements where there is an agreed-to fee pursuant to a "clear sailing" agreement. Moreover, "when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, **particularly when indicative of a motive other than putting the interest of the class members first**." *Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 163118, at *11 n.2 (S.D. Cal. Nov. 14, 2013) (emphasis added); *Roberts*, 2014 WL 4568632 at *15 (overruling objections in part because they were "made with an improper motive (to extract a fee and not to benefit the Class).

Class Counsel previously addressed the objections as to the settlement (*see* ECF 254-2 at 14-25) and the requested fees (*see* ECF 276 at 34 and *passim*). Class Counsel further address certain of the objections below to provide the Court additional information, including information from discovery recently obtained from objectors and their counsel. This information further demonstrates that the objections are without merit and should be rejected; that many were brought in bad faith for an improper purpose (indeed, several objectors' counsel claimed that they have no obligation to consider the interests of the absent class members on whose behalf the objections were purportedly brought); and that certain objectors and their counsel appear to have engaged in sanctionable conduct in violation of Rule 11 and 28 U.S.C. § 1927. As such they should be stricken or denied and/or fees awarded for having to respond to their submissions.

### A.     Relevant Rule 11 Standards

The purpose of Rule 11 "is to deter dilatory pretrial tactics and to streamline litigation by excluding baseless filings." *See, e.g.*, *Khan v. Park Capital Secs., LLC*, 2004 U.S. Dist. LEXIS 15659, at *6-7 (N.D. Cal. Aug. 5, 2004) (citations omitted). The rule requires that an attorney who is presenting a pleading, motion, or other paper to the court certify that to the best of that attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] . . .

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(1), (3).  Rule 11 sanctions may be initiated upon the motion of a party, Fed. R. Civ. P. 11(c)(2), or on the Court's own initiative,  Fed. R. Civ. P. 11(c)(3) ("*On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)"). With respect to Rule 11 motions, the rule contains a safe harbor provision that requires that the moving party serve the proposed motion on the opposing side and then wait twenty-one days before filing it with the court. *See* Fed. R. Civ. P. 11(c)(2) ("The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). Because Class Counsel had to litigate motions to compel/quash to obtain much of the relevant discovery from objectors and their counsel, there was not enough time prior to the August 25, 2016 Final Approval Hearing to follow the Rule 11(c)(2) 21-day process. As a result,

should the Court be inclined to evaluate whether certain objectors and their counsel engaged in sanctionable conduct, the Court could proceed under Rule 11(c)(3) or alternatively order certain objectors/counsel to respond to the issues raised herein by a date certain pursuant to Rule 11(c)(2).[1] In any event the evidence presented as part of this Memorandum can be utilized as part of this Court's evaluation of the Settlement, Fee Motion, and objections.

The Court may impose Rule 11(c)(2) sanctions in two circumstances: "where a litigant makes a 'frivolous filing,' that is where he files a pleading or other paper which no competent attorney could believe was well-grounded in fact and warranted by law, and where a litigant files a pleading or paper for an 'improper purpose,' such as personal or economic harassment." *Benedict v. Hewlett-Packard Co.*, 2014 U.S. Dist. LEXIS 7323, at *14 (N.D. Cal. Jan. 21, 2014) (citing *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987)). "'A frivolous filing is one that is *both* baseless *and* made without a reasonable and competent inquiry.'" *Id.* (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996)) (emphasis original); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) ("The word frivolous does not appear anywhere in the text of the Rule; rather, it is a shorthand that this court has used to denote a filing that is both baseless and made without a reasonable and competent inquiry.").

In determining whether the filing was frivolous or made for an improper purpose, the courts undertake an objective inquiry.  *See, e.g.*, *Yack v. Wash. Mut. Inc.*, 2008 U.S. Dist. LEXIS 124314, at *5 (N.D. Cal. Aug. 14, 2008) (citing *G.C. & K.C. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 1990)). "The 'reasonable man' against which conduct is tested is a competent attorney admitted to practice before the district court." *G.C. & K.C. Ins., Inc.*, 326 F.3d at 1109

---

[1] Class Counsel note that objectors have had far more than 21 days' notice of the sanctionability of the conduct set forth herein, but have nonetheless refrained from withdrawing or modifying their objections.

(citations and quotations omitted). Additionally, courts should consider "[w]hether the improper conduct was . . . part of a pattern of activity, or an isolated event; . . . whether the person has engaged in similar conduct in other litigation; . . . [and] what effect it had on the litigation process in time or expense." Fed. R. Civ. P. 11 Advisory Committee's Notes (1993 Amendments); *see also Vollmer v. Publrs. Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001) (noting that the district court's consideration that the attorneys were "professional objectors" was proper under Rule 11).

There is a higher standard for Rule 11(c)(3) sanctions, which requires conduct "akin to contempt" which necessitates a finding of bad faith or reckless conduct." *Nelson v. Patel*, 2010 U.S. Dist. LEXIS 44497, at *13 (C.D. Cal. Mar. 26, 2010) (citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003)). In contrast, under Rule 11(c)(2), no showing of bad faith or subjective intent is required. *See, e.g.*, *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 173-74 (C.D. Cal. 2002) ("Rule 11 is designed to deter attorneys and unrepresented parties from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis; no showing of bad faith or subjective intent is required.").

