Galen D. Bellamy (SBN 231792)
Email: bellamy@wtotrial.com
Michael T. Williams (*pro hac vice*)
Email: williams@wtotrial.com
Andrew M. Unthank (*pro hac vice*)
Email: unthank@wtotrial.com
N. Reid Neureiter (*pro hac vice*)
Email: neureiter@wtotrial.com
Cedric D. Logan (*pro hac vice*)
Email: logan@wtotrial.com
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Telephone: (303) 244-1800
Facsimile: (303) 244-1879

Dean J. Zipser (SBN 94680)
Email: dzipser@umbergzipser.com
Carole E. Reagan (SBN 162674)
Email: creagan@umbergzipser.com
Umberg Zipser LLP
1920 Main Street, Suite 200
Irvine, California 92614
Telephone: (949) 679-0052
Facsimile: (949) 679-0461

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVE CHAMBERS, *et al.*, all of whom sue in their individual capacities and for all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WHIRLPOOL CORPORATION, *et al.*,<br><br>Defendants. | Case No: 8:11-cv-01733-FMO (ANx)<br><br>**DEFENDANTS' SURREPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**<br><br>Date: August 25, 2016<br>Time: 10:00 a.m.<br>Ctrm: 22<br><br>The Honorable Fernando M. Olguin |

Defendants respectfully submit this Surreply and the Reply Report of Dr. Rose Ray to correct and respond to certain misstatements of fact and new evidence in Class Counsel's Reply in Support of Award of Attorneys' Fees and Expenses and for Service Awards for Plaintiffs ("Reply").

## I. THE REPLY REPORT OF DR. ROSE RAY FURTHER SHOWS THAT CLASS COUNSEL'S VALUATION OF THE CLASS BENEFITS IS UNRELIABLE AND EXCESSIVELY HIGH

On June 24, 2016, Defendants' statistical expert, Dr. Rose Ray, submitted a report showing that the value of the Settlement to the Class is far lower than Class Counsel claimed in their motion for fees. The conclusions in her report were based, in part, on her evaluation of the empirical evidence from the actual claim forms submitted by Class Members and other Dishwasher owners. Among other things, she used past reported Overheating Events to help predict the likely number of future Overheating Events. She also read and applied the terms of the Settlement Agreement to estimate how many of the reimbursement claims filed by Class Members satisfy the Settlement's eligibility requirements and may be deemed valid by the Settlement Administrator—something Class Counsel and their expert, Peter Salomon, had made no attempt to do. Rather, Class Counsel failed to examine even a representative sample of the claims and assumed all of the approximately 26,000 reimbursement claims were based on actual Overheating Events and that all or nearly all would be deemed Valid Claims.

Class Counsel's 35-page Reply included new evidence and argument aimed at discrediting Dr. Ray's work and opinions.[1] Dr. Ray has prepared a Reply Report, attached hereto as Exhibit A, that addresses the new evidence and arguments made in Class Counsel's Reply. In summary, Dr. Ray's Reply Report shows:

---

[1] The Reply includes only lawyer argument and testimony, but no rebuttal from Class Counsel's own expert, Mr. Salomon.

- Class Counsel argued that Dr. Ray incorrectly deemed invalid many reimbursement claims for Dishwasher replacements because she imported into the Settlement a documentary proof requirement that, they claim, is not in the Agreement. (Reply at 25-26.) Dr. Rose's Reply Report refutes Class Counsel's argument and testimony and explains how (and precisely where) the Agreement imposes the documentary proof requirements she used to evaluate Dishwasher replacement claims. (Ex. A at 1-2.)

- Class Counsel argued, in a new supplemental declaration submitted by Timothy Mathews, that Dr. Ray erroneously concluded that two claims in the 400-claim sample she analyzed did not meet the Settlement's eligibility requirements. (Reply at 26-27; Mathews Suppl. Decl., ECF No. 276-1, ¶¶ 10-11.) Dr. Ray's Reply Report explains why her conclusions were correct and also shows that the documents submitted by those two claimants did not match or prove their claims. (Ex. A at 2-5.) She also explains why one of the claims should be denied for reasons other than the failure to submit sufficient proof. (*Id.* at 3-4.)

- Class Counsel attempted to discredit Dr. Ray's work by arguing that she should have cross-checked deficient claims in her 400-claim sample against Sears' and Whirlpool's service records to determine whether the deficient claims could be cured by information in Defendants' records, as the Settlement Administrator would do in the claims adjudication process. (Reply at 25.) Dr. Ray's Reply Report explains that she did not conduct that costly and time-consuming cross-check because the parties already had searched Defendants' records when the parties determined which Class Members and Dishwasher owners are prequalified for benefits and which notice each owner should receive. (Ex. A at 5.) That process already had ruled out the 400 non-prequalified claimants in Dr. Ray's sample as persons whom had reported an Overheating Event to Whirlpool, Sears, or the U.S. Consumer Product Safety Commission ("CPSC"). To respond to Class Counsel's unfounded criticism, however, Dr. Ray

undertook that additional analysis to prove what she already knew—that an additional cross-check of Defendants' records shows that those records will <u>not</u> cure the claims' deficiencies. (*Id.* at 5-7.)

