Jeffrey M. Cohon (CSBN 131431)
Howard Pollak (CSBN 147077 )
COHON & POLLAK, LLP
10250 Constellation Boulevard, Suite 2320
Los Angeles, California 90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610
jcohon@cohonpollak.com
hpollak@cohonpollak.com

Charles S. Fax (pro hac vice)
Liesel J. Schopler (pro hac vice)
RIFKIN, WEINER, LIVINGSTON, LLC
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-6535
cfax@rwlls.com
lschopler@rwlls.com

David H. Weinstein (CSBN 43167)
Robert Kitchenoff (pro hac vice)
WEINSTEIN KITCHENOFF & SHER LLC
100 South Broad St., Suite 705
Philadelphia, Pennsylvania 19110-1061
Telephone: (215) 545-7200
Telecopier: (215) 545-6535
weinstein@wka-law.com
kitchenoff@wka-law.com

Steven A. Schwartz (pro hac vice)
Timothy N. Mathews (pro hac vice)
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com
tnm@chimicles.com

Nicole D. Sugnet (CSBN 246255)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008
nsugnet@lchb.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE CHAMBERS, *et al*., in their individual capacities and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHIRLPOOL CORPORATION, *et al*.,<br><br>Defendants. | Case No. 8:11-cv-01733-FMO (JCGx)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS AGAINST OBJECTOR CHRISTINE KNOTT AND HER COUNSEL OF RECORD TIMOTHY HANIGAN AND LANG, HANIGAN & CARVALHO LLP**<br><br>Date:        January 12, 2017<br>Time:        10:00 a.m.<br>Judge:       Courtroom 22<br><br>The Honorable Fernando M. Olguin |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................... 1

    A.    Relevant Rule 11 Standards ............................................. 5

    B.    Knott, Hanigan And Hanigan's Firm Should Be
           Sanctioned For Filing Objections For An Improper
           Motive And Without An Inquiry Reasonable
           Under The Circumstances ............................................. 7

          1.    The Objection was Brought for an
                  Improper Purpose By Recidivist Attorneys who
                  File Objections to Delay and Obstruct Class
                  Settlements to Extort Improper Payments for
                  Themselves ...................................................... 7

          2.    The Smith/Knott Objections are baseless
                  and were signed and filed without a proper
                  investigation by Mr. Hanigan and his Firm ................. 10

    C.    Sanctions Should Also Be Awarded Under
           28 U.S.C. § 1927 And/Or The Court's Inherent Authority ....... 19

    D.    The Court Should Impose Sanctions of $50,000 ...................... 20

II.    CONCLUSION ................................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*Benedict v. Hewlett-Packard Co.*,
   2014 U.S. Dist. LEXIS 7323 (N.D. Cal. Jan. 21, 2014) ................................. 6, 16

*Brown v. Wal Mart*,
   No. 01-L-85 (Ill. Circuit Court, 14th Judicial Dist. Oct. 29, 2009) ..................... 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   281 F.R.D. 531 (N.D. Cal. 2012) ........................................................................ 8

*Cmty. Dental Servs. v. Tani*,
   282 F.3d 1164 (9th Cir. Cal. 2002) .................................................................... 4

*'' Compass Bank v. Morris Cerullo World Evangelism*,
   104 F. Supp. 3d 1040 (S.D. Cal. 2015) ............................................................ 20

*Corrigan v. Unknown King Cty. Deputy*,
   2006 U.S. Dist. LEXIS 78594 (W.D. Wash. Oct. 27, 2006) ............................ 18

*Edelson PC v. The Bandas Law Firm, et al.*,
   No. 1:16-cv-11057 (N.D. Ill.) ............................................................................. 8

*In re Flonase Antitrust Litig.*,
   No. 08-3301 (E.D. Pa. May 7, 2013) ................................................................... 9

*G.C. & K.C. Invs., Inc. v. Wilson*,
   326 F.3d 1096 (9th Cir. 1990) ............................................................................. 7

*Garr v. U.S. Healthcare, Inc.*,
   22 F.3d 1274 (1994) .......................................................................................... 17

*Hall v. Hamilton Family Ctr.*,
   No. 13-cv-03646-WHO, 2014 U.S. Dist. LEXIS 51479 (N.D. Cal.
   Apr. 11, 2014) ................................................................................................... 21

*Hsu v. Intel Corp.*,
   No. 92-56137, No. 92-56405, No. 92-56522, 1993 U.S. App.
   LEXIS 24292 (9th Cir. Sep. 17, 1993) .............................................................. 21

*Huettig & Schromm, Inc. v. Landscape Contractors Council*,
   790 F.2d 1421 (9th Cir. 1986) .......................................................................... 14

*Hugo Neu-Proler Co. v. Local 13 Int'l Longshoremen & Warehouse Union*,
No. 99-55322, 2000 U.S. App. LEXIS 24825 (9th Cir. Sep. 28, 2000) ............................................................................................ 21

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
2014 WL 815394 (S.D. Cal. Mar. 3, 2014) .................................................... 9

*Khan v. Park Capital Secs., LLC*,
2004 U.S. Dist. LEXIS 15659 (N.D. Cal. Aug. 5, 2004) .............................. 5

*Leon v. IDX Systems Corp.*,
464 F.3d 951 (9th Cir. 2006) ...................................................................... 20

*Maisonville v. F2 America, Inc.*,
902 F.2d 746 (9th Cir. 1990) ...................................................................... 16

*MetLife Bank, N.A. v. Badostain*,
2011 U.S. Dist. LEXIS 48398 (D. Idaho May 4, 2011) ............................. 18

*Moser v. Bret Harte Union High Sch. Dist.*,
366 F. Supp. 2d 944 .................................................................................... 17

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 124 (S.D.N.Y. 1999) ......................................................... 15, 16

*Nelson v. Patel*,
2010 U.S. Dist. LEXIS 44497 (C.D. Cal. Mar. 26, 2010) ............................ 7

*Oganyan v. Square Two Fin.*,
2012 U.S. Dist. LEXIS 144194 (C.D. Cal. Sept. 26, 2012) ........................ 16

