Jeffrey M. Cohon (CSBN 131431)
Howard Pollak (CSBN 147077)
COHON & POLLAK, LLP
10250 Constellation Boulevard, Suite 2320
Los Angeles, California 90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610
jcohon@cohonpollak.com
hpollak@cohonpollak.com

Charles S. Fax (pro hac vice)
Liesel J. Schopler (pro hac vice)
RIFKIN, WEINER, LIVINGSTON, LLC
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-6535
cfax@rwlls.com
lschopler@rwlls.com

David H. Weinstein (CSBN 43167)
Robert Kitchenoff (pro hac vice)
WEINSTEIN KITCHENOFF & SHER LLC
100 South Broad St., Suite 705
Philadelphia, Pennsylvania 19110-1061
Telephone: (215) 545-7200
Telecopier: (215) 545-6535
weinstein@wka-law.com
kitchenoff@wka-law.com

Steven A. Schwartz (pro hac vice)
Timothy N. Mathews (pro hac vice)
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com
tnm@chimicles.com

Nicole D. Sugnet (CSBN 246255)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008
nsugnet@lchb.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE CHAMBERS, *et al*., in their individual capacities and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHIRLPOOL CORPORATION, *et al*.,<br><br>Defendants. | Case No. 8:11-cv-01733-FMO (JCGx)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST OBJECTOR CHRISTINE KNOTT AND HER COUNSEL OF RECORD TIMOTHY HANIGAN AND LANG, HANIGAN & CARVALHO LLP**<br><br>Date:   January 12, 2017<br>Time:   10:00 a.m.<br>Place:  Courtroom 22<br><br>The Honorable Fernando M. Olguin |

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. CONCESSIONS OF FACT BY RESPONDENTS . . . . . . . . . . . . . . . . . . . 1

    A. Facts That Respondent Knott Does Not Challenge . . . . . . . . . . . . . 1

    B. Facts That Respondent Hanigan Does Not Challenge . . . . . . . . . . . 2

II. MISGUIDED OR ERRONEOUS CHALLENGES TO FACTS . . . . . . . . . 4

III. RESPONDENT'S ARGUMENTS CONTESTING OTHER FACTS ARE WRONG AND PROVIDE FURTHER WARRANT FOR SANCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. Hanigan Shows His Continued Willful Ignorance of Material Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B. Hanigan Again Mischaracterizes *Roberts v. Electrolux* . . . . . . . . . . 9

IV. RESPONDENT'S LEGAL ARGUMENTS ARE FALLACIOUS . . . . . . 10

    A. The Motion Was Timely Filed . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B. Hanigan's Arguments About ABA Ethics Rules Are Misplaced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C. Hanigan Misstates the Rule 11 Standards . . . . . . . . . . . . . . . . . . . 12

    D. Sanctions Pursuant to 28 U.S.C. § 1927 and Inherent Authority . . . . 13

V. RESPONDENTS CONCEDE THE AMOUNT OF DAMAGES . . . . . . . . 14

i

Case No. 11-01733 FMO (JCGx)
PLTFS. REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST OBJECTOR CHRISTINE KNOTT AND HER COUNSEL

# TABLE OF AUTHORITIES

**CASES**

Page No.

*Cal. Int'l Chem. Co. v. Sister H. Corp.*, NOS. 97-15233, 97-16858,
   97-16997, 1999 U.S. App. LEXIS 868 (9th Cir. Jan. 19, 1999) . . . . . . . . . . 4

*Feyko v. Yuhe Int'l, Inc.*, No. CV 11-05511 DDP (PJWx),
   2013 U.S. Dist. LEXIS 29905 (C.D. Cal. Mar. 5, 2013) . . . . . . . . . . . . . . . . 1

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
   2016 U.S. Dist. LEXIS 124235 (N.D. Ill. Sept. 13, 2016) . . . . . . . . . . . . . . 8

