Charles S. Fax (*pro hac vice*)
Liesel J. Schopler (*pro hac vice*)
**RIFKIN WEINER LIVINGSTON LLC**
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-6535
cfax@rwlls.com
lschopler@rwlls.com

Steven A. Schwartz (*pro hac vice*)
Timothy N. Mathews (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER
  & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com
tnm@chimicles.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE CHAMBERS, *et al*., in their individual capacities and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WHIRLPOOL CORPORATION, *et al*., <br><br> Defendants. | Case No. 8:11-cv-01733-FMO (JCGx) <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR ATTORNEYS FEES AND PAYMENT OF UNREIMBURSED LITIGATION EXPENSES** <br><br><br> The Honorable Fernando M. Olguin |

## **<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ........................................................................1

    A.    Background .......................................................................2

    B.    Appeals.............................................................................4

    C.    The Instant Fee And Expense Request ..............................5

    D.    Class Counsel's Current Total Lodestar Is $15 million......6

    E.    The Ninth Circuit's Guidance ...........................................7

II.   ARGUMENT ...............................................................................8

    A.    The Requested Fee of $8.4 Million Is Easily Supported
        By Class Counsel's Reasonable Lodestar............................8

        1.    Class Counsel's Previously Approved Lodestar
            Calculated At Current Rates Is The Starting Point
            For A Lodestar Analysis...........................................8

        2.    The Court Should Attribute No More Than 10%
            of Previously Approved Lodestar to Coupon Work..............9

        3.    The Court Should Also Credit at Least 50%,
            or $1.24 Million, of Class Counsel's
            Post-Submission Lodestar .......................................12

        4.    In Sum, The Requested Fees Is At Most A .69 Multiple
            of Class Counsel's Reasonable, Adjusted Lodestar ..............14

    B.    The Non-Coupon Valuation Cross Check
        Supports the Requested Fee.............................................14

        1.    Cash Reimbursements For Past Overheating Events
            Will Likely Total About $2.78 Million ...................15

        2.    The Future Overheating Coverage Value Is
            At Least Worth $ 20.1 Million ..............................16

   3. The Court Should Place A Zero Dollar Value
on Injunctive Relief, But Consider It When
Evaluating The Multiplier ........................................................19

   4. Notice and Administration, and Attorneys' Fees
and Expenses Total $ 11.6 million ..........................................19

   5. The Requested Fee Is Less Than 25% of the Gross,
Non-Coupon Settlement Value..................................................20

 D. The Relevant Multiplier Factors Support The Fee Requested .........22

 E. Class Counsel Seek No Fee on Coupon Relief.................................24

 F. The Court Should Award An Additional $80,065 In Expenses .......25

V. CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

## CASES

*In re BankAmerica Corp. Sec. Litig.*,
    775 F.3d 1060 (8th Cir. 2015) ............................................................................ 14

*Barlow-Gresham Union High Sch. Dist. No. 2 v. Mitchell*,
    940 F.2d 1280 (9th Cir. 1991) ........................................................................... 12

*Bentley v. United of Omaha Life Ins. Co.*,
    2020 U.S. Dist. LEXIS 126603 (C.D. Cal. Mar. 13, 2020) ................................. 6

*In re Bluetooth Products Liab. Lit.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................. 21

*Briseño v. Henderson*,
    2021 U.S. App. LEXIS 16261 (9th Cir. June 1, 2021) ...................................... 19

*Chambers v. Whirlpool Corp.*,
    980 F.3d 645 (9th Cir. 2020) ......................................................................*passim*

*Cruz v. Alhambra Sch. Dist.*,
    282 F. App'x 578 (9th Cir. 2008) ........................................................................ 2

*Dickey v. Advanced Micro Devices, Inc.*,
    2020 WL 870928 (N.D. Cal. Feb. 21, 2020) ....................................................... 6

*In re Easysaver Rewards Litig.*,
    2020 U.S. Dist. LEXIS 77483 (S.D. Cal. Apr. 30, 2020) ...........................*passim*

*In re Easysaver Rewards Litigation*,
    906 F.3d 747 (9th Cir. 2018) ................................................................4, 7, 8, 12

*In re Facebook Biometric Privacy Litig.*,
    No. 15-cv-03747 (N.D. Cal.) ............................................................................... 6

*Granillo v. FCA US LLC*,
    2019 U.S. Dist. LEXIS 146086 (D.N.J. Aug. 27, 2019) .................................... 17

*In re HP Inkjet Printer Litigation*,
    2014 U.S. Dist. LEXIS 139850 (N.D. Cal. Sept. 30, 2014) ........................ 11, 21

*In re Hyundai & Kia Fuel Economy Litigation*,
    926 F.3d 539 (9th Cir. 2019) ........................................................................4, 23

iii

*Kendig v. ExxonMobil Oil Corp.*,
  2020 U.S. Dist. LEXIS 153452 (C.D. Cal. Aug. 24, 2020) ................................ 6

*In re Lidoderm Antitrust Litig.*,
  2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ..................................................... 6

*Moore v. Verizon Communs., Inc.*,
  2013 U.S. Dist. LEXIS 170027 (N.D. Cal. Nov. 27, 2013) ............................... 12

*O'Keefe v. Mercedes-Benz USA*,
  LLC, 214 F.R.D. 266 (E.D. PA. 2003) ............................................................... 17

*In re Online DVD*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................. 23

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ........................................................................... 20

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) ........................................................................... 7

*In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices &*
  *Prods. Liab. Litig.*,
  2010 U.S. Dist. LEXIS 87643 (S.D.N.Y. Aug. 24, 2010) ................................. 17

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
  2018 U.S. Dist. LEXIS 130505 (N.D. Ill. Aug. 3, 2018) ....................... 12, 13, 16

*In re Southwest Airlines Voucher Litig.*,
  799 F.3d 701 (7th Cir. 2015) ....................................................................... 12, 22

*Stetson v. Grissom*,
  714 Fed. Appx. 681 (9th Cir. 2017) ..................................................................... 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
  *Practices, & Prods. Liab. Litig.*,
  2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) ................................ 17

*Ustrak v. Fairman*,
  851 F.2d 983 (7th Cir. 1988) ............................................................................. 13

*Vaughn v. Am. Honda Motor Co.*,
  627 F. Supp. 2d 738 (E.D. Tex. 2007) ................................................................. 7

*In re Volkswagen & Audi Warranty Extension Litig.*,
    89 F. Supp. 3d 155 (D. Mass. 2015)......................................................17

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ...............................................................8

*Wells v. Best Buy Co.* (*In re Samsung Top-Load Washing Mach. Mktg.,
    Sales Practices & Prods. Liab. Litig.*),
    2021 U.S. App. LEXIS 13620 (10th Cir. May 7, 2021) ...................79

**<u>STATUTES</u>**

CAFA ..................................................................................................4

# I.     INTRODUCTION

Four and a half years ago this Court granted final approval to a nationwide class action settlement covering over 18 million dishwashers, which Plaintiffs allege are defective and prone to control board combustion ("Overheating Events"). ECF 351. As the Court noted, the settlement "secures monetary relief for Class Members who suffered an Overheating Event, provides insurance like coverage for future Overheating Events, promotes public safety by creating an incentive for current owners to replace their Class Dishwashers, and requires new [safety] warnings…." *Id*. at 30. Further, in addition to "the primary relief of compensating 'Class members whose dishwashers have failed, and [providing] coverage for future failures,'" the settlement offers rebates to owners of roughly a third of the dishwashers towards the purchase of a new dishwasher. *Id*. at 20. The Court described the settlement as a "compelling" settlement that provides "substantial relief." *Id*. at 16, 24.