**B.    Baseless Arguments and Sanctionable Conduct Related to the Hightower/Whaley Objections (ECF 231) filed by Suspended Attorney Darrell Palmer and Continued by Palmer's Co-Counsel Attorney Steven Helfand**

This Court disqualified suspended attorney Palmer from participating as counsel in this case and struck the objections of his clients.  ECF 298. As set forth in the Motion to Disqualify (ECF 243-1 at 6-9), the objections were baseless because, they falsely claimed that "there is no recourse for reimbursement resulting from any collateral damage caused by the fire resulting from Whirlpool's design defect" (there was no release for such individualized damages); that "it is unclear

4

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN RESPONSE TO CERTAIN OBJECTIONS BASED ON RECENTLY-COMPLETED DISCOVERY CASE NO. 8:11-cv-01733-FMO (JCGx)

whether the rebates are 'stackable,' meaning they can be combined with other discounts" (they clearly are); and that Class Counsel failed to produce detailed time records to the Defendants and the Court (we did). Attorney Steven Helfand associated as co-counsel with suspended attorney Palmer for the objection (ECF 250) but, despite his, and his clients Whaley's and /professional objector Hightower's[2] knowledge of the false and inaccurate statements in the objection, never bothered to withdraw or modify them prior to the Court striking them. In communications with Class Counsel, Helfand promised he would withdraw as counsel if his clients refused to cooperate in providing the same deposition and document discovery ordered by the Court from other objectors, but when his clients refused to cooperate in discovery, Helfand initially stated he would withdraw but then abruptly reversed course and refused to withdraw.  Declaration of Steven A. Schwartz in Support of Plaintiffs' Supplemental Memorandum in Response to Certain Objections Based on Recently-Completed Discovery ("Schwartz Decl."), ¶ 2 and Ex. 1 (email correspondence).   The Court struck the objections shortly thereafter.

### C.   Baseless Arguments and Sanctionable Conduct Related to the Knott/Smith Objections (ECF 231) filed by Attorney Hanigan on Behalf of Attorney Bandas

Details regarding the fact that Messrs. Hanigan and Bandas are notorious "professional" or "serial" objectors who have a long history of asserting baseless objections to class action settlements in order to extort fees for themselves with no corresponding benefit to class members are set forth at ECF 271 and ECF 279.

The discovery obtained here demonstrates that the Knott/Smith objections were filed in bad faith for an improper purpose without a reasonable basis, proper investigation, or evidentiary support. Mr. Hanigan never communicated with his

---

[2] *See* ECF 343-1 at 9:5-15 for background on Mr. Hightower.

clients before (or even any time after) filing their objections which were written by the Bandas Law firm; nor did Ms. Knott or Ms. Smith directly speak with Bandas or any other attorney in his firm before the objections were filed; and Ms. Knott disclaimed most of the objections filed on her behalf.

Incredibly, Mr. Hanigan signed and filed the objections on May 27, 2016 even though he first received a draft earlier that day and billed only .7 of an hour (42 minutes) total for reviewing, filing and then refiling an amended objection (ECF 232) that added a missing document.  He also never communicated with any attorney (including Mr. Bandas) either; he only exchanged emails with Bandas' paralegal Donna Lopez. That was the sum total of Mr. Hanigan's due diligence for filing the objection. *See* Schwartz Decl., Ex 2 (Hanigan Declaration) at page 5 (privilege log); Ex. 3 (Hanigan Deposition excerpts) at pages 12-18; 23. Nonetheless, Hanigan testified that he believed he complied with his obligations under Rule 11.  Hanigan Tr. at 28-30. His testimony makes clear he did not read any relevant documents like the preliminary approval papers including the Settlement Agreement, the Preliminary Approval Order or related papers, or class counsel's fee motion.  He simply relied on the Bandas firm, which did the majority (if not all) of the substantive work on drafting the objection and purportedly making sure they were consistent with their shared clients' views and instructions.  *Id.* at 51-53; 58-74. Because he knew that Bandas, consistent with his sanction-avoidance practice, would not enter his appearance, Hanigan should have been on full notice of the need to personally and independently confirm the *bona fides* of the objection he signed and filed.

Bandas' objector-client Knott testified that her retainer agreement was with Mr. Bandas; that her retainer with Mr. Bandas required him to get her agreement "in writing" before associating with other counsel to "assist" him in his representation of Ms. Knott, which she expected to be strictly followed; that Mr.

Bandas never obtained such written consent to associate with Mr. Hanigan; that she did not even know Mr. Hanigan was representing her; that she never spoke with Mr. Bandas *or any other lawyer* before the objection was filed; and she only spoke with a Bandas' paralegal who had been a long-time friend. ECF 271 at 23 & Schwartz Decl. (ECF 269-2) (Knott transcript excerpts) at pages 34-38; 46-47; 94-98; 102; 121-123; and 269-3 (Bandas retainer).[3] Ms. Smith similarly testified that she never spoke with anyone from Mr. Bandas' or Hanigan's office. She too only communicated via email with Bandas' paralegal Ms. Lopez, and believes that Mr. Bandas represents her for purposes of presenting her objection to this Court. Schwartz Decl., Ex. 4, at 21-24; 57.  She also had no idea that her attorneys were not going to participate in the Final Approval Hearing.  *Id.* at 24-25.[4]  She also had no objection to the aspect of the Settlement providing full recovery of repair costs for class members who suffered Overheating Events, which she agreed was better than a compromise since it provided for a full recovery. *Id.* at 29-31.[5] She also agreed that warranty insurance that provides compensation for future Overheating Events for her current dishwasher has benefit and value to her. *Id.* at 47-48; 138-140. Smith also admitted that besides the postcard notice she received, she never

---

[3] Mr. Bandas is well known for using "local counsel' like Mr. Hanigan to file objections written by Mr. Bands on behalf of Bandas' clients while Bandas remain behind the scenes to avoid being subject to jurisdiction for sanctions motions. ECF 271 at 7, 22-23, 25, 35-37; ECF 289 at 3-5.