- Class Counsel criticized Dr. Ray for basing her prediction of future Overheating Event claims on her analysis of the historical number of Overheating Events reported to Whirlpool, Sears, and CPSC. (Reply at 25.) In her Reply Report, Dr. Ray explains that her method is far more reliable than Plaintiffs' speculative method in which they <u>assume</u> that all reported control board repairs resulted from an Overheating Event, despite the undisputed evidence showing that most such repairs and claims are, in fact, irrelevant. (*Id.* at 6-7.) Dr. Ray explains that the parties agreed on the particular criteria for identifying Overheating Events, which criteria the Settlement Administrator will use in its adjudication of Future Overheating Event claims. Accordingly, that is the most appropriate criteria to use when predicting Future Overheating Events. (*See* Ex. A. at 7-8.)
- Class Counsel submitted new evidence and arguments that the number of Dishwashers subject to the Settlement—i.e., the number of Whirlpool, Kenmore, and KitchenAid-brand dishwashers with Rushmore, Rush, NewGen, or Raptor control boards manufactured from 1998 to 2012—is 24,000,000, rather than the approximately 18,400,000 in Dr. Ray's first report. (Reply at 1 n.4; *id.* ECF No. 276-1, ¶ 4.) In response, Dr. Ray re-examined Whirlpool's shipments data and confirmed that the shipments data figure of 24,000,000 dishwashers includes many types of dishwashers that do not meet the Settlement Agreement's definition of "Dishwasher," including (i) dishwashers with NewGen ECBs sold before 1998; (ii) dishwashers with duplicate serial numbers (i.e., units counted twice in Plaintiffs' analysis); (iii) dishwashers with electromechanical controls, not the fully electronic controls at issue here; (iv) brands of dishwashers not included in this case; and (v) dishwashers sold after

2010 that included control board types <u>not</u> included in the Settlement Agreement. (*See* Ex. A. at 8-9.)

- Finally, Class Counsel argued, contrary to Dr. Ray's analysis, that the Court should assume that all 26,000 claims for cash reimbursements are related to an Overheating Event (simply because the Class Members said so in their claim forms) and ignore the actual facts about those claims. (Reply at 24.) Dr. Ray's Reply Report shows, using documents the claimants themselves submitted with their claim forms, that most claimed Dishwasher problems and repairs were <u>not</u> control board Overheating Events; instead, the problems or repairs involved non-ECB parts, like motors or pumps. (Ex. A. at 6-7.) In other words, most of the 26,000 claims are not only invalid, they have nothing to do with control board Overheating Events and more to do with Class Members' confusion, imperfect memory, or misunderstanding of the Settlement. (*Id.* at 6-7.)

Two things are clear: (1) the actual value of the claims for rebates and reimbursements is dramatically lower than the amounts Class Counsel claimed in their opening brief; and (2) the parties and the Court will know the actual figures within months, so the Court may decide to allow the facts to fully develop before determining the actual value of the class recovery. Defendants have put their money where their mouth is by asking that the Court to base the fee award on that amount recovered by Class Members after that amount is known to the Court and the parties. Meanwhile, Class Counsel continue to try to de-couple the fee analysis from the value of the benefits recovered by their clients. (Reply at 31 (claiming that it is not "realistically possible" to "calculate the value" of the Settlement to the Class).) Thus, Class Counsel's Reply and new evidence confirms that the Court should make its final fee award after the Administrator has adjudicated the claims.

## II. DISCOVERY TAKEN FROM OBJECTORS CONFIRMS THAT MANY OF THE 26,000 REIMBURSEMENT CLAIMS WILL BE DENIED

After Defendants filed their opposition to Class Counsel's motion for attorney

fees, the parties deposed several Class Members who objected to the Settlement. That discovery also has confirmed that the 26,000 claims for cash reimbursements are littered with invalid claims. For example, Class Member Kimberly Smith submitted a claim for reimbursement for out-of-pocket expenses she allegedly incurred to replace her Dishwasher due to a purported Overheating Event. (*See* ECF No. 229-6 at 2.) At her July 7, 2016 deposition, Ms. Smith admitted that her only out-of-pocket expenses to repair her Dishwasher related to a problem with the user interface's touch pad controls and flashing lights, not an ECB Overheating Event. (Tr. of Dep. of Kimberly Smith, July 7, 2016, at 39:2-13 (excerpts attached as Ex. B).) She also testified that she experienced a problem with the plastic or rubber door seal where the seal flaked off, but agreed it was not a control board Overheating Event because, if it were, the Dishwasher would no longer have functioned. (*Id.* at 42:24–43:9, 44:9–17.) Ms. Smith explained that, in any event, she had not incurred any expenses to repair that problem with her Dishwasher. (*Id.* at 41:25–42:7, 43:25.)

Ms. Smith's cash reimbursement claim is just one of the many examples of reimbursement claims that have nothing to do with control board overheating. The Administrator will properly deny such claims when it adjudicates the claims after final approval by the Court.

Dated: August 30, 2016        WHEELER TRIGG O'DONNELL LLP

By: *s/Michael T. Williams*
Michael T. Williams

Attorneys for Defendants,
Whirlpool Corporation,
Sears Holdings Corporation,
and Sears, Roebuck and Co.