*Roberts v. Electrolux Home Prods.*,
2014 U.S. Dist. LEXIS 130163 (C.D. Cal. Sept. 11, 2014) ............... 8, 9, 18

*S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc.*,
842 F.2d 946 (7th Cir. 1988) ...................................................................... 17

*Shames v. Hertz Corp.*,
2012 U.S. Dist. LEXIS 148148 (S.D. Cal. Oct. 15, 2012) .......................... 15

*Thomas v. Girardi*,
611 F.3d 1027 (9th Cir. 2010) .................................................................... 18

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990) ................................................................. 6, 14, 18

*Truesdell v. S. Cal. Permanente Med. Grp.*,
   209 F.R.D. 169 (C.D. Cal. 2002) ........................................................................ 7

*Vollmer v. Publrs. Clearing House*,
   248 F.3d 698 (7th Cir. 2001) .......................................................... 7, 15, 18

*Wu Grp. V. Synopsys, Inc.*,
   2005 U.S. Dist. LEXIS 42351 (N.D. Cal. Aug. 10, 2005) ................................ 17

*Yack v. Wash. Mut. Inc.*,
   2008 U.S. Dist. LEXIS 124314 (N.D. Cal. Aug. 14, 2008) ................................ 6

*In re Yagman*,
   803 F.2d (9th Cir. 1986) ................................................................................. 21

*Young v. Beard*,
   No. 2:11-cv-02491-KJM-AC, 2014 U.S. Dist. LEXIS 2216 (E.D.
   Cal. Jan. 7, 2014) ........................................................................................... 21


**STATUTES**

28 U.S.C. § 1927 ...................................................................................... 4, 19, 20


**OTHER AUTHORITIES**

Fed. R. Civ. P. 11(b)(1) .................................................................................... 5

Fed. R. Civ. P. 11(b)(3) .................................................................................. 17

Fed. R. Civ. P. 11(c)(2) ........................................................................... 4, 5, 6, 7

Fed. R. Civ. P. 11(c)(3) ................................................................................. 5, 7

L.R. 7-3 ............................................................................................................ 6

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

## INTRODUCTION

Class Counsel recognize that objectors can provide genuine assistance by identifying problems in a proposed settlement and accompanying fee request. However, as this Court has held, in this case "[m]ost of the objections were filed by 'serial' objectors who are well-known for routinely filing meritless objections to class action settlements for the improper purpose of extracting a fee rather than to benefit the Class. These serial objectors include: (1) Timothy R. Hanigan and Christopher Bandas." Final Approval Order (ECF # 351) at 12. Here, Messrs. Hanigan and Bandas orchestrated objections (ECF #231) that not only were baseless but also did not reflect the true concerns of their clients Christine Knott and Kimberly Smith or represent a *bona fide* effort to meaningfully improve the settlement or protect the interests of the class. Rather, the objection was filed solely in an effort to extort an unjustified payment from Whirlpool or Class Counsel.

As this Court summarized:

> The objection filed by attorneys Hanigan and Bandas (*see* Dkt. 232, First Amended Objections of Christine Knott and Kimberly Smith ("Knott Obj.")), contradicts several statements made by their client and objector, Christine Knott, during her deposition. For example, Ms. Knott stated that she would not object to a fee award of $27 million to class counsel, (*see* Dkt. 270-1, Excerpts of Deposition of Christine Knott at 76-77); agrees with the court's approval of the sale of Steve Chambers' websites to Whirlpool, (*see* Dkt. 254-5, Excerpts of Deposition of Christine Knott at 150); and believes the rebates provided under the settlement are valuable even if the rebate-holder does not purchase a new Whirlpool dishwasher. (*See id.* at 212). Perhaps the lack of consistency between Ms. Knott's deposition testimony and her written objection can be explained by the fact that she never spoke with Mr. Hanigan or Mr. Bandas before the objection was filed. (*See id.* at 34-38). In fact, during her deposition, Ms. Knott testified that she did not even know that Mr. Hanigan represented her. (*See id.* at 38).

Final Approval Order at 14.

Moreover, many of the purported objections were baseless on their face. For example, with respect to the component of the settlement providing all 6 million Class Dishwasher owners the opportunity to claim rebates of 10-20% on the purchase of new Whirlpool-manufactured dishwashers, the Knott/Smith objection states: "It appears class counsel structured the settlement so that it advances Whirlpool's business interests by requiring consumers to purchase additional Whirlpool products, at the expense of the class, presumably in exchange for little resistance to requested $15 million in attorneys' fees." That is absurd. As clearly disclosed in the Notice and Plaintiff's Fee Memorandum, Whirlpool vigorously opposed Class Counsel's fee request, suggesting a $3.1 million fee, which represents only about 20% of Class Counsel's fee request and about 33% of Class Counsel's lodestar. ECF #246. Moreover, the rebate component of the settlement provides a tangible economic benefit to Class members who *never experienced the overheating defect with their dishwashers*, all of which are *at least* a decade old at this point, and many of which are 15 years old. Any Class member who actually experienced a past Overheating Event is entitled to 100% of repair costs or $200-$300 cash if he or she replaced the machine.

The Knott/Smith objection also criticizes the settlement because Class members who actually experienced an Overheating Event and replaced their dishwashers with Whirlpool-manufactured dishwashers can recover $300 cash each, while Class members who purchased a non-Whirlpool-manufactured dishwasher will receive $200 each. Contrary to the ridiculous assertion in the Knott/Smith objection, this disparity does not "penalize [Class members] for choosing not to do business with the company that sold them defective and dangerous products." To the contrary, it *punishes Whirlpool* by requiring a disgorgement of a portion of profits that Whirlpool might have earned on those purchases. In other words, it ensures that Whirlpool does not receive a

disproportionate benefit from Class members who experienced the alleged defect and purchased another Whirlpool.