*Islamic Shura Council of S. Cal. v. FBI*, 278 F.R.D. 538
   (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Islamic Shura Council of S. Cal. v. FBI*, 757 F.3d 870 (9th Cir. 2014) . . . . . . . . . 10

*Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991) . . . . . . . . . . . . . . . 4

*Park-Kim v. Daikin Indus.*, No. 2:15-cv-09523-CAS(KKx),
   2016 U.S. Dist. LEXIS 104248 (C.D. Cal. Aug. 3, 2016) . . . . . . . . . . . . . . . 1

*Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*,
   339 F.3d 1146 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Roberts v. Electrolux Home Prods.* 2014 U.S. Dist. LEXIS 130163
   (C.D. Cal. Sept. 11, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Russell v. Pac. Motor Trucking Co.*, No. 15-55060, 2016 U.S. App.
   LEXIS 21570 (9th Cir. Dec. 2, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 1

ii

Case No. 11-01733 FMO (JCGx)
PLTFS. REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST OBJECTOR CHRISTINE KNOTT AND HER COUNSEL

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358
   (9th Cir. Cal. 1991) ................................................. 12

**STATUTES AND RULES**

28 U.S.C. § 1927 ......................................................... 13
F.R.C.P. 11 ................................................... 6, 10, 11, 12

**OTHER AUTHORITIES**

ABA Standing Committee on Ethics and Professional Responsibility,
   Formal Opinion 07-446 (May 5, 2007) .......................... 11

Plaintiffs, through Class Counsel, hereby reply to the arguments of Objector Christine Knott and her counsel of record, Timothy Hanigan and Lang, Hanigan & Carvalho LLP (collectively, "Respondents") made in their Opposition [ECF 382] to Plaintiffs' Motion for Sanctions [ECF 377, 377-2].

## I. CONCESSIONS OF FACT BY RESPONDENTS

Respondents' Opposition fails to address, and thus concedes, most facts relevant to the Motion.[1] Respondents' meagre challenge to several facts is baseless.

### A. Facts That Respondent Knott Does Not Challenge

Knott does not challenge the following facts that are established by her own sworn deposition testimony:

- She agrees with the Court's analysis approving the sale of Steve Chambers' websites to Whirlpool, and only saw that (or any other) analysis for the first time at her deposition when Class Counsel showed it to her;[2]
- She believes the rebates provided by the settlement are valuable even if the rebate-holder does not buy a new Whirlpool dishwasher;
- She never spoke with any attorney before her objection was filed; she spoke only with Bandas' paralegal, a long-time friend;

---

[1] *See, e.g Park-Kim v. Daikin Indus.*, No. 2:15-cv-09523-CAS(KKx), 2016 U.S. Dist. LEXIS 104248, at *55 (C.D. Cal. Aug. 3, 2016) (failure to respond to argument concedes the argument); *accord Feyko v. Yuhe Int'l, Inc.*, No. CV 11-05511 DDP (PJWx), 2013 U.S. Dist. LEXIS 29905, at *32 (C.D. Cal. Mar. 5, 2013).

[2] The Opposition at page 19 asserts that Class Counsel fail to distinguish objectors' citation to *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003), which held that "[i]f class representatives expects **routinely** to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of class members whose interests they are appointed to guard." (emphasis added). That case is wholly inapposite, as there is nothing *routine* about Mr. Chambers' work in creating the websites, which gathered critical information and promoted safety to the point that Whirlpool insisted on purchasing it for $100,000. Ms. Knott readily agreed after reading this Court's comprehensive discussion in the preliminary approval order.