Attorneys' fees were disputed. After considering the parties' arguments, examining Class Counsel's daily time records, and concluding that Class Counsel's hourly rates were reasonable, the Court awarded $14.8 million in attorneys' fees, representing a 1.68 multiplier of Class Counsel's approved lodestar of $8.8 million as of March 31, 2016.  *Id*. at 22, 26-27, 34.

Whirlpool appealed the award of fees, and several serial objectors appealed the approval of the settlement and the award of fees. After a four-year appeal process, the Ninth Circuit affirmed this Court's approval of the settlement but vacated and remanded for reconsideration the fee award. *See Chambers v. Whirlpool Corp*., 980 F.3d 645 (9th Cir. 2020).

Upon remand, this Court appointed Martin Quinn as Mediator and "urged the parties in the strongest possible terms to use their best efforts to resolve the remaining issues in this case instead of incurring additional legal fees and causing the court to expend its limited resources on this dispute." ECF 403. The parties exchanged detailed mediation statements, including updated lodestar information, and

participated in a full-day mediation with Mr. Quinn. *See* ECF 407. Thereafter the parties continued negotiations and ultimately reached agreement on an award of $8.5 million, covering fees and additional unreimbursed expenses, which they agree is reasonable and consistent with the Ninth Circuit's opinion. *Id*. Plaintiffs now seek approval of that amount, which represents $8,419,934.89 in fees and $80,065.11 for reimbursement of previously unreimbursed litigation expenses.

To be sure, Class Counsel believe this Court could have, consistent with the Ninth Circuit's opinion, awarded a much higher fee on remand – perhaps even the original $14.8 million. Nevertheless, the parties reached agreement on this markedly reduced fee in order to finally resolve this decade-old litigation.

The agreed amount represents a .56 multiple of Class Counsel's total aggregate lodestar, which totals approximately $15 million, and, after lodestar adjustments to eliminate "coupon work" and fee time, no more than a .69 multiple. It is also approximately 25% of the economic value of the settlement excluding coupons and injunctive relief. The requested fee is easily justifiable under the criteria set forth in the Ninth Circuit's opinion, as well as all other governing law, and Class Counsel respectfully submit it should be approved.

## A.     Background[1]

The class action settlement, which was mediated by Professor Eric Green over the course of almost two years[2], provides: (1) 100% cash reimbursement for past repair costs; (2) cash payments of $200-$300 if the owner replaced, rather than repaired, the dishwasher; (3) insurance-like coverage for overheating events extending for at least ten years after purchase, which allows the owner to choose

---

[1] The background of the litigation and details of the settlement are described more fully in numerous prior filings, including Plaintiffs' Motion for Preliminary Approval (ECF 192), Motion for Final Approval (ECF 254), Motion for Award of Attorneys' Fees (ECF 218), and the Court's opinions granting approval (ECF 199 and 351). For efficiency, this brief summarizes only the most salient aspects. Capitalized terms have the meaning ascribed in the settlement.

[2] *See* Green Declaration, ECF 192-42

either a minimum of a $100 cash payment or a 30% rebate off the price of a new Whirlpool-manufactured dishwasher; and (4) the issuance of revised safety warnings in service materials. *See* ECF 254-2, at 3-5.

Additionally, owners of roughly 6 million of the most dangerous dishwashers are entitled to a cash rebate (*i.e.*, a "coupon") of 10%-30% of the price of a new Whirlpool, Kenmore, or KitchenAid dishwasher regardless of whether their control board ever combusted.[3] *Id*. at 28. Those class members will have had *over five years* (from 2016 until mid-2022) to make a qualifying rebate purchase; there is currently no deadline to submit proof of a qualifying purchase because that deadline will be eight months from the date the rebate form is mailed, which has not yet occurred. *See* ECF 254-7, at 13.

Whirlpool also agreed to pay for notice and claims administration, incentive payments to the plaintiffs, and attorneys' fees and expenses in an amount to be awarded by the Court. The parties could not reach agreement on the amount of attorneys' fees and, therefore, litigated the issue before the Court.

After extensive adversarial proceedings, in which Whirlpool opposed Class Counsel's fee request, and numerous serial objectors opposed approval of the settlement and fees, the Court found that the "results obtained by Class Counsel are impressive" and provide "substantial monetary relief" in "an extremely risky and complicated case," which "undoubtedly took a high level of skill." ECF 351, at 30, 33. The Court described the settlement "compelling …particularly given the substantial litigation risks at play." *Id.* at 24.

Regarding fees, Whirlpool reviewed Class Counsel's daily time records and conceded the reasonableness of the total number of hours billed, but made various other challenges to the lodestar, including challenges regarding rates and staffing decisions on a task-by-task and attorney-by-attorney basis. *See* ECF 246. After

---

[3] The rebates are "stackable" and therefore can be applied in addition to any other coupons, sales or negotiated discounts.

conducting its own examination of those daily time records, the Court rejected virtually all of Whirlpool's arguments, held that the Class Counsel's reasonable lodestar (calculated at their 2016 rates) was $8.8 million, and awarded Class Counsel a $14.8 million fee, representing a lodestar multiplier of 1.68. ECF 351 at 21-34. The Court held that it could use the lodestar method of awarding fees, notwithstanding that the settlement included a rebate (i.e., coupon) component, because the "crux" of the settlement was compensation for past and future combustion events, the rebate was merely an "additional benefit beyond the primary relief," and using the percentage-of-recovery method "would punish class counsel for obtaining additional relief" beyond the primary relief. *Id*. at 20-21.

### B.   Appeals

Whirlpool appealed the fee award, arguing that the Court erred by failing to base the fee award on the value of rebates actually redeemed as required by CAFA. Whirlpool also argued that the district court erred in awarding a multiplier. Whirlpool asked the Ninth Circuit to hold that the fee cannot exceed $2.2 million, or, in the alternative, to remand with instructions to apply at least a .5 downward multiplier, resulting in a fee of no more than $4.4 million. *See generally* Whirlpool's Appeal Brief, Ninth Cir. Case No. 16-56666, ECF 50.

Three serial objectors appealed the Court's approval of the settlement and the fee award.[4]

The appeal took four years, including a lengthy stay pending *en banc* resolution in *In re Hyundai & Kia Fuel Economy Litigation*, 926 F.3d 539 (9th Cir. 2019).

The Ninth Circuit rejected all of the objectors' arguments seeking to overturn the settlement. 980 F.3d at 669. Whirlpool, however, achieved a partial victory on its arguments. The Ninth Circuit held that the Court erred under CAFA because it used

---

[4] Nine state attorneys general also appealed the district court's method of awarding fees, but not the amount.