[4] Ms. Smith also could not say whether she saw the objection before it was filed or provided any input into its drafting or editing.  *Id.* at 26.

[5] Based on her lawyers' determination, Ms. Smith believes she suffered an Overheating Event and therefore filed an $820 claim including $121 for repairs for an alleged Overheating Event and the rest for the purchase of a replacement dishwasher. *Id.* at 84-87.  The independent settlement administrator KCC will evaluate that claim, but Smith agreed that if she received $820 that would be a fair settlement. *Id.* at 87. She also admitted if she decided to replace her current dishwasher she would consider the impact of the settlement rebate for what dishwasher to get.  *Id.* at 88-89.

7

read any other court document like the Complaint, preliminary approval papers and Order, and fee petition papers. *Id.* at 66. Despite her objections to the fees, at the time she filed her objection Smith did not even know that Defendants would be contesting the amount of fees. *Id.* at 78. She also has no idea if Class Counsel's lodestar is more than $4 million. *Id.* at 92. Neither Knott nor Smith were provided information regarding the reputations of Bandas or Hanigan. Knott Tr. at 153-173; Smith Tr. at 63-34; 112-122.

Against this backdrop, with virtually no due diligence, Attorney Hanigan filed the objections on behalf of Knott and Smith challenging the fees, baselessly claiming that the contested fee process represents a "tacit exchange" of a settlement with "minimal payout" for "little resistance to class counsel's request for an exorbitant amount of attorneys' fees." ECF 232 at 7. That is not true. The Notice, preliminary approval papers, and Fee Motion clearly stated there would be a contested fee process, which, as reflected by Defendants' adversarial opposition, is extremely adversarial. Nonetheless, lawyers Bandas and Hanigan never even bothered to tell their client Knott that Whirlpool was filing and in fact filed an opposition to the fee request. Knott Tr. at 145-146; 173. When presented with these facts *for the first time* at her deposition, Ms. Knott testified that she disagrees with her attorneys Hanigan and Bandas regarding the proper amount of fees. She testified that she did not care about how much Whirlpool pays Class Counsel in fees, and opined that Class Counsel should at least get their lodestar and costs (about $9 million) and would not object if this Court awarded multiples of 2 ($18 million) and 3 ($27 million)—far more than Class Counsel asked for! Knott Tr. at pages 67-68; 73-77; 145-146. Yet Hanigan testified that: "The objection's what my clients don't like about it [*i.e.* the settlement]." Hanigan Tr. at 88. How he complied with his Rule 11 obligations to figure out what his clients do and do not like is

unclear. Why the objection has not been withdrawn or substantially modified is similarly unclear.

The objection also baselessly claims that the $100,000 proposed payment from Whirlpool to purchase Mr. Chambers' websites is "an unreasonable sum [that] represents consideration that could have gone to the class."  But attorneys Bandas and Hanigan never told their clients about this Court's detailed analysis in the Preliminary Approval Order approving the proposed sale. After having the opportunity to read that analysis *for the first time* at her deposition, Ms. Knott testified that she does not object to that sale or the price.  To the contrary, she agreed with this Court's detailed analysis approving it because, given the important safety benefits resulting from Mr. Chambers' work and his websites: "It makes sense." Knott Tr. at 147-152 (quotation at 150:25).

When attorneys file an objection that does not correlate with their clients' interests or knowledge, there is a strong presumption that the attorneys filed the objection for an improper purpose. *See Huettig & Schromm, Inc. v. Landscape Contractors Council*, 790 F.2d 1421, 1426-27 (9th Cir. 1986) (citations and quotations omitted) ("Attorneys do not serve the interests of their clients, of the profession, or of society when they assert claims or defenses grounded on nothing but tactical or strategic expediency. . . . [A] strong inference arises that their bringing of an action such as this was for an improper purpose."). *See also Townse*nd, 929 F.2d at 1366 (affirming the district courts imposition of sanctions where the attorneys "conducted absolutely no inquiry before filing that complaint"). Since objector Knott disclaimed the objections that Mr. Hanigan and Mr. Bandas wrote and/or filed purportedly made on her behalf, the objection was not serving the interest of the client, or the Court, or the class. Rather, the objection was clearly filed for an improper purpose, without evidentiary support or a proper investigation, solely for the benefit of the lawyers in order to try to extort a fee from the class

action settlement process. *See Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 148148, at *14-15 n.4 (S.D. Cal. Oct. 15, 2012) (citing *Vollmer*, 248 F.3d at 659-60) ("Thus, the only 'matter' counsel could wish to 'settle' for $30,000, is the arguably inappropriate quid pro quo—essentially, 'We'll go away in exchange for $30,000; otherwise, we'll file lengthy objections'—Objector's counsel demanded. . . . With this plausible interpretation in mind, then, class counsel's opinion that a retaliatory filing violates Rule 11 is not such a wild notion."); *see also Vollmer*, 248 F.3d at 709 (noting that an attorneys' clients' "marked unfamiliarity with basic components of the settlement supports the courts finding that [the client] was put forward by his attorneys solely to enable them to collect fees in this action," which indicated an improper purpose).