The Knott/Smith objection also baselessly claims that the $100,000 payment from Whirlpool to purchase Mr. Chambers' websites is "an unreasonable sum [that] represents consideration that could have gone to the class." First, the Knott/Smith objection offers zero support for the claim that this sum is anything other than the actual value of Mr. Chamber's websites. This Court closely examined that component of the settlement and concluded that the amount is fair, particularly given the significant role the websites played in the initiation and prosecution of the action, in protecting the interest of class members, and in facilitating communication with Class members. *See* Preliminary Approval Order, ECF # 199, at 26-28. Second, it is not true that this "sum represents consideration that could have gone to the class." The settlement benefits are wholly unaffected by this purchase. Critically, Hanigan/Bandas apparently never explained that objection to Ms. Knott, since she testified that she had no objection to the Chambers payment given the important safety benefits resulting from Mr. Chambers' work and his websites. When presented *by Class Counsel* with this Court's discussion approving that payment in the Preliminary Approval Order, she testified that she had no objections to anything stated therein and agreed that the Court's analysis made sense. Mr. Hanigan admitted he never bothered to read the preliminary approval order or do any other meaningful investigation before signing and filing the objection. Nor did he speak or otherwise communicate with his purported clients Knott and Smith. And Ms. Knott apparently never read any portion of the Preliminary Approval Order before relevant excerpts were presented to her by Class Counsel at her deposition.

All of these facts were laid out in prior filings/Orders in this case. Nonetheless, even with the benefit of hindsight, Objectors Smith, Knott, and their

counsel not only refused to withdraw or modify their objections, but they also filed a notice of appeal of the Final Approval Order approving the settlement, fee request, and service awards. ECF # 352. Their appeal not only challenges the contested fee award, but also contests the settlement approval, and as a result, could delay millions of class members from receiving the benefits they deserve and delay implementation of the various aspects of the settlement that this Court has held "promotes public safety." *See* Final Approval Order at 30.

Accordingly, Class Counsel seek sanctions pursuant to Federal Rule of Civil Procedure 11 or alternatively under and 28 U.S.C. § 1927 and the Court's inherent authority against Objector Knott.[1] They also seek sanctions against her counsel of record in this Court, Mr. Hanigan, who signed and filed their objections and notice of appeal (and has served as counsel of record for other objections orchestrated by Mr. Bandas with full knowledge of Mr. Bandas' notorious track record), and Mr. Hanigan's firm.[2] Class Counsel do not seek sanctions against Smith only because, shortly after Class Counsel served a copy of this motion pursuant to the 21-day notice provisions of Fed. R. Civ. P. 11(c)(2), Ms. Smith withdrew her objections (ECF # 372) and dismissed her appeal (Ninth Circuit No. 16-56666, Dkt. Entry # 6), because "she no longer wishes to pursue the appeal."[3] Class Counsel notes that Ms. Smith's husband is an attorney who was presumably capable of providing his

---

[1] *See Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. Cal. 2002) ("a client is ordinarily chargeable with his counsel's negligent acts"). Rule 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly and severally responsible for a violation committed by its partner, associate or employee.").

[2] While Bandas deserves to be sanctioned here as well, because of his tactical decision to avoid entering his appearance in this Court despite acting as puppet master behind the scenes (for which he has been excoriated by various courts as a tactic designed to avoid jurisdiction for sanctions), Class Counsel do not seek sanctions against him at this time. Mr. Bandas did enter his appearance in the Ninth Circuit as counsel of record for the appeal.

[3] Objector Kelly Kress similarly dismissed her objection and appeal after receiving the Rule 11(c)(2) letter. ECF # 373. Neither Kress nor her counsel were paid any compensation to do so. *Id.*

wife advice regarding the risks of her continued involvement in this case independent from any "advice" provided, if any, from Mr. Hanigan or Mr. Bandas about how to proceed in light of the Rule 11(c)(2) notice. Objector Knott, whose objection was filed before she spoke with any lawyer, is apparently wholly dependent on Messrs. Hanigan and Bandas to advise her about whether to withdraw her objection and/or dismiss her appeal.

### A.  Relevant Rule 11 Standards

The purpose of Rule 11 "is to deter dilatory pretrial tactics and to streamline litigation by excluding baseless filings." *See, e.g.*, *Khan v. Park Capital Secs., LLC*, 2004 U.S. Dist. LEXIS 15659, at *6-7 (N.D. Cal. Aug. 5, 2004) (citations omitted). The rule requires that an attorney who is presenting a pleading, motion, or other paper to the court certify that to the best of that attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(1), (3).  Rule 11 sanctions may be initiated upon the motion of a party, Fed. R. Civ. P. 11(c)(2), or on the Court's own initiative,  Fed. R. Civ. P. 11(c)(3). With respect to Rule 11 motions, the rule contains a safe harbor provision that requires that the moving party serve the proposed motion on the opposing side and then wait twenty-one days before filing it with the court. *See* Fed. R. Civ. P. 11(c)(2) ("The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within

another time the court sets."). Because Class Counsel had to litigate motions to compel/quash to obtain much of the relevant discovery from objectors and their counsel, there was not enough time prior to the August 25, 2016 Final Approval Hearing to follow the Rule 11(c)(2) 21-day process. In light of Objectors' decision to appeal, Class Counsel served a copy of this motion on Objectors Knott, Smith and their counsel Mr. Hanigan more than 21 days prior to filing the instant Motion and thereafter confirmed pursuant to L.R. 7-3 that Mr. Hanigan and Ms. Knott nonetheless intended to oppose this motion (and that Ms. Smith would withdraw her objection and dismiss her appeal). Schwartz Sanctions Declaration, ¶¶ 2, 4.

The Court may impose Rule 11(c)(2) sanctions in two circumstances: "where a litigant makes a 'frivolous filing,' that is where he files a pleading or other paper which no competent attorney could believe was well-grounded in fact and warranted by law, and where a litigant files a pleading or paper for an 'improper purpose,' such as personal or economic harassment." *Benedict v. Hewlett-Packard Co.*, 2014 U.S. Dist. LEXIS 7323, at *14 (N.D. Cal. Jan. 21, 2014) (citing *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987)). "'A frivolous filing is one that is *both* baseless *and* made without a reasonable and competent inquiry.'" *Id.* (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996)) (emphasis original); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) ("The word frivolous does not appear anywhere in the text of the Rule; rather, it is a shorthand that this court has used to denote a filing that is both baseless and made without a reasonable and competent inquiry.").