- She never authorized Mr. Hanigan or his firm to represent her or file her objection, even though her retainer with the Bandas firm, which she expected to be strictly followed, required her express written consent for Bandas to associate with other counsel;

- She first learned of Bandas' notorious reputation from Class Counsel at her deposition, and rejected as improper his business model of "settling" objections for exorbitant fees with no corresponding class benefit;

- She did not know there was a contested fee process with Whirlpool (she alleged in the objection that there was a collusive "tacit exchange" for "little resistance to class counsel's [fee] request") and first learned from Class Counsel that Whirlpool had filed a vigorous opposition to the fee motion;

- She read no documents other than the summary notice, and relied on the Bandas firm for her objection;

- Despite her disagreement with virtually every material aspect of the objection filed on her behalf, she never asked her attorneys to withdraw or modify her objection, and apparently never even spoke with them until the day before the Final Approval Hearing.

**B.     Facts that Respondent Hanigan does not Challenge**

Respondent Hanigan similarly fails to dispute most of his documented misconduct:

- His pre-filing "investigation" consisted of only 42 minutes on the same day he filed the objection (part of which included adding a missing document and filing an amended objection), and did not entail reading the relevant documents including the Settlement Agreement, the Preliminary Approval Order, or class counsel's fee motion;

- He never communicated with any attorney (including Bandas) before filing the objection;

- He relied on Bandas for the drafting of the objection despite knowing his notorious reputation (in part from working with Bandas on ten other class objections), including his reputation for using local counsel as cut-outs to shield Bandas from sanctions;
- He never communicated with "clients" Knott and Smith before filing their objections; he first spoke with Knott the day before the final approval hearing. There is no evidence he ever spoke with Smith;
- He was not authorized to file the objection, as he did not have a written retainer with either Knott or Smith, and Bandas' retainer with both objectors did not authorize Hanigan to represent them without a separate written retainer;
- He never withdrew or modified any of his clients' objections even after they disclaimed most of them at their depositions;
- He failed to correct outrageous misstatements in the objection, *e.g.*, that Whirlpool agreed to a "tacit exchange" for "little resistance to class counsel's [fee] request"), even when confronted with Whirlpool's opposition to such request;
- He provides no defense to the fact that his client Smith, on deposition, disclaimed many of their written objections: (i) Smith agreed that the Settlement's provision of full recovery of repair costs for class members who suffered Overheating Events was better than a compromise because it afforded them a full recovery; (ii) she acknowledged that the warranty insurance that provides compensation for future Overheating Events for her current dishwasher has value to her; (iii) Smith admitted that she, like Knott, read only the postcard notice, and prior to the filing of her objection to the fees, did not even know that Defendants would be contesting the amount;
- He offers no defense as to why he participates in Bandas' documented practice of orchestrating objections for the purpose of extorting fees without any corresponding benefit to the class.

## II. MISGUIDED OR ERRONEOUS CHALLENGES TO FACTS

Respondents' efforts to dispute a few facts in the Motion pend on flagrant misrepresentation of the record. Most consist of Hanigan attempting to recast or withdraw Knott's testimony *via* his new declaration. Apart from its inadmissibility as hearsay, his declaration violates the sham affidavit rule and should be ignored.[3] For example:

- **Knott did not know that Hanigan Represented Her**: The Opposition cites to page 133 of her deposition, where, in fact, she responded "No" to the question: "Do you know who Tim Hanigan is?" On page 38, she testified: "Mr. Bandas is representing me. I thought he was the only one, other than, of course, Wade [Howard][4] being here for the deposition" and "Besides Mr. Howard's front of Mr. Bandas' firm, is there any other lawyer or any other firm that's representing you? A. Not that I'm aware of." Knott Transcript Excerpts are at ECF 269-2 and 382-4.