Class Counsel's full lodestar when awarding a lodestar based fee, and the full lodestar was not "completely divorced from the coupon portion of the settlement" and "necessarily included the work completed on behalf of the coupon portion of the settlement." [5]  980 F.3d at 660-661, citing *In re Easysaver Rewards Litigation*, 906 F.3d 747, 759 n.12 (9th Cir. 2018). The Ninth Circuit did not hold, however, that the fee cannot exceed $4.4 million, or impose a 50% downward multiplier as Whirlpool had requested.

The Ninth Circuit advised that, on remand, this Court could either: (1) "apply a percentage-of-redemption-value methodology for the coupon portion of a settlement, and use a lodestar method for the non-coupon part of the relief," or (2) "use a lodestar-only methodology, but only if it does not consider the coupon relief or takes into account its redemption value." 980 F.3d at 664.

The Ninth Circuit also noted that, in coupon settlements, courts should perform a valuation cross check of the non-coupon relief when making lodestar-based awards since a "lodestar-only methodology…potentially inflates the amount of attorneys' fees in proportion to the results." *Id.* at 654, 663.

The Ninth Circuit also held that the Court erred in its consideration of certain factors in awarding the multiplier.  *Id.* at 665-669.

### C.    The Instant Fee and Expense Request

After remand, the parties attended mediation, as instructed by the Court. After a full day of mediation with Mr. Quinn and several weeks of continuing negotiations, the parties reached agreement on a payment of $8.5 million, inclusive of attorneys' fees and additional unreimbursed expenses, which both parties agree is reasonable and consistent with the Ninth Circuit's opinion. *See* ECF 407.

---

[5] Although this Court's opinion did not refer to the dollar value of coupon relief in awarding the lodestar-based fee, the Ninth Circuit believed that "the lodestar amount and the multiplier implicitly and explicitly took into account the coupon portion of the settlement." 980 F.3d at 661.

*Footnote continued on next page*

Class Counsel's unreimbursed expenses currently total $80,065.11.[6] *See* Declarations of Charles Fax, Steven A. Schwartz, Jonathan Selbin, Robert Kitchenoff, and Jeffrey Cohon, filed herewith (hereinafter "Class Counsel Decls."). Thus, Class Counsel seek $8,419,934.89 in fees, and reimbursement of $80,065.11 in previously unreimbursed expenses.

### D.    Class Counsel's Current Total Lodestar Is $15 million

The Court previously examined Class Counsel's daily time records, scrutinized their hourly rates, and determined that Class Counsel's reasonable lodestar as of March 31, 2016, at then-current rates, was $8.8 million.[7] ECF 351, at 28. As reflected in the Class Counsel Declarations, their current hourly rates, like their prior rates, are reasonable and consistent with rates in this district.[8] At current rates, Class Counsel's previously approved lodestar is now $11,693,980. *Id.*

In addition, between March 31, 2016 and now, Class Counsel invested $3,275,706 in additional lodestar in achieving final approval, conducting objector discovery, handling claims administration matters, and defending both the appeals of

---

[6] Whirlpool has reimbursed the $508,292.67 in expenses that the Court awarded in 2016, which, despite not being the subject of any appeal, were not paid until April 2021. *See* Schwartz Decl., ¶ 9.

[7] The only adjustment the Court made to the lodestar as reflected in the records of Class Counsel was an adjustment to two attorneys' time due to quarter-hour billing. ECF 351 at 28. That firm switched to six-minute billing increments in January 2017. Schwartz Decl., at ¶ 15.

[8] Class Counsel's current rates are consistent with those approved by California federal courts and endorsed by fee experts. *See* October 15, 2020 Declaration of Professor William B. Rubinstein, at 2, 22- 29 & Exhibit D, filed at ECF 499-3 in *In re Facebook Biometric Privacy Litig.*, No. 15-cv-03747 (N.D. Cal.) (summarizing market rates); *Dickey v. Advanced Micro Devices, Inc.*, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (approving rates between $275 and $1,000); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (approving rates between $300 and $1,050); *Kendig v. ExxonMobil Oil Corp.*, 2020 U.S. Dist. LEXIS 153452, at *29 (C.D. Cal. Aug. 24, 2020) (approving rates from $325 to $875); *Bentley v. United of Omaha Life Ins. Co.*, 2020 U.S. Dist. LEXIS 126603, at *13 (C.D. Cal. Mar. 13, 2020) (approving rates from $200 to $1,205. Professor Rubinstein also confirmed that the median blended rate approved in his survey was $607. *Id.* at 27. Class Counsel's blended hourly rate here (at current rates) is $517.

the settlement approval and the fee award. *Id*. Thus, their total current lodestar is $14,969,686. Exhibit 1 to this brief summarizes Class Counsel's previously approved lodestar, the same at current rates, lodestar since March 2016, and current unreimbursed expenses.

### E.    The Ninth Circuit's Guidance

The Ninth Circuit's opinion provides guidance for how the Court should evaluate the fee request.

For the fee on the coupon portion of the settlement, the opinion instructs that the Court should determine a reasonable fee for the coupon relief based on a percentage of the actual redemption value. *Id.* at 659.

For the non-coupon relief, the Court can award a lodestar-based fee, but the lodestar must first be reduced to account for the "work done on behalf of the coupon portion of the settlement." *Id*. at 662. To make that lodestar reduction, the Court can parse through the billable time to determine which hours were expended for the coupon portion of the settlement, or it can apply a negative multiplier to the entire lodestar to account for coupon work by, "for example, seek[ing] to assess what portion of the settlement value stems from coupon relief." *Id*.

The Court should then perform a cross-check of the non-coupon value of the settlement to determine whether the lodestar is reasonable. *Id.* at 663.

Then, the Court should consider relevant multiplier factors -- primarily, degree of success -- to determine whether to increase or decrease the award. *Id*. at 668.

The Ninth Circuit also held that, in the alternative, under *Easysaver*, the Court can "still award fees based solely on a lodestar methodology if … 'it does so without reference to the dollar value of [the coupon relief]:'"

> For the … *EasySaver* option — lodestar without reference to coupon relief — it will effectively be the amount allowed under § 1712(b), i.e., **class counsel's reasonable lodestar, cross-checked against the value of the non-coupon relief, and adjusted based on any multiplier factors**. This option potentially shortchanges plaintiffs' counsel by

omitting the fees due under § 1712(a), so this option should be used only if there is no reasonable way to calculate the reasonable contingency percentage of the coupon redemption rate.

*Id.* at 664

Here, Class Counsel have agreed to forego a fee on coupon redemptions, and, therefore, the analysis is essentially the same under either the first approach or *Easysaver*. The fee award should be evaluated based on (1) Class Counsel's reasonable lodestar, (2) reduced to account for coupon work, (3) cross checked against the non-coupon relief, and (4) adjusted by relevant multiplier factors.

## II.   ARGUMENT

### A.   The Requested Fee Of $8.4 Million Is Easily Supported By Class Counsel's Reasonable Lodestar

#### 1.   Class Counsel's Previously Approved Lodestar Calculated At Current Rates Is The Starting Point For A Lodestar Analysis

Because five years have passed since the Court calculated Class Counsel's lodestar, the Court should first re-calculate the previously-approved $8.8 million lodestar using Class Counsel's *current* billing rates. As the Court previously recognized: "District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by . . . applying the attorneys' current rates to all hours billed during the course of the litigation." ECF 351 at 21, quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007); *see also Stetson v. Grissom*, 714 Fed. Appx. 681, 683 (9th Cir. 2017) ("district court erred by failing to update the lodestar calculation to compensate for the delayed payment" after appeal); *In re EasySaver Rewards Litig.*, 2020 U.S. Dist. LEXIS 77483, at *48-49 (S.D. Cal. Apr. 30, 2020) (after the Ninth Circuit vacated the prior fee award, holding that "Class counsel's request to be compensated at their recent rates is well taken.").