Courts have imposed Rule 11 sanctions where, like here, a meritless objection has the effect of obstructing and delaying the distribution of the settlement to the detriment of the entire class. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 131 (S.D.N.Y. 1999). In *In re NASDAQ Market-Makers Antitrust Litig.,* a disbarred attorney filed objections to a settlement in order to get more money for his "own unrelated claims." *Id.* at 130. The district court imposed Rule 11 sanctions on him because the objector "has abused the litigation process by pursuing his personal agenda even though his claims have no chance of success under the existing precedents, and no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Id.* at 131 (citations omitted). "The cumulative effect of [the objector's] repeated filings is to obstruct and delay the administration of the $ 1.027 billion settlement to the detriment of the entire class." *Id. See also* ECF 289 at 3-5 (discussing ongoing sanctions proceedings against Bandas and his local counsel in *Garber v. Office of the Cmm'r. of Baseball*).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Second, Mr. Hanigan and Mr. Bandas did not make a reasonable inquiry into the factual bases of the objection. *See Benedict*, 2014 U.S. Dist. LEXIS 7323, at *43 (quoting *Townsend*, 929 F.2d at 1364)) ("Such a factual investigation is 'an inquiry reasonable under all the circumstances of a case'"); *Maisonville v. F2 America, Inc.*, 902 F.2d 746 (9th Cir. 1990) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986)) ("Rule 11 was 'designed to create an affirmative duty of investigation both as to law and as to fact before motions are filed.'"). Neither attorney ever spoke with either objector Knott or Smith. They relied on Bandas' paralegal. A reasonable inquiry would have included, at some point, meaningful attorney communication with their clients to ascertain their true dissatisfaction with the settlement agreement. *See Oganyan v. Square Two Fin.*, 2012 U.S. Dist. LEXIS 144194, at *6 (C.D. Cal. Sept. 26, 2012) (citations omitted) ("Thus, sanctions are proper where it is clear that an attorney failed to conduct even a cursory factual or legal inquiry into the merits of his client's claims . . . .").

Further, a reasonable inquiry by the attorneys before filing an objection to a class settlement would entail reading and understanding the basic terms of the settlement agreement, preliminary approval papers and Preliminary Approval Order, along with the fee motion papers. *See* Fed. R. Civ. P. 11 Advisory Committee's Notes (1983 Amendments) ("[W]hat constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether they had to rely on a client for information as to the facts underlying the . . . motion, . . . ."). *See also Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 985 (law firm sanctioned under Rule 11 for "misstatements of fact"); *Wu Grp. V. Synopsys, Inc.*, 2005 U.S. Dist. LEXIS 42351, at *39 (N.D. Cal. Aug. 10, 2005) ("By requiring certification that a pleading's allegations and factual contentions have evidentiary support, Rule 11 requires, *inter*

*alia*, that counsel not misrepresent to the court the results of the investigation into the plaintiff's factual allegations."). Thus, because the objection was factually baseless and formed without a reasonable inquiry, Mr. Hanigan's and Mr. Bandas' objection was factually frivolous and is sanctionable. *See* Fed. R. Civ. P. 11(b)(3). Mr. Hanigan's virtually-complete reliance on Bandas in filing the objection and amended objection within 42 minutes of first receipt is deficient.

"A district court confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose…This is permissible because the test for improper purposes is objective." *Townsend*, 929 F.2d at 1365 (citing *Zaldivar*, 780 F.2d at 829); *see also Thomas v. Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010) (noting that sanctions were warranted when the "factual contentions were so weak—made without a reasonable and competent inquiry—that they provide objective evidence of improper purpose").[6] The attorneys are professional objectors, they and their clients lacked knowledge of the basic terms of the settlement agreement, and a client disclaimed the objections made on her behalf. Thus, attorneys Hanigan and Bandas filed the frivolous objection for a sanctionable improper purpose.

Lastly, Rule 11 is designed to function as a deterrent to frivolous filings; that rationale is significant considering Mr. Hanigan and Mr. Bandas are serial objectors with a reputation for filing baseless objections. *See* Fed. R. Civ. P. 11 Advisory Committee's Notes (1993 Amendments) (noting that courts should consider "[w]hether the improper conduct was . . . part of a pattern of activity, or an isolated event; . . . whether the person has engaged in similar conduct in other litigation; . . .

---

[6] *See, e.g.*, *Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, at *31 (C.D. Cal. Sept. 11, 2014) (describing Mr. Hanigan as a serial objector and noting that the objection he asserted on behalf of his client "misunderstand[s] or misread[s] the Settlement Agreement, or provide[s] no evidence or support (besides attorney argument) to advance his objection.").

[and] what effect it had on the litigation process in time or expense"); *accord Corrigan v. Unknown King Cty. Deputy*, 2006 U.S. Dist. LEXIS 78594, at *5 (W.D. Wash. Oct. 27, 2006); *MetLife Bank, N.A. v. Badostain*, 2011 U.S. Dist. LEXIS 48398, at *11-12 (D. Idaho May 4, 2011); *see also Vollmer v. Publrs. Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001) (noting that the district court's consideration that the attorneys were "professional objectors" was proper under Rule 11). It is particularly significant that, given Mr. Bandas long and sorted history of being excoriated by various courts, neither Bandas nor Hanigan ever bothered to tell either Ms. Smith or Ms. Knott of Bandas' soiled reputation.  They learned about that for the first time at their depositions as well. Knott Tr. at 153-173; Smith Tr. at 112-122. When advised for the first time at her deposition that Mr. Bandas' business model was to use objections to extract fees for dismissal of the objections or appeals from the settlement or fee approval, without any corresponding benefit to the class, Ms. Knott tersely rejected that business model. Knott Tr. at 154-156; 166; 168-169.

The Smith/Knott Objection should never have been filed, and after Ms. Knott's and Ms. Smith's depositions, it should have been immediately withdrawn (in whole or at least significant part). That the lawyers behind the objection have persisted in the objection demonstrates the true motive is not to improve the settlement or assist the Court in any of its determinations in connection with Final Approval, but to create a vehicle for delay as a mechanism to extract fees.