In determining whether the filing was frivolous or made for an improper purpose, the courts undertake an objective inquiry. *See, e.g., Yack v. Wash. Mut. Inc.*, 2008 U.S. Dist. LEXIS 124314, at *5 (N.D. Cal. Aug. 14, 2008) (citing *G.C. & K.C. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 1990)). "The 'reasonable man' against which conduct is tested is a competent attorney admitted

to practice before the district court." *G.C. & K.C. Ins., Inc.*, 326 F.3d at 1109 (citations and quotations omitted). Additionally, courts should consider "[w]hether the improper conduct was . . . part of a pattern of activity, or an isolated event; . . . whether the person has engaged in similar conduct in other litigation; . . . [and] what effect it had on the litigation process in time or expense." Fed. R. Civ. P. 11 Advisory Committee's Notes (1993 Amendments); *see also Vollmer v. Publrs. Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001) (noting that the district court's consideration that the attorneys were "professional objectors" was proper under Rule 11).

There is a higher standard for Rule 11(c)(3) sanctions, which requires conduct "akin to contempt" which necessitates a finding of bad faith or reckless conduct." *Nelson v. Patel*, 2010 U.S. Dist. LEXIS 44497, at *13 (C.D. Cal. Mar. 26, 2010) (citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003)). In contrast, under Rule 11(c)(2), no showing of bad faith or subjective intent is required. *See, e.g.*, *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 173-74 (C.D. Cal. 2002) ("Rule 11 is designed to deter attorneys and unrepresented parties from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis; no showing of bad faith or subjective intent is required.").

### B.   Knott, Hanigan and Hanigan's Firm Should be Sanctioned for filing Objections for an Improper Motive and without an Inquiry Reasonable under the Circumstances

#### 1.   The objection was brought for an improper purpose by recidivist attorneys who file objections to delay and obstruct class settlements to extort improper payments for themselves

Messrs. Hanigan and Bandas are notorious "professional" or "serial" objectors who have a long history of asserting baseless objections to class action settlements in order to extort fees for themselves with no corresponding benefit to

class members.  Details of their scheme are set forth at ECF 271 and ECF 279.  Mr.

Bandas is infamous not only for challenging class action settlements, but for doing

so for personal gain rather than as an advocate for the interests of the class:

> [A]ttorney Christopher Bandas, [is] a "professional" or
> "serial" objector . . . . Bandas routinely represents objectors
> purporting to challenge class action settlements, and does
> not do so to effectuate changes to settlements, but does so
> for his own personal financial gain; he has been excoriated
> by Courts for this conduct.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal.

2012).  Indeed, a RICO complaint was recently filed against him challenging the

scheme he continues to pursue here – attempting to extort payments in class actions

with no corresponding benefit to the class. *See Edelson PC v. The Bandas Law

Firm, et al.,* No. 1:16-cv-11057 (N.D. Ill.). Mr. Hanigan's track record is similar.

*See Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, at *31 n.4

(C.D. Cal. Sept. 11, 2014) (describing Mr. Hanigan as a serial objector and noting

that the objection he asserted on behalf of his client "misunderstand[s] or

misread[s] the Settlement Agreement, or provide[s] no evidence or support (besides

attorney argument) to advance his objection."). Mr. Hanigan has been hired by Mr.

Bandas to appear as counsel of record in at least in at least 10 class action

objections orchestrated by Mr. Bandas.   Schwartz Supplemental Memorandum

Decl., ECF No. 312-6, (Hanigan Deposition excerpts) at 22. The majority of

Hanigan's class action work is for Mr. Bandas.  *Id.* at 23.

Mr. Bandas' practice of refraining from entering his appearance in cases—as

he has done here—is a tactic whose very purpose is to avoid court sanctions.  *See,

e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2014 WL 815394, at *3 (S.D.

Cal. Mar. 3, 2014) (declining to impose Rule 11 sanctions for improper objection

because it was "doubtful whether the Court has jurisdiction to sanction Mr.

Bandas," but threatening to refer Mr. Bandas "to the State Bar of Texas's

Commission for Lawyer Discipline"); *In re Flonase Antitrust Litig.*, No. 08-3301

(E.D. Pa. May 7, 2013) at ECF No. 583 (Schwartz Joint Stip Decl., ECF No. 271-7).  *See also Brown v. Wal Mart*, No. 01-L-85 (Ill. Circuit Court, 14th Judicial Dist. Oct. 29, 2009) (Schwartz Joint Stip Decl., ECF No. 271-6) (reflecting in various cases "Bandas' local counsel appeared at the final fairness hearing but only to withdraw as counsel due to the fact that he could not in 'good conscience . . . continue to work toward the strategic objectives outlined . . . by Mr. Bandas" and "Bandas' co-counsel is being referred by the Iowa court to the Iowa Supreme Court's disciplinary committee"). As discussed above, the recent order issued in *Garber v. Office of the Comm'r of Baseball* (Schwartz Joint Stip. Decl., ECF No. 271-9)*, reflects that courts are growing wary of Mr. Bandas' tactics (and believe they have jurisdiction to compel his personal appearance). *See generally Garber* hearing Transcript (Schwartz Supp. Decl., ECF No. 289-4 at 4-12); *Garber* Tr. at 6 (local counsel stated, "I got basically thrown under the bus"); *Garber* Tr. at 30-32 (revealing that additional local counsel Mr. Turkish in *Garber* never spoke with the objector client, prompting Judge Caproni to state at page 32: "But you didn't talk to your client? . . . Well, how did you know that the objection was in good faith?"); *Garber* Tr. at 19 ("You usually don't have lawyers doing what you do, which is expressly not filing a notice of appearance apparently so you can avoid the possibility of sanctions.  That is a little unusual."); *Garber* Tr. at 60 ("My concern is that this is simply a pattern, it is a strategy that is designed to throw monkey wrenches into class settlements so that you can get money to go away from the plaintiffs' lawyer.").

The facts specific to the Smith/Knott objections reflect that consistent with the Bandas/Hanigan track record, the objections were filed for an improper purpose without an adequate investigation, and that Mr. Hanigan and his firm served as Bandas' puppet by signing and filing the objection and serving as sole counsel of record in order to shield Bandas from jurisdiction of this Court to avoid sanctions.