- **Knott Disclaimed Most of the Objections**: At the end of her deposition, in response to questioning from Whirlpool's lawyer, Knott mechanically said she stood by her objections. Tr. at 207-208. But she never withdrew her prior testimony disclaiming virtually all of the specific objections cited above and in the Motion. Rather, she testified that none of Whirlpool's questions caused her to rethink any of her prior answer. Tr. at 209. Nor does she submit any new declaration explaining or

---

[3] "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Russell v. Pac. Motor Trucking Co.*, No. 15-55060, 2016 U.S. App. LEXIS 21570, at *2 (9th Cir. Dec. 2, 2016); *Cal. Int'l Chem. Co. v. Sister H. Corp.*, NOS. 97-15233, 97-16858, 97-16997, 1999 U.S. App. LEXIS 868, at *20 (9th Cir. Jan. 19, 1999); *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991). In any event, the lack of any supporting declaration from Knott seeking to explain her testimony is telling. Indeed, consistent with Hanigan's conduct throughout this case, and Knott's role as a mere vehicle for Bandas, the Opposition reads as if it is almost exclusively focused om defending Hanigan and his firm at the expense of their purported client Ms. Knott.

[4] Bandas contracted with Mr. Howard (and not Hanigan or Hanigan's firm) to represent Smith and Knott for their depositions.

disclaiming her prior testimony. Her behavior underscores why she should be sanctioned together with her counsel.

- **Knott Disagreed with the Fee Objection Analysis**: Notwithstanding the absence of any declaration from Ms. Knott, the Opposition asserts that she was confused about her testimony endorsing fees as high as $27 million. Not true. At page 50 Knott initially said the attorneys' fees are "quite high." But her testimony at page 73-81 makes clear that she believed that any fee award "below Class Counsel's approximate $9 million lodestar would <u>not</u> be unreasonable or objectionable, and that fees of $18M-$27M, representing multiples of 2-3, were also reasonable.[5] When asked if she was following the discussion, she testified "Yes" to "Are you with me so far" (page 79 lines 3-8) and provided assurance that "I understand" the line of questioning. *See* page 80 line 13). There is no indication that she did not understand anything, or that Class Counsel was trying to confuse her (the opposite is true) and neither her lawyer at the deposition nor Whirlpool's lawyer were able to elicit any contrary testimony or generate any new testimony regarding any confusion. Rather, at page 209, she confirmed that none of Whirlpool's counsel's questions caused her to rethink any of her answers. And her lawyer Mr. Howard did not ask any questions. If he thought any of her answers were based on confusion, it was his obligation to clear that up. He took no such steps, because there was no confusion.

- **Other Settlement Complaints**: The Opposition touts that at deposition page 50 Knott complained that "I'm not receiving much benefit out of the settlement" without pointing out that her dishwasher has worked with no problems or Overheating Events for 13 years and that she submitted a claim seeking

---

[5] The Opposition at page 9 cites to testimony at pages 81-82 regarding uncertainty about not knowing what the appropriate multiple should be, but that testimony related to multiples of between 4-10 (*i.e.* Knott didn't know if $27 million was the upper range of an unobjectionable fee).

the rebate option, thereby reflecting she believed that the rebate provided material compensation to class members like her. In any event, that testimony is worthless, as she is utterly ignorant of the settlement terms to the point where she could not reach any reasoned conclusion. She had "no idea" whether the rebates were stackable and could be used in conjunction with any other promotion or negotiated discounts. Tr. at 92-93. If she sincerely had an issue with the value of the rebates, she would have known that fact (or her lawyers would have educated her on it). She also stated "I don't know" when asked if she had "any complaints with the amount of [the] cash payment for future overheating events" for her 13-year old dishwasher. Tr. at 179-180. On page 50, she admitted her ignorance of the terms of the settlement, stating that she had no idea how much class members who, unlike her, had experienced Overheating Events, would receive under the settlement, but, based *on her reading her objection*, she thought they were only getting a discount off of new dishwashers. *Id.* at 50-51. In fact, they are eligible for a full cash recovery. Her ignorance of basic terms of the settlement, on its face, shows why she and her counsel should be sanctioned.

### III. RESPONDENTS' ARGUMENTS CONTESTING OTHER FACTS ARE WRONG AND PROVIDE FURTHER WARRANT FOR SANCTIONS

The Opposition tries to deny the obvious by invoking incomplete deposition excerpts and otherwise distorted facts. These arguments merely highlight the deficiencies in Hanigan's pre-filing investigation and his ill-motives throughout.