In 2016, the Court held that the then-five-year delay in payment, coupled with Class Counsel's payment of about $508,000 in litigation costs, supported its decision

to compensate Class Counsel at their then-current rates. ECF 351 at 26-27. Now, *another* nearly five years have passed, and Class Counsel still have not been compensated for their time, only recently received the $508,000 in out-of-pocket costs previously awarded by the Court, and have expended another $80,065 in unreimbursed litigation expenses.

None of the appellants challenged the Court's prior holding regarding the use of current rates, nor did they challenge the Court's finding that Class Counsel's total hours were reasonable.

The Court should again utilize Class Counsel's current rates to calculate Class Counsel's reasonable lodestar, which is $11,693,841 at current rates.[9]

## 2.    The Court Should Attribute No More Than 10% Of Previously Approved Lodestar To Coupon Work

Per the Ninth Circuit's instructions, the Court must also make a factual finding regarding the portion of lodestar attributable to the coupon portion of the settlement, i.e., the lodestar must be reduced to account for the "work done on behalf of the coupon portion of the settlement." 980 F. 3d at 662.  To make that lodestar reduction, the Court can either parse through the billable time to determine which hours were expended for the coupon portion of the settlement, or apply a negative multiplier to the entire lodestar to account for coupon work. *Id*. When applying the negative multiplier method, the Court "can, for example, seek to assess what portion of the settlement value stems from coupon relief."  *Id*.

Parsing through time records, which the Court has already done once, would reveal almost no attorney time that can be considered work done on behalf of the coupon portion of the settlement. During the litigation, Class Counsel did not request or review documents related to coupons, did not take depositions related to coupons, did not respond to motions to dismiss related to coupons, did not retain experts related to coupons, *etc*. *See* Schwartz Decl., ¶ 10. The only arguable coupon-specific time

---

[9] This accounts for the Court's prior to reductions to lodestar.

was time spent negotiating and defending the coupon terms during the mediation, as well as related work such as drafting rebate-specific portions of the settlement and the notice and claim forms. *Id*. That coupon-specific time is miniscule relative to the total time spent on the case, and virtually none of that time was included in the lodestar previously submitted to the Court.

Alternatively, rather than parse the time records yet again, the Ninth Circuit opinion allows the Court to determine a negative multiplier by comparing the valuation of the coupon and non-coupon relief. That analysis reflects that Class Counsel's lodestar should not be reduced by more than 10%.

As the Court correctly recognized: "the crux of this action deals with the Overheating Events suffered by owners of Class Dishwashers, and the settlement entitles each of those individuals to monetary relief. …The rebates are simply an additional benefit beyond the primary relief of compensating Class members whose dishwashers have failed and providing coverage for future failures." ECF 351 at 20 (internal quotations omitted).

As discussed in section II.B. below, the economic value of the *non-coupon* settlement relief, excluding injunctive relief, is approximately $34.4 million including fees.

The value of rebate redemptions will not be known until sometime in 2022, because, although class members have had over five years to make eligible purchases, the rebate submission process has not yet begun and the deadline will be eight months after the rebate forms are sent. Where, as here, there is an extended redemption period, the Ninth Circuit opinion allows the Court to use an estimate or prediction of coupon redemption value for purposes of reducing lodestar.[10]

Whirlpool previously projected that coupon redemptions could be, at most, between $2 and $4.5 million, and more recently estimated redemptions of around $1

---

[10] The opinion allows a prediction of coupon redemptions for purposes of reducing lodestar to adjust for coupon-work, but any fees awarded on the coupon portion of the settlement must be based on *actual* redemptions. *See* 980 F.3d at 661, 663 n. 4.

million based on redemptions in a nearly identical Canadian dishwasher settlement. ECF 246 at 2; Schwartz Decl., ¶ 11. The mid-point of Whirlpool's coupon redemption estimates is $2.75 million, which Class Counsel submit is a reasonable estimate.

Therefore, the total value of the settlement, including the non-coupon portions ($34.4 million) plus the estimated coupon redemption ($2.75 million), is $37.15 million. Thus, coupons represent approximately 7.4% of the total settlement value ($2.75 million/$37.25 million). That percentage can be used, consistent with the Ninth Circuit opinion, to reduce Class Counsel's lodestar to account for coupon work. That percentage is also supported by the fact that only one-third of the dishwashers covered by the settlement (6 out of 18 million) are eligible for the coupons, and the coupons are only one of four main buckets of relief provided for those dishwashers.[11] If all four buckets are weighed equally, only 8.3% of the settlement relief is coupons (*i.e.*, 1/4 of 1/3).

For comparison, although a different case, after remand in *HP Inkjet Printer Litigation* the district court allocated 10% of class counsel's $1.5 million lodestar to the coupon portion of the settlement and, therefore, reduced its prior $1.5 million fee award by 10% to $1.35 million. 2014 U.S. Dist. LEXIS 139850 at *10-12 (N.D. Cal. Sept. 30, 2014).

Thus, from a valuation perspective, a reduction of 10% of lodestar to account for coupon work is more than reasonable. Of course, in reality it grossly overstates the actual coupon work performed, which was very little. But, to be conservative, the Court should reduce Class Counsel's previously-approved lodestar at current rates by no more than 10% to account for coupon work. A 10% reduction of previously approved lodestar at current rates results in a non-coupon lodestar of $10,524,582.[12]

---

[11] Reimbursement for past events; coverage for future overheating events; safety/injunctive relief; and coupons.

[12] Even a 25% reduction of Class Counsel's previously-approved lodestar at current rates equals $8.8 million, well above the $8.4 million fee requested here.

PLAINTIFFS' MEMO. OF LAW IN SUPPORT OF RENEWED MOTION FOR ATTORNEYS FEES
8:11-CV-01733-FMO-JCGX

### 3.   The Court Should Also Credit At Least 50%, Or $1.64 Million, Of Class Counsel's Post-Submission Lodestar

In addition, between March 31, 2016 and now, Class Counsel invested $3,275,706 in additional lodestar in achieving final approval, conducting objector discovery, handling claims administration matters, and defending the appeals of the settlement approval and the fee award.[13] *See* Class Counsel Decls. Much of this "post-submission" lodestar is also compensable.

Time that Class Counsel spent in this Court and Ninth Circuit defeating the objections to the settlement by the serial objectors is clearly compensable, as it was necessary to secure the settlement benefits. Courts routinely award fees for such time. *See Easysaver, In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.* ("*In re Sears*"), and *Southwest*, cited below.