**D.     Baseless Arguments and Sanctionable Conduct related to the Kelly Kress Objections (ECF 226) filed by Attorneys John Kress, Steve Miller and Jonathan Fortman**

The Kelly Kress Objection repeatedly falsely states that the settlement only provides payments for Class Counsel and the Class Representatives and no cash

13

payments for class members.[7]  At their depositions attorneys Fortman and John Kress refused to admit these misstatements should be corrected.  Schwartz Decl., Ex. 5 (Fortman Tr.) at 54-62 and Ex. 6 (Kress Tr.) at 60-65.

Attorneys Miller, Fortman and Jon Kress are professional objectors who routinely file frivolous, cut-and-paste objections, where one of the attorneys in their group (or, like here, members of their family, including the wives of Miller and Kress and sisters of attorney Maureen Connors, who is often their co-counsel) serves as the objector and the others serve as counsel, in a sort of round robin rotation.  ECF 268-1 at 7-8; Fortman Deposition Tr. at 15-18. Despite their outrageous charges that Class Counsel and the Class Representatives have of conflicts of interest, when these attorneys are able to extract fees in their objections, they share attorneys' fees on an equal basis with the person designated as "objector" (as opposed to objector's counsel) where the "objector" is a licensed

---

[7] *See* objection at page 2 ("it's only Mr. Chambers and class counsel getting paid on this case"); page 3 ("…the class members get nothing but cash incentives for purchasing new dishwashers--not benefits to class"); page 4 ("Meanwhile, the class members get nothing more than a discount toward a future dishwasher purchase"); page 8 ("class members have to spend money to get the benefits, but the named plaintiffs get cash and don't need to spend money"); page 9 ("Class Counsel has demonstrated that they are willing to sell out the Class Members, who each are not scheduled to receive any funds, while the Named Plaintiff and perhaps other persons are earmarked for distributions for $100,000 for a website that has no value to Defendant once this lawsuit is concluded" and "Class Counsel has negotiated a settlement which provides a windfall of compensation to one particular client while limiting the recovery of the absent class members to discounts on Defendants' product" and "This behavior of permitting the class action suit to be used as a vehicle to sell one named class member's websites to the Defendants while giving the class members merely a discount on future products purchased from Defendants demonstrates the existence of divided loyalties"); page 14 ("the only class members that will benefit are those class members who have decided that despite Defendants' track record of selling products that catch fire they have decided to play Russian roulette with the performance of such product again by making a new purchase, risking yet again another malfunction and suit").

attorney[8] because the person serving in the objector role purportedly does an equal amount of legal work and exactly the same type of work prosecuting the objection as the counsel of record. Fortman Tr. at 22-27; 67-68.   Underlying this conduct is their belief that objectors and objectors' counsel have no duties whatsoever to the absent class members for whose benefit the objections were purportedly brought. Fortman Tr. at 17-18. They admitted that they have extracted cash from Class Counsel for dismissal appeals without any corresponding benefit to the class, but, despite this Court and the Eastern District of Missouri ordering them to provide a listings of such payments and testify about them, they wrongfully refused to provide, either in the sworn list or testimony, the *amounts* of any such payments, including the amount of the payment they extracted for dismissing their appeal in *Roberts v. Electrolux*, where the Court denied their objections in full and no extra benefit was achieved for dismissing the appeal.[9] Fortman Tr. at 30-37; Kress Tr. at 17-24; 30-33.[10] They justify this extortion racket by claiming that in cases where

---

[8] They assert they never share fees or procure any payments for any non-attorney objectors. Fortman Tr. at 22-23

[9] These lawyers took great pains to tell this Court that Judge Snyder, in an amended order in *Roberts*, removed language excoriating these counsel because "it was untrue" and labelling Class Counsel's statement that the language was removed "in connection with the agreement of various objectors to drop their appeals without any corresponding benefit for the class" as "rumor and innuendo." ECF 294 at 4-5. At their depositions, they admitted that Class Counsel were correct--the language was removed as part of their agreement to dismiss the appeal (which allowed the class members to start receiving their class relief) in exchange for a cash payment with no corresponding benefit to the class or reduction in fees to class counsel. John Kress Tr. at 22-29.

[10] The linguistic basis for refusing to provide this information was an argument that "[i]n appeals the objection is not withdrawn" and the inaccurate assertion that therefore such information was therefore not covered by the document request and therefore also not covered by the order compelling deposition testimony.  Fortman Tr. at 32. In fact, the subpoena document request 3(C) included information related to "any relief was obtained for the Class in conjunction with the resolution, dismissal or withdrawal of any such OBJECTIONS (**including appeals related to**

there is zero change to the settlement agreement they nonetheless created a benefit "by bringing the objection and raising these issues" because "every case that we've filed benefits the class in injecting the adversarial process…"  Fortman Tr. at 31, 35; John Kress Tr. at 22-24.[11] And despite challenging the proposed service awards to the class representatives here, they hypocritically believe that when they are class counsel in a case, their class representative clients deserve a service award. Fortman Tr. at 106-107.