The record also reflects that Smith and Knott are not *bona fide* objectors but are nothing more than vehicles for Bandas to use as part of his racket to extort payments to dismiss frivolous objections and/or appeals for a payment without any corresponding benefit to the class. *See generally* Plaintiffs' Supplemental Memorandum, ECF # 323, at 5-13, and evidence cited therein.

### 2. The Smith/Knott Objections are baseless and were signed and filed without a proper investigation by Mr. Hanigan and his firm

The discovery obtained here demonstrates that the Knott/Smith objections were filed in bad faith for an improper purpose without a reasonable basis, proper investigation, or evidentiary support. Mr. Hanigan never communicated with his clients before (or even any time after) filing their objections, which were written by the Bandas Law firm; nor did Ms. Knott or Ms. Smith speak with Bandas or any other attorney in his firm before the objections were filed; and Ms. Knott disclaimed most of the objections filed on her behalf.

Incredibly, Mr. Hanigan signed and filed the objections on May 27, 2016 even though he first received a draft earlier that day and billed only .7 of an hour (42 minutes) total for reviewing, filing and then refiling an amended objection (ECF 232) that added a missing document. He also never communicated with any attorney (including Mr. Bandas); he only exchanged emails with Bandas' paralegal Donna Lopez. That was the sum total of Mr. Hanigan's due diligence before filing the objection. *See* Schwartz Supplemental Memorandum Decl., ECF # 312-5 (Hanigan Declaration) at page 5 (privilege log); ECF # 312-6 (Hanigan Deposition excerpts) at pages 12-18; 23. Nonetheless, Hanigan testified that he believed he complied with his obligations under Rule 11. Hanigan Tr. at 28-30. His testimony makes clear he did not read any relevant documents like the preliminary approval papers, including the Settlement Agreement, the Preliminary Approval Order or related papers, or class counsel's Fee Motion. He simply relied on the Bandas firm,

which did the majority (if not all) of the substantive work on drafting the objection and purportedly made sure they were consistent with their shared clients' views and instructions.  *Id.* at 51-53; 58-74. Because he knew that Bandas, consistent with his sanction-avoidance practice, would not enter his appearance, Hanigan should have been on full notice of the need to personally and independently confirm the *bona fides* of the objection and his clients' positions and motivations before he signed and filed the objection.

Bandas' objector-client Knott testified that her retainer agreement was with Mr. Bandas; that her retainer with Mr. Bandas required him to get her agreement "in writing" before associating with other counsel to "assist" him in his representation of Ms. Knott, which she expected to be strictly followed; that Mr. Bandas never obtained such written consent to associate with Mr. Hanigan; that she did not even know Mr. Hanigan was representing her; that she never spoke with Mr. Bandas *or any other lawyer* before the objection was filed; and she only spoke with a Bandas' paralegal who had been a long-time friend. ECF #271 at 23 & Schwartz Decl. (ECF #269-2) (Knott transcript excerpts) at pages 34-38; 46-47; 94-98; 102; 121-123; and 269-3 (Bandas retainer).[4] Ms. Smith similarly testified that she never spoke with anyone from Mr. Bandas' or Hanigan's office. She too only communicated via email with Bandas' paralegal Ms. Lopez, and believes that Mr. Bandas represents her for purposes of presenting her objection to this Court.  *See* ECF # 312-7 at 21-24; 57.  She also had no idea that her attorneys were not going to participate in the Final Approval Hearing.  *Id.* at 24-25.[5]  Smith also had no objection to the aspect of the Settlement providing full recovery of repair costs for

---

[4] Mr. Bandas is well known for using "local counsel' like Mr. Hanigan to file objections written by Mr. Bands on behalf of Bandas' clients while Bandas remain behind the scenes to avoid being subject to jurisdiction for sanctions motions. ECF 271 at 7, 22-23, 25, 35-37; ECF #289 at 3-5.

[5] Ms. Smith also could not say whether she saw the objection before it was filed or provided any input into its drafting or editing.  *Id.* at 26.

class members who suffered Overheating Events, which she agreed was better than a compromise since it provided for a full recovery. *Id.* at 29-31.[6] Smith also agreed that warranty insurance that provides compensation for future Overheating Events for her current dishwasher has benefit and value to her. *Id.* at 47-48; 138-140. Smith also admitted that besides the postcard notice she received, she never read any other court document like the Complaint, preliminary approval papers and Order, and fee petition papers. *Id.* at 66. Despite her objections to the fees, at the time she filed her objection, Smith did not even know that Defendants would be contesting the amount of fees. *Id.* at 78. She also had no idea whether Class Counsel's lodestar was more than $4 million.  *Id.* at 92.  Neither Knott nor Smith were provided information regarding the notorious reputations of Bandas or Hanigan.  Knott Tr. at 153-173; Smith Tr. at 63-34; 112-122.

Against this backdrop, with virtually no due diligence, Attorney Hanigan signed and filed the objections on behalf of Knott and Smith challenging the fees, baselessly claiming that the contested fee process represents a "tacit exchange" of a settlement with "minimal payout" for "little resistance to class counsel's request for an exorbitant amount of attorneys' fees."  ECF # 232 at 7.  That is not true.  The Notice, preliminary approval papers, and Fee Motion clearly stated there would be a contested fee process, which, as reflected by Defendants' adversarial opposition, is extremely adversarial. Nonetheless, lawyers Bandas and Hanigan never even bothered to tell their client Knott that Whirlpool was filing and in fact filed an opposition to the fee request.  Knott Tr. at 145-146; 173. When presented with

---

[6] Based on her lawyers' determination, Ms. Smith believes she suffered an Overheating Event and therefore filed an $820 claim including $121 for repairs for an alleged Overheating Event and the rest for the purchase of a replacement dishwasher. *Id.* at 84-87.  The independent settlement administrator KCC will evaluate that claim, but Smith agreed that if she received $820 that would be a fair settlement. *Id.* at 87. She also admitted if she decided to replace her current dishwasher she would consider the impact of the settlement rebate for what dishwasher to get. *Id.* at 88-89.