**A. Hanigan Shows His Continued Willful Ignorance of Material Facts**

The objection falsely made the wild and baseless accusation that Whirlpool conspired with Class Counsel for a sweetheart deal as a "tacit exchange" for "little resistance to class counsel's [fee] request." Aside from the declaration of mediator Eric Green that the settlement was not the product of collusion [ECF # 192-42], Hanigan and Bandas, had they performed any due diligence as required by Rule 11,

would have known that Whirlpool was vigorously contesting the fees. In fact, the Opposition shows either that Hanigan has yet to conduct such due diligence, or if he has – and in all events – simply does not care.

He falsely contends at pages 16-17 that "neither the Notice nor the preliminary approval papers 'clearly state' that there be a contested fee process." Hanigan must know that statement is false. In the Preliminary Approval Motion, which appears at ECF # 192-1 and is prominently displayed on the Settlement Website, in the relevant section, conspicuously titled "Plaintiffs' Counsel Will Apply Separately For Attorney's Fees…," Class Counsel advised the Court at page 29 that "**while Whirlpool acknowledges counsel's entitlement to fees, it will contest the amount**." (emphasis added)[6] Moreover, the Settlement Agreement at § IX describes the contested fee process. The Fee Motion [ECF # 218-1], at pages 2-3 & 10-11, makes clear that Whirlpool will oppose the $15 million fee request[7] just as it did in the *FLW CCU Litigation* negotiated with Co-Lead Class Counsel here, and that the only prospect for agreement was with respect to expenses: ("[Defendants]

---

[6] In the Opposition at page 17, Hanigan points to statements at page 16 of the Preliminary Approval Motion that references the (unlikely) possibility of a negotiated fee, but footnote 10 on that page makes clear that if any such agreement were reached, there would be notice to the Court *before* the filing of the fee motion: "Before the deadline for objections or requests for exclusion by class members, either the parties will advise the Court of their agreed-upon figures for payment of attorneys' fees and costs, or Plaintiffs' Counsel will submit their motion for an award of attorneys' fees, costs…"

[7] See page 2: "The attorney fee provisions in this Settlement **differ from fee provisions in many class action settlements** because there is no "clear sailing" agreement. Here, by design, the Settlement Agreement and accompanying Preliminary Approval Order provide that **the parties will litigate the proper amount of fees, with no upside or downside limitations or guarantees**, and that the fees and expenses awarded by the Court will be paid by Whirlpool independent of the cash and other relief provided by Whirlpool to the Plaintiffs, class members, and non-class owners of covered dishwashers…") (emphasis added).

have reserved the right to challenge the **amount of expenses** sought, but may elect not to do so. (The parties' discussions as to a possible agreement **on expenses** are ongoing)" (emphasis added). At page 45, the fee motion reinforces that Class Counsel and Whirlpool will engage in the same type of contested fee process used in the *FLW/CCU Litigation*, where they agreed on expenses but waged an extensive fee contest.[8] The whole tenor of the fee motion presumes a contest. *See, e.g.,* page 21 ("in the face of highly skilled, experienced, "take no prisoners" adversaries – Defendants cannot complain about the time Class Counsel were required to spend prosecuting the case"). Hanigan and Bandas are experienced class action objectors counsel. Had they done the minimum due diligence, they would have known not only that Defendants were not going to agree, tacitly or otherwise, to the requested fee, but intended to mount a vigorous opposition as they did in the *FLW CCU* case. *See* ECF 242 and decision in *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 124235 (N.D. Ill. Sept. 13, 2016).