Courts routinely award fees for post-approval claims administration work. *See Moore v. Verizon Communs., Inc.*, 2013 U.S. Dist. LEXIS 170027, at 22-26 (N.D. Cal. Nov. 27, 2013) (citing cases and approving a supplemental fee request for class counsel's settlement distribution work, reasoning: "Class Counsel's work is not done when the settlement is reached. To the contrary, to make the settlement meaningful to the class, Counsel must often incur substantial time to ensure that the settlement in facts works as envisioned."); *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1068 (8th Cir. 2015) ("post-settlement monitoring is a compensable activity for which counsel is entitled to a reasonable fee").

The Ninth Circuit has also held that "fees are ordinarily available to compensate attorneys for successful litigation of their fee applications, including work on appeal." *Barlow-Gresham Union High Sch. Dist. No. 2 v. Mitchell*, 940 F.2d 1280, 1286 (9th Cir. 1991); *Cruz v. Alhambra Sch. Dist.*, 282 F. App'x 578, 581 (9th Cir. 2008) ("It is well established that time spent preparing a fee application is

---

[13] The Court has already examined Class Counsel's daily time records up to March 31, 2016, which accounts for the vast majority of Class Counsel's time and lodestar in the case. Class Counsel will provide their post-submission daily time records for *in camera* inspection should the Court request it.

PLAINTIFFS' MEMO. OF LAW IN SUPPORT OF
RENEWED MOTION FOR ATTORNEYS FEES
8:11-CV-01733-FMO-JCGX

compensable"). While Class Counsel were not totally successful in defending the fee award on appeal, neither was Whirlpool, which failed to achieve its stated objective of limiting fees to between $2.2 million and $4.4 million. Thus, the Ninth Circuit's decision to vacate and remand the fee award does not necessarily mean that fee-specific time spent at the district court and Ninth Circuit is wholly non-compensable. In *In re Sears,* 2018 U.S. Dist. LEXIS 130505, at *31 (N.D. Ill. Aug. 3, 2018), for example, the district court required Whirlpool to pay an additional $500,000 in fees (representing over 63% of the relevant lodestar) for class counsel's work litigating a similar contested fee petition before the district court and defending the fee award on appeal even though the Seventh Circuit reduced the fee over 42% and no one appealed the settlement approval. *See also Ustrak v. Fairman*, 851 F.2d 983, 990 (7th Cir. 1988) (Posner, J.) ("when the defendant appeals [a fee award] and the plaintiff incurs expenses in defending against the appeal that are reasonable, ordinarily he should be entitled to reimbursement of those fees; he had no choice but to incur them or forfeit his victory in the district court.")

In order to be conservative, however, Class Counsel suggest that the Court should apply a 50% discount to their post-submission lodestar to discount "work done on behalf of the coupon portion of the settlement," as required by the Ninth Circuit's opinion, as well as to discount time spent on the appeal that could be deemed specifically attributable to defending the fee award plus fee-specific time spent on the fee petition decided by this Court in 2016. *Cf. EasySaver*, 2020 U.S. Dist. LEXIS 77483 at *42-43 (after remand the district court credited class counsel with one-half of their appellate lodestar even though the fee was vacated); *In re Sears,* 2018 U.S. Dist. LEXIS 130505, *31 (district court awarded an additional $500,000, representing over 63% of the relevant fee petition and appellate lodestar).

Reducing the post-submission lodestar by 50% results in $1,637,853 in additional lodestar.  Adding that to the roughly $10.5 million of previously-approved

lodestar (at current rates and reduced 10% for coupon work) results in a total aggregate lodestar of $12,162,435.[14]

### 4. In Sum, The Requested Fees Is At Most A .69 Multiple of Class Counsel's Reasonable, Adjusted Lodestar

In sum, the requested fee of $8.4 million represents a .56 multiple of all lodestar and, at most, a .69 multiple of Class Counsel's reasonable lodestar after generous reductions for coupon work and fee time. As discussed below, this is a low multiplier given the results achieved, and Class Counsel's request that it be approved is more than reasonable. Indeed, it is not far from the .5 multiple that Whirlpool sought and the Ninth Circuit declined to impose.

### B. The Non-Coupon Valuation Cross Check Supports The Requested Fee.

The Ninth Circuit decision next requires a valuation crosscheck of the non-coupon relief to determine whether the adjusted lodestar is reasonable. Here, the non-coupon relief includes: (1) 100% cash reimbursement for past repair costs; cash payments of $200-$300 if the owner replaced, rather than repaired, the dishwasher; and prequalified payments where all necessary data appears in Whirlpool, Sears or CPSC records; (2) insurance-like coverage for overheating events extending for at least ten years after purchase, which allows the owner to choose either a minimum of a $100 cash payment or a 30% rebate off the price of a new Whirlpool-manufactured dishwasher; (3) the issuance of revised safety warnings in service materials; (4) notice and administration costs; and (5) attorneys' fees and expenses. As set forth below, the value of the non-coupon components, excluding injunctive relief, is approximately $26 million exclusive of fees, or $34.4 million including fees.

---

[14] Even if the Court were to credit zero post-submission lodestar, however, the requested fee is still a negative multiple of Class Counsel's previously approved lodestar at current rates after a generous 10% reduction for coupon work.

### 1. Cash Reimbursements For Past Overheating Events Will Likely Total About $2.78 Million

Cash reimbursements for out-of-pocket costs incurred in connection with Past Overheating Events (i.e., Overheating Events prior to the Notice Date) will total at least around $1.76 million and likely $2.7 million.[15] These include payments to Prequalified Class Members; non-prequalified class members who submitted valid claims and documentation, or whose claims will be subsequently validated; and class members who submitted personal information on Plaintiff Chambers' website and who were paid directly by Whirlpool in exchange for a release of claims during the litigation.

Approximately 2,500 class members were prequalified to receive about $500,000 total, and needed only to verify certain information to receive payment and/or submit additional documentation to claim a higher amount. ECF 254-6 at ¶ 10. About $116,000 of those Prequalified claims are currently approved. *See* Supplemental Declaration of Lana Lucchesi Re: Claims Filing filed herewith, at ¶ 4. Another approximately $56,000 could be approved if deficiencies are resolved, and another $2,300 could be approved as late claims. *Id*. Thus, the amount that will ultimately be paid to Prequalified claimants is likely between $116,000 and $174,000.

Around 23,520 non-prequalified consumers submitted non-duplicative reimbursement claims attesting under oath that they experienced past overheating events and seeking reimbursement. *Id*. at ¶ 6. The face value of all non-duplicative claims submitted is around $6.5 million. *Id*. Approximately $1.54 million in claims have been deemed to be valid at this time. *Id*. Another roughly $1.1 million in claims included some documentation but were deemed deficient, and roughly $3.74 million

---

[15] Because the objectors' unsuccessful appeals delayed the effective date of the settlement for four years, the claims review and deficiency/cure process has not been completed. Therefore, the following are current best estimates of the cash amounts that will be paid for reimbursements for Past Overheating events.

in claims did not include documentation. *Id*. The Claims Administrator, KCC, has not yet sent deficiency notices or provided an opportunity to claimants to cure deficiencies, but predicts, based on its experience, that approximately 15-20% of the $4.84 million in deficient claims will be cured, meaning another $726,000-$968,000. *Id*. at ¶¶ 7-8.  Approximately $208,000 in claims were filed late. The parties have not yet agreed on which late claims will be allowed.[16] Therefore, the amount expected to be paid to non-prequalified claimants is at least $1.54 million, which is the currently approved amount, and likely about $2.4 million.