With respect to the Settlement, they admitted it is rather extraordinary to get a full recovery of out of pocket fees.  Fortman Tr. at 70-71. That is exactly what the settlement achieves here for class members who suffered an Overheating Event. Their objection focusses on what they believe is inadequate relief for Class Members like them who will never experience an Overheating Event before they retire their dishwasher after its expected life. Despite the fact that this portion of the class has no out-of-pocket damage beyond "price premium" damages, Mr. Kress admitted that, despite his vast experience as objector's counsel in consumer class actions, he had no working knowledge of the ground-breaking price premium damages certifications achieved in the Whirlpool front load washer cases beyond reading an online article about it. Kress Tr. at 50-53. They also admitted the Settlement is more valuable because, in addition to the relief for class members who experienced Overheating Events, the Settlement also provides the rebate discounts for class members who will never suffer an Overheating Event. Fortman Tr. at 97-98. Despite their focus criticizing the rebates, Mr. Fortman did not even know that they were stackable, and his client Kelly Kress along with her husband

---

such OBJECTIONS)…" ECF 268-4 at 18 (emphasis added) and the issue of appeals, including in *Roberts*, was highlighted in the motion to compel. *See, inter alia*, ECF 268 at 3:28, 6 footnote 6, 7:12, 9:3, 9:11, 9:23, 11:1, 11:23, 13:2.

[11] Apparently they hypocritically believe that they should get paid for achieving zero success while asserting that class counsel should never be paid a lodestar-based fee.

John Kress repeatedly testified that some clerk in the Sears store might refuse to honor the settlement rebate in addition to unrelated ongoing sales even though it is the Settlement Administrator, not some store clerk, who processes and pays the Settlement rebates. *Id*; John Kress. Tr. at 45-47; 70-74. This utter ignorance of basic terms of the settlement and relevant law that goes to the core of their objection demonstrates a lack of a proper investigation.

With respect to fees, the Kress objection minimizes the import of the contested fee process here (page 19) and makes unsupported reckless statements alleging collusion between Class Counsel/Class Representatives and Defendants. *See* page 2 ("settlement an "unsophisticated marketing ploy"); page 9 ("Class Counsel has demonstrated they are selling out the Class Members…"); page 18 (accusing Class Counsel of "rolling out and supporting Defendants' marketing efforts…"). Yet they were forced to admit the obvious--that the contested fee process provides an adversarial process for the Court with respect to the appropriate amount of fees, that Defendants' fee opposition covers all issues raised in the objections, and that they have "never seen one as well as [Defendants] have done." Fortman Tr. at 39-41.  Under these circumstances, the continued fee objections of these and the other objectors are baseless and add little if anything to assist the Court in its evaluation of fees.  Accordingly, regardless of the Court's decision regarding fees, the Court should hold that none of the objectors have provided a benefit to the class (or assistance to the Court) that would justify a payment of any fees to any of the objectors or their counsel.

### E. Baseless Arguments and Sanctionable Conduct Including Non-Compliance With A Duly-Served Subpoena related to the Sweeney Objection (ECF 234)

Patrick Sweeney is an attorney who has served as an objector or objector's counsel in over a dozen cases, including making similarly-frivolous objections in *Roberts v. Electrolux* where he served as Darrell Palmer's client. *See Roberts*, 2014

17

U.S. Dist. LEXIS 130163,  at 33-34 ("The Court has considered the objections of Mr. Sweeney, overrules them in their entirety, finds that they are not made for the purpose of benefitting the Class, and finds that they are meritless in all respects.'); *see also Roberts* Docket, No. 12-1644-CAS, at ECF  165; *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, **22-24 (N.D. Cal. July 11, 2014) (overruling objections and recognizing that "[l]ike Darrell Palmer, attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings).

Class Counsel served the same subpoena on Mr. Sweeney as it served on the other professional objectors. Schwartz Decl., ¶ 8. Sweeney never served objections or filed a motion to quash; was provided with orders compelling the same discovery; and in telephone conversations and email exchanges with Class Counsel, Mr. Sweeney requested an extension and promised that he would comply and provide a list of his objections/payments by August 2, 2016 plus sit for a deposition prior to the Final Approval Hearing. Despite repeated requests, he has failed to provide a complete list of objections and refused to provide any information regarding payments he extracted (or verified there were no corresponding benefits to the class) and has become non-responsive. *Id.* ¶ 9 and Ex. 7. He should be sanctioned for his non-compliance. Indeed, it is possible he is covertly working with suspended attorney Palmer in connection with this case.

He should also be sanctioned for Paragraph 9 on page 5 of the objection, which objects to a non-existent *cy pres* provision that he obviously mindlessly copied from some other objection.  *See Cooper v. Sedgwick County*, 206 F. Supp. 2d 1126, 1143 n.18 (D. Kan. 2002) ("This behavior [of inadvertently cutting and pasting irrelevant material from another case] is annoying when perpetrated by 'prison lawyers' but is utterly indefensible when undertaken by a lawyer who has taken an oath to perform legal services in a professional manner."); *Moser v. Bret*

*Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 950 (E.D. Cal. 2005) (citing *Stewart v. American International Oil & Gas Co.*, 845 F.2d 196 (9th Cir. 1988)) (explaining that Rule 11 means the attorney signing the pleading has actually read it, and has conducted a "reasonable inquiry" to ensure that it complies with the standards above).

At page 4 he inaccurately claims the fee request is $19 million when it is $15 million and asserts that there is a lack of information and the value of the settlement and counsel's lodestar and time records, reflecting that he never read the fee motion before filing his objection, despite claiming that the PACER docket "resembles nothing like a Pacer Docket should look like..." His assertion that class members and the Court were not provided with relevant information to evaluate fees coupled with failure to read the key documents providing that information is also sanctionable.