these facts *for the first time* at her deposition, Ms. Knott testified that she disagreed with her attorneys Hanigan and Bandas regarding the proper amount of fees. She testified that she did not care about how much Whirlpool paid Class Counsel in fees, and opined that Class Counsel should at least get their lodestar and costs (about $9 million) and would not object if this Court awarded multiples of 2 ($18 million) and 3 ($27 million)—far more than Class Counsel asked for! Knott Tr. at pages 67-68; 73-77; 145-146. Yet Hanigan testified that: "The objection's what my clients don't like about it [*i.e.* the settlement]." Hanigan Tr. at 88. He clearly failed to comply with Rule 11 obligations to ascertain what his clients did and did not like about the settlement *before* filing the Objections. At his deposition, even though he claimed he reviewed Whirlpool's opposition to Class Counsel's fee request, he stubbornly refused to admit that his statement that Whirlpool provided "little resistance" was inaccurate. Even though he signed and filed the objection, and refused to withdraw or modify it, he claimed: "I don't know" if that statement was inaccurate. *Id.* at 67. That is an admission he violated his obligations under Rule 11. Even though he was present at the final approval hearing and heard Whirlpool's counsel's vigorous argument to the fee request, Hanigan still did not withdraw or modify that statement in the objection. Rather, he is pursuing that objection, as it is incorporated in the notice of appeal he filed in this Court.[7]

The objection also baselessly claims that the $100,000 proposed payment from Whirlpool to purchase Mr. Chambers' websites is "an unreasonable sum [that] represents consideration that could have gone to the class." But attorneys Bandas

---

[7] The Notice of appeal specifically challenges "all orders or judgments approving the class settlement, class counsel's attorneys' fees or expenses, and/or incentive awards to class representatives, and any order or judgment naming or identifying Class Members/Objectors or the objection filed by Class Members/Objectors…," thereby representing that neither Smith, Knott or Hanigan are withdrawing or modifying any of their baseless objections and are challenging without any factual basis, the undisputed fact findings of this Court as to their conduct.

and Hanigan never told their clients about this Court's detailed analysis in the Preliminary Approval Order approving the proposed sale. After having the opportunity to read that analysis *for the first time* at her deposition, Ms. Knott testified that she did not object to that sale or the price.  To the contrary, she agreed with this Court's detailed analysis approving it because, given the important safety benefits resulting from Mr. Chambers' work and his websites: "It makes sense." Knott Tr. at 147-152 (quotation at 150:25).

When attorneys file an objection that does not correlate with their clients' interests or knowledge, there is a strong presumption that the attorneys filed the objection for an improper purpose. *See Huettig & Schromm, Inc. v. Landscape Contractors Council*, 790 F.2d 1421, 1426-27 (9th Cir. 1986) (citations and quotations omitted) ("Attorneys do not serve the interests of their clients, of the profession, or of society when they assert claims or defenses grounded on nothing but tactical or strategic expediency. . . . [A] strong inference arises that their bringing of an action such as this was for an improper purpose."). *See also Townsend*, 929 F.2d at 1366 (affirming the district court's imposition of sanctions where the attorneys "conducted absolutely no inquiry before filing that complaint").

As objector Knott disclaimed the objection that Mr. Hanigan and Mr. Bandas wrote and/or filed purportedly on her behalf, the objection did not serve the interests of the client, the Court or the class. Rather, the objection was filed for an improper purpose, without evidentiary support or a proper investigation, solely for the benefit of the lawyers in order to try to extort a fee from the class action settlement process. *See Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 148148, at *14-15 n.4 (S.D. Cal. Oct. 15, 2012) (citing *Vollmer*, 248 F.3d at 659-60) ("Thus, the only 'matter' counsel could wish to 'settle' for $30,000, is the arguably inappropriate quid pro quo—essentially, 'We'll go away in exchange for $30,000; otherwise, we'll file lengthy objections'—Objector's counsel demanded. . . . With

this plausible interpretation in mind, then, class counsel's opinion that a retaliatory filing violates Rule 11 is not such a wild notion."); *see also Vollmer*, 248 F.3d at 709 (noting that an attorneys' clients' "marked unfamiliarity with basic components of the settlement supports the courts finding that [the client] was put forward by his attorneys solely to enable them to collect fees in this action," which indicated an improper purpose).

Courts have imposed Rule 11 sanctions where, like here, a meritless objection obstructs and delays distribution of the settlement to the detriment of the entire class. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 131 (S.D.N.Y. 1999). In *In re NASDAQ Market-Makers Antitrust Litig.,* a disbarred attorney filed objections to a settlement in order to get more money for his "own unrelated claims." *Id.* at 130. The district court imposed Rule 11 sanctions on him because the objector "has abused the litigation process by pursuing his personal agenda even though his claims have no chance of success under the existing precedents, and no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Id.* at 131 (citations omitted). "The cumulative effect of [the objector's] repeated filings is to obstruct and delay the administration of the $ 1.027 billion settlement to the detriment of the entire class." *Id. See also* ECF 289 at 3-5 (discussing ongoing sanctions proceedings against Bandas and his local counsel in *Garber v. Office of the Cmm'r. of Baseball*).

Further, Mr. Hanigan and Mr. Bandas did not make a reasonable inquiry into the factual bases of the objection. *See Benedict*, 2014 U.S. Dist. LEXIS 7323, at *43 (quoting *Townsend*, 929 F.2d at 1364)) ("Such a factual investigation is 'an inquiry reasonable under all the circumstances of a case'"); *Maisonville v. F2 America, Inc.*, 902 F.2d 746 (9th Cir. 1990) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986)) ("Rule 11 was 'designed to create an affirmative duty of investigation both as to law and as to fact before

motions are filed.'"). Neither attorney ever spoke with objector Knott or Smith. They relied on Bandas' paralegal. A reasonable inquiry would have included, at some point, meaningful attorney communication with their clients to ascertain whether they were truly dissatisfied with the settlement agreement. *See Oganyan v. Square Two Fin.*, 2012 U.S. Dist. LEXIS 144194, at *6 (C.D. Cal. Sept. 26, 2012) (citations omitted) ("Thus, sanctions are proper where it is clear that an attorney failed to conduct even a cursory factual or legal inquiry into the merits of his client's claims . . . ."). Since Mr. Hanigan did not attend Ms. Knott's deposition, Class Counsel learned that Ms. Knott disagreed with the objections Mr. Hanigan filed on her behalf *before* Mr. Hanigan did.  That extraordinary fact underscores why Mr. Hanigan and his firm should be sanctioned severely.