After Whirlpool's fee opposition was filed, Hanigan compounded his misconduct by doing nothing to correct his objection prior to the Final Approval Hearing or fee decision. Indeed, neither he nor Bandas thought the issue was even worth mentioning to their client Knott. Rather, Hanigan dug in his heels, denying at his deposition that that the accusation of a tacit agreement and collusion was inaccurate. *See* Motion at 13. Nor did he withdraw his baseless accusation at the Final Approval Hearing that he attended, even after Class Counsel noted the frivolousness of the claim. *See* August 25, 016 Hearing Tr. at 22. Hanigan then maintained his position through his signing and filing the notice of appeal.

---

[8] "In the *Whirlpool/Sears FLW CCU Litigation* settlement, **which had a similar contested fee/expense procedure**, after class counsel there filed their fee and expense petition, they provided counsel for Whirlpool with additional details/backup regarding the requested expenses and Whirlpool and class counsel were ultimately able to reach agreement on the amount of expenses." (emphasis added)

Now, in opposing this Motion and on appeal, Hanigan and Knott switch theories by abandoning their reckless accusation of collusion and adopting Whirlpool's argument that the settlement was the product of "limited bargaining power by class counsel, and not collusion." Opposition at 17. Besides the fact that Respondents never preserved this "Johnny come lately" theory, and thus waived it, their tardy abandonment of the express collusion assertion simply emphasizes their awareness of its baselessness.

### B. Hanigan Again Mischaracterizes *Roberts v. Electrolux*

The Court in *Roberts* held that Hanigan (who was co-counsel with notorious and suspended serial objector Darryl Palmer) is a serial objector, and noted that the objection he asserted "misunderstand[s] or misread[s] the Settlement Agreement, or provide[s] no evidence or support (besides attorney argument) to advance his objection." Hanigan provides no evidence that the court's conclusion was wrong. He simply asserts that Class Counsel's (and presumably the Court's prior references) to that decision are "sanctionable." Opp. at 3-4. Class Counsel previously gave the Court the relevant information – in *Roberts*, Judge Snyder's *nunc pro tunc* revisions to the approval and fee order were not triggered by any new filing, information or reconsideration, and had nothing to do with Hanigan. Rather, they were due to settlements where serial objectors extorted money to dismiss their objections/appeals with no corresponding benefit to the class, but enabling the parties to obtain settlement relief, including enhancements to safety. *See* ECF 271-1 at ¶ 12; ECF # 271 at 37; ECF # 268-1 at 5-6 & note 6; ECF # 323 at 15 & note 9.[9]

---

[9] The mendacity of Hanigan's attitude and conduct are further illuminated by his assertion at page 23 that if it is proper for class counsel to make payments to serial objectors so class members can get their relief without delay, it necessarily must be proper for serial objectors to seek to extort such payments with no corresponding benefit to the class. That is like arguing that if it is proper for a family to pay ransom to free a kidnapped hostage, it must have also been proper for the hostage taker to seek the ransom in the first place.

## IV. RESPONDENTS' LEGAL ARGUMENTS ARE FALLACIOUS

### A. The Motion was Timely Filed

Respondents argue that the Sanctions Motion is untimely, as it was filed after the Court overruled the objections. The argument is meritless, and the cases cited by Respondents do not support their claim. Rather, these cases show that the key issue is not the order or timing of the filing *per se*, but rather, whether the party to be sanctioned has had a meaningful opportunity to correct the offensive conduct (or, if so, whether the party did so) prior to the filing of the Sanctions Motion and the underlying decision disposing of the sanctionable pleading.

For example, in *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1151 (9th Cir. 2003), the court held that waiting to serve a sanctions motion until after the time to amend the dismissed complaint had expired was untimely because it frustrated the "safe harbor" provision of Rule 11, as the attorney had no opportunity to correct his actions without suffering sanctions. Similarly, in *Islamic Shura Council of S. Cal. v. FBI*, 757 F.3d 870, 873 (9th Cir. 2014), the court held that sanctions imposed for misrepresentations to the court about the existence of disputed documents were improper where the court had determined that plaintiffs were not ultimately entitled to receive the underlying disputed documents, as there was no avenue for the sanctioned party to remedy the offending conduct to avoid sanctions.[10]