In addition, during the litigation Whirlpool reached out to hundreds of consumers who had posted their personal information on Plaintiff Chambers' website and offered to "buy back" the dishwashers or otherwise compensate them in exchange for a release of claims. Whirlpool has been unable to provide complete records, but the parties estimate around $100,000 in payments were made to these consumers. Schwartz Decl., ¶ 12.

So, in total, the cash reimbursements that have or will be made for Past Overheating Events are at least approximately $1.76 million and likely $2.7 million.

## 2. The Future Overheating Coverage Value Is At Least $20.1 Million

In addition to reimbursement for past overheating events, the settlement also provides insurance-like coverage for Future Overheating events for the longer of two years from the notice date, or ten years from purchase. Even though the settlement was challenged on appeal, Whirlpool provided this coverage to eligible class members over the past four years beginning in 2016. As this component covers dishwashers manufactured as late as 2011, the coverage extends into 2021, or perhaps even 2022, for some class members. The coverage allows class members who

---

[16] In *In re Sears*, the court ordered Whirlpool to pay most of the late claims after Whirlpool and class counsel failed to agree. *See* Case No. 06-7023 (N.D. Ill.), at ECF No. 641.

experience an overheating event to choose *a minimum* of $100 cash or 30% off the price of a new dishwasher.

The value of extended warranty coverage to a consumer is determined based on the estimated cost to the consumer to acquire the same coverage in the open market. Indeed, the Tenth Circuit recently held that:

> In determining the actual financial impact of the Settlement Agreement on Samsung, we consider both the payments Samsung made to class claimants and the value of the warranties provided to class members by the Settlement Agreement. Although the warranties may not have ultimately required payments from Samsung, warranties, like insurance, carry with them actuary value and provide consumers peace of mind.

*Wells v. Best Buy Co.* (*In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*), 2021 U.S. App. LEXIS 13620, at *36 n.20 (10th Cir. May 7, 2021). That recent decision is consistent with all district court decisions addressing the issue.[17] Thus, in estimating the market cost of similar coverage,

---

[17] *Granillo v. FCA US LLC*, 2019 U.S. Dist. LEXIS 146086, at *23 (D.N.J. Aug. 27, 2019); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 169 (D. Mass. 2015) ("from a consumer's perspective, a warranty against repair has value even when no repairs are claimed during the period of coverage. The fact of coverage is its own benefit; for a price, a consumer can purchase certainty as to what repairs will cost if they are needed."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298 at *234 n. 10, 298-99, n.7 (C.D. Cal. July 24, 2013). (valuing warranty "in excess of $457 million" is "both reliable and relevant," where it was "based on the market price of similar extended service contracts offered in the industry."); *In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 87643, at *27 (S.D.N.Y. Aug. 24, 2010) (extrapolation based on market cost resulted in $15.9 million valuation); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738 (E.D. Tex. 2007) (using market value and not cost to defendant); *O'Keefe v. Mercedes-Benz USA*, LLC, 214 F.R.D. 266, 304-305 (E.D. PA. 2003) (value should "be based on the benefit to the class and not the cost to the defendant" and defendant MBUSA's analysis which valued "the common fund by MBUSA's costs and not by the benefit to the class" was "unrelated to the settlement's valuation."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 557 (D.N.J. 1997) ("The cost of the relief to [the defendant] is not the measure of class member benefit, …. [rather t]he value of the relief to the Class, which may be substantial, is what matters.")

experts should evaluate not solely the expected payout by the manufacturer, but should consider the market value of coverage to consumers, which takes into account a host of factors, such as the cost of similar coverage and length of coverage.

Whirlpool's experts estimated that there were over 13.4 million covered dishwashers still in service as of the Notice Date, but never performed an analysis of the value of the coverage to consumers; instead, they calculated only an estimated payout by Whirlpool and divided that by 13.4 million dishwashers. *See* ECF 246-2; 246-5. But no case law supports that methodology. Indeed, the Ninth Circuit decision recognizes that the "extended coverage for future overheating events …provide some benefits [even] to class members with fully operational dishwashers." 980 F.3d at 670. And Whirlpool and Sears heavily market and sell extended warranties based on the peace of mind they offer. *See* Schwartz Decl., Exhibit C ("For the Unexpected…Over time and with daily use, issues can arise…plans are typically less than one repair"); *Id.,* Exhibit D ("Protecting what matters, that's caring…Simply choose a plan to receive this valuable protection").

The Ninth Circuit recognized the parties' competing valuation theories and instructed the district court to conduct a "careful assessment" of expert and other evidence to make a valuation determination. 980 F.3d at 664. Plaintiffs' accounting expert, Peter Salomon, analyzed relevant factors, such as similar warranties and repair costs, and estimated the retail value of the coverage to be $6 per dishwasher. ECF 218-12. To further assist the Court, Plaintiffs retained an additional expert with extensive experience in performing actuarial analysis and valuing similar warranty coverage. *See* Declaration of Lee Bowron, filed herewith. Like Mr. Salomon, Mr. Bowron performed a market valuation analysis of the coverage, which is consistent with relevant caselaw and the Ninth Circuit's opinion. Based on his analysis of relevant factors, he estimates the market value of the coverage to the consumer to be *not less* than $1.50 per dishwasher on average. *Id*. at ¶ 22.

Thus, Plaintiffs have now provided two expert reports that conclude, based on a valuation consistent with relevant caselaw, that the value of the insurance-like future coverage is at least $1.50 for each of the 13.4 million covered dishwashers, resulting in a total value of at least $20.1 million.

### 3. The Court Should Place A Zero Dollar Value on Injunctive Relief, But Consider It When Evaluating The Multiplier

The settlement also includes injunctive relief requiring Whirlpool to create new safety warning to address what had been a persistent problem: technicians that bypassed Thermal Cut Offs (TCOs) in the dishwashers which resulted in control board fires flaring out of control. This injunctive relief has real value, as the evidence showed many serious house fires occurred when control boards overheated and the TCO had been disabled. *See generally* ECF 170; ECF 254-2 at 17-18. If the revised safety warnings save a life, or even a home, they are priceless.

It is impossible, however, to place a precise dollar value on this component. Therefore, we exclude it from the valuation, and discuss it in connection with multipliers below. *See* 980 F.3d at 664 ("We agree that courts need not try to attach a precise dollar figure to these types of non-monetary relief. But the district court can, based on the record, determine the significance of this benefit, and employ it as a qualitative factor in deciding whether a multiplier is warranted."); *see also Briseño v. Henderson*, 2021 U.S. App. LEXIS 16261, at *29 (9th Cir. June 1, 2021) (a district court must either quantify and explain the value of injunctive relief or exclude it from valuation calculations).

### 4. Notice And Administration, And Attorneys' Fees And Expenses Total $11.6 million

The non-coupon relief provided by the settlement also includes the value of the notice and claims administration costs, plus reimbursed litigation costs and attorneys' fees.   Each of these is properly included in the non-coupon relief valuation.

Notice and administration costs currently total $2.2 million, and are predicted to be about $2.6 million at the conclusion of the process. Lucchesi Decl., ¶ 9. *See In re Online DVD*, 779 F.3d 934, 953 (9th Cir. 2015) (courts include notice and administration costs when valuing a common fund for percentage-fee purposes).