**F.    Baseless Arguments and Sanctionable Conduct By Serial Objector W. Allen McDonald and Withdrawn Lawyer Scott Cain Including Their Refusal To Comply With Court-Ordered Discovery (ECF 236)**

Even though he is not admitted to practice in this Court and as discussed below was excoriated for practicing in the Northern District without being admitted there, Tennessee attorney Cain signed and filed this Objection for attorney McDonald on June 1, 2016 and only withdrew his appearance on 2016 after he admitted he could not find a local counsel willing to sponsor him for admission *pro hac vice*. ECF 257. Class counsel secured an order from the United States District Court for the Eastern District of Tennessee compelling largely the same deposition and other discovery from Cain and McDonald as ordered by this Court, but to date, they have refused to appear for their depositions in advance of the Final Approval Hearing.  Schwartz Decl., Ex. 8 (Memorandum and Order); ¶ 10 and Ex. 9 (email

exchange). Their refusal to timely comply is consistent with their checkered history as serial objectors.

For example, separately and as co-counsel, Cain and McDonald:

- Routinely raise numerous objections to class settlements, and almost always voluntarily dismiss the objections on appeal. *See, e.g., In re DRAM Antitrust Litig.*, 02-md-01486 (N.D. Cal.); *In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*, No. 09-md-02086 (W.D. Mo.);

- Attempted to "sell" objections for their own pecuniary gain. *See, e.g., In re Enfamil LIPIL Mktg. & Sales Pracs. Litig.*, No. 11-md-02222 (S.D. Fla. Feb. 9, 2011) ("The Court is also troubled that [objector's] attorney, W. Allen McDonald, offered to withdraw her appeal in exchange for a payment of $150,000. This settlement offer suggests that Pack's objections are tied to her ability to garner a windfall for herself rather than ensuring an adequate settlement for the class. . . the Court agrees that there is evidence of bad faith on the part of Pack. Pack is represented by her brother's law firm . . . she did not sign a retainer agreement with the firm . . . she had never read any documents concerning this litigation . . . ."); and

- Have been denied admission to the courts as a result of unethical conduct. *See, e.g., In re Netflix Privacy Litig.*, 11-cv-00379, Dkt. 341 (N.D. Cal. Mar. 5, 2014) ("Having carefully reviewed this matter, the court has determined Plaintiffs' objections to Attorney Cain's *pro hac vice* admission are meritorious. Indeed, Plaintiffs have shown that Cain filed documents in this action and appeared at two depositions prior to filing this application, all in violation of Civil Local Rules 11-1 and 11-3. These instances coupled with the additional conduct described in Plaintiffs' opposition provide sufficient reason to question Attorney Cain's ability to observe the duties and responsibilities required by an attorney admitted in this district. *See* Civ. L.R. 11-4(a)").

Examples of McDonald's abuse abound. *See, e.g., In re Pre-Filled Propane Tank Mktg. & Sales Practices. Litig.*, No. 9-md-2086, Dkt. No. 289, at 5 (W.D. Mo. May 31, 2012) (ordering McDonald's client to post $25,000 appeal bond because

20

objection was "without merit" and client was "unlikely to prevail on appeal."); *Pecover v. Elec. Arts,* Case. No. 8-cv-2820, Dkt. 465, at 8–11 (N.D. Cal. May 30, 2013) (overruling McDonald's client's generic objections of unfairness, lack of adequacy of the class representative, excessive attorneys' fees, *etc.*). Just a few months ago, and after a court overruled all of McDonald's objections to another class action settlement, Attorney McDonald filed a notice of appeal that was dropped before any briefing occurred. *See Kolinek v. Walgreen Co.*, No. 13-cv-4806, Dkts. 210, 238 (N.D. Ill. Feb. 1, 2016).

McDonald also frequently hides in the shadows of other serial objectors with whom he works. For example, in *In re Netflix Privacy Litigation*, McDonald was instrumental in attempts to obstruct the settlement with a baseless objection and appeal, even though his own "client" admitted she had not even talked to her attorneys until the day of her deposition and had no idea what had happened in the case. *See* Deposition Transcript of Judith Mallory, *In re Netflix Privacy Litigation*, No. 11-cv-379, Dkt. 338-2 (N.D. Cal. Feb. 20, 2014). In *Kolinek v. Walgreen Co.*, McDonald enlisted the same professional objector he worked with in *Netflix* to ghost-write an objection for his client. *See* Pl.'s Mem. in Supp. of Final Approval, No. 13-cv-4806, Dkt. 137-1, at 50–51 (N.D. Ill. July 29, 2015).

Attorney Cain also has a reputation for making baseless objections to class action settlements. *See, e.g., Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84-85 (1st Cir. 2015) (affirming district court's award of attorney fees and rejecting arguments of an objector represented by Cain that attorneys' fees were unreasonable based upon the amount of work performed, finding instead that "there was 'extensive fact discovery,' '. . . significant motion practice,' and an attempt at mediation."); *Hill v. State St. Corp.*, No.1:09-cv-12146-GAO, 2014 U.S. Dist. LEXIS 179702, at *51 (D. Mass. Nov. 26, 2014) (holding "the objection to the reasonableness of the fee requested is without merit" and that objector represented by Cain presented an

21

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN RESPONSE
TO CERTAIN OBJECTIONS BASED ON RECENTLY-COMPLETED DISCOVERY
CASE NO. 8:11-cv-01733-FMO (JCGx)

objection "which provides no specifics other than to object to the total amount, [and] is not persuasive.").

The McDonald Objection raises the usual boilerplate, including outrageous, baseless statements and allegations of collusion. For example, nowhere in the 24 page objection is there any meaningful discussion of the fact that the Settlement provides for a contested fee petition.  The objection incongruently claims at page 10 that "the negotiated fee bill has earmarks of collusion" and at page 8 footnote 8 that "class counsel provide little, if any, detail in their billing records to explain the tasks performed," when in fact Class Counsel provided both Whirlpool and the Court with their detailed daily time records and the contested fee process is the opposite of collusion.