Further, a reasonable inquiry by the attorneys before filing an objection to a class settlement would at least entail reading and understanding the basic terms of the settlement agreement, preliminary approval papers and Preliminary Approval Order, along with the fee motion papers. *See* Fed. R. Civ. P. 11 Advisory Committee's Notes (1983 Amendments) ("[W]hat constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether they had to rely on a client for information as to the facts underlying the . . . motion, . . . ."). *See also Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 985 (law firm sanctioned under Rule 11 for "misstatements of fact"); *Wu Grp. V. Synopsys, Inc.*, 2005 U.S. Dist. LEXIS 42351, at *39 (N.D. Cal. Aug. 10, 2005) ("By requiring certification that a pleading's allegations and factual contentions have evidentiary support, Rule 11 requires, *inter alia*, that counsel not misrepresent to the court the results of the investigation into the plaintiff's factual allegations."). Thus, because the objection was factually baseless and formed without a reasonable inquiry, Mr. Hanigan's and Mr. Bandas' objection was factually frivolous and is sanctionable. *See* Fed. R. Civ. P. 11(b)(3).

Mr. Hanigan's virtually-complete reliance on Bandas in filing the objection and amended objection within 42 minutes of first receipt is deficient. Given his personal knowledge of Mr. Bandas track record, including his tactic of using puppet counsel like Hanigan to avoid sanctions, Mr. Hanigan was on notice that any reliance of any investigation of Mr. Bandas was itself a violation of rule 11. *See Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1280 (1994) (upholding sanctions against lawyers who filed a complaint without conducting their own investigation of the facts and law because "Rule 11 requires that an attorney signing a pleading must make a reasonable inquiry personally" and those lawyers "abdicated their own responsibilities and relied excessively" on the investigation of another lawyer who had filed a similar complaint); *S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc.*, 842 F.2d 946, 949 (7th Cir. 1988) (imposing Rule 11 sanctions because counsel had failed to make a reasonable inquiry into the facts of the case where he relied only on the representations of two attorneys, rather than checking public records).

"A district court confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose…This is permissible because the test for improper purposes is objective." *Townsend*, 929 F.2d at 1365 (citing *Zaldivar*, 780 F.2d at 829); *see also Thomas v. Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010) (noting that sanctions were warranted when the "factual contentions were so weak—made without a reasonable and competent inquiry—that they provide objective evidence of improper purpose").[8] The attorneys are professional objectors, they and their clients lacked knowledge of the basic terms of the settlement agreement, and their client

---

[8] *See also Roberts v. Electrolux, Home Prods.*, 2014 U.S. Dist. LEXIS 130163, at *31, where Mr. Hanigan similarly filed objections reflecting that "misunderstand[s] or misread[s] the Settlement Agreement, or provide[s] no evidence or support (besides attorney argument) to advance his objection.".

disclaimed the objections made on her behalf. Thus, attorneys Hanigan and Bandas filed the frivolous objection for a sanctionable improper purpose.

Finally, Rule 11 is designed to function as a deterrent to frivolous filings; that rationale is significant considering that Mr. Hanigan and Mr. Bandas are serial objectors with a reputation for filing baseless objections. *See* Fed. R. Civ. P. 11 Advisory Committee's Notes (1993 Amendments) (noting that courts should consider "[w]hether the improper conduct was . . . part of a pattern of activity, or an isolated event; . . . whether the person has engaged in similar conduct in other litigation; . . . [and] what effect it had on the litigation process in time or expense"); *accord Corrigan v. Unknown King Cty. Deputy*, 2006 U.S. Dist. LEXIS 78594, at *5 (W.D. Wash. Oct. 27, 2006); *MetLife Bank, N.A. v. Badostain*, 2011 U.S. Dist. LEXIS 48398, at *11-12 (D. Idaho May 4, 2011); *see also Vollmer v. Publrs. Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001) (noting that the district court's consideration that the attorneys were "professional objectors" was proper under Rule 11). It is particularly significant that, given Mr. Bandas' long and sordid history of excoriation by multiple courts, neither Bandas nor Hanigan ever bothered to tell either Ms. Smith or Ms. Knott of Bandas' soiled reputation.  They learned about that for the first time at their depositions. Knott Tr. at 153-173; Smith Tr. at 112-122. When advised  that Mr. Bandas' business model was to use objections to extract fees for dismissal of the objections or appeals from the settlement or fee approval, without any corresponding benefit to the class, Ms. Knott tersely rejected that business model. Knott Tr. at 154-156; 166; 168-169. But she nonetheless persists in her objection and appeal.

The Smith/Knott Objection should not have been filed; after Ms. Knott's and Ms. Smith's depositions, it should have been immediately withdrawn (in whole or at least significant part), and no notice of appeal should have been filed that pursues the same baseless objections, most of which were disclaimed under oath, and none

of which were properly evaluated by Mr. Hanigan. That the lawyers behind the objection have persisted in its prosecution demonstrates that their motive is not to improve the settlement or assist the Court in any of its determinations in connection with Final Approval, but to create a vehicle for delay as a mechanism to extract fees. Because Mr. Hanigan is counsel of record, he and his firm should be sanctioned and held jointly and severally liable with Ms. Knott. That she refused to withdraw her objection and dismiss her appeal after presumably receiving notice of this Court's Final Approval Order detailing the infirmities of her objection and her counsel, and even after receiving notice of intent to file this motion (even though her co-objector Ms. Smith withdrew/dismissed her objection/appeal), underscores why sanctions should be imposed against her.

### C. Sanctions should also be Awarded under 28 U.S.C. § 1927 and/or the Court's Inherent Authority

Pursuant to 28 U.S.C. 1927, a court may sanction a lawyer who "so multiplies the proceedings in any case unreasonably and vexatiously."

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the *excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct*.