Here, in contrast, Respondents had ample opportunity to correct the offending conduct after receiving repeated notice of the deficiencies, including notice in the parties' Joint Stipulation regarding their Discovery Dispute [ECF

---

[10] Furthermore, in *Islamic Shura Council,* unlike in the present case, the parties did not dispute that the offending party did not act out of improper purpose or bad faith. *Islamic Shura Council of S. Cal. v. FBI*, 278 F.R.D. 538, 544 (C.D. Cal. 2011)

271]; Plaintiffs' Settlement Approval Brief [ECF 254-2 at 14-23]; and Plaintiffs' Supplemental Memorandum regarding objectors [ECF # 323], filed a few days before the Final Approval Hearing, all of which illuminated Ms. Knott's deposition testimony, the defects of the objections, the relevant Rule 11 standards and Hanigan's deficient investigation. Hanigan also could have withdrawn or modified the objection at the Final Approval Hearing after Class Counsel called him out for his reckless and baseless collusion accusation. Hanigan and Knott also had notice via the Court's final approval order and the pre-filing notice of the instant Motion.

Instead of withdrawing or correcting the objection, they persisted in prosecuting it. Even after the Court, in its final approval order, highlighted the defects that form the crux of this Motion, Respondents persisted in prosecuting the objection "as-is" by filing a notice of appeal in this Court. Respondents thus chose to ignore the repeated opportunities they were given to correct their sanctionable misconduct, necessitating the filing of this Motion. Its timing is thus appropriate. A finding otherwise would reward Respondents for Hanigan's delay of discovery that prevented Class Counsel from assembling their Motion and meeting the Rule 11 21-day notice period prior to the Final Approval Hearing.

B.     **Hanigan's Arguments About ABA Ethics Rules Are Misplaced**

Hanigan seeks to avoid responsibility for his conduct in signing and filing the objection, entering his appearance before this Court, appearing at the final approval hearing as counsel of record, and signing and filing the notice of appeal, by contending that any sanctionable misconduct was the fault of Bandas, whom Hanigan tacitly blames for failing to properly vet his clients' wishes in drafting the objection. In an effort to bolster this "point the finger" defense, Hanigan cites ABA Formal Ethics Opinion 07-446 (May 5, 2007), available at http://www.americanbar.org/content/dam/aba/administrative/delivery_legal_service s/ls_del_aba_07_446_2007.authcheckdam.pdf,which opines that a lawyer may

ghostwrite *pro se* litigants' papers without disclosing or ensuring disclosure of the nature or extent of such assistance. That opinion is wholly inapplicable here. Hanigan is not a ghostwriter; he signed and filed the objection and entered his appearance as attorney of record. By doing so, he assumed the duties imposed by Rule 11. Indeed, the opinion makes clear that it only applies "as long as the lawyer does not do so in a manner that violates rules that otherwise would apply to the lawyer's conduct," such as Rule 11.

### C. Hanigan Misstates the Rule 11 Standards

Recognizing the deficiency of his 42-minute investigation and the irreconcilability of his objection with Knott's testimony, Hanigan cites *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. Cal. 1991) and other cases for the proposition that even if he failed to conduct a proper investigation, and his objection was filed with an improper motive, he cannot be sanctioned if the objection was minimally non-frivolous. Opposition at 20. In fact, *Townsend* says the opposite. It requires an inquiry reasonable under "'all the circumstances of a case,'" because "the central purpose of Rule 11 is to deter baseless filings in District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Townsend*, 929 F.2d at 1363-1364, citing *Cooter & Gell, v. Hartmarx Corp.*, 496 U.S. 384, 110 S. Ct. 2447, 2454 (1990). Thus, *Townsend* holds: "Our cases have established that sanctions must be imposed on the signer of a paper **if either** a) the paper is filed for an improper purpose, **or** b) the paper is "frivolous." 929 F.2d at 1362 (emphasis added), citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986). The Court also emphasized that there is no safe harbor for a sanctionable allegation even if stated in a pleading that has non-sanctionable allegations. *Id.* at 1363-1364.