Previously approved litigation expenses totaled $508,292.67, and Class Counsel seek reimbursement of an additional $80,065 in expenses incurred in connection with final approval and appeals, which Whirlpool does not oppose. *Id.* (including expenses for crosscheck purposes). Finally, assuming the Court approves this motion, Whirlpool will pay $8,419,935 in attorneys' fees. This amount too can be considered as part of the crosscheck. *See e.g., Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) ("If twenty-five percent of gross is reasonable, perhaps thirty-five percent of net would be reasonable.")

### 5. The Requested Fee Is Less Than 25% Of The Gross, Non-Coupon Settlement Value.

In sum, the value of settlement excluding coupons and injunctive relief is:

| Settlement Component | Minimum Value | Expected Value |
|---|---|---|
| Prequalified Claims | $116,000 | $170,000 |
| Non-Prequalified Claims for Past Overheating Events | $1,540,000 | $2,400,000 |
| Payment to Class Members During Litigation | $100,000 | $100,000 |
| Insurance-like Coverage | $20,100,000 | $20,100,000 |
| Notice and Administration | $2,200,000 | $2,600,000 |
| Class Counsel Expenses | $588,000 | $588,000 |
| **Net Total Before Attorney's Fees** | **$24,643,000** | **$25,958,000** |
| Attorney's Fees | $8,419,935 | $8,419,935 |
| **Gross Total After Attorney's Fees** | **$33,063,935** | **$34,377,935** |
| **Attorney Fee Percentage** | **25.47%** | **24.49%** |

Thus, the requested fee of $8.4 million represents between 24.49% and 25.47% of the  gross, non-coupon value of the settlement, which is consistent with the Ninth Circuit benchmark of 25%. Importantly, this attributes *zero* value to the coupon relief and to the injunctive-safety relief.

Moreover, when performing a valuation cross-check of a lodestar-based award, the Court is not confined to awarding a strict 25% of the non-coupon value.

Even if the lodestar-based award that Class Counsel seeks did not pass the 25% non-coupon valuation crosscheck (which it does), it only means, as the Ninth Circuit stated, that the Court should take a "second look to evaluate the reasonableness of the hours worked and rates claimed …." 980 F.3d at 663, *quoting In re Bluetooth Products Liab. Lit.,* 654 F.3d 935, 945 (9th Cir. 2011). The Court previously conducted an extensive examination of Class Counsel's daily time records in 2016. Any second look at the post-2016 lodestar will confirm its reasonableness.

Further, the "second look" does not limit the fee award to a strict 25% of the valuation. In *HP Inkjet*, for example, after remand the district court awarded a $1.35 million fee even though the "ultimate value of the settlement to the class is roughly $1.5 million," thereby representing a fee of about 47% of the $2.85 million gross value. 2014 U.S. Dist. LEXIS 139850 at *10-12.  In *EasySaver*, after remand the district court held, quoting *Bluetooth*, that a lodestar fee representing 54% of the dollar value of the gross value "is not '*per se* unreasonable'" and ultimately approved a lodestar fee representing 32.5% of the estimated value of the cash recovery. 2020 U.S. Dist. LEXIS 77483, at *56, 59.[18]

Here, the requested fee falls at or below 25% of the gross settlement value, and under 33% of the net value, without regard to the coupon and injunctive relief provided by the settlement.

---

[18] Judge Bashant cited the absence of hard-to-value injunctive relief and the "less-than-excellent results" as justification for awarding only 32.5% of the fund. *Id*. at *58-62.

PLAINTIFFS' MEMO. OF LAW IN SUPPORT OF
RENEWED MOTION FOR ATTORNEYS FEES
8:11-CV-01733-FMO-JCGX

**D.    The Relevant Multiplier Factors Support The Fee Requested**

Next the Court should consider the relevant multiplier factors, which, once again, support the requested fee. In connection with any multiplier analysis, as instructed by the Ninth Circuit, the Court should make factual findings "supported by both specific evidence on the record and detailed findings…." 980 F. 3d at 665.

The Ninth Circuit stated that the "most critical factor" in determining a multiplier is the degree of success, but left open how the Court should adjudicate that issue:

> Because the degree of success depends on the settlement value, whether a downward multiplier is warranted will depend on the district court's valuation of the settlement. We remand for the district court to make this determination in the first instance….

880 F.3d at 668-669.

As set forth above, even when considering solely the non-coupon, non-injunctive, and non-fee components of the settlement, the value of the settlement is substantial and supports the requested fee under the valuation cross-check.

But the Ninth Circuit's opinion also reaffirms that a *qualitative* evaluation, particularly of injunctive relief, can be evaluated to determine whether a multiplier is warranted. 980 F.3d at 664 & n. 5. In *Easysaver* too the Ninth Circuit held that district courts could "determine an appropriate lodestar fee and whether a departure is called for by assessing how fully an individual class member is compensated for his or her injuries, without reference to the size of the class or the size of the settlement fund as a whole."[19] 906 F.3d at 759 n.12.

The Court already held that the settlement "results obtained by Class Counsel are impressive" and "compelling." ECF 351 at 24, 30. A qualitative assessment reflects that the settlement provides a full cash reimbursement for repair costs and/or

---

[19] The Seventh Circuit also affirmed a full-lodestar fee solely based on a qualitative analysis and a 1.5 multiplier in a coupon-only settlement without any valuation crosscheck because the coupons provided class members with a near-full recovery. *In re Southwest Airlines Voucher Litig.*, 799 F.3d at 709-712.

a cash payment of $200 or $300 for the purchase of a replacement dishwasher for past overheating events; insurance-like coverage to protect against future overheating events; injunctive safety relief to protect against future fires; a broad notice program; and litigation expenses and attorneys' fees.

The safety benefit of the settlement, in particular, is an important factor in considering the multiplier. The Ninth Circuit recognized that even if the district court could not "attach a precise dollar figure" to the safety benefits, it should "at least determine the significance of this benefit, and employ it as a qualitative factor in deciding whether a multiplier is warranted." 980 F.3d at 664.  The Court previously concluded that the bundle of relief provided by the settlement "promotes public safety." ECF 351 at 30. That conclusion was well founded. The massive notice campaign and related publicity warned class members and service technicians about "defects that may cause the ECB to overheat, ignite, or emit smoke, sparks, or fumes." *See* ECF 192-12; 192-13; 192-15. The service personnel warnings required by the settlement explicitly tell technicians to check to ensure that the TCO had not been bypassed and that bypassing or disabling the Thermal Cut-Offs could result in fires. *See* ECF 292-4, at 34-35. Any argument that the new warnings are self-evident and therefore of no value is belied by the fact that, prior to the settlement, technicians frequently disabled or bypassed the Thermal Cut-Offs. *See generally* ECF 170; ECF 254-2, at 17-18.

Based on a qualitative assessment of the settlement, including in particular the safety benefits, Class Counsel believe a positive multiplier of their adjusted $12.2 million lodestar is justifiable, even though they do not seek one. At a minimum, no negative multiplier of their lodestar is required.