### G.   The Liacopolous Objection (ECF 235) is a Vehicle by Attorney Sam Miorelli to Use his Mother and Disabled Grandfather to Enrich Himself

Objector George Paul Liacopolous is incapacitated and, therefore, the objection was made through his daughter, Jan Liacopolous Miorelli, who has a durable power of attorney.  Just days ago, on August 18, 2016, Mr. Liacopolous's grandson, Sam Miroelli, filed an application to appear *pro hac vice* on behalf of Mr. Liacopolous.  Mr. Miorelli is a serial objector, who has a history of filing baseless objections and appeals for the express purpose of seeking to extort payment for himself without any corresponding benefit to the class.

In *In re Target Corporation Customer Data Security Breach Litigation*, C.A. No. 14-md-02522 (D.Minn.), Mr. Miorelli filed an objection on his own behalf.  *See* ECF No. 643-3 (placeholder for objection filed under seal).  The district judge held that Mr. Miorelli was not a member of the Class. ECF No. 645 ("One of the objectors, Sam Miorelli, is not a member of the class, having used a payment card at Target just after the class period.").  Nevertheless, Mr. Miorelli filed an appeal and then sent an email to class counsel offering to dismiss his appeal

22

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN RESPONSE
TO CERTAIN OBJECTIONS BASED ON RECENTLY-COMPLETED DISCOVERY
CASE NO. 8:11-cv-01733-FMO (JCGx)

for a payment of $2.3 million.  *See* Schwartz Declaration, Ex. 10 ("If class counsel and/or Target would rather pay me than risk I win, I think a good negotiating starting place would be a fraction of the almost $9.3 million in combined costs Target faces and the millions in attorney fee reductions I also proposed. As I said in my objection to your fee, I think 25% is the appropriate fraction. But, I'm a reasonable man open to reasonable counteroffers or discussions."). The appellate court dismissed Mr. Miorelli's appeal.  Eighth Circuit Court of Appeals Docket No: 15-3915.

It is apparent that the Liacopolous objection is little more than a vehicle for Mr. Miorelli to once again seek to extort fees for himself, shamelessly using his mother and disabled grandfather to do so.  The Liacopolous objection should be rejected.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' respectfully request that the Court overrule the objections on the merits and enter an Order granting final approval of the Settlement and fees. The Court should also hold that all objections add little if anything to assist the Court in its evaluation of fees or approval of the settlement. Accordingly, regardless of the Court's decision regarding fees, the Court should hold that none of the objectors have provided a benefit to the class (or assistance to the Court) that would justify a payment of any fees to any of the objectors or their counsel. The Court should also enter an order that the aforementioned objections were brought in bad faith and for an improper purpose and/or without a proper investigation and award sanctions or order additional proceedings as appropriate. Finally, the conduct of suspended attorney Darrel Palmer should be referred to the California State Bar.

1    DATED:  _August 22, 2016        Respectfully submitted,

2                                      */s/ Steven A. Schwartz*

3                                        Steven A. Schwartz (*pro hac vice*)
                                       Timothy N. Mathews (*pro hac vice*)

4                                        **CHIMICLES & TIKELLIS LLP**
                                       361 West Lancaster Avenue

5                                        Haverford, Pennsylvania 19041
                                       Telephone: (610) 642-8500

6                                        Telecopier: (610) 649-3633
                                       sas@chimicles.com

7                                        tnm@chimicles.com

8                                        Jeffrey M. Cohon (CSBN 131431)
                                       Howard Pollak (CSBN 147077 )

9                                        **COHON & POLLAK, LLP**
                                       10250 Constellation Boulevard, Suite 2320

10                                       Los Angeles, California  90067
                                      Telephone: (310) 231-4470
                                      Facsimile: (310) 231-4610

11                                       jcohon@cohonpollak.com

12                                        Charles S. Fax, Esquire (*pro hac vice*)
                                      Rifkin Weiner Livingston, LLC

13                                       7979 Old Georgetown Road, Suite 400
                                      Bethesda, Maryland 20814

14                                       Telephone: (301) 951-0150
                                      Telecopier: (301) 951-0172

15                                       David H. Weinstein (CSBN 43167)

16                                       Robert Kitchenoff (*pro hac vice*)
                                      **WEINSTEIN KITCHENOFF &**

17                                       **ASHER LLC**
                                      100 South Broad St., Suite 705

18                                       Philadelphia, Pennsylvania 19110-1061
                                      Telephone: (215) 545-7200

19                                       Telecopier: (215) 545-6535
                                      weinstein@wka-law.com

20                                       kitchenoff@wka-law.com

21

22                                       Nicole Sugnet (CSBN 246255)
                                      **LEIFF CABRASER HEIMANN &**

23                                       **BERNSTEIN, LLP**
                                      275 Battery Street, 29th Floor

24                                       San Francisco, California 94111-3339
                                      Telephone: (415) 956-1000

25                                       Telecopier: (415) 956-1008
                                      klaw@lchb.com

26                                       nsugnet@lchb.com

27                                       *Attorneys for Plaintiffs and Court –*
*Appointed Counsel for the Class*

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. Redacted Copies were also sent via email to the following:

Christopher Cain
cain@scottandcain.com

W. Allen McDonald
amcdonald@lpwpc.com

Patrick Sweeney
Patrick@sweeneylegalgroup.com

Sam Morelli
Sam.Miorelli@gmail.com

/s/ *Steven A. Schwartz*
Steven A. Schwartz