28 U.S.C. § 1927 (emphasis added). Where conduct is not covered by a rule or statute, the court may levy monetary discovery sanctions pursuant to the Court's "inherent authority." *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 961 (9th Cir. 2006).  Under its inherent powers, a district court may also award sanctions *in the form of attorney's fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons."  Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1061 (S.D. Cal. 2015) (citations omitted) (emphasis added). Before awarding such sanctions, the court must make

an express finding that the sanctioned party's behavior "constituted or was tantamount to bad faith." *Id.* A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and "preserves a balance between protecting the court's integrity and encouraging meritorious arguments." *Id.* In *Compass Bank*, in light of the court's finding that monetary sanctions were warranted, the court required the movant to submit detailed billing records relating to its time involved in attempting to carry out the desired discovery and in filing the motion for sanctions.

The sanctionable conduct described herein meets the standard for sanctions under 28 U.S.C. § 1927 and the Court's inherent authority, in addition to those pursuant to Rule 11. The objection necessitated extensive work by Class Counsel, Defendants' Counsel, and the Court in evaluating/responding to/adjudicating the objections and the taking of discovery and related discovery motions, thereby unreasonably and vexatiously multiplying the proceedings.

### D.    The Court should Impose Sanctions of $50,000.

Rule 11(c)(4)provides:

> *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation

According to the Advisory committee notes to Rule 11: "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons."

Some courts have required itemized time records indicating the time spent on the specific offensive conduct. *Hsu v. Intel Corp.,* No. 92-56137, No. 92-56405, No. 92-56522, 1993 U.S. App. LEXIS 24292, at *12-13 (9th Cir. Sep. 17, 1993); *Young v. Beard*, No. 2:11-cv-02491-KJM-AC, 2014 U.S. Dist. LEXIS 2216, at *19-20 (E.D. Cal. Jan. 7, 2014) *In re Yagman*, 803 F.2d at 1185-1185 (9th Cir. 1986). The court may also consider the attorney's ability to pay the sanction. *In re Yagman*, 803 F.2d at 1185 (9th Cir. 1986); *Hall v. Hamilton Family Ctr.*, No. 13-cv-03646-WHO, 2014 U.S. Dist. LEXIS 51479, at *37-38 (N.D. Cal. Apr. 11, 2014); *see also* advisory committee notes to Rule 11 ("partial reimbursement of fees may constitute a sufficient deterrent with respect to violations by persons having modest financial resources"). Moreover, in some cases, courts have awarded additional amounts where prior sanctions awards have been insufficient to deter future conduct. *Hugo Neu-Proler Co. v. Local 13 Int'l Longshoremen & Warehouse Union*, No. 99-55322, 2000 U.S. App. LEXIS 24825, at *7-8 (9th Cir. Sep. 28, 2000) (holding that raising a sanction award based on an attorney's status as a repeat offender would be well within the district court's discretion and accords with Rule 11's overriding purpose of deterrence).

Based on Class Counsel's lodestar and expenses incurred due to the sanctionable conduct (*see* Schwartz Decl., ¶ 4 and Exhibits A & B), which exceed $65,000,[9] and the fact that Messrs. Hanigan and Bandas and their client Knott have been undeterred notwithstanding their notorious track record and criticism by

---

[9] The lodestar understates the actual lodestar attributable to the Knott/Smith objection, because it does not include time spent researching the contours and drafting and serving the discovery subpoenas on the serial objectors and their counsel and also does not include most of the time spent on Plaintiffs' Supplemental Memorandum regarding objectors (ECF # 323). While a significant portion of both was attributable to the Knott/Smith objection, significant portions were also attributable to objections filed by other serial objectors. Schwartz Sanctions Decl., ¶ 4. The lodestar and expense figures also do not include time and travel expenses we expect to incur in connection with any reply brief we file and hearing on this sanctions motion.

numerous courts including this Court, this Court should impose a sanction and/or penalty of $50,000, to be paid to Class Counsel and/or to be  deposited to the Court in an allocation deemed appropriate by the Court. Otherwise, Hanigan and his firm, at the behest of Bandas, will simply continue undeterred in their scheme to extort underserved payments by vexatiously delaying and interfering with class settlements. Their conduct is particularly egregious here since nether of their purported clients had any direct out-of-pocket injury as their dishwashers never had an Overheating Event, and Ms. Knott's continuing conduct threatens to delay the significant safety benefits provided by the settlement for no good reason other than their improper selfish motives.

## II.  **CONCLUSION**

For the foregoing reasons, Plaintiffs' respectfully request that the Court hold that the Smith/Knott objections were brought in bad faith and for an improper purpose and/or without a proper investigation and award monetary sanctions and/or a penalty jointly and severally against Ms. Knott, Mr. Hanigan, and Lang Hanigan & Carvalho LLP.

DATED:  December 15, 2016          Respectfully submitted,

                                   _/s/ Steven A. Schwartz_
                                   Steven A. Schwartz (*pro hac vice*)
                                   Timothy N. Mathews (*pro hac vice*)
                                   **CHIMICLES & TIKELLIS LLP**
                                   361 West Lancaster Avenue
                                   Haverford, Pennsylvania 19041
                                   Telephone: (610) 642-8500
                                   Telecopier: (610) 649-3633
                                   sas@chimicles.com
                                   tnm@chimicles.com

Jeffrey M. Cohon (CSBN 131431)
Howard Pollak (CSBN 147077 )
**COHON & POLLAK, LLP**
10250 Constellation Boulevard, Suite 2320
Los Angeles, California  90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610
jcohon@cohonpollak.com

Charles S. Fax, Esquire (*pro hac vice*)
Rifkin Weiner Livingston, LLC
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-0172

David H. Weinstein (CSBN 43167)
Robert Kitchenoff (*pro hac vice*)
**WEINSTEIN KITCHENOFF
 & ASHER LLC**
100 South Broad St., Suite 705
Philadelphia, Pennsylvania 19110-1061
Telephone: (215) 545-7200
Telecopier: (215) 545-6535
weinstein@wka-law.com
kitchenoff@wka-law.com

Nicole Sugnet (CSBN 246255)
**LEIFF CABRASER HEIMANN
 & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Telecopier: (415) 956-1008
klaw@lchb.com
nsugnet@lchb.com

*Attorneys for Plaintiffs and Court –
Appointed Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.


            /s/ *Steven A. Schwartz*
            Steven A. Schwartz