Here, the objection contains objectively sanctionable allegations as discussed above. It is irrelevant that Whirlpool seeks a lower fee award for different reasons

(based on its incorrect reading of governing law). Moreover, it is never objectively reasonable for a lawyer to persist in pursuing a pleading that asserts a position on behalf of a client who disagrees under oath with that position. Lawyers must serve their clients. As serial class action objectors, Hanigan and Bandas have repeatedly said so themselves, by making reckless allegations that class counsel negotiate agreements that serve their own pecuniary interests and not those of their class-member clients. Hanigan's argument that it was objectively reasonable for him to file an objection that was flatly inconsistent with his client's wishes and views encapsulates his and Bandas' practice of filing objections to further their own pecuniary interests without regard to the interests of their clients, whom they use as passive puppets to extort fees.

### D. Sanctions Pursuant to 28 U.S.C. § 1927 and Inherent Authority

Section 1927 sanctions are appropriate because Hanigan and Knott acted recklessly and in bad faith. Accusing highly-respected lawyers and mediators of collusion and undisclosed "tacit agreements" (*i.e.* lying to the court and clients) based on a 42-minute investigation without ever speaking with the client is reckless and in bad faith. So is partnering with discredited lawyers like Bandas and Darryl Palmer, and failing to disclose to your client Bandas' sordid reputation. So is persisting in objections after your client under oath disclaims them. Knott's allowing herself to be used by Hanigan and Bandas reveals her own recklessness, as does her refusal to rein in her lawyers after Class Counsel alerted her to their reputation and the irreconcilability of her views with the objections filed on her behalf. Upon receipt of this Motion, Objector Smith had enough self-awareness to withdraw her objection and appeal. Knott has not, and therefore should be held jointly and severally responsible with her attorney Hanigan.

V.   **RESPONDENTS CONCEDE THE AMOUNT OF DAMAGES**

The Motion provides documentation supporting $50,000 as the actual damages incurred due to the sanctionable misconduct that is the subject of the Motion. The Opposition does not challenge that documentation or that the amount reflects actual damages, nor does the Opposition assert an inability to pay. Accordingly, if sanctions are awarded, Hanigan and Knott have conceded the amount.

DATED: December 29, 2016            Respectfully submitted,

/s/ Steven A. Schwartz
Steven A. Schwartz (*pro hac vice*)
Timothy N. Mathews (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com
tnm@chimicles.com

Jeffrey M. Cohon (CSBN 131431)
Howard Pollak (CSBN 147077 )
**COHON & POLLAK, LLP**
10250 Constellation Boulevard, Suite 2320
Los Angeles, California 90067
Telephone: (310) 231-4470
Facsimile: (310) 231-4610
jcohon@cohonpollak.com

Charles S. Fax, Esquire (*pro hac vice*)
Rifkin Weiner Livingston, LLC
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-0172

David H. Weinstein (CSBN 43167)

14      Case No. 11-01733 FMO (JCGx)
PLTFS. REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS
AGAINST OBJECTOR KNOTT AND HER COUNSEL

Robert Kitchenoff (*pro hac vice*)
**WEINSTEIN KITCHENOFF
 & ASHER LLC**
100 South Broad St., Suite 705
Philadelphia, Pennsylvania 19110-1061
Telephone: (215) 545-7200
Telecopier: (215) 545-6535
weinstein@wka-law.com
kitchenoff@wka-law.com

Nicole Sugnet (CSBN 246255)
**LEIFF CABRASER HEIMANN
 & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Telecopier: (415) 956-1008
klaw@lchb.com
nsugnet@lchb.com

*Attorneys for Plaintiffs and Court –
Appointed Counsel for the Class*

# CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Charles S. Fax*
Charles S. Fax