The Ninth Circuit also held that while the "novelty and complexity of a case generally" cannot support a blanket multiplier, "where a subset of class counsel has borne a disproportionate brunt of the difficult aspects of a case — we have recognized that complexity can warrant enhancement." 980 F.3d at 666, citing *In re Hyundai,*

926 F.3d at 571-72 (quotations omitted). Here, only four lawyers and one legal assistant from the two lead counsel firms generated the vast majority (65%) of the previously approved lodestar. ECF 218-1 at 23. This small team dealt with numerous, highly technical issues, including depositions of engineers, working with experts, and analyzing highly technical documents. Thus, although Class Counsel do not request it here, the Court could, consistent with the Ninth Circuit's opinion, award a positive multiplier on the two lead counsel firms' lodestar.[20]

For the above reasons, the Court could, consistent with the Ninth Circuit's guidance, award a positive multiplier. At a minimum, no negative multiplier is warranted. Nonetheless, Class Counsel's $8.4 million fee request represents a *negative* .56 multiple of their reasonable total lodestar of roughly $15 million, and a .69 multiple of their lodestar after adjustment to exclude coupon and fee appeal time. Thus, it is reasonable and consistent with the Ninth Circuit's instructions.

### E.   Class Counsel Seek No Fee On Coupon Relief

In order to reach agreement with Whirlpool and a final conclusion to this long-running case, Class Counsel have agreed to forego a fee on coupon relief. Although eligible claimants have had over five years to make eligible purchases, the rebate submission process has not yet begun and the deadline will not occur until sometime in 2022. Thus, even though that fee could have been significant based on an estimated

---

[20] In dicta, the Ninth Circuit commented that multipliers based on the extraordinary time invested are not allowed, but, even if so, it "appears questionable" to award a multiplier to the "the staggering number of written discovery hours — including over $2.6 million dollars in fees for document review — without considering the asymmetrical nature of discovery in class actions that can lead to excessive billing." In reality, in contingent litigation, where counsel may never receive a dime, there is no incentive to conduct more discovery than is necessary. As often as not, defendants try to bury class action counsel with document discovery, hoping to hide the needles in the haystack – a point this Court recognized. ECF 351, at 23 (noting that in "high-stakes litigation" a "sophisticated understanding of the facts and law" is needed to "review voluminous disclosures by well-heeled corporate defendants … to ensure critical evidence is not missed.")  Here, however, the Court already concluded that the $2.6 million document discovery lodestar included much more than merely first-level review and was reasonable.  *Id.* at 23-24. Whirlpool complained about hourly rates for this work, but never contended that the discovery was excessive.

PLAINTIFFS' MEMO. OF LAW IN SUPPORT OF
RENEWED MOTION FOR ATTORNEYS FEES
8:11-CV-01733-FMO-JCGX

redemption amount of $2.75 million, Class Counsel have agreed to forego it in the interest of achieving finality. *Cf. In re Easysaver Rewards Litig.*, 2020 U.S. Dist. LEXIS 77483, at *29 (S.D. Cal. Apr. 30, 2020) (noting that counsel chose to forego fees on the coupon relief).

### F.    The Court Should Award An Additional $80,065 In Expenses

Finally, as reflected in Class Counsel's Declarations, they expended $80,065.11 in  litigation expenses (in addition to those previously awarded). Those expenses were reasonably incurred in convention with the litigation and similar to the types of expense previously approved by the Court. The Court should approve the payment of those expenses.

## V.    CONCLUSION

For the foregoing reasons, the Court should make the relevant factual findings requested herein and award $80,065.11 in reimbursement of expenses [21] and $8,419,934.89 in attorneys' fees. The $8.4 million fee represents a .69 multiple of Class Counsel's reasonable lodestar after a generous downward adjustment to account for coupon and fee work. Further, the requested fee is about 25% of the gross value of the non-coupon portions of the settlement. Considering the relevant multiplier factors, including degree of success, the fee is reasonable and should be approved. Class Counsel seek no fee on coupon redemptions.

DATED:  June 16, 2021                    Respectfully submitted,

*/s/ Steven A. Schwartz*
Steven A. Schwartz (*pro hac vice*)
Timothy N. Mathews (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Telecopier: (610) 649-3633
sas@chimicles.com
tnm@chimicles.com

---

[21] In addition to the $508,292.67 previously awarded.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Charles S. Fax (*pro hac vice*)
Liesel J. Schopler (*pro hac vice*)
**RIFKIN WEINER LIVINGSTON LLC**
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-0172

***Plaintiffs' Co-Lead Counsel***


LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin
Andrew Kaufman
250 Hudson Street, 8th Floor
New York, New York 10013275
Telephone: (212) 355-9500
Telecopier: (212) 355-9592
jselbin@lchb.com
akaufman@lchb.com

LAW OFFICES OF JEFFREY M. COHON,
PC
Jeffrey M. Cohon
1901 Avenue of the Stars, Suite 470
Los Angeles, California 90067
Telephone: (310) 231-4470
Telecopier: (310) 231-4610
jcohon@cohonlaw.com

WEINSTEIN KITCHENOFF
  & ASHER LLC
David H. Weinstein
Robert Kitchenoff
150 Monument Road, Suite 107
Bala Cynwyd, PA 19004
Telephone: (215) 545-7200
Telecopier: (215) 545-6535
weinstein@wka-law.com
kitchenoff@wka-law.com

***Plaintiffs' Additional Counsel***

PLAINTIFFS' MEMO. OF LAW IN SUPPORT OF
RENEWED MOTION FOR ATTORNEYS FEES
8:11-CV-01733-FMO-JCGX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.


*/s/ Steven A. Schwartz*
Steven A. Schwartz

# EXHIBIT 1

| Firm | Previously Approved Hours Through March 2016 | Previously Approved Lodestar Through March 2016 | Previously Approved Lodestar At Current Rates | Hours Since March 2016 | Lodestar Since March 2016 | Total Hours | Total Lodestar | Additional Expenses |
|---|---|---|---|---|---|---|---|---|
| CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP | 5787.2 | $2,761,667.50 | $2,977,833.00 | 2883.7 | $1,987,738.50 | 8670.9 | $4,965,571.50 | $41,070.95 |
| RIFKIN WEINER LIVINGSTON LLC | 13,129.85 | $3,977,832.73 | $6,022,855.25 | 1927.57 | $976,999.25 | 15,057.42 | $6,999,854.50 | $19,126.47 |
| LIEFF CABRASER HEIMANN &BERNSTEIN, LLP | 2622.1 | $1,056,689.50 | $1,188,122.50 | 215.5 | $122,406.00 | 2837.6 | $1,310,528.50 | $19,545.74 |
| WEINSTEIN KITCHENOFF & ASHER LLC | 1218.3 | $618,272.00 | $854,994.50 | 55.1 | $49,039.00 | 1273.4 | $904,033.50 | $321.95 |
| LAW OFFICES OF JEFFREY M. COHON, PC | 897.75 | $403,987.50 | $650,175.00 | 192.45 | $139,523.25 | 1090.2 | $789,698.25 | $0.00 |
| **TOTALS** | **23,655.20** | **$8,818,449.23** | **$11,693,980.25** | **5,274.32** | **$3,275,706.00** | **28,929.52** | **$14,969,686.25** | **$80,065.11** |